### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF DELAWARE

DAVID J. BUCHANAN,                          :
                                            :    No.: 06-cv-00711 SLR
    Petitioner, Pro Se,            :
                                            :
    vs.                            :
                                            :
THOMAS E. GAY, ESQUIRE, WIFE                :    JURY TRIAL DEMANDED
THAILA JOAN GAY, THE HONORABLE              :
JANE M. BRADY (ATTORNEY                      :
GENERAL/SUPEROR COURT JUDGE),               :
KRISTEN S. GIBBONS, ESQUIRE,                :
(COURT APPOINTED SPECIAL                    :
ADVOCATE ATTORNEY                           :
AD LITEM), DELAWARE STATE                   :
POLICE, GEORGETOWN POLICE,                  :
SEAFORD POLICE, JOHN BRADY,                 :
ESQUIRE, DELAWARE FAMILIY COURT             :
THE STATE OF DELAWARE                       :
THE FIRM OF STUMPF, VICKERS &               :
SANDY, JOHN F. BRADY,                       :
ESQUIRE, et al.                             :
                                            :
    Respondents.                   :

### APPENDIX TO BRIEF IN SUPPORT OF MOTION TO DISMISS

**ELZUFON, AUSTIN, REARDON
TARLOV & MONDELL, P.A.**

_____
JOHN A. ELZUFON, ESQUIRE - I.D. #177

_____
JENNIFER L. STORY, ESQUIRE – I.D. 4918
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
(302) 428-3181
Attorneys for Defendant/Thaila Joan Gay

Dated:  February 5, 2007

1

**EXHIBITS** ......................................................................................... **EXHIBIT #1**

DISTRICT COURT COMPLAINT
     FILED NOVEMBER 25, 2006...................................................................A

SUPERIOR COURT COMPLAINT
     FILED ON JANUARY 3, 2005................................................................B

SUPERIOR COURT MEMORANDUM OPINION ...............................................C

DOCKET SHEET ...................................................................................................D


**UNREPORTED OPINIONS**............................................................ **EXHIBIT #2**

*CAMAS V. DICKSON-WITMER,* 2001 WL 34368388 (D. DEL.) .........................A

*NICASTRO V. FRANKFORD HOSPITAL*, 2004 WL 86658 (E.D.PA) ................B

*TELEPO V. BOYLAN FUNERAL HOME*, 2005 WL 783059 (E.D.PA.) ...............C

# EXHIBIT #1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

DAVID J. BUCHANAN,                        :        No.        C 6 - 7 1 1 *

       Petitioner, Pro Se                :

       v.                                :

THOMAS E. GAY, ESQUIRE, WIFE             :
THALIA J. GAY, THE HONORABLE             :
JANE M. BRADY (ATTORNEY                  :
GENERAL/SUPERIOR COURT JUDGE),           :
KRISTEN S. GIBBONS, ESQUIRE,             :
(COURT APPOINTED SPECIAL                 :
ADVOCATE ATTORNEY                        :
AD LITEM), DELAWARE STATE                :
POLICE, GEORGETOWN POLICE,               :
SEAFORD POLICE, JOHN BRADY,              :
ESQUIRE, DELAWARE FAMILY COURT:
THE STATE OF DELAWARE                    :
THE FIRM OF STUMPF, VICKERS &            :
SANDY, JOHN F. BRADY,                    :
ESQUIRE, et all.                         :

       Respondents                       :

**PETITION TO AWARD DAMAGES FOR; BREACH OF FIDUCIARY DUTY, MEDICAL MALPRACTICE BY FIDUCIARY, VIOLATION OF HIPAA, DEFAMATION OF CHARACTER, DERIVATIVE TORT, INFLICTION OF SEVERE EMOTIONAL DISTRESS AND HARM, LITIGATION CONDUCTED IN MALUM IN SE, FAILURE TO OBSERVE FEDERAL BANKRUPTCY LAWS, VIOLATION OF CIVIL RIGHTS, FALSE ARREST, FALSE IMPRISONMENT, DISADVANTAGING AN OPPOSING PARTY BY MISLEADING A PRESIDING JUDGE, ABUSE OF PROCESS, ERRORS, AND OMISSIONS**

    **NOW COME** the above captioned Petitioner, David J. Buchanan, Pro Se, and,

hereby petitions the United States District Court for the District  Delaware, to award

Punitive Damages in the amount of Six Hundred Million Dollars U.S. ($600,000,000) to

the Plaintiff, and order the Respondents pay for; breach of fiduciary duty, medical

malpractice by fiduciary, violation of HIPAA, defamation of character, derivative tort,

infliction of severe emotional distress and harm, litigation conducted in malum in se,

failure to observe Federal Bankruptcy Laws, disadvantaging an opposing party by

misleading a presiding Judge, violation civil rights guaranteed by the 5th, 8th, and 14th

amendments of the United States, including false arrest, false imprisonment, and

intentional violation of procedure due process of law, by the Delaware Family Court, as

well as the Delaware Supreme Court.

## JURISDICTION

1.  The respondents include The State of Delaware, agencies empowered by the State

of Delaware, and attorneys licensed to practice law in the State of Delaware, for which

the District Court has overall jurisdiction.

2.  David J. Buchanan is a Citizen of the State of Delaware.

3.  The Eleventh Amendment; "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State." Therefore; The Eleventh Amendment bars jurisdiction only in suits "by Citizens

of another State, or by Citizens or Subjects of any Foreign State," and does not

jurisdictionally bar, prohibit, or give immunity to any tortfeasor, for both punitive, and/or

monetary damages, of this litigation, where David J. Buchanan is a Citizen of the State of

Delaware, for which District this suit is filed.

4.  The United States District Court of Delaware has jurisdiction to enforce all

violations, by State Agency, Contracted State Worker, Lawyer licensed by the State,

and/or any agency/person violating any federal law or HIPAA while in the State of

2

Delaware.

5.   Pursuant to 42 U.S.C. § 2000d–7 Civil rights remedies equalization **(a) General**

**provision (1)** A State shall not be immune under the Eleventh Amendment of the

Constitution of the United States from suit in Federal court for a violation of section 504

of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments

of 1972 [20U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101et

seq.], title VI of the Civil Rights Act of 1964 [42U.S.C. 2000d et seq.], or the provisions

of any other Federal statute prohibiting discrimination by recipients of Federal financial

assistance. (2) In a suit against a State for a violation of a statute referred to in paragraph

(1), remedies (including remedies both at law and in equity) are available for such a

violation to the same extent as such remedies are available for such a violation in the suit

against any public or private entity other than a State.

6.   The United States District Court of Delaware has jurisdiction to enforce all

violations pursuant to 42 U.S.C. § 1320a–7b **(f) "Federal health care program"**

**defined:** For purposes of this section, the term "Federal health care program" means—

"any plan or program that provides health benefits, whether directly, through insurance,

or otherwise, which is funded directly, in whole or in part, by the United States

Government".

7.   The individual Respondents, are licensed and insured professionals practicing in

Sussex County, Delaware, of which some are paid by the State of Delaware, and

routinely perform duties as attorney *ad litem* for the Court Appointed Special Advocate,

as well as *amicus curiae* for the Delaware Supreme Court.

8.   The respondents are subject to criminal charges for matters identified within in

3

the State of Delaware, for which civil damages can be awarded by the Court.

9. The petitioner is a resident of Sussex County, Delaware.

10. The United States District Court District of Delaware has jurisdiction over all matters that violate United States Constitutional law, which are resultant of, but not limited to those violations arising from actions by the State of Delaware, or any person paid by the State of Delaware, and/or actions in conjunction with any person paid by the State of Delaware.

### Cause specific to Delaware Family Court

6. The Family Court has violated Article IV, and the Fourteenth Amendment of the U.S. Constitution by restriction of Mr. Buchanan's Privileges and Immunities when prejudicing and further restricting equal and just access to Family Court, by assaulting the his right to own real property, causing mental and emotional distress by the denial of procedural due process when publishing the intent to list and sell real property prior to a property division hearing, taking away access to family without procedural due process, beyond the guidelines of the State of Delaware, and established a landscape of litigation favorable to opposing counsel's, intent to deprive Mr. Buchanan of all rights of life, liberty, or property, which are enforceable through 42 U.S.C. §1983.

7. The Family Court has violated Article IV, and the Fourteenth Amendment of the U. S. Constitution by restricting Mr. Buchanan's Privileges and Immunities when invoking the wills of attorneys Thomas E. Gay, and Kristen S. Gibbons (attorney appointed by the State of Delaware), and violating Mr. Buchanan's right to family when interfering in Mr. Buchanan's right to direct his child's education and development of religion characterized by Family Court ordering isolation of the child from the father for

4

a period of time exceeding State Statute, and the issuance of mid trial Summary

Judgment preventing interview of the minor during the proceedings, further showing the

willful intent to interfere with procedural due process, where the right to procedural due

process is "absolute" in the sense that it does not depend upon the merits of a claimant's

substantive assertions, and because of the importance to organized society that procedural

due process be observed, the denial of procedural due process should be actionable for

damages without proof of actual injury. *See SUPREME COURT OF THE UNITED*

*STATES 435 U.S. 247; 98 S. Ct. 1042; 55 L. Ed. 2d 252; 1978 U.S. LEXIS 69*

   8.  On or about November 29, 2004, during the course of domestic proceedings, The

Presiding Judge caused harm to Mr. Buchanan by violating the intent of the 5th, 8th, 14th

Amendment of the U. S. Constitution, and Article IV, by considering testimony from

Delaware State Police Officers  pertaining to arrests of David J. Buchanan that were

neither justified, as a result of warrant or signed complaint, and did not withstand

prosecution, disparaging Mr. Buchanan as a parent and causing defamation to his

character, resulting in an unfavorable stipulation of child custody, in the light that such

combined actions by the State Police, Family Court, CASA, Counsel for CASA, and

opposing counsel, shows combined intent, characteristic to conspiracy, which damages

can be obtained through enforcement of 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

   9.  On or about November 29, 2004, during the course of domestic proceedings, The

Presiding Judge caused harm to Mr. Buchanan by violated the intent of the 5th, 8th, 14th,

Amendments, and , and Article IV of the U. S. Constitution, by failing to acknowledge

the financial repercussions associated with divorce that have been identified as loss of use

of property, impairment of mortgage contracts pursuant to 42 U.S.C. § 1981, loss of

insurance, and devaluation of heath care benefits, by neglecting to enforce Subpoenas, in

further violation of due process of law, enforceable by 42 U.S.C. § 1983, and where the

Court had knowledge that violations of rights were about to occur and had the power to

prevent, subjects the Court to 28 U.S.C. § 1343, and where "neglect" is defined as; "the

act of a reasonable prudent person under the circumstances," substantiates liability on the

Family Court. *See Cohen v. Brandywine Race Assoc. Del. Superior (1968).*

10. On or about September 3, 2004, during the course of domestic proceedings as a

result of an emergency petition for interim alimony, The Presiding Judge caused harm

to Mr. Buchanan by violating the intent of the 5th, 8th, 14th, Amendments, and Article

IV of the U. S. Constitution, enforceable by 42 U.S.C. §1981, by 42 U.S.C. §1982, 42

U.S.C. §1983, and 28 U.S.C. § 1343 by failing to acknowledge the financial

repercussions associated with divorce that have been identified as loss of use of property,

loss of insurance, devaluation of heath care benefits, interference of family, and

impairment of contracts, by neglecting to enforce Subpoenas at the request of opposing

counsel for wrongful violation of Bankruptcy stay 362, then following an incomplete

hearing on November 29-30, 2004, issued orders of custody that are considered cruel and

unusual which inflict punishment on both the minor child Heidi, and her father David J.

Buchanan, by causing the parties to pay money to a third party to exercise the right of

family contact, as well as disparaging Mr. Buchanan as a parent.

11. During the course of this litigation the Family Court abused it's discretion when

continuing divorce proceedings, in the light that the petitioning wife had not complied

with court rules, and did not appear for divorce proceedings justifying a dismissal with

prejudice of the divorce petition, then the Family Court disregarded numerous pleadings

by David J. Buchanan, to stay divorce prior to issuing a certificate, then following the

issue of a divorce certificate, failed to protect Federal health benefits afforded Mr.

Buchanan by way of marriage, further defined by ~~and~~ 42 U.S.C. § 2000d–4a, showing

willful intent to violate 18 U.S.C. § 245 (B)(1)(b), by interfering with rights to enjoy a

Federal benefit or program. Emphasis added; the Family Court, knowingly imposed

conditions on Mr. Buchanan, that caused him to be denied medical benefits to continue

treatment of cancer, while in a critical phase of his treatment, by not staying divorce, not

enforcing subpoena pertaining to matters, and dismissing an emergency motion

requesting such benefits be protected by court order.

12. On or about November 30, 2004, during the course of domestic proceedings, The

Presiding Judge caused harm to Mr. Buchanan by violated the intent of the 5th, 8th, 14th

Amendment of the U. S. Constitution, and Article IV, by not declaring a mistrial, or

ordering the proceedings incomplete, following Mr. Buchanan's withdraw of his petition

for custody, following opposing counsel's testimony that he had personally contacted an

expert witness, following service of subpoena on that witness at the request of Mr.

Buchanan, where Mr. Gay's actions were a clear violation of Title 11 § 1269 of

Delaware Code, by tampering with testimony expected to be offered in a court

proceeding, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42

U.S.C. § 1985.

## Cause specific to Delaware Supreme Court

13. On February 25, 2005, the Supreme Court of Delaware allowed *Motion to

Dismiss Pursuant to Rule 29(b)*, filed by Kristen S. Gibbons, Esquire; *Attorney Ad Litem*

to be filed and considered by the Court, in violation of Delaware Supreme Court Rule 7

(c)(8), where the *Attorney Ad Litem* had not been Captioned on the Appeal filed, Case No. 558, 2004, and where such Motion to Dismiss would be a <u>willful violation of due process of law</u> in an act to terminate parental rights, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

14. On May 16, 2005, the Supreme Court of Delaware allowed *Motion to Dismiss Emergency Motion for Mandatory Injunction*, filed by Kristen S. Gibbons, Esquire, *Attorney Ad Litem* to be filed and considered by the Court, in <u>violation of Delaware Supreme Court Rule 7 (c)(8)</u>, by expanding the Caption of the Appeal filed, Case No. 558, 2004, to include the *Attorney Ad Litem* as a third Appellee, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

15. On May 16, 2005, the Supreme Court of Delaware allowed *CASA's Answer to Motion to Reconsider Order to Withdraw Appearance*, filed by Kristen S. Gibbons, Esquire, *Attorney Ad Litem* to be filed and considered by the Court, in <u>violation of Delaware Supreme Court Rule 7 (c)(8)</u>, by expanding the Caption of the Appeal filed, Case No. 558, 2004, to include the *Attorney Ad Litem* as a third Appellee, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

**Cause specific to Kristen S. Gibbons, Esquire, Attorney Ad Litem**

16. Kristen S. Gibbons, Esquire, is a contracted attorney paid by the State of Delaware, who personally involved herself in Civil Rights as well as HIPAA violations, and is not an employee of the State of Delaware, or acting member of the CASA organization, to whom is not protected by any stipulation of the Eleventh Amendment, or absolute immunity provided to State employees, and where she is obligated by 28 U.S.C. § 1343, to enforce the rights of all parties involved in litigation for which she has entered

8

an appearance, which go to better the rights enjoyed by her client, further libels her to damages for her actions, and where the Court Appointed Special Advocate (CASA), nor the Department of Family Services (DFS) filed any reports recommending any stay of contact between Mr. Buchanan, and his daughter, or any recommendation to terminate parental rights, empowering Ms. Gibbons to act on the behalf of the State, her actions are not integrally related to the judicial process affording her absolute immunity, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

17. Kristen S. Gibbons, Esquire, was appointed by Judge Henriksen of the Sussex County Family Court, of the State of Delaware, to represent the best interest of the minor child Heidi N. Buchanan, who was born on March 10, 1988, and who was removed from her father's care by the Delaware State Police, without cause, on January 29, 2003, where Ms. Gibbons failed to motion the Family Court to return the minor to her father, following an inconclusive evidentiary hearing on February 14, 2003, further violating Delaware Family Court Rules.

18. Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing while; in violation of 42 U.S.C. §1981, 42 U.S.C. §1983, 28 U.S.C. § 1343, and HIPAA, pertaining to financially disadvantaged the Plaintiff, by not taking action against opposing counsel Thomas E. Gay, Esquire, upon claims before the Family Court, as to Thomas E. Gay, accepting substantial funds for legal fees, which originated from funds on deposit for both Heidi N. Buchanan and her deceased brother Patrick J. W. Buchanan, of which had remained in the fiduciary control of Mr. Gay's client, Barbara H. Buchanan, for which Kristen S. Gibbon's entered a pleading of "it is not the Parent's responsibility to provide a college education".

9

19. Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing while; in violation of 42 U.S.C. §1985, and 28 U.S.C. § 1343, by conspiring with opposing counsel Thomas E. Gay, Esquire, to continue isolation of the minor child from her father, for a period of time exceeding 2 years, following an inconclusive evidentiary hearing on February 14, 2003, and an incomplete custody hearing on November 29, 2004, an isolation that has continued after the minor turned 18 years of age on March 10, 2006, and is with willful violation of Delaware law, and Family Court procedures governed by the 200 series of Family Court Rules.

20. Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing while; in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. § 1343, HIPAA Privacy Rule § 164.524 (a), and due process rights guaranteed by the 14th Amendment, when supporting motions of opposing counsel, before the Family Court to stay contact between father and the minor child, without cause, and in violation of the State of Delaware legislative intent, where neither the Department of Family Services, nor the Court Appointed Special Advocate, had filed the necessary reports supporting such action.

21. Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing while; in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. § 1343, ), in violation of HIPAA Privacy Rule § 164.524 (a), and due process rights guaranteed by the 14th Amendment, by proceeding with a custody proceeding on Plaintiff's petition, with the intent and landscape of a parent rights termination proceeding, and then with disregard for her client's family rights, failed to address the required procedures to cancel such rights, as Office of the Child Advocate had previously briefed to the Delaware Supreme

Court as *Amicus Curiae*, in support of parental rights of an incarcerated felon. *See*

*Supreme Court of Delaware, 803 A.2d 948; 2002 Del. Lexis 46.*

    *22.* Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing

while; in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. § 1343, ), in

violation of HIPAA Privacy Rule § 164.524 (a), and procedural due process mandated by

United States and Delaware Constitutions, by not moving the Family Court to; (1) allow

Mr. Buchanan visitation rights, (2) develop a reunification plan, in the shadow of

extended court delays, and (3) attempt reunification as an option, before effectively

terminating father's parental rights, where such isolation and violation of parental rights

is not supported by clear and convincing evidence, goes to support opposing counsel's

intent, and is not in the best interest of Heidi. *See Supreme Court of Delaware, No. 498,*

*2005.*

    *23.* Kristen S. Gibbons, Esquire, showed personal involvement and wrongdoing

while; in violation of 42 U.S.C. §1983, 42 U.S.C. §1985, 28 U.S.C. § 1343, ), in

violation of HIPAA Privacy Rule § 164.524 (a), and procedural due process of law

mandated by United States and Delaware Constitutions, by moving the Delaware

Supreme Court in answering brief, Case No. 558, 2004, in violation of Delaware

Supreme Court Rule 7 (c) (8), and with total disregard for her client's civil rights, rights

of Mr. Buchanan, and the rules of the Delaware Supreme Court, to dismiss father's

appeal of Family Court Order pertaining to custody visitation, for appellant (father) being

unable to provide a very costly transcript of the Family Court proceedings, in the light of

numerous emergency requests for support by father, and further filed answers with the

Delaware Supreme Court defending misconduct of Counsel Thomas E. Gay, Esquire, and

John F. Brady, Esquire, at the expense of her client's family rights.

24. Kristen S. Gibbons, Esquire, violated conditions enforceable by 28 U.S.C. §

1343, when she failed to defend the rights of her client, and the father's family rights

intended by the Delaware State Legislature, by not initiating reunification, at the time of

her submission of *CASA's Response To Motion For Continuance*, dated June 27, 2003,

Family Court Case No. CS94-3107, in response to Thomas E. Gay's, motion for

continuance of a custody hearing scheduled for August 21, 2003, which extended the

time of separation of the child from her father to over 6 months from the time the child

was removed from Mr. Buchanan's care, and over 9 months from Mr. Buchanan's

petition for custody, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and

42 U.S.C. § 1985.

### Cause specific to Delaware State Police

25. On or about November 14, 2002, two officers of the Delaware State Police,

conspired to arrested, and arrested Mr. Buchanan, followed by one officer detaining,

and bring Mr. Buchanan before a Delaware Magistrate for arraignment, resulting in

an order restraining Mr. Buchanan from attending his place of worship, without cause,

without a signed complaint, and in absence of witnessing any violation of the law, and

further in violation of State and Federal guidelines pertaining to arrest, with tortuous

liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

26. On November 29, 2004, State Police Officer Gray, who had arrested Mr.

Buchanan without cause, then appeared in uniform, at the request of Thomas E. Gay,

Esquire, to testify in Family Court custody proceedings, to questions pertaining to Mr.

Buchanan's arrest, with the intent to discredit Mr. Buchanan character, where claims for

damages are enforceable pursuant to 28 U.S.C. § 1343, 42 U.S.C. §1983, and 42 U.S.C.
§1985.

27. On November 29, 2004, Officer Sherry Benton of the State Police, perjured
herself by offering false testimony to Family Court proceedings, by stating that she
had no prior contact with Mr. Buchanan, and did not know him personally, in the
shadow of her past casual friendship with Mr. Buchanan, which had terminated when
her twin sister broke off intimate relations with Mr. Buchanan younger brother, with
tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

28. On March 21, 2006, two large male, armed officers of the State Police, in full
uniform, showed an unreasonable presents of force, with the intent to intimidate, distract,
and prejudice a fair proceeding, by placing themselves immediately behind Mr.
Buchanan, pro se, and blocking the exit from the court room, at the commencement of
property separation proceedings, where their presents spawned comments from the
presiding Judge Henriksen, which would be contained in a court record, with tortuous
liability enforceable pursuant to 42 U.S.C. § 1983, 42U.S.C. § 1985, and 18 U.S.C.
§ 1512 (3) (C) (b) (1).

### Cause specific to Georgetown Police

29. On or about August 6, 2003, the Georgetown police detained Mr. Buchanan
without cause, while walking from divorce proceedings, causing Mr. Buchanan physical,
as well as emotional harm by detaining him in the Sun following Chemo treatments for
cancer, where such treatments, and Mr. Buchanan's obvious state of health made him
physical fragile to such conditions, where following such harassment one of the officers
followed Mr. Buchanan into his nearby Dr.'s office, with tortuous liability enforceable

13

pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

30. The Georgetown Police continue to harass Mr. Buchanan with parking tickets issued in violation of free parking, when Mr. Buchanan accesses the Georgetown Courthouses, and claims such fines against his credit, while Mr. Buchanan is in Bankruptcy, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985, 18 U.S.C. § 1512..

### Cause specific to Seaford Police

31. The Seaford Police, arrested and detained Mr. Buchanan from the parking lot of his cancer treatment facility (Nanticoke Memorial Hospital), preventing his timely treatment of cancer, where it is know that a former secretary for Thomas E. Gay, Esquire, works as a volunteer at the admission desk, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

32. The Seaford Police, detained at the Seaford police department, then transported Mr. Buchanan to Georgetown Courthouse to appear, then left Mr. Buchanan without transportation to return to the hospital, while noticeably ill, which further increasing a risk of harm to Mr. Buchanan, and delaying his treatment, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

### Cause Specific to The Honorable M. Jane Brady Characteristic to Conspiracy

33. The Honorable M. Jane Brady, (Delaware Attorney General) failed to timely dismiss charges resulting from arrest of Mr. Buchanan, causing repeated arrests, and incarceration, where she and her office had knowledge of such issues that were before the Delaware Court system that would cause unwarranted arrest of Mr. Buchanan to occur, and  neglected her power to prevent, violating provisions of 28 U.S.C. § 1343, 42

U.S.C. §1983, and if at the will or protection of her affiliation with the firm Stumpf,

Vickers and Sandy, P.A., with tortuous liability enforceable pursuant to 42 U.S.C. §

1983, and 42U.S.C. § 1985.

34. The Honorable M. Jane Brady, (Delaware Attorney General) failed to discharge

the oath of her office, by not pursuing Mr. Buchanan's complaints of felony misconduct

by opposing counsel Thomas E. Gay, and his firm, pursuant to 28 U.S.C. § 1343, with

tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

35. The Honorable M. Jane Brady, (presiding Superior Court Judge) interfered with

the timely proceedings, pursuant to 28 U.S.C. § 1343, by not publishing reasons for her to

Recuse as 2nd presiding Judge in litigation of Buchanan v. Gay, Delaware Superior Court

Case No. 06C-01-002, which go to identify the Superior Court's recognition of sets of

circumstances for which Mr. Buchanan can prevail. Date of assigning Memorandum

appointing Judge Brady dated March 10, 2006 (18th birthday of Heidi N. Buchanan), with

tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

### Cause specific to John F. Brady, Esquire

36. On February 18, 2005, filed an entry of appearance on behalf of Appellee

(Barbara H. Buchanan) in the Supreme Court of Delaware, Case No. 558, 2004,

following his recent representation of David J. Buchanan, on matters closely associated

with matters before the Delaware Family Court, with tortuous liability enforceable

pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

37. On February 28, 2005, Appellant (David J. Buchanan), Case No. 558, 2004,

motioned the Supreme Court of Delaware to reconsider order to withdraw appearance

Thomas E. Gay, Esquire, where John F. Brady, Esquire, had been counsel for Mr.

15

Buchanan, and would be in fiduciary conflict with Mr. Buchanan's best interests if Mr.

Brady continued to represent the Appellee, and where Thomas E. Gay, Esquire, failed to

present good cause to be dismissed as counsel on appeal, with tortuous liability

enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

### Cause specific to Thomas E. Gay, Esquire, Thaila J. Gay, and the firm of Stumpf, Vickers, and Sandy, P.A.

38. On or about _____, 2003, Thomas E. Gay, Esquire with malice caused

defamation of Mr. Buchanan's character when he signed, and forwarded a letter typed

on stationary displaying the title of the law firm Stumpf, Vickers, & Sandy, PA, to

presiding Family Court Judge, the Honorable Judge John E. Henriksen, wrongfully

accusing David J. Buchanan of felony theft of an automobile, which later appeared in an

opinion published by the Honorable Judge John E. Henriksen, with tortuous liability

enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

39. On or about March 18, 2003, Thomas E. Gay, Esquire caused severe emotional

harm to both Heidi N. Buchanan and David J. Buchanan, after gaining knowledge of

Mr. Buchanan's hospitalization for a life threatening disease (Cancer), by and through

his client's access to TRICARE billing information, in violation of HIPAA Privacy Rule

§ 164.524 (a), and with the contemptuous intent to use such information in a suit before

the Delaware Family Court, filed with Malum In Se, and malice, an emergency motion to

Stay all contact between Mr. Buchanan, and his daughter Heidi N. Buchanan, with

tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

40. On or about March 18, 2003, , Thomas E. Gay, Esquire caused severe emotional

harm to both Heidi N. Buchanan and David J. Buchanan after gaining knowledge of Mr.

Buchanan's hospitalization for a life threatening disease (Cancer) by and through his

client's access to TRICARE billing information, in violation of HIPAA Privacy Rule §

164.524 (a, filed with Malum In Se, and malice with the intent to unconstitutionally

impair mortgage contracts, an Emergency Motion to List and Sell the Marital Home,

without consideration of his clients ability to maintain the property pending property

separation, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C.

§ 1985.

41. On or about September 3, 2004, Thomas E. Gay, Esquire failed to observe

Federal Bankruptcy Laws when after gaining knowledge that Mr. Buchanan had filed

for protection under Federal Bankruptcy Laws in Bankruptcy Court in and for the

District of Delaware, mislead with malice, the presiding Judge during an evidentiary

Hearing as to conditions of Bankruptcy Rule 362 -Automatic Stay, pertaining to Alimony

proceedings, and has effectively delayed any alimony proceeding to the date of March 9,

2006, causing further financial damage to Mr. Buchanan by impairing payment of

mortgage contracts guaranteed by Barbara H. Buchanan, and violating the intent of 42

U.S.C. § 1981, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and

42U.S.C. § 1985.

42. On or about September 3, 2004, Thomas E. Gay, Esquire Disadvantaged the

Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena

for Barbara H. Buchanan to provide herself, the minor child Heidi N, Buchanan, as well

as financial documents to an Emergency evidentiary hearing pertaining to interim

alimony and Health Care Benefits (TRICARE), with the intent to Quash a subpoena after

Mr. Gay directed his client not to appear, entered a letter into evidence with the Court

displaying the Honorable Judge John E. Henriksen's signature and opinion, published

while the Judge was in private Practice, preventing a motioned default Judgment for interim alimony to protect Federal TRICARE benefits, further violating 18 U.S.C. § 245, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

43. The Firm of STUMPF, VICKERS, & SANDY, P.A. caused to direct the Georgetown Police by placing a phone call to harass Mr. Buchanan with out provocation (requested assistance), and detain in heat of the Sun immediately following Family Court Proceedings while Mr. Buchanan was noticeably ill from Chemo Therapy, violating civil rights guaranteed by Amendment XIV, Section 1 of the U.S. Constitution, by depriving Mr. Buchanan of life, and liberty, without due process of law, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

44. On or about November 14, of 2004, Thomas E. Gay, Esquire, Disadvantaged the Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena to Dr. Wilson III to testify in custody proceeding, contacted, discussed, coached, conspired, and further compromised the testimony of the expert expected to testify in a custody proceeding, with willful violation of 42 U.S.C. § 1983, and 42 U.S.C. § 1985, while using the offices of the law firm Stumpf, Vickers, & Sandy, PA..

45. Thomas E. Gay, Esquire, violated the Plaintiff's Civil Rights guaranteed by the 5th, 8th, and 14th amendments of the U.S. Constitution when he petitioned, motioned, conspired, and further exploited the best interests of his client, Heidi N. Buchanan, by violating her civil right to contact her father, further prejudicing the relationship between father and daughter by motioning the Court to prevent any contact between father daughter for a period of time (6 months) that exceeds Delaware Law, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

18

46. Thomas E. Gay, Esquire, and his wife, violated the Plaintiff's Civil Rights guaranteed by the 5th, 8th, and 14th amendments of the U.S. Constitution, and all laws enforcing HIPAA, by accepting medical information from Beebe Hospital, by and through his wife/nurse Thaila J. Gay of 424 Savannah Road, Lewis Delaware, in the light that she breached her fiduciary duty to Mr. Buchanan as an employee of Mr. Buchanan's medical treatment provider by failing to notify her employer, the Family Court, and most importantly Mr. Buchanan (a patient of Beebe Hospital) of her omission of conflict in providing medical services, to Mr. Buchanan either directly or indirectly by and through her place of employ, where her marital relation to Thomas E. Gay, Esquire, the attorney of record in opposition to Mr. Buchanan in domestic issues, advantaged the Gays' profit by the financial dissolve of Mr. Buchanan's assets during his treatment of cancer at Beebe Hospital. Mrs. Gay's omission of conflict further imputes liability on herself for the actions of her Husband Thomas E. Gay, Esquire, by engaging in *Malum In Se* conduct involving dishonesty, fraud, deceit, and/or misrepresentation, omission of conflict, where his wife maintained employment at the health care facility to which Mr. Buchanan depended on for treatment of Cancer, and which enabled Mr. Gay to access Mr. Buchanan's medical records by and through his Wife's employ, imputing liability on himself for actions of his wife, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

47. Mrs. Thaila Joan Gay has been entrusted as an employee of Beebe Hospital, with the confidences and circumstances of all patients of the Hospital, in which a client/patient would be entitled to repose, confidence and trust, and where Mrs. Gay has

ample opportunity to invade the privacy of Mr. Buchanan to assist her husband Thomas

E. Gay, Esquire, for personal gain, shows a willful violation of a fiduciary, with tortuous

liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

48. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the

guidelines of patient care by causing severe emotional harm to Mr. Buchanan, by

failing to notify Mr. Buchanan of her access to medical records, insurance records,

treatment schedules, and any other information that pertains to Mr. Buchanan's treatment,

and treatment at Beebe Hospital, to which her husband has made such records an issue of

in Family Court proceedings, showing a willful violation of a fiduciary, with tortuous

liability enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

49. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the

guidelines of patient care causing severe emotional harm as a result of loss of right of

family and privacy to Mr. Buchanan, when Thomas E. Gay, Esquire, imputed his

professional responsibility on his wife, where such tortuous liability is enforceable

pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

50. In an attempt to further his case in Family Court with the intent to isolate the

minor child from her father, and to conceal child abuse occurring in the care of his client

Barbara H. Buchanan, Mr. Gay breached his fiduciary duty to the minor in support of

claims by another client to the Family Court, with affidavit taken directly from the minor

child, giving the minor and the Court the impression that he was counsel for the child,

when providing his signature on the motions filed in accordance with Family Court Rule

11 (a), where Mr. Gay would be considered the attorney of record, and where Mr. Gay

has been entrusted with the child's confidences and circumstances, in which a client

would be entitled to repose, confidence, and trust including protection from abuse, where

such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

51. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

identify to the Supreme Court "good cause" to be given leave of Court in these

proceedings on appeal pertaining to custody, with tortuous liability enforceable pursuant

to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

52. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

provide notice to Barbara H. Buchanan, Heidi N. Buchanan, David J. Buchanan, or the

Family Court of possible conflict in any matter, with tortuous liability enforceable

pursuant to 42 U.S.C. § 1983, and 42U.S.C. § 1985.

53. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by not

disclosing attorney conflict, as defined by Rule 1.7 of the Delaware Lawyer Rules of

Profession Conduct, with tortuous liability enforceable pursuant to 42 U.S.C. § 1983, and

42 U.S.C. § 1985.

54. Stumf, Vickers, & Sandy, P.A., here and throughout to be referred to as the

"Firm", caused loss of rights and financial support from Barbara H. Buchanan by failing

to make reasonable efforts to ensure effective measures were in place to ensure that

Thomas E. Gay, Esquire, a member of the Firm, complied with the Rules of Professional

Conduct in violation of Rule 5.1 (c) (2), where such tortuous liability is enforceable

pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

55. In an attempt to further his case in Family Court with the intent to isolate the

minor child from her father violating rights guaranteed by the 5th, 8th, and 14th

Amendments to the U.S. Constitution, and to cause financial harm to Mr. Buchanan,

Mr. Thomas E. Gay. Esquire, with *Malum In Se*, engaged in conduct involving

dishonesty, fraud, deceit, and/or misrepresentation, by filing knowingly misleading

and grossly incorrect financial disclosure of his clients, on the Form 16 (c), with the

Family Court, where such tortuous liability is enforceable pursuant to 42 U.S.C. §

1983, and 42 U.S.C. § 1985.

56. In an attempt to further his case in Family Court with the intent to isolate the

minor child from her father violating rights guaranteed by the 5th, 8th, and 14th

Amendments to the U.S. Constitution and to cause financial harm to Mr. Buchanan,  Mr.

Gay engaged in *Malum In Se* conduct involving dishonesty, fraud, deceit, and/or

misrepresentation, by filing knowingly misleading and grossly incorrect emergency

motions requesting the liquidation of (emergency motions not addressed or permitted by

Family Court Rules) Real Estate utilized by Mr. Buchanan for home and employ, during

a period of time that Mr. Buchanan was incapacitated with emergency medical care,

where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C.

§ 1985.

57. In an attempt to further his case in Family Court with the intent to isolate the

minor child from her father violating rights guaranteed by the 5th, 8th, and 14th

Amendments to the U.S. Constitution, with willful violation of due process of law, and to

cause emotional harm to Mr. Buchanan, Mr. Gay with Malum In Se, engaged in conduct

involving dishonesty, fraud, deceit, by filing knowingly misleading and grossly incorrect

emergency motion requesting a stay of contact between Mr. Buchanan and his daughter

Heidi, during a period of time that Mr. Buchanan was incapacitated with emergency

medical care, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

58. In an attempt to further his case in Family Court, Mr. Gay had knowledge of, and seemingly directed the action of State Police to antagonize Mr. Buchanan with false arrest, detention, harassment, and treatment that prevented Mr. Buchanan access to medical facilities while seeking treatment for cancer, further violating rights guaranteed the Buchanan's by the 5th, 8th, and 14th, amendments of the U.S. Constitution, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

59. In an attempt to further his case in Family Court, Mr. Gay with the assistance of his wife, gained knowledge of, and seemingly directed the action of law enforcement agencies to interrupt medical treatment with wrongful arrest, causing an increased risk of harm to Mr. Buchanan, which may have resulted in death, where such tortuous liability is enforceable pursuant to where such tortuous liability is enforceable pursuant to 18 U.S.C. § 245, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

60. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation, and violating Title 11 § 1269 of Delaware Code, by tampering with physical evidence, where it is a record of the Family Court that on September 3, 2004, Mr. Gay entered testimony and documents to the Court in an attempt to dismiss his client from appearing, as well as from providing financial documents that were requested by subpoena duces tecum, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

61. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation , by directly addressing the

23

presiding Judge Henriksen by letter captioned with heading of Stumpf, Vickers, &

Sandy, P.A., causing defamation of Mr. Buchanan's character by accusation of felony

auto theft, where Judge Henriksen later published an induced evil opinion of Mr.

Buchanan pertaining to Mr. Gay's unfounded accusation of theft, where such tortuous

liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

62. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct

involving dishonesty, fraud, deceit, libeling him with derivative **tort**, and further violated

Mr. Buchanan's 5th amendment right to privacy, as well as HIPAA, by accessing Mr.

Buchanan's medical billing information at Nanticoke Memorial Hospital by and through

his client Barbara H. Buchanan, where such tortuous liability is enforceable pursuant to

42 U.S.C. §2000d, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, where TORT "IS

COMMITTED WHEN THE ACTOR EMPLOYS LEGAL PROCESS IN A MANNER

TECHNICALLYCORRECT, BUT FOR A WRONGFUL AND MALICIOUS

PURPOSE TO ATTAIN ANUNJUSTIFIABLE END. *See WHEELDIN V. WHEELER,*

*373 U.S. 647.*

63. In an attempt to further his case in Family Court, and to avoid litigation on Appeal

of matters in Delaware Supreme Court, Case No. 558, 2004, Mr. Gay engaged in conduct

prejudice to the administration of justice, by withdrawing as counsel responsible for

briefs on appeal without good cause, and has further abused the legal process of court by

procuring "the issuance of valid, authorized legal process, albeit with a wrongful

intention and for an unjustifiable end." *See WHEELDIN V. WHEELER, 373 U.S. 647,*

where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C.

§ 1985.

24

64. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

identify and safeguard funds belonging to a client, also represented by CASA attorney *ad*

*litem* (Kristin Gibbons, Esquire), after claim of such funds were maid in Family Court

proceedings, where such tortuous liabiiity is enforceable pursuant to 42 U.S.C. § 1983,

and 42 U.S.C. § 1985.

65. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

return or deliver funds belonging to a client, represented by CASA attorney *ad litem*,

after claim of such funds were made in Family Court proceedings, and where Mr. Gay,

Esquire, possessed accounting that reflects the amount of such funds belong to the minor.

*See Pepper v. Litton, 308 U.S. 295,* where such tortuous liability is enforceable pursuant

to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

66. Mr. Gay violated the rights of the minor child to have contact with her father, and

the right of the father to have contact with his child guaranteed by the U.S. Constitution

during the treatment of a life threatening disease, by engaging in conduct involving

dishonesty, fraud, deceit, when moving the Family Court to stay contact between father

and child, while Mr. Buchanan was undergoing emergency medical attention preventing

a lucid pro se response, where Mr. Gay had gained knowledge of such treatment by and

through his client Barbara H. Buchanan, violating HIPAA, and acted with MALA IN SE,

where according to Blackstone, are offenses against "(THOSE) RIGHTS THEN WHICH

GOD AND NATURE HAVE ESTABLISHED, AND ARE THEREFORE CALLED

NATURAL RIGHTS, SUCH AS ARE LIFE AND LIBERTY, THEE WORSHIP OF

GOD, THE MAINTENANCE OF CHILDREN, AND THE LIKE." THEY ARE

"CRIMES AND MISDEMEANORS, THAT ARE FORBIDDEN BY THE SUPERIOR

LAWS, AND THEREFORE STYLED MALA IN SE". *See JORDAN V. DE GEORGE, 341 U.S. 223*, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

67. Mr. Gay violated the rights of the minor child by withholding repose expected of an attorney, when continuing to litigate domestic proceeding during Mr. Buchanan's treatment of a life threatening disease, acing in Malum in se where the issuance of a certificate of divorce cancelled any and all health care benefits previously enjoyed by Mr. Buchanan, and made any life insurance as a result of unsuccessful treatment of Mr. Buchanan's disease null and void, where damages would exceed $500,000. *See JORDAN V. DE GEORGE, 341 U.S. 223*, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

68. At the expense of all involved including the best interest of Barbara H. Buchanan, Mr. Gay has abused his fiduciary responsibility to both his clients and the Family Court, by litigating a divorce that severely libels all parties with irreparable financial harm, loss of established financial securities enjoyed through insurance, and has interfered with the right of the Buchanan's to plan their own affairs, and shape their own life as they think best. *See Pepper v. Litton, 308 U.S. 295, Eisenstadt v. Baird, 405 U.S. 438*, where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

*69.* In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has failed to update discovery requested in matters pertaining to Family Court, and the Bankruptcy Court for the District of Delaware, as to the location of persons having knowledge of discoverable matters, and for responses of discovery requests that he has knowledge of being incorrect or no longer true. *See*

*HICKMAN V. TAYLOR, 329 U.S. 495,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

70. In violation of the expected conduct of lawyers and fiduciaries, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable delay in settlement of ancillary matters, causing irreversible financial damage to all parties of this litigation, by frivolous litigation and failure to state a claim as the foundation of a "planned and fraudulent scheme", in an attempt to exhaust funds from all parties of this litigation. *See Pepper v. Litton, 308 U.S. 295,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

71. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of Parental contact with his remaining minor child, loss of spousal support, and the loss of medical benefits providing health care by omission of pertinent facts, to the Family Court, as well as facts requested through examination by the Bankruptcy Court for the District of Delaware, and by causing unnecessary delay in *spousal support* hearings by misleading the presiding Judge Henriksen during a evidentiary hearing on September 3, 2004, where the Gay's seemingly intended to abuse their access to inside information and it's clandestine use for personal profit. *See WOLF V. WEINSTEIN 372 U.S 633,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

72. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of money belonging to the minor child's coffer by omission of pertinent facts, to the Family Court, as well as omission of facts requested through examination by the Bankruptcy

Court for the District of Delaware, for personal gain. *See CF. MICHOUD V.GIROD, 4 HOW. 503, 556-560; WEIL V. NEARY, 278 U.S. 160; MAGRUDER V. DRURY, 235 U.S. 106, 119-120; WOLF V. WEINSTEIN 372 U.S 633,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

73. In violation of the expected conduct of lawyers, as well as conduct expected from a medical care provider, Mr. and Mrs. Gay have violated norms of human conduct, and in contempt for canons of decency attacked Mr. Buchanan's natural rights to; life, liberty, home, physical health, emotional health, privacy, financial freedom, family, property, access to court, and have been most instrumental in preventing Mr. Buchanan from directing his child's education and development of religion. *See MINERSVILLE DISTRICT V. GOBITIS, 310 U.S. 586; CANTWELL V. CONNECTICUT, 310 U.S. 296, OLMSTEAD V. UNITED STATES, 277 U.S. 438, 478,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

74. In violation of the expected conduct of lawyers, as well as conduct expected from a medical care provider, Mr. and Mrs. Gay have violated norms of human conduct, and in contempt for canons of decency attacked Mr. Buchanan's natural rights to; life, liberty, home, physical health, emotional health, privacy, financial freedom, family, property, access to court, and were successful in moving the Family Court in and for Sussex County Delaware, to impose conditions on the Plaintiffs that are penal in nature and which are described as "CRUEL AND UNUSUAL" punishment in a civilized community, in violation of the 8th amendment of the U.S. Constitution. *See TROP V. DULLES, 356 U.S. 86,* where such tortuous liability is enforceable pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

WHEREFORE, The above captioned Petitioner, David J. Buchanan, Pro Se, and in defense of his Constitutional rights, hereby respectfully requests that the Court, consider all the claims within, and order respondents to pay an award of Punitive Damages in the amount of **Six Hundred Million Dollars** ($600,000,000) to compensate David J. Buchanan for the willful taking of civil rights, willful violation of due process of law, intentional infliction of severe emotional harm by all tortfeasors captioned in this suit, distress, and loss of quality of life by infringing on his civil rights guaranteed by both Delaware and U. S. Constitutions, by and through the actions of the Delaware Supreme Court, Delaware Family Court, Kristen S. Gibbons, Esquire (attorney contracted and paid by the State of Delaware), and other members of the Delaware Bar; Thomas E. Gay, Esquire, John F. Brady, Esquire, and the Honorable Judge Jane M. Brady.


DAVID J. BUCHANAN, Petitioner
34806 Hudson Road, Laurel DE 19956
Dated: 11/25/06

# EXHIBIT B

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR SUSSEX COUNTY

DAVID J. BUCHANAN, AND IN THE    :      Case No.
INTEREST OF HEIDI N. BUCHANAN    :

Petitioner, Pro Se, Plaintiffs    :

   :

v.    :

THOMAS E. GAY, ESQUIRE, WIFE    :
THAILA JOAN GAY, AND THE FIRM OF :
STUMPF, VICKERS, & SANDY, P.A.    :
Respondents, Defendants    :

   :

FILED
2006 JAN -3 PM 2:49
PROTHONOTARY
SUSSEX COUNTY

## PETITION TO AWARD DAMAGES FOR BREACH OF FIDUCIARY DUTY, MEDICAL MALPRACTICE, DEFAMATION OF CHARACTER, DERIVATIVE TORT, INFLICTION OF SEVERE EMOTIONAL DISTRESS AND HARM, LITIGATION CONDUCTED IN MALUM IN SE, FAILURE TO OBSERVE FEDERAL BANKRUPTCY LAWS, VIOLATION OF CIVIL RIGHTS, DISADVANTAGING AN OPPOSING PARTY BY MISLEADING A PRESIDING JUDGE, ABUSE OF PROCESS, ERRORS, AND OMISSIONS

**NOW COME** the above captioned Petitioner, David J. Buchanan, Pro Se, and in

the interest of his daughter Heidi N. Buchanan a minor child, hereby petitions the

Superior Court of the State of Delaware in and for Sussex County to award compensatory

Damages to the Plaintiffs, and order the Respondents pay for; breach of fiduciary duty,

medical malpractice, defamation of character, derivative tort, infliction of severe

emotional distress and harm, litigation conducted in malum in se, failure to observe

Federal Bankruptcy Laws, disadvantaging an opposing party by misleading a presiding

Judge, violation civil rights guaranteed by the 5th, 8th, and 14th amendments of the United

States Constitution, abuse of process, errors and omissions, and in support of, state,

allege, aver, identify and claims the following:

## JURISDICTION

1.  The respondents are residential property owners, as well as employed in Sussex

County, Delaware.

2.  The respondents are licensed and insured professionals practicing in Sussex

County, Delaware.

3.  The respondents are subject to criminal charges for matters identified within in

the State of Delaware, for which civil damages can be awarded by the Court.

4.  The petitioner is a resident of Sussex County, Delaware.

5.  The Superior Court of the State of Delaware has jurisdiction over all matters

where damages may exceed $60,000.

6.  The law firm of STUMPF, VICKERS & SANDY, PA, is licensed in the State of

Delaware, and maintains an address at 8 West Market Street, Georgetown Delaware.

7.  The Plaintiffs have the right to bring suit to enjoin enforcement of the statute,

contending that their rights under the Constitution of the United States are, have been,

and will continue to be violated unless conduct by Mr. and Mrs. Gay, described

within be declared unconstitutional as violative of the 5th, 8th, and 14th amendments.

## CAUSE

1.  On or about ___March___ 3, 2004, Thomas E. Gay, Esquire with malice caused

defamation of Mr. Buchanan's character when he signed, and forwarded a letter typed

on stationary displaying the title of the law firm Stumpf, Vickers, & Sandy, PA,

2

(Attachment A) to presiding Family Court Judge, the Honorable Judge John E. Henriksen, wrongfully accusing David J. Buchanan of felony theft of an automobile, which later appeared in an opinion published by the Honorable Judge John E. Henriksen (Attachment B).

2. On or about March 18, 2003, , Thomas E. Gay, Esquire caused severe emotional harm to both Heidi N. Buchanan and David J. Buchanan, after gaining knowledge of Mr. Buchanan's hospitalization for a life threatening disease (Cancer), filed with Malum In Se, and malice, an emergency motion to Stay all contact between Mr. Buchanan, and his daughter Heidi N. Buchanan. (Attachment C).

3. On or about March 18, 2003, , Thomas E. Gay, Esquire caused severe emotional harm to both Heidi N. Buchanan and David J. Buchanan after gaining knowledge of Mr. Buchanan's hospitalization for a life threatening disease (Cancer), filed with Malum In Se, and malice with the intent to unconstitutionally impair mortgage contracts, an Emergency Motion to List and Sell the Marital Home, without consideration of his clients ability to maintain the property pending property separation. (Attachment D).

4. On or about September 3, 2004, Thomas E. Gay, Esquire failed to observe Federal Bankruptcy Laws when after gaining knowledge that Mr. Buchanan had filed for protection under Federal Bankruptcy Laws in Bankruptcy Court in and for the District of Delaware, mislead with malice, the presiding Judge during an evidentiary Hearing as to conditions of Bankruptcy Rule 362 -Automatic Stay, pertaining to Alimony proceedings, and has effectively delayed any alimony proceeding to the date of March 9, 2006, causing further financial damage to Mr. Buchanan by impairing

payment of mortgage contracts guaranteed by Barbara H. Buchanan. (Attachment E)

5. On or about September 3, 2004, Thomas E. Gay, Esquire Disadvantaged the Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena for Barbara H. Buchanan to provide herself, as well as financial documents to an Emergency evidentiary hearing pertaining to interim alimony and health Insurance, with the intent to Quash a subpoena after he directed his client not to appear, entered a letter into evidence with the Court displaying the Honorable Judge John E. Henriksen's signature and opinion, published while the Judge was in private Practice, preventing a motioned default Judgment for interim alimony (Attachment F).

6. The Firm of STUMPF, VICKERS, & SANDY, P.A. caused to direct the Georgetown Police to harass Mr. Buchanan with out provocation, and detain in heat and sun immediately following Family Court Proceedings while Mr. Buchanan was noticeably ill from chemo therapy.

7. On or about November 14, of 2004, Thomas E. Gay, Esquire, Disadvantaged the Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena to Dr. Wilson III to testify in custody proceeding, contacted, discussed, coached, conspired, and further compromised the testimony of the expert expected to testify in a custody proceeding, while using the offices of the law firm Stumpf, Vickers, & Sandy, P.A. (Court record available on request).

8. Thomas E. Gay, Esquire, violated the Plaintiff's Civil Rights guaranteed by the 5th, 8th, and 14th amendments of the U.S. Constitution when he petitioned, motioned, conspired, and further exploited the best interests of his client, Heidi N. Buchanan, by

4

violating her civil right to contact her father, further prejudicing the relationship between father and daughter by motioning the Court to prevent any contact between father daughter for a period of time that exceeds Delaware Law.

9.  While employed as a nurse for Beebe Hospital, Thaila J. Gay of 424 Savannah Road, Lewis Delaware, breached her fiduciary duty to Mr. Buchanan resulting in medical malpractice, by failing to notify her employer, the Family Court, and most importantly Mr. Buchanan (a patient of Beebe Hospital) of her omission of conflict in providing medical services, to Mr. Buchanan either directly or indirectly by and through her place of employ, where her marital relation to Thomas E. Gay, Esquire, the attorney of record in opposition to Mr. Buchanan in domestic issues, where the Gays' stood to profit by the financial dissolve of Mr. Buchanan's assets during his treatment of cancer at Beebe Hospital. Mrs. Gay's omission of conflict further imputes liability on herself for the actions of her Husband Thomas E. Gay, Esquire, by engaging in Malum In Se conduct involving dishonesty, fraud, deceit, and/or misrepresentation, omission of conflict, where his wife maintained employment at the health care facility to which Mr. Buchanan depended on for treatment of Cancer, and which enabled Mr. Gay to access Mr. Buchanan's medical records by and through his Wife's employ, imputing liability on himself for actions of his wife.

10.  Mrs. Thaila Joan Gay has been entrusted as an employee of Beebe Hospital, with the confidences and circumstances of all patients of the Hospital, in which a client/patient would be entitled to repose, confidence and trust, where Mrs. Gay has ample opportunity to invade the privacy of Mr. Buchanan to assist her husband Thomas E. Gay, Esquire, for personal gain.

11. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the guidelines of patient care by causing severe emotional harm to Mr. Buchanan, by failing to notify Mr. Buchanan of her access to medical records, insurance records, treatment schedules, and any other information that pertains to Mr. Buchanan's treatment, and treatment at Beebe Hospital, to which her husband has made such records an issue of in Family Court proceedings.

12. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the guidelines of patient care causing severe emotional harm as a result of loss of right of family and privacy to Mr. Buchanan, when Thomas E. Gay, Esquire, imputed his professional responsibility on his wife.

13. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father, and to conceal child abuse occurring in the care of his client Barbara H. Buchanan, Mr. Gay breached his fiduciary duty to the minor in support of claims by another client to the Family Court, with affidavit taken directly from the minor child, giving the minor and the Court the impression that he was counsel for the child, when providing his signature on the motions filed in accordance with Family Court Rule 11 (a), where Mr. Gay would be considered the attorney of record, and where Mr. Gay has been entrusted with the child's confidences and circumstances, in which a client would be entitled to repose, confidence, and trust including protection from abuse.

14. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to identify to the Supreme Court "good cause" to be given leave of Court in these proceedings on appeal pertaining to custody.

6

15. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to provide notice to Barbara H. Buchanan, Heidi N. Buchanan, David J. Buchanan, or the Family Court of possible conflict in any matter.

16. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by not disclosing attorney conflict, as defined by Rule 1.7.

17. Stumf, Vickers, & Sandy, P.A., here and throughout to be referred to as the "Firm", caused loss of rights and financial support from Barbara H. Buchanan by failing to make reasonable efforts to ensure effective measures were in place to ensure that Thomas E. Gay, Esquire, a member of the Firm, complied with the Rules of Professional Conduct in violation of Rule 5.1 (c) (2).

18. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father violating rights guaranteed by the 5th, 8th, and 14th Amendments to the U.S. Constitution and to cause financial harm to Mr. Buchanan, Mr. Thomas E. Gay. Esquire, with Malum In Se, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, by filing knowingly misleading and grossly incorrect financial disclosure of his clients, on the Form 16 (c), with the Family Court.

19. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father violating rights guaranteed by the 5th, 8th, and 14th Amendments to the U.S. Constitution and to cause financial harm to Mr. Buchanan, Mr. Gay engaged in Malum In Se conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, by filing knowingly misleading and grossly incorrect emergency motions requesting the liquidation of

Real Estate utilized by Mr. Buchanan for home and employ, during a period of time that Mr. Buchanan was incapacitated with emergency medical care. (Attachment H)

20. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father violating rights guaranteed by the 5th, 8th, and 14th Amendments to the U.S. Constitution and to cause emotional harm to Mr. Buchanan, Mr. Gay with Malum In Se, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(ç) of the code, by filing knowingly misleading and grossly incorrect emergency motion requesting a stay of contact between Mr. Buchanan and his daughter Heidi, during a period of time that Mr. Buchanan was incapacitated with emergency medical care.

21. In an attempt to further his case in Family Court, Mr. Gay had knowledge of, and seemingly directed the action of State Police to antagonize Mr. Buchanan with false arrest, detention, harassment, and treatment that prevented Mr. Buchanan access to medical facilities while seeking treatment for cancer, further violating rights guaranteed the Buchanan's by the 5th, 8th, and 14th, amendments of the U.S. Constitution.

22. In an attempt to further his case in Family Court, Mr. Gay with the assistance of his wife, had knowledge of, and seemingly directed the action of law enforcement agencies to interrupt medical treatment with wrongful arrest, causing an increased risk of harm to Mr. Buchanan, which may have resulted in death.

23. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, and violating Title 11 § 1269 of Delaware Code, by tampering with

8

physical evidence, where it is a record of the Family Court that on September 3, 2004, Mr. Gay entered testimony and documents to the Court in an attempt to dismiss his client from appearing, as well as from providing financial documents that were requested by subpoena duces tecum.

24. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, by directly addressing the presiding Judge Henriksen by letter captioned with heading of Stumpf, Vickers, & Sandy, P.A., causing defamation of Mr. Buchanan's character by accusation of felony auto theft, where Judge Henriksen later published an induced evil opinion of Mr. Buchanan pertaining to Mr. Gay's unfounded accusation of theft.

25. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct involving dishonesty, fraud, deceit, libeling him with derivative tort, and further violated Mr. Buchanan's 5th amendment right to privacy, by accessing Mr. Buchanan's medical billing information at Nanticoke Memorial Hospital by and through his client Barbara H. Buchanan, where TORT "IS COMMITTED WHEN THE ACTOR EMPLOYS LEGAL PROCESS IN A MANNER TECHNICALLYCORRECT, BUT FOR A WRONGFUL AND MALICIOUS PURPOSE TO ATTAIN ANUNJUSTIFIABLE END. *See WHEELDIN V. WHEELER*, 373 U.S. 647.

26. In an attempt to further his case in Family Court, and to avoid litigation on Appeal of matters in Supreme Court, Mr. Gay engaged in conduct prejudice to the administration of justice, in violation of Rule 8.4 (d), by withdrawing from briefs of

9

appeal without good cause, and has further abused the legal process of court by

procuring "the issuance of valid, authorized legal process, albeit with a wrongful

intention and for an unjustifiable end." *See WHEELDIN V. WHEELER, 373 U.S.*

*647.*

27. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

identify and safeguard funds belonging to a client in violation of Rule 1.15(a), after

claim of such funds were maid in Family Court proceedings.

28. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

return or deliver funds belonging to a client in violation of Rule 1.15(b), after claim

of such funds were maid in Family Court proceedings, and where Mr. Gay possessed

accounting that reflects the amount of such funds belong to the minor. *See Pepper v.*

*Litton, 308 U.S. 295.*

29. Mr. Gay violated the rights of the minor child to have contact with her father, and

the right of the father to have contact with his child during the treatment of a life

threatening disease, by engaging in conduct involving dishonesty, fraud, deceit, when

moving the Family Court to stay contact between father and child, while Mr.

Buchanan was undergoing emergency medical attention preventing a lucid pro se

response, where Mr. Gay had gained knowledge of such treatment by and through his

client Barbara H. Buchanan, and acted with MALA IN SE, where according to

Blackstone, are offenses against "(THOSE) RIGHTS THEN WHICH GOD AND

NATURE HAVE ESTABLISHED, AND ARE THEREFORE CALLED NATURAL

RIGHTS, SUCH AS ARE LIFE AND LIBERTY, THEE WORSHIP OF GOD, THE

MAINTENANCE OF CHILDREN, AND THE LIKE." THEY ARE "CRIMES AND

MISDEMEANORS, THAT ARE FORBIDDEN BY THE SUPERIOR LAWS,

AND THEREFORE STYLED MALA IN SE". *See JORDAN V. DE GEORGE, 341*

*U.S. 223.*

30. Mr. Gay violated the rights of the minor child by withholding repose expected of

an attorney, when continuing to litigate domestic proceeding during Mr. Buchanan's

treatment of a life threatening disease, acing in Malum in se where the issuance of a

certificate of divorce cancelled any and all health care benefits previously enjoyed by

Mr. Buchanan, and made any life insurance as a result of unsuccessful treatment of

Mr. Buchanan's disease null and void, where damages would exceed $500,000. *See*

*JORDAN V. DE GEORGE, 341 U.S. 223.*

31. At the expense of all involved including the best interest of Barbara H. Buchanan,

Mr. Gay has abused his fiduciary responsibility to both his clients and the Family

Court, by litigating a divorce that severely libels all parties with irreparable financial

harm, loss of established financial securities enjoyed through insurance, and has

interfered with the right of the Buchanan's to plan their own affairs, and shape their

own life as they think best. *See Pepper v. Litton, 308 U.S. 295, Eisenstadt v. Baird,*

*405 U.S. 438.*

32. In violation of the expected conduct of lawyers, as well as rules of civil

procedure, Thomas E. Gay, Esquire, has failed to update discovery requested in

matters pertaining to Family Court, and the Bankruptcy Court for the District of

Delaware, as to the location of persons having knowledge of discoverable matters,

and for responses of discovery requests that he has knowledge of being incorrect or

no longer true. *See HICKMAN V. TAYLOR, 329 U.S. 495.*

33. In violation of the expected conduct of lawyers and fiduciaries, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable delay in settlement of ancillary matters, causing irreversible financial damage to all parties of this litigation, by frivolous litigation and failure to state a claim as the foundation of a "planned and fraudulent scheme", in an attempt to exhaust funds from all parties of this litigation. *See Pepper v. Litton, 308 U.S. 295.*

34. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of Parental contact with his remaining minor child, loss of spousal support, and the loss of medical benefits providing health care by omission of pertinent facts, to the Family Court, as well as facts requested through examination by the Bankruptcy Court for the District of Delaware, and by causing unnecessary delay in spousal support hearings by misleading the presiding Judge Henriksen during a evidentiary hearing on September 3, 2004, where the Gay's seemingly intended to abuse their access to inside information and it's clandestine use for personal profit. *See WOLF V. WEINSTEIN 372 U.S 633.*

35. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of money belonging to the minor child's coffer by omission of pertinent facts, to the Family Court, as well as omission of facts requested through examination by the Bankruptcy Court for the District of Delaware, for personal gain. *See CF. MICHOUD V.GIROD, 4 HOW. 503, 556-560; WEIL V. NEARY, 278 U.S. 160; MAGRUDER V. DRURY, 235 U.S. 106, 119-120; WOLF V. WEINSTEIN 372 U.S 633.*

12

Heidi N. Buchanan and her father David J. Buchanan for severe emotional harm, distress, and loss of quality of life by the infringement of civil rights guaranteed by the U. S. Constitution, by and through the actions of Mr. and Mrs. Thomas E. Gay, Esquire, intrinsic libel of the firm of Stumf, Vickers, & Sandy, P.A., and medical malpractice associated with Thaila J. Gay's profession as a nurse, and refer Mr. and Mrs. Gay to the appropriate governmental Agency for disciplinary action.

Dated: 3 Jan 06

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
Pro Se, Petitioner

14

# EXHIBIT C

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

DAVID J. BUCHANAN, and in the )
interest of HEIDI N. BUCHANAN, )
                           )
        Plaintiff,      )
                           )    C.A. No. 06C-01-002 MMJ
       v.            )
                           )
THOMAS E. GAY, ESQUIRE; THALIA )
JOAN GAY; and the firm of STUMPF, )
VICKERS & SANDY, P.A., )
                           )
       Defendants.    )

## MEMORANDUM OPINION

Submitted: June 26, 2006
Decided:  September 21, 2006

David J. Buchanan, *Pro Se*

Joseph Scott Shannon, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, Attorneys for Thomas E. Gay, Esquire and Stumpf Vickers & Sandy, P.A.

John A. Elzufon, Esquire, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, Attorneys for Thalia Joan Gay

JOHNSTON, J.

## *PROCEDURAL CONTEXT*

On January 3, 2006, *pro se* plaintiff Davis J. Buchanan ("Buchanan") filed a

Complaint, seeking "damages for Breach of Fiduciary Duty, Medical Malpractice,

Defamation of Character, Derivative Tort, Infliction of Severe Emotional Distress

and Harm, Litigation Conducted in Malum In Se, Failure to Observe Federal

Bankruptcy Laws, Violation of Civil Rights, Disadvantaging an Oposing Party by

Misleading a Presiding Judge, Abuse of Process, Errors and Omissions." The

parties filed several motions. The Court held a hearing on the motions on June 26,

2006. Following is the Court's resolution of the motions.

*Motion to Dismiss by Defendant Thaila Joan Gay*

**and**

*Motion to Strike Motion to Dismiss by Defendant Thaila Joan Gay*
*for non Compliance of Court Rules*

**and**

*Plaintiff's Motion for Default Judgment Against Thaila Joan Gay*

**and**

*Motion to Strike Answer and Opposition of Defendants Thomas E. Gay*
*and Stumpf, Vickers & Sandy, P.A.*
*to Plaintiffs' Motion for Default Judgment as to Thaila Gay*

1

As set forth in the Complaint, Buchanan alleges that while employed as a nurse for Beebe Hospital, Thaila Gay "breached her fiduciary duty to Mr. Buchanan resulting in medical malpractice."

Section 6853(a)(1) of title 18 of the Delaware Code provides that all medical negligence complaints must be accompanied by an affidavit of merit, signed by an expert witness, accompanied by a current *curriculum vitae* of the witness, stating that there are reasonable grounds to believe that healthcare medical negligence has been committed. Buchanan has conceded that he has not filed an affidavit of merit. The claim against Thaila Gay clearly is designated as "medical malpractice." The Court finds that plaintiff has failed to comply with the affidavit of merit prerequisite set forth in sections 6853(a)(1) and (c) of title 18 of the Delaware Code.

**THEREFORE, the Motion to Dismiss by Defendant Thaila Joan Gay is hereby GRANTED, with prejudice. The Court having dismissed Defendant Thaila Joan Gay, the Motion to Strike Motion to Dismiss by Defendant Thaila Joan Gay for non Compliance of Court Rules; Plaintiff's Motion for Default Judgment Against Thaila Joan Gay; and the Motion to Strike Answer and Opposition of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy, P.A.**

2

to Plaintiffs' Motion for Default Judgment as to Thaila Gay are hereby

**DENIED AS MOOT.**

\*    \*    \*    \*    \*

*Plaintiff's Motion for Protective Order and Order to Strike*
*Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy P.A.*
*to their Motion for Dismissal in Lieu of an Answer to the Complaint*

During the June 26, 2006 hearing, the Court dismissed, with prejudice,

plaintiff Heidi N. Buchanan as a party to the case. David Buchanan, Heidi's

father, had filed the Complaint purportedly "in the interest of Heidi N. Buchanan."

David Buchanan failed to follow the required procedure for appointment as the

legal representative of a minor. Additionally, at the time of the June hearing,

Heidi had reached majority. By Affidavit of Heidi N. Buchanan attached to the

Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy, P.A. to

their Motion for Dismissal in Lieu of an Answer to the Complaint, Heidi

Buchanan requested that she be dismissed as a party. The Court found that the

Supplement was properly filed in accordance with the Superior Court Civil Rules,

and that the substance of the Supplement was meritorious.

**THEREFORE, Plaintiff's Motion for Protective Order and Order to**

**Strike Supplement of Defendants Thomas E. Gay and Stumpf, Vickers &**

**Sandy P.A. to their Motion for Dismissal in Lieu of an Answer to the**

3

Complaint is hereby DENIED.  Plaintiff Heidi N. Buchanan is hereby dismissed as a party to this case, with prejudice.

Further, in the Motion for Protective Order, Plaintiff alleged that a member of the Delaware Bar engaged in repeated violent conduct.  Specifically, Plaintiff accused the Delaware attorney of endangering a child as follows:

> On or about the filing of the *Affidavit of Heidi N. Buchanan*, the child sustained injuries characteristic to physical coercion, and are repetitive in nature to a broken rib injury sustained by the child on or about the time [the attorney] obtained an Affidavit from the child pertaining to Family Court issues.

There is absolutely no factual basis whatsoever supporting Plaintiff's wholly specious and libelous allegations.  Plaintiff's motion is in violation of Superior Court Civil Rule 11(b).

**THEREFORE, the Court** *sua sponte* **deems as striken in its entirety Plaintiff's Motion for Protective Order and Order to Strike Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy P.A. to their Motion for Dismissal in Lieu of an Answer to the Complaint , as lacking factual support, and clearly having been filed without any reasonable inquiry.**

\*   \*   \*   \*   \*

4

*Plaintiff's Motion for Default Judgment Against Thomas E. Gay, Esquire,*
*and the Firm of Stumpf, Vickers & Sandy, P.A.*

Plaintiff has requested "an order of payment for the amount of $37,000,000

(thirty seven million dollars) in response to, and as a result of Respondents

inexcusable neglect of legal process, laxity in defending any and all allegation of

*Complaint,* where respondents are joint Tortfeasors joint and severally liable for

the damages claimed, where separation of respondent parties has delayed this

litigation, allowed the individual Tortfeasors ample time to retain Counsel,

research and discovery a defense, and *Answer* the allegations of the *Complaint,*

where the Respondents have failed to Provide a timely Answer giving cause for

*Motion for Default Judgment,* pursuant to Superior Court Rule 55. [sic]"

Superior Court Civil Rule 55(b) provides that judgment by default may be

entered "when a party against whom a judgment for affirmative relief is sought has

failed to appear, plead or otherwise defend." Defendants Thomas Gay and

Stumpf, Vickers & Sandy, P.A. were served on January 11, 2006. Counsel for

both defendants entered an appearance on January 26, 2006. Also on January 26,

2006, both defendants filed a Motion for Enlargement of Time to File an Answer.

The Court granted the motion and set March 3, 2006 as the time within which

these defendants must file a responsive pleading. On February 9, 2006, these

5

defendants timely filed a Motion for Dismissal in Lieu of Answer to the

Complaint. A motion to dismiss under Rule 12(b)(6) is a responsive pleading for

purposes of Rule 55.

THEREFORE, Plaintiff's Motion for Default Judgment Against

Thomas E. Gay, Esquire, and the Firm of Stumpf, Vickers & Sandy, P.A. is

hereby DENIED.

\*    \*    \*    \*    \*

*Motion of Thomas E. Gay, Esquire and Stumpf, Vickers & Sancy, P.A.*
*for Dismissal in lieu of an Answer to the Complaint*

The claims asserted in the Complaint fall into three categories. The

following is the Court's analysis of each category.

### Pleadings Filed and Statements Made by Thomas E. Gay, Esquire

The Complaint asserts that Gay made numerous statements that defamed

Plaintiff. Plaintiff also claims that various pleadings, motions and documents,

filed in connection with Family Court proceedings, in bankruptcy proceedings,

and with the Delaware Supreme Court, were malicious and caused Plaintiff severe

emotional harm. Plaintiff also claims that Gay's actions in connection with court

proceedings harmed Plaintiff and resulted in unreasonable delay, financial

damage, police harassment, and imposition by Family Court of "conditions on the

6

Plaintiff[] that are penal in nature and which are described as 'CRUEL AND UNUSUAL' punishment in a civilized community, in violation of the 8th amendment." Plaintiff alleges that Gay acted in concert with his law firm, Stumpf, Vickers & Sandy, P.A.

In certain instances, Plaintiff asserts that Gay breached his fiduciary duties to Heidi Buchanan and David J. Buchanan. There is no basis for a finding that Gay had any fiduciary duty to David Buchanan. Because Heidi Buchanan is no longer a party, the Court need not address whether there was any breach of duty to Heidi.

In all of the Family Court, Bankruptcy Court, and Supreme Court proceedings, Thomas Gay was acting as an attorney representing the former wife of David J. Buchanan.

In Delaware, the absolute privilege attaches to all statements made in the course of judicial proceedings. The privilege affords absolute protection upon a showing that the statements were issued as part of a judicial proceeding. The privilege is not confined to events inside a courtroom. Rather, the privilege

7

extends to all communications relating to the litigation, including communications with witnesses and the drafting and filing of pleadings.[1]

The absolute privilege protects attorneys and participants in litigation from actions for defamation.

> The purpose served by the absolute privilege is to facilitate the flow of communication between persons involved in juridical proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication. To accomplish this goal, the privilege protects judges, parties, attorneys, witnesses and other persons connected with litigation from the apprehension of defamation suits, thus permitting them to speak and write freely, without undue restraint. Moreover, the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, *even a showing of malice* will not divest the statement of its immune status (emphasis in original).... As the *Nix* court pointed out, "the interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity."[2]

The absolute privilege bars all of Plaintiff's claims based on pleadings filed, statements made, and actions taken by Thomas E. Gay, Esquire, individually and as a member of the law firm of Stumpf, Vickers & Sandy P.A., in connection with litigation in which Gay represented Buchanan's former wife.

---

[1]*Nix v. Sawyer*, 466 A.2d 407, 410-11 (Del. Super. 1983).

[2]*Barker v. Huang,* 610 A.2d 1341, 1345 (Del. 1992) (quoting *Nix v. Sawyer*, 466 A.2D 407 (Del. Super. 1983).

8

### Plaintiff's Civil Rights Claims

Plaintiff alleges that Gay violated Plaintiff's civil rights as guaranteed by the Fifth, Eighth and Fourteenth amendments to the United States Constitution. Thomas E. Gay, Esquire and the law firm of Stumpf, Vickers & Sandy, P.A. are private parties engaged in the private practice of law. In order to maintain a cause of action on the basis of violation of Constitutional rights, a plaintiff must demonstrate: (1) that the deprivation was caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;" and (2) that the private party "acted together with or...obtained significant aid from State officials" or engaged in conduct "otherwise chargeable to the State."[3] Plaintiff has not alleged any facts upon which the Court could find that Gay or Stumpf, Vickers & Sandy P.A. acted under color of state law.

---

[3]*Wyatt v. Cole,* 504 U.S. 158, 160-62 (1992).

9

Additionally, such claims must be made pursuant to the Civil Rights Act of 1971, as codified at 42 U.S.C. §1983.[4]  Plaintiff has failed to do so.

### Delaware Lawyers' Rules of Professional Conduct

The Complaint sets forth several instances in which Gay and his law firm allegedly breached ethical duties established by the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The DLRPC regulate the actions of individual attorneys and do not apply to law firms. Further, assuming the facts in the light most favorable to Plaintiff, even if there were violations of the DLRPC, Plaintiff does not have standing to recover damages. *The Preamble: A lawyer's responsibilities*, provides in pertinent part:

> (20)  Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct

---

[4]42 U.S.C. §1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.").

10

through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

There is no basis for enforcement of a lawyer's ethical duties outside the framework of disciplinary proceedings. It is a fundamental constitutional principle that the Delaware Supreme Court has sole and exclusive jurisdiction over all matters affecting governance of members of the Delaware Bar.[5]

THEREFORE, the Motion of Thomas E. Gay, Esquire and Stumpf, Vickers & Sandy, P.A. for Dismissal in lieu of an Answer to the Complaint is hereby GRANTED. The Complaint is hereby DISMISSED WITH PREJUDICE. All subsequent filings and any further application to this Court relating to this case shall be subject to the requirements of 10 *Del. C.* §8803(e).[6]

---

[5]*In re Infotechnology, Inc., Shareholder Litigation,* 582 A.2d 215, 219-220 (Del. 1990).

[6](e) When a Court finds that a litigant has abused the judicial process by filing frivolous or malicious litigation, the Court may enjoin that litigant from filing future claims without leave of court. When so enjoined, any future requests to file claims must be accompanied by an affidavit certifying that:

(continued...)

11

\* \* \* \* \*

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

---

[6](...continued)

(1)  The claims sought to be litigated have never been raised or disposed of before in any court;

(2)  The facts alleged are true and correct;

(3)  The affiant has made a diligent and good faith effort to determine what relevant case law controls the legal issues raised;

(4)  The affiant has no reason to believe the claims are foreclosed by controlled law; and

(5)  The affiant understands that the affidavit is made under penalty of perjury.

12

# EXHIBIT D

PaperDocuments

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:06-cv-00711-SLR

Buchanan v. Gay et al

Assigned to: Honorable Sue L. Robinson

Demand: $600,000,000

Cause: 42:1983 Civil Rights Act

Date Filed: 11/27/2006

Jury Demand: Plaintiff

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Petitioner**

**David J. Buchanan**
            represented by   **David J. Buchanan**
34806 Hudson Road
Laurel, DE 19956
(302)875-1362
PRO SE

V.

**Respondent**

**Thomas E. Gay**
*Esquire*

**Respondent**

**Thalia J. Gay**

**Respondent**

**Honorable Jane M. Brady**
*Attorney General/Superior Court Judge*

**Respondent**

**Kristen S. Gibbons**
*Court Appointed Special Advocate*
*Attorney Ad Litem*

**Respondent**

**Delaware State Police**

**Respondent**

**Georgetown Police**

**Respondent**

**Seaford Police**

**Respondent**

**John Brady**

**Respondent**

**Delaware Family Court of the State
of Delaware**

**Respondent**

**The Firm of Stumpf Vickers & Sandy**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/27/2006 | 1 | MOTION for Leave to Proceed in forma pauperis - filed by David J. Buchanan. (ead) (Entered: 11/28/2006) |
| 11/27/2006 | 2 | Petition to award damages filed Pro Se with Jury Demand against John Brady, Delaware Family Court of the State of Delaware, The Firm of Stumpf Vickers & Sandy, Thomas E. Gay, Thalia J. Gay, Jane M. Brady, Kristen S. Gibbons, Delaware State Police, Georgetown Police, Seaford Police - filed by David J. Buchanan. (Attachments: # 1 Civil Cover Sheet # 2 Acknowledgement of Consent Form)(ead) (Entered: 11/28/2006) |
| 11/27/2006 | 3 | AFFIDAVIT of David J. Buchanan re 2 Petition (Pro Se), filed by David J. Buchanan. (ead) (Entered: 11/28/2006) |
| 11/27/2006 | 4 | OPENING BRIEF filed by David J. Buchanan. (ead) (Entered: 11/28/2006) |
| 11/27/2006 | 5 | Notice of Availability of a U.S. Magistrate Judge to Exercise Jurisdiction (ead) (Entered: 11/28/2006) |
| 12/06/2006 | | Case assigned to Judge Sue L. Robinson. Please include the initials of the Judge (SLR) after the case number on all documents filed. (rjb) (Entered: 12/06/2006) |
| 12/08/2006 | 6 | ORDER, denying request to proceed informa pauperis. Pltf. shall pay the $350.00 filing fee within thirty days or the case shall be dismissed. Signed by Judge Sue L. Robinson on 12/7/06. (rld) (Entered: 12/08/2006) |
| 12/14/2006 | 7 | NOTICE of Payment by David J. Buchanan (fmt) (Entered: 12/18/2006) |
| 12/15/2006 | | Remark: Filing Fee Received on 12/15/06, receipt #145670. Rule 4 Mailed to Plaintiff. (ead) (Entered: 12/15/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/27/2006 15:27:25 | | | |
| **PACER Login:** | tc0138 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:06-cv-00711-SLR Start date: 1/1/1970 End date: 12/27/2006 |

| Billable Pages: | 1 | Cost: | 0.08 | |

# EXHIBIT #2

# EXHIBIT A



Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Camas v. Dickson-WitmerD.Del.,2001.Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
John M. CAMAS, M.D., Plaintiff,
v.
Diana DICKSON-WITMER, M.D., President, et al., Defendants.
No. Civ.A. 97-245-JJF.

March 30, 2001.

John M. Camas, M.D., Bradford, Pennsylvania, Plaintiff, pro se.
Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Defendants.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Presently before the Court is Defendants' Motion for Summary Judgment. (D.I.43). For the reasons stated below, the Court will grant the motion.

BACKGROUND

In 1984, Dr. John M. Camas ("Plaintiff") received a license to practice medicine and surgery in Delaware. (D.I. 1 at ¶ 8). From 1984 until 1991, Plaintiff lived and practiced medicine in Delaware. (D.I. 1 at ¶ 8). In 1991, Plaintiff moved to Pennsylvania. (D.I. 1 at ¶ 8). Ultimately, Plaintiff's license to practice medicine in Delaware became inactive on June 30, 1993. (D.I. 1 at ¶ 9). On March 2, 1994, Dr. E. Wayne Martz ("Dr.Martz"), the Executive Director of the Delaware Board of Medical Practice ("the Board"), filed a complaint against Plaintiff with the Board. (D.I. 1 at ¶ 9). The complaint charged Plaintiff with five counts of unprofessional conduct, as defined in 24 Del. C. § 1731. (D.I. 1 at ¶ 9).

Plaintiff appeared at an adversarial hearing before a three-member panel of the Board ("Hearing Panel") on December 14, 1994. (D.I. 1 at ¶ 10). After the hearing, the Hearing Panel issued a written opinion which summarized the evidence presented at the hearing and stated the Hearing Panel's findings of fact in a written opinion. The opinion concluded that three of the five counts of unprofessional conduct

were substantiated by the evidence. (D.I. 42 at 9-10). In particular, the Hearing Panel concluded that Plaintiff acted with gross negligence when he (1) twice allowed a cast to be placed on a patient's leg under circumstances that "compromised the leg," (2) placed a drain in the peritoneal cavity of a patient which ultimately caused the patient to suffer a punctured bladder, and (3) failed to perform a necessary surgical procedure on a patient in a timely manner. (D.I. 42 at 9-10). Additionally, the Hearing Panel found that Plaintiff's failure to keep adequate and timely notes and records for the above patients amounted to professional incompetence. (D.I. 42 at 9-10). The Hearing Panel recommended that, although revocation of Plaintiff's license to practice medicine for an indefinite period would be permissible under the circumstances, Plaintiff's license should merely be restricted for one year to the extent that Plaintiff could only treat patients under the direct supervision of another physician. (D.I. 42 at 10).

On April 4, 1995, the entire Board conducted a hearing to make conclusions of law and to impose appropriate disciplinary measures on Plaintiff. (D.I. 1 at ¶ 12). At the hearing, based on the factual findings made by the Hearing Panel, [FN1] the Board concluded that Plaintiff's conduct amounted to gross negligence and/or incompetence in violation of 24 Del. C. § 1731(b)(11), and accordingly revoked Plaintiff's license to practice medicine in Delaware subject to reinstatement following the completion of the one-year supervisory period recommended by the Hearing Panel. (D.I. 1 at ¶ 13-14). The Board disseminated information of Plaintiff's discipline to other states and to the National Practitioner Data Bank. (D.I. 1 at ¶ 19).

> FN1. The Board was required by law to adopt the Hearing Panel's findings of fact, and was precluded from receiving any evidence that was not presented to the Hearing Panel. 24 Del. C. § 1734(f).

*2 Plaintiff subsequently appealed the Board's decision to the Delaware Superior Court in Sussex County. (D.I. 1 at ¶ 15). The Board filed a motion to affirm its decision, which the Superior Court granted on November 21, 1995. Camas v. Delaware Bd. of Med. Practice, C.A. No. 95A-05-008 (Del.Super.Ct.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Nov. 21, 1995).

On May 8, 1997, Plaintiff filed the instant Complaint against Dr. Martz and each member of the Board and the Hearing Panel [FN2] (collectively "Defendants") in their individual and official capacities, alleging that they violated 42 U.S.C. § 1983 by depriving Plaintiff of his due process rights. (D.I. 1 at ¶ 20-59). In particular, Plaintiff alleges that some or all of Defendants deprived him of his due process rights by: (1) failing to give adequate notice of the charges against Plaintiff, (2) making an arbitrary decision, (3) not affording Plaintiff the opportunity to challenge the Hearing Panel's factual findings, (4) engaging in misconduct during the investigative and adjudicatory process, (5) failing to recuse themselves despite a conflict of interest or bias, and (6) ignoring a determination by Plaintiff's colleagues in a peer review that Plaintiff's conduct did not amount to gross negligence. (D.I. 1 at ¶ 21-55). Plaintiff requests that the Court: (1) declare unlawful and permanently enjoin the revocation of Plaintiff's license to practice medicine, and annul the findings and opinion of Defendants, (2) declare unlawful and permanently enjoin the implementation of certain statutory provisions governing the procedures of the Board that deprive physicians of due process during disciplinary proceedings, (3) award Plaintiff reasonable costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988, (4) order Defendants to advise all professional or governmental bodies which received notice of Plaintiff's suspension, or any other person requested by Plaintiff, that all factual findings adverse to Plaintiff have been expunged, and (5) award Plaintiff monetary damages. (D.I. 1 at 14-15).

> FN2. These individual Defendants include: Diana Dickson-Witmer, M.D.; Frederick K. Toy, M.D.; Yogesh Kansal; Stephanie Malleus, M.D.; Vincenta G. Marquez, M.D.; Ruth Horowitz, Ph.D.; Thomas C. Scott, D.O.; Catherine T. Hickey; Cecil C. Gordon, M.D.; William J. DiMondi, Esquire; Jorge Pereira-Ogan, M.D.; Susan Rogers, M.D.; Michael Mattern, M.D.; Robert Emrich; Janet Kramer, M.D.; Andrew J. Doorey, M.D.; and John Klocko, III, Esquire. (D.I. 1 at ¶ 3). Defendant Horowitz was voluntarily dismissed as a Defendant on July 25, 1997. (D.I.5).

On September 7, 1999, after a brief period of discovery, Defendants filed the instant motion for summary judgment asserting the defenses of: (1) Eleventh Amendment immunity, (2) sovereign immunity, (3) quasi-judicial immunity, (4) qualified immunity, (5) immunity pursuant to 10 Del. C. § 4001(3), (6) lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and (7) res judicata and/or collateral estoppel. (D.I.43). After numerous extensions of briefing deadlines, Plaintiff, who is not represented by counsel, filed a partial answering brief to Defendants' motion. (D.I.60). Since Plaintiff has failed to file a completed brief after several more deadline extensions, the Court will resolve the motion on the papers received as of this date.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). Nevertheless, to defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

**\*3** do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U .S. 574, 586-87 (1986). Thus, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

### 1. Eleventh Amendment Immunity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

· Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

Defendants contend that the Eleventh Amendment bars Plaintiff's Section 1983 claim. (D.I. 41 at 7). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Furthermore, the United States Supreme Court has stated that:

Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (citations omitted). In that regard, the Supreme Court has held that Congress did not intend to override a State's Eleventh Amendment immunity when it enacted Section 1983. *Quern v. Jordan*, 440 U.S. 332 (1979). In addition, Section 1983 only allows claims against "person[s]," which does not include claims seeking monetary relief from state officials who are sued in their official capacities. *Will*, 491 U.S. at 71. Therefore, State officials sued in their official capacities for monetary damages can assert Eleventh Amendment immunity, but State officials cannot assert such immunity when sued for monetary damages in their personal capacities. However, claims against State officials in their official capacities for prospective injunctive relief are permissible under Section 1983. *Id.* at 71 n. 10.

Applying the above standards, insofar as Plaintiff seeks monetary damages from Defendants in their official capacities, such claim is barred by the Eleventh Amendment. However, insofar as Plaintiff seeks monetary damages from Defendants in their personal capacities, the Eleventh Amendment does not provide Defendants with immunity. Furthermore, the Eleventh Amendment does not prevent Plaintiff from pursuing prospective injunctive or declaratory relief from Defendants in their official capacities.

2. Quasi-Judicial Immunity

*4 Defendants also contend that, because Plaintiff is suing them for quasi-judicial conduct, the doctrine of quasi-judicial immunity bars the instant suit insofar as it seeks monetary relief from Defendants in their personal capacities.[FN3] (D.I. 41 at 12). Judicial or quasi-judicial immunity is an absolute bar to monetary liability for defendants who perform judicial functions and are sued in their personal capacities, even if the defendant acted with malice or in bad faith, unless (1) the conduct at issue was not a "judicial act," or (2) the conduct was taken in complete absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The above two exceptions are quite narrow in scope and are not frequently invoked to deny judicial or quasi-judicial officers such immunity. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978)(describing the limited nature of the two exceptions to judicial immunity). Since there is no indication that either of the above exceptions apply in the instant case and because Plaintiff does not contend to the contrary, the Court will only address whether Defendants should be afforded the protections of quasi-judicial immunity in the first place.

FN3. As opposed to Eleventh Amendment immunity, judicial or quasi-judicial immunity provides immunity from monetary liability for defendants sued in their personal capacities. 1B Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses 222 (3d ed.1997). However, judicial immunity does not extend to claims seeking prospective relief, such as an injunction or a declaratory judgment. *Pulliam v. Allen*, 466 U.S. 522, 541 (1984).

Whether an administrative official is afforded the protection of quasi-judicial immunity for conduct during an adversarial hearing [FN4] depends on two factors: (1) whether or not the adjudication "contained procedural safeguards that sufficiently resemble those afforded by judicial process," and (2) whether the hearing officer "is sufficiently independent and free of political influence." Schwartz & Kirklin, *supra*, at 240 (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)). In applying this standard, courts have overwhelming held that members of medical or health boards involved in disciplinary proceedings were entitled to quasi-judicial immunity. *Dunham v. Wadley*, 195 F.3d 1007, 1010-11 (8th Cir.1999)(veterinary medical examining board); *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65-67 (5th Cir.1997) (board of nursing); *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 701 (1st

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Cir.1995)(board of registration in medicine); *Watts v. Burkhart*, 978 F.2d 269, 275-78 (6th Cir.1992)(en banc)(board of medical examiners); *Duncan v. Mississippi Bd. of Nursing*, 982 F.Supp. 425, 433-34 (S.D.Miss.1997)(board of nursing); *Alexander v. Margolis*, 921 F.Supp. 482, 486-87 (W.D.Mich.1995)(board of medicine); *Howard v. Miller*, 870 F.Supp. 340, 343-45 (N.D.Ga.1994)(board of medical examiners); *Kutilek v. Gannon*, 76 F.Supp. 967, 971-72 (D.Kan.1991)(board of healing arts). *See also Stratford Nursing & Convalescent Ctr., Inc.*, 802 F.Supp. 1158, (D.N.J.1991)(holding that the Director of the Division of Medical Assistance and Health Services had quasi-judicial immunity for incorrectly interpreting a regulation).

> FN4. It is clear that the proceedings that resulted in Plaintiff's license were revoked were sufficiently adversarial for quasi-judicial immunity to apply. For instance, when conducting disciplinary proceedings, the Board is authorized to investigate charges of professional misconduct, to issue fines, revoke or suspend licenses, to issue subpoenas, and to compel the attendance of witnesses. 24 *Del. C.* § 1730.

In the instant case, each member of the Board is appointed by the Governor for a two year term, and can only be removed by the Governor prior to the expiration of this two-year term "for cause for neglect of [his or her] duties" or for "unprofessional or dishonorable conduct." 24 *Del. C.* § 1710(e), (g). As a result, the Court concludes that Defendants are sufficiently free of political influence. *See Alexander,* 921 F.Supp. at 486-87 (holding that members of the state board of medicine, who were appointed by the governor to four year terms and only subject to removal by the governor for "gross neglect," corruption, or other similar misconduct, were sufficiently free of political influence for purposes of quasi-judicial immunity). Second, the Court concludes that sufficient procedural safeguards exist. Plaintiff was afforded an initial hearing conducted by the Hearing Panel, a full Board Hearing, and judicial review in Delaware Superior Court. 24 *Del C.* § 1734, 1736. Plaintiff was afforded the opportunity to present evidence and to examine witnesses during the proceeding conducted by the Hearing Panel. (D.I. 42 at 4-8). At all of these proceedings, Plaintiff was afforded the opportunity to retain legal counsel. (D.I. 1 at ¶ 10; D.I. 42 at 13). As such, the Court concludes that the proceedings provided procedural safeguards that sufficiently resemble the judicial process to afford Defendants the protections of quasi-judicial immunity.

**\*5** In his Complaint, Plaintiff contends that the procedures in the instant case were deficient in that he was not provided with adequate notice of the charges against him, the Hearing Panel's and the Board's decisions were arbitrary, the hearing before the Hearing Panel was not transcribed as required by law, the statutory framework prohibited Plaintiff from being able to challenge the Hearing Panel's factual findings, and certain members of the Hearing Panel and the Board engaged in misconduct. Plaintiff had the opportunity to present these arguments to the Superior Court.FN5 Plaintiff either chose not to pursue these arguments on appeal or these arguments were rejected on appeal. *Camas,* slip op. at 7-12. Thus, the Court concludes that even if Defendants failed to comply with the statutory procedural requirements, Defendants are still protected by quasi-judicial immunity. *See Duncan, 982 F.Supp.* at 429, 432 (affording members of state board of nursing absolute quasi-judicial immunity from a Section 1983 claim for their imposing disciplinary sanctions on the plaintiff, even though the state court (1) twice reversed the board's decision, (2) criticized the board for not developing an adequate record for judicial review, and (3) admonished the board for not following the statutory procedures).FN6

> FN5. See Part 3 below for a detailed discussion of Plaintiff's opportunity to raise these arguments on appeal.

> FN6. In addition to contending that Defendants failed to adhere to some of statutory procedural requirements, Plaintiff also contends that one of the statutory requirements is facially invalid. In particular, Plaintiff claims that he was denied a meaningful opportunity for judicial review of the Hearing Panel's decision because (1) the Board was required to adopt the Hearing Panel's findings of fact regardless of any alleged deficiencies and/or flaws in the process, and (2) the Superior Court did not have a transcript of the proceeding conducted by the Hearing Panel. The Court concludes that, even if the nature of this review denied Plaintiff due process, Defendants would nonetheless be entitled to qualified immunity for adhering to the statute as enacted by the legislature and as

explained to them by legal counsel.

In sum, the Court concludes that Defendants are absolutely immune from monetary liability in their personal capacities because they are afforded the protections of quasi-judicial immunity.[FN7]

> FN7. To the extent that Dr. Martz's conduct differed from that of the other Defendants in that, as Executive Director of the Delaware Board of Medical Practice, he served in a prosecutorial function, the Court concludes that Dr. Martz is nonetheless immune to the same extent as the other Defendants under the doctrine of prosecutorial immunity. *Butz,* 438 U.S. at 515 (extending prosecutorial immunity to administrative officials that perform prosecutorial-type functions). Nevertheless, because Plaintiff's Complaint cannot fairly be characterized as asserting claims against Dr. Martz solely in his capacity as Executive Director, the Court concludes that this distinction is irrelevant. Also, since the Court has concluded that Defendants are immune from monetary liability in both their individual and official capacities, it is unnecessary to address Defendants' remaining immunity arguments that would shield them only from monetary liability.

### 3. Res Judicata and Collateral Estoppel

Defendants also contend that Plaintiff's claims must be dismissed due to the doctrines of **res judicata** and collateral estoppel. In particular, Defendants contend that Plaintiff's claims either should have been raised in the Superior Court (**res judicata** or claim preclusion) or that they have already been adjudicated by the Superior Court (collateral estoppel or issue preclusion), and therefore, are precluded from being litigated in the instant action. (D.I. 41 at 20).

Under the doctrine of **res judicata**, a final judgment by a court precludes the same parties "from relitigating issues [in a subsequent action] that were or could have been raised" in the first action. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6 (1982). Final judgments from a state court can have preclusive effect on Section 1983 claims brought in federal court. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82 (1984); *Winward v. Brewington-Carr,* C.A. No. 97-665-JJF, slip op. at 2-

8 (D.Del. Nov. 16, 1998)(noting that the Delaware Superior Court has jurisdiction over Section 1983 claims). The determination of whether a final judgment in state court has preclusive effect on a subsequent Section 1983 claim brought in federal court is a question of state law. 28 U.S.C. § 1738; *Migra,* 465 U.S. at 81.

Under Delaware law, the doctrine of **res judicata** stands for the principle that "a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties." *Betts v. Townsends, Inc.,* 765 A.2d 531, 534 (Del.2000). This means that claims that should have been raised in an earlier action cannot be raised in a subsequent action. *Fox v. Christina Square Ass'n, L.P.,* 1994 WL 146023, at *2 n. 3 (Del.Super. Ct. April 5, 1994). For **res judicata** to apply under Delaware law, five requirements must be met:

*6 (1) the court making the prior adjudication must have had jurisdiction; (2) the parties to the second action must be the same or be privy to those in the first action; (3) the cause of action must be the same in both cases or the second action must arise from the same transaction that formed the basis of the prior adjudication; (4) the issues in the prior action were decided adversely to the contentions of the plaintiff(s) in the pending case; and (5) the prior decree must be final.

*Id.* at 3 (citing *Epstein v. Chatham Park, Inc.,* 153 A.2d 180, 184 (Del.1959); *Maldonado v. Flynn,* 417 A.2d 378, 381 (Del.Ch.1980)).

In the instant case, there is no dispute that the Superior Court had jurisdiction over Plaintiff's appeal from the Board's decision, that the same parties or their privies were involved in both actions, and that the issues in the Superior Court action were resolved adverse to Plaintiff. Also, because the time period for Plaintiff to appeal the Superior Court's decision to the Delaware Supreme Court has expired, the Superior Court's decision is "final." *Epstein,* 153 A.2d at 64-65; Del. Sup.Ct. R. 6(a)(i)(providing for 30 days to appeal a civil judgment from the Delaware Superior Court to the Delaware Supreme Court); *Town of Bethany Beach v. Bethany Beach, Inc.,* 1994 WL 469194, at *6 (Del. Ch. Aug. 15, 1994)(implying that decision of the Superior Court, in upholding action of administrative board on appeal, is sufficiently "final" for res judicata to bar a subsequent action). *See also Betts,* 765 A.2d at 534 (holding that administrative agency's factual determination, even if never appealed to the Superior Court, can have a preclusive

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

effect on subsequent litigation). Furthermore, it is clear that the Superior Court action and the instant action "arise from the same transaction," in that they both seek or sought to challenge the validity of the discipline imposed on Plaintiff by the Board. *See Kossol v. Ashton Condo. Ass'n, Inc ., 637 A.2d 827, 1994 WL 10861, at \*2-3 (Del.1994)*(holding that subsequent action for attorneys' fees was barred by res judicata when recovery of attorneys' fees was premised on successful earlier litigation); *Cantor Fitzgerald, L.P. v. Chandler, 1998 WL 442440, at \*5 (Del. Ch. July 20, 1998)*(noting that the "modern view" of what constitutes the "same transaction" for purposes of res judicata is quite broad and easy to satisfy).

Despite the above conclusion, Plaintiff will not be barred from litigating the instant action if he can demonstrate that he did not have a "full and fair opportunity to be heard" on the disputed issues in the Superior Court. *Kremer, 456 U.S. at 480-81.* Plaintiff contends that he did not have the "opportunity" to litigate the Section 1983 claim before the Superior Court due to the limited nature of the Superior Court's appellate review of the Board's decision. (D.I. 60 at 17) (citing *29 Del. C. § 10142*). The Court concludes that Plaintiff's contention lacks merit.[FN8]

> [FN8.] Due to the Court's conclusion above regarding Defendants' immunity from monetary liability, the current analysis is only concerned with whether Plaintiff had the "opportunity" to challenge the Board's action and to obtain prospective relief. However, even if Plaintiff's claims for money damages had not been dismissed, they would have nonetheless been barred by res judicata even though Plaintiff could not have obtained money damages from the Superior Court in the event that the Superior Court reversed the Board's decision on appeal. *See Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir.1988)*(criticizing a district court decision which refused to apply res judicata to a section 1983 claim when the district court's refusal was solely based on the fact that the relief the plaintiff was seeking in the federal action was not obtainable in the earlier state action).

\*7 Plaintiff alleges numerous due process violations in that Defendants did not comply with the procedural requirements set forth in the Delaware Code when they adjudicated the charges against

him.[FN9] It is clear, however, that the Superior Court had jurisdiction to reverse the Board's action due to "legal error" during the administrative proceedings. *Mooney v. Benson Mgmt. Co., 466 A.2d 1209 (Del.1983)*(reversing administrative agency's decision, even though the facts were undisputed, because the agency applied an improper legal standard); *Ford v. State Bd. of Educ., 1995 WL 411361, at \*1 (Del.Super. Ct. June 9, 1995)*(rejecting an appellant's claim that she was denied procedural due process at a hearing in front of the board of education), *aff'd 676 A.2d 902 (Del.1996)*. *See also* 29 Del. C. 10142 (providing for appellate review of decisions by an administrative agency or board). In fact, the Superior Court addressed one of Plaintiff's due process claims. *Camas,* slip op. at 8-11. [FN10] As a result, the Court concludes that Plaintiff did have a full and fair opportunity to raise his due process claims in Superior Court.

> [FN9.] Plaintiff's allegations include a failure to transcribe the hearing before the Hearing Panel in violation of 24 Del. C. § 1734(c), failure to provide adequate notice of the charges against Plaintiff in violation of 24 Del. C. § 1733(e), failure of biased members to recuse themselves from the proceedings in violation of 24 Del. C. § 1734(e)-(f), and imposing an "impossible condition" of punishment on Plaintiff. (D.I.1).

> [FN10.] Insofar as some of Plaintiff's claims were actually litigated in Superior Court, these claims are precluded in the instant action under the doctrine of collateral estoppel or issue preclusion, as opposed to res judicata. *See Winward,* slip op. at 7.

Plaintiff also contends that he was denied a full and fair opportunity to be heard because the factual determinations made by the Hearing Panel could not be challenged during the full Board hearing or in Superior Court. (D.I. 60 at 16-19). Insofar as Plaintiff challenges the constitutionality of the statute that requires the Board to adopt the Hearing Panel's factual determinations, the Court concludes that, as noted above, Plaintiff had the opportunity to raise the argument in Superior Court.[FN11] To the extent that Plaintiff contends the limited scope of the Superior Court's appellate review denied him a full and fair opportunity to be heard, the Court concludes that this contention is without merit. Courts have regularly held that judicial review of administrative agency

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 7
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

action, even when such review is limited to whether "any evidence" exists in the record to support the agency's decision, is a sufficient opportunity to be heard for res judicata purposes. *See, e.g., Gorin v. Osborne,* 756 F.2d 834, 835 (11th Cir.1985).

FN11. The Superior Court is expressly granted the authority to determine whether an administrative agency committed legal error. *Mooney,* 466 A.2d at 1213. In some states, the extent of judicial review of administrative agency decisions does not allow for facial challenges to the constitutionality of a statute; rather, an appellant can only claim that the agency's action was unconstitutional in the appellant's particular case. *See, e.g., Hachamovitch v. DeBuono,* 159 F.3d 687, 695 (2d Cir.1998). However, in reviewing an appeal of an agency decision pursuant to 29 *Del. C.* § 10142, the Delaware Superior Court has decided facial challenges to the statutory procedures for administrative hearings. *Joseph v. C.C. Oliphant Roofing Co.,* 711 A.2d 805, 807 (Del.Super.Ct.1997)(deciding the issue, on appeal from a decision of the Industrial Accident Board, of whether 19 *Del. C.* §  2126 and 2127 violated Separation of Powers by granting the Industrial Accident Board the right to determine attorneys' and physicians' fees for work performed for, or in front of, the Accident Board). Therefore, the Court concludes that Plaintiff did have a full and fair opportunity to present all of his due process challenges to the Superior Court, including facial challenges of statutes to which Defendants adhered.

In the instant case, the Superior Court reviewed the Board's determination to see if the decision was supported by "substantial evidence" on the record. *Camas,* slip op. at 7; 29 *Del. C.* § 10142(d). The record before the Superior Court included a transcript of the Board's hearing and the written opinion of the Hearing Panel which contained a summary of the evidence presented and the Hearing Panel's factual findings. Based on this record and the standard of review, the Court concludes that the Superior Court's review of the Board's decision afforded Plaintiff a full and fair opportunity to challenge the factual determinations made by the Hearing Panel.FN12 Therefore, the Court concludes that Plaintiff is precluded from litigating the instant Section 1983

action in this Court.

FN12. To the extent that Plaintiff alleges that the lack of a transcript from the Hearing Panel prevents a full and fair opportunity to challenge the Hearing Panel's factual findings, the Court is not convinced that a transcript, as opposed to an opinion containing findings of fact, is required. Regardless, because Plaintiff had an opportunity to challenge the lack of a transcript in Superior Court but failed to do so, the Court concludes that Plaintiff had a full and fair opportunity to be heard on this issue.

### CONCLUSION

**\*8** For the reasons discussed above, the Court concludes that Defendants are immune from monetary liability because of Eleventh Amendment and quasi-judicial immunity, and that Plaintiff is precluded from asserting his claims for prospective relief under the doctrines of res judicata and collateral estoppel. These conclusions render Plaintiff's claim for attorneys' fees under Section 1988 moot. As a result, the Court will grant Defendants' Motion for Summary Judgment on all counts.

An appropriate Order will be entered.

D.Del.,2001.
Camas v. Dickson-Witmer
Not Reported in F.Supp.2d, 2001 WL 34368388 (D.Del.)

END OF DOCUMENT

# EXHIBIT B

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 86658 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Nicastro v. Frankford Hosp.E.D.Pa.,2004.Only the
Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
William M. NICASTRO,
v.
FRANKFORD HOSPITAL, et al.,
**No. Civ.A. 03-CV-3937.**

Jan. 19, 2004.

William M. Nicastro, pro se, Pittsburgh, PA, for
Plaintiff.
Donald J. Brooks, Jr., Mc Kissock & Hoffman, P.C.,
Philadelphia, PA, for Defendants.

*MEMORANDUM*
DAVIS, J.
**\*1** Defendants Frankford Hospital, Torresdale
Campus, Frankford Hospital/Torresdale Campus,
Hospital Administrator and Frankford
Hospital/Torresdale Campus, and Board of Trustees
(collectively, "Defendants") move to dismiss
Plaintiff's Complaint pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure. (Dkt. No. 3). For
the reasons discussed below, Defendants' Motion to
Dismiss is GRANTED.

I. Factual Background and Procedural History

In October 2001, Plaintiff William Nicastro
("Nicastro"), an inmate at the Philadelphia County
Prison, was rushed to the Frankford Hospital
emergency room after being punched in the chest
during an altercation with another inmate. Physicians
at Frankford Hospital, however, refused to treat
Nicastro, stating "we do not provide any medical
treatment or care to Philadelphia County Prisoners,
take him out of here, and take him to another
hospital." Compl. ¶ ¶ 3-6 (emphasis omitted).
Nicastro was subsequently brought to Nazareth
Hospital and then to Temple University Hospital for
medical treatment. *Id.* ¶ 7.

On March 20, 2003, Nicastro filed the instant action
against Defendants in the Philadelphia County Court
of Commons Pleas, seeking damages for violations of
the Eight and Fourteenth Amendments to the United
States Constitution. *See* Defendants' Memorandum of
Law in Support of Its Motion to Dismiss Plaintiff's
Complaint ("Defs.' Mem."), Ex. A. Defendants
removed the Complaint to this Court on July 1, 2003.
Defendants now move to dismiss the Complaint for
failure to **state** a claim upon which relief can be
granted. *See* Fed.R.Civ.P. 12(b)(6).

In their Motion to Dismiss, Defendants argue that
they are not **state actors** and, therefore, are not liable
for Plaintiff's constitutional claims. Defs.' Mem. 3-4.
Nicastro responds that Frankford Hospital is a **state
actor** for the following reasons: (1) it is **licensed** by
the Commonwealth of Pennsylvania and Philadelphia
County; (2) it is a member of the American Medical
Association; and (3) it receives federal and **state**
funding. Plaintiff's Memorandum of Law in
Opposition to Defendant's Motion to Dismiss ("Pl.'s
Mem.") 5.

II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure tests the legal
sufficiency of the complaint. *See Markowitz v.
Northeast Land Co.,* 906 F.2d 100, 103 (3d
Cir.1990); *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d
Cir.1987). In considering a motion to dismiss, the
court must accept as true all factual allegations of the
complaint and draw all reasonable inferences in the
light most favorable to the plaintiff. *Board of Trs. of
Bricklayers and Allied Craftsmen Local 6 of N.J. v.
Wettlin Assoc., Inc.,* 237 F.3d 270, 272 (3d Cir.2001).
This is especially true where, as here, the complaint
is filed *pro se. See McGrath v. Johnson,* 67
F.Supp.2d 499, 505 (E.D.Pa.1999) (The court must
"read a pro se plaintiff's allegations liberally and
apply a less stringent standard to the pleadings of a
pro se plaintiff than to a complaint drafted by
counsel."); *Dluhos v. Strasberg,* 321 F.3d 365, 369
(3d Cir.2003) (noting that a court must liberally
construe the pleadings of a *pro se* plaintiff). A court
therefore "may dismiss a [claim] only if it is clear
that no relief could be granted under any set of facts
that could be proven consistent with the allegations."
*Ramadan v. Chase Manhattan Corp.,* 229 F.3d 194,
195-96 (3d Cir.2000) (citing *Alexander v. Whitman,*
114 F.3d 1392, 1398 (3d Cir.1997)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                         Page 2
Not Reported in F.Supp.2d, 2004 WL 86658 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

III. Analysis

*2 The Supreme Court has employed at least three discrete tests to determine whether there has been state action: (1) the "traditional exclusive governmental function" test; (2) the "symbiotic relationship" test; and (3) the "close nexus" test. Because the lines that separate these tests are blurred, the Third Circuit has noted that we are not foreclosed from employing various approaches as may be necessary under the facts of the case before us. *See Klavan v. Crozer-Chester Med. Ctr.*, 60 F.Supp.2d 436, 441 (E.D.Pa.1999). But regardless of our approach, the heart of the inquiry is "to discern if the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Groman v. Township of Manalapan*, 47 F.3d 628, 639 n. 17 (3d Cir.1995) (citations omitted).

Nicastro does not specify under which test Defendants are state actors. Notwithstanding his ambiguity on this point, it is clear that Nicastro argues Defendants are state actors under the "symbiotic relationship" and "close nexus" tests.

"The 'symbiotic relationship' test examines the relationship between the state and the alleged wrongdoer to discern whether there is a great degree of interdependence between the two." *Chrupcala v. Chester County Hosp.*, No. Civ. A. 00-6027, 2003 WL 21088476, at *3 (E.D.Pa. Jan.29, 2003) (citing *Klavan*, 60 F.Supp.2d at 411. Under the test, a private party will be deemed a state actor if "the State has so far insinuated itself into a position of interdependence [with the private party] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961).

Post-*Burton* cases have held that "state regulation is not enough to render the actions of an institution state actions, even if the regulation is pervasive, extensive, and detailed." *Klavan*, 60 F.Supp.2d at 442 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358-59, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) and *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176-77, 92 S.Ct. 1965, 1975, 32 L.Ed.2d 627 (1972)). Nor will extensive financial assistance constitute state action. *See, e.g., Rendell-Baker v. Kohn*, 482 U.S. 830, 840-43, 102 S.Ct. 2764, 2770-73 (1982); *Hodge v. Paoli Mem. Hosp.*, 576 F.2d 563 (3d Cir.1978).

The "close nexus" test, on the other hand, focuses on the connection between the state and the specific conduct that allegedly violated the plaintiff's civil rights. *See Klavan*, 60 F.Supp.2d at 442. "Under this test, the inquiry is 'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (citing *Jackson*, 419 U.S. at 351, 102 S.Ct. at 453-54); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S.Ct. 977, 986, 143 L.Ed.2d 130 (1999) ( "Whether ... a [sufficiently] close nexus exists ... depends on whether the **State** has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the **State**." (citations omitted)). Thus, the "state's mere regulation of a private **actor** is not enough to establish 'state action.' Rather, what is required is that the state *coerce* or *encourage* a private party to act in a manner that violates the plaintiff's constitutional rights." *Id.* (emphasis in original). Defendants are not **state actors** under either test.

*3 Like Nicastro, the plaintiff in *Klavin* brought a Fourteenth Amendment claim against the defendants, Crozer-Chester Medical Center, a Pennsylvania not-for-profit hospital, five Crozer-Chester doctors, a Crozer-Chester nurse, the president of Crozer-Chester, and John and Jane Doe, arguing that the defendants were **state actors** under the "symbiotic relationship" and "close nexus" tests because, among other things, defendants received government funding and complied with **state** and federal **licensing** requirements. 60 F.Supp.2d at 440-42. Applying both the "symbiotic relationship" and "close nexus" tests, Judge Dalzell held that receipt of government funding and compliance with **state** and federal **licensing** requirements did not render the defendants **state actors**, regardless of the test employed. *Id.* at 443; accord *Chrupcala*, 2003 WL 21088476, at *5.

*Klavan* and the abundance of case law supporting its holding is applicable to, and persuasive in, the present case. *See Sullivan*, 526 U.S. at 52, 119 S.Ct. at 986 ("In cases involving extensive **state** regulation of private activity, we have consistently held that [t]he mere fact that a business is subject to **state** regulation does not by itself convert its action in that of the **State** for purposes of the Fourteenth Amendment."); *Groman*, 47 F.3d at 641 ("[T]he interdependence between the **state** and private **actor** must be pronounced before the law will transform the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 86658 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

private **actor** into a **state actor**."); _Hodge, 576 F.2d at 563_ (electing to "stand with the vast majority of courts of appeal," the Third Circuit held that the receipt of Hill-Burton construction funding, Medicare and Medicaid funds, and the existence of tax exemption, as well as **state licensing** requirements for nonprofit hospitals, do not constitute **state** action under 42 U.S.C. § 1983).[FN1] Therefore, the Court finds that Defendants receipt of federal and **state** funding, their compliance with **state licensing** requirements and their affiliation with the American Medical Association do not render them **state actors**. Because Defendants are not **state actors**, the Court further finds that they do not face liability under the Eighth and Fourteenth Amendments to the United **States** Constitution.

> FN1. For our purposes here, the "**state action**" inquiry is identical under the Fourteenth Amendment and Section 1983. _See, e.g., Luger v. Edmondson Oil Co., 457 U.S. 922, 936-939, 102 S.Ct. 2744, 2753-55, 73 L.Ed.2d 482, 495-96 (1982)._

### IV. Analysis

Accordingly, Defendants' Motion to Dismiss is granted. An appropriate order follows.

E.D.Pa.,2004.
Nicastro v. Frankford Hosp.
Not Reported in F.Supp.2d, 2004 WL 86658 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23905802 (Trial Motion, Memorandum and Affidavit) Motion (Jul. 18, 2003) Original Image of this Document (PDF)
• 2:03cv03937 (Docket) (Jul. 01, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 783059 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Briefs and Other Related Documents
Telepo v. Boylan Funeral HomeE.D.Pa.,2005.Only
the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Ronald W. TELEPO, **Plaintiff,**
v.
BOYLAN FUNERAL HOME, et al. Defendants.
**No. Civ.A. 04-1924.**

April 5, 2005.

Ronald W. Telepo, Easton, PA, **pro** se.
William J. Schmidt, White & Williams LLP,
Philadelphia, PA, for Defendants.

*ORDER*
NEWCOMER, J.
*1 AND NOW, this 5th day of April, 2005, upon
consideration of Defendants' **Motions** to **Dismiss**
(Doc. 35, 41, 46), it is hereby ORDERED that said
Motions are GRANTED in part and DENIED in part.
**Plaintiff's** claims against Defendant John McCarthy
are DISMISSED, **Plaintiff's** claims against
Defendants Zimmerman, Hardester, and Frederick
are DISMISSED, and **Plaintiff's** 42 U.S.C. § 1983
and intentional infliction of emotional distress claims
are dismissed against Defendants Craig B. Reed,
Thomas Devoe, and the Boylan Funeral Home.
**Plaintiff's** civil conspiracy claim is DISMISSED as
to all remaining Defendants. Finally, it is ORDERED
that **Plaintiff's** claims against Edward R. Boylan are
DISMISSED by consent of the Parties. The Court's
reasoning follows.

Presently before the Court are three **Motion** to
**Dismiss Plaintiff's** pro se Amended Complaint.
**Plaintiff** brings claims under 42 U.S.C. § 1983, for
violations of equal protection and due process, and
claims for "violating the **Plaintiff's** spousal rights,
abuse of a corpse, cause and actual prejudice,
conspiracy, mental cruelty, undue emotional distress,
unlawful discrimination, ill-will, spite and malice,
intent to harm, gross negligence, gross incompetence,
and violating the **Plaintiff's** Due Process rights under
the Fifth Amendment, and the **Plaintiff's** Equal
Protection Rights under the Fourteenth Amendment
of the United States Constitution and Constitution of
the Commonwealth of Pennsylvania and the
Constitution of the State of New Jersey." Pl.'s Am.

Compl. at 2. The Court will liberally construe
**Plaintiff's** Amended Complaint, as he is a **pro** se
litigant.

At the outset, **Plaintiff's** civil conspiracy claim fails,
against all Defendants, because his Amended
Complaint does not contain facts sufficient to support
the claim. A "general allegation of conspiracy
without a statement of the facts is an allegation of a
legal conclusion and insufficient of itself to constitute
a cause of action." *Black & Yates, Inc. v. Mahogany
Assoc.*, 129 F.2d 227, 231 (3d Cir.1941); *see also
Wesley v. Dombrowski*, No. 03-4137, 2004 U.S. Dist.
LEXIS 11938 at *23-4 (E.D.Pa.2004). The Court will
deal with the **Motions** to **Dismiss** the remaining
claims in turn.

*1. Dr. John F. McCarthy, D.O.*

John F. McCarthy's **Motion** to **Dismiss** is granted.
The only cognizable claims against Dr. McCarthy
seem to be one under § 1983, one for negligence,
and one for intentional infliction of emotional
distress.[FN1] **Plaintiff** has stated absolutely no facts to
support any possible conclusion that Defendant could
be liable to **Plaintiff** on any of the legitimate causes
of action. First, **Plaintiff** has not, and cannot,
establish that Dr. McCarthy acted under color of state
law. To proceed under § 1983, a **plaintiff** must first
demonstrate that a defendant acted under color of
state law. *See* 42 U.S.C. § 1983. Generally,
governmental defendants are automatically state
actors. When a defendant is not a government actor,
however, courts must analyze the nature of his
conduct to determine if it is of a nature sufficient to
convert him into a state actor. Here, Defendant is a
private osteopath, and the only connection Plaintiff
cites between him and the state is that "[defendant is]
required to have professional liability insurance as
required by state law both in Pennsylvania and New
Jersey." Also, Plaintiff argues that defendant is a
state actor because he is licensed by the State of
Pennsylvania. *See* Am. Compl. at 1. This is not
enough to convert Dr. McCarthy into a state actor.
*See Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d
Cir.1980) ("Liability under 42 U.S.C. § 1983 cannot
be predicated solely on the state's licensing of
attorneys. Participation in a highly regulated
profession does not convert a lawyer's every action
into an act of the State or an act under color of state

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 2
Not Reported in F.Supp.2d, 2005 WL 783059 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

law."). Dr. McCarthy is not a state actor, and therefore cannot be sued under § 1983.[FN2] The § 1983 claims against Dr. McCarthy are dismissed.

> FN1. As to the abuse of a corpse claim, this appears to be a state claim for negligent mishandling of the dead. Pennsylvania does not recognize any such claim. See Hackett v. United Airlines, 364 Pa.Super. 612, 528 A.2d 971, 973 (Pa.Super.1987).

> FN2. The Court notes that, even if Dr. McCarthy were a state actor, Plaintiff's Complaint does not raise any inference that Dr. McCarthy actually violated Plaintiff's constitutional or statutory rights.

*2 The only cognizable claims that remain against Dr. McCarthy are Plaintiff's negligence and intentional infliction of emotional distress claims. The remainder of Plaintiff's charges are either not cognizable at law, or are part and parcel of the negligence and intentional infliction counts. The extent of the Amended Complaint's factual statements with respect to Dr. McCarthy is the allegation that he signed a false death certificate, and that he allowed the body of Plaintiff's wife to be released from the hospital without consent. First, Plaintiff has not made any allegations as to the false nature of his wife's death certificate. He alleges no errors in the death certificate, and certainly no conduct sufficient to support a charge of negligence. Plaintiff has not alleged how he was harmed by Dr. McCarthy's conduct, or why Dr. McCarthy owed him a duty of care. As such, Plaintiff cannot establish a claim for negligence. See Bilt-Rite Contractors v. Architectural Studio, 866 A.2d 270, 280 (Pa.2005) (discussing elements of negligence). Likewise, Plaintiff's intentional infliction claim fails because he has not made allegations that Dr. McCarthy acted outrageously. See Hoy v. Angelone, 456 Pa.Super. 596, 691 A.2d 476, 482 (Pa.Super.1997) (discussing elements of an intentional infliction of emotional distress claim).

There is no way that the facts alleged in Plaintiff's Amended Complaint could give rise to any kind of violation of the 14th Amendment. Plaintiff has not alleged any classification or disparity of treatment with others similarly situated. All of these are prerequisites for liability. As to his Due Process claim, Plaintiff has not explained what constitutionally-protected right he was deprived of, nor has he identified an actionable absence of

remedies. Reading his Amended Complaint most generously, Plaintiff has not identified any basis for a substantive or procedural Due Process claim.

### 2. The Commonwealth Defendants

The only allegations in the Amended Complaint addressing the liability of the Commonwealth Defendants are that they "register[ed] a false death certificate, and under the standard of 'respondent superior.' ' Am. Compl. at 1. Plaintiff also claims that the Commonwealth Defendants committed "gross negligence and gross incompetence" by filing a false death certificate.[FN3] Id. at 2, 691 A.2d 476. Plaintiff has not sufficiently alleged that any of the Commonwealth Defendants were personally involved in violating his constitutional rights. Even assuming the allegations in the Amended Complaint could be read to reveal a violation of Plaintiff's Constitutional rights, [FN4] Plaintiff does not allege any facts that allow an inference that Commonwealth Defendants were responsible for violating his rights; Plaintiff merely alleges that Defendant Frederick "registered a false death certificate," and that his superiors are liable for Frederick's acts under the doctrine of respondeat superior. First, respondeat superior liability is not available in § 1983 actions. See Rouse v. Plantier, 182 F.3d 192, 200 (3d Cir.1999). Defendant Frederick's superiors must therefore be dismissed from liability under Plaintiff's § 1983 claims. Second, the Court is unclear how registering a false death certificate rises to the level of a constitutional tort, especially when there is no allegation that Commonwealth Defendants knew that the death certificate was false at the time that they registered it. Defendant Frederick is dismissed from all of Plaintiff's claims because Plaintiff has not alleged that he acted with the intent or knowledge necessary to sustain liability under § 1983, and because he has not (1) made any allegation supporting his bald legal assertion that his Due Process rights were violated (such as pointing to a property interest that he was deprived of) or, (2) made allegations that in any way support his Equal Protection claims. To the extent that Plaintiff claims conspiracy to violate § 1983, the Court dismisses this claim consistent with the above reasoning.

> FN3. There is no recognized cause of action for "gross incompetence ."

> FN4. This itself is a somewhat suspect proposition.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 783059 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

**\*3** The Commonwealth Defendants are immune from Plaintiff's state law negligence and intentional infliction of emotional distress claims. The Pennsylvania Tort Claims Act ("PTCA") immunizes Commonwealth employees from liability for all acts except those specifically waived. *See* 1 Pa. Cons.Stat. § 2310. The Commonwealth has enumerated nine exceptions to the general rule of immunity, only one of which is (arguably) applicable to the facts in this case. *See* 42 Pa. Cons.Stat. § 8522. Moving Defendants note that the exemption for care and custody of personal property might apply to the facts at hand-but Plaintiff has not alleged that the Commonwealth Defendants ever actually had custody or control over the body of his wife. This exception, therefore, is not applicable.

The PTCA immunizes the Commonwealth Defendants from Plaintiff's intentional tort claims. Unlike local agency employees, employees of the Commonwealth are immune for even intentional torts committed within the scope of their official duties. *See Yakowicz v. McDermott,* 120 Pa.Cmwlth. 479, 548 A.2d 1330 (Pa.Commw.Ct.1988), alloc. denied, 523 Pa. 644, 565 A.2d 1168 (Pa.1989) (holding that a Commonwealth employee, when acting within scope of his or her duties, is protected by sovereign immunity from imposition of liability for intentional tort claims). Here, the only conduct by the Commonwealth Defendants that Plaintiff complains of is their alleged registration of a false death certificate. It is axiomatic that this conduct is within the scope of the Commonwealth Defendants' official duties, as it is only the responsibilities engendered in those duties that would allow the Commonwealth Defendants to commit the act that **Plaintiff** complains of. There is no need for further factual inquiry into the scope of Defendants' duties-**Plaintiff's** remaining state claims against them must be dismissed.

### 3. *The Boylan Defendants*

The Boylan Funeral Home, Craig B. Reed, and Thomas N. DeVoe Defendants' **Motion** to **Dismiss** (Doc. 41) is GRANTED in part and DENIED in part. **Plaintiff's** § 1983 claims against these Defendants ("the Boylan Defendants") is dismissed. **Plaintiff** alleges that moving Defendants acted under color of state law, but does not aver sufficient facts to support this notion; the Court's analysis of Dr. McCarthy's Motion applies with equal force to the Boylan Defendants. The Boylan Defendants cannot be liable

under a § 1983 theory. Turning to the state claims, Plaintiff has not alleged facts sufficient to demonstrate that the Boylan Defendants acted intentionally or recklessly, that their conduct was outrageous, or that their conduct caused Plaintiff severe emotional distress. [FN5] *See Hoy,* 691 A.2d at 482. Plaintiff's intentional infliction of emotional distress claim is therefore dismissed. The remainder of the Boylan Defendants' arguments are best left to a later stage of the case.

> FN5. Plaintiff has not, beyond baldly concluding that he has been emotionally harmed, offered any example of how or to what extent he was emotionally harmed.

AND IT IS SO ORDERED.

E.D.Pa.,2005.
Telepo v. Boylan Funeral Home
Not Reported in F.Supp.2d, 2005 WL 783059 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:04cv01924 (Docket) (May. 03, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.