## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| David J. Buchanan | CIVIL ACTION |
| Plaintiff | |
| v. | NO. 06-711-SLR |
| Thomas E. Gay, et al. | |
| Defendants | |

### MOTION TO DISMISS PLAINTIFF'S PETITION TO AWARD DAMAGES

COMES NOW, Defendant Kristin Gibbons, Esquire, improperly identified in the "Petition" as Kristen Gibbons, Esquire, by and through her undersigned counsel, and moves to dismiss the Plaintiff's "Petition to Award Damages" in this matter pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the bases that this Court lacks subject matter jurisdiction to hear the controversy and the "Petition" fails to state a claim upon which relief may be granted. The bases for the instant Motion are set forth more fully in the accompanying Brief in Support which is incorporated herein by reference.

Respectfully submitted,

BY: _____

MARTIN J. WEIS, ESQUIRE (4333)
Dilworth Paxson LLP
One Customs House
Suite 500
704 King Street
P.O. Box 1031
Wilmington, Delaware 19801
Tel: 302-571-9800
Fax: 302-571-8875
mweis@dilworthlaw.com
Attorney for Defendant,
Kristin S. Gibbons, Esq.

DATED: February 16, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| David J. Buchanan<br><br>              Plaintiff<br>    v.<br>Thomas E. Gay, et al.<br><br>          Defendants | CIVIL ACTION<br><br>NO.  06-711-SLR |

## BRIEF IN SUPPORT OF DEFENDANT KRISTIN S. GIBBONS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

MARTIN J. WEIS, ESQUIRE (4333)
**DILWORTH PAXSON LLP**
One Customs House
Suite 500
704 King Street
P.O. Box 1031
Wilmington, Delaware 19801
Tel: 302-571-9800
Fax: 302-571-8875
mweis@dilworthlaw.com

Attorney for Defendant,
Kristin S. Gibbons, Esq.

Dated: <u>February 16, 2007</u>

676850_2

## TABLE OF CONTENTS

Table of Authorities ............................................................................................... ii

I.      STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ................... 1

II.     SUMMARY OF ARGUMENT .................................................................... 2

III.    CONCISE STATEMENT OF FACTS .......................................................... 3

IV.     ARGUMENT ........................................................................................ 4

   A.   Legal Standard ................................................................................ 4

      1.   Dismissal Under Federal Rule of Civil Procedure 12(b)(1) ................... 4

      2.   Dismissal Under Federal Rule of Civil Procedure 12(b)(6) ................... 4

   B.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Action ...................... 4

   C.   Counsel for the Court-Appointed Special Advocate Is Immune from Suit ................. 7

      1.   Defendant Gibbons is Entitled to Immunity Under the CASA Authorizing Statute ...... 7

      2.   Defendant Gibbons is Entitled to Judicial Immunity ............................. 9

      3.   Defendant Gibbons is Immune from Suit Under the Doctrine of Qualified Immunity .... 10

   D.   HIPAA Regulations Do Not Apply to Defendant Gibbons ........................................ 11

   E.   Defendant Gibbons Did Not Owe A Duty to Plaintiff ............................................. 12

V.      CONCLUSION ...................................................................................... 14

Rule 7.1.3 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware requires unreported opinions to be attached to the document which cites it or shall otherwise be provided. The method counsel chooses is to attach the cases in a separate appendix as Exhibit C, arranged alphabetically

# TABLE OF AUTHORITIES

Page

Cases

Altemose v. Charlestown Township,
   1999 WL 179759 (E.D. Pa. March 23, 1999) ................................................... 5, 6

Brock v. Provident Am. Ins. Co.,
   144 F. Supp. 2d 652 (N.D. Tex. 2001) .................................................. 12

Browne v. Robb,
   583 A. 2d 949 (Del. 1990) ...................................................... 8, 9

Burch v. Billingtier,
   2003 U.S. Dist. LEXIS 4975 (E.D. Pa. March 13, 2003) ................................... 7

David B. Lilly Co., Inc. v. Fisher,
   18 F. 3d 1112 (3d Cir. 1994) ...................................................... 12

District of Columbia v. Feldman,
   460 U.S. 462 (1983) ................................................................ 5

Gardner v. Parson,
   874 F. 2d 131 (3d Cir. 1989) ...................................................... 9

Gulla v. North Strabane Township,
   146 F. 3d 168 (3d Cir. 1998) ...................................................... 6

Harlow v. Fitzgerald,
   457 U.S. 800 (1982) ............................................................... 10

Hughes v. Long,
   242 F. 3d 121 (E.D. Pa. 2001) ..................................................... 9

Keene Corp. v. Cass,
   908 F. 2d 293 (8th Cir. 1986) ..................................................... 6

Kirby v. City of Philadelphia,
   905 F. Supp. 222 (E.D. Pa. 1995) ................................................. 5

Kokkonen v. Guardian Life Insurance Company,
   511 U.S. 375 (1994) ............................................................... 4

Means v. Indep. Life and Accident Insurance Co.,
   963 F. Supp. 1131 (M.D. Ala. 1997) .............................................. 12

Miller v. City of Philadelphia,
   174 F. 3d 368 (3d Cir. 1999) ..................................................... 11

Morley v. Superior Court,
   2004 WL 377669 (E.D. Pa. February 26, 2004) ................................... 7

Morse v. Lower Merion School District,
   132 F. 3d 902 (3d Cir. 1997) ..................................................... 4

Mortensen v. First Federal Savings & Loan Association,
    549 F. 2d 884 (3d Cir. 1977) ................................................................. 4

Myers v. Morris,
    810 F. 2d 1437 (8th Cir. 1987) ............................................................... 9

O'Donnell v. Blue Cross Blue Shield of Wyoming,
    173 F. Supp. 2d 1176 (D. Wyo. 2001).................................................... 12

O'Rourke v. Krapf,
    2002 WL 32348933 (E.D. Pa. September 20, 2002) ............................... 5

Pusey v. Reed,
    258 A. 2d 460, 461 (Del. Super. 1969).................................................. 12

Rigaud v. Garofalo,
    2005 U.S. Dist. LEXIS 7791 (E.D. Pa. May 2, 2005) ........................... 12

Rooker v. Fidelity Trust Company,
    263 U.S. 413 (1923).............................................................................. 5

Ryan v. Burlington County,
    889 F. 2d 1286 (3d Cir. 1989) ............................................................. 10

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
    140 F. 3d 478 (3d Cir. 1998) ................................................................. 4

Wright v. Combined Insurance Company of Am.,
    959 F. Supp. 356 (N.D. Miss. 1997)..................................................... 12

Statutes

United States Constitution, 14th Amendment ..................................................... 3

28 U.S.C. §1343............................................................................................... 3

31 Del. C. §3603(c) ...................................................................................... 3, 13

31 Del. C. §3606(1) ........................................................................................ 13

31 Del. C. §3606(2) .......................................................................................... 9

31 Del. C. §3606(3) .......................................................................................... 9

31 Del. C. §3606(11) ........................................................................................ 9

31 Del. C. §3611 .............................................................................................. 7

42 U.S.C. §1981............................................................................................... 3

42 U.S.C. §1983........................................................................................... 3, 9

42 U.S.C. §1985........................................................................................... 3, 9

Rules

Federal Rule of Civil Procedure 12(b)(1)............................................................ 4

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 4

HIPAA Privacy Rule §160.102 ....................................................................................... 11

HIPAA Privacy Rule §160.306(a) .................................................................................. 12

HIPAA Privacy Rule §164.524(a) .............................................................................. 3, 11

## I.  STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

On November 27, 2006, Plaintiff David J. Buchanan (hereinafter referred to as "Plaintiff" or "Buchanan") filed a "Petition to Award Damages for; Breach of Fiduciary Duty, Medical Malpractice by Fiduciary, Violation of HIPAA, Defamation of Character, Derivative Tort, Infliction of Severe Emotional Distress and Harm, Litigation Conducted in Malum in Se, Failure to Observe Federal Bankruptcy Laws, Violation of Civil Rights, False Arrest, False Imprisonment, Disadvantaging an Opposing Party by Misleading a Presiding Judge, Abuse of Process, Errors and Omissions" (hereinafter referred to as the "Petition"). Attorney Kristin S. Gibbons, the movant herein, (hereinafter referred to as "Ms. Gibbons") was served with a summons on January 16, 2007.

On January 31, 2007, Ms. Gibbons filed a motion to extend the time to respond to the Petition.  On February 2, 2007, this Court granted said motion extending the time within which Ms. Gibbons must respond to the Petition until February 16, 2007.  Co-Defendants Thomas E. Gay, The Firm of Stumpf Vickers & Sandy, Thalia J. Gay, the Delaware Family Court for the State of Delaware, the Honorable M. Jane Brady and the Delaware State Police have filed motions to dismiss the Petition.  Co-Defendant John Brady has answered the Petition.

## II.    <u>SUMMARY OF ARGUMENT</u>

1.    This Court lacks subject matter jurisdiction to hear this controversy under the <u>Rooker-Feldman</u> doctrine which bars Federal Courts from reviewing the judgments of the state courts.

2.    Ms. Gibbons is immune from suit under Delaware's Court-Appointed Special Advocate authorizing statute.

3.    Ms. Gibbons is immune from suit under the theory of absolute judicial immunity.

4.    Ms. Gibbons is immune from suit under the Doctrine of Qualified Immunity.

5.    HIPAA Regulations do not apply to Defendant Gibbons and, therefore, Plaintiff has no right of action with regard to those claims.

6.    Defendant Gibbons owed no duty legal duty to the Plaintiff.

676850_2

### III.    CONCISE STATEMENT OF FACTS

Plaintiff alleges that Ms. Gibbons, in her role as a contract attorney paid by the State of Delaware, "personally involved herself in Civil Rights as well as HIPAA violations" during the Delaware Family Court's divorce and custody proceedings involving the Plaintiff, his ex-wife and their child, Heidi Buchanan. D.I. No. 2 at ¶16. Ms. Gibbons was appointed to represent Heidi Buchanan's Court-Appointed Special Advocate (hereinafter referred to as the "CASA") by Judge Henriksen of the Sussex County Family Court of the State of Delaware. Id. at ¶17.[1]

Plaintiff alleges that Ms. Gibbons, in performing her duties as counsel for CASA, violated the Delaware Family Court Rules; 42 U.S.C. §§1981, 1983, 1985; 28 U.S.C. §1343[2], HIPAA Privacy Rule §164.524(a); and the due process rights guaranteed by the 14th Amendment to the United States Constitution all of which caused the Plaintiff significant damage. D.I. No. 2 at ¶17-24. For the purposes of this motion to dismiss, all allegations in the Plaintiff's Petition must be accepted as true and, therefore, any further recitation of the specific allegations of improper conduct against Ms. Gibbons is unnecessary.

---

[1] Plaintiff improperly claims that Ms. Gibbons was appointed to represent the best interests of the minor child Heidi Buchanan. D.I. No. 2 at ¶17. By law, Ms. Gibbons was not appointed to represent the best interests of the minor child Heidi Buchanan. Under the State of Delaware's Court Appointed Special Advocate Program, the court appoints a special advocate to represent the interests of the child **and** "contract attorneys who will provide legal representation and advice **for the Court-Appointed Special Advocate and for the CASA Program.**" 31 Del. C. §3603(c) (emphasis added). "The program attorneys will be selected by the Chief Judge of the Family Court." Id. Ms. Gibbons, as Plaintiff acknowledges, is a contract attorney and not a Court-Appointed Special Advocate. D.I. No. 2 at ¶ 16.

[2] Title 28, Section 1343 of the United States Code confers original jurisdiction upon the United States District Courts to hear any action asserting violations of Title 42 or other actions involving civil rights. Section 1343 neither imposes any specific obligations nor creates any cause of action. As such, references to alleged violations of 28 U.S.C. §1343 are completely irrelevant.

IV.    **ARGUMENT**

    A.    **Legal Standard**

        1.    **Dismissal Under Federal Rule of Civil Procedure 12(b)(1)**

A Federal Court cannot hear a case if it has no subject matter jurisdiction over the controversy. Fed. R. Civ. P. 12(b)(1). The Federal District Courts are granted jurisdiction by statute alone. Kokkonen v. Guardian Life Insurance Company, 511 U.S. 375, 377 (1994). On a motion to dismiss for lack of subject matter jurisdiction, the Court must accept all factual allegations in the Petition as true. Mortensen v. First Federal Savings & Loan Association, 549 F. 2d 884, 891 (3d Cir. 1977). The Plaintiff has the burden of demonstrating that subject matter jurisdiction exists. Kokkonen, 511 U.S. at 377.

        2.    **Dismissal Under Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all facts alleged in the Petition and draw all reasonable inferences in the Plaintiff's favor. Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F. 3d 478, 483 (3d Cir. 1998). The Court must grant the motion to dismiss if no relief could be granted under any set of facts consistent with the allegations of the Complaint. Id. While accepting all facts in the Petition as true, the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School District, 132 F. 3d 902, 906 (3d Cir. 1997).

    B.    **This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Action**

The Plaintiff's "Opening Brief" (D.I. No. 4) makes quite clear that this case is about Plaintiff's disagreement with the rulings made by the Delaware Family Court with regard to his divorce from his wife, the property distribution and his daughter's custody arrangement. Plaintiff alleges that he was harmed by everyone involved in that family law litigation

4

including the Court, the police and all counsel.  Plaintiff advanced these same allegations

against a smaller pool of defendants in the Delaware Superior Court (hereinafter referred to

as the "Delaware Superior Court Litigation").[3]  Indeed a comparison of the Complaint in

that action and the Plaintiff's present Petition reveals almost identical allegations and causes

of action.  A copy of the Plaintiff's Complaint in Case No. 06C-01-002-MMJ is attached

hereto as Exhibit A.  The Superior Court dismissed Plaintiff's Complaint and Plaintiff

appealed the decision to the Delaware Supreme Court.[4]  A copy of the Order and Opinion

dismissing the Complaint is attached hereto has Exhibit B.  That appeal remains pending.

Under the Rooker-Feldman doctrine, it is well-established that Federal District

Courts lack the jurisdiction to review judgments of the state courts.  District of Columbia v.

Feldman, 460 U.S. 462, 482 (1983) (holding that only the United States Supreme Court can

review final state court judgments); Rooker v. Fidelity Trust Company, 263 U.S. 413, 415

(1923).  Accordingly, a federal complaint which is, "'in essence' an appeal of a final state

court decision must be dismissed for lack of subject matter jurisdiction."  Altemose v.

Charlestown Township, 1999 WL 179759 *2 (E.D. Pa. March 23, 1999) aff'd 205 F. 3d

1328 (3d Cir. 1999) (citation omitted) citing to Kirby v. City of Philadelphia, 905 F. Supp.

222, 225 (E.D. Pa. 1995); See also O'Rourke v. Krapf, 2002 WL 32348933 *5 (E.D. Pa.

September 20, 2002)("The Rooker-Feldman doctrine forecloses not only straightforward

appeals but also more direct attempts by federal plaintiffs to undermine state court

decisions.").

---

[3] David J. Buchanan v. Thomas E. Gay, Thalia Joan Gay and the Firm of Stumpf, Vickers & Sandy, P.A., Case No. 06C-01-002-MMJ, The Superior Court of Delaware in and for Sussex County.

[4] Case No. 522 (2006).

676850_2

In the present case, the Rooker-Feldman doctrine bars Plaintiff's claims against Ms. Gibbons. Plaintiff, through the Delaware Superior Court Litigation, sought to undermine the Family Court's decisions by claiming that his civil rights were violated with regard to the disposition of the Buchanan's marital property and custody arrangement of their minor daughter, Heidi. In the present Petition, Plaintiff makes identical claims; however, this time he added new defendants to the list of violators. Insofar as the Superior Court has already rejected Plaintiff's attacks on the procedural propriety of the underlying family law litigation, the instant Petition must be rejected as an impermissible challenge to the state court's adjudications.[5]

Ms. Gibbons, as well as all the other defendants who were not parties to the Delaware Superior Court Litigation, were involved with aspects of the Family Court litigation. As such, Plaintiff, in attempting to undermine the effects of the Family Court disposition, could have raised – in the Delaware Superior Court Litigation – any issue regarding Ms. Gibbons' conduct. The Rooker-Feldman doctrine applies not only to claims which were actually brought in the state court case but also to claims "**which could have been raised in that forum.**" Altemose, 1999 WL 179759 at *2 (emphasis added). Therefore, Plaintiff is barred from litigating any such issue against Ms. Gibbons in this action.

It is equally clear that this Court is precluded from exercising subject matter jurisdiction over claims that are "inextricably intertwined with . . . a state adjudication." Gulla v. North Strabane Township, 146 F. 3d 168, 171 (3d Cir. 1998). There can be no argument that the issues presented in this case are "inextricably intertwined" with the issues

---

[5] The Rooker-Feldman doctrine has been held to apply even where there has been no "final" judgment in the state court. Keene Corp. v. Cass, 908 F. 2d 293, 297 (8th Cir. 1986).

of the Delaware Superior Court Litigation. "A federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under <u>Feldman</u>, where the federal relief can only be predicated upon a conviction that the state court was wrong." <u>Morley v. Superior Court</u>, 2004 WL 377669 *2 (E.D. Pa. February 26, 2004). Here, a finding that the Plaintiff is entitled to any relief would essentially determine that the Family Court litigation was resolved through impropriety and amounted to a violation of the Plaintiff's civil rights. Such a finding would directly contradict the Superior Court and, as such, this action is barred under the <u>Rooker-Feldman</u> doctrine. <u>See</u> <u>Burch v. Billingtier</u>, 2003 U.S. Dist. LEXIS 4975 (E.D. Pa. March 13, 2003) (holding that an action seeking a declaratory judgment that state municipal court procedures resulted in a violation of the plaintiff's due process rights was barred under the <u>Rooker-Feldman</u> doctrine since granting plaintiff's relief would require Federal Court to conclude that the municipal court employed improper procedures in plaintiff's case).

### C.     <u>Counsel for the Court-Appointed Special Advocate Is Immune from Suit</u>

#### 1.     Defendant Gibbons is Entitled to Immunity Under the CASA Authorizing Statute

The Delaware statute authorizing the CASA Program and governing the administration of the program specifically grants immunity to the program's participants. The statute states, "The Director, coordinators, **attorneys**, and court-appointed special advocates participating in the Court-Appointed Special Advocate Program shall not be civilly liable for acts or omissions committed in connection with duties which are part of the program if they have acted in good faith and are not guilty of gross negligence." 31 <u>Del</u>. <u>C</u>. §3611 (emphasis added). Plaintiff has alleged that Ms. Gibbons should be held civilly liable for her acts while serving as a CASA attorney in connection with the family law dispute

7

between him and his ex-wife.[6]  Under the CASA authorizing statute, Ms. Gibbons is entitled

to immunity.  Ms. Gibbons conducted her duties as a CASA attorney on the Buchanan

matter, and all of her matters, with the knowledge that her discretion would not be

challenged by countless civil law suits by family law litigants that are displeased with the

results, such as Mr. Buchanan.

Mr. Buchanan alleges that as a contract attorney, Ms. Gibbons is not entitled to the

"absolute immunity provided to state employees." D.I. No. 2 at ¶16.  In analyzing a similar

set of facts, though, the Supreme Court disagreed.  In Browne v. Robb, a criminal defendant

filed a civil suit against his former court-appointed **contract** attorney alleging, inter alia,

legal malpractice, breach of contract and fraud.  583 A. 2d 949 (Del. 1990) (emphasis

added).  The Court recognized that public defenders are immune under the State Tort Claims

Act, 10 Del. C. §4001(1)-(3), and held that common law principles required the Court to

apply the immunity protections to court appointed **contract** lawyers.  Id. at 951 (emphasis

added).  The Court went on to justify its holding by stating, "[t]he potential 'chilling effect'

that the threat of legal malpractice suits has against court appointed contract attorneys

without some qualified immunity is especially evident" considering that unlike private

counsel, court-appointed contract attorneys are not free to contract with clients.  Id. at 952.

In the case of CASA counsel, it is particularly important to preserve the immunity

provided by the statute.  By their very nature, the disputes in which CASA counsel are

involved are emotionally charged, often leaving at least one party to the dispute extremely

disappointed with the result.  If the statutory immunity granted to CASA counsel is not

---

[6] Plaintiff's Petition is devoid of any allegations of gross negligence or that she did not perform her duties in
good faith.  Instead, Plaintiff simply alleges that Ms. Gibbons "showed personal involvement and wrongdoing"
in performing her obligations as CASA counsel.  See D.I. No. 2 at ¶¶ 18-23.

8

preserved, the chilling effect will be extreme and the citizens of Delaware, and most importantly the children in need of qualified advocates, will suffer by virtue of a diminished pool of attorneys who are willing to subject themselves to personal liability for decisions made in the "fearless and independent" litigation of claims. See Browne, 583 A. 2d at 951.

2.    **Defendant Gibbons is Entitled to Judicial Immunity**

Federal Courts have also addressed the issue of immunity for defendants like Ms. Gibbons.  Under almost identical circumstances, the United States District Court for the Eastern District of Pennsylvania held that court-appointed custody evaluators in a state divorce proceeding enjoyed judicial immunity from liability under 42 U.S.C. §1983 and §1985.  Hughes v. Long, 242 F. 3d 121 (E.D. Pa. 2001).  The Court reasoned that the defendants were entitled to judicial immunity because "they acted as 'arms of the court', similar to a guardian *ad litem* or a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request."  Id. at 126.  The Court specifically identified duties delegated by the Family Court that entitled the defendants to judicial immunity including gathering information, conducting an evaluation and making a recommendation to aid in the custody determination.  Id. at 127.  Similarly, in the present matter, the CASA authorizing statute identifies the duties of the CASA as providing independent factual information to the Family Court, submitting reports to the Family Court and requesting appropriate relief from the Family Court on behalf of the child.  31 Del. C. §3606(2), (3) and (11).  Furthermore, while the CASA serves as the official guardian *ad litem*, Ms. Gibbons' role can certainly be analogized to that of a guardian *ad litem* which the Third Circuit and other Federal Courts have held are entitled to absolute judicial immunity. Gardner v. Parson, 874 F. 2d 131, 145 (3d Cir. 1989); Myers v. Morris, 810 F. 2d 1437 (8th Cir. 1987) rev'd on different grounds, Burns v. Reed, 500 U.S. 478 (1991).  Therefore, as a

9

court-appointed attorney, Ms. Gibbons is also entitled to judicial immunity from Mr. Buchanan's law suit.

### 3.     Defendant Gibbons is Immune from Suit Under the Doctrine of Qualified Immunity

Public officials performing discretionary functions are entitled to qualified immunity when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Ryan v. Burlington County, 889 F. 2d 1286, 1292 (3d Cir. 1989) citing Harlow v. Fitzgerald, 457 U.S. 800 (1982). In determining what a reasonable person would have known, the Court should test the objective legal reasonableness of the defendant's acts. Id. (holding that plaintiff must demonstrate his right is **clearly** established and the unlawfulness is **apparent**)(emphasis added). "The defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties and inhibits their discretionary actions, and, quite possibly, deters qualified people from accepting public service." Ryan v. Burlington County, 889 F. 2d at 1292.

As established in the previous sections, Ms. Gibbons was certainly performing a public function. In fact, Federal Courts have characterized her role as quasi-judicial. See, supra, Section IV.C.2. Furthermore, Plaintiff's allegations of improper conduct are certainly directed at Ms. Gibbons' discretionary functions. For example, paragraph seventeen alleges an improper failure to move for the return of Heidi Buchanan to her father; paragraph eighteen alleges that Ms. Gibbons improperly failed to take appropriate action against Mr. Gay for accepting funds on deposit for Heidi Buchanan; and paragraph twenty alleges that Ms. Gibbons improperly supported motions of Mr. Gay. D.I. No. 2 at ¶ 17-18, 20. The remaining allegations are similar in that they claim that Ms. Gibbons abused her discretion

as CASA counsel. Finally, none of the allegations against Ms. Gibbons demonstrate conduct that is "so ill-conceived or malicious that it 'shocks the conscience'" as required by this Circuit. See Miller v. City of Philadelphia, 174 F. 3d 368, 374 (3d Cir. 1999). Instead, the entire Petition demonstrates a mere disagreement with the actions from a dissatisfied litigant.

Permitting this suit to go forward would give every dissatisfied state court litigant a second bite at the apple by granting the right to challenge the discretion of public officials including judges, police, prosecutors, public defenders, court-appointed attorneys and other personnel. The doctrine of qualified immunity has been preserved over time to avoid this tremendous waste of judicial resources and, most importantly, to encourage strong advocates to enter public service. This Court should not abrogate that long-standing legal tradition.

### D.    HIPAA Regulations Do Not Apply to Defendant Gibbons

In paragraphs 16, 18 and 20 through 23, Plaintiff alleges that Ms. Gibbons was in violation of HIPAA Privacy Rule §164.524(a). That regulation grants individuals a right of access to his/her own medical records. HIPAA Privacy Rule §164.524(a). Plaintiff's Petition does not specifically allege how Ms. Gibbons is in violation of the privacy rule, however, a reading of the HIPAA regulations makes such an inquiry unnecessary.

Section 160.102 of the HIPAA regulations specifically provides that "the standards, requirements, and implementation specifications under this subchapter apply to the following entities: (1) a health plan; (2) a health care clearinghouse; (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." It is clear by the Plaintiff's own Petition that HIPAA Privacy Rule §164.524(a) does not apply to Ms. Gibbons and, therefore, the cause

11

of action pertaining to violations of HIPAA must be dismissed no matter what conduct Mr. Buchanan intended to allege was a violation of the privacy rule.

Even if Ms. Gibbons was somehow subject to the Privacy Regulations, HIPAA does not provide a private right of action against her. Instead, section 160.306(a) states that "a person who believes a covered entity is not complying with the applicable standards, requirements and implementation specifications . . . may file a complaint with the Secretary [of Health and Human Services]." Nothing in the regulations sets forth a private right of action against the covered entities and Federal Courts have held that no such right exists. See Rigaud v. Garofalo, 2005 U.S. Dist. LEXIS 7791 *7 (E.D. Pa. May 2, 2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F. Supp. 2d 1176, 1179-80 (D. Wyo. 2001); Brock v. Provident Am. Ins. Co., 144 F. Supp. 2d 652, 657 (N.D. Tex. 2001); Means v. Indep. Life and Accident Insurance Co., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997); Wright v. Combined Insurance Company of Am., 959 F. Supp. 356, 362-63 (N.D. Miss. 1997). Therefore, because no right of action can exist against Ms. Gibbons, the Petition must be dismissed to the extent to alleges violations of HIPAA.

E.    **Defendant Gibbons Did Not Owe A Duty to Plaintiff**

To the extent the Petition could be construed as a legal malpractice action, it must be dismissed as Ms. Gibbons did not have a legal duty to Mr. Buchanan or his daughter. To establish a cause of action under a theory of legal malpractice a plaintiff must demonstrate (1) the employment of the attorney; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of the client's loss. David B. Lilly Co., Inc. v. Fisher, 18 F. 3d 1112, 1120 (3d Cir. 1994) (applying Delaware law); See also Pusey v. Reed, 258 A. 2d 460, 461 (Del. Super. 1969), overruled on other grounds,

12

Straun v. All American Engineering Co., 350 A. 2d 765 (Del. 1975). In the present matter, Plaintiff is unable to demonstrate the first element of a legal malpractice action.

The statute authorizing the CASA program makes clear that:

> The program will include volunteers to serve as Court-Appointed Special Advocates at the pleasure of the Chief Judge of the Family Court. The Court-Appointed Special Advocate shall . . . represent the best interests of the child in all child welfare proceedings.

31 Del. C. §§ 3603(c), 3606(1). On the contrary, with respect to the authorization of CASA counsel, which was Ms. Gibbons' role in the present dispute, the statute states, "[t]he program will include contract attorneys who will provide legal representation and advice **for the Court-Appointed Special Advocates and for the CASA program**." 31 Del. C. §3603(c) (emphasis added). Therefore, as an attorney, Ms. Gibbons' legal duty was to the CASA and not to Heidi Buchanan. Even assuming that the Court could find that Heidi Buchanan is a third-party beneficiary of Ms. Gibbons duty to the CASA, she is of the age of majority at this point, and as such would be entitled to bring an action on her own behalf. In any event, Mr. Buchanan certainly cannot demonstrate a duty running from Ms. Gibbons to him and, thus cannot satisfy the elements of an action based on a legal malpractice theory. Thus, to the extent Plaintiff's Petition seeks relief on that basis, it must be dismissed.

13

676850_2

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Kristin S. Gibbons, Esquire, respectfully requests that the instant Petition be dismissed with prejudice.

Respectfully submitted,

BY: _____
MARTIN J. WEIS, ESQUIRE (4333)
Dilworth Paxson LLP
One Customs House
Suite 500
704 King Street
P.O. Box 1031
Wilmington, Delaware 19801
Tel: 302-571-9800
Fax: 302-571-8875
mweis@dilworthlaw.com
Attorney for Defendant,
Kristin S. Gibbons, Esq.

Dated: <u>February 16, 2007</u>

14

# EXHIBIT A

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR SUSSEX COUNTY

|  |  |
|---|---|
| DAVID J. BUCHANAN, AND IN THE INTEREST OF HEIDI N. BUCHANAN | : Case No. |
| Petitioner, Pro Se, Plaintiffs | : |
| v. | : |
| THOMAS E. GAY, ESQUIRE, WIFE THAILA JOAN GAY, AND THE FIRM OF STUMPF, VICKERS, & SANDY, P.A. Respondents, Defendants | : |

2006 JAN -3 PM 2:49
FILED
PROTHONOTARY
SUSSEX COUNTY

## PETITION TO AWARD DAMAGES FOR BREACH OF FIDUCIARY DUTY, MEDICAL MALPRACTICE, DEFAMATION OF CHARACTER, DERIVATIVE TORT, INFLICTION OF SEVERE EMOTIONAL DISTRESS AND HARM, LITIGATION CONDUCTED IN MALUM IN SE, FAILURE TO OBSERVE FEDERAL BANKRUPTCY LAWS, VIOLATION OF CIVIL RIGHTS, DISADVANTAGING AN OPPOSING PARTY BY MISLEADING A PRESIDING JUDGE, ABUSE OF PROCESS, ERRORS, AND OMISSIONS

**NOW COME** the above captioned Petitioner, David J. Buchanan, Pro Se, and in the interest of his daughter Heidi N. Buchanan a minor child, hereby petitions the Superior Court of the State of Delaware in and for Sussex County to award compensatory Damages to the Plaintiffs, and order the Respondents pay for: breach of fiduciary duty, medical malpractice, defamation of character, derivative tort, infliction of severe emotional distress and harm, litigation conducted in malum in se, failure to observe Federal Bankruptcy Laws, disadvantaging an opposing party by misleading a presiding Judge, violation civil rights guaranteed by the 5th, 8th, and 14th amendments of the United

1

States Constitution, abuse of process, errors and omissions, and in support of, state, allege, aver, identify and claims the following:

## JURISDICTION

1. The respondents are residential property owners, as well as employed in Sussex County, Delaware.

2. The respondents are licensed and insured professionals practicing in Sussex County, Delaware.

3. The respondents are subject to criminal charges for matters identified within in the State of Delaware, for which civil damages can be awarded by the Court.

4. The petitioner is a resident of Sussex County, Delaware.

5. The Superior Court of the State of Delaware has jurisdiction over all matters where damages may exceed $60,000.

6. The law firm of STUMPF, VICKERS & SANDY, PA, is licensed in the State of Delaware, and maintains an address at 8 West Market Street, Georgetown Delaware.

7. The Plaintiffs have the right to bring suit to enjoin enforcement of the statute, contending that their rights under the Constitution of the United States are, have been, and will continue to be violated unless conduct by Mr. and Mrs. Gay, described within be declared unconstitutional as violative of the 5th, 8th, and 14th amendments.

## CAUSE

1. On or about ___March 3___, 2004, Thomas E. Gay, Esquire with malice caused defamation of Mr. Buchanan's character when he signed, and forwarded a letter typed on stationary displaying the title of the law firm Stumpf, Vickers, & Sandy, PA,

2

(Attachment A) to presiding Family Court Judge, the Honorable Judge John E. Henriksen, wrongfully accusing David J. Buchanan of felony theft of an automobile, which later appeared in an opinion published by the Honorable Judge John E. Henriksen (Attachment B).

2.   On or about March 18, 2003, , Thomas E. Gay, Esquire caused severe emotional harm to both Heidi N. Buchanan and David J. Buchanan, after gaining knowledge of Mr. Buchanan's hospitalization for a life threatening disease (Cancer), filed with Malum In Se, and malice, an emergency motion to Stay all contact between Mr. Buchanan, and his daughter Heidi N. Buchanan. (Attachment C).

3.   On or about March 18, 2003, , Thomas E. Gay, Esquire caused severe emotional harm to both Heidi N. Buchanan and David J. Buchanan after gaining knowledge of Mr. Buchanan's hospitalization for a life threatening disease (Cancer), filed with Malum In Se, and malice with the intent to unconstitutionally impair mortgage contracts, an Emergency Motion to List and Sell the Marital Home, without consideration of his clients ability to maintain the property pending property separation. (Attachment D).

4.   On or about September 3, 2004, Thomas E. Gay, Esquire failed to observe Federal Bankruptcy Laws when after gaining knowledge that Mr. Buchanan had filed for protection under Federal Bankruptcy Laws in Bankruptcy Court in and for the District of Delaware, mislead with malice, the presiding Judge during an evidentiary Hearing as to conditions of Bankruptcy Rule 362 -Automatic Stay, pertaining to Alimony proceedings, and has effectively delayed any alimony proceeding to the date of March 9, 2006, causing further financial damage to Mr. Buchanan by impairing

payment of mortgage contracts guaranteed by Barbara H. Buchanan. (Attachment E)

5.   On or about September 3, 2004, Thomas E. Gay, Esquire Disadvantaged the Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena for Barbara H. Buchanan to provide herself, as well as financial documents to an Emergency evidentiary hearing pertaining to interim alimony and health Insurance, with the intent to Quash a subpoena after he directed his client not to appear, entered a letter into evidence with the Court displaying the Honorable Judge John E. Henriksen's signature and opinion, published while the Judge was in private Practice, preventing a motioned default Judgment for interim alimony (Attachment F).

6.   The Firm of STUMPF, VICKERS, & SANDY, P.A. caused to direct the Georgetown Police to harass Mr. Buchanan with out provocation, and detain in heat and sun immediately following Family Court Proceedings while Mr. Buchanan was noticeably ill from chemo therapy.

7.   On or about November 14, of 2004, Thomas E. Gay, Esquire, Disadvantaged the Opposing party when after gaining knowledge that Mr. Buchanan had issued a Subpoena to Dr. Wilson III to testify in custody proceeding, contacted, discussed, coached, conspired, and further compromised the testimony of the expert expected to testify in a custody proceeding, while using the offices of the law firm Stumpf, Vickers, & Sandy, PA. (Court record available on request).

8.   Thomas E. Gay, Esquire, violated the Plaintiff's Civil Rights guaranteed by the 5th, 8th, and 14th amendments of the U.S. Constitution when he petitioned, motioned, conspired, and further exploited the best interests of his client, Heidi N. Buchanan, by

4

violating her civil right to contact her father, further prejudicing the relationship between father and daughter by motioning the Court to prevent any contact between father daughter for a period of time that exceeds Delaware Law.

9.   While employed as a nurse for Beebe Hospital, Thaila J. Gay of 424 Savannah Road, Lewis Delaware, breached her fiduciary duty to Mr. Buchanan resulting in medical malpractice, by failing to notify her employer, the Family Court, and most importantly Mr. Buchanan (a patient of Beebe Hospital) of her omission of conflict in providing medical services, to Mr. Buchanan either directly or indirectly by and through her place of employ, where her marital relation to Thomas E. Gay, Esquire, the attorney of record in opposition to Mr. Buchanan in domestic issues, where the Gays' stood to profit by the financial dissolve of Mr. Buchanan's assets during his treatment of cancer at Beebe Hospital.  Mrs. Gay's omission of conflict further imputes liability on herself for the actions of her Husband Thomas E. Gay, Esquire, by engaging in Malum In Se conduct involving dishonesty, fraud, deceit, and/or misrepresentation, omission of conflict, where his wife maintained employment at the health care facility to which Mr. Buchanan depended on for treatment of Cancer, and which enabled Mr. Gay to access Mr. Buchanan's medical records by and through his Wife's employ, imputing liability on himself for actions of his wife.

10.  Mrs. Thaila Joan Gay has been entrusted as an employee of Beebe Hospital, with the confidences and circumstances of all patients of the Hospital, in which a client/patient would be entitled to repose, confidence and trust, where Mrs. Gay has ample opportunity to invade the privacy of Mr. Buchanan to assist her husband Thomas E. Gay, Esquire, for personal gain.

5

11. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the guidelines of patient care by causing severe emotional harm to Mr. Buchanan, by failing to notify Mr. Buchanan of her access to medical records, insurance records, treatment schedules, and any other information that pertains to Mr. Buchanan's treatment, and treatment at Beebe Hospital, to which her husband has made such records an issue of in Family Court proceedings.

12. While employed as a nurse at Beebe Hospital, Thaila J. Gay, violated the guidelines of patient care causing severe emotional harm as a result of loss of right of family and privacy to Mr. Buchanan, when Thomas E. Gay, Esquire, imputed his professional responsibility on his wife.

13. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father, and to conceal child abuse occurring in the care of his client Barbara H. Buchanan, Mr. Gay breached his fiduciary duty to the minor in support of claims by another client to the Family Court, with affidavit taken directly from the minor child, giving the minor and the Court the impression that he was counsel for the child, when providing his signature on the motions filed in accordance with Family Court Rule 11 (a), where Mr. Gay would be considered the attorney of record, and where Mr. Gay has been entrusted with the child's confidences and circumstances, in which a client would be entitled to repose, confidence, and trust including protection from abuse.

14. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to identify to the Supreme Court "good cause" to be given leave of Court in these proceedings on appeal pertaining to custody.

15. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to provide notice to Barbara H. Buchanan, Heidi N. Buchanan, David J. Buchanan, or the Family Court of possible conflict in any matter.

16. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by not disclosing attorney conflict, as defined by Rule 1.7.

17. Stumf, Vickers, & Sandy, P.A., here and throughout to be referred to as the "Firm", caused loss of rights and financial support from Barbara H. Buchanan by failing to make reasonable efforts to ensure effective measures were in place to ensure that Thomas E. Gay, Esquire, a member of the Firm, complied with the Rules of Professional Conduct in violation of Rule 5.1 (c) (2).

18. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father violating rights guaranteed by the 5th, 8th, and 14th Amendments to the U.S. Constitution and to cause financial harm to Mr. Buchanan, Mr. Thomas E. Gay. Esquire, with Malum In Se, engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, by filing knowingly misleading and grossly incorrect financial disclosure of his clients, on the Form 16 (c), with the Family Court.

19. In an attempt to further his case in Family Court with the intent to isolate the minor child from her father violating rights guaranteed by the 5th, 8th, and 14th Amendments to the U.S. Constitution and to cause financial harm to Mr. Buchanan, Mr. Gay engaged in Malum In Se conduct involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule 8.4(c) of the code, by filing knowingly misleading and grossly incorrect emergency motions requesting the liquidation of

Real Estate utilized by Mr. Buchanan for home and employ, during a period of time
that Mr. Buchanan was incapacitated with emergency medical care. (Attachment H)

20. In an attempt to further his case in Family Court with the intent to isolate the
minor child from her father violating rights guaranteed by the 5th, 8th, and 14th
Amendments to the U.S. Constitution and to cause emotional harm to Mr. Buchanan,
Mr. Gay with Malum In Se, engaged in conduct involving dishonesty, fraud, deceit,
and/or misrepresentation in violation of Rule 8.4(c) of the code, by filing knowingly
misleading and grossly incorrect emergency motion requesting a stay of contact
between Mr. Buchanan and his daughter Heidi, during a period of time that Mr.
Buchanan was incapacitated with emergency medical care.

21. In an attempt to further his case in Family Court, Mr. Gay had knowledge of, and
seemingly directed the action of State Police to antagonize Mr. Buchanan with false
arrest, detention, harassment, and treatment that prevented Mr. Buchanan access to
medical facilities while seeking treatment for cancer, further violating rights
guaranteed the Buchanan's by the 5th, 8th, and 14th, amendments of the U.S.
Constitution.

22. In an attempt to further his case in Family Court, Mr. Gay with the assistance of
his wife, had knowledge of, and seemingly directed the action of law enforcement
agencies to interrupt medical treatment with wrongful arrest, causing an increased
risk of harm to Mr. Buchanan, which may have resulted in death.

23. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct
involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule
8.4(c) of the code, and violating Title 11 § 1269 of Delaware Code, by tampering with

physical evidence, where it is a record of the Family Court that on September 3, 2004,

Mr. Gay entered testimony and documents to the Court in an attempt to dismiss his

client from appearing, as well as from providing financial documents that were

requested by subpoena duces tecum.

24. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct

involving dishonesty, fraud, deceit, and/or misrepresentation in violation of Rule

8.4(c) of the code, by directly addressing the presiding Judge Henriksen by letter

captioned with heading of Stumpf, Vickers, & Sandy, P.A., causing defamation of

Mr. Buchanan's character by accusation of felony auto theft, where Judge Henriksen

later published an induced evil opinion of Mr. Buchanan pertaining to Mr. Gay's

unfounded accusation of theft.

25. In an attempt to further his case in Family Court, Mr. Gay, engaged in conduct

involving dishonesty, fraud, deceit, libeling him with derivative **tort**, and further

violated Mr. Buchanan's 5th amendment right to privacy, by accessing Mr.

Buchanan's medical billing information at Nanticoke Memorial Hospital by and

through his client Barbara H. Buchanan, where TORT "IS COMMITTED WHEN

THE ACTOR EMPLOYS LEGAL PROCESS IN A MANNER

TECHNICALLYCORRECT, BUT FOR A WRONGFUL AND MALICIOUS

PURPOSE TO ATTAIN ANUNJUSTIFIABLE END. *See WHEELDIN V.*

*WHEELER, 373 U.S. 647.*

26. In an attempt to further his case in Family Court, and to avoid litigation on Appeal

of matters in Supreme Court, Mr. Gay engaged in conduct prejudice to the

administration of justice, in violation of Rule 8.4 (d), by withdrawing from briefs of

appeal without good cause, and has further abused the legal process of court by

procuring "the issuance of valid, authorized legal process, albeit with a wrongful

intention and for an unjustifiable end." *See WHEELDIN V. WHEELER, 373 U.S.*

*647.*

27. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

identify and safeguard funds belonging to a client in violation of Rule 1.15(a), after

claim of such funds were maid in Family Court proceedings.

28. Mr. Gay breached his fiduciary duty to the minor Heidi N. Buchanan by failing to

return or deliver funds belonging to a client in violation of Rule 1.15(b), after claim

of such funds were maid in Family Court proceedings, and where Mr. Gay possessed

accounting that reflects the amount of such funds belong to the minor. *See Pepper v.*

*Litton, 308 U.S. 295.*

29. Mr. Gay violated the rights of the minor child to have contact with her father, and

the right of the father to have contact with his child during the treatment of a life

threatening disease, by engaging in conduct involving dishonesty, fraud, deceit, when

moving the Family Court to stay contact between father and child, while Mr.

Buchanan was undergoing emergency medical attention preventing a lucid pro se

response, where Mr. Gay had gained knowledge of such treatment by and through his

client Barbara H. Buchanan, and acted with MALA IN SE, where according to

Blackstone, are offenses against "(THOSE) RIGHTS THEN WHICH GOD AND

NATURE HAVE ESTABLISHED, AND ARE THEREFORE CALLED NATURAL

RIGHTS, SUCH AS ARE LIFE AND LIBERTY, THEE WORSHIP OF GOD, THE

MAINTENANCE OF CHILDREN, AND THE LIKE." THEY ARE "CRIMES AND

MISDEMEANORS, THAT ARE FORBIDDEN BY THE SUPERIOR LAWS,
AND THEREFORE STYLED MALA IN SE". See JORDAN V. DE GEORGE, 341
U.S. 223.

30. Mr. Gay violated the rights of the minor child by withholding repose expected of
an attorney, when continuing to litigate domestic proceeding during Mr. Buchanan's
treatment of a life threatening disease, acing in Malum in se where the issuance of a
certificate of divorce cancelled any and all health care benefits previously enjoyed by
Mr. Buchanan, and made any life insurance as a result of unsuccessful treatment of
Mr. Buchanan's disease null and void, where damages would exceed $500,000. See
JORDAN V. DE GEORGE, 341 U.S. 223.

31. At the expense of all involved including the best interest of Barbara H. Buchanan,
Mr. Gay has abused his fiduciary responsibility to both his clients and the Family
Court, by litigating a divorce that severely libels all parties with irreparable financial
harm, loss of established financial securities enjoyed through insurance, and has
interfered with the right of the Buchanan's to plan their own affairs, and shape their
own life as they think best. See Pepper v. Litton, 308 U.S. 295, Eisenstadt v. Baird,
405 U.S. 438.

32. In violation of the expected conduct of lawyers, as well as rules of civil
procedure, Thomas E. Gay, Esquire, has failed to update discovery requested in
matters pertaining to Family Court, and the Bankruptcy Court for the District of
Delaware, as to the location of persons having knowledge of discoverable matters,
and for responses of discovery requests that he has knowledge of being incorrect or
no longer true. See HICKMAN V. TAYLOR, 329 U.S. 495.

33. In violation of the expected conduct of lawyers and fiduciaries, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable delay in settlement of ancillary matters, causing irreversible financial damage to all parties of this litigation, by frivolous litigation and failure to state a claim as the foundation of a "planned and fraudulent scheme", in an attempt to exhaust funds from all parties of this litigation. *See Pepper v. Litton, 308 U.S. 295.*

34. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of Parental contact with his remaining minor child, loss of spousal support, and the loss of medical benefits providing health care by omission of pertinent facts, to the Family Court, as well as facts requested through examination by the Bankruptcy Court for the District of Delaware, and by causing unnecessary delay in spousal support hearings by misleading the presiding Judge Henriksen during a evidentiary hearing on September 3, 2004, where the Gay's seemingly intended to abuse their access to inside information and it's clandestine use for personal profit. *See WOLF V. WEINSTEIN 372 U.S 633.*

35. In violation of the expected conduct of lawyers, as well as rules of civil procedure, Thomas E. Gay, Esquire, has caused unreasonable circumstance of loss of money belonging to the minor child's coffer by omission of pertinent facts, to the Family Court, as well as omission of facts requested through examination by the Bankruptcy Court for the District of Delaware, for personal gain. *See CF. MICHOUD V.GIROD, 4 HOW. 503, 556-560; WEIL V. NEARY, 278 U.S. 160; MAGRUDER V. DRURY, 235 U.S. 106, 119-120; WOLF V. WEINSTEIN 372 U.S 633.*

Heidi N. Buchanan and her father David J. Buchanan for severe emotional harm, distress, and loss of quality of life by the infringement of civil rights guaranteed by the U. S. Constitution, by and through the actions of Mr. and Mrs. Thomas E. Gay, Esquire, intrinsic libel of the firm of Stumf, Vickers, & Sandy, P.A., and medical malpractice associated with Thaila J. Gay's profession as a nurse, and refer Mr. and Mrs. Gay to the appropriate governmental Agency for disciplinary action.

Dated: 8 Jan 06

David J. Buchanan
34806 Hudson Road
Laurel, Delaware 19956
Pro Se, Petitioner

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

DAVID J. BUCHANAN, and in the )
interest of HEIDI N.  BUCHANAN, )
                                )
            Plaintiff,          )
                                )          C.A. No. 06C-01-002 MMJ
     v.                         )
                                )
THOMAS E. GAY, ESQUIRE; THALIA  )
JOAN GAY; and the firm of STUMPF, )
VICKERS & SANDY, P.A.,          )
                                )
            Defendants.         )


## MEMORANDUM OPINION

Submitted: June 26, 2006
Decided:  September 21, 2006

David J. Buchanan, *Pro Se*

Joseph Scott Shannon, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware, Attorneys for Thomas E. Gay, Esquire and Stumpf Vickers & Sandy, P.A.

John A. Elzufon, Esquire, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, Delaware, Attorneys for Thalia Joan Gay


JOHNSTON, J.

## PROCEDURAL CONTEXT

On January 3, 2006, *pro se* plaintiff Davis J. Buchanan ("Buchanan") filed a Complaint, seeking "damages for Breach of Fiduciary Duty, Medical Malpractice, Defamation of Character, Derivative Tort, Infliction of Severe Emotional Distress and Harm, Litigation Conducted in Malum In Se, Failure to Observe Federal Bankruptcy Laws, Violation of Civil Rights, Disadvantaging an Oposing Party by Misleading a Presiding Judge, Abuse of Process, Errors and Omissions."   The parties filed several motions.  The Court held a hearing on the motions on June 26, 2006.  Following is the Court's resolution of the motions.

### Motion to Dismiss by Defendant Thaila Joan Gay

and

### Motion to Strike Motion to Dismiss by Defendant Thaila Joan Gay for non Compliance of Court Rules

and

### Plaintiff's Motion for Default Judgment Against Thaila Joan Gay

and

### Motion to Strike Answer and Opposition of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy, P.A. to Plaintiffs' Motion for Default Judgment as to Thaila Gay

1

As set forth in the Complaint, Buchanan alleges that while employed as a nurse for Beebe Hospital, Thaila Gay "breached her fiduciary duty to Mr. Buchanan resulting in medical malpractice."

Section 6853(a)(1) of title 18 of the Delaware Code provides that all medical negligence complaints must be accompanied by an affidavit of merit, signed by an expert witness, accompanied by a current *curriculum vitae* of the witness, stating that there are reasonable grounds to believe that healthcare medical negligence has been committed. Buchanan has conceded that he has not filed an affidavit of merit. The claim against Thaila Gay clearly is designated as "medical malpractice." The Court finds that plaintiff has failed to comply with the affidavit of merit prerequisite set forth in sections 6853(a)(1) and (c) of title 18 of the Delaware Code.

**THEREFORE, the Motion to Dismiss by Defendant Thaila Joan Gay is hereby GRANTED, with prejudice. The Court having dismissed Defendant Thaila Joan Gay, the Motion to Strike Motion to Dismiss by Defendant Thaila Joan Gay for non Compliance of Court Rules; Plaintiff's Motion for Default Judgment Against Thaila Joan Gay; and the Motion to Strike Answer and Opposition of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy, P.A.**

2

to Plaintiffs' Motion for Default Judgment as to Thaila Gay are hereby
DENIED AS MOOT.

\*   \*   \*   \*   \*

*Plaintiff's Motion for Protective Order and Order to Strike*
*Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy P.A.*
*to their Motion for Dismissal in Lieu of an Answer to the Complaint*

During the June 26, 2006 hearing, the Court dismissed, with prejudice,
plaintiff Heidi N. Buchanan as a party to the case. David Buchanan, Heidi's
father, had filed the Complaint purportedly "in the interest of Heidi N. Buchanan."
David Buchanan failed to follow the required procedure for appointment as the
legal representative of a minor. Additionally, at the time of the June hearing,
Heidi had reached majority. By Affidavit of Heidi N. Buchanan attached to the
Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy, P.A. to
their Motion for Dismissal in Lieu of an Answer to the Complaint, Heidi
Buchanan requested that she be dismissed as a party. The Court found that the
Supplement was properly filed in accordance with the Superior Court Civil Rules,
and that the substance of the Supplement was meritorious.

THEREFORE, Plaintiff's Motion for Protective Order and Order to
Strike Supplement of Defendants Thomas E. Gay and Stumpf, Vickers &
Sandy P.A. to their Motion for Dismissal in Lieu of an Answer to the

3

Complaint is hereby DENIED. Plaintiff Heidi N. Buchanan is hereby dismissed as a party to this case, with prejudice.

Further, in the Motion for Protective Order, Plaintiff alleged that a member of the Delaware Bar engaged in repeated violent conduct. Specifically, Plaintiff accused the Delaware attorney of endangering a child as follows:

> On or about the filing of the *Affidavit of Heidi N. Buchanan*, the child sustained injuries characteristic to physical coercion, and are repetitive in nature to a broken rib injury sustained by the child on or about the time [the attorney] obtained an Affidavit from the child pertaining to Family Court issues.

There is absolutely no factual basis whatsoever supporting Plaintiff's wholly specious and libelous allegations. Plaintiff's motion is in violation of Superior Court Civil Rule 11(b).

**THEREFORE,** the Court *sua sponte* deems as stricken in its entirety Plaintiff's Motion for Protective Order and Order to Strike Supplement of Defendants Thomas E. Gay and Stumpf, Vickers & Sandy P.A. to their Motion for Dismissal in Lieu of an Answer to the Complaint , as lacking factual support, and clearly having been filed without any reasonable inquiry.

\*     \*     \*     \*     \*

4

*Plaintiff's Motion for Default Judgment Against Thomas E. Gay, Esquire,*
*and the Firm of Stumpf, Vickers & Sandy, P.A.*

Plaintiff has requested "an order of payment for the amount of $37,000,000

(thirty seven million dollars) in response to, and as a result of Respondents

inexcusable neglect of legal process, laxity in defending any and all allegation of

*Complaint*, where respondents are joint Tortfeasors joint and severally liable for

the damages claimed, where separation of respondent parties has delayed this

litigation, allowed the individual Tortfeasors ample time to retain Counsel,

research and discovery a defense, and *Answer* the allegations of the *Complaint*,

where the Respondents have failed to Provide a timely Answer giving cause for

*Motion for Default Judgment,* pursuant to Superior Court Rule 55. [sic]"

Superior Court Civil Rule 55(b) provides that judgment by default may be

entered "when a party against whom a judgment for affirmative relief is sought has

failed to appear, plead or otherwise defend." Defendants Thomas Gay and

Stumpf, Vickers & Sandy, P.A. were served on January 11, 2006. Counsel for

both defendants entered an appearance on January 26, 2006. Also on January 26,

2006, both defendants filed a Motion for Enlargement of Time to File an Answer.

The Court granted the motion and set March 3, 2006 as the time within which

these defendants must file a responsive pleading. On February 9, 2006, these

defendants timely filed a Motion for Dismissal in Lieu of Answer to the

Complaint.  A motion to dismiss under Rule 12(b)(6) is a responsive pleading for

purposes of Rule 55.

THEREFORE, Plaintiff's Motion for Default Judgment Against

Thomas E. Gay, Esquire, and the Firm of Stumpf, Vickers & Sandy, P.A. is

hereby DENIED.

*   *   *   *   *   *

*Motion of Thomas E. Gay, Esquire and Stumpf, Vickers & Sancy, P.A.*
*for Dismissal in lieu of an Answer to the Complaint*

The claims asserted in the Complaint fall into three categories.  The

following is the Court's analysis of each category.

### Pleadings Filed and Statements Made by Thomas E. Gay,  Esquire

The Complaint asserts that Gay made numerous statements that defamed

Plaintiff.  Plaintiff also claims that various pleadings, motions and documents,

filed in connection with Family Court proceedings, in bankruptcy proceedings,

and with the Delaware Supreme Court, were malicious and caused Plaintiff severe

emotional harm.  Plaintiff also claims that Gay's actions in connection with court

proceedings harmed Plaintiff and resulted in unreasonable delay, financial

damage, police harassment, and imposition by Family Court of "conditions on the

6

Plaintiff[] that are penal in nature and which are described as 'CRUEL AND UNUSUAL' punishment in a civilized community, in violation of the 8th amendment." Plaintiff alleges that Gay acted in concert with his law firm, Stumpf, Vickers & Sandy, P.A.

In certain instances, Plaintiff asserts that Gay breached his fiduciary duties to Heidi Buchanan and David J. Buchanan. There is no basis for a finding that Gay had any fiduciary duty to David Buchanan. Because Heidi Buchanan is no longer a party, the Court need not address whether there was any breach of duty to Heidi.

In all of the Family Court, Bankruptcy Court, and Supreme Court proceedings, Thomas Gay was acting as an attorney representing the former wife of David J. Buchanan.

In Delaware, the absolute privilege attaches to all statements made in the course of judicial proceedings. The privilege affords absolute protection upon a showing that the statements were issued as part of a judicial proceeding. The privilege is not confined to events inside a courtroom. Rather, the privilege

extends to all communications relating to the litigation, including communications with witnesses and the drafting and filing of pleadings.[1]

The absolute privilege protects attorneys and participants in litigation from actions for defamation.

> The purpose served by the absolute privilege is to facilitate the flow of communication between persons involved in juridical proceedings and, thus, to aid in the complete and full disclosure of facts necessary to a fair adjudication. To accomplish this goal, the privilege protects judges, parties, attorneys, witnesses and other persons connected with litigation from the apprehension of defamation suits, thus permitting them to speak and write freely, without undue restraint. Moreover, the protection afforded by the privilege is absolute; so long as the statement is pertinent to, and made in the course of, a judicial proceeding, *even a showing of malice* will not divest the statement of its immune status (emphasis in original).... As the *Nix* court pointed out, "the interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity."[2]

The absolute privilege bars all of Plaintiff's claims based on pleadings filed, statements made, and actions taken by Thomas E. Gay, Esquire, individually and as a member of the law firm of Stumpf, Vickers & Sandy P.A., in connection with litigation in which Gay represented Buchanan's former wife.

---

[1]*Nix v. Sawyer*, 466 A.2d 407, 410-11 (Del. Super. 1983).

[2]*Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992) (quoting *Nix v. Sawyer*, 466 A.2D 407 (Del. Super. 1983).

## Plaintiff's Civil Rights Claims

Plaintiff alleges that Gay violated Plaintiff's civil rights as guaranteed by the Fifth, Eighth and Fourteenth amendments to the United States Constitution. Thomas E. Gay, Esquire and the law firm of Stumpf, Vickers & Sandy, P.A. are private parties engaged in the private practice of law.  In order to maintain a cause of action on the basis of violation of Constitutional rights, a plaintiff must demonstrate: (1) that the deprivation was caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;" and (2) that the private party "acted together with or...obtained significant aid from State officials" or engaged in conduct "otherwise chargeable to the State."[3]  Plaintiff has not alleged any facts upon which the Court could find that Gay or Stumpf, Vickers & Sandy P.A. acted under color of state law.

[3]*Wyatt v. Cole,* 504 U.S. 158, 160-62 (1992).

Additionally, such claims must be made pursuant to the Civil Rights Act of 1971, as codified at 42 U.S.C. §1983.[4] Plaintiff has failed to do so.

## Delaware Lawyers' Rules of Professional Conduct

The Complaint sets forth several instances in which Gay and his law firm allegedly breached ethical duties established by the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"). The DLRPC regulate the actions of individual attorneys and do not apply to law firms. Further, assuming the facts in the light most favorable to Plaintiff, even if there were violations of the DLRPC, Plaintiff does not have standing to recover damages. *The Preamble: A lawyer's responsibilities*, provides in pertinent part:

> (20)  Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct

---

[4] 42 U.S.C. §1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.").

through disciplinary agencies. They are not designed to be a
basis for civil liability. Furthermore, the purpose of the Rules
can be subverted when they are invoked by opposing parties as
procedural weapons. The fact that a Rule is a just basis for a
lawyer's self-assessment, or for sanctioning a lawyer under the
administration of a disciplinary authority, does not imply that
an antagonist in a collateral proceeding or transaction has
standing to seek enforcement of the Rule.

There is no basis for enforcement of a lawyer's ethical duties outside the

framework of disciplinary proceedings. It is a fundamental constitutional

principle that the Delaware Supreme Court has sole and exclusive jurisdiction over

all matters affecting governance of members of the Delaware Bar.[5]

---

**THEREFORE, the Motion of Thomas E. Gay, Esquire and Stumpf,**

**Vickers & Sandy, P.A. for Dismissal in lieu of an Answer to the Complaint is**

**hereby GRANTED. The Complaint is hereby DISMISSED WITH**

**PREJUDICE. All subsequent filings and any further application to this**

**Court relating to this case shall be subject to the requirements of 10 *Del. C.***

**§8803(e).[6]**

---

[5]*In re Infotechnology, Inc., Shareholder Litigation*, 582 A.2d 215, 219-220 (Del. 1990).

[6](e) When a Court finds that a litigant has abused the judicial process by filing frivolous
or malicious litigation, the Court may enjoin that litigant from filing future claims without leave
of court. When so enjoined, any future requests to file claims must be accompanied by an
affidavit certifying that:

(continued...)

\* \* \* \* \*

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston

---

[6](...continued)

(1)   The claims sought to be litigated have never been raised or disposed of before in any court;

(2)   The facts alleged are true and correct;

(3)   The affiant has made a diligent and good faith effort to determine what relevant case law controls the legal issues raised;

(4)   The affiant has no reason to believe the claims are foreclosed by controlled law; and

(5)   The affiant understands that the affidavit is made under penalty of perjury.

12

# EXHIBIT C

# TAB 1

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1

Not Reported in F.Supp.2d, 1999 WL 179759 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Altemose v. Charlestown Tp.E.D.Pa.,1999.Only the
Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
J. Leon ALTEMOSE, et al.
v.
CHARLESTOWN TOWNSHIP, et al.
**No. CIV. A. 98-2862.**

March 23, 1999.

Suzanne L. Bruce, Ryan, Wochok, Ryan and Reed,
Joseph A. Ryan, Ryan, Wochok, Ryan & Reed,
Ltd., Paoli, for J. Leon Altemose, Carol Altemose,
Plaintiffs.
James E. Mc Erlane, Lamb, Windle & Mc Erlane,
P.C., Joel L. Frank, Lamb, Windle & McErlane,
P.C., Maureen Murphy Mc Bride, Lamb, Windle &
Mc Erlane, PC, West Chester, for Charlestown
Township, the Board of Supervisors of Charlestown
Township, Defendants.

### MEMORANDUM

BARTLE, J.
**\*1** Plaintiffs, J. Leon Altemose and Carol C.
Altemose, have sued Charlestown Township in
Chester County and the Board of Supervisors of
Charlestown Township ("Board") under: (1) the
Fair Housing Act, as amended by the Fair Housing
Act of 1988, 42 U.S.C. § 3601 *et seq.;* (2) 42
U.S.C. § 1983; and (3) the Ninth and Fourteenth
Amendments to the United States Constitution.
Plaintiffs allege that defendants have discriminated
against and excluded minorities from Charlestown
Township through zoning practices which
prevented plaintiffs from building moderate to low
income apartments and subsidized housing.[FN1]

> FN1. This case was reassigned to the
> undersigned after the death of Judge
> Joseph L. McGlynn, Jr.

**\*1** Before the court is defendants' amended motion
to dismiss the complaint pursuant to Rules 12(b)(1)
and 12(b)(6) of the Federal Rules of Civil Procedure
on the following grounds: (1) the court lacks
subject matter jurisdiction under the
*Rooker-Feldman* doctrine to hear plaintiffs' claims;
(2) plaintiffs' claims are barred by the doctrine of
res judicata; (3) plaintiffs' Fair Housing Act claim is
barred by the statute of limitations and, in the
alternative, plaintiffs fail to state a claim under the
Fair Housing Act; (4) plaintiffs' Ninth Amendment
claim is barred by the statute of limitations and, in
the alternative, plaintiffs fail to state a claim under
the Ninth Amendment; and (5) plaintiffs lack
standing to bring their equal protection claim under
the Fourteenth Amendment.

I.

**\*1** Plaintiffs, who are in the business of building
single and multi-family dwelling housing units, own
and reside on fifty-eight acres of property in the
township. The property is zoned Farm Residential
which does not permit the erection of multi-family
dwellings.

**\*1** In November, 1994, plaintiffs sought to
construct apartments on their property. In pursuit of
that goal, they filed with the Board a challenge to
the validity of the township zoning ordinance at
issue here. At the same time they sought from the
Board a curative amendment pursuant to the
Pennsylvania Municipalities Planning Code.[FN2]
Plaintiffs alleged that while multi-family dwellings
were permitted by the ordinance in the sections of
the township zoned Planned Residential, the severe
restrictions imposed by the township effectively
precluded the development of apartments.

> FN2. Pennsylvania law authorizes
> governing bodies, such as the Charlestown
> Township Board of Supervisors to conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 1999 WL 179759 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

hearings, to decide challenges to the validity of local ordinances, and to enact curative amendments. *See* Pa. Stat. Ann. tit. 53 §§ 10609.1 and 10916.1. Section 10916.1(a) provides: "A landowner who, on substantive grounds, desires to challenge the validity of an ordinance ... which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge ... (2) to the governing body under section ... [10909.1(b)(4) ], together with a request for a curative amendment under section ... [10609.1]."

**\*1** The Board held public hearings on plaintiffs' proposed curative amendment on January 9, 1995, February 7, 1995 and March 20, 1995. On May 22, 1995, the Board issued a decision denying plaintiffs' challenge and request for a curative amendment, finding that the zoning ordinance was not exclusionary since it provided for townhouses, a form of multi-family dwellings.

**\*1** Plaintiffs appealed the Board's decision to the Court of Common Pleas of Chester County, which affirmed. Thereafter, plaintiffs appealed to the Commonwealth Court of Pennsylvania, which affirmed the lower court's decision in its entirety following oral argument before an *en banc* panel.[FN3] Finally, in July, 1997, plaintiffs filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania. That petition was denied on January 9, 1998. It was not until almost five months later, on June 2, 1998, that plaintiffs filed their complaint in this court.

> FN3. Following oral argument in this matter before a three judge panel of the Commonwealth Court, an opinion was filed on November 15, 1996. Plaintiffs' application for reargument was subsequently granted on December 4, 1996, and the opinion of November 15, 1996 was withdrawn. After oral argument before an *en banc* panel of the Commonwealth Court, an opinion was filed on July 1, 1997 affirming the decision

of the Court of Common Pleas.

## II.

**\*2** Defendant's motion under Rule 12(b)(1) questions the court's subject matter jurisdiction. *See Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). " [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen,* 549 F.2d at 891. As a result, a trial court may review all of the evidence and " satisfy itself as to the existence of its power to hear the case." *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982). The plaintiff has the burden of proving that jurisdiction exists. *See Mortensen,* 549 F.2d at 891.

**\*2** Under the *Rooker-Feldman* doctrine,[FN4] on which defendants rely, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's decision in a judicial proceeding." '[FN5] *Blake v. Papadakos,* 953 F.2d 68, 71 (3d Cir.1992) (citation omitted); *see also Guarino v. Larsen,* 11 F.3d 1151, 1156 (3d Cir.1993). A federal proceeding is barred under *Rooker-Feldman* "only when entertaining the federal court claim would be the equivalent of an appellate review of [the state court order]." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). Thus, a complaint which is "in essence" an appeal of a final state court decision must be dismissed for lack of subject matter jurisdiction. *Kirby v. City of Philadelphia,* 905 F.Supp. 222, 225 (E.D.Pa.1995).

> FN4. The origin of the *Rooker-Feldman* doctrine can be traced to the two United States Supreme Court decisions bearing their names. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 3

Not Reported in F.Supp.2d, 1999 WL 179759 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

263 U.S. 413 (1923).

FN5. The United States Court of Appeals for the Third Circuit has interpreted the *Rooker-Feldman* doctrine also to encompass final decisions of lower state courts. *See Port Auth. Police Benev. Ass'n v. Port Auth.,* 973 F.2d 169, 178 (3d Cir.1992).

**\*2** Importantly, the doctrine applies not only to claims which were actually brought before the state court, but also to claims which could have been raised in that forum. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16 (1983). The United States Court of Appeals for the Third Circuit echoed this feature of the doctrine in *Valenti v. Mitchell,* 962 F.2d 288 (3d Cir.1992):

**\*2** We reject ... [plaintiff's] argument that since they never raised, and the ... [state court] never considered, their ... [constitutional] challenges, *Rooker-Feldman* cannot bar them from pursuing these claims in federal court. They each had an opportunity to raise a ... [constitutional] challenge and failed to do so. They cannot be allowed to escape *Rooker-Feldman* by raising a new constitutional theory in federal court. Under principles of claim preclusion, they had a full and fair opportunity to litigate their ... [constitutional] claim in the state court, and here they merely seek a second bite at the apple.

**\*2** *Id.* at 296 (citations omitted). In addition, the Court of Appeals has determined that when a litigant failed to bring a constitutional claim in state court and then attempts to bring the constitutional claim in federal court, "it is appropriate to presume that the state court would have been willing to decide his constitutional claims subject to rebuttal by clear evidence to the contrary." *Guarino,* 11 F.3d 1161. In sum, a disappointed plaintiff, through artful pleading in federal court, may not attempt to reverse a decision of the Pennsylvania appellate courts. *See Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.1988); *Gulla v. North Strabane Township,* 146 F.3d 168, 171 (3d Cir.1998); *FOCUS,* 75 F.3d at 840.

**\*3** In the instant action, plaintiffs sought a curative

amendment under the Pennsylvania Municipalities Planning Code on the basis that the present zoning ordinance precluded the development of apartments and, as a result, the Township had failed to provide for its fair share of apartments. (*See* Reproduced Record, 620a-632a, attached to Defs.' Am. Mot. to Dismiss at Ex. B). The Board issued an opinion concluding that (1) the Township zoning ordinance provided for its fair share of multi-family housing, including apartments, and (2) the ordinance was not unconstitutionally exclusionary under the principles articulated by the Pennsylvania Supreme Court in *Surrick v. Zoning Hearing Bd.,* 382 A.2d 105 (Pa.1978).[FN6] (*See* Pls.' Mem. of Law in Opp'n to Defs'. Am. Mot. to Dismiss at Ex. 2). The decision of the Board was affirmed in its entirety by both the Court of Common Pleas and the Commonwealth Court. (*See* Pls.' Mem. of Law in Opp'n to Defs.' Am. Mot. to Dismiss at Exs. 3, 5). As noted above, the Pennsylvania Supreme Court declined to hear the matter.

FN6. The Pennsylvania Supreme Court discussed the "fair share principle" previously adopted by the court "which requires local political units to plan for and provide land use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Surrick,* 382 A.2d at 108.

**\*3** As the record makes clear, the courts of the Commonwealth have conclusively decided that the zoning statute is valid, and that the Board acted properly in denying plaintiffs' application for a curative amendment. If plaintiffs prevail on their Fair Housing Act and constitutional law claims and are granted the relief requested of this court, the ordinance will be declared unconstitutional and the decisions of the Pennsylvania courts effectively will be declared void. Such a result is clearly prohibited by the *Rooker-Feldman* doctrine under the guidelines established by the Third Circuit. *See FOCUS,* 75 F.3d at 840.

**\*3** Plaintiffs assert that they may proceed here because they did not raise any Fair Housing Act or civil rights claims or any claims under the United

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 1999 WL 179759 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

States Constitution before the state court. They argue that the state court judicial proceedings were decided under Pennsylvania law only. Plaintiffs' position is misplaced. As previously explained, the *Rooker-Feldman* doctrine applies not only to claims which were actually raised but also to claims, including constitutional claims, which could have been raised in state court. *See Feldman,* 460 U.S. at 483 n. 16; *Valenti,* 962 F.2d at 296 (3d Cir.1992). Since plaintiffs could have litigated their federal claims in the Pennsylvania courts but failed to do so, they are now barred from raising those claims in this court.

**\*3** Plaintiffs cite several cases in support of their contention that the *Rooker-Feldman* doctrine does not apply in the instant case. These cases are inapposite.

**\*3** The first decision they cite is *Gulla.* There the plaintiffs brought a constitutional challenge in state court to the municipality's decision regarding subdivision of property adjacent to their own. *Gulla,* 146 F.3d 170. The state court dismissed plaintiffs' actions on the ground that they lacked standing under state law. *See id.* Plaintiffs then filed a federal action alleging constitutional violations. The court determined that *Rooker-Feldman* was inapplicable, since the state court did not adjudicate the merits of the plaintiffs' constitutional claims due to their lack of standing. *See id.* at 172-73. Here, it is uncontested that plaintiffs had standing to pursue their state court action, the state courts had subject matter jurisdiction to hear plaintiffs' claims, and the state courts decided their claims. Therefore, the *Gulla* court's holding is not relevant to the present case.

**\*4** Plaintiffs next rely on *Remed Recovery Care Ctrs. v. Township of Worcester,* No. CIV. A. 98-1799, 1998 WL 437272, at \*5 (E.D.Pa. July 30, 1998). In that case, however, the issue of lack of jurisdiction under the *Rooker-Feldman* doctrine was not involved. A state court had not yet adjudicated the matter under review. The federal court was concerned only with issues of abstention and ripeness.

**\*4** Finally, plaintiffs contend that footnotes in

*Surrick,* 382 A.2d at 110 n. 10 and *Precision Equities, Inc., v. Franklin Park Borough Zoning Hearing Bd.,* 646 A.2d 756, 762 n. 8 (Pa.1994) stand for the proposition that they cannot litigate exclusionary zoning claims based on race discrimination in Pennsylvania courts. We disagree. *Surrick* established a "three part analysis" for reviewing exclusionary ordinances. 382 A.2d at 111 . As the Pennsylvania Supreme Court later noted, *Surrick* 's analysis was only proper to review " restrictions on uses of property ... [not] exclusions of classes of people." *BAC, Inc. v. Board of Supervisors,* 633 A.2d 144, 147 (1993). This does not mean, however, that federal claims of race-based exclusionary zoning cannot be litigated in the state courts-only that an analytical framework different from that set forth in *Surrick* is required for such claims under state law. *See Surrick,* 382 A.2d at 110 n. 10. Plaintiffs also refer to a sentence in *Precision Equities* which appears to question the appropriateness of a challenge to the validity of a zoning ordinance based on the Fair Housing Act. Yet the court went on to decide that very issue on the merits when it held, "nor do we believe that such a violation [of the federal Fair Housing Act] has occurred here." 646 A.2d at 762 n. 8. Clearly, plaintiffs were not precluded from raising their federal statutory or constitutional claims in state court.

**\*4** In conclusion, defendants' motion to dismiss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine will be granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Accordingly, we need not reach the other grounds advanced by defendants for dismissal.

ORDER

**\*4** AND NOW, this 23rd day of March, 1999, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the amended motion of defendants to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction is GRANTED.

E.D.Pa.,1999.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 5

Not Reported in F.Supp.2d, 1999 WL 179759 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**


Altemose v. Charlestown Tp.
Not Reported in F.Supp.2d, 1999 WL 179759
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:98cv02862 (Docket) (Jun. 03, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

# TAB 2

LEXSEE

**EUNICE BURCH, Plaintiff v. DENNIS BILLINGTIER, CAROLEE MURASK, MICHAEL A. LEVINE, ELIZABETH OUTEN, CARL GREENE, MICHAEL PILEGGI, LOUIS PRESENZA, and ROBERT S. BLASI, Defendants**

CIVIL ACTION NO. 02-272

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2003 U.S. Dist. LEXIS 4975

March 12, 2003, Decided
March 13, 2003, Filed

**DISPOSITION:** [*1] Defendants' motions to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, municipal court judges (judges), the United States Department of Housing and Urban Development (HUD), and the Philadelphia Housing Authority (PHA), moved to dismiss plaintiff tenant's 42 U.S.C.S. § 1983 action.

**OVERVIEW:** The tenant sued defendants, alleging that her constitutional rights were violated while she was living in public housing provided by the PHA. On defendants' motion to dismiss, the court determined that the tenant's claims against the judges alleging that they violated her rights in connection with the PHA's eviction proceedings were barred under the Rooker-Feldman doctrine because in order to award relief, the court would have to review the judges' orders to determine if they were arrived at in accordance with due process requirements, which was the province of an appellate court. The court held that HUD was entitled to sovereign immunity because it had not been waived by Congress under the Administrative Procedure Act, the Tucker Act, or the Federal Tort Claims Act. HUD's individual employees were entitled to qualified immunity because they had no duty to protect the tenant from the PHA's actions and they created none of the harms the tenant suffered. The tenant failed to state a claim against the PHA because the tenant was provided due process in the eviction proceedings and the PHA did not cause the apartment's roach problem.

**OUTCOME:** Defendants' motion to dismiss the tenant's civil rights enforcement action was granted.

**CORE TERMS:** municipal, grievance, roach, public housing, eviction, fence, rent, pet, sovereign immunity, qualified immunity, due process, infestation, tenant, absolute immunity, writ of possession, regulation, evicted, cure, unsworn statement, notice, opportunity to respond, property interest, municipality, deprive, constitutional rights, removal, constitutional right, protected interest, investigate, failed to state

**LexisNexis(R) Headnotes**

*Governments > Federal Government > Claims By & Against*
*Governments > Federal Government > Employees & Officials*
*Governments > Local Governments > Claims By & Against*
[HN1] A plaintiff may bring a suit against municipal court judges and the Philadelphia Housing Authority under 42 U.S.C.S. § 1983 for their alleged violations of the plaintiff's due process rights. Section 1983 cannot be used to bring suit against federal government employees such as the Department of Housing and Urban Development (HUD). The plaintiff, however, may sue the HUD defendants directly under the Constitution for their alleged violations of the plaintiff's due process rights.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Judgments > General Overview*

Page 1

2003 U.S. Dist. LEXIS 4975, *

*Civil Procedure > U.S. Supreme Court Review > State Court Decisions*
[HN2] The Rooker-Feldman doctrine is based on the statutory provision that gives the United States Supreme Court jurisdiction to review the decisions of the states' highest court. 28 U.S.C.S. § 1257. Section 1257 has been interpreted to mean that only the Court can review state court judgments. The federal district courts do not have jurisdiction over appeals from the decisions of state courts or over claims which are in essence appeals because these claims are "inextricably intertwined" with a state court's judgment.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN3] Under the Rooker-Feldman doctrine, lower federal court jurisdiction is precluded in two situations. The first situation is when a claim was "actually litigated" in state court prior to the filing of the federal action. The second situation is when the federal claim is "inextricably intertwined" with a prior state court adjudication. A federal claim is "inextricably intertwined" where federal relief can only be predicated upon a conviction that the state court was wrong. If Rooker-Feldman bars a plaintiff's federal claims, then the district court no longer has subject matter jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN4] The federal court cannot review the actions of a state court in an individual case, even where it is alleged that those actions were unconstitutional.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Judgments > Relief From Judgment > General Overview*
[HN5] The Rooker-Feldman doctrine stands for the proposition that a federal district court does not have appellate jurisdiction over a state court's decision.

*Civil Procedure > Judicial Officers > General Overview*
*Governments > Courts > Judicial Immunity*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*
[HN6] Judges enjoy absolute immunity from suits for monetary damages when they perform judicial functions. The immunity exists even if a plaintiff alleges that a judge acted maliciously in performing judicial functions. The absolute immunity judges enjoy for judicial acts is

lost only when a judge acts in the "clear absence of jurisdiction."

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN7] Before a court can hear a suit, a party seeking a form of relief must have standing to pursue that form of relief. If a party does not have standing to seek a form of relief, then the court does not have subject matter jurisdiction to hear the plaintiff's request for that form of relief.

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Civil Procedure > Remedies > Injunctions > General Overview*
[HN8] To have standing to sue for injunctive or declaratory relief, the person suing must be the person who will be injured by the future action.

*Governments > Federal Government > Claims By & Against*
*Governments > Federal Government > Employees & Officials*
[HN9] Official capacity suits generally only represent another way of pleading an action against an entity of which the officer is an agent. An official capacity suit is in all respects other than name to be treated as a suit against the entity.

*Administrative Law > Sovereign Immunity*
*Governments > Federal Government > Claims By & Against*
[HN10] Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. The waiver of sovereign immunity must be an explicit waiver by Congress. The limitations and conditions upon which Congress waives the immunity are to be strictly construed and exceptions to the limitations and conditions are not to be implied.

*Administrative Law > Judicial Review > General Overview*
*Administrative Law > Sovereign Immunity*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*

2003 U.S. Dist. LEXIS 4975, *

[HN11] The Administrative Procedure Act (APA) can abrogate sovereign immunity in certain situations. The APA provides that actions in federal court seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States. 5 U.S.C.S. § 702. For the APA to waive sovereign immunity in a suit for equitable relief, judicial review of the agency action must be available.

*Administrative Law > Sovereign Immunity*
*Civil Procedure > Remedies > Damages > Monetary Damages*
*Governments > Federal Government > Claims By & Against*
[HN12] The Administrative Procedure Act does not abrogate sovereign immunity when a plaintiff seeks monetary damages as compensation for a legal wrong.

*Administrative Law > Judicial Review > Reviewability > General Overview*
*Environmental Law > Litigation & Administrative Proceedings > Judicial Review*
[HN13] There is a general presumption that agency actions are reviewable under the Administrative Procedure Act. There is, however, a presumption against judicial review when an agency decision involves whether to undertake investigative of enforcement actions.

*Administrative Law > Judicial Review > Reviewability > General Overview*
*Administrative Law > Sovereign Immunity*
*Governments > Federal Government > Property*
[HN14] In the absence of Congressional guidelines, the Department of Housing and Urban Development's actions are unreviewable.

*Administrative Law > Sovereign Immunity*
*Governments > Federal Government > Claims By & Against*
[HN15] If Congress allows a government agency to sue and be sued in its own name, then there is a presumption that Congress has waived the agency's sovereign immunity. The Department of Housing and Urban Development may sue and be sued in its own name only with respect to its functions under the United States Housing Act of 1937. 42 U.S.C.S. § 1404a.

*Public Health & Welfare Law > Housing & Public Buildings > Low Income Housing*
*Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Constitutional Rights*
[HN16] Under 42 U.S.C. § 1437d(k), the Department of Housing and Urban Development must issue regulations requiring each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure. There are regulations that require public housing agencies to use administrative grievance procedures that satisfy the elements of due process before evicting a public housing tenant. 24 C.F.R. § 966.50 et seq.

*Public Health & Welfare Law > Housing & Public Buildings > Low Income Housing*
*Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Constitutional Rights*
[HN17] Neither the statutes, nor the regulations establish a procedure at the Department of Housing and Urban Development (HUD) to enforce or monitor compliance with the administrative grievance requirements of 42 U.S.C.S. § 1437d(k) or 24 C.F.R. § 966.50 et seq. Further, HUD does not have the power to seek administrative or judicial sanctions against the public housing agencies for failure to comply with the administrative grievance requirements or failure to act in accordance with the due process rights of the public housing agency's tenants. Finally, there is not a general requirement in the statutes or the regulations requiring HUD to monitor or ensure compliance by the public housing agencies with federal statutes or HUD regulations.

*Administrative Law > Sovereign Immunity*
*Public Health & Welfare Law > Housing & Public Buildings > General Overview*
*Real Property Law > Landlord & Tenant > Tenant's Remedies & Rights > Constitutional Rights*
[HN18] It is not a Department of Housing and Urban Development (HUD) function to monitor or investigate whether a public housing agency violates a tenant's due process rights through the public housing agency's fence and pet policies or the public housing agency's failure to cure a roach infestation. Although HUD has the implicit power to withhold funds when public housing agencies are not complying with the law, ensuring or monitoring whether public housing agencies violate the due process rights of its tenants is not part of HUD's functions.

*Constitutional Law > The Judiciary > Jurisdiction > Amount in Controversy*

Page 3

2003 U.S. Dist. LEXIS 4975, *

*Constitutional Law > The Judiciary > Jurisdiction > Concurrent Jurisdiction*
*Contracts Law > Types of Contracts > General Overview*
[HN19] The Tucker Act gives the district courts original jurisdiction, concurrent with the Court of Federal Claims, over any civil action or claim against the United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department or upon any express or implied contract with the United States. 28 U.S.C.S. § 1346(a)(2). For actions falling within this statute, the government has waived its sovereign immunity.

*Administrative Law > Sovereign Immunity*
*Civil Procedure > Remedies > Damages > Monetary Damages*
*Torts > Public Entity Liability > Liability > General Overview*
[HN20] The Federal Tort Claims Act gives the district courts jurisdiction over civil actions for claims against the United States for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C.S. § 1346(b).

*Administrative Law > Sovereign Immunity*
*Torts > Public Entity Liability > Liability > Claim Presentation > General Overview*
*Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Procedural Requirements*
[HN21] The Federal Tort Claims Act contains many procedural prerequisites that must be met before it may be invoked. For example, the plaintiff must first present her claim for damages to the appropriate federal agency and have the claim denied. 28 U.S.C.S. § 2675(a).

*Governments > Federal Government > Employees & Officials*
[HN22] Determining whether an officer has qualified immunity is a two step process. First, the court must determine if the facts alleged, taken in the light most favorable to the injured party, show that the officer violated a constitutional right. Second, if a constitutional right was violated, then the court must determine if the right was clearly established at the time it was violated. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a rea-

sonable officer that his conduct was unlawful in the situation he confronted. Unless there has been a violation of a clearly established constitutional right, the officer has qualified immunity.

*Governments > Federal Government > Employees & Officials*
[HN23] DeShaney eliminates any due process right to affirmative assistance from government employees for harms not created by the government officials being sued even if the government officials being sued were aware of the alleged harms.

*Governments > State & Territorial Governments > Claims By & Against*
[HN24] An official capacity suit is really a suit against an entity of which the officer is an agent.

*Civil Rights Law > Immunity From Liability > Local Officials > General Overview*
*Civil Rights Law > Section 1983 Actions > Government Actions*
*Governments > Local Governments > Claims By & Against*
[HN25] Under 42 U.S.C.S. § 1983, municipalities and other local government units are among those persons to whom § 1983 applies. A municipality may only be sued for its own unconstitutional or illegal policies. The municipality cannot be sued for the acts of its employees that do not represent the municipality's policies. There are two requirements before a municipality may be held liable under § 1983. First, there must be a violation of the plaintiff's constitutional rights. Second, the municipality must be able to be held liable for the violation of the plaintiff's constitutional rights. To determine whether a municipality can be held liable under § 1983, there must be: (1) a municipal policy and (2) a causal link between the municipal policy and the violation of the plaintiff's constitutional rights.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN26] Due process prevents the government from depriving an individual of the interests of life, liberty, or property without due process of law. Due process contains both a substantive and a procedural component. Both components of due process are designed to protect an individual against arbitrary government action.

Page 4

2003 U.S. Dist. LEXIS 4975, *

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > General Overview*
*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN27] The substantive component of due process is implicated when an individual alleges that the government deliberately and arbitrarily abused its power. The protections associated with substantive due process are not triggered unless an individual has a protected life, liberty, or property interest. An interest must be fundamental under the Constitution to be a protected interest triggering substantive due process protections. The government's legislative acts that deprive a person of her protected interest will generally withstand a substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude that was served by the legislative act. A government's non-legislative acts that deprive a person of her protected interest will withstand a challenge unless the government action can properly be "characterized as arbitrary, or conscience shocking, in a constitutional sense."

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN28] The procedural component of due process is implicated when an individual alleges that the government took action without providing the individual fair process. Before procedural due process protections are required, an individual must have a protected life, liberty, or property interest. A protected interest triggering procedural due process protections may be created either by the Constitution or by state law. Procedural due process requires that the plaintiff be provided with notice and an opportunity to respond when the government deprives a person of a protected interest.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN29] When a plaintiff has a protected property interest, a pre-deprivation hearing of some sort is generally required to satisfy due process concerns. The process need not always be elaborate, depending, in part, on the importance of the interests at stake and on subsequent proceedings. The essential requirements of due process are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN30] Due process does not entitle a person to any type of process that the person requests. Due process gives the person a right to notice and an opportunity to respond.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Torts > Negligence > Duty > Affirmative Duty to Act > Special Relationships > Government Officials*
[HN31] Due process does not confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government may not deprive the individual.

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
[HN32] Neither the Constitution, nor the laws of Pennsylvania, create a property interest in being able to have a residence that allows pets or in not having fences at a rented residence removed.

*Criminal Law & Procedure > Trials > Examination of Witnesses > General Overview*
*Governments > Federal Government > Executive Offices*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*
[HN33] The United States Supreme Court has recognized absolute immunity for individuals in limited situations. Individuals performing judicial, legislative, and prosecutorial functions receive absolute immunity. Additionally, police officers testifying as witnesses and the President of the United States taking action to carry out the presidency enjoy absolute immunity.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
[HN34] When an official does not have absolute immunity, the official may be entitled to qualified immunity.

*Civil Procedure > Sanctions > General Overview*
[HN35] A court cannot impose sanctions against an individual not before the court.

**COUNSEL:** EUNICE BURCH, PLAINTIFF, Pro se, PHIALDELPHIA, PA.

For DENNIS BILLINGTIER, CAROLEE MURASK, MICHAEL A. LEVINE, DEFENDANTS: JAMES G.

Page 5

2003 U.S. Dist. LEXIS 4975, *

SHEEHAN, U.S. ATTORNEY'S OFFICE, PAUL G. SHAPIRO, ASSISTANT UNITED STATES ATTORNEY, PHILADELPHIA, PA USA.

For E. OUTEN, CARL GREENE, MICHAEL PELEGI, DEFENDANTS: SUSANNA RANDAZZO, KOLBER & FREIMAN, PHILADELPHIA, PA USA.

For LOUIS PRESENZA, ROBERT S. BLASI, DEFENDANTS: DAVID M. DONALDSON, ADMINISTRATIVE OFFICE OF PA COURTS, PHILA, PA USA.

**JUDGES:** MARY A. MCLAUGHLIN, J.

**OPINION BY:** MARY A. MCLAUGHLIN

**OPINION:**

MEMORANDUM and ORDER

McLaughlin, J.

March 12, 2003

The pro se plaintiff, Eunice Burch, has sued various local and federal government officials alleging that they violated her constitutional and statutory rights while she was a tenant in public housing.

Three separate groups of defendants have filed motions to dismiss [*2] the plaintiff's amended complaint: (1) the Honorable Louis Presenza and the Honorable Robert Blasi, Philadelphia Municipal Court Judges ("Municipal Court Judges"); (2) Dennis Billingtier, Carolee Murask, and Michael Levine, employees of the Department of Housing and Urban Development ("HUD defendants"); (3) Elizabeth Outen, Carl Greene, and Michael Pileggi, employees of the Philadelphia Housing Authority ("PHA defendants"). The Court will grant the motions.

The claims against the Municipal Court Judges are barred under the Rooker-Feldman doctrine and by the Judges' absolute immunity in combination with the plaintiff's lack of standing to seek the injunctive and declaratory relief she requests in her suit against the Judges. The plaintiff fails to state a claim upon which relief can be granted against the HUD defendants because of HUD's sovereign immunity and the qualified immunity of the individual employees. The plaintiff fails to state a claim against the PHA defendants because the alleged facts do not allow the municipality to be held liable and the individual employees enjoy qualified immunity.

I. Background

A. Facts

The plaintiff, Eunice Burch, had three [*3] children who were in welfare foster placement from 1971 through 1987. n1 The PHA refused to rent to the plaintiff while her children were in foster placement. n2 See Am. Compl. at 12.

n1 The plaintiff filed a complaint in this case on January 24, 2002. Motions to dismiss were filed on behalf of the Municipal Court Judges, the PHA defendants, and the HUD defendants. On May 13, 2002, the plaintiff filed a document entitled "Amendment to Complaint" (Docket No. 12). On May 20, 2002, the Court ordered the plaintiff to explain whether this document was an amended complaint or an opposition to the motions to dismiss. This Order advised the plaintiff that an amended complaint must contain all of the claims that the plaintiff wished to pursue as well as all of the defendants against whom she wished to pursue her claims. On June 5, 2002, the plaintiff informed the Court that the May 13, 2002, filing was an amended complaint. The Court denied the three motions to dismiss that were pending as moot because of the filing of the amended complaint.

The defendants filed motions to dismiss the amended complaint. On July 3, 2002, the plaintiff filed an opposition to the motions to dismiss.

The facts presented here are taken from the plaintiff's amended complaint.

[*4]

n2 All of the defendants brought their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court "takes all well pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and determines whether under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988).

The PHA rented a unit to the plaintiff in 1987. n3 Living with the plaintiff were her three children and two grandchildren. When this unit was rented to the plaintiff, the PHA informed the plaintiff that if she did not take this unit, then her name would be placed at the bottom of the housing waiting list. See Am. Compl. at 12.

n3 Throughout her amended complaint, the plaintiff refers to actions taken by "public housing," "housing," or the "housing authority" without referring to an entity by name. The plaintiff appears to be referring to actions taken by a local housing authority when she uses these terms. The Court interprets "public housing," "housing," and "housing authority" to refer to the PHA.

[*5]

When the unit was rented to the plaintiff, it was dirty and in need of repairs. The PHA told the plaintiff that it would make repairs to the unit. See Am. Compl. at 12.

The unit also needed to be painted and exterminated. The PHA informed the plaintiff that it did not paint units. It gave the plaintiff four gallons of paint. See Am. Compl. at 12.

The plaintiff's first month's rent was prorated because the plaintiff moved into the unit after the first of the month. In December 1987, the PHA informed the plaintiff that it had made a mistake in calculating the plaintiff's rent. The PHA told the plaintiff that her rent was higher than the rent listed in the lease agreement. See Am. Compl. at 12.

By 1997, the plaintiff's unit was infested with roaches, and the PHA had not made repairs to the unit. Elizabeth Outen, the manager of the plaintiff's residence, was informed that 8805 C Dittman, the residence of one of the plaintiff's neighbors, was infested with roaches. Ms. Outen was also informed that the roaches were entering 8805 D Dittman, the plaintiff's unit. Ms. Outen did not respond to the roach problem. The PHA knew that the plaintiff had no way to control or eliminate [*6] the roach problem. See Am. Compl. at 12, 17.

Between when the plaintiff informed Ms. Outen of the roach problem and 1999, there were two managers of her unit. In 1999, there was a third manager, identified by the plaintiff as "Moore." The plaintiff reported the roach problem to Moore, but Moore never looked into the problems. The plaintiff was not able to use her kitchen because of the roaches. See Am. Compl. at 12-13.

The plaintiff withheld her rent for November and December 1999 because of the roach problem. She did not place the withheld rent into an escrow account. Before this, she had paid her rent on time every month. See Am. Compl. at 13, 17.

After not hearing back from the PHA about the roach problem, the defendant contacted HUD. HUD did not respond. See Am. Compl. at 12.

In February 2000, the PHA provided the plaintiff an administrative grievance. During the administrative grievance, the PHA stated that the plaintiff had not placed the rent she withheld in November and December 1999 into an escrow account. At the administrative grievance, the PHA requested that the plaintiff pay the full amount of rent that was past due. See Am. Compl. at 12-13.

The [*7] individual who presided over the administrative grievance ordered the PHA to make repairs to the unit. After the administrative grievance, the plaintiff requested an abatement of her rent. The PHA did not allow the plaintiff an abatement. See Am. Compl. at 13.

In April 2000, the plaintiff requested an administrative grievance to resolve the dispute regarding her request for an abatement of her rent. The PHA did not provide the plaintiff with an administrative grievance. Beginning in April 2000, the plaintiff refused to pay her rent. See Am. Compl. at 13-14.

Also in April 2000, the PHA removed the plaintiff's fence because the PHA believed the fence was unsafe. The PHA removed the fences of 175 tenants. The PHA did not replace the fences. The plaintiff and her fellow tenants did not have an opportunity to give input on the fence removal policy. See Am. Compl. at 14.

Around the same time that the PHA removed the fences, it also adopted a pet policy that forced the tenants to get rid of their pets or face eviction. The plaintiff and her fellow tenants did not have an opportunity to give input on the pet policy. A complaint was filed with HUD regarding the pet policy. The [*8] tenants of Liddonfield public housing asked HUD to send a representative to Liddonfield to explain HUD's pet policy. See Am. Compl. at 14.

The plaintiff filed a complaint with HUD. This complaint informed HUD about the fence removal and the pet policy. The plaintiff's complaint also stated that the PHA threatened to evict her without providing an administrative grievance. HUD responded to the plaintiff's complaint in November 2001. This response instructed the plaintiff to contact a HUD staff attorney to have the correspondence explained. See Am. Compl. at 14.

In October 2000, the plaintiff requested an administrative grievance after Ms. Outen sent her a notice of the PHA's intent to evict the plaintiff for non-payment of her rent. The PHA did not provide the plaintiff with an administrative grievance. See Am. Compl. at 13.

The PHA instituted eviction proceedings against the plaintiff. The plaintiff notified the Court that the PHA had not provided her with an administrative grievance

prior to the eviction proceeding. See Am. Compl. at 13, 17.

At some point before the in court eviction proceedings, Ms. Outen approached the plaintiff with an agreement. Ms. Outen told [*9] the plaintiff that if the plaintiff did not sign the agreement, the court would evict the plaintiff. See Am. Compl. at 13.

The PHA did not explain the terms of the agreement to the plaintiff. The manager of the plaintiff's unit also did not inquire as to the plaintiff's ability to pay rent. See Am. Compl. at 13.

At the in court proceedings, the Municipal Court Judge did not read the PHA's complaint to the plaintiff. The PHA informed the Municipal Court Judge that the plaintiff and the PHA had entered into an agreement. The Municipal Court Judge told the plaintiff that by signing the agreement, she gave up her right to appeal any subsequent actions taken pursuant to the agreement. See Am. Compl. at 13.

The plaintiff kept the agreement for some period of time until she could not afford to keep the agreement. See Am. Compl. at 13-14.

The PHA sought a writ of possession. The PHA attorney who obtained the writ of possession filed an unsworn statement with the Municipal Court when seeking the writ. The PHA attorney obtained the writ of possession from the prothonotary of the Municipal Court. The writ of possession lacked the seal of a court and the signature of a court [*10] administrator. See Am. Compl. at 14-15.

In October 2001, the plaintiff found the writ of possession under her door. The writ allowed the PHA to take possession of the plaintiff's residence. The plaintiff filed a motion to stay the writ. The court did not hold a hearing on the writ or on the motion to stay the writ. See Am. Compl. at 14-15.

In November 2001, the PHA notified the plaintiff that it intended to evict her. The Office of Emergency Services informed the tenant of the eviction by mailing her notice of the eviction. This notice was received the day before the eviction was scheduled. See Am. Compl. at 14-15.

Since at least November 15, 2001, the plaintiff has been locked out of her residence. See Am. Compl. at 15.

B. Claims and Relief

The plaintiff does not separate her claims into distinct counts. In the first paragraph of her amended complaint, however, she lists the following "issues" that are before the Court:

(1) The plaintiff was a public housing tenant with minor children who was evicted by the PHA and had her family's property seized by the PHA.

(2) The PHA evicted the plaintiff without providing her an administrative grievance prior [*11] to the eviction.

(3) The plaintiff requested an administrative grievance on more than one occasion prior to her eviction, and the PHA did not provide the plaintiff with an administrative grievance.

(4) The plaintiff complained to HUD, and HUD did not do anything to ensure that the plaintiff received an administrative grievance before she was evicted.

(5) The plaintiff was not successful in trying to appeal to the Municipal Court. No Municipal Court Judge ever entered an order against the plaintiff.

(6) The Municipal Court accepted an unsworn statement of the PHA attorney who sought a writ of possession. The Municipal Court never notified the plaintiff that the attorney sought the writ. The Municipal Court never scheduled a hearing on the writ. The Municipal COurt allowed the attorney to get the writ from the prothonotary of the court.

(7) The Municipal Court allowed the plaintiff to be evicted in violation of her constitutional and statutory rights.

The plaintiff states that she is suing the defendants under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments as well as 42 U.S.C. § § 1437d(k), 1983, 1990, 3608, 3610, 3612, [*12] and 3613. See Am. Compl. at 1, 11.

The plaintiff seeks the following relief for the alleged violations of her rights:

(1) Compensatory and punitive damages in excess of $ 1,000,000 for violations of her constitutional rights.

(2) For the PHA to reinstate her lease.

(3) For the defendants to be enjoined from evicting public housing tenants until after the tenant has an administrative grievance.

(4) For the PHA and the Municipal Court to be enjoined from engaging in unconstitutional practices regarding landlord-tenant actions.

(5) Recommendations to be made to Congress.

(6) For the landlord-tenant unit of the Municipal Court to be declared unconstitutional.

(7) Sanctions against the Assistant United States Attorney for unethical conduct.

(8) Sanctions against the Clerk of the Court for deliberate indifference.

(9) Sanctions against the United States Marshals Service for failure to serve some of the defendants.

(10) Sanctions against the acting HUD Secretary for violations of the Fair Housing Act.

(11) Compensatory damages of $ 100,000 for violations of her Fair Housing Act rights.

(12) An award of reasonable attorney's [*13] fees.

See Am. Compl. at 18-20.

II. Analysis

The gravamen of the plaintiff's amended complaint is that her due process rights were violated by the Municipal Court Judges, the HUD defendants, and the PHA defendants in connection with the events that led up to and included her eviction. n4

n4 The plaintiff's amended complaint states that she is also bringing suit for violations of other constitutional rights. After careful review of

the plaintiff's amended complaint and taking all of the facts in the amended complaint as true, the Court discerns no allegations by the plaintiff that the defendants violated any of the plaintiff's constitutional rights except for her due process rights.

In her amended complaint, the plaintiff also alleges violations of 42 U.S.C. § § 1437d(k), 1983, 1990, 3608, 3610, 3612, and 3613. Other than Section 1983, the statutes cited by the plaintiff do not authorize a private cause of action in this case. Sections 1437d(k), 1990, 3608, 3610, and 3612 do not authorize any private causes of action. Section 3613 does authorize a private cause of action for "discriminatory housing practices," but it only reaches discriminatory housing practices in the sale or rental of property and not discrimination during the tenancy. Under Section 3613, a suit must be brought within two years of the termination of the alleged discriminatory housing practice. Assuming the plaintiff's allegations to be true, the PHA's practice of not renting to the plaintiff based on her children being in foster care ended in 1987 when the PHA rented to her. The plaintiff did not file her complaint until January 2002, nearly fifteen years after the PHA's alleged discriminatory practice terminated. Because of the lapse of time between the allegedly discriminatory housing practice and the filing of the plaintiff's complaint, Section 3613 does not provide the plaintiff with a cause of action in this case.

[*14]

[HN1] The plaintiff may bring a suit against the Municipal Court Judges and the PHA defendants under 42 U.S.C. § 1983 for their alleged violations of the plaintiff's due process rights. Section 1983 cannot be used to bring suit against federal government employees such as the HUD defendants. The plaintiff, however, may sue the HUD defendants directly under the Constitution for their alleged violations of the plaintiff's due process rights. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 390-92, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971).

A. Claims Against the Municipal Court Judges

The plaintiff claims that the Municipal Court Judges violated her rights in connection with the eviction proceedings against her by: (1) allowing the PHA attorney to obtain a writ of possession using an unsworn statement; (2) not notifying the plaintiff of the writ, holding a hearing on the writ, or holding a hearing on the plaintiff's motion to stay the writ; (3) not hearing an appeal; and (4)

2003 U.S. Dist. LEXIS 4975, *

allowing the plaintiff to be evicted in violation of her constitutional and statutory rights. These claims are allegations that the Municipal Court Judges violated her due [*15] process rights.

The Municipal Court Judges make three arguments in support of their motion to dismiss: (1) the Court lacks jurisdiction to review state court adjudications pursuant to the Rooker-Feldman doctrine; (2) the Municipal Court Judges enjoy absolute immunity from suit; and (3) the Court should abstain pursuant to the Younger doctrine because there are ongoing state court proceedings. The Court expresses no view on whether Younger abstention is appropriate in this case because the Court finds that the plaintiff's claims against the Municipal Court Judges are barred by Rooker-Feldman and by the Judges' absolute immunity in combination with the plaintiff's lack of standing to seek the injunctive and declaratory relief she requests.

1. Rooker-Feldman

The Rooker-Feldman doctrine takes its name from two Supreme Court decisions: Rooker v. Fidelity Trust, 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983). [HN2] The doctrine is based on the statutory provision that gives the Supreme Court jurisdiction to review the decisions of the states' highest court. See 28 U.S.C. § 1257. [*16] Section 1257 has been interpreted to mean that only the Supreme Court can review state court judgments. See Rooker, 263 U.S. at 416. The federal district courts do not have jurisdiction over appeals from the decisions of state courts or over claims which are in essence appeals because these claims are "inextricably intertwined" with a state court's judgment. Feldman, 460 U.S. at 483 n.16.

[HN3] Under the Rooker-Feldman doctrine, lower federal court jurisdiction is precluded in two situations. The first situation is when a claim was "actually litigated" in state court prior to the filing of the federal action. The second situation is when the federal claim is "inextricably intertwined" with a prior state court adjudication. A federal claim is "inextricably intertwined" where federal relief can only be predicated upon a conviction that the state court was wrong. If Rooker-Feldman bars the plaintiff's federal claims, then the Court no longer has subject matter jurisdiction. Desi's Pizza, Inc. v. City of Wilkes-Barre, No. 02-1441, 321 F.3d 411, 2003 WL 757016, at *6 (3d Cir. Mar. 6, 2003); Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000). [*17]

Review of the plaintiff's challenge that the Municipal Court Judges violated her due process rights by allowing the PHA attorney to obtain the writ of possession with an unsworn statement falls squarely within the type of claim over which the Court does not have jurisdiction because of Rooker-Feldman. The plaintiff asks this Court to review whether a writ of possession should have issued on the facts before the Municipal Court. That is the issue that was actually litigated before the Municipal Court, and Rooker-Feldman prevents this Court from reviewing the Municipal Court's decision. This is true despite the fact that based on the allegations in the plaintiff's amended complaint, the Municipal Court Judges did not explicitly find that they were not denying the plaintiff due process by allowing the writ to issue. [HN4] The federal court cannot review the actions of a state court in an individual case, even where it is alleged that those actions were unconstitutional. n5

n5 The Third Circuit has created an exception to this rule, which does not apply here, where the plaintiff in the federal action was not a party to the state court case. See FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840-41 (3d Cir. 1996).

[*18]

Review of whether the procedures employed by the Municipal Court Judges in granting the writ of possession comported with the plaintiff's due process rights is also barred by Rooker-Feldman. In order to award relief on a claim that the Municipal Court Judges denied the plaintiff her due process rights, this Court would have to review the decision of the Municipal Court Judges that granted the writ and determine if their decision was arrived at in accordance with the requirements of due process. Granting the plaintiff relief on the issue of whether the Municipal Court utilized procedures comporting with the plaintiff's due process rights when it granted the writ would be predicated upon a conviction that the Municipal Court was wrong in using the procedures that it did in the plaintiff's case. Rooker-Feldman prevents in this situation because the federal claim is inextricably intertwined with the state court adjudication.

With respect to the plaintiff's allegation that her due process rights were violated because no Municipal Court Judges heard an appeal in this case, this claim also falls squarely within the type of claim that cannot be heard in this Court because [*19] of the Rooker-Feldman doctrine. To determine the merits of the plaintiff's claim, the Court would be forced to determine if the plaintiff's due process rights were violated when the Municipal Court Judges did not hear an appeal. The Court would have to review why the Municipal Court Judges chose not to hear the appeal. The plaintiff's federal claim is inextricably intertwined with the state court adjudication because

Page 10

2003 U.S. Dist. LEXIS 4975, *

relief could only be granted if the Court concluded that the Municipal Court Judges were wrong in deciding not to hear the plaintiff's appeal.

To determine whether the Municipal Court Judges violated the plaintiff's due process rights by allowing the eviction of the plaintiff to proceed, allegedly in violation of her constitutional and statutory rights, the Court would need to review the decisions of the Municipal Court Judges. This part of the plaintiff's claim is also inextricably intertwined with the state court adjudication because to grant the plaintiff relief, the Court would need to conclude that the process employed and the outcome reached by the Municipal Court Judges in the plaintiff's eviction proceedings were wrong.

The Third Circuit has permitted [*20] suit to go forward in cases where the state court did not cause the plaintiff's injury. See, e.g., Desi's Pizza, 321 F.3d 411, 2003 WL 757016, at *6 (injury caused by city officials); Parkview Assocs., 225 F.3d at 327 (injury caused by Zoning Board); Whiteford v. Reed, 155 F.3d 671, 675 (3d Cir. 1998) (injury caused by Board of Medicine); Gulla v. North Strabane Township, 146 F.3d 666, 675 (3d Cir. 1988) (injury caused by Board of Supervisors). In Whiteford, for example, the state court had rejected the plaintiff's claim against the Pennsylvania State Board of Medicine on procedural grounds. See 155 F.3d at 674. The federal court could award relief by finding that the plaintiff's rights were violated without finding theat the state court's judgment on state procedural law was erroneous.

In this case, in contrast, the plaintiff alleges that it was the Municipal Court Judges who injured her by denying her the due process of law to which she was entitled. In order to award relief, this Court would have no choice but to review the judgments of the Municipal Court Judges to determine if the judgments were arrived [*21] at in accordance with the requirements of due process. Such review is the province of an appellate court, however, and [HN5] Rooker-Feldman stands for the proposition that a federal district court does not have appellate jurisdiction over a state court's decision.

2. Absolute Immunity

Even if the plaintiff's suit against the Municipal Court Judges was not barred by Rooker-Feldman, the plaintiff's suit against the Municipal Court Judges for monetary damages must be dismissed if the Municipal Court Judges enjoy absolute immunity from the plaintiff's claims.

[HN6] Judges enjoy absolute immunity from suits for monetary damages when they perform judicial functions. Stump v. Sparkman, 435 U.S. 349, 357, 363, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978). The immunity exists even if a plaintiff alleges that a judge acted maliciously in performing judicial functions. Pierson v. Ray, 386 U.S. 547, 554, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967). The absolute immunity judges enjoy for judicial acts is lost only when a judge acts in the "clear absence of jurisdiction." Stump, 435 U.S. at 357.

The Judges in the present case presided over a land-lord-tenant dispute brought in Municipal Court. The Judges performed [*22] judicial functions in deciding how to conduct the eviction proceedings, whether to grant a writ of possession, how to handle the plaintiff's motion to stay the writ, and whether to hear the plaintiff's appeal because the essential function of being a judge is to resolve disputes and make rulings in cases presented to the judge.

Nothing in the plaintiff's amended complaint can be interpreted as an allegation that the Municipal Court Judges acted outside of their judicial functions or in the clear absence of jurisdiction in deciding how to resolve the plaintiff's dispute with the PHA or how to conduct the eviction proceedings. The Municipal Court Judges, therefore, enjoy absolute immunity from the plaintiff's claims for monetary damages.

3. Standing to Assert Claims for Injunctive and Declaratory Relief

If Rooker-Feldman did not bar the plaintiff's suit against the Municipal Court Judges, absolute immunity would only shield the Municipal Court Judges from a suit for monetary damages. The plaintiff also seeks injunctive and declaratory relief in her suit against the Municipal Court Judges. The plaintiff requests that the Municipal Court Judges be enjoined from evicting [*23] public housing tenants until after they have an administrative grievance and from engaging in unconstitutional practices in landlord-tenant actions. The plaintiff also asks for a declaration that the landlord-tenant unit of the Municipal Court is unconstitutional.

[HN7] Before the Court can hear a suit, the party seeking a form of relief must have standing to pursue that form of relief. If a party does not have standing to seek a form of relief, then the Court does not have subject matter jurisdiction to hear the party's request for that form of relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 105, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983); Valley Forge Christian Coll. v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982).

[HN8] To have standing to sue for injunctive or declaratory relief, the person suing must be the person who will be injured by the future action. The plaintiff does not satisfy this requirement because she seeks injunctive relief for the prospective harms of other PHA tenants and

other individuals who are brought before the landlord-tenant unit of the Municipal Court. See Lyons, 461 U.S. 95, 101-02, 105, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) (analyzing [*24] standing by examining the relief sought by the plaintiff and holding that for a plaintiff to seek injunctive or declaratory relief, the plaintiff must show a likelihood of future harm); Valley Forge Christian Coll., 454 U.S. at 472 (holding that to have standing a party must "show he personally has suffered some actual or threatened injury.").

Because the plaintiff's claims against the Municipal Court Judges are barred by the Rooker-Feldman doctrine and by absolute immunity in combination with the plaintiff's lack of standing to sue for injunctive and declaratory relief, the plaintiff's suit against the Municipal Court Judges is dismissed.

### B. Claims Against the HUD Defendants

The plaintiff alleges that the HUD defendants violated her rights by: (1) not ensuring that the plaintiff received an administrative grievance before she was evicted despite the plaintiff informing HUD that she had not received an administrative grievance and (2) not investigating the plaintiff's complaints regarding the PHA's pet policy, fence policy, and failure to cure the roach infestation in the plaintiff's residence. These allegations are claims that the HUD defendants violated [*25] the plaintiff's due process rights.

It is not clear from the plaintiff's amended complaint whether she is suing the HUD employees in their official capacities or in their individual capacities. The Court assumes that she sued the HUD defendants in both their official and individual capacities.

The defendants argue that regardless of whether the plaintiff's suit is an official capacity or individual capacity suit, they are immune from suit for two reasons. First, if the plaintiff's suit is against the defendants in their official capacities, the HUD defendants argue that the suit is barred by sovereign immunity. Second, if the plaintiff's suit is against the individuals in their individual capacities, the HUD defendants argue that the suit is barred because the defendants have qualified immunity.

### 1. HUD Defendants in Their Official Capacities

[HN9] Official capacity suits generally only represent another way of pleading an action against an entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). An official capacity suit is in all respects other than name to be treated as a suit against the entity, in this case as a suit against HUD. [*26] See Graham, 473 U.S. at 166.

[HN10] Absent a waiver, sovereign immunity shields the federal government and its agencies, such as HUD, from suit. Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475, 127 L. Ed. 2d 308, (1994). The waiver of sovereign immunity must be an explicit waiver by Congress. See United States v. Mitchell, 445 U.S. 535, 538, 63 L. Ed. 2d 607, 100 S. Ct. 1349 (1980). The limitations and conditions upon which Congress waives the immunity are to be strictly construed and exceptions to the limitations and conditions are not to be implied. Lehman v. Nakshian, 453 U.S. 156, 161, 69 L. Ed. 2d 548, 101 S. Ct. 2698 (1981). To the extent that the HUD defendants have been sued in their official capacities, the question is whether Congress has waived HUD's sovereign immunity for the type of suit brought by the plaintiff.

Although the plaintiff has not stated on what basis Congress waived sovereign immunity with respect to her due process claims against the HUD defendants, in construing her claims liberally because she is a pro se plaintiff, the Court examines four bases upon which the plaintiff could argue that Congress waived HUD's sovereign immunity: (1) the Administrative Procedure Act ("APA"); (2) [*27] a provision of the law allowing HUD to sue and be sued in its own name; (3) the Tucker Act; or (4) the Federal Tort Claims Act ("FTCA").

[HN11] The APA could abrogate sovereign immunity in certain situations. The APA provides that actions in federal court "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. For the APA to waive sovereign immunity in a suit for equitable relief, judicial review of the agency action must be available. See Americans Disabled for Attendant Programs Today v. United States Dep't of Hous. & Urban Dev., 170 F.3d 381, 383-84 (3d Cir. 1999) ("ADAPT").

[HN12] The APA does not abrogate sovereign immunity when a plaintiff seeks monetary damages as compensation for a legal wrong. Bowen v. Massachusetts, 487 U.S. 879, 894-96, 900-01, 101 L. Ed. 2d 749, 108 S. Ct. 2722 (1988). To the extent that the plaintiff seeks monetary damages from the HUD defendants, the APA does not abrogate HUD's sovereign [*28] immunity. To the extent that the plaintiff seeks equitable relief from HUD, the question is whether judicial review of HUD's decisions is available. If judicial review is available, then the APA waives HUD's sovereign immunity.

[HN13] There is a general presumption that agency actions are reviewable under the APA. There is, however, a presumption against judicial review when an agency decision involves whether to undertake investiga-

Page 12

GP010216

2003 U.S. Dist. LEXIS 4975, *

tive of enforcement actions. Id. at 384. In ADAPT, HUD regulations provided that certain percentages of buildings had to be accessible to persons with mobility impairments and to persons with hearing and vision impairments. There was a HUD regulation stating that HUD "shall" make prompt investigations. The Third Circuit concluded that HUD's decision of whether to investigate and whether to enforce was committed exclusively to agency discretion even though a HUD regulation stated that HUD shall make prompt investigations. The absence of Congressional guidelines binding the agency in deciding whether to conduct investigations or monitor compliance left the court with no law to apply in reviewing the agency's enforcement decisions. Id. at 385-86.

Similarly [*29] to the plaintiff in ADAPT, the plaintiff in the present case complains of HUD's failure to enforce its administrative grievance regulations and investigate the plaintiff's complaints regarding the PHA's actions. There are no Congressional guidelines that bind HUD's decision making when deciding whether to enforce the administrative grievance regulations or investigate a plaintiff's complaints about a public housing agency. [HN14] In the absence of Congressional guidelines, HUD's actions are unreviewable. Because HUD's decisions are not reviewable, the APA does not abrogate HUD's sovereign immunity with respect to any claims that the plaintiff makes against HUD seeking equitable relief.

Another possibility for finding HUD's sovereign immunity to be waived is if HUD can sue and be sued in its own name. [HN15] If Congress allows a government agency to sue and be sued in its own name, then there is a presumption that Congress has waived the agency's sovereign immunity. Meyer, 510 U.S. at 481. HUD may sue and be sued in its own name only with respect to its functions under the United States Housing Act of 1937. 42 U.S.C. [*30] 1404a. The question in this case is whether either enforcing and monitoring the PHA's compliance with the administrative grievance procedures or investigating the plaintiff's complaints about the PHA is within HUD's functions under the United States Housing Act.

[HN16] Under 42 U.S.C. § 1437d(k), HUD must issue regulations "requiring each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure." There are regulations that require public housing agencies to use administrative grievance procedures that satisfy the elements of due process before evicting a public housing tenant. 24 C.F.R. § 966.50 et seq.

[HN17] Neither the statutes, nor the regulations establish a procedure at HUD to enforce or monitor compliance with the administrative grievance requirements

of 42 U.S.C. § 1437d(k) or 24 C.F.R. § 966.50 et seq. Further, HUD does not have the power to seek administrative or judicial sanctions against the public housing agencies for failure to comply with the administrative grievance requirements or failure to act in accordance with the due process rights [*31] of the public housing agency's tenants. Finally, there is not a general requirement in the statutes or the regulations requiring HUD to monitor or ensure compliance by the public housing agencies with federal statutes or HUD regulations.

[HN18] It is also not a HUD function to monitor or investigate whether a public housing agency violates a tenant's due process rights through the public housing agency's fence and pet policies or the public housing agency's failure to cure a roach infestation. Although HUD has the implicit power to withhold funds when public housing agencies are not complying with the law, ensuring or monitoring whether public housing agencies violate the due process rights of its tenants is not part of HUD's functions. HUD's sue and be sued provision, therefore, does not abrogate HUD's sovereign immunity with respect to a suit based on HUD's failure to monitor or investigate the problems the plaintiff had with the PHA.

The next possible basis for finding that HUD's sovereign immunity has been abrogated is the Tucker Act. [HN19] This Act gives the district courts original jurisdiction, concurrent with the Court of Federal Claims, over "any ... civil action or claim against the [*32] United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department or upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). For actions falling within this statute, the government has waived its sovereign immunity. See Licata v. United States Postal Serv., 33 F.3d 259, 263 (1994).

The plaintiff seeks damages in excess of $ 1,000,000 for violations of her rights. The district court does not have jurisdiction under the Tucker Act for claims over $ 10,000. The Court of Federal Claims has exclusive jurisdiction for any claims over $ 10,000. See id. at 263 & n.5.

Another basis on which the plaintiff could argue that HUD's sovereign immunity has been abrogated is the FTCA. [HN20] The FTCA gives the district courts jurisdiction over civil actions for claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, under circumstances [*33] where the United States, if a private person, would be liable to the

Page 13

2003 U.S. Dist. LEXIS 4975, *

claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The plaintiff argues that the HUD employees were at least negligent in not responding to her letters and complaints regarding the PHA's fence policy, pet policy, failure to cure the roach infestation in the plaintiff's residence, and failure to provide her with an administrative grievance before she was evicted.

[HN21] The FTCA contains many procedural prerequisites that must be met before it may be invoked. For example, the plaintiff must first present her claim for damages to the appropriate federal agency and have the claim denied. See 28 U.S.C. § 2675(a); Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995). Neither the plaintiff's amended complaint, nor her response to the motions to dismiss contain any evidence that the plaintiff presented her claim for damages to HUD before commencing this action in court. The FTCA does not abrogate HUD's sovereign immunity because the plaintiff has not met the procedural prerequisites of the FTCA. [*34]

Because Congress has not waived HUD's sovereign immunity for the type of suit brought by the plaintiff, the plaintiff has failed to state a claim against the HUD defendants in their official.

2. HUD Defendants in Their Individual Capacities

To the extent that the plaintiff sues the HUD defendants in their personal capacities, the HUD defendants assert qualified immunity. [HN22] Determining whether an officer has qualified immunity is a two step process. First, the Court must determine if the facts alleged, taken in the light most favorable to the injured party, show that the officer violated a constitutional right. Second, if a constitutional right was violated, then the Court must determine if the right was clearly established at the time it was violated. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Unless there has been a violation of a clearly established constitutional right, the officer has qualified immunity. Saucier v. Katz, 533 U.S. 194, 201-02, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001).

To determine whether the HUD defendants violated [*35] the plaintiff's constitutional rights, the Court must determine if the plaintiff had a due process right to have the HUD defendants: (1) enforce the regulations requiring that the public housing agency conduct an administrative grievance proceeding before evicting her and (2) investigate her complaints regarding the PHA's fence policy, pet policy, and failure to cure the roach infestation.

The plaintiff does not have a due process right to affirmative enforcement by the HUD defendants of the administrative grievance regulations or to investigation by the HUD defendants of her complaints about the PHA's fence policy, pet policy, or failure to cure the roach infestation. See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989). In DeShaney, a minor child was claiming that employees at the local social services agency violated his due process rights when they did not act on complaints indicating that the child's father was violent with the child. The failure of the government employees to protect the child from harms that the employees knew about but did not create was not a violation of due process because due process "does not confer a right [*36] to affirmative governmental aid." Id.

Similarly to DeShaney, the government employees, in this case the HUD defendants, had no duty to protect the plaintiff from the actions of the PHA. As in DeShaney, it does not matter that the HUD defendants knew of the alleged actions at the PHA because the HUD defendants had not created any of the alleged harms suffered by the plaintiff because of the PHA's actions. The HUD defendants could not deprive the plaintiff of a constitutional right that did not exist.

Even if the plaintiff identified a constitutional right that the HUD defendants violated, the constitutional right would need to be clearly established to deprive the HUD defendants of qualified immunity. [HN23] DeShaney eliminates any due process right to affirmative assistance from government employees for harms not created by the government officials being sued even if the government officials being sued were aware of the alleged harms. Given DeShaney, it would not have been clear to a reasonable officer that the plaintiff had a due process right to have a HUD employee enforce the administrative grievance regulations, investigate the PHA fence and pet policies, or investigate [*37] the PHA's failure to cure the roach infestation.

The plaintiff has failed to state a claim against the HUD defendants in their individual capacities because the HUD defendants have qualified immunity.

C. Claims Against the PHA Defendants

The plaintiff alleges that the PHA defendants violated her rights by: (1) evicting her without providing the administrative grievance that she requested on more than one occasion; (2) using an unsworn statement when obtaining the writ of possession from the Municipal Court; (3) depriving her of an opportunity to have input on the fence removal and pet policy; and (4) failing to cure the roach infestation at her residence.

Page 14

2003 U.S. Dist. LEXIS 4975, *

It is not clear from the plaintiff's amended complaint whether she is suing the PHA defendants in their official or individual capacities. The Court interprets the plaintiff's amended complaint as a suit against the PHA defendants in both their official and individual capacities.

In its motion to dismiss, the PHA defendants argue that the amended complaint should be dismissed regardless of whether it is an official or individual capacity suit. If it is an official capacity suit, the PHA defendants argue that it should be [*38] dismissed because the plaintiff has failed to establish the existence of an unconstitutional custom or practice under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). If it is an individual capacity suit, the PHA defendants argue that it should be dismissed because they are immune from suit in their individual capacities. n6

n6 The PHA defendants raise several other defenses in their motion to dismiss. The Court expresses no view on the other defenses raised by the PHA defendants because the Court finds that the plaintiff has not alleged sufficient facts to hold the municipality liable under any reasonable reading of her amended complaint and the PHA defendants enjoy qualified immunity.

1. PHA Defendants in Their Official Capacities

[HN24] An official capacity suit is really a suit against an entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). To the extent that this is an official capacity suit, it is a suit against the PHA.

[HN25] Under Section [*39] 1983, municipalities and other local government units are among those persons to whom Section 1983 applies. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). A municipality may only be sued for its own unconstitutional or illegal policies. The municipality cannot be sued for the acts of its employees that do not represent the municipality's policies. Id. at 690-91.

There are two requirements before a municipality may be held liable under Section 1983. First, there must be a violation of the plaintiff's constitutional rights. Second, the municipality must be able to be held liable for the violation of the plaintiff's constitutional rights. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). To determine whether a municipality can be held liable under Section 1983, there must be: (1) a municipal policy and (2) a causal link between the municipal policy and the violation of the plaintiff's constitu-

tional rights. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-05, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997).

The plaintiff's complaints about the PHA are allegations that her due process rights were violated. [HN26] Due process [*40] prevents the government from depriving an individual of the interests of life, liberty, or property without due process of law. Due process contains both a substantive and a procedural component. Both components of due process are designed to protect an individual against arbitrary government action. See County of Sacramento v. Lewis, 523 U.S. 833, 845-46, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998).

[HN27] The substantive component of due process is implicated when an individual alleges that the government deliberately and arbitrarily abused its power. The protections associated with substantive due process are not triggered unless an individual has a protected life, liberty, or property interest. An interest must be fundamental under the Constitution to be a protected interest triggering substantive due process protections. The government's legislative acts that deprive a person of her protected interest will generally withstand a substantive due process challenge if the government identifies a legitimate state interest that the legislature could rationally conclude that was served by the legislative act. A government's non-legislative acts that deprive a person of her protected interest will withstand a challenge [*41] unless the government action can properly be "characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. at 847; see Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-40, 142 (3d Cir. 2000).

[HN28] The procedural component of due process is implicated when an individual alleges that the government took action without providing the individual fair process. Before procedural due process protections are required, an individual must have a protected life, liberty, or property interest. A protected interest triggering procedural due process protections may be created either by the Constitution or by state law. Procedural due process requires that the plaintiff be provided with notice and an opportunity to respond when the government deprives a person of a protected interest. See Zinermon v. Burch, 494 U.S. 113, 125-27, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990); Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987).

The plaintiff's complaints that the PHA violated her rights by not giving her the administrative grievance she requested before it evicted her and by using an unsworn statement to obtain the writ of possession invoke the procedural [*42] component of due process. She complains that the procedures used by the PHA in her eviction proceedings were not fair.

Page 15

GP010216

2003 U.S. Dist. LEXIS 4975, *

The plaintiff's complaint that the PHA violated her rights by not curing the roach infestation invokes the substantive component of due process. The plaintiff complains that the PHA abused its power by failing to take affirmative measures to rectify the roach problem.

The plaintiff's complaints regarding the fence removal and pet policies cannot be as easily classified. She alleges that she did not have an opportunity to give input on either of these policies. This allegation implicates the procedural component of due process because she claims she did not have an opportunity to respond when the PHA took action against her. She also alleges that the PHA forced the public housing tenants to abide by these policies or face eviction. This implicates the substantive component of due process because it is an allegation that the PHA arbitrarily abused its power. The Court interprets the plaintiff's complaints about the fence removal and the pet policy as invoking both the substantive and the procedural component of due process.

The Court assumes that the plaintiff has [*43] a protected property interest in her residence and that the PHA's eviction of the plaintiff deprived her of her property interest in analyzing whether the plaintiff has stated a claim that her due process rights were violated by not getting the administrative grievance that she requested and by having an unsworn statement used to obtain the writ of possession. The question is whether the procedures used by the PHA comported with the requirements of procedural due process.

[HN29] When a plaintiff has a protected property interest, a pre-deprivation hearing of some sort is generally required to satisfy due process concerns. The process need not always be elaborate, depending, in part, on the importance of the interests at stake and on subsequent proceedings. The essential requirements of due process are notice and an opportunity to respond. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-547, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985).

Based on the facts alleged in the plaintiff's amended complaint, the PHA gave the plaintiff notice that it would evict [*44] her if she did not pay her rent before it evicted her on November 15, 2001. Notice was provided through: (1) the February 2000 administrative grievance where the PHA raised the issue of the tenant not placing withheld rent into an escrow account; (2) the October 2000 notice of the PHA's intent to evict her; (3) Ms. Outen's approaching the plaintiff before any in court eviction proceedings with an agreement that would allow the plaintiff to remain in her residence in exchange for her paying her rent; (4) the in court eviction proceedings

that discussed the plaintiff's obligations to pay her rent; (5) the October 2001 writ of possession that was left under her door; and (6) the November 2001 notice of eviction that was mailed to her.

The plaintiff had an opportunity to respond before she was evicted. She was able to respond in person at the February 2000 administrative grievance and the in court eviction proceedings as well as when Ms. Outen approached the plaintiff with an agreement before the in court eviction proceedings. The plaintiff also had an opportunity to explain her concerns in writing between November 1999 when she first withheld rent and November 2001 when the PHA evicted [*45] her. The plaintiff took advantage of the opportunity to respond in writing during this time by complaining to the PHA and requesting an administrative grievance to resolve her disputes.

[HN30] Due process does not entitle a person to any type of process that the person requests. Due process gives the person a right to notice and an opportunity to respond. Although the plaintiff wanted an administrative grievance and did not want the PHA attorney to use an unsworn statement, due process does not prevent the PHA from choosing what procedures it wants to use as long as the plaintiff had notice and an opportunity to respond before the PHA deprived her of her property right. Under any reading of the facts in the amended complaint, the plaintiff has failed to state a claim that her procedural due process rights were violated by the PHA not giving the plaintiff the administrative grievance she requested and using an unsworn statement in obtaining the writ of possession.

With respect to the PHA's failure to cure the roach infestation, the Court assumes that the plaintiff had a protected property interest in her residence and that the roaches infringed upon this interest. To violate due process, [*46] the PHA must have deprived the plaintiff of her property. The plaintiff's amended complaint does not state a claim against the PHA because it does not allege that PHA caused the roach infestation. Without any allegations that the PHA caused the roach infestation, the plaintiff has failed to state a claim that the PHA deprived her of her property rights. See DeShaney, 489 U.S. at 195-96.

That the PHA knew of the roach infestation and that the plaintiff could not control the roaches does not change the analysis. [HN31] Due process does not "confer an affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government may not deprive the individual." Id. at 196. The PHA also did not have any type of special relationship with the plaintiff that created an affirmative duty to help the plaintiff because it had not imposed a limitation on her freedom to act on her

own behalf in curing the roach infestation. The PHA, therefore, did not deprive the plaintiff of any protected interest by failing to cure the roach infestation. See id. at 200.

As the PHA did not deprive [*47] the plaintiff of her due process rights with respect to its failure to cure the roach infestation, the Court does not examine whether the PHA's failure to cure the roach infestation was an arbitrary abuse of power that shocks the conscience.

With respect to the fence removal and the pet policies, the plaintiff's amended complaint fails to state a claim that the PHA violated her due process rights. Regardless of whether the claims regarding the fence removal and the pet policy invoke the substantive or procedural component of due process, the plaintiff has failed to state a claim under either component because she has not identified a protected interest that was deprived by the PHA.

The plaintiff's protected property interest was in her residence. Removal of fences from a residence rented by the plaintiff and preventing the plaintiff from having a pet do not deprive her of her property interest. [HN32] Neither the Constitution, nor the laws of Pennsylvania, create a property interest in being able to have a residence that allows pets or in not having fences at a rented residence removed.

Because the plaintiff does not have a protected interest with respect to the fence removal or the pet [*48] policy, the Court does not review whether the level of process that the plaintiff was afforded with respect to these issues satisfies the procedures required by due process or whether the actions were an exercise of government power within the limitations imposed by due process.

The Court does not address whether there was a municipal policy that would allow the municipality to be held liable under Monell because it finds that the plaintiff has failed to state a claim that the PHA violated her due process rights.

2. PHA Defendants in Their Individual Capacities

To the extent that the plaintiff has a cause of action against the PHA defendants in their personal capacities, the defendants assert absolute immunity for defendant Carl Greene, the Executive Director of the PHA, and qualified immunity for the rest of the PHA defendants.

[HN33] The Supreme Court has recognized absolute immunity for individuals in limited situations. Individuals performing judicial, legislative, and prosecutorial functions receive absolute immunity. See, e.g., Bogan v. Scott-Harris, 523 U.S. 44, 49, 140 L. Ed. 2d 79, 118 S. Ct. 966 (1998) (legislative functions); Stump v. Sparkman, 435 U.S. 349, 357, 363, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) [*49] (judicial functions); Imbler v. Pachtman, 424 U.S. 409, 427-28, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976) (prosecutorial functions). Additionally, police officers testifying as witnesses and the President of the United States taking action to carry out the presidency enjoy absolute immunity. See, e.g., Briscoe v. LaHue, 460 U.S. 325, 334-36, 75 L. Ed. 2d 96, 103 S. Ct. 1108 (1983) (police officers testifying as witnesses); Nixon v. Fitzgerald, 457 U.S. 731, 749, 73 L. Ed. 2d 349, 102 S. Ct. 2690 (1982) (President of the United States).

It does not appear that Mr. Greene has absolute immunity because he does not seem to fit in one of the recognized classes of officials who receive absolute immunity. [HN34] When an official does not have absolute immunity, the official may be entitled to qualified immunity. The Court, therefore, analyzes whether Mr. Greene and the other PHA defendants have qualified immunity.

To determine if the PHA defendants enjoy qualified immunity, the Court engages in the same two step analysis that it used to determine if the HUD defendants enjoyed qualified immunity. First, the Court must determine if under any reasonable reading of the plaintiff's amended complaint, she has alleged facts showing that the officer violated [*50] a constitutional right. Second, the Court must determine if the constitutional right was clearly established. n7 Saucier v. Katz, 533 U.S. 194, 201-02, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001).

N7 Qualified immunity only shields the PHA employees from a suit for damages. See Trotman v. Bd. of Trustees of Lincoln Univ., 635 F.2d 216, 227 (3d Cir. 1980). The plaintiff does ask for equitable relief from the PHA in the form of having her lease reinstated. This relief, however, is relief that needs to be sought from the PHA because the PHA defendants in their individual capacities do not have the power to reinstate her lease. Any power that the PHA defendants have to reinstate the plaintiff's lease stems from their positions as PHA defendants and not as private citizens.

For the reasons detailed in the Court's analysis of whether the plaintiff stated a claim against the PHA defendants in their official capacities, the Court finds that the plaintiff has failed to state a claim that the PHA defendants violated the plaintiff's [*51] constitutional rights.

GP010216

Even if there was a violation of the plaintiff's constitutional rights, the rights would have to be clearly established before the PHA defendants would not enjoy qualified immunity.

There was not a clearly established due process right to have administrative grievances upon request and not to have an unsworn statement used to obtain a writ of possession before the plaintiff was evicted. Procedural due process entitled the plaintiff to notice and an opportunity to respond when the PHA deprived her of her residence by evicting her. The plaintiff had received notice and an opportunity to respond at several points between November 1999 when she first withheld rent and November 2001 when she was evicted. A reasonable officer would not know that a person who had withheld several months rent, had one administrative grievance, and had received notice and an opportunity to respond on several occasions had a due process right to more than one administrative grievance before being evicted and not to have an unsworn statement used to obtain a writ of possession.

There also was not a clearly established due process right to be free from the fence and pet policies. A reasonable [*52] officer would not know that an individual living in public housing had a property interest that was infringed when fences at the plaintiff's rented residence were removed and when the plaintiff was not allowed to have a pet in her residence.

Finally, there was not a clearly established right to have the PHA cure the roach infestation. A reasonable officer would not know that a person had a right to have a public housing agency cure a roach infestation that it did not cause.

Because the defendants enjoy qualified immunity, the plaintiff has failed to state a claim against the PHA defendants in their individual capacities.

D. Claims Against Individuals Not Named As Defendants

The plaintiff requests relief based on actions taken by individuals who are not named as defendants or for relief beyond the Court's power to grant. With respect to these requests, the Court has no authority to grant the plaintiff the relief she seeks.

The plaintiff requests that the Court make recommendations to Congress. This is beyond the Court's authority.

The plaintiff requests sanctions against the acting HUD Secretary for violations of the Fair Housing Act. The Court does not have the authority [*53] to impose the sanctions sought by the plaintiff. Additionally, after reviewing the facts in the plaintiff's amended complaint, it does not appear that any of the HUD defendants are the acting HUD Secretary. [HN35] The Court cannot impose sanctions against an individual not before the Court.

The plaintiff requests sanctions against the Assistant United States Attorney for unethical behavior. This complaint stems from the attorney sending the Court a letter suggesting that the plaintiff's initial complaint should be dismissed. This letter was sent before the HUD defendants had been served and before he had entered his appearance. The Court cannot grant this relief because the plaintiff has neither sued the attorney nor made a motion for sanctions under Federal Rule of Civil Procedure 11. Even if the Court examined the attorney's conduct, the conduct was not sanctionable. The attorney had not yet entered an appearance when he sent the Court a letter, but his clients also had not yet been served. He was seeking to avoid default judgments against his clients. The plaintiff did seek a default judgment against these defendants showing that his concern about the default judgments was valid and his [*54] conduct in communicating with the Court was proper.

The plaintiff's amended complaint requests sanctions against the Clerk of the Court for deliberate indifference. It is not clear what the plaintiff believes that the Clerk has done. Even if it was clear, it is beyond the Court's power to sanction the Clerk of the Court when the Clerk has not been sued. Additionally, the Clerk of the Court is likely to enjoy qualified immunity from the plaintiff's claims even if the Clerk is properly brought before this Court by the plaintiff.

Finally, the plaintiff requests sanctions against the United States Marshals Service for failure to serve some of the defendants. The plaintiff also claims that the Marshals Service never provided her proof of service for some of the defendants. The Court cannot consider a claim against the Marshals Service because the Marshals Service has not been sued. Even if the Court considered the claim against the Marshals, the Marshals did serve the defendants they could identify. This is the extent of their obligation. Finally, if the Marshals were before the Court, they would almost certainly have qualified immunity from the plaintiff's claims.

An appropriate order [*55] follows.

ORDER

AND NOW, this 12th day of March, 2003, upon consideration of the motion to dismiss filed by the defendants the Honorable Robert S. Blasi and the Honorable Louis J. Presenza (Docket No. 20), the motion to dismiss of Dennis Billingtier, Carolee Murask, Michael A. Levine (Docket No. 21), the motion to dismiss of Elizabeth Outen, Carl Greene, and Michael Pileggi (Docket No. 22), and the plaintiff's opposition thereto, IT

2003 U.S. Dist. LEXIS 4975, *

IS HEREBY ORDERED that the motions are GRANTED for the reasons set forth in a memorandum of today's date.

BY THE COURT:

MARY A. MCLAUGHLIN, J.

GP010216

# EXHIBIT C

# TAB 3

Westlaw.

Not Reported in F.Supp.2d                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Morley v. Superior CourtE.D.Pa.,2004.Only the
Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
John H. MORLEY, Jr., Plaintiff,
v.
SUPERIOR COURT, et al., Defendants.
**No. Civ.A. 03-6012.**

Feb. 26, 2004.

John H. Morley, Jr., Philadelphia, PA, pro se, for
Plaintiff.
A. Taylor Williams, Philadelphia, PA, for
Defendant.

*MEMORANDUM*
KELLY, J.
**\*1** Before this Court is Defendants' Motion to
Dismiss Plaintiff's Complaint. *Pro se* Plaintiff, John
H. Morley, Jr., filed an action against the Superior
Court of Pennsylvania, the Court of Common Pleas
of Bucks County and the Honorable Ward F. Clark (
"Defendants"). Plaintiff brings this action against
Defendants alleging the violation of his
constitutional rights regarding the actions of
Defendants in connection with litigation in which
Plaintiff was involved in the state court. For the
reasons that follow, Defendants' Motion is granted.

I. *BACKGROUND* [FN1]

FN1. The following facts are taken from
Plaintiff's Amended Complaint. The Court
has presented the facts in the light most
favorable to Plaintiff.

**\*1** Plaintiff's action is based upon an underlying
state civil case in which he was a party. Since 1995,
Plaintiff has been involved in state court litigation

regarding claims for breach of contract, fraud and
bad faith. On April 5, 2001, in relation to a
counterclaim, judgment was entered against
Plaintiff in the amount of $16,208.66. Plaintiff
alleges that the judgment against him was due to the
actions of Defendant Judge Ward F. Clark who
presided over the state court action. Specifically,
Plaintiff alleges that Judge Clark refused to allow
him to enter rebuttal testimony at the trial.
Additionally, Plaintiff claims that Judge Clark
found findings of fact and conclusions of law which
were erroneous and contrary to the weight of the
evidence.

**\*1** Plaintiff appealed the judgment against him to
the Pennsylvania Superior Court. Upon a motion to
quash the appeal, the Pennsylvania Superior Court
quashed Plaintiff's appeal in its entirety. Plaintiff
claims that the Pennsylvania Superior Court
improperly quashed his entire appeal because the
motion to quash only sought to quash the appeal in
part. Plaintiff also asserts that Judge Clark ordered
the clerks in the Prothonotary's Office not to
forward the record to the Pennsylvania Superior
Court. Plaintiff alleges that Judge Clark and the "
Honorable R. Barry McAndrews, the Honorable
Isaac Garb, Court Clerks and the Superior Court"
conspired to deprive him of his Constitutional due
process rights. (Am.Compl.¶ 22).

**\*1** Plaintiff sought relief from the Pennsylvania
Superior Court's ruling by filing a Petition for
Allowance of Appeal in the Supreme Court of
Pennsylvania. The Pennsylvania Supreme Court
denied the Petition. Plaintiff proceeded to file a
Petition for Writ of Certiorari with the Supreme
Court of the United States ("Supreme Court").
Plaintiff's Petition was denied by the Supreme Court.

**\*1** On October 30, 2003, Plaintiff filed his *pro se*
Complaint with this Court. Plaintiff filed his *pro se*
Amended Complaint on November 19, 2003. The
crux of Plaintiff's action is that the Defendants
deprived, as well as conspired to deprive, him of his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Constitutional due process rights by their actions in state court. Count I, entitled "Violation of 42 U.S.C. subsection 1983-Deprivation of Due Process Rights, " is premised upon the following allegations: "[b]y refusing to allow rebuttal testimony, the Judge deprived Morley of his Constitutional due process rights" and "[b]y *sua sponte* quashing Morley's appeal, in whole, [t]he Superior Court deprived Morley of his Constitutional due process rights." (Am.Compl.¶¶ 24-25). Count II, entitled " Violation of 42 U.S.C. subsection 1985-Conspiracy, " is premised upon the following allegation: "[t]he actions of the defendants constitutes [sic] a conspiracy to deprive Morley of his Constitutional due process rights." FN2 (*Id.* ¶ 28). As for the issue of the relief sought by Plaintiff, he seeks injunctive relief in the form of a new state court trial before a twelve member jury or, in the alternative, allowance of his appeal in the Pennsylvania Superior Court.

> FN2. In Plaintiff's response to Defendants' Motion to Dismiss, Plaintiff appears to acknowledge that his conspiracy claim based upon 42 U.S.C. § 1985 should have been brought pursuant to 42 U.S.C. § 1983 . (*See* Pl.'s Answ. Defs.' Mot. to Dismiss). The Court will assume, for purposes of deciding this Motion, that Plaintiff seeks relief under Section 1983.

## II. *STANDARD*

**\*2** A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)(citing *Conley,* 355 U.S. at 45-46); *see also Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). In considering a Motion to Dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Phila.,* 868 F.2d

644, 645 (3d Cir.1989) (citations omitted). " Further, when the plaintiff is a *pro se* litigant, a court has a special obligation to construe the complaint liberally." *Bardsley v. Lawrence,* 956 F.Supp. 570, 572 (E.D.Pa.1997)(citing *Zilich v. Lucht,* 981 F.2d 694 (3d Cir.1992)). "A complaint is properly dismissed only if it appears that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief." *Id.* (citing *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988)).

## III. *DISCUSSION*

### A. Defendants' Motion to Dismiss

**\*2** Defendants make the argument that Plaintiff's Amended Complaint should be dismissed because the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.FN3 "Under the *Rooker-Feldman* doctrine, a federal district court does not have subject matter jurisdiction over challenges to state court decisions." *Travis v. Miller,* 226 F.Supp.2d 663, 667 (E.D.Pa.2002)(citing *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). According to the *Rooker-Feldman* doctrine, "[a] federal claim is an impermissible challenge to a state court decision ... when entertaining the federal claim would be equivalent to an appellate review of the state court order." *Id.* (citing *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996)).

> FN3. Defendants' Motion to Dismiss is based upon Federal Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mot. to Dismiss). However, Defendants' argument that Plaintiff's Amended Complaint should be dismissed because of lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine should have been brought pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Fed.R.Civ.P.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

12(b)(1). Although Defendants did not request dismissal of this case pursuant to Rule 12(b)(1), the Court's determination of lack of subject matter jurisdiction will be guided by Rule 12(b)(1).

**\*2** Thus, the *Rooker-Feldman* doctrine "precludes lower federal courts from exercising jurisdiction over claims that were actually litigated in state court or are 'inextricably intertwined' with a state court adjudication." *Assocs. in Obstetrics and Gynecology v. Upper Merion Township,* 270 F.Supp.2d 633, 642 (E.D.Pa.2003)(quoting *Parkview Assocs. P'ship v. City of Lebanon,* 225 F.3d 321, 325 (3d Cir.2000)). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under *Feldman,* where the federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview,* 225 F.3d at 325 (quotations and internal quotation marks omitted). Thus, "[f]or *Rooker-Feldman* purposes, a federal claim and a state claim are inextricably intertwined, where, if the federal claim succeeds, the state court judgment would be effectively voided." *Obstetrics and Gynecology,* 270 F.Supp.2d at 642 (citing *Gulla v. N. Strabane Township,* 146 F.3d 168, 171 (3d Cir.1998)). That is, "*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." *Bardsley,* 956 F.Supp. at 573 (quotation and internal quotation marks omitted). " Therefore, any federal action in which the requested relief would reverse or nullify the ruling in state court is barred under the *Rooker-Feldman* doctrine." *Travis,* 226 F.Supp.2d at 668.

**\*3** Upon review of Plaintiff's claims, including the relief requested therein, the Court concludes that it lacks subject matter jurisdiction under *Rooker-Feldman.* Plaintiff's claims are inextricably intertwined with the decisions of the Court of Common Pleas of Bucks County and the Superior Court of Pennsylvania. The allegations that constitute Plaintiff's claims show that he is challenging the decisions of the Defendants as they pertain to his state court action. In Count I, Plaintiff challenges both the decision by Judge Clark regarding the allowance of rebuttal testimony, as well as the decision by the Superior Court to quash his appeal in its entirety. (Am.Compl.¶¶ 24-25). Regarding Count II, Plaintiff asserts a general challenge against the Defendants' actions concerning his state court litigation. (*Id.* ¶¶ 27-29). Review of Plaintiff's claims reveals that he effectively is seeking appellate review of the prior state court decisions through disguising his federal claims in terms of constitutional violations.

**\*3** Under the *Rooker-Feldman* doctrine, a federal claim is an impermissible challenge to a state court decision when entertaining the claim would be equivalent to an appellate review of the state court order. *See supra* p. 4. *Rooker-Feldman* does not " permit a disappointed state plaintiff to seek review of a state court decision in the federal court by masquerading his compliant in the form of a federal civil rights action." *Logan v. Lillie,* 965 F.Supp. 695, 698 (E.D.Pa.1997). "If it were otherwise, any person dissatisfied with a state ... award could seek review in the district court under the guise of a federal civil rights violation." *Id.* (quotation and internal quotation marks omitted). Thus, " *Rooker-Feldman* counsels that the path for correcting a lower state court's decision, even one which assertedly results in a violation of the plaintiff's federal constitutional rights, lies with the state appellate courts and ultimately with the United States Supreme Court." [FN4] *Id.* (citation omitted).

> FN4. Regarding the state court litigation, the Court reiterates that Plaintiff's Petition for Allowance of Appeal in the Pennsylvania Supreme Court was denied. Also, Plaintiff's Petition for Writ of Certiorari was denied by the United States Supreme Court.

**\*3** In addition to the aforementioned, the federal relief sought by Plaintiff is barred under the *Rooker-Felman* doctrine. In Counts I and II, Plaintiff seeks to set aside the judgment handed down in the state action or, in the alternative, vacate the Pennsylvania Superior Court's decision to quash Plaintiff's appeal. Plaintiff's requests for relief are squarely focused upon reversing the outcome of his unsuccessful state court appearance. Such requested

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

relief would reverse or nullify the ruling of either the Court of Common Pleas or the Superior Court, which is barred pursuant to the *Rooker-Feldman* doctrine. Under *Rooker-Feldman,* this Court plainly lacks jurisdiction to grant this relief. *See Travis,* 226 F.Supp.2d at 668. As such, the claims, including their requested relief, contained within Plaintiff's Amended Complaint are inextricably intertwined with the state court adjudication. Consequently, the *Rooker-Feldman* doctrine precludes the Court from exercising subject matter jurisdiction over Plaintiff's claims. Therefore, the Court dismisses Plaintiff's action for lack of subject matter jurisdiction under *Rooker-Feldman.*[FN5]

> FN5. Defendants also argue that Plaintiff's Amended Complaint should be dismissed on additional grounds including, but not limited to, Eleventh Amendment immunity and the Federal Courts Improvement Act of 1996. (*See* Defs.' Mot. to Dismiss). However, since I find that the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction, there is no need to reach the alternative grounds for dismissal proffered by Defendants.

### B. Plaintiff's Motion to Amend

**\*4** In Plaintiff's response to the Defendants' Motion to Dismiss, he requests leave to file a Second Amended Complaint that "replaces the Superior Court and Court of Common Pleas on the caption with the names of every Superior Court Judge and the Common Pleas Court Judges referenced in the Amended Complaint." [FN6] (Pl.'s Answ. Defs .' Mot. to Dismiss at 2). Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment." *Flynn v. Best Buy Auto Sales,* 218 F.R.D. 94, 96 (E.D.Pa.2003)(quotation and internal quotation marks omitted); *see also Cowell v. Palmer Township,* 263 F.3d 286, 296 (3d Cir.2001) (stating that "leave to amend need not be granted when amending the complaint would clearly be futile"). Regarding futility of amendment, "[a]n

amendment is futile if the amended complaint cannot withstand a motion to dismiss." *Williams v. Phila. Hous. Auth.,* 826 F.Supp. 952, 954 (E.D.Pa.1993) (citation omitted). The Court has reviewed Plaintiff's proposed amendments and concludes that granting him leave to file a Second Amended Complaint would be futile. It is clear that permitting Plaintiff to amend his Amended Complaint to include the names of the pertinent state court judges on the caption would be futile because such a revision has no bearing on the Court's lack of jurisdiction under the *Rooker-Feldman* doctrine. Accordingly, Plaintiff's request for leave to amend is denied.

> FN6. Plaintiff also seeks leave to file a Second Amended Complaint to include a Section 1983 conspiracy claim. As explained in Part I, the Court assumed, for purposes of deciding the instant Motion, that Plaintiff's conspiracy claim was premised upon Section 1983. In light of the Court's analysis that it lacks subject matter jurisdiction over Plaintiff's Section 1983 claims due to the *Rooker-Feldman* doctrine, Plaintiff's request to include a Section 1983 conspiracy claim in a Second Amended Complaint would be ineffective and, therefore, is denied.

### IV. *CONCLUSION*

**\*4** As explained earlier, the Court has a special obligation to liberally construe Plaintiff's allegations due to the fact that he is a *pro se* litigant. Nevertheless, after consideration of Plaintiff's claims, including the requested relief contained therein, the Court finds that Plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. Plaintiff's claims and requests for relief are inextricably intertwined with the decisions of the Court of Common Pleas and the Superior Court of Pennsylvania. Thus, under *Rooker-Feldman,* the Court lacks subject matter jurisdiction over Plaintiff's action. Regarding Plaintiff's request for leave to amend, it is denied because the Court finds that such amendment would be futile.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*4 An appropriate Order follows.

### ORDER

*4 AND NOW, this 26 th day of February, 2004, upon consideration Defendants' Motion to Dismiss, and the Response thereto, it is hereby ORDERED that:

*4 1. Defendants' Motion to Dismiss (Doc. No. 7) is GRANTED;

*4 2. Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction; and

*4 2. Plaintiff's request for leave to file a Second Amended Complaint is DENIED.

E.D.Pa.,2004.
Morley v. Superior Court
Not Reported in F.Supp.2d, 2004 WL 377669 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23904257 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Plaintiff's Complaint Filed on Behalf of Defendants, the Superior Court, the Court of Common Pleas, Bucks County and the Honorable Ward F. Clark (Dec. 1, 2003) Original Image of this Document (PDF)
• 2:03cv06012 (Docket) (Oct. 30, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

# TAB 4

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
O'Rourke v. KrapfE.D.Pa.,2002.Only the Westlaw
citation is currently available.
United States District Court,E.D. Pennsylvania.
Thomas M. O'ROURKE, Plaintiff
v.
David KRAPF, Derek J. Rogers, Allentown Police
Department and City of Allentown, Pa, Defendants
**No. 01-CV-3065.**

Sept. 20, 2002.

Andrew K. Parker, Allentown, PA, for Plaintiff.
Charles J. Fonzone and Frank G. Procyk, Fonzone
and Ashley, Allentown, PA, for Defendants.

*MEMORANDUM AND ORDER*
VANANTWERPEN, J.
**\*1** Thomas O'Rourke ("Plaintiff") asserts claims
under § 1983 [FN1] and state tort law against
Officers David Krapf and Derek J. Rodgers, the
Allentown Police Department, and the City of
Allentown, Pa. (collectively, "Defendants"). The
claims arise from Mr. O'Rourke's arrest on July 11,
1999 for reckless endangerment, disorderly
conduct, and carrying an unlicensed firearm. We
previously dismissed all claims, upon a full review
of the record, after Plaintiff's counsel failed to
respond to Defendants' Motion for Summary
Judgment. To avoid punishing Plaintiff for his
counsel's lack of diligence, we will grant Plaintiff's
Motion for Reconsideration. We now find that there
are no disputed issues of material fact that prevent
summary judgment, and that all of Plaintiff's federal
claims lack merit and we will enter judgment on
them. We decline to exercise jurisdiction over
Plaintiff's state law malicious prosecution claim in
the absence of any remaining federal questions.

> FN1. In addition to his 42 U.S.C. § 1983
> claims, Plaintiff also asserts a claim under

42 U.S.C. § 1988. The Civil Rights
Attorney's Fees Award Act of 1976 (42
U.S.C. § 1988) provides that the trial court
in its discretion may award reasonable
attorney fees to parties prevailing in a §
1983 action. Because Plaintiff's § 1988
claims only become relevant if Plaintiff
succeeds litigation, we need not consider
them now upon summary judgment. *See*
Vasquez v. Fleming, 617 F.2d 334, 336
(3d Cir.1980).

*I. BACKGROUND*

**\*1** Most of the following facts are not disputed. The
few disputes that are present are noted and resolved
in favor of Plaintiff. Though the parties present
conflicting factual accounts, we must consider now
whether Plaintiff's version of the events, viewed in
its most favorable light, is sufficient to overcome
summary judgment. *United States v. Diebold, Inc.,*
369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176
(1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d
Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct.
537, 88 L.Ed.2d 467 (1985).

**\*1** Thomas O'Rourke owns and operates Custom
Cars, a licensed mechanic's garage at 710 Mulberry
Street, Allentown, Pa. Across the alleyway from his
business, Duc Nyugen has intermittently operated a
similar repair garage from the back of his residence
at 524 North Seventh Street, allegedly in violation
of local zoning laws. Relations between the two
men have grown progressively worse since 1993.
O'Rourke claims that at that time, Nyugen was
representing to customers and suppliers that he
owned Custom Cars. Among other business
advantages, the representations allowed Nyugen to
obtain discounts from parts suppliers. In an effort to
halt business at Nyugen's garage, O'Rourke
complained to local zoning authorities. His
complaints over the years had not stopped Nyugen's
activities, and he grew increasingly upset.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*1** On Sunday, July 11, 1999, O'Rourke drove to his garage and upon arriving, saw two men in the alleyway repairing an automobile. He recognized Nyugen and another man identified only as " McMullan." The owner of the car, Jacinto Estrella, stood nearby watching the repairs. Wanting to document the zoning violation, O'Rourke retrieved a Polaroid camera from his shop. He had taken two pictures of the trio's activity when Estrella approached him and demanded to know why O'Rourke was photographing his vehicle. O'Rourke snapped a third photo, stating only that the pictures were "for the record." This answer prompted Estrella to lunge for the pictures in O'Rourke's hand, exclaiming, "gimme those pictures!" In response, O'Rourke swung his camera, smashing it into Estrella's head. Estrella punched back. By the conclusion of this struggle, Estrella had taken O'Rourke's camera and returned to Duc Nyugen's garage with it. Meanwhile, O'Rourke collected himself, took the keys from the ignition of Estrella's vehicle, and walked back to the Custom Cars shop.

**\*2** What happened next is not entirely clear. O'Rourke claims that Estrella picked up a broom and approached his property. In his garage, O'Rourke picked up a "breaker bar," a three-foot-long metal tool used to remove wheel bolts. Based on his deposition, O'Rourke apparently denies that Estrella picked up the broom in response to his own threatening actions with the tool. Also at that time, O'Rourke retrieved a handgun from the safe in his office. He emphatically insists that the gun was not loaded when he rushed out the garage door to confront Estrella. O'Rourke admits that he then pointed the gun at Estrella and Nyugen, six feet away, as the parties argued over the course of about two minutes. The incident ended with Estrella and Nyugen retreating down the alleyway.

**\*2** Once back in the Custom Cars garage, O'Rourke claims only then did he load an ammunition clip into his handgun. He then called the Allentown Police Department ("the police department") to report the altercation. At Nyugen's garage, Estrella had also called the police. Waiting in front of his business after the call, O'Rourke saw Officers David Krapf and Derek Rodgers walking toward him in the alley. O'Rourke went back inside and placed the

gun in a tool chest approximately five feet from the garage door. Having heard that O'Rourke pointed a gun at the two men, the officers asked him whether he owned a firearm. O'Rourke said yes and indicated that the gun was in his garage. When asked if he had pointed the gun at Estrella, O'Rourke also said yes, asserting that he had used the gun to protect himself. Officers Krapf and Rodgers then handcuffed O'Rourke and placed him under arrest for reckless endangerment, disorderly conduct, and carrying an unlicensed firearm. They did not administer *Miranda* warnings at that time.

**\*2** The officers continued to question O'Rourke after they had handcuffed him and had taken him into custody. He initially refused to say where he had hidden the handgun, but eventually disclosed it was in a drawer of the tool box. Officer Rodgers opened the drawer, five feet from where O'Rourke stood, retrieved the gun, and emptied the bullets from it. Then the officers drove him to the police station. O'Rourke was arraigned before District Magistrate Richard A. Gatti later that Sunday. Magistrate Gatti dismissed the charge based on the alleged firearm violation at a subsequent hearing on September 23, 1999. Before proceeding to trial on the two remaining charges, O'Rourke moved to suppress his statements to the police along with the seizure of the handgun, asserting that the officers obtained the evidence in violation of the procedural safeguards of *Miranda* and the protections of the Fourth Amendment. Judge Platt of the Court of Common Pleas of Lehigh County, Pa. held a suppression hearing on that motion, allowing all pre-arrest statements and the gun into evidence. His opinion found that the police officers properly arrested O'Rourke and that the seizure of his firearm was justified as incident to the lawful arrest. *Commonwealth v. O'Rourke,* No. 2997 of 1999, slip op. (Ct.Com.Pl., Lehigh County, Pa., Feb. 28, 2002). A jury acquitted O'Rourke of both remaining criminal charges on July 19, 2000.

**\*3** Mr. O'Rourke filed the action before this court on June 19, 2001, asserting claims against Officers Krapf and Rodgers, the Allentown Police Department, and the City of Allentown, Pa. ("the City"). O'Rourke alleges several constitutional claims under 28 U.S.C. § 1983. Specifically, he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 3

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

contends that the defendant officers violated his constitutional rights by arresting, interrogating, and detaining him without probable cause and by seizing a firearm from the premises of his automobile repair shop. He also raises a state law claim of malicious prosecution. Defendants moved for summary judgment on July 8, 2002. When Plaintiff did not file a brief in opposition to the motion, we reviewed the record and the substance of Defendants' motion, finding that it had merit. By order dated August 6, 2002, we granted summary judgment for Defendants on all claims. Counsel for Plaintiff claims he first learned of the action taken when he received a copy of our order. On August 16, 2002, counsel filed a Motion for Reconsideration. We heard oral arguments on the issue on September 5, 2002. Presently before this court we have Plaintiff's Motion for Reconsideration. Because we will grant it, we also consider Defendants' Motion for Summary Judgment and Plaintiff's Answer to Defendants' Motion for Summary Judgment in opposition to it.

## II. DISCUSSION

### A. Jurisdiction, Applicable Law

**\*3** We have original, subject matter jurisdiction over § 1983 claims under 28 U.S.C. § 1 331. We may consider Plaintiff's state law claim by exercising supplemental jurisdiction under 28 U.S.C. § 1367(a), to the extent this claim arises from the same actions by Defendants that allegedly violated § 1983. On such state law questions, we apply the rules established by the Pennsylvania Supreme Court. *C.I.R. v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). We may also decline to exercise supplemental jurisdiction over a claim if we dismiss all claims over which we have original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The Court of Appeals for the Third Circuit has determined that § 1367(c) "grants district courts the discretion to refuse to exercise supplemental jurisdiction when 'values of judicial economy, convenience, fairness, and comity' counsel that the district court remand state claims to a state forum." *Hudson United Bank v. LiTenda*

*Mortg. Corp.,* 142 F.3d 151, 157 (3d Cir.1998) (citing *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 534, 139 L.Ed.2d 525 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1998))).

### B. Plaintiff's Motion for Reconsideration

**\*3** The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A party filing a motion to reconsider must rely on at least one of the following grounds: (1) the availability of new evidence that was not previously available; (2) an intervening change in the controlling law; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993).

**\*4** Plaintiff does not specify which ground he bases his motion on. Having pointed to no new evidence or intervening change of law, he presumably bases it on the third ground. He asks us to reconsider our order dated August 6, 2002, granting summary judgment for Defendants on all claims. In that order, we noted that Plaintiff's counsel had failed to file a timely response or brief in opposition to Defendants' Motion for Summary Judgment.

**\*4** Local Rule of Civil Procedure 7.1(c) requires that all motions be accompanied by a supporting legal brief, unless certified as uncontested or governed by Local Civil Rule 26.1(g). *See* E.D.Pa. R.Civ.P. 7.1(c). If a party opposing the motion does not provide a timely response, the motion may be treated as uncontested. *Id.* The rule does not apply to unopposed summary judgment motions; instead, such motions will be governed by Fed.R.Civ.P. 56(c). *Id.* The Court must conduct its own inquiry as to whether granting summary judgment is appropriate. *Fedake v. Lincoln Univ.,* 167 F.Supp.2d 731, 738 (E.D.Pa.2001). The Third Circuit upheld the predecessor to Rule 7.1(c) in *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 139-40 (1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

**\*4** Treating Defendants' summary judgment motion as uncontested, we made a full review of the motion and the record, as required by Local Rule 7.1(c) and Rule 56(c). Finding that Defendants were entitled to summary judgment based on the merits, we granted their motion. Now, to prevent any manifest injustice and prejudice to Plaintiff based on his counsel's lack of diligence, we will grant his Motion for Reconsideration.[FN2]

> FN2. Counsel for Plaintiff claims that Defendants' motion was delayed in reaching him. He assures us that his failure to file a timely response is an aberration and will not happen again. We certainly will not tolerate any future instances of similar conduct.

### C. Defendants' Motion for Summary Judgment

**\*4** The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

**\*4** On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### 1. Section 1983-Federal Claims

**\*5** To state a claim for civil damages under § 1983, a plaintiff must show that the defendant, through conduct sanctioned under color of state law, deprived him of a federal constitutional or statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1986); *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir.2000). Section 1983 does not create any new substantive rights, but instead provides a remedy for the violation of a federal constitutional or statutory right. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Gruenke,* 225 F.3d at 298.

**\*5** Mr. O'Rourke's complaint alleges several constitutional claims, including violations of the Fourth, and Fifth, Sixth, and Fourteenth Amendments. Specifically, he contends that the defendant officers violated his constitutional rights by arresting, interrogating, and detaining him without probable cause and by seizing a firearm from the premises of his automobile repair shop.[FN3] O'Rourke also alleges false imprisonment and false arrest in violation of the constitutional amendments listed.[FN4] The City of Allentown, Pa. allegedly infringed upon his constitutional rights by repeatedly acquiescing to unlawful arrests made by Officer Krapf. Mr. O'Rourke does not claim that excessive force was used in his arrest. Rather, his complaint primarily asserts that the police arrested him without probable cause and searched his business. Therefore, if the officers had probable cause for his arrest, Plaintiff will have no basis for his federal claims.[FN5]

> FN3. Plaintiff's § 1983 claim based on the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

officers' failure to provide *Miranda* warnings may be dismissed outright because violations of prophylactic *Miranda* procedures are not violations of the Constitution itself. Established law clearly provides that the remedy for a *Miranda* violation is exclusion of compelled self-incriminating evidence, not a § 1983 action. *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994). Further, this is not a case where the degree of interrogation rises to a level that would violate the Fifth Amendment itself. *See Id.* (holding that extreme conduct, such as a pre-existing plan to interrogate, is needed to violate substantive Fifth Amendment norms).

FN4. Addressing Plaintiff's claims and the precise grounds for relief is complicated by the repetitious language supporting each claim and the alleged state law violations mixed into the federal claims, specifically false imprisonment and false arrest. Plaintiff's Complaint simply states repeatedly and without finer distinction that all of his § 1983 claims arise from the following allegation:
Each defendant ... acted willfully, knowingly, recklessly, outrageously and/or with specific intent to deprive plaintiff of his right to freedom from illegal searches and seizure of his person, papers and effects, and of his right to freedom from unlawful arrest, detention, and imprisonment, all of which rights are secured to plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendment[s] to the Constitution of the United States and by [§ 1983].
(Pl.Compl., ¶ 10, passim).

FN5. Judge Pollak reached a similar result in *Gilbert v. Feld,* a case primarily involving state claims of malicious prosecution, abuse of process, and false arrest. 842 F.Supp. 803, 822 (E.D.Pa.1993) . The one § 1983 claim, based on the same underlying facts as the state claims, failed because of the existence of probable cause.

*Id.*

**\*5** Based on reasons set forth below, we find that the *Rooker-Feldman* doctrine deprives this court of jurisdiction to hear Plaintiff's federal claims against Officers Krapf and Rodgers. Even if *Rooker-Feldman* did not apply, we believe that Officers Krapf and Rodgers had probable cause to arrest Mr. O'Rourke. Finally, the City of Allentown had no custom or policy of allowing illegal arrests that would render it liable to O'Rourke for Officer Krapf's actions.

a. Applicability of *Rooker-Feldman* Based on Findings of Common Pleas Court (Officers Krapf and Rodgers)

**\*5** Section 1257 of Title 28 of the United States Code provides that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court...." The negative implication of this rule, as set forth in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), is that lower federal courts lack subject matter jurisdiction to review final judgments of the highest court of the respective states. *E.B. v. Verniero,* 119 F.3d 1077, 1090 (3d Cir.1997). The Third Circuit has interpreted the *Rooker-Feldman* doctrine to encompass final decisions of lower state courts as well. *Id.*

**\*5** "The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." *Newell v. Rolling Hills Apartments,* 134 F.Supp.2d 1026, 1033 (N.D.Iowa 2001). Federal district courts also lack jurisdiction over any constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206. As the Third Circuit recently explained:
**\*6** When a plaintiff seeks to litigate a claim in a federal court, the existence of a state court judgment in another case bars the federal proceeding under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

*Rooker-Feldman* only when entertaining the federal claim would be the equivalent of an appellate review of that order. For that reason, *Rooker-Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual.

**\*6** *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1992) (citations omitted).

**\*6** In the case before us, there has been a final decision of a lower state court. Judge Platt of the Court of Common Pleas of Lehigh County, Pa. wrote an opinion in which he found that the police officers properly arrested O'Rourke and that the seizure of his firearm was justified as incident to the lawful arrest. *See Commonwealth v. O'Rourke,* No. 2997 of 1999, slip op. at 8, (Ct.Com.Pl., Lehigh County, Pa., Feb. 28, 2002).[FN6] The court then entered an order denying O'Rourke's Motion to Suppress in part, only granting the motion with respect to post-arrest statements obtained in violation of the suspect's *Miranda* rights. *Id.* at 11-12.

> FN6. Judge Platt found that the gun seized from O'Rourke's garage could be admitted into evidence, contrary to O'Rourke's motion to suppress it. In reaching his conclusion of law, Judge Platt found that the officers executed a search incident to a lawful arrest. *Commonwealth v. O'Rourke,* No. 2997 of 1999, slip op. at 8, (Ct.Com.Pl., Lehigh County, Pa., Feb. 28, 2002) Although his opinion does not expressly state that probable cause to arrest existed, we cannot see how he reached his conclusion in the absence of probable cause.

**\*6** Mr. O'Rourke's present § 1983 claims are an indirect attempt to undermine the state court decision. His constitutional claims are "inextricably intertwined" with the prior state claims because granting relief would require us to determine that the state court judgment was erroneously entered. We will not allow him to dispute factual issues, specifically regarding the probable cause for his arrest, when a Pennsylvania state court decision would be impermissibly attacked as a result. O'Rourke denies that Judge Platt decided that the arrest of the plaintiff was valid based on probable cause. (Pl.'s Ans. to Respective Allegations in Defs' Mot. for Summ. J., ¶ 3). This assertion ignores the natural and necessary inference that flows from the court's finding that a search incident to a lawful arrest occurred; namely, that the arrest was lawful and based on probable cause in the first place.

**\*6** This court previously considered the applicability of *Rooker-Feldman* in a similar factual context. In *Wishnefsky v. Addy,* a criminal defendant in a pending case filed a § 1983 claim alleging an improper search in violation of the Fourth Amendment. 969 F.Supp. 953, 954 (E.D.Pa.1997), aff'd, 162 F.3d 1153 (3d Cir.1998). The state trial court had previously denied the defendant's motion to suppress evidence obtained through the allegedly illegal search. *Id.* at 955. When the defendant sought relief in federal court, we found as follows: "It is difficult to see how [the defendant] could obtain relief in our court without a finding that the state court suppression ruling which found the search constitutional was in error. Under such circumstances, we believe Wishnefsky's present claims are inextricably intertwined with the state court proceeding." *Id.* at 956.

**\*7** Mr. O'Rourke's present challenge is materially the same as Wishnefsky's. It is a § 1983 claim that contests the validity of a state court suppression opinion. But O'Rourke's case is not even pending; Judge Platt entered an order based on his opinion and no appeal was taken. Accordingly, we find that O'Rourke's claims against the police officers are barred under the doctrine of *Rooker-Feldman.*

b. Federal Claims Against Officers Krapf and Rodgers in their Individual Capacities

**\*7** Even if *Rooker-Feldman* did not apply, Plaintiff has no valid federal claims against Officers Krapf and Rodgers. As discussed above, Plaintiff's § 1983

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

claims will not survive summary judgment if the officers had probable cause to arrest him. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Rogers v. Powell,* 120 F.3d 446, 453 (3d Cir.1997) (further citations omitted). Probable cause demands only an "assessment of probabilities in particular factual contexts." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Supreme court elaborated, "[i]n dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). By holding that "probable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules," the Supreme Court affirmed the totality of the circumstances approach for these inquiries. *See Gates,* 462 U.S. at 232, 103 S.Ct. 2317, 76 L.Ed.2d 527.

***7** In this case, O'Rourke was charged with reckless endangerment and disorderly conduct.[FN7] Based on facts undisputed by the parties, Officers Krapf and Rodgers had probable cause to arrest and detain him for the crimes charged. At his deposition, O'Rourke described the altercation with Jacinto Estrella that lead to his arrest. He admitted that when Estrella tried to grab the Polaroid photographs from his hand, he swung the camera at Estrella, purposefully hitting him in the head. (Thomas O'Rourke, Dep., 87-88). The fight escalated as both men threatened each other with progressively more dangerous implements. Finally, O'Rourke admitted he retrieved a handgun from his garage, walked outside, and pointed it at Estrella. *Id.* at 100-02, 118. O'Rourke denies that the gun was loaded when he pointed it at Estrella. According to his story, he put an ammunition clip into the gun after Estrella fled, but before he placed the 911 call. *Id.* at 103-04. When he saw the officers approaching the scene, O'Rourke re-entered the garage and placed

the gun in an accessible toolbox drawer, not in the safe where he usually kept it. *Id.* at 106. The gun remained loaded.

> FN7. 18 Pa.Cons.Stat. § 2705 and § 5503(a)(4). Mr. O'Rourke was also charged with carrying a firearm without a license. 18 Pa.Cons.Stat. § 6106(a)(1). Upon the magistrate's determination that he was in fact licensed, the charge was promptly dropped. (Pl.'s Compl., ¶ 15; Defs' Ans. to Pl. Compl., ¶ 15) (referencing the hearing before District Magistrate Richard A. Gatti, Sept. 23, 1999).

***8** As the officers approached O'Rourke outside his business, they had sufficient information to warrant an investigation as to whether he had committed a crime. They already knew, based on his own 911 call, that an altercation had occurred. His antagonists also called the police, confirming many details of the story. What remained uncertain was who was at fault. Prior to arresting O'Rourke, Officer Krapf questioned him. Most significantly, O'Rourke responded by recounting the incident and admitted pointing the gun at Estrella. But he refused to disclose the location of the gun, saying only that it was "in a safe place." (Thomas O'Rourke, Dep., 117-19) At that point the officers had probable cause to believe that he had committed the offenses of reckless endangerment or disorderly conduct.

***8** Even if O'Rourke's account of self-defense with an unloaded gun is accurate, the officers had sufficient grounds to disbelieve his story. We note that police officers have the difficult job of apprehending suspects while also protecting the safety of others, as well as their own. They often must make quick, preliminary determinations of who is at fault and decide whether that person should be charged with a crime. It may be that none of the parties are blameless in this incident, but upon hearing O'Rourke own admissions, a reasonable person could conclude that he was in large part responsible for the fight and escalated threats that followed. In addition, Mr. O'Rourke had been arrested on previous occasions, including the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

1996 incident involving Officer Krapf in which he pleaded guilty to disorderly conduct. Here, the officers made a reasonable determination that O'Rourke had recklessly placed another in danger of serious bodily injury and they arrested him. *See* 18 Pa.Cons.Stat. § 2705.

**\*8** Upon arresting O'Rourke with probable cause, the officers then asked where he had put the handgun. They already knew it was in the immediate area because of O'Rourke's prior statements. Officer Rodgers then properly seized the gun from the tool drawer, approximately five feet from O'Rourke, pursuant to a search incident to a lawful arrest. *See Chimel v. California,* 395 U.S. 752, 763-64, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Rickabaugh,* 706 A.2d 826, 836 (Pa.Super.Ct.1997); *see also Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 902 (Pa.1995) (holding that incident to arrest, an officer may search the arrestee's person and immediate area to prevent the arrestee from obtaining weapons). Although their post-arrest questioning regarding the exact location did violate the exclusionary rule of *Miranda,* Judge Platt later determined that the officers would have inevitably discovered the gun. *See Commonwealth v. O'Rourke,* No. 2997 of 1999, slip op. at 11, (Ct.Com.Pl., Lehigh County, Pa., Feb. 28, 2002) (citing *Nix v. Williams,* 467 U.S. 432, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). But regardless of the *Miranda* violation, O'Rourke cannot as a matter of law maintain a § 1983 action based on the seizure of the handgun.

**\*9** Plaintiff does not assert a federal claim of malicious prosecution along with his state claim, but even if he had, it would not survive summary judgment. Previously, the Third Circuit had expressly held that the elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort. *Rose v. Bartle,* 871 F.2d 331, 349 (3d Cir.1989) (citing *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988)). Under Pennsylvania law, the plaintiff had to prove (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in the plaintiff's favor, (3) the proceeding was initiated without probable cause, and (4) the defendants acted maliciously or for a purpose other than

bringing the plaintiff to justice. *Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.1996) (citing *Haefner v. Burkey,* 534 Pa. 62, 626 A.2d 519, 521 (Pa.1993)). Following the Supreme Court's decision in *Albright v. Oliver,* though, it became clear that proving the common law elements would not be sufficient to establish a § 1983 claim. 510 U.S. 266, 269, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Court's decision indicated that a plaintiff also had to articulate a specific violation of federal law. *Id.* at 274, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114. A plurality of the Court suggested that pleading a Fourth Amendment violation would suffice, *id.,* and other members agreed. *Id.* at 814-17 (Ginsburg, J., concurring in judgment); *id.* at 281, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (Kennedy, J., concurring in judgment and joined by Thomas, J.); *id.* at 288-89, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (Souter, J. conurring in judgment). While a plaintiff must point to a specific violation of federal law, the requirement is merely a condition precedent to bringing a § 1983 claim after *Albright. See Donahue v. Gavin,* 280 F.3d 371, 382-83 (3d Cir.2002). Therefore, a plaintiff must still demonstrate that a proceeding was initiated against him without probable cause.

**\*9** Here, the officers had probable cause to believe that O'Rourke had committed the crimes of reckless endangerment and disorderly conduct. The subsequent prosecution and trial resulted from the officers' reasonable conclusions that O'Rourke had committed the acts necessary to fulfill the material elements of the crimes charged. But in the present case, O'Rourke maintains his later acquittal by jury trial should lead to an opposite conclusion.

**\*9** Despite the arguments raised in his brief in opposition to summary judgment, Mr. O'Rourke's ultimate acquittal does not relieve his burden of establishing that the officers lacked probable cause to arrest him. Similarly, the magistrate's decision to dismiss the charge of possessing an unlicensed firearm does not support any of O'Rourke's claims of malicious prosecution or constitutional violations. "Neither an acquittal of the defendant in a criminal prosecution, nor the ignoring of the bill against him by the grand jury, nor his discharge by the examining magistrate, constitute proof of want

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

of probable cause, or shifts the burden of proof to the defendant in the civil action." *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A.2d 674, 676 (Pa.1946) (cited in *Gilbert v. Feld,* 842 F.Supp. 803, 814-15 (E.D.Pa.1993).

**\*10** Because Mr. O'Rourke has not demonstrated evidence sufficient for a jury to find that the officers lacked probable cause to arrest him, we grant summary judgment on all federal claims against the officers.[FN8]

> FN8. Having found that Plaintiff's federal claims lack merit, we need not address the issue of punitive damages. In any event, a municipality is immune from punitive damages under § 1983. *City of Newport v. Fact Concepts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

**c. Federal Claims Against the City of Allentown** [FN9]

> FN9. Plaintiff concedes to the dismissal of the Allentown Police Department as a defendant. (Pl.'s Mem. in Opposition to Defs' Mot. for Summ. J., 10). It is clear that in § 1983 actions, police departments cannot be sued in conjunction with municipalities because the departments are merely administrative agencies of the municipalities. not separate legal entities. *See, e.g., Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir.1992); *Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir.1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992); *Pahle v. Colebrookdale Township,* No. 00-CV-3180, 2002 WL 475131, at *4 (E.D.Pa. Mar.26, 2002); *Open Inns, Ltd. v. Chester County Sheriff's Dept.,* 24 F.Supp.2d 410, 417 (E.D.Pa.1998); *Irvin v. Borough of Darby,* 937 F.Supp. 446, 451 (E.D.Pa.1996); *Regalbuto v. City of Philadelphia,* 937 F.Supp. 374, 377 (E.D.Pa.1995). Because the police

department is merely an arm of the City, and thus a redundant party, we will grant summary judgment to the police department on all claims.

**\*10** Based on the claims and evidence presented by Plaintiff, there can be no valid claim against the City of Allentown. Showing that Officers Krapf and Rodgers arrested Mr. O'Rourke unlawfully would be insufficient, standing alone, to find the City liable. Municipalities cannot be liable under § 1983 based on the theory of respondeat superior. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, proving one incident of misconduct, however severe, will not itself establish municipal liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Pahle,* 2002 WL 475131, at *5. The City may only be held liable under § 1983 if Mr. O'Rourke provides evidence indicating that it had a general policy or custom that encouraged constitutional violations in detaining, taking into custody, and arresting suspects. *Tuttle,* 471 U.S. at 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791; *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir.1996) (citations omitted).

**\*10** Plaintiff's first argument for municipal liability asserts that the City did little to curb a history of unlawful arrests made by Officer Krapf over his sixteen years with the police department. In other words, he argues that the police department has a custom of allowing unlawful arrests. But the unsupported assertion that the City failed to discipline Officer Krapf does not establish the critical factual prerequisite that the alleged abuses occurred at all. Plaintiff attaches no exhibits or other evidence to his conclusory pleadings that would suggest a history of unlawful arrests initiated by either Officer Krapf or anyone else. Other than the arrest under consideration in this case, Plaintiff has not specifically alleged, much less demonstrated by the thinnest of evidence, that any other illegal arrests occurred.[FN10] Even assuming that Officer Krapf unlawfully arrested O'Rourke, that one instance is insufficient as a matter of law to hold the City liable. *Tuttle,* 471 U.S. at 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 10

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

FN10. Plaintiff fails to mention the one relevant past incident involving O'Rourke and Officer Krapf that is in the record. O'Rourke's deposition contains testimony regarding injuries he sustained in a jail cell as a result of physical resistance to the police in 1996. (Thomas O'Rourke, Dep., 57-60). Officer Krapf was one of several officers who subdued O'Rourke in the cell. Facing a long list of charges from the incident, O'Rourke pleaded guilty to disorderly conduct and signed a form releasing the police department from liability for his injuries. While this incident might suggest Officer Krapf had an improper motive for arresting O'Rourke in the instant matter, we find that it does not. According to the record before us. Officer Krapf was not disciplined for the incident. He suffered no other negative repercussions. If anything, the incident would tend to support a claim for excessive use of force. But that is not alleged in this case. In any event, Plaintiff has done no more than allege a single instance of unlawful arrest, inadequate as a matter of law under *Tuttle* to hold the City liable. *See* 471 U.S. at 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791.

*10 Second, Plaintiff argues that the City has a policy of allowing unlawful arrests. To reach this result, Plaintiff maintains that Officer Krapf is an individual with final decision-making authority and therefore his actions are official city policy. *See Kneipp,* 95 F.3d at 1212-13. Plaintiff cites *Kneipp* for the proposition that "[p]olicy is made when a ' decision maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id.* at 1212. "To ascertain who is a policy-maker, 'a court must determine which official has final, unreviewable discretion to make a decision or take action.' " *Id.* (quoting *Andrews v. City of Philadelphia,* 895 F2d 1469, 1481 (3d Cir.1990)). Mr. O'Rourke's argument fails because Officer Krapf not only lacks "final authority to establish municipal policy," but also lacks *any* authority to establish policy because he can not promulgate an official proclamation, policy, or edict. Admittedly, the department could ratify Krapf's actions and adopt them as official policy, but O'Rourke has offered no evidence to establish such an adoption. As described above, no pattern or custom of abuses has been sufficiently alleged.

*11 The remainder of the argument constructed by Plaintiff's counsel has no merit. Plaintiff's brief in opposition to summary judgment casually mentions a statement by President Clinton "on or before July 11, 1999" that advocated public gun confiscation. From what we can glean from Plaintiff's brief, he suggests that the City became eager to enforce the President's policy. But he offers no evidence to show that the City ever heard the alleged presidential statement.[FN11] Further, Plaintiff argues that Officer Krapf would personally benefit from arresting him for a gun violation, as opposed to pursuing charges for assault and robbery against O'Rourke's antagonists. If we generously allow that the City did in fact seek to confiscate firearms primarily because of a "presidential edict," it does not affect our decision. Plaintiff fails to recognize that an arrest for assault and robbery could be an equally impressive feather in Officer Krapf's cap. The City surely has a comparable interest in preventing and punishing these serious crimes against the person.

FN11. Because counsel for Plaintiff has failed to cite any source for the statement by President Clinton "on or before July 11, 1999," we have made a quick check of news sources for that approximate time period. We did find one story that appears to be the source of Plaintiff's alleged presidential statement. *See* Paul Shepard, *Clinton offers $15 million to buy back guns, destroy them,* San Antonio Express-News, Sept. 10, 1999, available at 1999 WL 100179732. We are granting summary judgment for the City because, in addition to the numerous reasons discussed already, Plaintiff's arrest predates President Clinton's announcement of the federal plan.

*11   We find that Mr. O'Rourke has not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11

Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

demonstrated that the City of Allentown had a general custom or policy of encouraging unlawful arrests. Consistent with that finding, we will grant summary judgment for the City on all federal claims.

### 2. State Claim-Malicious Prosecution

*11 Under the discretion provided by § 1367, we decline to exercise supplemental jurisdiction over O'Rourke's remaining state law claim, because there are no federal questions remaining in this case. We reach our decision out of a concern for comity and respect for state court authority.

### III. CONCLUSION

*11 Based on the foregoing, we will grant summary judgment for all defendants with respect to Plaintiff Thomas O'Rourke's federal claims. In the absence of any remaining federal questions, we dismiss Plaintiff's state law claim for malicious prosecution without prejudice to Plaintiff's right to pursue this claim in state court.

*11 An appropriate order follows.

### ORDER

*11 AND NOW, this 19th day of September, 2002, upon consideration of Plaintiff Thomas M. O'Rourke's Motion for Reconsideration of Order, filed August 16, 2002, Defendants' answer in opposition, filed August 26, 2002, Defendants' Motion for Summary Judgment, filed July 8, 2002, and Plaintiff's answer in opposition, filed August 26, 2002, consistent with the foregoing memorandum it is hereby ORDERED as follows:
*11 1. Plaintiff's Motion for Reconsideration of Order, filed August 16, 2002, is GRANTED.
*11 2. Defendants' Motion for Summary Judgment, filed July 8, 2002, is GRANTED with respect to all federal claims, and judgment will be entered in favor of all defendants on these claims.
*11 3. We decline to exercise jurisdiction over Plaintiff's state law claim for malicious prosecution and DISMISS it without prejudice to Plaintiff's right

to pursue this claim in state court.

E.D.Pa.,2002.
O'Rourke v. Krapf
Not Reported in F.Supp.2d, 2002 WL 32348933 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:01CV03065 (Docket) (Jun. 19, 2001)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

# TAB 5

LEXSEE



Analysis
As of: Feb 16, 2007

CARMEN RIGAUD v. JUDY GAROFALO, et al.

CIVIL ACTION NO. 04-1866

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

2005 U.S. Dist. LEXIS 7791

May 2, 2005, Decided

**SUBSEQUENT HISTORY:** Motion granted by, Count dismissed at Rigaud v. Garofalo, 2005 U.S. Dist. LEXIS 8735 (E.D. Pa., May 9, 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendants, employer, healthcare provider, and two doctors, and alleged, inter alia, a violation of the Health Insurance Portability and Accountability Act's Privacy Rule, 45 C.F.R. 160.103 et seq., common law slander, intentional and negligent infliction of emotional distress, and intentional interference with contractual relations. The healthcare provider and the doctors moved to dismiss the claims.

**OVERVIEW:** The employee sustained a work related injury that made her eligible for workers' compensation benefits. The employee was referred to the healthcare provider and the doctors for treatment. The employee alleged that one of the doctors contacted her employer and accused her of forging a refill authorization on a prescription, and that the doctor released information about that incident to the employer in violation of the Health Insurance Portability and Accountability Act's (HIPAA) Privacy Rule, 45 C.F.R. 160.103 et seq. The court found that based on HIPAA's failure to provide for a private federal remedy and the absence of any legislative intent to create a private right of action, it lacked subject matter jurisdiction over the employee's claim. The employee's defamation claim against the doctors and the healthcare provider was dismissed because the communications between the doctor and the employee's em-

ployer related to the employee's treatment and care and were therefore conditionally privileged as a matter of law.

**OUTCOME:** The healthcare provider and the doctors' motion to dismiss was granted.

**CORE TERMS:** Privacy Rule, prescription, subject matter jurisdiction, physical injury, refill, infliction of emotional distress, intentional interference, wrongful termination, contractual, disclosure, cause of action, motion to dismiss, right of action, conditionally, privileged, definite, slander, doctor, intentional infliction of emotional distress, workers' compensation, pharmacist, contacted, altered, contractual relationship, federal question, common interest, investigate, prognosis, provider, at-will

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must distinguish between motions that attack the complaint on its face and those that attack the existence of subject matter jurisdiction in fact. A facial attack is considered under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6); all allegations in

Page 1

2005 U.S. Dist. LEXIS 7791, *

the complaint are taken to be true. If the attack is factual, however, a plaintiff's allegations are not presumed to be true. The court may look beyond the pleadings and make its own determination as to whether it has the power to hear the action. Further, the plaintiff bears the burden of proving that jurisdiction does in fact exist.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2] When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. A Fed. R. Civ. P. 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Labor & Employment Law > Occupational Safety & Health > Administrative Proceedings > Jurisdiction*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Health Insurance Portability & Accountability Act*
[HN3] The existence of a private cause of action is a prerequisite for finding federal question jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Healthcare Law > Business Administration & Organization > Patient Confidentiality > Health Insurance Portability & Accountability Act*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Health Insurance Portability & Accountability Act*
[HN4] While the United States Court of Appeals for the Third Circuit has not specifically addressed the issue whether there is an express or implied private right of action under the Health Insurance Portability and Accountability Act's Privacy Rule (HIPAA), 45 C.F.R. 160.103 et seq., several other federal courts have held that there is no such right. HIPAA's Privacy Rule itself provides specific enforcement mechanisms for aggrieved parties. The Privacy Rule also provides an administrative process by which the Secretary of the Department of Health and Human Services may investigate and impose civil monetary penalties for a failure to comply with the Privacy Rule. 45 C.F.R. § § 160.500 -160.570. Based on HIPAA's failure to provide for a private federal remedy and the absence of any legislative intent to create a pri-

vate right of action, the United States District Court for the Eastern District of Pennsylvania concludes that it lacks subject matter jurisdiction over a claim for violation of HIPAA.

*Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies*
*Healthcare Law > Business Administration & Organization > Patient Confidentiality > Health Insurance Portability & Accountability Act*
*Healthcare Law > Treatment > General Overview*
[HN5] The Health Insurance Portability and Accountability Act's Privacy Rule (HIPAA), 45 C.F.R. 160.103 et seq., expressly provides defendants a right to notice and a hearing before an administrative law judge, and the opportunity voluntarily to cooperate with the Secretary of the Department of Health and Human Services to resolve the matter through informal means. 45 C.F.R. § § 160.500 -160.570. Moreover, the Privacy Rule under HIPAA provides an explicit exception for disclosures made in accordance with the laws relating to workers' compensation. 45 C.F.R. § 164.512(l) permits the disclosure of health information made for workers' compensation purposes without an individual's authorization. Under Pennsylvania's Worker's Compensation Act, Pa. Stat. Ann. tit. 77, § 531, a healthcare provider who treats an injured employee is required to report to the employer the employee's history, diagnosis, treatment, prognosis and physical findings. A provider has a continuing obligation to supplement its report as long as treatment continues. Additionally, HIPAA provides that a covered entity may use or disclose protected health information, provided that the individual is informed in advance of the use or disclosure and has the opportunity to agree to or prohibit or restrict the use or disclosure of the information. 45 C.F.R. § 164.510.

*Torts > Intentional Torts > Defamation > Defenses > Privileges > Qualified Privileges*
[HN6] A conditional privilege attaches to communications made on a proper occasion, from a proper motive, in a proper manner, whenever circumstances are such as to lead any one of several persons having a common interest in a particular matter correctly or reasonably to believe that facts exist which another sharing such a common interest is entitled to know.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
*Torts > Negligence > Actions > Negligent Infliction of Emotional Distress > Elements*

Page 2

[HN7] It is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiff must allege a physical injury. It is not enough to merely allege severe distress. Pennsylvania law likewise establishes that a claimant may not recover for negligent infliction of emotional distress in the absence of physical injury.

*Labor & Employment Law > Employment Relationships > At-Will Employment > General Overview*
*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN8] To state a claim for intentional interference with contractual relations, a plaintiff must establish, inter alia, the existence of a contract. In Pennsylvania, an at-will employee environment is the norm, absent a contract to the contrary, and thus can be terminated for no reason at all. An exception to the at-will employment rule will apply if an employee and employer enter into a valid contract which expresses an intention to overcome the presumption.

**COUNSEL:** [*1] For CARMEN RIGAUD, Plaintiff: PIETRO A. BARBIERI, BARBIERI & ASSOCIATES, West Chester, PA.

For JEFFREY HEEBNER, DR., BUSINESS HEALTH SERVICES, JAMES NICHOLSON, Defendants: MAUREEN P. FITZGERALD, MCKISSOCK & HOFFMAN PC, Philadelphia, PA.

For BRANDYWINE SENIOR CARE, Defendant: TODD ALAN EWAN, SAUL EWING LLP, Philadelphia, PA.

**JUDGES:** Bruce W. Kauffman, J.

**OPINION BY:** Bruce W. Kauffman

**OPINION:**

### MEMORANDUM AND ORDER

**Kauffman, J.**

Plaintiff Carmen Rigaud ("Plaintiff"), brings this action against Defendants Judy Garofalo, Suburban Woods Health & Rehabilitation, Brandywine Senior Care, Business Health Services, Dr. Jeffrey Heebner, and Dr. James Nicholson alleging a Health Insurance Portability and Accountability Act ("HIPAA") violation (Count I); common law slander (Count II); and intentional and negligent infliction of emotional distress (Count III); intentional interference with contractual relations against De-

fendants Business Health Services, Dr. Jeffrey Heebner and Dr. James Nicholson (Count IV); wrongful termination in violation of public policy and retaliation (Count V), wrongful termination in violation of the Age Discrimination in Employment Act (Count VI), wrongful [*2] termination in violation of the Americans with Disabilities Act (Count VII), and wrongful termination in violation of the Fourteenth Amendment and 42 U.S.C. § § 1981, 1983, and 2000d, et seq., against Defendants Suburban Woods Health & Rehabilitation ("Suburban Woods") and Brandywine Senior Care ("Brandywine") (Count VIII). Now before the Court is the Motion to Dismiss Counts I, II, III and IV of Defendants Dr. Jeffrey Heebner, Dr. James Nicholson and Business Health Services (collectively "Defendants") for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the Court will grant the Motion.

### I. Background

In the Amended Complaint, Plaintiff alleges: she is a black female over the age of 40. Amended Complaint P 5. She began working at Suburban Woods as a Certified Nursing Assistant on May 25, 2000. n1 Plaintiff's Response to the Motion to Dismiss at 1. On April 8, 2003, she sustained a work related injury which made her [*3] eligible for workers' compensation benefits. Id. P 3. n2 She was referred to Dr. Jeffrey Heebner and Business Health Services for treatment. Id. P 5. On or about the same date, Dr. Heebner advised her that she was capable of returning to work on a modified duty restriction. Id. P 6. She returned to full duty on April 12, 2003. Id. P 12.

n1 In her Amended Complaint, Plaintiff alleges that she began working for Suburban Woods on May 25, 2004. Amended Complaint P 13. The Amended Complaint later alleges that she worked for Suburban Woods for approximately three years. Amended Complaint Second P 2 (see fn. 3). One of these statements is obviously incorrect. The Court will assume that the start date alleged in Plaintiff's response to the Motion to Dismiss, May 25, 2000, is the correct date.

n2 Inexplicably, Plaintiff begins renumbering her Amended Complaint after paragraph 14. Thus, this is actually the second paragraph 3. Unless otherwise indicated, any numbered paragraph referenced later in this Opinion refers to the second set of numbered paragraphs.

Page 3

[*4]

On April 25, 2003, as part of her ongoing treatment by Dr. Heebner, Plaintiff was prescribed the narcotic Darvocet. Id. PP 14-15. She alleges that she tendered the prescription at a Rite Aid Pharmacy and inquired about refills. Id. P 16. The pharmacist noted that the prescription indicated that there were refills and contacted Business Health Services to verify. Id. P 17. Business Health Services reviewed Plaintiff's medical chart, which contained a copy of the original prescription, and advised the pharmacist the no refills were authorized. Id. The pharmacist informed Plaintiff that there were no refills available. Id.

Plaintiff alleges that, on or about April 29, 2003, Dr. James Nicholson of Business Health Services contacted Suburban Woods and accused her of forging the refill authorization on the prescription. Id. P 18. n3 She further alleges that Dr. Heebner thereafter released information about this incident to her employer in violation of HIPAA's privacy rule. Id. P 19. Plaintiff claims that, as a result, Suburban Woods terminated her. Id. P 24.

n3 Plaintiff nowhere in her Amended Complaint or her Response to the Motion to Dismiss contends that the prescription was not in fact altered.

[*5]

In Count I, Plaintiff asserts a cause of action against Defendants pursuant to HIPAA, specifically the Privacy Rule (hereinafter "HIPAA's Privacy Rule"). She further alleges state law claims for slander, intentional infliction of emotional distress and interference with contractual relations claims against Defendants (Counts II, III, IV). For the reasons which follow, all claims against Defendants Dr. Heebner, Dr. Nicholson and Business Health Services arising from Counts I, II, III and IV will be dismissed.

## II. Legal Standard

### A. Fed. R. Civ. P. 12(b)(1)

[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must distinguish between motions that attack the complaint on its face and those that attack the existence of subject matter jurisdiction in fact. Mortensen v. First Federal Sav. & Loan Asso., 549 F.2d 884, 891 (3d Cir. 1977). A facial attack is considered under the same standard as a motion to dismiss under Rule 12(b)(6); all allegations in the complaint are taken to be true. Id. If the attack is factual, however, Plaintiff's allegations are [*6]

not presumed to be true. Id. The Court may look beyond the pleadings and make its own determination as to whether it has the power to hear the action. Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000). Further, the Plaintiff bears the burden of proving that jurisdiction does in fact exist. Mortensen, 549 F.2d at 891.

### B. Fed. R. Civ. P. 12(b)(6)

[HN2] When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

[*7] ## III. Analysis

### A. Count I - Violation of HIPAA's Privacy Rule

Plaintiff asserts federal question jurisdiction under HIPAA's Privacy Rule, 45 C.F.R. 160.103, et seq. However, [HN3] the existence of a private cause of action is a "prerequisite for finding federal question jurisdiction." Stephens v. High Voltage Maintenance Co., 323 F. Supp. 2d 650, 653 (E.D. Pa. 2004) (holding that the court lacked subject matter jurisdiction because OSHA did not provide a private cause of action); Smith v. Industrial Valley Title Insurance Co., 957 F.2d 90, 93 (3d Cir. 1992) (holding that the court lacked subject matter jurisdiction because the Internal Revenue Code did not provide for a private federal remedy); see also Alexander v. Sandoval, 532 U.S. 275, 286, 149 L. Ed. 2d 517, 121 S. Ct. 1511 (2001) ("private rights of action to enforce federal law must be created by Congress ..."); Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986) (finding no private cause of action under the Food, Drug and Cosmetic Act and thus no federal subject matter jurisdiction).

[HN4] While the [*8] Third Circuit has not specifically addressed the issue whether there is an express or implied private right of action under HIPAA, several other federal courts have held that there is no such right. See O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F. Supp. 2d 1176, 1179-80 (D.C. Wyo. 2001); Brock v. Provident Am. Ins. Co., 144 F. Supp. 2d 652, 657 (N.D. Tex. 2001); Means v. Indep. Life and Accident Insurance Co., 963 F. Supp. 1131, 1135 (M.D. Ala.

Page 4

1997); Wright v. Combined Insurance Company of Am., 959 F. Supp. 356, 362-63 (N.D. Miss. 1997). HIPAA's Privacy Rule itself provides specific enforcement mechanisms for aggrieved parties. See 45 C.F.R. § 160.306 (stating an aggrieved party may complain to the Secretary and that the Secretary may investigate the complaints filed under the Section). The Privacy Rule also provides an administrative process by which the Secretary may investigate and impose civil monetary penalties for a failure to comply with the Privacy Rule. See 45 C.F.R. § § 160.500 -160.570. Based on HIPAA's failure [*9] to provide for a private federal remedy and the absence of any legislative intent to create a private right of action, this Court concludes that it lacks subject matter jurisdiction over the instant matter.

Even if the Court construed HIPAA to create a private right of action, Plaintiff would be barred because she failed to exhaust her administrative remedies. HIPAA [HN5] expressly provides defendants a right to notice and a hearing before an Administrative Law Judge, and the opportunity voluntarily to cooperate with the Secretary to resolve the matter through informal means. See 45 C.F.R. § § 160.500 -160.570. Moreover, the Privacy Rule under HIPAA provides an explicit exception for disclosures made in accordance with the laws relating to workers' compensation. See 45 C.F.R. § 164.512(l) (permitting the disclosure of health information made for workers' compensation purposes without an individual's authorization). Under Pennsylvania's Worker's Compensation Act, a healthcare provider who treats an injured employee is required to report to the employer the employee's history, diagnosis, treatment, prognosis [*10] and physical findings. See 77 P.S. § 531. A provider has a continuing obligation to supplement its report as long as treatment continues. See id. Thus, even accepting Plaintiff's allegations that Dr. Heebner and/or Dr. Nicholson contacted her former employer regarding the altered prescription as true, the doctors would not have violated HIPAA.

Additionally, HIPAA provides that a covered entity may use or disclose protected health information, provided that the individual is informed in advance of the use or disclosure and has the opportunity to agree to or prohibit or restrict the use or disclosure of the information. See 45 C.F.R. § 164.510. At each visit, Plaintiff signed a consent form specifically authorizing the release to Suburban Woods of all information relating to her treatment. See Defendants' Motion to Dismiss at Exhibit B. Accordingly, Plaintiff's claim in Count I for a violation of HIPAA's Privacy Rule will be dismissed.

**B. Count II - State Law Claim for Slander**

Plaintiff alleges that she was defamed, in part, because Dr. Nicholson confirmed that the prescription that she was given differed from [*11] the one she submitted to Rite Aid. However, [HN6] a conditional privilege attaches to communications "made on a proper occasion, from a proper motive, in a proper manner, whenever circumstances are such as to lead any one of several persons having a common interest in a particular matter correctly or reasonably to believe that facts exist which another sharing such a common interest is entitled to know." Tucker v. Merck & Co., 102 Fed. Appx. 247, 254 (citing Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 706 (Pa. Super. 1995)). Here, the communications between Defendants and Plaintiff's employer related to Plaintiff's treatment and care and are therefore conditionally privileged as a matter of law. See Elia v. Erie Ins. Exch., 430 Pa. Super. 384, 634 A.2d 657, 659 (Pa. Super. 1993) (holding that the report of a doctor hired by an insurance provider to examine plaintiff was conditionally privileged as the doctor reported it only to those who had a specific interest in evaluating the validity of plaintiff's claim). Defendants had a contractual relationship with Plaintiff's employer to examine employees who sustained on the job injuries. As part of [*12] the agreement, and with the consent of the employees, Defendants reported to the employer regarding its employees' treatment. See Defendants' Motion to Dismiss at 19-20. Accordingly, Defendants' communications with Plaintiff's employer regarding her treatment, condition and prognosis are conditionally privileged.

For the foregoing reasons, Plaintiff's defamation claim in Count II against Defendants Dr. Heebner, Dr. Nicholson and Business Health Services will be dismissed.

**C. Count III - Intentional and Negligent Infliction of Emotional Distress**

Plaintiff next claims that Defendants intended to cause her emotional distress when they reported the altered prescription to her employer. She asserts that Defendants acted with reckless disregard for the truth, that their conduct was extreme and outrageous, and that the "emotional distress suffered by the Plaintiff were [sic] severe and of such a nature that no reasonable person could be expected to endure it." Amended Complaint PP 45-47. However, Plaintiff has not pled any physical injury as a result of Defendants' alleged conduct. See Hart v. O'Malley, 436 Pa. Super. 151, 647 A.2d 542 (Pa. Super. 1994) [HN7] ("it [*13] is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiff must allege a physical injury"); Rudas v. Nationwide Mut. Ins. Co., 1997 U.S. Dist. LEXIS 169, 1997 WL 11302, at *6 (E.D. Pa. Jan. 10, 1997) (dismissing claim for intentional infliction of emotional distress where the plaintiff had not alleged physi-

GP010216

cal injury). It is not enough to merely allege severe distress. Fewell v. Besner, 444 Pa. Super. 559, 664 A.2d 577 (Pa. Super. 1995) (affirming the grant of preliminary objections as to plaintiff's claim of intentional infliction of emotional distress where plaintiff failed to allege physical injury). n4

n4 Pennsylvania law likewise establishes that a claimant may not recover for negligent infliction of emotional distress in the absence of physical injury. See Rolla v. Westmoreland Health System, 438 Pa. Super. 33, 651 A.2d 160, 163 (Pa. Super. 1994).

Because Plaintiff alleges [*14] no physical injury, her claims in Count III for intentional and negligent infliction of emotional distress will be dismissed.

**D. Count IV - Intentional Interference with Contractual Relations**

Plaintiff alleges that Defendants intentionally interfered with her contractual relationship with her employer, Suburban Woods. [HN8] To state a claim for intentional interference with contractual relations, a plaintiff must establish, inter alia, the existence of a contract. Triffin v. Janssen, 426 Pa. Super. 57, 626 A.2d 571, 574 (Pa. Super. 1993). In Pennsylvania, "an at-will employee environment is the norm, absent a contract to the contrary, and thus can be terminated for ... no reason at all. An exception to the at-will employment rule will apply if an employee and employer enter into a valid contract which expresses an intention to overcome the presumption." n5 Nix v. Temple University, 408 Pa. Super. 369, 596 A.2d 1132, 1135 (Pa. Super. 1991) (finding the presumption not overcome where complaint did not

allege the employment was pursuant to a clear and definite contract, even if all of the plaintiff's allegations were taken as true); see also [*15] Ferguson v. Allstate Engineering Co., 1992 U.S. Dist. LEXIS 12752, 1992 WL 211534, at *2 (E.D. Pa. Aug. 24, 1992) (dismissing the claim for tortious interference with employment contract where the plaintiff never alleged the existence of a clear and definite contract).

n5 The Amended Complaint fails to allege any oral or written employment contract.

Plaintiff fails to allege the existence of a clear and definite contract. Accordingly, her claim in Count IV for intentional interference with contractual relations will be dismissed.

**IV. Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). An appropriate Order follows.

**ORDER**

**AND NOW**, this 2nd day of May, 2005, upon consideration of the Motion to Dismiss Counts I, II, III and IV of Defendants Dr. Jeffrey Heebner, Dr. James Nicholson and Business Health Services (docket [*16] no. 18) and Plaintiff's response thereto (docket no. 20), it is **ORDERED** that the Motion is **GRANTED**.

**BY THE COURT:**

**S/Bruce W. Kauffman**

**BRUCE W. KAUFFMAN, J.**

GP010216

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

David J. Buchanan

Plaintiff

v.

Thomas E. Gay, et al.

Defendants

CIVIL ACTION

NO.  06-711-SLR

## ORDER

IT IS HEREBY ORDERED that Defendant Kristin S. Gibbons' Motion to Dismiss is GRANTED and the Plaintiff's Petition to Award Damages is DISMISSED WITH PREJUDICE.

_____
United States District Judge

Date: _____

676850_2

## CERTIFICATE OF SERVICE

I, Martin J. Weis, do hereby certify that I have, this 16th day of February, 2007,

served a copy of the foregoing Motion to Dismiss the Petition, Brief in Support and

Proposed Order by filing it via the Court's electronic case filing system and sending it via

United States mail, postage prepaid, to:

John A. Elzufon, Esquire
Jeffrey M. Austin, Esquire
Jennifer L. Story, Esquire
Elzufon Austin Reardon Tarlov & Mondell,
P.A.
300 Delaware Ave., Suite 1700
P.O. Box 1630
Wilmington, DE 19899
*Attorneys for Thalia J. Gay*

Joseph S. Shannon, Esquire
Marshall, Dennehey, Warner, Coleman &
Goggin
1220 N. Market St., Suite 500
P.O. Box 8888
Wilmington, DE 19899
*Attorney for Thomas E. Gay, Esquire and The
Law Firm of Stumpf, Vickers & Sandy*

John Francis Brady, Esquire
Brady, Richardson, Beauregard &
Chasnov, LLC
10 E. Pine Street
P.O. Box 742
Georgetown, DE 19947

Linda Carmichael, Esquire
State of Delaware Department of Justice
    Carvel State Office Building, 6th Floor
820 North French Street
Wilmington, DE 19801
*Attorney for the Honorable M. Jane Brady,
the Delaware State Police and the Delaware
Family Court of the State of Delaware*

David J. Buchanan
34806 Hudson Road
Laurel, DE 19956
*Pro Se Plaintiff*

_____
Martin J. Weis, Esq. (4333)

676850_2