In The United States District Court
For The District of Delaware

David J. Buchanan
  Plaintiff/Petitioner Pro Se

CA No. 06-711-SLR

V.

Thomas E. Gay, Esquire,
Delaware State Police,
Delaware Family Court, et al
  Respondents



FILED

AUG 2 8 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Motion for Writ of Mandamus to Protect Equitable
Rights to Real Estate Pursuant to Federal Rule of
Procedure 60(b)(3) and 60(b)(6) and 28 USCS 1651

Comes Now, Petitioner, David J. Buchanan, and hereby
moves this Honorable Court for relief pursuant to Federal
Rule of Procedure 60(b), and 28 USCS 1651, and in
support, state, claim, and aver as follows:

1) Pursuant to 28 USCS 1651, The Courts of United States
have inherent statutory power and authority to enter such
orders as may be necessary to enforce and effectuate
their lawful orders and judgments, and to prevent them
from being thwarted and interfered with by force, guile,
or otherwise whether or not the person or

the persons charged with the violation of judgment or decree was originally a party to the action." Mississippi Val Barge Line Co. v. U.S.D.C. Mo 273 F. Suppl. See Bankruptcy Rule 3002(c)(3).

2) Where Equitable relief is sought, Court has power to frame appropriate and effective relief, ancillary to a proper order pursuant to 28 U.S.C.S. 1651. Bethlehem Mines Corp v. United Mine Workers of American 344 F. Supp 1161.

3) Power conferred by 28 U.S.C.S 1651 extends to persons who through not parties to original action or engaged in wrongdoing are in position to frustrate implementation of court order or proper administration of justice and encompasses even those who have not taken any affirmative action to hinder justice U.S. v. New York Teli Co 54 L. Ed 2d 376.

4) Pursuant to Federal Rule of Civil Procedure 60(b)(3) and Rule 60(b)(6), the Court can reopen a case that has been closed, where fraud has become apparent, and where matters not disclosed by parties that effects the judgment or relief sought in the original complaint has becomes available, as a result of parties of the original suit. See attached transcripts F.C. March 13, 2008, and real estate settlement statement and real estate contracts. See attached transcripts dated March 13, 2008.

5) On a showing that Delaware Family Court has denied due process when excluding Petitioner from his land,

and state agencies have later joined in ejectment of Petitioner from his land without compliance with Family Court, or U.S. District court orders, then, U.S. District Court has jurisdiction to issue injunction pursuant to 28 USCS 1651, and relief may also be available pursuant to 42 USCS 1483, Family Court order dated 7/16/03 attached. Relief pursuant to BR 3007(d)(3)

6) Where it is undisputed that State Police and Mr and Mrs. Richards violated Petitioner's constitutional rights when ejecting Petitioner from his property, it is also undisputed that Family Court refuses to provide relief of such acts as stated on Family Court order of limitations dated 7/16/08. Attached Ext A

7) As stated in transcripts of Family Court hearing dated March 13, 2008, at Pg 138, Mr. Richards states "they contacted me on January 3, 2008 to say that you had illegally parked a tractor trailer on the street. They had lights going on. ..." Pg 139 LN 4-5 "The Marshall service did not contact me. I said the State Police contacted me". Pg 136 at 14-16 "on the 1st arrest of the 3rd when Mr. Buchanan was removed, the State Police called us and we came in on the 4th." There is ample cause to believe State actor's coordinated with Richards to impair on Petitioner rights, that there was a planned coordinated effort involving counsel, where motions from counsel were timed to the day with Petitioners arrests, Ext B

③

8) On a showing that Family Court orders, as well as U.S. District Court orders require a listing then a Contract of Sale to be presented to Petitioner for signature, there is a showing that Family Court has not complied with the conditions of its previous orders nor the ~~org~~ orders of the U.S. District court CA. No. 06-711 SLR and 07-34 SCR. There has not been an listing nor contract of sale signed by the Petitioner or the Court, and attached settlement statements are <u>not</u> signed by the Clerk of Family Court <u>nor</u> Petitioner. Note: contract of sale of properties presented on motion to Family Ct. Ex+ B expired on May 15, 2008 and no evidence of escrow had been deposited. See Pg 16/21 & 20/22 of for contracts, where no check number has been recorded. Relief available pursuant to 42 USCS 1983.

9) Where Mr. Richards indicates that he was made aware in 05, of a foreclosure document while riding to Bankruptcy Court of Delaware, CA No 04-12419 JKF, with Barbara H. Buchanan (Petitioner's Ex-wife), his statements indicate that Respondant of this action was providing notice in 05 of foreclosure, which shows his impairment of contracts in underlying cases, and lack of candor, bad faith, and the intent to give wrongful impression to courts. Here there is cause to Reopen pursuant to Rule 60(b)(3) & 60(b)(6). See transcripts Pg 143. Thomas E Gay Esq, for Richards.

10) Where Delaware Family Court has issued order and directives that further violate due process pursuant

to 14th Amendment of Constitution, as previously claimed in this suit, and where Family Court fails to enforce its own orders when such is brought before the Family Court at hearing, there is cause to show Family Court has abrogated its 11th Amendment immunity by failing to provide due process and by depriving Petitioner's rights enforceable by mortgage contract and deed, where violation of 14th Amendment is punishable by suit pursuant to 42 USCS A33. Hirschling V. Lake Forest School Dist. 687 F. Supp 927. See transcripts March 13, 08.

11) On a showing that Respondents engaged in unlawful conduct to displace Petitioner from his land, then have failed to defend such conduct in Chancery CA No 3544, and have not responded to Subpoena served on Respondents pursuant to Chancery Rule 45, and Family Court Rule 45, all allegations presented on suit filed in Superior Court containing suit filed in Chancery 3544-MG, goes undenied. See attached Petition for Writ of Ejectment, and for Damages Resulting from Tort, Trespass, Arrest, Seizure and Defamation, filed with Delaware Superior Court on or about July 30, 2008. Subpoena attached, No docket # for Superior Court.

12) As originally claimed in complaint Plaintiff's rights pursuant to U.S 4th and 14th Amendments have been violated by State Police, and now after State Police have enjoyed immunity, they have continued to violate such rights while acting with a Military Police Officer (David J. Richards) under color of law, with Nexus, to promote acts undisclosed (insurance for police and attorneys, acts a waiver of immunity)

⑤

to these proceedings at the time of adjudication.
See transcripts attached, Pg 94, -103. See U.S. v. DC. 459 FSupp 1620.

13) As a result of Respondents wanton, negligent, willful,
and malicious intent, prior to and while ejecting Petitioner
from his property, and other associated acts, that are
now provided by testimony of March 13, 2008, showing
rights violations by State and Federal actors, with
nexus, Petitioner has right to relief in the form
of punitive, and compensatory damages as requested
in original complaint, and where State actors have
failed to provide post-deprivation relief, comply
with Family Court orders, and/or attempt to correct
damages in any way, Petitioner is due relief pursuant
to equal protection clause of 14th Amendment, through
claim pursuant to 42 USCS 1983, 1985. See attached
Chancery Court Complaint No 3544-MG., and transcripts Pg 110-112.

14) State Police Respondents while enjoying immunity
from tort by U.S District Court, go to later abrogate
such immunity by not providing equal protection of law
pursuant to 14th Amendments due process clause, when as
stated transcripts Pg 121, ln 5-14, Pg 129 ln 3-21 & Pg 130, 1-4

15) Where Respondent together with Federal Police Officer
with personal interests, deprived Petitioner of firearms,
document, privileged material, computers, data, livestock,
money, heirloom, ect, without legal claim, warrant, court
order, subpoena, or any other right to siezе, Respondents
have violated Petitioner's 2nd, 4th, 5th, 14th Amendment

rights, where relief is available pursuant to 42 USCS 1983, and 1985, and on a showing that such violations were intentional, under color of law, in violation of an identified liberty or property interest protected by the due process clause, and deprived plaintiff's rights secured by Constitution or Federal statutes "under color of State law" showing significant State involvement in the action through an officer of the State Police making such action "fairly attributable to the State," and "shocks to conscience." Relief is available on motion to reopen pursuant to F.R. 60(b), where testimony and documents where not available to the Petitioner or the Court prior to the Date of this motion. Howard V. Malac 220 F. Supp. 2d 132.

16) Where Delaware State Police William A. Wallace, and Federal Military Police David J. Richards, while acting in the official capacity of State and Military Police, exercised coercive power, and/or has provided such significant encouragement, either overt or covert, now know to have occured prior to 1996, to cause the removal of Petitioner from his deeded land, without consideration to documents and facts made available to them and other Respondents to include Delaware State Department of Justice, State Police, and Family Court. See attached transcripts. 42 USCS 1983, 1985

17) On a showing that Respondents have continued to trespass against Petitioner, by attempting to transfer real estate title without notice to Petitioner, or the jurisdictional court, in violation of Delaware statutes

25 Del.C. 315, 25 Del.C. 5704, 5707, 6702, 5313, then white acting under color of law, conduct can fairly be attributed to the State in violation of 42 USCS 1983, 1985.

18) Where the U.S. District Court has authority and duty to protect and effectuate its prior judgments, and has jurisdiction to issue equitable remedies for seizures of person and property, including arrest, attachment and replevin pursuant to Fed Rules of Civil Procedure Rule 64, then injunction may issue providing relief, and declaratory judgment awarding damages, return of property, money, and chattels may issue, pursuant to 28 USCS 1651, 42 USCS 1983, Fed Rule 60(b).

Wherefore as set forth in this motion, and as evidenced by supporting documents attached hereto, matters that occured prior to the original suit filed, for which evidence and testimony were not available to Plaintiff at the time of his original complaint, were withheld from proceedings by Respondents, and were recently made available to be filed by Petitioner, cause to reopen proceedings is before the Court pursuant to Rule 60(b)(3) and Rule 60(b)(6), where lack of candor by both State and private counsel shows bad faith. Here where Plaintiff has a reasonable likelihood of ultimate success on the merits of his claims, will suffer irreparable injury if the relief sought is not granted and the injury to Defendants or others, if any, will be far less than

the actions of the Respondents from which Plaintiff seeks
to be protected, and prays that the Court provide immediate
injunctive relief preventing any further trespass on lands
of Plaintiff or tort against his person, property, liberty,
and/or privacy, and further stay any and all sale, taking
or transfer of real estate without due process and
notice to Plaintiff, or for which violates his rights.


Dated Aug 25, 2008

David J. Buchanan          231392
SCI P.O. Box 500
Georgetown, DE 19947

In The United States District Court
For The District of Delaware

David J. Buchanan
   Plaintiff, Pro Se

V.

Thomas E. Gay, Esquire
Delaware State Alice
Delaware Family Court, etal
   Respondents.

C.A. No. 06-711-SLR

## Affidavit of David J. Buchanan

Be it remembered, that on this 25th day of August, 2008, personally came before me, the subscriber, a notary public for the State of Delaware, David J. Buchanan, the Plaintiff in the foregoing Motion for Writ of Mandamus to Protect Equitable Right to Real Estate, to compel District Court to provide injunction and reopen the captioned case; known personally to me to be such, who being sworn according to law did dispose and say that the facts contained in the petition are true and correct to the best of his knowledge and belief and are not made out of levity or by collusion.

David J. Buchanan

Sworn and Subscribed before me 25th day of August 2008.

Judith Ann Lederman
Notary Public

JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

In The United States District Court
For The District of Delaware

David J. Buchanan                          C.A. No. 06-711-SLR
Plaintiff, Pro Se


V.


Thomas E. Gay Esquire
Delaware State Police
Delaware Family Court, etal
    Respondents


## Order of Permanent Injunction

Upon Motion and Verified Complaint for Injunctive Relief
the Court having considered the Motion for Writ of Mandamus
to Protect Equitable Rights to Real Estate, as well as
jurisdiction pursuant to 28 U.S.C. S.1651, and it further appearing
that if Respondents are not restrained from impeding Plaintiff's
use of his land, and his rights to real property ownership,
that Plaintiff will be irreparably injured and suffer loss
of equitable claim to real estate and liberty.

It Is Hereby Ordered, this ___ day of ___, 2008.
as follows;

1) Respondents and their assigns are hereby permanently
restrained from impeding Plaintiff's use of land and
buildings located at 34806 Hudson road, Laurel, Delaware,

and the lands contained on Justice road, near trap pond, with 90 acres more or less, and are further restrained from interfering in any legal activity of David J. Buchanan or his assigns, to include the refinance and deeding of such lands.

2) This Order shall become effective upon exicution

3) Respondents shall account for and return all property, livestock, equipment, documents, money, food, and title to lands, taken from Plaintiff's person, land, or business, within 24 hours of service of this Order.

4) Respondents and their assigns shall pay all costs and damages associated with and to effecuate this Order.

5) Respondents shall provide all discovery requested by subpoena filed in Delaware Chancery, and/or by request for discovery previously filed in this action.

It is so ordered.

_____

Judge

Dated:



1              FAMILY COURT STATE OF DELAWARE

2

3    BARBARA RICHARDS

4    VS.                              CS94-3107

5    DAVID BUCHANAN

6

7                        .

8

9              A hearing in reference to the

10   above-entitled matter was held on March 13, 2008

11   before Commissioner Southmayd.

12

13

14

15

16

17

18

19

20

21   TRANSCRIBED BY:  Paula J. Eliopoulos

Buchanan v. Richards Hearing - 3/13/08

Page 2

1                    PROCEEDINGS
2         THE COURT:  This morning before the Court
3    is a petition for protection from abuse filed by
4    Barbara Richards versus David Buchanan.
5         Today Ms. Richards is represented by
6    Glendis Gibson.  And Mr. Buchanan is self-represented.
7         Ms. Gibson, are you prepared to proceed
8    today?
9         MS. GIBSON:  I am, Your Honor.
10        I do have a preliminary matter to take up
11   whenever the Court is ready.
12        THE COURT:  Yes.  What is that?
13        MS. GIBSON:  Your Honor, Mr. Buchanan
14   served me with a subpoena yesterday.  I would like to
15   make an oral motion to quash this subpoena.  The
16   subpoena was directed towards myself in connection
17   with this proceeding.
18        It requests a list of 23 various and
19   sundry items having to do with a prior ancillary
20   matter that had been pending before this Court.  I did
21   not represent Ms. Richards in that matter.

Page 3

1         My involvement in this case came as a
2    result of an appeal of an eviction order.  I don't
3    have any of this information.  I don't think it's in
4    any way, shape or form relevant to anything pending
5    before Your Honor.
6         And also, I don't know if this was a
7    mistake of the Court or the process server, but also
8    attached to the family court subpoena I received were
9    subpoenas from the Chancellory court requiring me to
10   produce documents to the family court.
11        THE COURT:  Let me see.  I don't think I
12   have a copy.
13        MS. GIBSON:  They are the last two.  It
14   was a subpoena addressed to myself, as well as -- I
15   can't remember if the second subpoena is to my client
16   or to another individual.  I've been served with, I
17   think, six subpoenas in the last two days.
18        THE COURT:  Let's take these things one at
19   a time.  Mr. Buchanan, what is this David Buchanan
20   versus William Wallace, Delaware State Police and
21   David Richards.

Page 4

1         Does that have anything to do with today
2    or did you get some subpoenas for some other
3    litigation?
4         MR. BUCHANAN:  Your Honor, there's a case
5    pending which Ms. Gibson has been authorized by
6    Chancellor Court order to be served for Mr. Richards,
7    a United States resident, for taking property from my
8    residence and my place of business.
9         THE COURT:  So this has to do with a
10   Chancellory Court action?
11        MR. BUCHANAN:  Yes, Your Honor.
12        And it was accompanied with the process
13   server to -- for economy of process and the
14   jurisdiction of this court involving a quash of that
15   subpoena in Chancellor, I do not believe it pertains.
16        THE COURT:  I wouldn't have any
17   jurisdiction to quash the Chancellory Court subpoena.
18   I guess you've been served with whatever it is.
19        MS. GIBSON:  And, Your Honor, I've taken
20   that up Chancellory Court.  My only point to bring it
21   up to Your Honor is that it was all jumbled in with

Page 5

1    all of the other items that I received.
2         THE COURT:  But it's irrelevant to what
3    we're doing today.  It's just another piece of paper
4    that has something to do with something else.
5         Okay.  And the other thing.  Sir, how is
6    this list of items, 23 items relevant to today's
7    proceeding?
8         MR. BUCHANAN:  Counsel represents Barbara
9    Richards, formerly Barbara Buchanan in the matter
10   before this Court and before Your Honor on child
11   custody -- or child --
12        THE COURT:  Support?
13        MR. BUCHANAN:  Support issues, and in
14   other matters in this Court for support and property
15   division.
16        It has become evident in the Court record
17   that Ms. Richards has not presented a proper financial
18   statement.  And in the process to bring us here, Ms.
19   Gibson has filed a motion, I think, it's under Rule 70
20   or under Rule 11 to cause this court to cause me to be
21   excluded with an eviction order from the Family Court

2 (Pages 2 to 5)

Buchanan v. Richards Hearing - 3/13/08

Page 6

1  to effectuate a prior order.
2      Ms. Gibson at that time has knowledge that
3  items not before this Court for lease of the property
4  for Buchanan Farms and that there was a contract of
5  sale on Ms. Gibson's desk. The lease for -- evidence
6  of the lease and evidence that the contract of sale
7  between Barbara and I and Barbara's not disclosing her
8  address, changes in income and so forth. Ms. Gibson,
9  as her attorney, is -- has withheld information
10  pertinent to this hearing.
11      THE COURT: Well, the gist of this case,
12  as I understand it so far, is that you were ordered
13  off these properties by Judge Hendrickson. I'm going
14  to take evidence on that, but that's the gist of the
15  allegation.
16      And that you never the less returned. And
17  I have to determine today, unless I hear more, of
18  course, whether there is such an order. Whether you
19  did return, and whether your return constituted
20  domestic violence. As I understand this coming
21  through the door. Maybe Ms. Gibson will enlighten me

Page 7

1  more.
2      But how will this -- the production of
3  this information help me with those questions?
4      MR. BUCHANAN: The information that I
5  requested from Ms. Gibson is a record of Barbara's
6  past history on reporting matters that are pertinent
7  in accord to these matters.
8      Ms. Gibson in possession of those, or
9  having knowledge of the correct information shows that
10  she wrongfully subpoenaed or petitioned this Court to
11  have me evicted from the property. Went in there
12  knowing that there's -- this Court has recognized
13  Buchanan Farms lease on a stay of bankruptcy -- this
14  Court has recognized the -- on stay of bankruptcy for
15  personal check --
16      THE COURT: So, are you saying that if
17  only this information had been disclosed -- all of
18  this information had been disclosed at the time and
19  the way that it should have, that Judge Hendrickson
20  never would have ordered you off the property?
21      MR. BUCHANAN: That's probably correct,

Page 8

1  Your Honor.
2      THE COURT: That's why -- if I get all of
3  this information then I'll go, geez, Judge Hendrickson
4  was wrong.
5      MR. BUCHANAN: But your calculations --
6      THE COURT: And if he had only known all
7  of this, he never would have put Mr. Buchanan off the
8  property, he would have let him stay there.
9      MR. BUCHANAN: That's probably correct,
10  Your Honor. Because Judge Hendrickson doesn't have
11  jurisdiction, nor the Family Court have jurisdiction
12  to evict a tenant of a farm property. It's third
13  party, and there's no jurisdiction of this Court over
14  that.
15      Utility bills and everything related to
16  that property, and all documents filed for years and
17  even going -- utilities going back to the non 911
18  address evidence Buchanan Farms is the sole occupant
19  of that property.
20      THE COURT: Okay.
21      MR. BUCHANAN: Now, if Ms. Richards

Page 9

1  wrongfully proceeded in this court with a fraudulent
2  financial status and that includes her living on
3  Bowling Air Force Base during a period of child
4  custody, child -- property division and child support
5  proceedings where her income increases nearly $24,000
6  a year for living off base.
7      And she reported a wrongful address
8  knowingly to this Court, the Washington, D.C. courts,
9  the Washington U.S. District Court, the Bankruptcy
10  Court and the superior court, and the U.S. District
11  Court on appeal in Delaware.
12      Mr. Tyler was ordered -- and there's
13  transcripts in the record of the Court, was ordered to
14  file a claim for Ms. Buchanan even though -- from
15  bankruptcy, even though it would be considered late
16  and non-secured.
17      And that's on --
18      THE COURT: The motion to quash the
19  subpoena is granted however, if information -- with
20  the caveat that, I guess it's possible I will hear
21  evidence during this proceeding that I'm not

3 (Pages 6 to 9)

Buchanan v. Richards Hearing - 3/13/08

Page 10

1  anticipating that would cause me to reconsider that.
2        MS. GIBSON: Your Honor, if I might just
3  address a few things that might clarify for Your
4  Honor.
5        THE COURT: Okay.
6        MS. GIBSON: Number one, I do not believe
7  there is any legal entity of Buchanan Farms, Inc. that
8  is operating. It is just not a legal entity. I
9  believe it is a dissolved corporation or a corporation
10 whose franchise taxes haven't been paid, whatever.
11       But Judge Hendrickson's orders excluded
12 Mr. Buchanan from the property. It didn't have
13 anything to do with Buchanan Farms. It's Mr. Buchanan
14 who repeatedly over and over and over again will not
15 obey this Family Court's orders.
16       Your Honor, I would ask that the Court
17 could at this point take judicial notice of the orders
18 of this court excluding him.
19       THE COURT: Well, I will. I'm going to
20 let you present all of that. But I'm just addressing
21 this -- your motion to quash the subpoena. And I'm

Page 11

1  granting your motion to quash on the caveat, though,
2  that I suppose it's possible I will hear evidence
3  during this proceeding which would cause me to revisit
4  it.
5        MS. GIBSON: And I want Your Honor to know
6  there is no bankruptcy pending anywhere, been
7  dismissed. Buchanan Farms is not allowed to file for
8  two years.
9        Mr. Buchanan has no bankruptcy. I don't
10 want these issues to be clouded by what is --
11       MR. BUCHANAN: Objection, Your Honor. It
12 is clouded. It's part of the court record. It is
13 part of what Judge Hendrickson relied on his order to
14 issue. And it has -- with the pleadings to evict me
15 from the farm --
16       THE COURT: Mr. Buchanan, my essential
17 finding here is that it is highly unlikely I would
18 find my (inaudible) position in this proceeding that I
19 would be3 able to find that Judge Hendrickson was
20 without authority to do something.
21       MR. BUCHANAN: Your Honor, the statute of

Page 12

1  Delaware does not permit this court to evict or
2  exclude. It only (inaudible) --
3        THE COURT: I do not have the authority to
4  hear an appeal.
5        MR. BUCHANAN: I understand, Your Honor.
6  The appeal over -- it's across the street on appeal.
7        THE COURT: Judge Hendrickson rules on my
8  decisions, I don't rule on his.
9        MR. BUCHANAN: I filed a timely appeal
10 across the street for Judge Hendrickson's order for
11 eviction.
12       THE COURT: And if you disagree with my
13 decision today, specifically with regard to this
14 ruling I just made or whatever rulings I make
15 entirely, you can appeal those.
16       And if the -- I'll call it for lack of a
17 better of term for the moment, the eviction order is
18 overturned at some point and I find that you violated
19 it here and relied on that in some way, maybe we will
20 be revisiting this as well.
21       I don't see as a threshold issue, that I

Page 13

1  will be able to rule on your behalf merely on the
2  question of-- on the basis of Judge Hendrickson should
3  not have issued that order.
4        MR. BUCHANAN: I will go with that, Your
5  Honor. But, the court should recognize that for me to
6  occupy a play of employ is not -- it's not violating
7  an eviction order.
8        And I believe the Court gave the eviction
9  order to allow the listing and selling of a piece of
10 property, not to displace me from my home, residence
11 and business.
12       THE COURT: Well, that's an issue that
13 we'll get to. I'm only ruling on the subpoena at the
14 moment.
15       Motion to quash the subpoena is granted.
16       Any other opening issues?
17       MS. GIBSON: By way of opening, Your
18 Honor?
19       THE COURT: Well --
20       MS. GIBSON: I'm sorry, it's a little hard
21 to hear.

4 (Pages 10 to 13)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 14

1    THE COURT:  I'm sorry.  They're doing
2  construction.
3    MS. GIBSON:  I have no other preliminary
4  matters.
5    THE COURT:  There is a motion that's been
6  filed by John Sandy on behalf of Tom Gay.  Apparently
7  Mr. Gay has been subpoenaed as well.
8    And I suppose you would be calling Mr. Gay
9  as a witness in your case in chief, Mr. Buchanan, so
10  I'll address that issue when we get to your turn,
11  about whether or not it's appropriate to call Mr. --
12  whether Mr. Gay is an appropriate witness.
13    MR. BUCHANAN:  Your Honor, that order has
14  not been signed to quash that subpoena; correct?
15    THE COURT:  I have not.  No.
16    MR. BUCHANAN:  Okay.  Rule 45 requires him
17  to be here.
18    THE COURT:  I instructed my staff to have
19  Mr. Gay remain at his office, a hundred yards away,
20  until we get to that.  I don't want to crowd the
21  lobby.

Page 15

1    For example, if Ms. Richards fails to
2  prove her case in chief and you would move to dismiss,
3  there would be no reason for me to ever get to that
4  motion.
5    MR. BUCHANAN:  Yes, Your Honor.
6    THE COURT:  Because it's still an open
7  issue, the third problem with what I said does the
8  violation of the eviction order constitute domestic
9  violence.
10    MR. BUCHANAN:  Your Honor, I'd like to
11  reserve my right to motion this court to dismiss
12  following the testimony.
13    THE COURT:  Okay.
14    Now, opening statements.
15    MS. GIBSON:  Your Honor, if you have this
16  court's file before you then you are well aware that a
17  great deal of litigation has ensued between these
18  parties.
19    And I would like to focus particularly  on
20  orders of this Court, the first of which was the April
21  4th, 2006 order resolving the ancillary matters

Page 16

1  between these parties.
2    And I would ask that Your Honor take
3  judicial notice of these orders as I set them forth.
4    THE COURT:  I only have, if I need to go
5  back further, let me know -- let us know so I can get
6  the box.
7    The orders, the two folders that I have go
8  back to approximately August of 2007.  Do I need to go
9  back further than that?
10    MS. GIBSON:  There are two prior orders
11  that which are significant.
12    MR. BUCHANAN:  Your Honor, there is an
13  order that is decided, I believe, or heard on February
14  7th of 2006, a preliminary hearing where Mr. Gay
15  stipulated that he would have appraisals of the
16  property performed.
17    THE COURT:  Those orders -- that's why
18  we're bringing down the files, so --
19    MR. BUCHANAN:  That's one of them.  And
20  the other one is the hearing from March 21st, 2006,
21  Your Honor.

Page 17

1    THE COURT:  Okay.  So there's some 2006
2  matters therefore I don't necessarily have all of the
3  orders I need to look at then.
4    MS. GIBSON:  Do you want to wait until you
5  have them?
6    THE COURT:  No.
7    MS. GIBSON:  Your Honor, as I said, the
8  first order I think that precedes any beginning sort
9  of understanding of this case is the April 4th, 2006
10  order.  That is the order resolving the parties'
11  ancillary matters.
12    Of most significance is that the parties
13  owned two pieces of real property.  One the property
14  located at 34806 Hudson Road, Laurel, Delaware, 19956,
15  that's property number one.
16    And I believe there is a residence on that
17  property.  That is the property to which Mr. Buchanan
18  is claiming Buchanan Farms, Inc. operates from and as
19  his residence.
20    There is a second parcel, a 90  acre
21  parcel on Road 449 in Laurel.  And that's parcel

Page 18

1  number 232190046.03.
2      That April 4th, 2006 order provided that
3  the properties would be sold and the parties were to
4  cooperate with that sale.
5      Then begins the saga that brings us here
6  today. Mr. Buchanan did not cooperate in any way,
7  shape or form with the sale of those properties,
8  resulting finally in Judge Hendrickson's order.
9      MR. BUCHANAN: Excuse me. Objection, Your
10  Honor. As I (inaudible) opening statements, Glendis
11  Gibson has on her desk in possession a contract of
12  sale for Buchanan Farms made to her. And she has her
13  --
14      THE COURT: This is her opening statement.
15  No objections are appropriate.
16      MR. BUCHANAN: All right. Sorry.
17      MS. GIBSON: On February 7th -- I'm sorry,
18  February 5th, 2007, Judge Hendrickson signed an order,
19  an order I would like Your Honor to take judicial
20  notice of, providing that the Respondent, David J.
21  Buchanan, is hereby evicted and excluded from those

Page 19

1  two pieces of property.
2      That particular order, that order, not the
3  ancillary order of April 4th, 2006, but the order of
4  February 5th, 2007, was appealed to the Supreme Court.
5      The Delaware Supreme Court affirmed that
6  order on August 6th, 2007.
7      MR. BUCHANAN: I'm a little lost. Which
8  order did the Supreme Court affirm?
9      THE COURT: She's just saying that the
10  Supreme Court affirmed the February 5th, 2007 order
11  saying that you were evicted and excluded and that
12  they did that on August 6th, 2007.
13      MS. GIBSON: Yes.
14      MR. BUCHANAN: I did not appeal that
15  order, Your Honor. I don't know how they would --
16      THE COURT: Well, I'll have to look at the
17  file and figure that out.
18      MS. GIBSON: There was additional legal
19  wrangling with respect to how this property was going
20  to be sold. The Court had to sign orders ordering the
21  clerk to sign Mr. Buchanan's name to a contract of

Page 20

1  sale.
2      That sale never came about due to
3  interference, we believe, from Mr. Buchanan. I also
4  believe it's important to note for the court that
5  Buchanan Farms, Inc., again, is not a viable entity at
6  this point.
7      MR. BUCHANAN: Your Honor, I'd like to --
8      THE COURT: Sir, it's not appropriate to
9  object. This is an opening statement.
10      MR. BUCHANAN: Thank you.
11      MS. GIBSON: As I said, the February 5th,
12  2007 order excluding Mr. Buchanan from the property
13  was affirmed by the Supreme Court. There was a
14  subsequent motion for clarification of that order
15  requesting law enforcement to do whatever was
16  necessary to enforce that order to get Mr. Buchanan
17  off the property.
18      There were three additional orders that
19  Judge Hendrickson signed, all dated October 24th,
20  2007, clarifying what the status was.
21      Mr. Buchanan filed a bankruptcy proceeding

Page 21

1  that stayed anything family court was doing for a
2  brief period of time. And I believe he filed it in
3  the name of Buchanan Farms, Inc.
4      However, he didn't do it property.
5  Bankruptcy Court dismissed it and it's my
6  understanding there's a two year bar prohibiting any
7  filing with respect to that action.
8      Thereafter, Judge Hendrickson re-instated
9  those orders on January 3rd, 2008, requiring that all
10  of his previous orders be carried out.
11      And if it's helpful, Your Honor, in any
12  way, I filed a motion to dismiss that contained copies
13  of all of those orders.
14      So we are proceeding -- Ms. Buchanan has
15  filed her petition for protection from abuse because
16  in small part, and Your Honor will hear evidence of
17  this, the police did assist in removing Mr. Buchanan
18  from the property in January.
19      Mr. Buchanan has made threats about what's
20  going to happen if he's removed from the property.
21  When Mr. Buchanan was removed from the property on

Page 22

1 January 3rd, somewhere in the range of 13 loaded
2 weapons were found in his residence. When he was
3 arrested again for being on the property on the 26th,
4 another loaded weapon -- loaded weapon was found on
5 the property.
6        Mr. Buchanan -- it's a constellation of
7 actions on his part that has led to, I think a very
8 real and viable fear on the part of my client that
9 pursuant to 10 Delaware Code, Section 1041E, he
10 continues to trespass on property from which he's been
11 excluded by court order.
12        There is no question that his conduct
13 would cause a reasonable person to feel threatened or
14 harmful.
15        He has filed multiple, multiple, multiple
16 court actions here in the family court, in the
17 Chancellory Court, in the Superior Court. They are
18 either directed at Ms. Richards, at her counsel, at
19 her new husband.
20        Just this week I received an order from
21 the Superior Court where they found that his filings

Page 23

1 against me were malicious, frivolous and dismissed.
2        Judge Hendrickson has also signed two
3 orders providing that Mr. Buchanan is not to file any
4 other actions in this court absent him making a
5 threshold finding, because he has found that his
6 filings here in this court are frivolous and without
7 real content.
8    ·    So, Your Honor, I believe that after you
9 hear the evidence in this case there will be no
10 question that Mr. Buchanan continues to violate that
11 particular aspect of the statute that he's
12 trespassing. It's been so clear that he's been
13 excluded by court order.
14        And his conduct is very threatening and
15 causing a very, very reasonable fear in my client and
16 it's definitely an act of abuse within the purview of
17 the statute.
18        THE COURT: Okay. Now, Mr. Buchanan, you
19 may make a statement.
20        MR. BUCHANAN: Your Honor, I will show
21 that the -- Ms. Richards' complaint lacks cause before

Page 24

1 this Court, so it should be dismissed. I'll reserve
2 the request for dismissal until the end of the
3 proceeding.
4        My ex-wife admits to violations in her
5 pleadings both here and before the Supreme Court for
6 taking and -- taking property, personal property and
7 property that does not belong to either me or to her,
8 from a residence which I have been excluded from,
9 which is also -- which is a non-viable order from the
10 Family Court, where the Family Court does not have
11 jurisdiction to exclude, evict or to take property.
12 It can only define and assign by statute law.
13        And what property that has been assigned
14 to me under Judge Hendrickson's order dated March --
15 or April 4th, 2006. The property that was on the --
16 the property contained in that residence and on both
17 pieces of property, tractors, equipment, was given
18 consideration during the property division proceeding.
19        All of the contents of that property were
20 considered mine, and all of the property in the D.C.
21 residence was considered Barbara's.

Page 25

1        I will show the court that an eviction
2 exclusion of me from the residence does not allow --
3 is not a viable order to exclude me from my office of
4 business, or my place of employ.
5        Buchanan Farms is -- I don't have proof of
6 that today, but the court record reflects -- excuse
7 me. The court record reflects, the Family Court
8 recognized the bank proceeding under Chapter 12 for
9 the U.S. District Court, making that a recognizable
10 entity. The entity has paid all of its taxes, and all
11 of the records have been confiscated on why Ms.
12 Richards and her husband on January 4th, 2008.
13        An eviction order does not -- of me, does
14 not allow trespass by another on that property.
15 There's no order from this Court allowing Ms.
16 Richards, Barbara Richards, David Richards or anybody
17 acting on their behalf to remove property, disturb or
18 cause waste.
19        The only matters before this court
20 jurisdictionally would be Ms. Richards -- between Ms.
21 Richards being a former spouse and myself for her

Page 26

1  disturbing and not following the court property
2  division proceeding.
3       She has trespassed on my property nearly
4  five years after divorce and removed property
5  belonging to me and others, including the corporation
6  Buchanan Farms.
7       She has removed weapons, she has removed
8  computers, documents, every document ID, everything --
9  all money, wallets, keys.  She has searched private
10  property of a locked vehicle and removed fishing
11  equipment, spear guns, licenses for employ, licenses
12  for anything proving my identity.
13       And has confiscated everything belonging
14  to me, leaving me without any way of supporting
15  myself.  She has taken my professional licenses from
16  nuclear testing.  She has taken my dive licenses.
17  She's taken my driving license, she's taken my
18  physicals.  She's taken everything from that
19  residence that belongs to me.
20       That's an act of abuse.  She has caused me
21  to lose a contract for employ with my farm and has

Page 27

1  worked tightly with the State Police and the U.S.
2  Marshall service -- had the U.S. Marshall Service
3  remove me on an outstanding bench warrant for
4  allegations that she has submitted to the Court in
5  D.C., non-jurisdictional court in D.C. to have me
6  arrested on a bench warrant and then immediately
7  entered the property.
8       And then later that month on the 26th in
9  response to a filing of Rule Show Cause for violation
10  of Family Court order, she had the State Police come
11  and arrest me not from my property, but from the
12  neighbor's property, walking in the field, with
13  helicopters and guards and 13 or 14 police officers
14  surrounding the whole section.
15       This is unusual abuse of public safety,
16  State Police, and it shows Barbara's intent to place
17  me in indigency.
18       I'll show that she's continuously
19  harassing me.  Her husband and her filed with a
20  non-jurisdictional court in D.C. for a protection from
21  abuse order to keep me from attending my adult child's

Page 28

1  high school graduation, where she informed a gauntlet
2  of people in front of the church and prevented me from
3  entering the church graduation of my daughter.
4       She has prevented visitation of my
5  daughter since the last time I've seen you, and has
6  continued to harass me with the State Police, the U.S.
7  Marshall Service, the Court -- Washington, D.C. Court,
8  and has failed in the process to file a claim in
9  bankruptcy court.
10       The Bankruptcy Court ordered her attorney
11  to file a claim.  I have filed bankruptcy and they had
12  successfully delayed the proceedings in bankruptcy for
13  going on two and a half years.
14       I filed bankruptcy on August 24th of 2004,
15  and her attorney was ordered to file a claim subject
16  to the property division and the attorney fees for
17  this court on October 24th of 2006.
18       Then I petitioned the Bankruptcy Court
19  that in violation of Bankruptcy Rule 3002C3 of the
20  Code, that she no longer has a claim.
21       The bankruptcy judge did find that she no

Page 29

1  longer has a claim to those properties.  And
2  regardless if the bankruptcy was dismissed for failure
3  to proceed, it does not dismiss a final bankruptcy
4  judge's order under the Federal statute, where the
5  U.S. Supreme Court has said exclusively that Rule
6  3002C3 of the code is not an extended -- not
7  extendable in time for a party wishing to file
8  bankruptcy.
9       In the Court records on page -- tab 430,
10  page 13 S6, it describes -- that's a bankruptcy
11  transcript showing that Mr. Tyler and Ms. Buchanan do
12  not have right to claim to that property.
13       That order is not disruptable by any court
14  in the land, including the Supreme Court of the United
15  States.
16       THE COURT:  What rule is that, sir?
17       MR. BUCHANAN:  Tab 430, page 13S6.
18       MS. GIBSON:  Your Honor, just so you know,
19  that's not an order he's referring to.  It's a page
20  from a transcript of a dismissed bankruptcy.
21       MR. BUCHANAN:  It's a transcript of a

8 (Pages 26 to 29)

Page 30

1  dismissed bankruptcy, sir. And in that transcript it
2  says -- the judge says -- let me see if I can find it.
3        The Court: They filed an order. We need
4  to get it resolved one way or another. I think Mr.
5  Tyler is specifically -- it's specified if it's
6  priority. Mr. Tyler couldn't specify anything.
7        3002C3, any order or expiration of time is
8  a final order in the Bankruptcy Court. All other
9  orders of the Bankruptcy Court are non-final until
10  dismissal. And then the dismissal -- I did timely
11  appeal to the U.S. District Court.
12        THE COURT: Sir, why -- what relevant
13  information would Mr. Gay have for the Court?
14        MR. BUCHANAN: Mr. Gay would have relevant
15  information, and as an attorney he's required under
16  Rule --
17        THE COURT: Relevant and non-privileged
18  information, I should say.
19        MR. BUCHANAN: Relevant and
20  non-privileged. All lawyers are bound by their
21  professional rules of conduct to bring forth matters

Page 31

1  to the Court that they know are pertinent to the court
2  proceedings.
3        If Mr. Gay was billing Ms. Buchanan at a
4  Virginia address and not Bowling Air Force Base and he
5  knew of her marriage to Mr. Richards and he knew of
6  cohabitation and he knew that my daughter was not
7  residing with her mother, that all effects income, it
8  effects the conditions that the child was placed with
9  her mother. It effects property division, it effects
10  all of you child support proceedings.
11        THE COURT: All right.
12        MR. BUCHANAN: And it shows that under
13  rules -- that the case can be re-heard under Rule 60B3
14  for fraud and Rule 60B6 for extenuating circumstances
15  not brought forth by counsel in the way of misconduct.
16        THE COURT: Okay. Thank you.
17        MR. BUCHANAN: And I will show a violation
18  of the property division order. And in that property
19  division order -- the property division order does
20  note that Ms. Buchanan at the time, or she reported to
21  be Ms. Buchanan, did not wish to have any -- did not

Page 32

1  wish to retain the property.
2        The order from the preliminary hearing on
3  February 7th of 2006 states that Ms. Buchanan was
4  ordered and Mr. Gay stipulated -- and I would like to
5  have Mr. Gay testify to the stipulation, that they
6  would have Houston Appraisal Company appraise the
7  properties and then for the hearing scheduled for
8  March 21st of '06.
9        The Court record reflects that Ms.
10  Buchanan and the court order of property division
11  reflects that Ms. Buchanan failed to provide
12  appraisals and therefore failed to make a claim which
13  the court can divide the property.
14        And it was -- her claim should have been
15  dismissed under 12B6.
16        Judge Hendrickson then produced an order
17  to list and sell the properties to determine the
18  value. He did not say I would be displaced from the
19  property, he said to be listed and sold to determine
20  the value which the Court could take notice that
21  that's a non-viable order because the property --

Page 33

1  again, by statute, the Family Court only has
2  jurisdiction to divide and assign those properties.
3        That's -- I don't have the case on that,
4  but I believe Everly versus Everly, the attorney
5  misconduct and the property division matters are
6  brought forth on appeal, overturned the Family Court's
7  orders and the parties were sanctioned for misconduct.
8        Where Ms. Buchanan in the -- over the
9  history of these five years and even warned by the
10  Bankruptcy Court that if she did not make payments to
11  the property, she was subject to lose the properties
12  for foreclosure.
13        I had filed a lawsuit against Ms. Buchanan
14  at the time, she reported Ms. Buchanan and Mr. Gay for
15  interfering with the performance of the contract. The
16  contracts cannot be disrupted by this Court. She's
17  still contractually obligated for the contracts of
18  mortgage outside this court.
19        And she has failed to perform on those
20  contracts, showing abandonment. Where in Barton
21  versus Patterson, abandonment is the intentional

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 34

1  relinquishment of a known right. A contract will be
2  treated as abandoned when the acts of one party
3  inconsistent with the existence of the contract are
4  acquiesced in or accept by the other party.
5      It's important to distinguish between
6  innovation and abandonment or rescission.
7      To constitute either, the later two most
8  of the words or acts inconsistent with the original
9  agreement and acceptance of those words of acts of the
10 party.
11     Ms. Buchanan did not pay any mortgages.
12 She did not attempt to fight the foreclosure. She did
13 not attempt to settle any matters with me or make --
14 or come to mediation. She did not appraise properties
15 as directed and stipulated to --
16     THE COURT: Sir, you're way beyond opening
17 statement here.
18     MR. BUCHANAN: I will also show further
19 abuse by the petitioning party.
20     THE COURT: Sir, you're not the
21 petitioner. What would her acts of abuse have to do

Page 35

1  with --
2      MR. BUCHANAN: Her further abuse is to
3  evict me from my job. Evict me -- cause me loss of
4  employ, interfere with my income and my business to
5  cause financial waste and loss.
6      She removed property from my personal
7  possession that does not belong to me or her.
8      THE COURT: You're made clear your
9  position so that we can proceed. Thank you.
10     Call your first witness.
11     MS. GIBSON: Your Honor, I would call Mr.
12 Buchanan.
13     THE COURT: Mr. Buchanan, you may remain
14 at your seat.
15         DAVID BUCHANAN,
16 after having been first duly sworn according to law,
17 was examined and testified as follows:
18     THE CLERK: State your name, please.
19     MR. BUCHANAN: David J. Buchanan.
20     EXAMINATION BY MS. GIBSON:
21 Q     Mr. Buchanan, would you state your address

Page 36

1  for the record, please?
2  A     I do not have a physical address. I'm
3  staying with somebody right now, using a mailing
4  address of 34806 Hudson Road.
5  Q     Now, 34806 Hudson Road, is that located in
6  Laurel, Delaware with a zip 19956?
7  A     It's located outside the town limits of
8  Laurel Delaware and it does possess that mail delivery
9  zip code.
10 Q     When was the last time you were on that
11 property?
12 A     I was removed from that property on
13 January 26th of 2008.
14 Q     And you were actually there?
15 A     I was not there, I was -- they arrested me
16 from a neighboring field.
17 Q     And where had you been prior to entering
18 the neighboring field?
19     MR. BUCHANAN: Your Honor, why is that
20 relevant?
21     THE COURT: I think you just acknowledged

Page 37

1  that you were arrested while on the neighboring field.
2  To cut to the chase, prior to that you were actually
3  on the property; correct?
4      MR. BUCHANAN: Your Honor, I parked my
5  Ford truck at my residence and locked it. Yes.
6  Q     So you admit then to being on the
7  property; is that correct, Mr. Buchanan?
8  A     Yes, Your Honor. That does not constitute
9  residence.
10     THE COURT: Sir, she just asked if you
11 were there. Present. I'll make a legal conclusion.
12 Q     Had you also been on the property on
13 January 3rd, 2008?
14 A     Yes, I was.
15 Q     And going back, backwards in time from
16 January 3rd, how long had you been on the property?
17 Were you living there?
18 A     I lived there since 1990.
19 Q     Through January 3rd?
20 A     Yes.
21 Q     Are you aware of this Court's orders of

10 (Pages 34 to 37)

Buchanan v. Richards Hearing - 3/13/08

Page 38

1  February 5th, 2007 that require you and exclude --
2     A    I'd have to see the order just to be
3  reminded. Yes.
4     Q    You recall --
5     A    I would like to see the order so I could
6  be reminded of the order. I didn't bring it with me
7  today.
8           THE COURT: Do you have a copy of that
9  order?
10          MR. BUCHANAN: They noted, Your Honor,
11  that on January 4th, Ms. Richards and her husband and
12  --
13          THE COURT: Sir, sir, it's not time for
14  you to make argument. You're here to answer
15  questions. You're a witness right now.
16          MR. BUCHANAN: I need an order so I can
17  look at it for review.
18          THE COURT: Please have a seat. Sir, I
19  changed my mind. Why don't you come up and use the
20  witness stand.
21          What was the order that you just referred

Page 39

1  to, I'm sorry?
2           MS. GIBSON: February 5th, 2007.
3           THE COURT: February 5th, 2007.
4           Was that the order the question referred
5  to?
6           MS. GIBSON: Yes.
7           THE COURT: Show that to Mr. Buchanan.
8           MR. BUCHANAN: Thank you.
9           MS. GIBSON: Your Honor, may the record
10 reflect, I believe Mr. Buchanan is being shown a copy
11 of that Court's order.
12          THE COURT: Yes, he is. At tab 423.
13    Q    Mr. Buchanan, you've had an opportunity to
14 review this Court's order of February 5th, 2007?
15    A    Yes.
16    Q    And what is your understanding that that
17 order does, the one sentence order?
18    A    The order to evict to exclude I understood
19 it to remove me from the property for the purpose of
20 listing and selling the property.
21          Not to exclude me from my business, not to

Page 40

1  exclude me from accessing and walking on the property,
2  and not to exclude me from having access to my
3  animals, horses and home.
4           MS. GIBSON: Your Honor, if I might just
5  read into the record the one sentence order.
6           THE COURT: Go ahead.
7           MS. GIBSON: It is so ordered this 5th day
8  of February, 2007 that the Respondent, David J.
9  Buchanan is hereby evicted and excluded from two
10 parcels of marital real estate, the first located at
11 34806 Hudson Road, Laurel, Delaware, tax parcel
12 numbers 2-32-9.00-15.06 (marital property) and
13 2-31-19.00-46.03 (farm property).
14          Is that your understanding of how that
15 order reads, Mr. Buchanan?
16    A    Yes.
17    Q    In that order was there any exception with
18 respect to livestock or your business?
19    A    No.
20    Q    Contained in what I just read?
21    A    No.

Page 41

1     Q    You are familiar with the business entity
2  called Buchanan Farms, Inc.?
3     A    Yes, I am.
4     Q    Do you have any proof with you today that
5  that is a viable operating entity?
6     A    The Court --
7     Q    Yes or no?
8     A    It's contained in the Court record.
9     Q    So you have no proof with you today that
10 that is a viable ongoing entity.
11    A    It's contained in the court record.
12    Q    In the Family Court records?
13    A    Yes.
14    Q    Can you tell the Court where, what tab
15 shows that that's a viable operating entity?
16    A    What's -- I'd have to ask the Court to let
17 me have the tab number for the stay of order for the
18 bankruptcy. I don't have that tab number. It's over
19 at my desk, I can't --
20    Q    Okay. You believe that there is
21 information contained regarding the viability of

11 (Pages 38 to 41)

Buchanan v. Richards Hearing - 3/13/08

Page 42

1  Buchanan Farms, Inc. in some bankruptcy order?
2      A    Yes. It's also contained and recognized
3  by the Court in the property division order published
4  on April 4th of 2006.
5      Q    But I'm talking about as of today, March
6  13th, 2008. Do you have any information or
7  documentation with you?
8      A    No. I did not bring it to court today
9  because this court does not have jurisdiction over
10  third party matters.
11     Q    Do you -- can you tell us where the
12  principal place of operation for this business is?
13     A    The principal place and resident agent is
14  located at offices at 34806 Hudson Road, Laurel
15  Delaware.
16     Q    And who is the principal owner and
17  operator of that business?
18     A    I'm the principal owner and operator and
19  there's other outside investors in the company.
20     Q    When you were arrested January 3rd, 2008,
21  did you have personal property located at the

Page 43

1  residence?
2      A    I had personal property and a vehicle at
3  the residence at 34806 Hudson Road.
4      Q    Did you have any property located in the
5  home, in the residence?
6      A    I had personal property in the residence,
7  yes.
8      Q    Did that personal property include 13
9  loaded weapons?
10     A    Yes, it did. But there's no court order
11  or protection from abuse order in place preventing me
12  from owning or possessing any firearm.
13     Q    Have you also since February 5th, 2007
14  entered the 90 acre parcel property on Road 449?
15     A    Excuse me. Say it again.
16     Q    Since February 5th, 2007, have you also
17  entered the 90 acre parcel located on Road 449 in
18  Laurel?
19     A    Yes, I have.
20     Q    With respect to your arrest --
21     A    There's no residence or building on that

Page 44

1  property.
2      Q    But you've entered the property?
3      A    I've entered the property, it's a place --
4  as an employee of Buchanan Farms.
5      Q    After your arrest on January 26th, 2008,
6  did you also have another loaded weapon on the
7  property?
8      A    The loaded weapon on the property at 34806
9  was not in my possession, it was inside a locked
10  building. And apparently it was again on a trespass,
11  somebody identified that as being removed. Yes.
12     Q    Have you made any threats towards Ms.
13  Richards?
14     A    No.
15     Q    Have you made any threats towards anyone
16  connected with Ms. Richards such as her prior counsel
17  or family?
18     A    I've not made any threats against anybody
19  for physical harm at all.
20     Q    Do you believe that the order of February
21  7th, 2007 requires you to stay off those two pieces of

Page 45

1  property mentioned previously?
2      A    No. Under the definition of evict, it
3  means that I will not be residing there. It does not
4  mean that I will be removed from the property for
5  enjoyment of employment.
6          Family Court does not have jurisdiction to
7  interfere with my family employment or my employment
8  of a third party.
9      Q    To the best of your knowledge, are there
10  any pending bankruptcy actions before --
11     A    There's a bankruptcy action filed in the
12  --
13     Q    Can I finish my question, please.
14         To the best of your knowledge, are there
15  any pending bankruptcy actions in any court regarding
16  yourself or Buchanan Farms, Inc., as of today's date?
17     A    Today's date, there is a bankruptcy where
18  I had filed a claim in Florida as an equity security
19  holder for my brother and undistributed funds. Yes.
20     Q    I'm sorry, could you repeat that?
21     A    My brother has filed bankruptcy in Florida

12 (Pages 42 to 45)

Towson Reporting Co.
410-828-4148
GORE BROTHERS
410-837-3027
Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 46

1  and I have filed a claim for -- as an equity security
2  holder for undistributed inherited funds.
3      Q    But that has nothing to do with Buchanan
4  Farms?
5      A    As an equity security holder under
6  Bankruptcy Stay 362, I'm protected under stay for the
7  Bankruptcy Court in Florida.
8      Q    But is it you personally or the business
9  entity you claim?
10     A    The claim is for me personally.
11     Q    Did you provide any of that type of
12 information in any of the Family Court proceedings?
13     A    No, I have not yet.
14     Q    So it has nothing to --
15     A    It's been specially filed.
16     Q    It has nothing to do then with anything
17 pending before this court today.
18     A    Not at this time. No.
19         THE COURT:  Sir, your brother has filed
20 bankruptcy in Florida, and you filed a claim against
21 whatever it is he's doing?

Page 47

1          MR. BUCHANAN:  I filed a claim against he
2  has collected inherited funds from another dead
3  brother, and --
4          THE COURT:  As a creditor?
5          MR. BUCHANAN:  As an equity security
6  holder.
7          THE COURT:  But it's not your loss, it's
8  not your bankruptcy, it's your brother's.
9          MR. BUCHANAN:  It's not my bankruptcy,
10 correct.
11         THE COURT:  It's your brother's
12 bankruptcy.
13         MR. BUCHANAN:  That's correct.
14         THE COURT:  Thank you.  Go ahead.
15     Q    Did you ever approach Ms. Richards'
16 previous counsel, Mr. Tom Gay in a restaurant and tell
17 him that anyone attempting to remove you from those
18 properties would leave in a pine box?
19     A    No.  I've seen Mr. Gay in public, but I
20 have not conversed with him and said anything like
21 that.  That would be terroristic threatening.

Page 48

1      Q    Are you aware that a motion making those
2  allegations was filed in this court?
3      A    I'm aware of that.  I've also filed suit
4  against Mr. Gay in Superior Court and the U.S.
5  District Court for his misrepresentations before this
6  Court.
7      Q    And all of those actions have been
8  dismissed, haven't they?
9      A    They have been dismissed, but they are
10 subject -- it's being petitioned under Rule 63 -- or
11 60B3 and 60B6 of the Federal Code, and relies on
12 address information that should be disclosed in this
13 court today, on where Heidi was living when Mr. Gay's
14 attorney provided -- obtained an affidavit from her,
15 stating an address of 5490C Fetchut Lane, Bowling Air
16 Force Base.
17     Q    Now, all of those statements are referring
18 to issues you have with the ancillary order of April
19 4th, 2006; is that right?
20     A    Ancillary order of 2006 -- April 4th,
21 2006?

Page 49

1      Q    Yes.
2      A    Ancillary order of 2006 to my
3  understanding is from the hearings of March 21st of
4  2006?  That's the ancillary --
5      Q    I'm referring to a final ancillary order
6  resolving all property issues between you and your
7  former wife.
8      A    That's correct.  It's not -- it's one of
9  two ancillary orders.  One ancillary order is for me
10 to pay Mr. Gay nearly $37,000 in attorney fees.
11         And the ancillary order was then -- was
12 not supposed to be an order.  And in that ancillary
13 order it says that it's pending approval of the
14 Bankruptcy Court.
15     Q    And what we are here today about is Ms.
16 Richards' petition for protection from abuse from your
17 entering the property, which you have admitted that
18 you have.
19         And have you made any threats to her with
20 respect to sale of this property?
21     A    I've not made any threats to anybody.

13 (Pages 46 to 49)

Buchanan v. Richards Hearing - 3/13/08

Page 50

1    Q    Have you threatened the potential buyers
2  of the property?
3    A    No, I have not.
4    Q    Did you hae conversations with Mr. and
5  Mrs. Jones?
6    A    Mr. and Mrs. Jones?  I've known Mr. Jones
7  for nearly 20 years.  Yes, I've talked with him
8  frequently.
9    Q    And you're aware this court had to -- have
10 the clerk sign your name to an order to sell those
11 properties?
12   A    Yes, I am.
13   Q    Did you not cooperate with the sale?
14   A    I did not cooperate with the sale in your
15 terms.  I have cooperated with the sale and the terms
16 of the Bankruptcy Court in providing a listing and
17 selling agreement to you to be presented to Ms.
18 Richards.
19        And I also have complied with the Family
20 Court orders of the Washington, D.C. court where Ms.
21 Richards has obtained several restraining orders from

Page 51

1  a non-jurisdictional court to keep me from
2  communicating directly or indirectly with her, from
3  the U.S. District Court judge on matters before him
4  over in D.C.
5    Q    Mr. Buchanan, do you believe that any
6  court has jurisdiction over you?
7    A    Yes.  This court has jurisdiction over me
8  on matters of property division, spousal support,
9  support of a child and division of property.
10   Q    This court issued an order, February 7th,
11 2007 evicting and excluding you from the real
12 property, yet you continue to enter that property.
13       Why do you not --
14   A    When you petition the Family Court, under
15 Rule 70 or your Rule 11 motion, you did not disclose
16 all of the matters pertinent and subject to these
17 proceedings to Judge Hendrickson.
18       Judge Hendrickson --
19   Q    I'm sorry, can I ask you, are you
20 referring to me?
21   A    Yes.  Are you Glendis Gibson?

Page 52

1    Q    I am.  And what motion are you -- I didn't
2  file any motions prior to the February '07.
3    A    Is there not a Rule 70A and a Rule 11
4  motion to -- requesting enforcement of an exclusion
5  order after the bankruptcy was dismissed?
6    Q    After the bankruptcy was dismissed.  But I
7  was asking you about the February 5th, 2007 order.
8    A    What about it?
9    Q    I'm asking you if you believe any court
10 has jurisdiction --
11   A    That -- the Family Court does not have
12 jurisdiction to evict or exclude Buchanan Farms from
13 that property.
14       You were provided with, and your client
15 was provided with several years of documentation from
16 the USDA.  They were recognized in the Federal Court
17 and by this Bankruptcy Court as being the tenancy of
18 all of those properties.
19       The Family Court does not have
20 jurisdiction.  Delaware State statute and the way I
21 read that order is that they do not have jurisdiction

Page 53

1  to evict or exclude any tenant from a property.
2        You have proceeded on with attempting to
3  list and sell a piece of property without recognition
4  of Delaware law to disclose all agricultural leases to
5  the listing agent.
6        I believe it's 25315.
7        THE COURT:  So, sir, to narrow the
8  question --
9        MR. BUCHANAN:  In my opinion, it's not a
10 viable order.
11       THE COURT:  So to narrow the question.  Do
12 you believe you are not required to obey an order with
13 which you disagree?
14       MR. BUCHANAN:  I am not -- the order, the
15 way I read it, I have to obey it.  But they have not
16 made any -- demonstrated that I am restricting Barbara
17 from the property or that I'm living at the property.
18 It's my place of business.
19       THE COURT:  So when you're reading evicted
20 and excluded, it says that you can't live there?
21       MR. BUCHANAN:  It says I can't live there.

14 (Pages 50 to 53)

Page 54

1  THE COURT: But you're saying you can go
2  there, under your interpretation of the order, if
3  you're going there as --
4  MR. BUCHANAN: For the purpose of Buchanan
5  Farms.
6  THE COURT: As -- to run the farm.
7  MR. BUCHANAN: Correct, Your Honor.
8  THE COURT: The business.
9  MR. BUCHANAN: Yes.
10  THE COURT: You can go there. You're just
11  a hired hand.
12  MR. BUCHANAN: I'm a hired hand, and I'm
13  paid by Buchanan Farms.
14  THE COURT: Go ahead.
15  MS. GIBSON: Your Honor, I have no further
16  questions of Mr. Buchanan.
17  THE COURT: Sir, you may be seated,
18  please.
19  Do you have anything -- would you like to
20  respond or elaborate on any of your answers in the
21  nature of a cross examination of yourself?

Page 55

1  MR. BUCHANAN: I would need my notes, Your
2  Honor.
3  All right. When the police arrested me
4  the first time from -- the first time in January, on
5  January 3rd, 2008, they presented the arrest as not a
6  Family Court enforcement order. It was presented as
7  an order to effectuate a U.S. Marshall warrant.
8  Somewhere in the communication of the U.S.
9  Marshall warrant, exactly a few hours later when I was
10  incarcerated in DOC in Georgetown, Ms. Richards and
11  Mr. Richards, Betty Saunders, a friend of theirs,
12  entered the property without a court order and removed
13  all computers, all personal effects, everything that
14  has to do with fighting and proving myself in this
15  court, the Bankruptcy Court, and the U.S. District
16  Court.
17  Those records, they have removed Buchanan
18  Farms' financial data, they removed $20,000 and they
19  removed an assortment of guns and weapons and valuable
20  property that did not belong to them.
21  There's no court order in effect allowing

Page 56

1  her to disrupt any property. And under 131513 of the
2  Delaware law, they are claiming that -- in even
3  pleadings from Glendis Gibson in an order before the
4  Supreme Court of this court on appeal, claims that
5  property was abandoned.
6  Ms. Glendis Gibson on behalf of her client
7  is putting forth a claim that abandoned property is
8  good for anybody that wants to come in and take it.
9  Well, in effect, what Glendis Gibson is
10  admitting to her client disrupting a Family Court
11  order allowing distribution of that property and I
12  have to pay Barbara if she makes a claim against any
13  of that value and that property in Bankruptcy Court.
14  That property not only does not belong all
15  to me, but giving some absence of jurisdiction over
16  those matters. But it shows that Ms. Richards has the
17  intent to cause harm on me.
18  THE COURT: So you believe that it's
19  appropriate for you to enter the property, not as a
20  hired hand, but as yourself as necessary to protect
21  your personal property?

Page 57

1  MR. BUCHANAN: My personal property,
2  whether I left it there while I was evicted or whether
3  it's been stored there or it's being maintained by
4  Buchanan Farms is still my personal property. And 15
5  -- or 131513 does not allow for property or give
6  jurisdiction property be considered abandoned.
7  State statute says that any property
8  abandoned or considered abandoned, whether it be
9  claimed later on or claimed by a partial land owner or
10  a tenant, does not -- does not pertain to any property
11  that is subject to proceedings of family court.
12  So it can't be considered abandoned. Ms.
13  Gibson has said it's abandoned.
14  THE COURT: Sir, do you believe it's
15  appropriate for you to enter the property despite
16  Judge Hendrickson's order as necessary to protect your
17  personal property?
18  MR. BUCHANAN: To protect my corporate
19  interest, yes.
20  THE COURT: Okay.
21  MR. BUCHANAN: Ms. Gibson claims that me

Buchanan v. Richards Hearing - 3/13/08

Page 58

1  being present on or near the piece of property to tend
2  to livestock and ongoing agricultural operations makes
3  it a violation of eviction exclusion order.
4        Delaware State statute for eviction or
5  exclusion of a farm tenant must comply with
6  agricultural law. Ms. Gibson, Ms. Richards or any
7  other entity has not provided any exclusion eviction
8  order that is jurisdictional to the tenant of Buchanan
9  Farms.
10       And if so, it must be filed before
11 September 1st of that year and no order has been
12 filed.
13       An eviction exclusion order also --
14       THE COURT: Sir, the house. The house is
15 the house, right? There's no --
16       MR. BUCHANAN: It's Buchanan Farm's office
17 and corporation --
18       THE COURT: But there's no fields there --
19       MR. BUCHANAN: There's fields. There's 26
20 acres there.
21       THE COURT: Oh, there is. Okay.

Page 59

1        And is it currently planted?
2        MR. BUCHANAN: It's planted with oats at
3  this time.
4        THE COURT: And how about the other?
5        MR. BUCHANAN: The other is planted with
6  10 acres of wheat and 80 acres of barley.
7        THE COURT: Okay. Anything else?
8        MR. BUCHANAN: Yes. Let me gather my
9  thought, here.
10       THE COURT: It has to pertain to what
11 you've already been asked, sir. It can't --
12       MR. BUCHANAN: I didn't write my questions
13 down up here. The order for February 7th of '07 --
14 February 7th, '07. State statute says, and my
15 understanding of reading an eviction order. If it's a
16 viable order, for this Court to reach out and give an
17 eviction order of an entity and it is on the
18 Plaintiff's accusal that the entity is not a viable
19 entity but the counsel without doing her research has
20 not gone down, obviously, to see that the entity is in
21 fact a proper entity.

Page 60

1        All taxes are paid. And a letter to the
2  Bankruptcy Court on dismissal of the Chapter 12, the
3  Trustee had been provided proof of that. Because that
4  was an argument in the Court.
5        That entity is in effect able to operate.
6  And an eviction exclusion order in the State of
7  Delaware must have a hearing before the proper court
8  to evict exclude a deeded owner of that property. I
9  am a deeded owner of that property. I'm not
10 personally a tenant.
11       Property division order that Judge
12 Hendrickson is attempting to effectuate, this gives an
13 order to list and sell the property. But it does not
14 state in there that Buchanan Farms or myself cannot
15 buy the property.
16       And Ms. Buchanan has delayed in this
17 court. She has delayed in Superior Court and she has
18 delayed in the Bankruptcy Court beyond comprehension
19 showing abandonment of the property and now has
20 returned after the statute of limitations to make
21 claim on abandonment, has exceeded.

Page 61

1        And after 3002 of the Bankruptcy Code, a
2  final court order restricting her from making claim
3  against me returned to this court and has found a loop
4  hole through misrepresentations of counsel to
5  effectuate and have Judge Hendrickson issue an
6  eviction order.
7        That eviction order is -- the
8  reinstatement of orders is on appeal at the Delaware
9  Supreme Court. And a motion to stay those -- stay
10 this action on appeal has been filed with this court
11 without a response.
12       THE COURT: You have filed an appeal of
13 the January 3rd order? Is that what you're saying?
14       MR. BUCHANAN: The most recent --
15       THE COURT: The January 3rd order
16 reinstating the --
17       MR. BUCHANAN: Yes, Your Honor, I have.
18       THE COURT: Reinstating all prior orders?
19       MR. BUCHANAN: Yes, Your Honor. Because
20 it effectuates a non-viable order.
21       The order to list and sell on March --

16 (Pages 58 to 61)

Buchanan v. Richards Hearing - 3/13/08

Page 62

1  from the hearing on March 21st of '06 is not a viable
2  order. But it was not appealed by either party. But
3  it was subject to approval on the Bankruptcy Court.
4      At the time during appeal that would
5  effectuate the 30 days available to appeal, that order
6  was not ripe for appeal because it was
7  jurisdictionally incumbered by the Bankruptcy order.
8      That order went through, all the way
9  through to the expiration of time when Ms. Buchanan
10 able to file a claim.
11     And I've said before, that claim time had
12 expired. She -- even though that bankruptcy is
13 dismissed, that claim time expiration by statute,
14 Federal statute, does not allow her to come back and
15 make claim. And where she has abandoned her property
16 under Delaware statute and had violated property
17 division order by disturbing property contained on the
18 property and has caused theft against a third entity
19 properly filed and incorporated in the State of
20 Delaware.
21     She has violated and caused harm against

Page 63

1  me. And when I have filed PFAs in this court on --
2  that were scheduled for hearing on, I think the 24th
3  of January, and then continued by a request of Glendis
4  Gibson, and then rescheduled for February 14th and
5  then dismissed under Judge Hendrickson.
6      Commissioner Wilson stated on there that I
7  should file a motion to show cause. Motion to show
8  cause has been filed with this court. Opposing
9  counsel to my view is in default, has not answered
10 that motion to show cause, showing that all
11 proceedings on that motion to show cause go before the
12 court as claimed. Showing that Ms. Buchanan is in
13 violation of the Family Court order on property
14 division.
15     She has disturbed my personal and
16 corporate property and property of others. Has
17 committed theft and is subject to triple damages.
18     THE COURT: Okay. Thank you.
19     Call your next witness.
20     MS. GIBSON: I would call Ms. Richards.
21     THE COURT: All right.

Page 64

1      BARBARA RICHARDS,
2  after having been first duly sworn according to law
3  was examined and testified as follows:
4      THE COURT: Ms. Gibson, I don't seem to
5  have -- I'm probably looking in the wrong place --
6  August 6th, 2007, that's the Supreme Court appeal?
7      MS. GIBSON: August 6th, 2007 is the order
8  from the Supreme Court affirming Judge Hendrickson's
9  order. It was like a three or four page order.
10     It was attached to my motion to dismiss --
11 let's see, that I filed in late January, probably
12 early -- that I filed early February.
13     THE COURT: Early February of 2008?
14     MS. GIBSON: Yes.
15     If Your Honor does not have it, I will be
16 happy to provide it to you. I'm sure it's in the
17 Family Court file somewhere. I can provide a copy of
18 it.
19     MR. BUCHANAN: I'm sorry. That's an
20 answer to the motion to show cause?
21     MS. GIBSON: No. It's the Supreme Court's

Page 65

1  order affirming -- granting my motion to affirm.
2      THE COURT: There was a -- opening
3  statement suggested there was an August 6th, 2007 that
4  affirmed the February 5th, 2007 order --
5      MS. GIBSON: Correct.
6      THE COURT: --which you in your statement,
7  Mr. Buchanan, said you did not think was the case.
8  Therefore, I want to make sure that I see it.
9      MR. BUCHANAN: The appeal, I believe, Your
10 Honor, was filed for Superior Court case. Which
11 Supreme --
12     MS. GIBSON: We're talking about your
13 appeal of the February 5th, 2007 original exclusion
14 order. I filed a motion to affirm Judge Hendrickson's
15 order of February 5th, 2007. That motion to affirm
16 was granted by the Supreme Court on August 6th, 2007.
17     Do you recall that?
18     MR. BUCHANAN: Yes. That was stayed by
19 Bankruptcy.
20     MS. GIBSON: It was not stayed by
21 Bankruptcy.

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 66

1    THE COURT: Regardless, I just need the
2  piece of paper.
3    MS. GIBSON: I will -- if Your Honor does
4  not have it, I will --
5    MR. BUCHANAN: Can I see it?
6    MS. GIBSON: I don't have it right this
7  second.
8    But if Your Honor does not have it in that
9  court file, if Your Honor would hold the record open,
10  I will have my office fax it down.
11    This file is so voluminous, I may not have
12  brought that portion of it with me. But it does
13  exist.
14    Are you ready for me to --
15    THE COURT: Go ahead.
16    EXAMINATION BY MS. GIBSON:
17    Q    Ms. Buchanan, you were -- I'm sorry, Ms.
18  Richards, you were formerly married to Mr. Buchanan?
19    A    Yes.
20    Q    And you are aware of the ancillary order
21  resolving the property issues of April 4th, 2006?

Page 67

1    A    Yes.
2    Q    And what was your understanding of what
3  was to happen with the two pieces of real property
4  pursuant to that order?
5    A    That they should be sold.
6    Q    And what efforts did you make to sell
7  those properties?
8    A    I've attempted to list them with Cooper
9  Realty. They were listed for a short time. We did
10  get an offer on the 90 acres. That offer was thwarted
11  by Mr. Buchanan.
12    Q    And did you subsequently need to get an
13  order of this court requiring the clerk to sign Mr.
14  Buchanan's name on a contract of sale?
15    A    Yes.
16    Q    Did the property sale go through?
17    A    No, it didn't.
18    Q    What is the status of these properties at
19  this time, as far as you know?
20    A    I believe one or both are in foreclosure.
21    Q    Did you have difficulties trying to list

Page 68

1  the property for sale due to any actions of Mr.
2  Buchanan?
3    A    Yes.
4    Q    What were those difficulties?
5    A    Any time a potential buyer would be
6  presented -- well, he contacted Mr. Jones and
7  threatened him and his family if he were to go through
8  with the sale --
9    MR. BUCHANAN: Objection, Your Honor.
10  Hearsay.
11    THE COURT: Objection overruled.
12    Q    Go ahead.
13    A    I've tried to get the -- actually, Mr.
14  Buchanan is on the property. He resides there. He
15  has -- we went up to the property at one time trying
16  to just look at it so that we could list it.
17    He would not open the door to --
18    THE COURT: When was that, ma'am?
19    MS. RICHARDS: That was in January of
20  2007.
21    THE COURT: January of 2007.

Page 69

1    A    There were no trespassing signs on the
2  property. Though I'm titled on the property, we did
3  have an eviction order in place. When we tried to go
4  up there to take a look at the house in order to list
5  it, all of the windows were boarded.
6    Mr. Buchanan did not answer the door, even
7  though there was smoke coming out of the chimney. It
8  appeared that he was there. He didn't answer the
9  door.
10    The State Police went out with us on that
11  day. He didn't answer for us or for the police.
12    We were unable to inspect the property for
13  listing purposes.
14    THE COURT: Go ahead.
15    Q    Has Mr. Buchanan threatened you in any
16  way?
17    A    Yes.
18    Q    Can you be specific?
19    A    He has made many implied threats beginning
20  way back in 2002 when we --
21    THE COURT: I don't want to go way back to

18 (Pages 66 to 69)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 70

1  2002, ma'am.
2       MS. RICHARDS: Okay.
3    Q    Since you have attempted to carry out the
4  order -- since the order of exclusion was signed in
5  2007.
6    A    He has made threats actually in court, I
7  believe, the last time when he was here for
8  arraignment. We were called by the Delaware State
9  Police and they told us that we should be careful
10  because of --
11       THE COURT: That objection would be
12  sustained.
13    Q    You can't tell us what someone said. But
14  did you learn of a potential for harm?
15    A    Yes.
16    Q    And you found the 13 loaded rifles on the
17  property --
18    A    Yes.
19    Q    --when you came the next day after Mr.
20  Buchanan had been arrested on January 3rd?
21    A    That's correct.

Page 71

1    Q    Did you have any contact with Mr. Buchanan
2  directly at all?
3    A    No.
4    Q    How were you -- what did finding those
5  guns cause you to feel?
6    A    I thought he was -- every gun that he had
7  was loaded. He had at least one gun in every room. I
8  felt that if we were to come on to the property in
9  order to try to list it, that we may possibly be shot.
10    Q    And there was a second arrest on January
11  26th--
12    A    Yes.
13    Q    --of Mr. Buchanan for when he was on the
14  property a second time?
15    A    That's correct.
16    Q    And were you -- did you arrive on the
17  property that same day?
18    A    Yes, we did.
19    Q    And what did you find that day?
20    A    We found a second loaded gun, even though
21  I understand that he told the police that there was no

Page 72

1  weapon -- there were no weapons in the house.
2    Q    And how are you feeling right now with
3  respect to your ability to sell this property pursuant
4  to the court's order?
5    A    I don't feel safe to go on to the property
6  even to list it. Mr. Cooper has -- will not go with
7  me in order to list the property because he does not
8  feel safe.
9       MR. BUCHANAN: Objection, Your Honor, as
10  to -- it gives third party feelings.
11       THE COURT: Objection sustained.
12    Q    You can't say what Mr. Cooper's feelings
13  are.
14    A    Okay. I don't feel safe going on the
15  property. I'm trying to sell it. I'm trying to take
16  care of my mortgage obligations. But I've been
17  stopped in every attempt to try to sell these
18  properties.
19       And in doing so, I feel threatened. I
20  feel threatened because there's loaded weapons.
21  There's no trespassing signs. Mr. Buchanan is not

Page 73

1  obeying the orders.
2       He isn't out of the property. How can I
3  sell the property when he's on the property. We find
4  loaded guns on the property. How am I to feel safe if
5  he doesn't recognize the orders of the court.
6    Q    And you're not aware of any lease that
7  authorizes Mr. Buchanan to be on those properties?
8    A    No.
9       MS. GIBSON: Thank you. I have no further
10  questions of Ms. Richards, Your Honor.
11       THE COURT: Cross examination?
12       EXAMINATION BY MR. BUCHANAN:
13    Q    Ms. Buchanan what -- Ms. Richards, what
14  date were you married to Mr. Richards?
15       MS. GIBSON: Your Honor, can I object just
16  to the relevancy of this?
17       MR. BUCHANAN: It's relevant, Your Honor.
18       MS. GIBSON: Ms. Richards' address is
19  confidential. A great deal of the subpoena that Your
20  Honor quashed is all about trying to find out personal
21  information about Ms. Richards that has nothing to do

Buchanan v. Richards Hearing - 3/13/08

Page 74

1  with the issues before this court.
2         And I am very concerned for her safety.
3         MR. BUCHANAN: Your Honor, may it please
4  the Court. Ms. Richards is obligated to update her
5  financial records under rule --
6         THE COURT: Well, what would the date of
7  your marriage have to do with that?
8         MR. BUCHANAN: Not my marriage, her
9  marriage to Mr. Richards. Her financial obligations
10  and her financial standing must be updated --
11         THE COURT: Objection sustained. It's not
12  relevant to what I have to decide today.
13         MR. BUCHANAN: So that's a sustained?
14         THE COURT: I sustained the objection.
15  Q    As you stated, Ms. Richards, you are
16  afraid of the guns that are at our residence in
17  Delaware or in the offices of Buchanan Farms.
18         What makes you afraid --
19         MS. GIBSON: Objection, Your Honor. She
20  didn't say she was afraid of weapons in the offices of
21  Buchanan Farms.

Page 75

1         THE COURT: Well, she did say that she was
2  -- the fact that she was afraid of these weapons.
3  That these weapons made her scared, okay.
4         Go ahead, sir, with your question. What
5  is your question.
6  Q    Ms. Richards, why do the weapons make you
7  scared when there has not been any threats towards you
8  concerning any weapons?
9  A    I'm afraid that you will use them against
10  me because you don't recognize the orders of the court
11  that you shouldn't be at the property.
12  Q    So --
13  A    You have placed no trespassing signs on
14  the property, which makes me think that if I were to
15  go across that property, you think it's your property,
16  you think I would be trespassing, therefore you would
17  feel a right that you would have a right to defend
18  what you think is your property and you would use
19  those loaded weapons against me.
20         THE COURT: Thank you. Next question.
21  Q    Have I ever pointed a weapon at you at

Page 76

1  all?
2  A    No.
3  Q    So in 22 and a half years of marriage, I
4  have never pointed a weapon at you at all?
5         MS. GIBSON: Your Honor, I would just
6  object to the time frame.
7         MR. BUCHANAN: Cause for being afraid --
8         THE COURT: Objection overruled.
9  Objection overruled.
10         Is it true that he has never pointed a
11  weapon at you?
12         MS. RICHARDS: That's correct.
13         THE COURT: Thank you. Next question.
14  Q    Have you ever seen me point a weapon at
15  any person or being?
16  A    No.
17  Q    What attempts have you made to pay on any
18  mortgages of either of these properties?
19  A    I've attempted to sell the property in
20  order to satisfy the mortgage.
21         MR. BUCHANAN: That's not the question.

Page 77

1         THE COURT: Ma'am, that's not responsive
2  to the question. Please just answer whether you've
3  made any attempts --
4  Q    What attempts have you made to pay on
5  either property mortgage.
6         THE COURT: Have you made any attempts to
7  pay the mortgages?
8  A    Over the course of our married life, yes.
9         THE COURT: Actually, could you limit your
10  question, sir?
11  Q    What attempts have you made to pay on any
12  of these properties since we've been divorced?
13  A    None.
14  Q    Have you made any agreement or attempted
15  to make any agreement for me to pay on all of the
16  mortgages or have made any offer stating an amount on
17  which you can be dismissed from obligation?
18         THE COURT: I'm not sure I understand that
19  question, sir.
20  Q    Have you made any offer to settle -- a
21  value -- have you made any claim on a value in any

20 (Pages 74 to 77)

Buchanan v. Richards Hearing - 3/13/08

Page 78

1  court or with me on private stipulation stating that
2  you were willing to settle for a particular price?
3        MS. GIBSON: Your Honor, can I just object
4  to the relevancy of that question?
5        MR. BUCHANAN: It's relevant, Your Honor.
6  It shows that she's abandoned the properties.
7        THE COURT: Objection sustained. Next
8  question, sir.
9    Q    I want to ask to get an answer, Your
10  Honor. Have you paid any money towards either
11  mortgages on the properties since we've been divorced?
12        THE COURT: She's asked and answered, sir.
13        MR. BUCHANAN: I didn't hear the answer.
14        THE COURT: She said no.
15    Q    Have you paid any utilities on the
16  properties since we've been divorced?
17    A    No.
18    Q    Have you paid any insurance on the
19  properties since we've been divorced?
20    A    No.
21    Q    When you have visited the properties,

Page 79

1  which vehicles were on the property indicating that I
2  was there?
3    A    I saw your white truck.
4    Q    So how many vehicles, to your knowledge,
5  do I drive?
6    A    The white truck and the white Honda that
7  we used to have.
8    Q    So if the white Honda was not there, what
9  gave you the indication that I was there?
10    A    The fire -- the smoke coming out of the
11  fire place.
12    Q    Have you ever seen smoke come out of the
13  fire place at anybody's house when people were not
14  home?
15    A    Generally if you're not home, you close
16  the chute down in order to have the fire go out.
17    Q    Was it winter time outside when the smoke
18  was coming out of the chimney?
19    A    Yes.
20    Q    Would it be responsible for a land owner
21  to heat the house on his absence in the winter time?

Page 80

1        MS. GIBSON: Objection, Your Honor. That
2  is just --
3        THE COURT: This is argument, sir. You
4  can make it later to me, the smoke coming out of the
5  chimney didn't necessarily mean you were home.
6    Q    In your complaint, you say that I had an
7  obsession and perception. How do you know what my
8  obsessions or perceptions are when you haven't
9  communicated with me meaningfully in more than five
10  years?
11    A    The amount of litigation in the court
12  would indicate that you have an excessive obsession
13  with making your point of view known with trying to
14  make my life miserable doing anything you can to keep
15  me from completing this divorce settlement.
16    Q    The pre-trial order was for a -- dated
17  February 7th, 2006 ordering me to cooperate with the
18  listing and selling of the properties.
19        Do you have any evidence that I did not
20  list -- I did not cooperate with the appraisals. Do
21  you have any evidence --

Page 81

1        MS. GIBSON: Your Honor, can I just object
2  to the relevancy of this?
3        MR. BUCHANAN: Relevance, Your Honor, it
4  shows that she did not proceed as -- these proceedings
5  are core to the Family Court later motion, the
6  properties listed and sold, which is core to the
7  eviction order.
8        And it shows that Ms. Richards did not
9  perform as stipulated.
10        MS. GIBSON: But, Your Honor, we're not --
11        THE COURT: That's a question for Judge
12  Hendrickson to answer, not me. Objection is
13  sustained.
14    Q    Ms. Richards, did you retain Houston
15  Appraisal Company to appraise the properties?
16        MS. GIBSON: Again, Your Honor, I'd just
17  object as to relevancy. It doesn't have anything to
18  do with --
19        MR. BUCHANAN: It shows the intent to
20  abandon the property if she didn't perform as
21  stipulated, Your Honor.

Page 82

1    MS. GIBSON:  Your Honor, again, that's not
2  before --
3         MR. BUCHANAN:  She did not make claim to
4  the property --
5         THE COURT:  Objection is sustained.
6    Q    Did you hire -- did you file a claim in
7  Bankruptcy Court for the properties --
8         MS. GIBSON:  Your Honor, can I just object
9  again, if I could.
10        MR. BUCHANAN:  It shows abandonment.
11        THE COURT:  Whether she abandoned the
12 property or not is not relevant to the questions I
13 have to resolve today.
14   Q    Ms. Buchanan -- Ms. Richards, do you have
15 a marksmanship ribbon with the Air Force?
16        MS. GIBSON:  Your Honor, could I object to
17 the --
18        MR. BUCHANAN:  It shows relevance, Your
19 Honor.
20        MS. GIBSON:  --I don't understand what --
21        THE COURT:  The objection is overruled.

Page 83

1  She can answer the question.
2    A    No.
3    Q    During our marriage, have you ever seen
4  guns loaded in the house before?
5    A    Yes.
6         THE COURT:  Have you ever seen 13 of them
7  in the house before?
8    A    I didn't know there were that many.
9         THE COURT:  So when you found the 13
10 weapons, is what you testified to, right, was that
11 more weapons than you were accustomed to being in the
12 house when the two of you were together?
13        MS. RICHARDS:  I never knew of so many,
14 no.
15        THE COURT:  When you were together and
16 there were weapons in the house, how many were there?
17        MS. RICHARDS:  I was only aware of two,
18 three.  Maybe three.
19        THE COURT:  Thank you.
20   Q    During the period of our marriage, the
21 weapon that was confiscated on the 26th of January

Page 84

1  during a search of the house by State Police to secure
2  the property, have you ever seen that weapon before?
3    A    No.
4    Q    For the record, Your Honor, I'd like to
5  note that those weapons have been in my possession
6  since I was 16 years old.
7         THE COURT:  Maybe she's mistaken.  I don't
8  know, sir.  She can only testify to the best of her
9  ability.
10   Q    Do you have any court order allowing you
11 to remove any property from the properties that I'm
12 evicted or excluded from?
13        MS. GIBSON:  Your Honor, I would just like
14 to object to that because that's not the issue before
15 you.
16        Mr. Buchanan doesn't have a cross PFA
17 here.  I don't see how that has anything to do with
18 what has been pled.
19        MR. BUCHANAN:  Your Honor, I do have an
20 impending Rule to Show Cause --
21        THE COURT:  Just a moment.  Let her

Page 85

1  finish, sir.
2         MS. GIBSON:  I think that's taking us far
3  afield from the issues that are squarely before this
4  Court.
5         I think it will just take us down a path
6  that wasn't asked on direct and has nothing to do with
7  the issues.
8         THE COURT:  Well, I'm going to let Mr.
9  Buchanan exceed the scope of direct just for the
10 purposes of efficiency, but Mr. Buchanan, you have
11 remedies with regard to your personal property.  But
12 they are not a defense to this action.
13        The motion is sustained.
14        MR. BUCHANAN:  I realize that, Your Honor.
15 It shows that -- if I can bring those out, it will
16 show that this case is retaliatory to Mr. Richards
17 being served with a trespass action in the Chancellory
18 Court, and through Glendis Gibson a permitted service
19 through Barbara's attorney.
20        And I will show that Ms. Buchanan, which
21 is the only jurisdiction to this court has violated

22 (Pages 82 to 85)

Page 86

1 the property division order, which is core to this
2 proceeding.
3     THE COURT: Let me ask a question that I
4 think might get a little bit more to the heart of it.
5     Ma'am, in going into the house, you want
6 to get into the house so that you can prepare it for
7 sale; correct?
8     MS. RICHARDS: That's correct.
9     THE COURT: What do you intend to do to
10 prepare it for sale? I mean, you live somewhere
11 else. You don't intend to live at this property;
12 right?
13     MS. RICHARDS: That's correct. I intend
14 to clear everything out so that it can be listed for
15 sale.
16     THE COURT: So when you -- when somebody
17 comes by to see this house anyway, there's going to be
18 nothing in there?
19     MS. RICHARDS: That's correct.
20     THE COURT: And what do you intend to do
21 with everything?

Page 87

1     MS. RICHARDS: I need to get rid of it.
2     THE COURT: But where's it going to go?
3 Are you going to take it to the dump or are you going
4 to put it in a storage facility? What are you going
5 to do?
6     MS. RICHARDS: I intended to take it
7 either to the dump or deposit it in a place where Mr.
8 Buchanan can claim his personal property.
9     THE COURT: Okay. Thank you.
10   Q   Ms. Buchanan, did you leave a receipt or
11 provide me with a receipt of all of the documents,
12 computers, privileged information and guns, licenses,
13 furniture, food, beverage that you took from the
14 property?
15   A   I didn't leave a receipt. My intention
16 was to clean out the house and it was a major job.
17 And it's still not done.
18     THE COURT: Let me ask you. Have you
19 cleaned some stuff out?
20     MS. RICHARDS: Yes.
21     THE COURT: But there's still some stuff

Page 88

1 left?
2     MS. RICHARDS: A lot of stuff left.
3     THE COURT: And the stuff that you cleaned
4 out, where is it?
5     MS. RICHARDS: Actually, we moved it from
6 the main portion of the house to the basement.
7     THE COURT: So it's all still there?
8     MS. RICHARDS: Most of it, yes.
9     THE COURT: Other than things that would
10 be obvious trash? You've taken out the rubbish --
11     MS. RICHARDS: The firearms are not there.
12     THE COURT: The firearms are not there.
13 But all other valuable items are in the basement or in
14 storage -- or have been stored and not thrown away?
15     MS. RICHARDS: Yes. Yes.
16     THE COURT: Thank you.
17   Q   Ms. Richards, how did you gain entrance to
18 the house without my presence?
19   A   We called a locksmith in.
20   Q   Did you receive keys from the State
21 Police?

Page 89

1   A   No.
2   Q   How did you gain entrance to the vehicle
3 that was parked outside and locked on January 4th,
4 known to be my privately owned Ford truck?
5   A   I didn't enter the truck.
6   Q   Are you in possession of a spear gun,
7 approximately four and a half feet long?
8   A   Yes.
9   Q   Where did that spear gun come from?
10   A   The house.
11   Q   Are you in possession -- were you in
12 possession of my wallet and personal identification?
13   A   Yes. Which I returned to you.
14   Q   How did you return those items to me?
15   A   Through the D.C. Court.
16   Q   Through the D.C. Court or a particular
17 person?
18   A   The particular person who worked for the
19 D.C. court.
20   Q   I'm asking you what agency of the court
21 did they work for?

23 (Pages 86 to 89)

Buchanan v. Richards Hearing - 3/13/08

Page 90

1    A    Attorney's office.

2    Q    Why would you return property confiscated
3    in Delaware through a court in the District of
4    Columbia?

5    A    You were due to appear in District Court
6    in D.C.

7    Q    How do you know I'm due to appear in
8    District Court?

9    A    Because I'm the victim of that. Victims
10   get notified.

11   Q    And what is the victim of that crime?
12   What makes you a victim of a crime?

13   A    You fraudulently took my identity, signed
14   a check over $3000 made out to yourself.

15   Q    And where was that check deposited that
16   you -- how did you --

17   A    Into your bank account.

18   Q    Where was that bank account?

19   A    I believe it was in Maryland.

20   Q    And when did that happen?

21   A    In 2004 or 5.

Page 91

1    Q    And at that period of time, where were you
2    living?

3    A    In D.C.

4    Q    What address in D.C. were you living?

5    A    5490 --

6         MS. GIBSON: Your Honor --

7         THE COURT: I don't see why she has to
8    divulge that information, sir.

9         MR. BUCHANAN: Your Honor, it shows
10   jurisdiction. She went outside the jurisdiction of
11   this court to incumber a non-jurisdictional court
12   using a false address.

13        MS. RICHARDS: It wasn't a false address.

14        THE COURT: Objection is sustained. I
15   don't find any relevance to today.

16   Q    Do you have any copy of bill of laden for
17   removing horses from the property on January 26th?

18   A    No.

19   Q    Do you have an order from the court
20   allowing me to confiscate property and livestock from
21   the properties on January 26th?

Page 92

1         THE COURT: Ma'am, let me ask you first,
2    did you confiscate livestock?

3         MS. RICHARDS: I had the livestock removed
4    because I can't be there every day to feed the horses.

5    Q    Do you have a copy of a bill of laden to
6    remove those from the State of Delaware from the
7    court, or from the property?

8         Do you have a transport document?

9         THE COURT: She said no. She had no bill
10   of laden.

11   A    No.

12   Q    Can you provide the name and address of
13   where the horses are staying?

14   A    I can give the name and the phone number
15   of the person I allowed to take the horses away.

16   Q    And did you receive any compensation for
17   those horses?

18   A    No.

19   Q    How much money did you pay to transport
20   them?

21   A    Nothing.

Page 93

1    Q    Who do the horses belong to?

2    A    They belong to the person I gave them to.
3    I forget his name.

4    Q    Who did the horses belong to before you
5    removed them from the property?

6         THE COURT: Ma'am, to your knowledge, who
7    did the horses belong to?

8    A    They belonged to him and I as we were
9    married.

10   Q    Do you know for sure that those horses
11   belonged to me? Do you have any document saying those
12   horses belonged to me?

13   A    They were on our -- yes. I believe they
14   belonged to myself and Mr. Buchanan.

15   Q    So it would not be unusual -- it would be
16   unusual for somebody to board a horse on a farm?

17   A    They belonged to you and I when we were
18   married.

19   Q    That was five years ago.

20        THE COURT: Sir, this is going too far. I
21   don't see any relevance to this.

24 (Pages 90 to 93)

Page 94

1    Q    Were the State Police present when the

2  horses were removed?

3    A    Yes.

4    Q    Which officer was allowed to remove the

5  horses?

6        THE COURT: Objection sustained.

7        MR. BUCHANAN: Give me a second to

8  recompose here, Your Honor, just to see if I have more

9  questions.

10    Q    In your complaint you say the situation

11  has been going far forward -- going on for the last

12  six years with no resolution. Can you give me any

13  documents, statement or any pleading or any offer to

14  resolve these situation of property division over the

15  last six years?

16    A    Yes. When Mr. Jones offered to buy the

17  property, that was a form of resolution.

18    Q    How long was that listing in effect when

19  Mr. Jones offered that property?

20    A    I don't know the dates.

21    Q    Did I sign a listing prior to Mr. Jones

Page 95

1  putting an offer to it?

2    A    Not that I know of.

3    Q    Did Mr. Cooper present that listing

4  agreement to me prior to Mr. Jones offering -- putting

5  $1000 down on that property?

6    A    Not that I know of.

7    Q    What was the price on the contract?

8    A    $225,000.

9    Q    And that was just for what piece of

10  property, the residence, the 90 acres or both?

11    A    That was for the 90 acres.

12    Q    So what offer have you done to the court

13  -- efforts to the court to list and sell the 26 acres

14  with the residential building on it?

15    A    I feel unable to enter the property in

16  order to list it --

17    Q    That's not the question. Your Honor, I

18  asked Ms. Buchanan what listing agreement has she

19  filed with the court to provide an attempt to --

20        THE COURT: I don't see the relevance.

21        MR. BUCHANAN: The relevance is, Your

Page 96

1  Honor, they evicted me from an office based on a

2  separate 26 acres when they have not done anything to

3  put forward a listing or sale agreement.

4        THE COURT: Then if that's true then Judge

5  Hendrickson issued an order that doesn't satisfy you.

6        But I don't see what relevance that has --

7        MR. BUCHANAN: It shows abandonment, Your

8  Honor.

9        THE COURT: The order says what the order

10  says.

11    Q    In your complaint you say I haven't had

12  contact with Mr. Buchanan since October of '07. What

13  was that contact?

14    A    I was trying to contact you to let you

15  know that there was an offer on the 90 acres.

16    Q    During that period of time, did you enjoy

17  a relief of -- a stay of contact order from the

18  Washington, D.C. District Court?

19    A    There was a no contact order in place,

20  yes.

21    Q    So my response to that would be forcing me

Page 97

1  to violate a Federal Court order stay of no contact;

2  correct?

3    A    I don't believe you were forced to do

4  anything.

5    Q    And that's exactly what I didn't do. I

6  did not respond to violate a Court order of the

7  Federal Government, Your Honor.

8    A    He did, however, contact me many, many

9  times.

10        THE COURT: So despite the fact that --

11  it's relevant for me to know, ma'am -- despite the

12  fact that there was a no contact order from the D.C.

13  court, you did at one point contact Mr. Buchanan?

14        MS. RICHARDS: I did because in the order

15  it states that I should contact -- give him 24 hours

16  notice of us coming out to the property in order to

17  either list it or to show it.

18        So I was following an order to contact him

19  and give him notice.

20        THE COURT: Thank you. And the order of

21  the D.C. court, as I understand it, was an order for

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 98

1  him to have no contact with you; is that correct?
2       MS. RICHARDS:  That's correct.  He could
3  have contacted Mr. Cooper.
4       THE COURT:  But there was no order saying
5  that you couldn't have contact with him?
6       MS. RICHARDS:  That's correct.
7       MR. BUCHANAN:  Even though, Your Honor, I
8  could not respond to any contact that she had --
9       THE COURT:  But she could unilaterally
10  communicate to you that she was coming out to the
11  house --
12       MR. BUCHANAN:  I could not file a
13  document, I couldn't sign a document, I couldn't refer
14  to --
15       THE COURT:  But she could let you know
16  unilaterally a piece of information.
17       MR. BUCHANAN:  That's correct.  The
18  Bankruptcy order requiring 24 hours notice came from
19  the District Court in Delaware; correct?  The District
20  Court, is that the order you're referring to for 24
21  hour notice?

Page 99

1       MS. RICHARDS:  I don't recall which order
2  it came from.  I do recall that I needed to give you
3  24 hour notice.
4       Q    Did you ever have telephone conversation
5  with me 24 hours notice to entering that property?
6       A    I left numerous phone messages.
7       Q    Did you ever have contact with me
8  personally?
9       A    No.
10      Q    Did you make an effort to contact me
11  personally?
12      A    Yes.
13      Q    How did you do that?
14      A    Called every known phone number that I had
15  and I wrote -- I sent letters to where I believed you
16  resided, which was in a property you were evicted
17  from.
18      Q    Did you have Mr. Cooper accompany you to
19  the property on December 23rd of 2006?
20      A    Yes.  It was around that time.  Yes.
21      Q    December 23rd?

Page 100

1       A    I don't recall the date, but it was around
2  Christmas time.
3       Q    And did you contact me 24 hours to that
4  date --
5       A    Yes.
6       Q    You talked to me?
7       A    I attempted to contact you.
8       Q    And then how did you do that?
9       A    With numerous phone calls.
10      Q    And did you send a registered letter
11  attempting to contact me and sending a letter to the
12  State of Florida --
13      THE COURT:  Sir, how does this help your
14  case?
15      MR. BUCHANAN:  It pertains to me not even
16  being there.  She had cause to believe that I was in
17  Florida.  She sent a notice of a listing to an address
18  out of the state, all the way to Florida, indicating
19  that she believed that I was down in Florida, not in
20  Delaware.
21      MS. RICHARDS:  I sent a notice to both the

Page 101

1  Florida address that was in court documents and to the
2  Delaware address.
3       THE COURT:  Thank you.
4       Q    Did you send it registered mail?
5       A    Yes.
6       Q    And was the registered receipt returned as
7  a delivered item?
8       A    No.  The items were returned.  But then
9  there was court action shortly after that indicating
10  that you had gotten the notice that we needed to come
11  out to the property.
12      Q    Is it possible that you could have
13  provided notice through our joint adult daughter to
14  make contact of where I was at?
15      MS. GIBSON:  Your Honor, can we just --
16      THE COURT:  Objection.  What's the
17  relevance here?
18      MR. BUCHANAN:  Withdrawn.
19      Let me just look at this order just for a
20  minute, Your Honor.  I may have a couple of questions.
21      Q    As you stated before Ms. Richards, that

Buchanan v. Richards Hearing - 3/13/08

Page 102

1  you do not live at 34806 Hudson Road. In what way
2  would I be assaulting you by having an office there?
3      A    There is an eviction order. In my mind,
4  that eviction order --
5      Q    That's not the question. Which way would
6  I be assaulting you -- which way would I be abusing
7  you by having an office there?
8      A    You're preventing me from cleaning the
9  house and showing it and listing it.
10     Q    Have I denied you access to the house at
11  all?
12     A    Yes.
13     Q    How?
14     A    By not answering the door.
15     Q    Have you asked me for a key to the house?
16     A    No.
17     Q    Pertaining to the order of March -- April
18  4th, 2006 under relevant factors of property division
19  which brings us here. Did you truthfully submit an
20  income verification and address to this court --
21         MS. GIBSON:  Your Honor, I just -- I have

Page 103

1  to object --
2      A    Yes.
3          MS. GIBSON:  --on the grounds of
4  relevancy.
5          THE COURT:  Relevance, sir?
6      Q    And as directed by the Bankruptcy Court --
7          THE COURT:  Objection sustained.
8          MR. BUCHANAN:  On this question?
9          THE COURT:  She --
10         MR. BUCHANAN:  Okay.  That's fine.
11     Q    On the relevance of the Bankruptcy Court
12  proceedings, did you file a claim as ordered to do?
13         MS. GIBSON:  Your Honor, I'm going to
14  object --
15         THE COURT:  Objection sustained.
16         MR. BUCHANAN:  It shows abandonment, Your
17  Honor, to proceedings, unwillingness to correct.
18         THE COURT:  Abandonment is not relevant to
19  this proceeding.
20     Q    When you proceeded to file a PFA against
21  me, I'm a little troubled on what you believed was

Page 104

1  constituting -- there's an affidavit in here from
2  abuse. I'm a little confused on what -- how
3  evictioning me from the house or me even driving by
4  the house or working somewhere or having possession of
5  firearms is an abuse of you when you live 150 miles
6  away.
7      A    I need to come to the property in order to
8  clean it and list it. I don't feel safe when there
9  are guns available to you and you have --
10     Q    Does your husband own a gun?
11         MS. GIBSON:  Your Honor, I'm going to
12  object.
13         MR. BUCHANAN:  It's relevant, Your Honor.
14         MS. GIBSON:  It's not relevant to --
15         MR. BUCHANAN:  He could flip at any
16  minute.
17         THE COURT:  Sir, let her make her
18  objection.
19         MS. GIBSON:  Your Honor, I don't believe
20  that it's relevant in any way whether Ms. Richards'
21  husband owns a gun, has a gun. We're here about the

Page 105

1  very specific allegations in this PFA that have
2  nothing to do with Ms. Richards' husband.
3      Q    The gun that was found on --
4          THE COURT:  Objection sustained.
5      Q    The gun that was found on March 26th,
6  where is that gun?
7      A    With the Delaware State Police.
8      Q    And are you in possession of a receipt for
9  that item?
10     A    No.
11     Q    How did the Delaware State Police gain
12  entry on the house?
13     A    I don't know, I wasn't there.
14     Q    Were you there when the horses were towed
15  from the property?
16     A    Yes.
17     Q    And I need to have the name of that
18  person.
19     A    I can provide you that, but not from here.
20         MR. BUCHANAN:  Your Honor, that is
21  relevant and I have to have the name and phone number

27 (Pages 102 to 105)

Buchanan v. Richards Hearing - 3/13/08

Page 106

1 at this time.
2        MS. RICHARDS: I also provided that to the
3 Delaware State Police.
4        THE COURT: Why?
5        MR. BUCHANAN: Because it shows theft of
6 property. The property doesn't belong to me, it
7 belongs to other parties. And it's horse theft.
8        THE COURT: It's not relevant today,
9 though.
10    Q    In your complaint you say I'm keeping him
11 from employment. Have you done anything or filed
12 anything with this court or another court or asked for
13 police assistance to have me arrested?
14        MS. GIBSON: Your Honor, I'm not sure I
15 understand --
16        MR. BUCHANAN: It's relevant, Your Honor.
17        MS. GIBSON: I just didn't understand the
18 question. If he could rephrase the question.
19        THE COURT: Could you rephrase the
20 question, please. I didn't understand it.
21    Q    You claim in your complaint, therefore, I

Page 107

1 am very fearful of my life. Contract of sale of
2 property, multiple arrests, his perception that I am
3 keeping him from employment.
4        What gives you the perception that I feel
5 you are keeping me from employment?
6    A    You filed papers in court saying that I am
7 keeping you from employment. The previous PFA against
8 me which was dismissed stated that you felt that I was
9 keeping you from employment.
10    Q    Another reason why I'm fearful is that Mr.
11 Buchanan has been diagnosed with personality disorder
12 that renders him very unpredictable and unstable.
13        Can you elaborate on what you're trying to
14 claim there?
15    A    I have a diagnosis from Dr. Wilson when we
16 --
17    Q    Do you have the diagnosis with you today?
18    A    Yes.
19    Q    And may we present it to the judge so he
20 can see what --
21        THE COURT: Are you willing to stipulate

Page 108

1 to the admission of that?
2        MR. BUCHANAN: Yes, I do.
3        MS. GIBSON: Your Honor, I have a copy of
4 it. It's attached to the PFA. I believe it's in the
5 court file.
6        MR. BUCHANAN: I did not get a copy of
7 that attached to the PFA at all.
8        THE COURT: Okay.
9        MS. GIBSON: For the record, Your Honor,
10 it is a diagnosis from Dr. Edward S. Wilson, III,
11 Ph.D. It's a psychological evaluation done of David
12 Buchanan.
13        Did Your Honor see it attached to the PFA?
14        THE COURT: Not yet.
15        MR. BUCHANAN: What's the date of that
16 evaluation?
17        MS. GIBSON: December 15th, 2003.
18        THE COURT: There's no such attachment.
19        MS. GIBSON: Your Honor, I have it here if
20 the Court would like to receive this as Respondent's
21 1.

Page 109

1        THE COURT: Why don't you show it to Mr.
2 Buchanan, please.
3        There you are, sir.
4        MR. BUCHANAN: Thank you.
5        THE COURT: It will be admitted.
6        MR. BUCHANAN: The Court should already
7 have a copy of it in the file, Your Honor.
8        THE COURT: It probably is in here
9 somewhere.
10    Q    Barbara, in that diagnosis from Dr. Wilson
11 on December 15th, 2003, does it make the mention of
12 the words narcissistic approach?
13    A    I don't know.
14    Q    During the period of that evaluation, does
15 the -- was there any indication that I was being
16 treated for cancer?
17    A    I don't recall that being in the
18 diagnosis.
19    Q    During that period of time, was there any
20 indication that I was unemployed for the treatment of
21 cancer?

28 (Pages 106 to 109)

Page 110

1       THE COURT: That you were unemployed --
2   A    It wasn't listed in the diagnosis that I
3 recall.
4   Q    During that period of time, do you have
5 knowledge of me being treated for cancer?
6   A    You brought it up to the court numerous
7 times that you were being treated for cancer, but --
8   Q    Didn't you in fact on March 18th, 2003,
9 call the Nanico Memorial Hospital billing department
10 and ask for records for payment for my treatment,
11 emergency, for cancer?
12   A    I understood that you had a medical issue
13 --
14   Q    That's not the question. Did you call the
15 hospital on March 18th, 2003.
16       MS. GIBSON: Your Honor, if I could just
17 object. I just don't know where the relevancy of the
18 cancer treatment is.
19       MR. BUCHANAN: The relevancy of the
20 cancer, Your Honor, is to the admission --
21       THE COURT: The objection is overruled.

Page 111

1 Ma'am, did you call the hospital looking for those
2 records?
3       MS. RICHARDS: I understood that he had a
4 problem with an insurance issue. And yes, I did call
5 the hospital in order to resolve the insurance issue
6 that he had.
7       THE COURT: Thank you.
8   Q    Did you, on that day, or near about that
9 same day, ask Mr. Gay to supply an emergency motion to
10 show -- to list and sell the properties without a
11 value to this court prior to property division?
12   A    Are you --
13   Q    Did you respond to me being incarcerated
14 or infirmed with a petition to emergency list and sell
15 those properties on March 18th, 2003.
16       MS. GIBSON: Your Honor, I object.
17 There's no foundation for what he's asking. I can't
18 follow what he's asking.
19       MR. BUCHANAN: It shows the intent, Your
20 Honor, to disrupt me from the property without making
21 a claim, without taking any action to protect the

Page 112

1 property and while Mr. Gay was in possession of two
2 listing agreements with Century 21.
3       THE COURT: You made your point. Move on.
4   Q    Ms. Richards, did you file a document
5 known to this court as a certificate of divorce on
6 August 9th, 2003 with your employer?
7   A    I filed, yes. I --
8   Q    What was the intent of filing that
9 document with your employer?
10       MS. GIBSON: Your Honor, I object. Just
11 from a relevance standpoint --
12       MR. BUCHANAN: It shows the intent, Your
13 Honor, to disrupt income paid by the Federal
14 Government and her employer for distribution of
15 housing for me and to disrupt my medical field and
16 shows the intent to disturb the performance of
17 mortgages on the property.
18       THE COURT: Objection is sustained. Not
19 relevant.
20       All of this evidence goes to whether or
21 not Judge Hendrickson should have excluded you from

Page 113

1 the property --
2       MR. BUCHANAN: I understand, Your Honor.
3 But it also goes --
4       THE COURT: But he did.
5       MR. BUCHANAN: It also goes to support --
6 I have a petition for protection from abuse that Ms.
7 Buchanan believes and she's fearful for her life. And
8 she's -- it's all hearsay and it's all within Ms.
9 Buchanan's mind.
10       I have to find out what's causing her
11 fear, because there's -- obviously she hasn't had
12 contact with me in five years. There's nothing that I
13 did to encourage her fear.
14       And Dr. Wilson also made a diagnosis which
15 Mr. Gay disrupted on subpoena with this court, stating
16 that Ms. Buchanan has degenerative paranoid
17 schizophrenia.
18       THE COURT: Do you have that with you?
19       MR. BUCHANAN: No, I do not. It has not
20 been presented to the court.
21       Mr. Gay interfered with the service of

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 114

1  subpoena. And it was requested during the property
2  division proceedings, the child support proceedings,
3  child custody proceedings.
4        And it was not brought to the court later
5  by Dr. Wilson.
6        THE COURT: Objection is -- well, it's not
7  here so move on.
8        MR. BUCHANAN: All right.
9    Q    Do you know what I do for employment, Ms.
10 Richards?
11   A    No.
12   Q    While we were married, how did I support
13 the mortgages on the farm?
14   A    You were a truck driver and a farmer.
15   Q    On the day that I was arrested on the 26th
16 of January, was there a tractor trailer at the farm or
17 on the 90 acres?
18   A    So I was told, yes.
19   Q    Was there a tractor trailer on January
20 26th when you came to pick up the horses on the 90
21 acres?

Page 115

1    A    No.
2        MR. BUCHANAN: That's all I have for this
3  witness, Your Honor.
4        THE COURT: Thank you. Redirect?
5        EXAMINATION BY MS. GIBSON:
6    Q    Ms. Richards, are you under any order to
7  pay mortgages or utilities in connection with either
8  the two properties?
9    A    No.
10       MS. GIBSON: I have no other questions,
11 Your Honor.
12       And I have no other witnesses.
13       THE COURT: Question about that question
14 specifically?
15       MR. BUCHANAN: That very particular thing,
16 Your Honor.
17       EXAMINATION BY MR. BUCHANAN:
18   Q    Are you in possession of any order from
19 the State of Delaware, from the Superior Court, from
20 the Court of Chancellry, from this Court, permitting
21 you to not perform the contractual obligation. Or is

Page 116

1  there an agreement between you and me that I will only
2  pay for those contracts?
3        MS. GIBSON: Your Honor, I --
4        MR. BUCHANAN: It shows contractual
5  obligation and it shows abandonment. It shows that
6  she has not claim to the property whatsoever.
7        THE COURT: Let me understand the
8  question. Ma'am, you say you're not under an order to
9  pay the -- any of these things.
10       MS. RICHARDS: That's correct.
11       THE COURT: Are you under any contractual
12 obligation to pay these things?
13       MS. RICHARDS: I am. And I'm trying to
14 fulfill that mortgage obligation through the sale of
15 the property.
16       THE COURT: Thank you.  You may return to
17 your seat.
18       MS. RICHARDS: Thank you.
19       THE COURT: Mr. Buchanan, do you have
20 anything more to say about the subpoena to Mr. Gay?
21       MR. BUCHANAN: Yes, Your Honor. I would

Page 117

1  like to have Mr. Gay show up so I can ask him whether
2  he has filed a -- has proceeded in these proceedings
3  over property without performing a stipulated on
4  February 7th, '06.
5        THE COURT: I don't see the relevance,
6  sir. Mr. Gay's subpoena is quashed. I don't see he
7  could answer any of those questions to the extent that
8  there was any relevance, without violating the
9  attorney client privilege.
10       MR. BUCHANAN: Attorney client privilege,
11 Your Honor, I don't believe covers items that have to
12 be disclosed under a rule of the court.
13       The Rule 16C states that they must file an
14 updated -- Rule 16C with this court prior to property
15 division proceeding--
16       THE COURT: Then that can be an element of
17 your appeal of my decision.
18       MR. BUCHANAN: Sir?
19       THE COURT: Then that can be an element of
20 your appeal of my decision.
21       MR. BUCHANAN: Okay.

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 118

1    THE COURT: Are you calling any other
2  witnesses today other than yourself?
3    MR. BUCHANAN: I would like to call Mr.
4  Richards.
5    THE COURT: Mr. Richards? Who's Mr.
6  Richards?
7    MR. BUCHANAN: I believe that's Mr.
8  Richards.
9    THE COURT: Okay. Mr. Richards.
10    MS. GIBSON: Your Honor, if I could just
11  perhaps ask for a proffer of what he believes he may
12  seek in the way of evidence from this witness.
13    THE COURT: I think it would be more
14  efficient just to let the questions be asked.
15    MS. GIBSON: Okay.
16    THE COURT: I don't want to -- we'll just
17  end up doing it all over twice.
18    MR. RICHARDS,
19  after having been first duly sworn according to law,
20  was examined and testified as follows:
21    EXAMINATION BY MR. BUCHANAN:

Page 119

1    Q    Mr. Richards, can you tell me your place
2  of employ, please.
3    A    U.S. Government.
4    Q    Which element of the U.S. Government?
5    A    U.S. Military.
6    Q    What do you do in the U.S. Military?
7    A    Military police.
8    Q    You're a policeman.
9    A    Is there a problem with that?
10    Q    I'm asking the questions. Thank you.
11    THE COURT: Sir, don't --
12    MR. RICHARDS: Yes, sir.
13    Q    How long have you been a military
14  policeman, I assume for the Air Force?
15    A    My entire career.
16    Q    Which is, how long?
17    THE COURT: How long is that, sir?
18    A    29 years.
19    Q    29 years?
20    A    Correct.
21    Q    So on the 29 years, you've become fairly

Page 120

1  acquainted with procedure for search and seizure?
2    MS. GIBSON: Your Honor --
3    MR. BUCHANAN: It's relevant, Your Honor.
4    THE COURT: How is it relevant?
5    MR. BUCHANAN: He is acting as a military
6  policeman from, I assume assigned to the District of
7  Columbia, U.S. District Court, and he has performed
8  search warrants -- or searches and seizures without a
9  warrant.
10    THE COURT: So? Assuming that were the
11  case, what would I do with that information?
12    MR. BUCHANAN: It shows a trespass, Your
13  Honor. Violation of Constitutional law --
14    THE COURT: Where?
15    MR. BUCHANAN: Constitutional Rule 4.
16    THE COURT: So?
17    MR. BUCHANAN: Title 4.
18    THE COURT: So, what -- how does that help
19  me in this case, though? Assuming it was true, how
20  would this help me decide this case whether or not
21  he's violating somebody else's rights --

Page 121

1    MR. BUCHANAN: There is a conspiracy
2  between Mrs. Richards and Mr. Richards to remove
3  personal property and cause harm on me, not a -- not a
4  retaliatory -- not a PFA for her against me.
5    THE COURT: There might be some relevance
6  to that theory, but I don't see how that question gets
7  there. The objection is sustained.
8    Q    Mr. Richards, were you present on January
9  4th, 2008 at 34806 Hudson Road?
10    A    Yes.
11    Q    Did you remove any firearms from that
12  property?
13    A    Yes. At the request of the State Police,
14  Delaware State Police.
15    Q    Do you have an officer's name that
16  requested that?
17    A    No.
18    Q    How many State Police officers were there
19  when you removed those? Were there State Police
20  officers there?
21    A    Yes, there were.

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 122

1    Q    Did you leave a receipt for, or provide a
2    receipt to the State Police for the removal of that
3    property?
4    A    I didn't feel I needed to.  Barbara
5    Richards is a co-owner of that property, therefore
6    anything I felt was --
7         THE COURT:  Yes or no, sir?
8    A    No, sir.
9    Q    Did you have a warrant to remove this
10   property?
11   A    I did not.
12   Q    Did you have a warrant to search that
13   property?
14   A    I did not.
15   Q    Did you have a court order allowing you to
16   trespass on that property?
17        MS. GIBSON:  Objection, Your Honor.
18        MR. BUCHANAN:  It's relevant, Your Honor.
19        THE COURT:  The objection is to the
20   characteristic of trespass.  That's a legal
21   conclusion.

Page 123

1    Q    Did you remove any other property from
2    that residence besides firearms?
3    A    Yes.
4    Q    What was the property that you removed?
5    A    There was miscellaneous items.  I mainly
6    was focused on the weapons.  There was some stuff that
7    needed to be loaded, trash and such.
8         So I didn't take an inventory, Your Honor.
9    Q    Did you remove any documents?
10   A    There was black trash bags full of items.
11   I don't know what was in the items.  I believe so.
12   Q    Did you -- where did you find the firearms
13   that you removed?
14   A    I found firearms in every room of the
15   house, some hidden in vents, some in the back of
16   toilet tanks.
17        It appeared -- in my professional opinion,
18   it appeared that they were set there intentionally.
19   Q    Now, you say there was a gun located in
20   the back of a toilet tank.  What kind of gun was that?
21   A    It was a hand gun.

Page 124

1    Q    What kind of hand gun?
2    A    I'm not sure.  There were so many.  I
3    didn't take inventory of the location.
4    Q    You have been a police officer for 29
5    years and you do not know what kind of hand gun you
6    removed from the back of a toilet tank?
7    A    As I said, there was at least 13 loaded
8    weapons.  And as we found them, we did not inventory
9    location.  We just --
10   Q    You said we found them.  Who was we?
11   A    Myself and my wife.
12   Q    The record reflects that Ms. Richards
13   assisted David Richards in finding the weapons.
14        Did you remove a rifle?
15   A    There was some long guns in there.  Yes, I
16   believe there was more than one rifle.
17   Q    Did you remove a shot gun?
18   A    There was a number of shot guns.
19   Q    Was there any assault weapons removed?
20   A    I believe there --
21   Q    By definition of assault, I'm assuming

Page 125

1    like an M16 or a K9 or something like that.
2    A    I believe there was one weapon that I
3    would classify as an assault.
4    Q    And what was that weapon, as you
5    classified it, what did it appear like and what was
6    it?
7    A    It was a large caliber multi-round
8    magazined weapon.
9    Q    A large caliber multi-round -- and what
10   kind of weapon was it?  Was it black, was it brown,
11   was it silver?  What was it?
12   A    As I said, I'm not sure of the make and
13   model.  I did not -- I have a written inventory, but I
14   didn't at that time make a mental note.
15        THE COURT:  You do have a written
16   inventory?
17   Q    Do you have that written inventory with
18   you?
19   A    Of that particular weapon.
20        THE COURT:  Of that particular weapon?
21        MR. RICHARDS:  Yes.  Serial number.  I

32 (Pages 122 to 125)

Buchanan v. Richards Hearing - 3/13/08

Page 126

1  just didn't bring it with me.
2          THE COURT: The assault weapon you wrote
3  down the serial number of that?
4          MR. RICHARDS: Correct.
5          THE COURT: Go ahead.
6          Why?
7          MR. RICHARDS: Sir?
8          THE COURT: Why?
9          MR. RICHARDS: In case the settlement came
10  through, part of the settlement, Barb said that she
11  would return the property in the settlement.
12          THE COURT: Thank you. You recognize this
13  is a valuable piece of property?
14          MR. RICHARDS: Sir?
15          THE COURT: This assault weapon you would
16  recognize is a valuable piece of property?
17          MR. RICHARDS: Well in law enforcement,
18  sir, I'm sure it is -- it may have meaning to him.
19  The intent was just to remove the threat from the
20  property.
21          THE COURT: Thank you. Go ahead.

Page 127

1      Q    How did you -- in what process did you
2  remove these weapons? What did you do?
3      A    We stacked them in the foyer and then when
4  we left, we took them with us.
5      Q    You stacked them. Did you unload them?
6      A    We unloaded them first. Every single
7  weapon was magazine -- well, the magazine weapons were
8  loaded and there was rounds in the chambers.
9      Q    What did you do with the ammunition that
10  you removed from the weapon?
11      A    We kept that with the weapons separated
12  and we confiscated that as well.
13      Q    So with your 29 years of experience, what
14  caliber weapons were removed from the house?
15      A    Everything from a .22 to a 30 odd 6.
16      Q    So you saw a 30 odd 6, what make was that.
17  Because now you've identified it as a 30 odd 6 rifle.
18  What make was that?
19      A    I said -- you asked me about the
20  ammunition. I found 30 odd 6 ammunition.
21      Q    I asked you about the ammunition removed

Page 128

1  from the weapons.
2      A    Yes.
3      Q    Now, who cleared those weapons. In other
4  words --
5      A    I did.
6      Q    You did. Now, with your experience with
7  29 years, you cleared weapons and you don't know what
8  kind of weapons you cleared?
9          THE COURT: Where is this leading, whether
10  or not he can --
11          MR. BUCHANAN: It's leading, Your Honor,
12  that he had the intent, the willful intent and did not
13  make a receipt. He has knowledge of that those
14  weapons were valuable.
15          And it shows that he illegally removed
16  property from me causing harm on me.
17      Q    Where are those weapons today? Withdrawn,
18  Your Honor.
19          THE COURT: Where are those weapons?
20      A    In our possession.
21      Q    Which is?

Page 129

1          THE COURT: In your possession? I thought
2  you gave them to the State Police.
3          MR. RICHARDS: The only one was the second
4  time we came back, sir, we found another concealed
5  shot gun, the State Police found a concealed shot gun.
6  They came and took pictures. They took that weapon.
7          THE COURT: But the other weapons you have
8  somewhere?
9          MR. RICHARDS: Yes. The State Police did
10  not have -- when we discussed it with the State
11  Police, they thought -- we all thought it was best
12  that we just take the weapons.
13          Again, the property was half in her name,
14  so the assumption was made that it's her property --
15          THE COURT: At that time there was no PFA
16  in effect?
17          MR. RICHARDS: That is correct. There was
18  a no contact order, sir, but no PFA.
19      Q    You say you took an inventory of the
20  weapons. Did you take -- write down the -- how did
21  you take an inventory? What was the inventory that

33 (Pages 126 to 129)

Buchanan v. Richards Hearing - 3/13/08

Page 130

1 you took?
2      A      When I got home, I took each weapon, put
3 it in my computer and I have a listing of all of the
4 weapons and serial numbers.
5      Q      So you took the weapons to your house.
6 And how many state lines did you cross with those?
7             MS. GIBSON: Your Honor --
8             MR. BUCHANAN: It's important, Your Honor,
9 because it shows felony transportation of fire arms.
10            THE COURT: Objection sustained.
11     Q      Did you take any hand guns from the
12 property?
13     A      Yes.
14     Q      Large caliber, small caliber?
15     A      I believe there was a couple of .22s and
16 there was a .357.
17     Q      Was there a .9 millimeter?
18     A      I believe so.
19     Q      Was there a .45?
20     A      I believe so.
21     Q      Was there a .38?

Page 131

1      A      I believe so.
2      Q      Was there a .357?
3      A      I believe there was only one revolver.
4      Q      Did you remove a stainless steel snug nose
5 revolver from the mattress of the bedroom upstairs?
6      A      I did not.
7      Q      Did you remove a highway patrol .357 from
8 the shelf over the bathroom upstairs?
9      A      I did not.
10     Q      Did you load those -- clear them and load
11 them in a car?
12     A      I cleared them, yes.
13     Q      So if you cleared them, if you stated you
14 cleared those weapons, you would recognize the round
15 of a .357 and a .38. You know the difference;
16 correct?
17     A      Correct.
18     Q      Were you in possession, when you got
19 home and inventoried it, a snug nose .38 Dan Wesson
20 and a .357 Smith and Wesson?
21     A      I believe so.

Page 132

1      Q      Were you in possession of a Rugger .22
2 stainless steel target?
3      A      Yes.
4      Q      Were you in possession of a Luger .9
5 millimeter World War II model?
6      A      Yes, I believe there was one.
7      Q      Were you in possession of an over under
8 Browning and Sheltery shot gun?
9      A      Yes.
10     Q      Were you in possession of a 300 Winchester
11 magnum bolt action rifle with a scope?
12     A      No. I believe -- if it was a -- I believe
13 it was a 30 odd 6.
14     Q      You inventoried that weapon and you -- how
15 did you inventory it? What did you write down for the
16 inventory on that?
17     A      I put down the serial number and the
18 nomenclature of the weapon.
19     Q      Was it a Browning? Was it a Remmington?
20 What brand was it?
21     A      I deal with weapons day in and day out.

Page 133

1 This was a couple months ago. I would have to refer
2 to my records.
3      Q      Did you inventory a Weatherby .22
4 automatic?
5      A      I can't recall.
6      Q      Did you indicate -- did you inventory a 30
7 30 Marlin lever action rifle?
8      A      There was a lever action. I'm not sure it
9 was a 30 30, though.
10     Q      Was it stainless steel or blue?
11     A      Blue with stainless steel.
12     Q      Stainless steel. What was the caliber of
13 that?
14     A      .357, I believe.
15     Q      So, was there a 30 30 ammunition in your
16 inventory?
17     A      I cannot recall. There was so much
18 ammunition, Your Honor. 1500 plus rounds.
19            THE COURT: Something wasn't clear to me
20 before. So each of these weapons was loaded, but you
21 also found ammunition?

34 (Pages 130 to 133)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 134

1    MR. RICHARDS: I found numerous amounts of
2 ammunition. Yes, sir.
3    THE COURT: Thank you.
4    Q    Did you find any reloading equipment in
5 the house?
6    A    I did see some equipment. I don't believe
7 it was taken.
8    Q    Did you find a .20 gauge shot gun?
9    A    On the 26th, the second time we went in,
10 that was the weapon the State Police confiscated.
11    Q    Did you find on the 4th, did you find a
12 .20 gauge -- any .20 gauge ammunition?
13    A    I believe so.
14    THE COURT: Sir, when you came back the
15 second time and the other weapon was found, the State
16 Police took that one, that was a shot gun?
17    MR. RICHARDS: That was a .20 gauge shot
18 gun. Yes, sir. It was concealed.
19    THE COURT: And where was that?
20    MR. RICHARDS: It was in the basement, the
21 door that Mr. Buchanan allegedly ran out of based on

Page 135

1 the State Police.
2    THE COURT: Was it possible that that
3 weapon was there the first time?
4    MR. RICHARDS: No, sir.
5    THE COURT: Why is that?
6    MR. RICHARDS: Because the first time we
7 had loaded all -- after we took -- I did a complete
8 search of the house. And we loaded all of the items
9 that we were going to keep in the house in the
10 basement in that corner -- in the corner of the
11 basement door.
12    When we came back the second time, there
13 was plywood -- two pieces of plywood laid against the
14 door at an angle. The weapon was hidden fully loaded
15 behind the plywood with a military BDU type of jacket
16 over the shot gun so it was not easily recognizable.
17    That was not there on the first go around.
18    THE COURT: Thank you. Go ahead.
19    Q    Did you locate any in wall safes with
20 weapons in the house?
21    A    No.

Page 136

1    Q    I guess you didn't search good enough, did
2 you?
3    A    Guess not.
4    Q    Did you remove or enter the vehicle that
5 was parked in the driveway on January 4th?
6    MS. GIBSON: Your Honor, can I just object
7 as to relevancy?
8    MR. BUCHANAN: It's relevant, Your Honor.
9    MS. GIBSON: I don't see how it's
10 relevant.
11    THE COURT: Well, I want to know what
12 happened to the car, so what --
13    A    Sir, we -- the State Police entered
14 through the -- on the first arrest of the 3rd when Mr.
15 Buchanan was removed, the State Police called us and
16 we came in on the 4th.
17    We gained entry through the basement door
18 which was unlocked. Once we got into the house and we
19 started searching, the vehicle was -- the Ford truck
20 was parked outside locked.
21    The keys were inside on the counter.

Page 137

1    THE COURT: Okay.
2    MR. RICHARDS: After the search of all of
3 the weapons we found in the house, the concern was
4 then that there may be weapons in the vehicle as well.
5 I did open the vehicle to search for weapons. I found
6 none.
7    THE COURT: Okay. And so you just --
8    Q    Did you remove anything from the pick up?
9    A    I did not remove anything from the pick
10 up.
11    THE COURT: So all you did was open it,
12 look inside and close it?
13    MR. RICHARDS: I checked under seats. I
14 pulled the -- it was a super cab. I pulled the rear
15 seat back and checked under it and did not find
16 anything.
17    THE COURT: Thank you.
18    Q    In your inventory, did you inventory a
19 spear gun?
20    A    Yes.
21    Q    And that's also at your residence?

35 (Pages 134 to 137)

Page 138

1    A    Correct.
2    Q    What would -- did you have any prior
3    communication with the State Police prior to me being
4    arrested on January 4th, 2008?
5    A    They contacted me on the 3rd to say that
6    you had illegally parked a tractor trailer on the
7    street. They had lights going on. The officer was
8    checking it, you had walked out.
9         When you walked out, they challenged you
10   and issued you --enforced the warrant from the Federal
11   Court and then told us that, hey, he's going to be
12   incarcerated. Tomorrow would be a good time for you
13   guys to come up and --
14   Q    Why would they call you on enforcing a
15   Federal warrant?
16   A    Because the warrant was outstanding and
17   they have communicated with the Federal Government,
18   the Marshall service. And the Marshall service
19   communicated to me as Ms. Richards' spouse, not in a
20   professional manner, because they felt for her safety
21   and felt that I needed to accompany her to the

Page 139

1    Delaware property.
2    Q    Why would the Marshall service contact a
3    third party?
4    A    The Marshall service did not contact me.
5    I said the State Police contacted me.
6    Q    Why would they contact you? Is that
7    common procedure?
8    A    Again, the Marshall did not contact me.
9    Q    Have you filed or been involved in any
10   complaints from Ms. Buchanan against me in the
11   Washington, D.C. District Court?
12   A    No.
13   Q    Were you present during my daughter's
14   graduation and supervised --
15        MS. GIBSON: Objection, Your Honor.
16   Relevance.
17        THE COURT: What's the relevance, sir?
18        MR. BUCHANAN: The relevance is, Your
19   Honor, that this individual has been involved in
20   engaging non-jurisdictional torts for matters that are
21   before this court to impair on me --

Page 140

1         THE COURT: Sir, what is a
2    non-jurisdictional court?
3         MR. BUCHANAN: A non-jurisdictional court
4    would be the Washington D.C. court if Barbara Buchanan
5    does not live there.
6         THE COURT: Well, that's something for the
7    D.C. courts to figure out.
8         MR. BUCHANAN: It's already been -- it's
9    been dismissed. And as of December 17th, there was no
10   warrants for my arrest.
11        And all of a sudden, the State Police are
12   calling a third party in Berk, Virginia and saying,
13   we're going to arrest Mr. Buchanan, come in and take
14   everything out of his house.
15        MR. RICHARDS: Your Honor, if I may.
16        THE COURT: No. You may not.
17        Move on, sir.
18   Q    When did you become acquainted with
19   Barbara Richards or Barbara Buchanan?
20        THE COURT: Sustained. That's not
21   relevant.

Page 141

1    Q    Were you present on January 26th when the
2    horses were removed from 34806 Hudson Road?
3    A    I was.
4    Q    Do you know where they went?
5    A    I do not.
6    Q    Do you have the name of the person that
7    called them?
8    A    I do not.
9    Q    What kind of vehicle were they driving?
10   A    I believe it was --
11        THE COURT: Not relevant.
12        MR. BUCHANAN: The relevance is, Your
13   Honor --
14        THE COURT: It's not relevant.
15   Q    Have you, as a spouse, provided any --
16   provided any support or help to have Barbara settle
17   these mortgage issues?
18        MS. GIBSON: Your Honor, I would object to
19   the relevance.
20   Q    Have you provided any income to Ms.
21   Buchanan or Ms. Richards enabling her to settle these

36 (Pages 138 to 141)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 142

1 mortgage issues?
2   A   She's my spouse.
3   Q   Have you paid any money to any mortgage of
4 these proceedings.
5       THE COURT: Have you paid any of the
6 mortgages, sir?
7   A   No.
8   Q   Have you seen the mortgages or any
9 documents indicating foreclosure on these properties?
10  A   Have I seen any documents?
11  Q   Right. Have you read any documents --
12      THE COURT: Have you seen any foreclosure
13 documents?
14  Q   --foreclosure documents?
15  A   Yes, Your Honor.
16  Q   What date did you receive or look at
17 those?
18  A   The last one was when we -- I escorted at
19 the time Ms. Buchanan to Bankruptcy Court in Delaware
20 and saw the documents then.
21  Q   What date was that?

Page 144

1 Honor, because it shows that Ms. Buchanan has been
2 served with a motion of foreclosure for the property
3 that she's trying to evict me from.
4       And --
5       THE COURT: Not that she's trying to evict
6 you, she has evicted you.
7       MR. BUCHANAN: She doesn't have the
8 authority to evict me.
9       THE COURT: She has an order of this court
10 --
11      MR. BUCHANAN: The court has excluded me
12 from the property, but has not evicted my business.
13      And the contractual obligation of her as a
14 landlord for that business shows and it shows that she
15 has been served and she has knowledge of a suit that
16 the Superior Court recognizes.
17      And I have all privilege of the Superior
18 Court in these proceedings, it recognizes that she has
19 not been served. And it appears in the Court order
20 from the Superior Court that she recognizes that no
21 service has been accomplished on Mr. Tyler or her.

Page 143

1   A   '05.
2       THE COURT: 2005?
3       MR. RICHARDS: Yes, sir.
4       THE COURT: Thank you.
5   Q   Let me see if I can get around the corner,
6 Your Honor. So, I'm under the understanding that you
7 received a foreclosure document in '05. Who --
8   A   I did not receive a document.
9   Q   You read it.
10  A   --I saw a document.
11  Q   Where did you read that? Where did you
12 see that document?
13  A   Ms. Buchanan at the time, now Ms.
14 Richards, was going up to Bankruptcy Court, and in the
15 car she was reviewing the documents as I drove.
16  Q   So it would stand to reason that she had
17 service of a foreclosure proceeding then?
18      MS. GIBSON: Objection, Your Honor. If he
19 was driving the car, he doesn't know what a -- I mean,
20 I just don't see the relevance.
21      MR. BUCHANAN: It shows -- relevance, Your

Page 145

1       THE COURT: Objection sustained. Move on,
2 sir.
3   Q   Have you ever searched a private residence
4 in your military career?
5       MS. GIBSON: Objection, Your Honor, just
6 to relevancy.
7       MR. BUCHANAN: It's relevant, Your Honor.
8 It shows the ability for this person to disseminate
9 what is right and wrong in the duties of his office.
10      THE COURT: Objection sustained. It's
11 not relevant.
12  Q   29 years of your police force employment,
13 what rank are you in the military?
14      THE COURT: What's your rank, sir?
15  A   E9.
16  Q   During your period of marriage to Ms.
17 Buchanan, have you ever witnessed me threaten her?
18 Have you ever witnessed me call her on the phone and
19 threaten her? Have you ever witnessed me pointing a
20 gun at her? Have you ever witnessed me causing
21 destruction of her property?

37 (Pages 142 to 145)

Page 146

1    A    In my professional opinion --
2         THE COURT:  No, no, no.
3    Q    That's not the question.
4         THE COURT:  Have you ever witnessed any of
5    those things occurring?
6    A    I've seen emails.  Yes, sir.
7    Q    Emails saying what?
8    A    Emails that you will take any action
9    necessary to keep anybody off your property, not just
10   Ms. Richards.
11   Q    So it wasn't a threat, really it just says
12   I will take action to protect my property and it
13   wasn't directed at Ms. Richards.
14   A    To include Ms. Richards.
15   Q    The question was, did you ever see
16   anything -- me directing a threat towards Ms.
17   Buchanan?
18        THE COURT:  Excuse me.  Was that all that
19   you have seen?
20        MR. RICHARDS:  Yes, sir.  Emails.
21        THE COURT:  Thank you.

Page 147

1    Q    Would that be cause for you as a police
2    officer to arrest me?
3    A    That coupled with six years of litigation
4    and the accelerated anger within those documents, yes.
5    Q    Six years of litigation when -- you've
6    already testified that you accompanied Ms. Buchanan up
7    to Bankruptcy Court.  At the time that you accompanied
8    Ms. Buchanan to Bankruptcy Court, did she comply with
9    any court order to resolve those issues?
10        MS. GIBSON:  Objection, Your Honor.  That
11   is just not relevant.
12        THE COURT:  And it's also beyond the
13   competence of this witness to testify.
14        MR. BUCHANAN:  All right.
15   Q    Have you read the Court order for property
16   division dated March 21st, decided April 4th, 2006?
17   A    I have not.
18   Q    Have you accompanied Ms. Buchanan or
19   Richards to the property division proceeding?
20   A    I have, based on the request of our
21   supervisor, our general.

Page 148

1    Q    Do you have knowledge of the location of
2    any property, money that is not issue of the two days
3    that Ms. Buchanan had in her possession at the time
4    you married her.
5         MS. GIBSON:  Your Honor, I object simply
6    because I don't understand that question.  I don't
7    know what he's asking, and what its relevance is.
8         MR. BUCHANAN:  I'll rephrase.
9    Q    Do you have knowledge of Barbara having
10   access to any money beyond your contribution to her in
11   these proceedings?
12        MS. GIBSON:  Your Honor, I object.
13        THE COURT:  I don't understand, sir?
14   What's that question?  Does she have any money that --
15        MR. BUCHANAN:  Well, under Rule 16C she
16   reported she had $300.  I'm asking if he has knowledge
17   of her financial affairs.
18        THE COURT:  And why would I care about her
19   financial affairs?  I mean, how does that help me
20   decide this case whether or not she has resources?
21        MR. BUCHANAN:  Your Honor, I'm trying to

Page 149

1    establish in the scope of the questioning what gave
2    him cause to enter and make claim against me as a
3    person and as a business in a state that he's not a
4    resident of, just because he's married to a person.
5         THE COURT:  He testified he accompanied
6    his wife to the property that she was granted by this
7    court to assist in cleaning it up and preparing it for
8    sale.
9    Q    Do you have possession of any order
10   allowing you to renovate, to enter, to make claim, to
11   stack property.  Do you have any order allowing you to
12   enter property whether your wife is or not owner of
13   that property?
14   A    If I understand the question, my wife is
15   half owner of the property, therefore --
16        THE COURT:  You don't understand the
17   question.  The question, sir, is have you ever seen an
18   order with your name on it that specifically entitles
19   you to go on to that property?
20        MR. RICHARDS:  No.
21   Q    On April 4th, did you remove any computers

38 (Pages 146 to 149)

Page 150

1 from the property?
2     A     I believe I --
3           MS. GIBSON: I'm sorry, April 4th?
4     Q     I'm sorry, January 4th, 2008.
5           THE COURT: Did you remove any computers
6 from the property?
7     A     I believe there was a desk top computer
8 that I loaded into the truck. Yes.
9     Q     Did you take a hard drive off the living
10 room counter? Do you know what a hard drive is?
11    A     Of course.
12    Q     Did you take a, remove a hard drive?
13    A     Yes.
14    Q     Did you remove a lap top computer from the
15 living room?
16    A     No.
17    Q     Are you in possession of a lap top
18 computer that was removed from that residence?
19    A     Not that I recall.
20    Q     Did you remove any passports or documents
21 that were not pertaining to the property or had names

Page 151

1 of other parties on them, not your wife and not
2 yourself?
3     A     Yes. There was a passport with their
4 daughter Heidi's name on it.
5     Q     Do you have any order allowing you to
6 confiscate third party materials from the residence?
7 Do you have any knowledge --
8           MS. GIBSON: Objection.
9           THE COURT: Sustained not relevant. I
10 take it you gave that to Heidi.
11          MR. RICHARDS: Yes.
12    Q     Did you remove any documents that had
13 Buchanan Farms on them?
14    A     Again, there was plastic bags loaded with
15 documents --
16    Q     Who loaded the plastic bags, Mr. Richards?
17    A     I believe Barbara did.
18    Q     So in your -- did you search your files
19 before the plastic bags were loaded or after the
20 plastic bags were loaded?
21          THE COURT: This is going to stop. None

Page 152

1 of -- nothing about personal property is relevant to
2 these proceedings.
3           MR. BUCHANAN: That's all I have, Your
4 Honor.
5           THE COURT: Any cross examination?
6           MS. GIBSON: No, Your Honor.
7           THE COURT: Thank you, sir. You may
8 return to your seat. Any other witnesses?
9           MR. BUCHANAN: Who is this young lady back
10 here, Your Honor? I don't know who she is.
11          THE COURT: It's an open proceeding, sir.
12 People are allowed to come into these proceedings. I
13 don't have to identify them.
14          MR. BUCHANAN: If I may, Your Honor, I'd
15 like to ask Ms. Buchanan one more question.
16          THE COURT: What is that question?
17          MR. BUCHANAN: I would like to ask her why
18 she -- does she have any address for Ron Erlich. She
19 claims that there's $31,000 that Ron Erlich paid
20 during these proceedings because of Ron Erlich it was
21 offset.

Page 153

1           And when she was married to Mr. Richards.
2           THE COURT: Who is Ron Erlich?
3           MR. BUCHANAN: I don't have the faintest
4 idea.
5           THE COURT: Where is this information
6 coming from?
7           MR. BUCHANAN: It's on the court order,
8 page 18, on April 4th.
9           MS. GIBSON: Your Honor, I believe that's
10 going back into the anciliary proceedings that were
11 never appealed that are not before you this morning.
12          THE COURT: I don't see whether -- if I
13 knew or -- that would just be a fishing expedition.
14 No, you can not ask her that.
15          MR. BUCHANAN: All right, Your Honor. I
16 think I'm done with them.
17          No more questions.
18          THE COURT: Do you have any further
19 evidence to present?
20          MR. BUCHANAN: I believe -- I would like
21 to have a copy of the Family Court order for property

Towson Reporting Co.                    GORE BROTHERS                    Whitman Reporting - Rockville
410-828-4148                            410-837-3027                              301-279-7599

Page 154

1  division dated April 4th entered into these
2  proceedings.
3      It's a Court record, I'm not sure the
4  docket number.
5      THE COURT: Well, I've already been asked
6  to take judicial notice of all of these. And I have
7  done so.
8      MR. BUCHANAN: Okay.
9      I have also judicial notice given to
10 Barton versus Patterson, case number 79CA3, Court of
11 Appeals of Ohio, Second Appellate District, Miami
12 County, 1979, Ohio Appellate Lexus number --
13     THE COURT: Excuse me, Barton versus?
14     MR. BUCHANAN: It's Barton versus
15 Patterson, case number 79CA3, Court of Appeals Ohio,
16 Second Appellate District, Miami County, 1979. Ohio
17 Appellate Court, Lexus 9504.
18     THE COURT: And what will Barton versus
19 Patterson teach me?
20     MR. BUCHANAN: It shows that there is a --
21 that abandonment and not providing a claim shows that

Page 155

1  the claim has been exhausted. And that the other
2  party has, in the shadow of all of these proceedings,
3  has returned without --without court order.
4      And after a lengthy abandonment and not
5  complying with due process of law, and not seeking a
6  remedy in the courts of law when presented.
7      Just as this is a court, a Court of
8  Chancellory, a Court of Superior Court, Family Court,
9  U.S. District Court, and U.S. District Bankruptcy
10 Court.
11     She has not complied and has grossly
12 abandoned the property. And then because she can't
13 finance her house or something in D.C., has come back
14 to this and tried to liquidate everything I've got.
15     And in the shadow of two PFAs being filed
16 on my behalf and discontinued four proceedings not
17 jurisdictional to commissioner the way I understood
18 it, she has come back in without cause and has asked
19 for a PFA hearing before Your Honor in violation of
20 12B1.
21     I believe 12B1, there's an absence of

Page 156

1  jurisdiction for her to come in here and ask for me to
2  be excluded from property, that I'm causing her abuse
3  just so she can enter the property.
4      The property where there's no residence.
5  She's keeping me from walking across an open field.
6  She doesn't have jurisdiction to do that. I'm not
7  residing on the 90 acres.
8      Therefore, it's not a viable order. And
9  she's saying I'm abusing her by walking across 90
10 acres, which is absolutely ludicrous.
11     Under 12B -- hang on a second. So that
12 would be subject matter of jurisdiction for these
13 proceedings, Your Honor. She doesn't have cause,
14 doesn't -- to instill the jurisdiction of this Court
15 to give -- to have me justify her removal of property.
16     She doesn't have jurisdiction to instill
17 the Court saying I'm abusing her because she has a
18 fear in her mind.
19     She lives 150 miles from here in I presume
20 Berk, Virginia with her husband, and said that she's
21 got a fear in her mind that guns stored 150 miles from

Page 157

1  her house, where I haven't been out of the State of
2  Delaware -- into Virginia in years -- constitutes a
3  violation of her personal well being.
4      It's a fear. And it's documented that
5  during the property -- child custody that she has --
6  Dr. Wilson testified that she has -- going to have a
7  developing fear of everything. That's not my problem.
8  My problem is to protect my property and my rights of
9  illegal search and seizure by a Government employee,
10 employed by her wife, whoever employed him, to assist
11 in removing personal property -- Bankruptcy --
12 corporate property regardless of counsel's got proof
13 or not of this entity.
14     The entity exists. The entity is there.
15 And this court has recognized this entity on several
16 stays of proceedings.
17     Cause goes to dismiss this case under 12B3
18 for improper venue. My ex-wife does not live at that
19 property. There's no way that me being there or even
20 coming by and lighting a fire in the fire place
21 constitutes any kind of jurisdiction for domicile

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 158

1 location.
2     She's not there. She's going to this
3 court and asking for me to be excluded under a rule
4 that would exclude a spouse from -- to protect her
5 from abuse or further abuse of a residence where she
6 resides.
7     She hasn't resided there in five years.
8 So I ask for the Court to consider dismissal under
9 12B1 and 12B3. And then furthermore under 12B6 for
10 failure to state a claim for which this Court can
11 decide.
12     Her complaint does not claim anything
13 that would constitute an act of aggression towards
14 her. She claims that she's fearing inanimate objects
15 stood against drywall in the basement when I'm not
16 even around. And has taken advantage -- her husband
17 testified that he -- they have taken advantage of
18 inner-Government communications to remove me from the
19 properties knowing that I won't be there.
20     So there shouldn't be any fear at all.
21 And disrupt -- using inner-governmental communications

Page 159

1 to disrupt my employment. I find it highly unusual
2 that the U.S. Marshall services would call a party
3 just because he's a security policeman in Washington,
4 D.C., Pentagon, and ask for -- and tell them, say her
5 ex-husband of five years removed has parked a trailer
6 in the road.
7     That's just kind of ridiculous. Then hurry
8 up and come over and just gut his house. I find it
9 hard to believe that any cause exists for under 12B6
10 to bring proceedings before this Court on a protection
11 from abuse order for Barbara Buchanan when she's
12 knowingly, wrongfully trespassing on removing
13 property.
14     They have admitted to removing property
15 that doesn't belong to them. They cannot even state
16 who owns the live stock that they removed. It could
17 be anybody's, including it's not mine, removed from
18 the property.
19     There's no jurisdiction here but for me to
20 gain any kind of cause against her for trespassing,
21 removing other people's property, I have to go across

Page 160

1 the street, hire an attorney, go to Superior Court and
2 bring her in here.
3     Then they've got to jurisdictionalize in
4 the tort between me and her. So now I have to go get
5 the person that I'm taking care of or has invested in
6 the horses to go and file -- spend tens of thousands
7 of dollars -- to serve her in an non-known address in
8 D.C. to bring back horses that she took somewhere.
9     It's ridiculous. There's no abuse there.
10 And then under 12B6 also, for her to commit a felony
11 and her husband to admit to committing a felony,
12 illegal search and seizure under Title 4 of the U.S.
13 Constitution as a Government assisting and testifying
14 as to having assisted State Police in illegal search
15 and seizure without a cause. Entering a locked
16 building that's leased, knowingly leased to somebody
17 else.
18     It's documented within the USDA that it's
19 leased to somebody else. It's documented in the U.S.
20 Bankruptcy Court it's leased to somebody else. It's
21 documented on the utilities, both phone and electrical

Page 161

1 utilities that the farm is fully leased to Buchanan
2 Farms, Incorporated.
3     It's recognized by the Federal Court that
4 Buchanan Farms, Incorporated exists.
5     She has entered the property and removed
6 property not belonging to her. And in doing so, she
7 has violated -- created the document of unclean hands
8 to be entered into these proceedings.
9     She admits to committing a felony, and
10 then she turns around and is using that felony to
11 justify or to protect herself against felony
12 prosecution, retaliatory and served on her attorney
13 for her husband across in Chancellory, retaliating
14 against that. Doctrine of unclean hands prohibits her
15 from filing a responsive pleading in this court to ask
16 for protection from abuse when she's committed such a
17 felony.
18     And have admitted to committing such
19 felonies.
20     THE COURT: Okay.
21     MR. BUCHANAN: That's all, Your Honor.

41 (Pages 158 to 161)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 162

1  THE COURT: Thank you. That was in the
2  nature of a closing statement. Ms. Gibson, would you
3  like to make your closing statement?
4  MS. GIBSON: Your Honor, I planned to
5  argue the facts and law, but I must point out that
6  ever problem Mr. Buchanan complains of here today in
7  terms of personal property and unclean hands and this
8  and that are all a direct result of his failure to
9  comply with the court orders issued by Judge
10  Hendrickson.
11  Had Mr. Buchanan left the property when he
12  was supposed to, we would not have this plethora of
13  orders and litigation that have disseminated from
14  there.
15  But we're here today, Your Honor, on the
16  PFA filed by my client, which I believe indicates a
17  very real concern that I hope this Court would
18  address.
19  There have been numerous orders issued,
20  affirmed, re-issued, clarified, telling Mr. Buchanan
21  he is evicted and excluded from those two pieces of

Page 163

1  property.
2  If Buchanan Farms, Inc, wished to raise
3  some issue about Mr. Buchanan being able to enter
4  those properties if they are in fact a viable entity,
5  could have done so. Or Mr. Buchanan some time in the
6  last several years could have applied for an exception
7  to those orders.
8  That issue has been dealt with, dealt
9  with, dealt with. It's very clear, Mr. Buchanan
10  admitted there's no exception in the order that lets
11  him come on to those properties to pursue any business
12  of Buchanan Farms, Inc.
13  Beginning in 2006, this court ordered the
14  property sold. We're now more than two years past
15  that. Ms. Richards has tried everything she can to
16  get these properties listed. Hasn't been able to go
17  forward with any sale because by Mr. Buchanan's own
18  admission, he's been on the property.
19  He also admits that there's no order
20  giving him an exception to be on the property.
21  So with respect to 10 Delaware code,

Page 164

1  Section 1041E, we absolutely have a situation where a
2  person continues to come on property from which he has
3  been excluded.
4  There's been excessive litigation. And if
5  Your Honor looks at any part of this file, Mr.
6  Buchanan has been found to file numerous frivolous
7  meaningless actions.
8  The two subpoenas that were filed with the
9  Court in connection with this proceeding want to go on
10  and on and all about the property division that took
11  place in 2006, which I think gives Ms. Richards a very
12  reasonable concern that Mr. Buchanan is just obsessed
13  with what took place in the property division.
14  He can't let it alone. He can't move
15  forward. The fact that he had 13 loaded weapons on
16  the property and a huge amount of ammunition when he's
17  fully aware that Ms. Richards is trying to sell the
18  property to comply with the orders, generates a very
19  reasonable fear.
20  And apprehension that he could use them on
21  her, on the realtor, on any perspective buyer.

Page 165

1  He's arrested. When they arrest him a
2  second time, they find another loaded weapon. The
3  actions that Ms. Richards took with respect to
4  safeguarding certain property when she returned there
5  was in fact, as I said, reasonable.
6  Mr. Buchanan is not supposed to be on the
7  property. I think the words exclude and evict can be
8  given the very same definition that Webster's
9  dictionary gives.
10  That he's excluded and he's evicted. No
11  exception. He leaves livestock, he leaves whatever on
12  the property. She's a co-owner of the property.
13  She took reasonable steps to safeguard it.
14  And that's really not before Your Honor anyway.
15  What's before Your Honor is, has Mr. Buchanan engaged
16  in conduct which is an act of abuse. And I think
17  overwhelmingly, Your Honor, what you've heard here
18  today is that he has.
19  I know that Ms. Richards lives in
20  Virginia. But if you look at the facts of this case,
21  we are concerned with two pieces of property that she

42 (Pages 162 to 165)

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Page 166

1 still owns with Mr. Buchanan, located in the State of
2 Delaware.
3         Without help, without protection from this
4 Court, she cannot go forward and do what the court
5 ordered done in 2006.
6         There have been I don't even know how many
7 subsequent orders all in an effort to try and
8 effectuate the provisions of this April, 2006 orders.
9 Orders clarifying, orders affirming. And now as a
10 result of him still being in the property and being
11 arrested for it twice and having an arsenal there, I
12 think there's an absolute reason for this Court to go
13 forward and grant an ex parte -- or grant an order
14 from abuse that keeps Mr. Buchanan away from Ms.
15 Buchanan.
16         Makes it very, very clear that he's not to
17 be on the properties for any reason. And I believe,
18 Your Honor, that in the interest of safety of my
19 client, we would ask that the relief that she
20 requested in her petition be granted.
21         THE COURT: Any final words, sir?

Page 167

1         MR. BUCHANAN: Yes, Your Honor. When
2 deciding this case, the court should take in mind
3 there are several doctrines that should be addressed.
4 One is the doctrine of estoppel. And estoppel by
5 inactivity, where Ms. Buchanan as Mr. Richards has
6 testified, had possession of foreclosure documents
7 showing that she had been served.
8         And actions had been taken to make a claim
9 or proceed in a manner which would be relatively
10 expected that a cognizant person to satisfy or to cure
11 that action.
12         The other rule is res judicata. Ms.
13 Buchanan is bringing items for property division under
14 a PFA action back to this court to try to reopen a
15 property division order which she violated to protect
16 herself from violation of the property division order.
17         That is -- that should be dismissed under
18 12B6 for res judicata, and for reopening proceedings.
19         Now, the final quote in the doctrine of
20 res judicata and estoppel also pertains to the
21 Bankruptcy court ruling of 3002, Bankruptcy Rule 3002

Page 168

1 where Ms. Buchanan was ordered by the Court to file a
2 claim, whether it was late or not.
3         She has not done that. She has been
4 ordered by the Court to file a corrected address with
5 the Bankruptcy Court to substantiate a non-claim. She
6 has not done that.
7         Now she's come back in violation of that
8 Court order for 3002 disallowing her claims no matter
9 what the Family Court says.
10         The Family Court's order subjects that
11 property division proceeding to list and sell subject
12 to Bankruptcy Court approval. That order was stayed
13 in the proceedings of bankruptcy and it was
14 readdressed under a dismissal under 3002, a final
15 order according to the U.S. Bankruptcy Court.
16         Even though I appealed the dismissal, the
17 order of 3002 is final. She is now going for res
18 judicata, violating the doctrine of res judicata, the
19 doctrine of estoppel and then she's coming back in the
20 State of Delaware to reopen a property division
21 hearing under a non-claiming PFA and violating the

Page 169

1 doctrine of estoppel by inactivity where she had
2 knowledge of a mortgage, and knowledge of a
3 foreclosure action by her statements and did not
4 proceed in a timely manner to correct those things.
5         That statute of limitations of three years
6 to make claim against any property is expired. She's
7 coming back to this court, even her most recent motion
8 to exclude me from the property falls under estoppel
9 by inactivity and it should be dismissed.
10         This is just absolutely ridiculous to keep
11 these claims in court for six years.
12         THE COURT: Thank you.
13         No, sir, this is ridiculous. Your
14 activity through all of this litigation is what's
15 ridiculous.  This has been going on since 1994, with
16 an eight year lapse.
17         MR. BUCHANAN: Three years, yeah, '94.
18         THE COURT: 2002 it came back.
19         MR. BUCHANAN: I apologize to the Court,
20 Your Honor, but I --
21         THE COURT: This is ridiculous. Judge

Buchanan v. Richards Hearing - 3/13/08

Page 170

1  Hendrickson ordered you on February 5th to get out of
2  that -- to exclude you from the house. He reaffirmed
3  that order on January 3rd. There can be no estoppel
4  in a month and a half.
5       MR. BUCHANAN: Your Honor, I appealed that
6  order and it's in front of the U.S. -- the Delaware
7  Supreme Court.
8       THE COURT: The PFA statute clearly says
9  trespass on or in property of another person or in
10  property from which the trespasser has been excluded
11  by court order.
12      His order says excluded. You can't go
13  there. And you knew that order was in effect and you
14  have a gun by every door, behind the toilet, over the
15  shelf. They are all loaded.
16      You're all ready to defend yourself from
17  people who might come to take the property to which
18  you believe you are entitled to keep.
19      Of course she's going to be scared. Who
20  wouldn't be? Any of these --
21      MR. BUCHANAN: How would she know if those

Page 171

1  were --
2       THE COURT: Because she was entitled to go
3  there. And so you should have known she was going to
4  show up and find your guns.
5       This just could have been over so long
6  ago.
7       MR. BUCHANAN: Your Honor, I apologize for
8  carrying it out so long. But I tried in this court
9  and every other court in this State to try to get a
10  claim from her of the value. I have appraised those
11  properties through a real estate five times. She has
12  not returned --
13      THE COURT: The value -- it's been ordered
14  to be sold. Period. And divided however Judge
15  Hendrickson said.
16      The most conclusive appraisal there could
17  be, sell it on the open market. That's not what I'm
18  here to decide.
19      Judge Hendrickson ordered things to be
20  done. They didn't. You are attempting to use force
21  -- meaning the forceable retention of the property to

Page 172

1  have your way. And that's domestic violence.
2       The use of threat or force to get your
3  way.
4       MR. BUCHANAN: I have not forced anything.
5       THE COURT: Yes, you did. You armed the
6  house so she couldn't get it.
7       MR. BUCHANAN: Your Honor, how does having
8  possession in the house in any way arm the house?
9       THE COURT: Sir, it looked that way. A
10  person who is in that house certainly would be very
11  well able to defend themselves in case they were
12  invaded.
13      MR. BUCHANAN: That's my right under the
14  Delaware State Constitution.
15      THE COURT: If it was a house that you
16  were entitled to stay in, and it wasn't.
17      MR. BUCHANAN: It is entitled to the
18  business.
19      THE COURT: You're not entitled to be
20  there. The business does not have a right to bear
21  arms.

Page 173

1       MR. BUCHANAN: Your Honor, I would also
2  like at this time to make a Rule 55 motion for default
3  judgment for the rule of show cause that I filed with
4  this court.
5       THE COURT: It's not time for that, sir.
6       MR. BUCHANAN: Pardon me?
7       THE COURT: It's not time for that.
8       The PFA order will issue on a permanent
9  basis for one year. No contact. Mr. Buchanan will
10  have no contact with Ms. Richards. He will stay 100
11  yards away from her residence or place in person.
12      She will have exclusive use of both
13  properties.
14      MR. BUCHANAN: Your Honor, how do I farm
15  my property when she has exclusive use?
16      THE COURT: I don't know. That day has
17  past. I'm not talking about ownership, I'm talking
18  about possession.
19      MR. BUCHANAN: Well, Buchanan Farms is an
20  entity with other than me in it. And they have crops
21  planted and contracts --

44 (Pages 170 to 173)

Page 174

1    THE COURT: If that's the case and the --
2    all of the employees of Buchanan Farms show up to plow
3    the field, I guess somebody will have a lawsuit
4    somewhere. I don't doubt it.
5        This is about particular persons.
6        MR. BUCHANAN: I'd also like to return,
7    have the property returned to me that she's removed.
8    There's nothing I've done to warrant a felony
9    prosecution for assaulting her.
10       THE COURT: I'm not aware of any felony
11   prosecutions. You shall participate in a mental
12   health evaluation.
13       MR. BUCHANAN: I've already -- it's
14   already been ordered by the other court and the VA has
15   said I'm mentally healthy and I have to get that
16   corrected.
17       THE COURT: You have to get it corrected
18   that you're mentally health?
19       MR. BUCHANAN: I have to get it entered
20   into the record. It's already been accomplished.
21       THE COURT: You can provide proof of that.

Page 175

1        You will have to make application to Judge
2    Hendrickson for the disposition of your personal
3    property. I'm not going to get into it here.
4        This has to deal with where people are,
5    not who owns stuff.
6        I believe that Ms. Richards would be -- is
7    at risk from you. All of the firearms that were
8    confiscated shall be turned over to the Delaware State
9    Police and there will be a list.
10       Thank you.
11       (Proceedings concluded)
12
13
14
15
16
17
18
19
20
21

Page 176

1    STATE OF MARYLAND
2    CITY OF BALTIMORE:  ss
3
4        I, Paula J. Eliopoulos, a Notary Public in and
5    for the State of Maryland, Baltimore City, do hereby
6    certify that the foregoing is a true and accurate
7    transcript of the proceedings indicated.
8        As witness, my hand and notarial seal this
9    9th day of June, 2008.
10
11
12                    Paula J. Eliopoulos
13
14
15
16
17
18
19
20   My commission expires:
21   June 15, 2012

Page 177

1                    INDEX
2
3    WITNESSES:                            PAGE
4    David Buchanan
5    Examination by Ms. Gibson              35
6
7    Barbara Richards
8    Examination by Ms. Gibson           66, 115
9    Examination by Mr. Buchanan         73, 115
10
11   David Richards
12   Examination by Mr. Buchanan            118
13
14
15
16
17
18
19
20
21

45 (Pages 174 to 177)

| A |
|---|
| **abandon** 81:20 |
| **abandoned** 34:2 56:5,7 |
| 57:6,8,8,12,13 62:15 |
| 78:6 82:11 155:12 |
| **abandonment** 33:20,21 |
| 34:6 60:19,21 82:10 |
| 96:7 103:16,18 116:5 |
| 154:21 155:4 |
| **ability** 72:3 84:9 145:8 |
| **able** 11:19 13:1 60:5 |
| 62:10 163:3,16 |
| 172:11 |
| **about** 14:11 20:2 21:19 |
| 42:5 49:15 52:7,8 |
| 59:4 65:12 73:20,21 |
| 104:21 111:8 115:13 |
| 116:20 127:19,21 |
| 148:18 152:1 163:3 |
| 164:10 173:17,18 |
| 174:5 |
| **above-entitled** 1:10 |
| **absence** 56:15 79:21 |
| 155:21 |
| **absent** 23:4 |
| **absolute** 166:12 |
| **absolutely** 156:10 |
| 164:1 169:10 |
| **abuse** 2:3 21:15 23:16 |
| 26:20 27:15,21 34:19 |
| 34:21 35:2 43:11 |
| 49:16 104:2,5 113:6 |
| 156:2 158:5,5 159:11 |
| 160:9 161:16 165:16 |
| 166:14 |
| **abusing** 102:6 156:9,17 |
| **accelerated** 147:4 |
| **accept** 34:4 |
| **acceptance** 34:9 |
| **access** 40:2 102:10 |
| 148:10 |
| **accessing** 40:1 |
| **accompanied** 4:12 |
| 147:6,7,18 149:5 |
| **accompany** 99:18 |
| 138:21 |
| **accomplished** 144:21 |
| 174:20 |
| **accord** 7:7 |
| **according** 35:16 64:2 |
| 118:19 168:15 |
| **account** 90:17,18 |
| **accurate** 176:6 |
| **accusal** 59:18 |
| **accustomed** 83:11 |
| **acknowledged** 36:21 |

| **acquainted** 120:1 |
|---|
| 140:18 |
| **acquiesced** 34:4 |
| **acre** 17:20 43:14,17 |
| **acres** 58:20 59:6,6 |
| 67:10 95:10,11,13 |
| 96:2,15 114:17,21 |
| 156:7,10 |
| **across** 12:6,10 75:15 |
| 156:5,9 159:21 |
| 161:13 |
| **act** 23:16 26:20 158:13 |
| 165:16 |
| **acting** 25:17 120:5 |
| **action** 4:10 21:7 45:11 |
| 61:10 85:12,17 101:9 |
| 111:21 132:11 133:7 |
| 133:8 146:8,12 |
| 167:11,14 169:3 |
| **actions** 22:7,16 23:4 |
| 45:10,15 48:7 68:1 |
| 164:7 165:3 167:8 |
| **activity** 169:14 |
| **acts** 34:2,8,9,21 |
| **actually** 36:14 37:2 |
| 68:13 70:6 77:9 88:5 |
| **additional** 19:18 20:18 |
| **address** 6:8 8:18 9:7 |
| 10:3 14:10 31:4 |
| 35:21 36:2,4 48:12 |
| 48:15 73:18 91:4,12 |
| 91:13 92:12 100:17 |
| 101:1,2 102:20 |
| 152:18 160:7 162:18 |
| 168:4 |
| **addressed** 3:14 167:3 |
| **addressing** 10:20 |
| **admission** 108:1 |
| 110:20 163:18 |
| **admit** 37:6 160:11 |
| **admits** 24:4 161:9 |
| 163:19 |
| **admitted** 49:17 109:5 |
| 159:14 161:18 |
| 163:10 |
| **admitting** 56:10 |
| **adult** 27:21 101:13 |
| **advantage** 158:16,17 |
| **affairs** 148:17,19 |
| **affidavit** 48:14 104:1 |
| **affirm** 19:8 65:1,14,15 |
| **affirmed** 19:5,10 20:13 |
| 65:4 162:20 |
| **affirming** 64:8 65:1 |
| 166:9 |
| **afield** 85:3 |

| **afraid** 74:16,18,20 75:2 |
|---|
| 75:9 76:7 |
| **after** 23:8 26:4 35:16 |
| 44:5 52:5,6 60:20 |
| 61:1 64:2 70:19 |
| 101:9 118:19 135:7 |
| 137:2 151:19 155:4 |
| **again** 10:14 20:5 22:3 |
| 33:1 43:15 44:10 |
| 81:16 82:1,9 129:13 |
| 139:8 151:14 |
| **against** 23:1 33:13 |
| 44:18 46:20 47:1 |
| 48:4 56:12 61:3 |
| 62:18,21 75:9,19 |
| 103:20 107:7 121:4 |
| 135:13 139:10 149:2 |
| 158:15 159:20 |
| 161:11,14 169:6 |
| **agency** 89:20 |
| **agent** 42:13 53:5 |
| **aggression** 158:13 |
| **ago** 93:19 133:1 171:6 |
| **agreement** 34:9 50:17 |
| 77:14,15 95:4,18 |
| 96:3 116:1 |
| **agreements** 112:2 |
| **agricultural** 53:4 58:2 |
| 58:6 |
| **ahead** 40:6 47:14 54:14 |
| 66:15 68:12 69:14 |
| 75:4 126:5,21 135:18 |
| **Air** 9:3 31:4 48:15 |
| 82:15 119:14 |
| **allegation** 6:15 |
| **allegations** 27:4 48:2 |
| 105:1 |
| **allegedly** 134:21 |
| **allow** 13:9 25:2,14 57:5 |
| 62:14 |
| **allowed** 11:7 92:15 |
| 94:4 152:12 |
| **allowing** 25:15 55:21 |
| 56:11 84:10 91:20 |
| 122:15 149:10,11 |
| 151:5 |
| **alone** 164:14 |
| **already** 59:11 109:6 |
| 140:8 147:6 154:5 |
| 174:13,14,20 |
| **ammunition** 127:9,20 |
| 127:20,21 133:15,18 |
| 133:21 134:2,12 |
| 164:16 |
| **amount** 77:16 80:11 |
| 164:16 |

| **amounts** 134:1 |
|---|
| **ancillary** 2:19 15:21 |
| 17:11 19:3 48:18,20 |
| 49:2,4,5,9,9,11,12 |
| 66:20 153:10 |
| **anger** 147:4 |
| **angle** 135:14 |
| **animals** 40:3 |
| **another** 3:16 5:3 22:4 |
| 25:14 30:4 44:6 47:2 |
| 106:12 107:10 129:4 |
| 165:2 170:9 |
| **answer** 38:14 64:20 |
| 69:6,8,11 77:2 78:9 |
| 78:13 81:12 83:1 |
| 117:7 |
| **answered** 63:9 78:12 |
| **answering** 102:14 |
| **answers** 54:20 |
| **anticipating** 10:1 |
| **anybody** 25:16 44:18 |
| 49:21 56:8 146:9 |
| **anybody's** 79:13 |
| 159:17 |
| **anyone** 44:15 47:17 |
| **anything** 3:4 4:1 10:13 |
| 21:1 26:12 30:6 |
| 46:16 47:20 54:19 |
| 59:7 80:14 81:17 |
| 84:17 96:2 97:4 |
| 106:11,12 116:20 |
| 122:6 137:8,9,16 |
| 146:16 158:12 172:4 |
| **anyway** 86:17 165:14 |
| **anywhere** 11:6 |
| **apologize** 169:19 171:7 |
| **apparently** 14:6 44:10 |
| **appeal** 3:2 9:11 12:4,6 |
| 12:6,9,15 19:14 |
| 30:11 33:6 56:4 61:8 |
| 61:10,12 62:4,5,6 |
| 64:6 65:9,13 117:17 |
| 117:20 |
| **appealed** 19:4 62:2 |
| 153:11 168:16 170:5 |
| **Appeals** 154:11,15 |
| **appear** 90:5,7 125:5 |
| **appeared** 69:8 123:17 |
| 123:18 |
| **appears** 144:19 |
| **Appellate** 154:11,12,16 |
| 154:17 |
| **application** 175:1 |
| **applied** 163:6 |
| **appraisal** 32:6 81:15 |
| 171:16 |

| **appraisals** 16:15 32:12 |
|---|
| 80:20 |
| **appraise** 32:6 34:14 |
| 81:15 |
| **appraised** 171:10 |
| **apprehension** 164:20 |
| **approach** 47:15 109:12 |
| **appropriate** 14:11,12 |
| 18:15 20:8 56:19 |
| 57:15 |
| **approval** 49:13 62:3 |
| 168:12 |
| **approximately** 16:8 |
| 89:7 |
| **April** 15:20 17:9 18:2 |
| 19:3 24:15 42:4 |
| 48:18,20 66:21 |
| 102:17 147:16 |
| 149:21 150:3 153:8 |
| 154:1 166:8 |
| **argue** 162:5 |
| **argument** 38:14 60:4 |
| 80:3 |
| **arm** 172:8 |
| **armed** 172:5 |
| **arms** 130:9 172:21 |
| **around** 99:20 100:1 |
| 135:17 143:5 158:16 |
| 161:10 |
| **arraignment** 70:8 |
| **arrest** 27:11 43:20 44:5 |
| 55:5 71:10 136:14 |
| 140:10,13 147:2 |
| 165:1 |
| **arrested** 22:3 27:6 |
| 36:15 37:1 42:20 |
| 55:3 70:20 106:13 |
| 114:15 138:4 165:1 |
| 166:11 |
| **arrests** 107:2 |
| **arrive** 71:16 |
| **arsenal** 166:11 |
| **asked** 37:10 59:11 |
| 78:12 85:6 95:18 |
| 102:15 106:12 |
| 118:14 127:19,21 |
| 154:5 155:18 |
| **asking** 52:7,9 89:20 |
| 111:17,18 119:10 |
| 148:7,16 158:3 |
| **aspect** 23:11 |
| **assault** 124:19,21 |
| 125:3 126:2,15 |
| **assaulting** 102:2,6 |
| 174:9 |
| **assign** 24:12 33:2 |

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

assigned 24:13 120:6
assist 21:17 149:7
  157:10
assistance 106:13
assisted 124:13 160:14
assisting 160:13
assortment 55:19
assume 119:14 120:6
assuming 120:10,19
  124:21
assumption 129:14
attached 3:8 64:10
  108:4,7,13
attachment 108:18
attempt 34:12,13 72:17
  95:19
attempted 67:8 70:3
  76:19 77:14 100:7
attempting 47:17 53:2
  60:12 100:11 171:20
attempts 76:17 77:3,4
  77:6,11
attending 27:21
attorney 6:9 28:10,15
  28:16 30:15 33:4
  48:14 49:10 85:19
  117:9,10 160:1
  161:12
Attorney's 90:1
August 16:8 19:6,12
  28:14 64:6,7 65:3,16
  112:6
authority 11:20 12:3
  144:8
authorized 4:5
authorizes 73:7
automatic 133:4
available 62:5 104:9
aware 15:16 37:21 48:1
  48:3 50:9 66:20 73:6
  83:17 164:17 174:10
away 14:19 88:14
  92:15 104:6 166:14
  173:11

**B**

back 8:17 16:5,8,9
  37:15 62:14 69:20,21
  123:15,20 124:6
  129:4 134:14 135:12
  137:15 152:9 153:10
  155:13,18 160:8
  167:14 168:7,19
  169:7,18
backwards 37:15
bags 123:10 151:14,16

151:19,20
**Baltimore** 176:2,5
bank 25:8 90:17,18
bankruptcy 7:13,14
  9:9,15 11:6,9 20:21
  21:5 28:9,10,11,12
  28:14,18,19,21 29:2
  29:3,8,10,20 30:1,8,9
  33:10 41:18 42:1
  45:10,11,15,17,21
  46:6,7,20 47:8,9,12
  49:14 50:16 52:5,6
  52:17 55:15 56:13
  60:2,18 61:1 62:3,7
  62:12 65:19,21 82:7
  98:18 103:6,11
  142:19 143:14 147:7
  147:8 155:19 157:11
  160:20 167:21,21
  168:5,12,13,15
bar 21:6
**Barb** 126:10
**Barbara** 1:3 2:4 5:8,9
  6:7 25:16 53:16
  56:12 64:1 109:10
  122:4 140:4,19,19
  141:16 148:9 151:17
  159:11 177:7
**Barbara's** 6:7 7:5
  24:21 27:16 85:19
barley 59:6
**Barton** 33:20 154:10
  154:13,14,18
base 9:3,6 31:4 48:16
based 96:1 134:21
  147:20
basement 88:6,13
  134:20 135:10,11
  136:17 158:15
basis 13:2 173:9
bathroom 131:8
**BDU** 135:15
bear 172:20
become 5:16 119:21
  140:18
bedroom 131:5
before 1:11 2:2,20 3:5
  5:10,10 6:3 15:16
  23:21 24:5 25:19
  45:10 46:17 48:5
  51:3 56:3 58:10 60:7
  62:11 63:11 74:1
  82:2 83:4,7 84:2,14
  85:3 93:4 101:21
  133:20 139:21
  151:19 153:11

155:19 159:10
  165:14,15
beginning 17:8 69:19
  163:13
begins 18:5
behalf 13:1 14:6 25:17
  56:6 155:16
behind 135:15 170:14
being 22:3 25:21 37:6
  39:10 44:11 48:10
  52:17 57:3 58:1 76:7
  76:15 83:11 85:17
  100:16 109:15,17
  110:5,7 111:13 138:3
  155:15 157:3,19
  163:3 166:10,10
believe 4:15 10:6,9
  13:8 16:13 17:16
  20:3,4 21:2 23:8 33:4
  39:10 41:20 44:20
  51:5 52:9 53:6,12
  56:18 57:14 65:9
  67:20 70:7 90:19
  93:13 97:3 100:16
  104:19 108:4 117:11
  118:7 123:11 124:16
  124:20 125:2 130:15
  130:18,20 131:1,3,21
  132:6,12,12 133:14
  134:6,13 141:10
  150:2,7 151:17 153:9
  153:20 155:21 159:9
  162:16 166:17
  170:18 175:6
believed 99:15 100:19
  103:21
believes 113:7 118:11
belong 24:7 35:7 55:20
  56:14 93:1,2,4,7
  106:6 159:5
belonged 93:8,11,12,14
  93:17
belonging 26:5,13
  161:6
belongs 26:19 106:7
bench 27:3,6
**Berk** 140:12 156:20
besides 123:2
best 45:9,14 84:8
  129:11
better 12:17
**Betty** 55:11
between 6:7 15:17 16:1
  25:20 34:5 49:6
  116:1 121:2 160:4
beverage 87:13

beyond 34:16 60:18
  147:12 148:10
be3 11:19
bill 91:16 92:5,9
billing 31:3 110:9
bills 8:15
bit 86:4
black 123:10 125:10
blue 133:10,11
board 93:16
boarded 69:5
bolt 132:11
both 24:5,16 67:20
  95:10 100:21 160:21
  173:12
bound 30:20
**Bowling** 9:3 31:4 48:15
box 16:6 47:18
brand 132:20
brief 21:2
bring 4:20 5:18 30:21
  38:6 42:8 85:15
  126:1 159:10 160:2,8
bringing 16:18 167:13
brings 18:5 102:19
brother 45:19,21 46:19
  47:3
brother's 47:8,11
brought 31:15 33:6
  66:12 110:6 114:4
brown 125:10
**Browning** 132:8,19
**Buchanan** 1:5 2:4,6,13
  3:19,19 4:4,11 5:8,9
  5:13 6:4 7:4,13,21
  8:5,7,9,18,21 9:14
  10:7,12,13,13 11:7,9
  11:11,16,21 12:5,9
  13:4 14:9,13,16 15:5
  15:10 16:12,19 17:17
  17:18 18:6,9,12,16
  18:21 19:7,14 20:3,5
  20:7,10,12,16,21
  21:3,14,17,19,21
  22:6 23:3,10,18,20
  25:5 26:6 29:11,17
  29:21 30:14,19 31:3
  31:12,17,20,21 32:3
  32:10,11 33:8,13,14
  34:11,18 35:2,12,13
  35:15,19,19,21 36:19
  37:4,7 38:10,16 39:7
  39:8,10,13 40:9,15
  41:2 42:1 44:4 45:16
  46:3 47:1,5,9,13 51:5
  52:12 53:9,14,21

54:4,4,7,9,12,13,16
  55:1,17 57:1,4,18,21
  58:8,16,16,19 59:2,5
  59:8,12 60:14,16
  61:14,17,19 62:9
  63:12 64:19 65:7,9
  65:18 66:5,17,18
  67:11 68:2,9,14 69:6
  69:15 70:20 71:1,13
  72:9,21 73:7,12,13
  73:17 74:3,8,13,17
  74:21 76:7,21 78:5
  78:13 81:3,19 82:3
  82:10,14,18 84:16,19
  85:9,10,14,20 87:8
  87:10 91:9 93:14
  94:7 95:18,21 96:7
  96:12 97:13 98:7,12
  98:17 100:15 101:18
  103:8,10,16 104:13
  104:15 105:20 106:5
  106:16 107:11 108:2
  108:6,12,15 109:2,4
  109:6 110:19 111:19
  112:12 113:2,5,7,16
  113:19 114:8 115:2
  115:15,17 116:4,19
  116:21 117:10,18,21
  118:3,7,21 120:3,5
  120:12,15,17 121:1
  122:18 128:11 130:8
  134:21 136:8,15
  139:10,18 140:3,4,8
  140:13,19 141:12,21
  142:19 143:13,21
  144:1,7,11 145:7,17
  146:17 147:6,8,14,18
  148:3,8,15,21 151:13
  152:3,9,14,15,17
  153:3,7,15,20 154:8
  154:14,20 159:11
  161:1,4,21 162:6,11
  162:20 163:2,3,5,9
  163:12 164:6,12
  165:6,15 166:1,14,15
  167:1,5,13 168:1
  169:17,19 170:5,21
  171:7 172:4,7,13,17
  173:1,6,9,14,19,19
  174:2,6,13,19 177:4
  177:9,12
**Buchanan's** 19:21
  67:14 113:9 163:17
building 43:21 44:10
  95:14 160:16
business 4:8 13:11 25:4

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

35:4 39:21 40:18
41:1 42:12,17 46:8
53:18 54:8 144:12,14
149:3 163:11 172:18
172:20
**buy** 60:15 94:16
**buyer** 68:5 164:21
**buyers** 50:1

--------- **C** ---------
**cab** 137:14
**calculations** 8:5
**caliber** 125:7,9 127:14
130:14,14 133:12
**call** 12:16 14:11 35:10
35:11 63:19,20 110:9
110:14 111:1,4 118:3
138:14 145:18 159:2
**called** 41:2 70:8 88:19
99:14 136:15 141:7
**calling** 14:8 118:1
140:12
**calls** 100:9
**came** 3:1 20:2 70:19
98:18 99:2 114:20
126:9 129:4,6 134:14
135:12 136:16
169:18
**cancer** 109:16,21 110:5
110:7,11,18,20
**car** 131:11 136:12
143:15,19
**care** 72:16 148:18
160:5
**career** 119:15 145:4
**careful** 70:9
**carried** 21:10
**carry** 70:3
**carrying** 171:8
**case** 3:1 4:4 6:11 14:9
15:2 17:9 23:9 31:13
33:3 65:7,10 85:16
100:14 120:11,19,20
126:9 148:20 154:10
154:15 157:17
165:20 167:2 172:11
174:1
**cause** 5:20,20 10:1 11:3
22:13 23:21 25:18
27:9 35:3,5 56:17
63:7,8,10,11 64:20
71:5 76:7 84:20
100:16 121:3 147:1
149:2 155:18 156:13
157:17 159:9,20
160:15 173:3

**caused** 26:20 62:18,21
**causing** 23:15 113:10
128:16 145:20 156:2
**caveat** 9:20 11:1
**Century** 112:2
**certain** 165:4
**certainly** 172:10
**certificate** 112:5
**certify** 176:6
**challenged** 138:9
**chambers** 127:8
**Chancellor** 4:6,15
**Chancellory** 3:9 4:10
4:17,20 22:17 85:17
115:20 155:8 161:13
**changed** 38:19
**changes** 6:8
**Chapter** 25:8 60:2
**characteristic** 122:20
**chase** 37:2
**check** 7:15 90:14,15
**checked** 137:13,15
**checking** 138:8
**chief** 14:9 15:2
**child** 5:10,11 9:3,4,4
31:8,10 51:9 114:2,3
157:5
**child's** 27:21
**chimney** 69:7 79:18
80:5
**Christmas** 100:2
**church** 28:2,3
**chute** 79:16
**circumstances** 31:14
**City** 176:2,5
**claim** 9:14 28:8,11,15
28:20 29:1,12 32:12
32:14 45:18 46:1,9
46:10,20 47:1 56:7
56:12 60:21 61:2
62:10,11,13,15 77:21
82:3,6 87:8 103:12
106:21 107:14
111:21 116:6 149:2
149:10 154:21 155:1
158:10,12 167:8
168:2 169:6 171:10
**claimed** 57:9,9 63:12
**claiming** 17:18 56:2
**claims** 56:4 57:21
152:19 158:14 168:8
169:11
**clarification** 20:14
**clarified** 162:20
**clarify** 10:3
**clarifying** 20:20 166:9

**classified** 125:5
**classify** 125:3
**clean** 87:16 104:8
**cleaned** 87:19 88:3
**cleaning** 102:8 149:7
**clear** 23:12 35:8 86:14
131:10 133:19 163:9
166:16
**cleared** 128:3,7,8
131:12,13,14
**clearly** 170:8
**clerk** 19:21 35:18
50:10 67:13
**client** 3:15 22:8 23:15
52:14 56:6,10 117:9
117:10 162:16
166:19
**close** 79:15 137:12
**closing** 162:2,3
**clouded** 11:10,12
**code** 22:9 28:20 29:6
36:9 48:11 61:1
163:21
**cognizant** 167:10
**cohabitation** 31:6
**collected** 47:2
**Columbia** 90:4 120:7
**come** 27:10 34:14
38:19 56:8 62:14
71:8 79:12 89:9
101:10 104:7 138:13
140:13 152:12
155:13,18 156:1
159:8 163:11 164:2
168:7 170:17
**comes** 86:17
**coming** 6:20 69:7 79:10
79:18 80:4 97:16
98:10 153:6 157:20
168:19 169:7
**commission** 176:20
**commissioner** 1:11
63:6 155:17
**commit** 160:10
**committed** 63:17
161:16
**committing** 160:11
161:9,18
**common** 139:7
**communicate** 98:10
**communicated** 80:9
138:17,19
**communicating** 51:2
**communication** 55:8
138:3
**communications**

158:18,21
**company** 32:6 42:19
81:15
**compensation** 92:16
**competence** 147:13
**complains** 162:6
**complaint** 23:21 80:6
94:10 96:11 106:10
106:21 158:12
**complaints** 139:10
**complete** 135:7
**completing** 80:15
**complied** 50:19 155:11
**comply** 58:5 147:8
162:9 164:18
**complying** 155:5
**comprehension** 60:18
**computer** 130:3 150:7
150:14,18
**computers** 26:8 55:13
87:12 149:21 150:5
**concealed** 129:4,5
134:18
**concern** 137:3 162:17
164:12
**concerned** 74:2 165:21
**concerning** 75:8
**concluded** 175:11
**conclusion** 37:11
122:21
**conclusive** 171:16
**conditions** 31:8
**conduct** 22:12 23:14
30:21 165:16
**confidential** 73:19
**confiscate** 91:20 92:2
151:6
**confiscated** 25:11
26:13 83:21 90:2
127:12 134:10 175:8
**confused** 104:2
**connected** 44:16
**connection** 2:16 115:7
164:9
**consider** 158:8
**consideration** 24:18
**considered** 9:15 24:20
24:21 57:6,8,12
**conspiracy** 121:1
**constellation** 22:6
**constitute** 15:8 34:7
37:8 158:13
**constituted** 6:19
**constitutes** 157:2,21
**constituting** 104:1
**Constitution** 160:13

172:14
**Constitutional** 120:13
120:15
**construction** 14:2
**contact** 71:1 96:12,13
96:14,17,19 97:1,8
97:12,13,15,18 98:1
98:5,8 99:7,10 100:3
100:7,11 101:14
113:12 129:18 139:2
139:4,6,8 173:9,10
**contacted** 68:6 98:3
138:5 139:5
**contained** 21:12 24:16
40:20 41:8,11,21
42:2 62:17
**content** 23:7
**contents** 24:19
**continue** 51:12
**continued** 28:6 63:3
**continues** 22:10 23:10
164:2
**continuously** 27:18
**contract** 6:4,6 18:11
19:21 26:21 33:15
34:1,3 67:14 95:7
107:1
**contracts** 33:16,17,20
116:2 173:21
**contractual** 115:21
116:4,11 144:13
**contractually** 33:17
**contribution** 148:10
**conversation** 99:4
**conversations** 50:4
**conversed** 47:20
**Cooper** 67:8 72:6 95:3
98:3 99:18
**cooperate** 18:4,6 50:13
50:14 80:17,20
**cooperated** 50:15
**Cooper's** 72:12
**copies** 21:12
**copy** 3:12 38:8 39:10
64:17 91:16 92:5
108:3,6 109:7 153:21
**core** 81:5,6 86:1
**corner** 135:10,10 143:5
**corporate** 57:18 63:16
157:12
**corporation** 10:9,9
26:5 58:17
**correct** 7:9,21 8:9
14:14 37:3,7 47:10
47:13 49:8 54:7 65:5
70:21 71:15 76:12

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

86:7,8,13,19 97:2
98:1,2,6,17,19
103:17 116:10
119:20 126:4 129:17
131:16,17 138:1
169:4
**corrected** 168:4 174:16
174:17
**counsel** 5:8 22:18
31:15 44:16 47:16
59:19 61:4 63:9
**counsel's** 157:12
**counter** 136:21 150:10
**County** 154:12,16
**couple** 101:20 130:15
133:1
**coupled** 147:3
**course** 6:18 77:8
150:11 170:19
**court** 1:1 2:2,2,11,12
2:20 3:7,8,9,10,11,18
4:6,9,10,14,16,17,20
5:2,10,12,14,16,20
5:21 6:3,11 7:10,12
7:14,16 8:2,6,11,13
8:20 9:1,8,9,10,10,11
9:13,18 10:5,16,18
10:19 11:12,16 12:1
12:3,7,12 13:5,8,12
13:19 14:1,5,15,18
15:6,11,13,20 16:4
16:17 17:1,6 18:14
19:4,5,8,9,10,16,20
20:4,8,13 21:1,5
22:11,16,16,17,17,21
23:4,6,13,18 24:1,5
24:10,10 25:1,6,7,7,9
25:15,19 26:1 27:4,5
27:10,20 28:7,7,9,10
28:17,18 29:5,9,13
29:14,16 30:3,8,9,11
30:12,13,17 31:1,1
31:11,16 32:9,10,13
32:20 33:1,10,16,18
34:16,20 35:8,13
36:21 37:10 38:8,13
38:18 39:3,7,12 40:6
41:6,8,11,12,14,16
42:3,8,9 43:10 45:6
45:15 46:7,12,17,19
47:4,7,11,14 48:2,4,5
48:6,13 49:14 50:9
50:16,20,20 51:1,3,6
51:7,10,14 52:9,11
52:16,17,19 53:7,11
53:19 54:1,6,8,10,14

54:17 55:6,12,15,15
55:16,21 56:4,4,10
56:13,18 57:11,14,20
58:14,18,21 59:4,7
59:10,16 60:2,4,7,17
60:17,18 61:2,3,9,10
61:12,15,18 62:3
63:1,8,12,13,18,21
64:4,6,8,13,17 65:2,6
65:10,16 66:1,9,15
67:13 68:11,18,21
69:14,21 70:6,11
72:11 73:5,11 74:1,4
74:6,11,14 75:1,10
75:20 76:8,13 77:1,6
77:9,18 78:1,7,12,14
80:3,11 81:5,11 82:5
82:7,11,21 83:6,9,15
83:19 84:7,10,21
85:4,8,18,21 86:3,9
86:16,20 87:2,9,18
87:21 88:3,7,9,12,16
89:15,16,19,20 90:3
90:5,8 91:7,11,11,14
91:19 92:1,7,9 93:6
93:20 94:6 95:12,13
95:19,20 96:4,9,18
97:1,6,10,13,20,21
98:4,9,15,19,20
100:13 101:1,3,9,16
102:20 103:5,6,7,9
103:11,15,18 104:17
105:4 106:4,8,12,12
106:19 107:6,21
108:5,8,14,18,20
109:1,5,6,8 110:1,6
110:21 111:7,11
112:3,5,18 113:4,15
113:18,20 114:4,6
115:4,13,19,20,20
116:7,11,16,19 117:5
117:12,14,16,19
118:1,5,9,13,16
119:11,17 120:4,7,10
120:14,16,18 121:5
122:7,15,19 125:15
125:20 126:2,5,8,12
126:15,21 128:9,19
129:1,7,15 130:10
133:19 134:3,14,19
135:2,5,18 136:11
137:1,7,11,17 138:11
139:11,17,21 140:1,2
140:3,4,6,16,20
141:11,14 142:5,12
142:19 143:2,4,14

144:5,9,9,11,16,18
144:19,20 145:1,10
145:14 146:2,4,18,21
147:7,8,9,12,15
148:13,18 149:5,7,16
150:5 151:9,21 152:5
152:7,11,16 153:2,5
153:7,12,18,21 154:3
154:5,10,13,15,17,18
155:3,7,7,8,8,8,9,10
156:14,17 157:15
158:3,8,10 159:10
160:1,20 161:3,15,20
162:1,9,17 163:13
164:9 166:4,4,12,21
167:2,14,21 168:1,4
168:5,8,9,12,15
169:7,11,12,18,19,21
170:7,8,11 171:2,8,9
171:13 172:5,9,15,19
173:4,5,7,16 174:1
174:10,14,17,21
**courts** 9:8 140:7 155:6
**court's** 10:15 15:16
33:6 37:21 39:11,14
64:21 72:4 168:10
**covers** 117:11
**co-owner** 122:5 165:12
**created** 161:7
**creditor** 47:4
**crime** 90:11,12
**crops** 173:20
**cross** 54:21 73:11
84:16 130:6 152:5
**crowd** 14:20
**CS94-3107** 1:4
**cure** 167:10
**currently** 59:1
**custody** 5:11 9:4 114:3
157:5
**cut** 37:2

---

**D**

**damages** 63:17
**Dan** 131:19
**data** 55:18
**date** 45:16,17 73:14
74:6 100:1,4 108:15
142:16,21
**dated** 20:19 24:14
80:16 147:16 154:1
**dates** 94:20
**daughter** 28:3,5 31:6
101:13 151:4
**daughter's** 139:13
**David** 1:5 2:4 3:19,21

18:20 25:16 35:15,19
40:8 108:11 124:13
177:4,11
**day** 40:7 69:11 70:19
71:17,19 92:4 111:8
111:9 114:15 132:21
132:21 173:16 176:9
**days** 3:17 62:5 148:2
**dead** 47:2
**deal** 15:17 73:19
132:21 175:4
**dealt** 163:8,8,9
**December** 99:19,21
108:17 109:11 140:9
**decide** 74:12 120:20
148:20 158:11
171:18
**decided** 16:13 147:16
**deciding** 167:2
**decision** 12:13 117:17
117:20
**decisions** 12:8
**deeded** 60:8,9
**default** 63:9 173:2
**defend** 75:17 170:16
172:11
**defense** 85:12
**define** 24:12
**definitely** 23:16
**definition** 45:2 124:21
165:8
**degenerative** 113:16
**Delaware** 1:1 3:20 9:11
12:1 17:14 19:5 22:9
36:6,8 40:11 42:15
52:20 53:4 56:2 58:4
60:7 61:8 62:16,20
70:8 74:17 90:3 92:6
98:19 100:20 101:2
105:7,11 106:3
115:19 121:14 139:1
142:19 157:2 163:21
166:2 168:20 170:6
172:14 175:8
**delayed** 28:12 60:16,17
60:18
**delivered** 101:7
**delivery** 36:8
**demonstrated** 53:16
**denied** 102:10
**department** 110:9
**deposit** 87:7
**deposited** 90:15
**describes** 29:10
**desk** 6:5 18:11 41:19
150:7

**despite** 57:15 97:10,11
**destruction** 145:21
**determine** 6:17 32:17
32:19
**developing** 157:7
**diagnosed** 107:11
**diagnosis** 107:15,17
108:10 109:10,18
110:2 113:14
**dictionary** 165:9
**difference** 131:15
**difficulties** 67:21 68:4
**direct** 85:6,9 162:8
**directed** 2:16 22:18
34:15 103:6 146:13
**directing** 146:16
**directly** 51:2 71:2
**disagree** 12:12 53:13
**disallowing** 168:8
**disclose** 51:15 53:4
**disclosed** 7:17,18 48:12
117:12
**disclosing** 6:7
**discontinued** 155:16
**discussed** 129:10
**dismiss** 15:2.11 21:12
29:3 64:10 157:17
**dismissal** 24:2 30:10,10
60:2 158:8 168:14,16
**dismissed** 11:7 21:5
23:1 24:1 29:2,20
30:1 32:15 48:8,9
52:5,6 62:13 63:5
77:17 107:8 140:9
167:17 169:9
**disorder** 107:11
**displace** 13:10
**displaced** 32:18
**disposition** 175:2
**disrupt** 56:1 111:20
112:13,15 158:21
159:1
**disruptable** 29:13
**disrupted** 33:16 113:15
**disrupting** 56:10
**disseminate** 145:8
**disseminated** 162:13
**dissolved** 10:9
**distinguish** 34:5
**distribution** 56:11
112:14
**District** 9:9,10 25:9
30:11 48:5 51:3
55:15 90:3,5,8 96:18
98:19,19 120:6,7
139:11 154:11,16

155:9,9
**disturb** 25:17 112:16
**disturbed** 63:15
**disturbing** 26:1 62:17
**dive** 26:16
**divide** 32:13 33:2
**divided** 171:14
**division** 5:15 9:4 24:18
  26:2 28:16 31:9,18
  31:19,19 32:10 33:5
  42:3 51:8,9 60:11
  62:17 63:14 86:1
  94:14 102:18 111:11
  114:2 117:15 147:16
  147:19 154:1 164:10
  164:13 167:13,15,16
  168:11,20
**divorce** 26:4 80:15
  112:5
**divorced** 77:12 78:11
  78:16,19
**divulge** 91:8
**DOC** 55:10
**docket** 154:4
**doctrine** 161:14 167:4
  167:19 168:18,19
  169:1
**doctrines** 167:3
**document** 26:8 92:8
  93:11 98:13,13 112:4
  112:9 143:7,8,10,12
  161:7
**documentation** 42:7
  52:15
**documented** 157:4
  160:18,19,21
**documents** 3:10 8:16
  26:8 87:11 94:13
  101:1 123:9 142:9,10
  142:11,13,14,20
  143:15 147:4 150:20
  151:12,15 167:6
**doing** 5:3 14:1 21:1
  46:21 59:19 72:19
  80:14 118:17 161:6
**dollars** 160:7
**domestic** 6:20 15:8
  172:1
**domicile** 157:21
**done** 87:17 95:12 96:2
  106:11 108:11
  153:16 154:7 163:5
  166:5 168:3,6 171:20
  174:8
**door** 6:21 68:17 69:6,9
  102:14 134:21

135:11,14 136:17
  170:14
**doubt** 174:4
**down** 16:18 59:13,20
  66:10 79:16 85:5
  95:5 100:19 126:3
  129:20 132:15,17
**Dr** 107:15 108:10
  109:10 113:14 114:5
  157:6
**drive** 79:5 150:9,10,12
**driver** 114:14
**driveway** 136:5
**driving** 26:17 104:3
  141:9 143:19
**drove** 143:15
**drywall** 158:15
**due** 20:2 68:1 90:5,7
  155:5
**duly** 35:16 64:2 118:19
**dump** 87:3,7
**during** 9:3,21 11:3
  24:18 62:4 83:3,20
  84:1 96:16 109:14,19
  110:4 114:1 139:13
  145:16 152:20 157:5
**duties** 145:9
**D.C** 9:8 24:20 27:5,5
  27:20 28:7 50:20
  51:4 89:15,16,19
  90:6 91:3,4 96:18
  97:12,21 139:11
  140:4,7 155:13 159:4
  160:8

---
**E**
**each** 130:2 133:20
**early** 64:12,12,13
**easily** 135:16
**economy** 4:13
**Edward** 108:10
**effect** 55:21 56:9 60:5
  94:18 129:16 170:13
**effects** 31:7,8,9,9 55:13
**effectuate** 6:1 55:7
  60:12 61:5 62:5
  166:8
**effectuates** 61:20
**efficiency** 85:10
**efficient** 118:14
**effort** 99:10 166:7
**efforts** 67:6 95:13
**eight** 169:16
**either** 22:18 24:7 34:7
  62:2 76:18 77:5
  78:10 87:7 97:17

115:7
**elaborate** 54:20 107:13
**electrical** 160:21
**element** 117:16,19
  119:4
**Eliopoulos** 1:21 176:4
  176:12
**else's** 120:21
**emails** 146:6,7,8,20
**emergency** 110:11
  111:9,14
**employ** 13:6 25:4 26:11
  26:21 35:4 119:2
**employed** 157:10,10
**employee** 44:4 157:9
**employees** 174:2
**employer** 112:6,9,14
**employment** 45:5,7,7
  106:11 107:3,5,7,9
  114:9 145:12 159:1
**enabling** 141:21
**encourage** 113:13
**end** 24:2 118:17
**enforce** 20:16
**enforced** 138:10
**enforcement** 20:15
  52:4 55:6 126:17
**enforcing** 138:14
**engaged** 165:15
**engaging** 139:20
**enjoy** 96:16
**enjoyment** 45:5
**enlighten** 6:21
**enough** 136:1
**ensued** 15:17
**enter** 51:12 56:19
  57:15 89:5 95:15
  136:4 149:2,10,12
  156:3 163:3
**entered** 27:7 43:14,17
  44:2,3 55:12 136:13
  154:1 161:5,8 174:19
**entering** 28:3 36:17
  49:17 99:5 160:15
**entire** 119:15
**entirely** 12:15
**entitled** 170:18 171:2
  172:16,17,19
**entitles** 149:18
**entity** 10:7,8 20:5
  25:10,10 41:1,5,10
  41:15 46:9 58:7
  59:17,18,19,20,21
  60:5 62:18 157:13,14
  157:14,15 163:4
  173:20

**entrance** 88:17 89:2
**entry** 105:12 136:17
**equipment** 24:17 26:11
  134:4,6
**equity** 45:18 46:1,5
  47:5
**Erlich** 152:18,19,20
  153:2
**escorted** 142:18
**essential** 11:16
**establish** 149:1
**estate** 40:10 171:11
**estoppel** 167:4,4,20
  168:19 169:1,8 170:3
**evaluation** 108:11,16
  109:14 174:12
**even** 8:17 9:14,15 33:9
  56:2 62:12 69:6
  71:20 72:6 98:7
  100:15 104:3 157:19
  158:16 159:15 166:6
  168:16 169:7
**ever** 15:3 47:15 75:21
  76:14 79:12 83:3,6
  84:2 99:4,7 145:3,17
  145:18,19,20 146:4
  146:15 149:17 162:6
**Everly** 33:4,4
**every** 26:8 71:6,7 72:17
  92:4 99:14 123:14
  127:6 170:14 171:9
**everything** 8:15 26:8
  26:13,18 55:13 86:14
  86:21 127:15 140:14
  155:14 157:7 163:15
**evict** 8:12 11:14 12:1
  24:11 35:3,3 39:18
  45:2 52:12 53:1 60:8
  144:3,5,8 165:7
**evicted** 7:11 18:21
  19:11 40:9 53:19
  57:2 84:12 96:1
  99:16 144:6,12
  162:21 165:10
**evicting** 51:11
**eviction** 3:2 5:21 12:11
  12:17 13:7,8 15:8
  25:1,13 58:3,4,7,13
  59:15,17 60:6 61:6,7
  69:3 81:7 102:3,4
**evictioning** 104:3
**evidence** 6:5,6,14 8:18
  9:21 11:2 21:16 23:9
  80:19,21 112:20
  118:12 153:19
**evident** 5:16

**ex** 166:13
**exactly** 55:9 97:5
**examination** 35:20
  54:21 66:16 73:11,12
  115:5,17 118:21
  152:5 177:5,8,9,12
**examined** 35:17 64:3
  118:20
**example** 15:1
**exceed** 85:9
**exceeded** 60:21
**exception** 40:17 163:6
  163:10,20 165:11
**excessive** 80:12 164:4
**exclude** 12:2 24:11
  25:3 38:1 39:18,21
  40:1,2 52:12 53:1
  60:8 158:4 165:7
  169:8 170:2
**excluded** 5:21 10:11
  18:21 19:11 22:11
  23:13 24:8 40:9
  53:20 84:12 112:21
  144:11 156:2 158:3
  162:21 164:3 165:10
  170:10,12
**excluding** 10:18 20:12
  51:11
**exclusion** 25:2 52:4
  58:3,5,7,13 60:6
  65:13 70:4
**exclusive** 173:12,15
**exclusively** 29:5
**excuse** 18:9 25:6 43:15
  146:18 154:13
**exhausted** 155:1
**exist** 66:13
**existence** 34:3
**exists** 157:14 159:9
  161:4
**expected** 167:10
**expedition** 153:13
**experience** 127:13
  128:6
**expiration** 30:7 62:9,13
**expired** 62:12 169:6
**expires** 176:20
**extendable** 29:7
**extended** 29:6
**extent** 117:7
**extenuating** 31:14
**ex-husband** 159:5
**ex-wife** 24:4 157:18
**E9** 145:15

---
**F**

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 183

facility 87:4
fact 59:21 75:2 97:10
97:12 110:8 163:4
164:15 165:5
factors 102:18
facts 162:5 165:20
failed 28:8 32:11,12
33:19
fails 15:1
failure 29:2 158:10
162:8
faintest 153:3
fairly 119:21
falls 169:8
false 91:12,13
familiar 41:1
family 1:1 3:8,10 5:21
8:11 10:15 21:1
22:16 24:10,10 25:7
27:10 33:1,6 41:12
44:17 45:6,7 46:12
50:19 51:14 52:11,19
55:6 56:10 57:11
63:13 64:17 68:7
81:5 153:21 155:8
168:9,10
far 6:12 67:19 85:2
93:20 94:11
farm 8:12 11:15 26:21
40:13 54:6 58:5
93:16 114:13,16
161:1 173:14
farmer 114:14
Farms 6:4 7:13 8:18
10:7,13 11:7 17:18
18:12 20:5 21:3 25:5
26:6 41:2 42:1 44:4
45:16 46:4 52:12
54:5,13 55:18 57:4
58:9 60:14 74:17,21
151:13 161:2,4 163:2
163:12 173:19 174:2
Farm's 58:16
fax 66:10
fear 22:8 23:15 113:11
113:13 156:18,21
157:4,7 158:20
164:19
fearful 107:1,10 113:7
fearing 158:14
February 16:13 18:17
18:18 19:4,10 20:11
32:3 38:1 39:2,3,14
40:8 43:13,16 44:20
51:10 52:2,7 59:13
59:14 63:4 64:12,13

65:4,13,15 80:17
117:4 170:1
Federal 29:4 48:11
52:16 62:14 97:1,7
112:13 138:10,15,17
161:3
feed 92:4
feel 22:13 71:5 72:5,8
72:14,19,20 73:4
75:17 95:15 104:8
107:4 122:4
feeling 72:2
feelings 72:10,12
fees 28:16 49:10
feet 89:7
felonies 161:19
felony 130:9 160:10,11
161:9,10,11,17 174:8
174:10
felt 71:8 107:8 122:6
138:20,21
Fetchut 48:15
few 10:3 55:9
field 27:12 36:16,18
37:1 112:15 156:5
174:3
fields 58:18,19
fight 34:12
fighting 55:14
figure 19:17 140:7
file 9:14 11:7 15:16
19:17 23:3 28:8,11
28:15 29:7 52:2
62:10 63:7 64:17
66:9,11 82:6 98:12
103:12,20 108:5
109:7 112:4 117:13
160:6 164:5,6 168:1
168:4
filed 2:3 5:19 8:16 12:9
14:6 20:21 21:2,12
21:15 22:15 27:19
28:11,14 30:3 33:13
45:11,18,21 46:1,15
46:19,20 47:1 48:2,3
58:10,12 61:10,12
62:19 63:1,8 64:11
64:12 65:10,14 95:19
106:11 107:6 112:7
117:2 139:9 155:15
162:16 164:8 173:3
files 16:18 151:18
filing 21:7 27:9 112:8
161:15
filings 22:21 23:6
final 29:3 30:8 49:5

61:2 166:21 167:19
168:14,17
finally 18:8
finance 155:13
financial 5:17 9:2 35:5
55:18 74:5,9,10
148:17,19
find 11:18,19 12:18
28:21 30:2 71:19
73:3,20 91:15 113:10
123:12 134:4,8,11,11
137:15 159:1,8 165:2
171:4
finding 11:17 23:5 71:4
124:13
fine 103:10
finish 45:13 85:1
fire 79:10,11,13,16
130:9 157:20,20
firearm 43:12
firearms 88:11,12
104:5 121:11 123:2
123:12,14 175:7
first 15:20 17:8 35:10
35:16 40:10 55:4,4
64:2 92:1 118:19
127:6 135:3,6,17
136:14
fishing 26:10 153:13
five 26:4 33:9 80:9
93:19 113:12 158:7
159:5 171:11
flip 104:15
Florida 45:18,21 46:7
46:20 100:12,17,18
100:19 101:1
focus 15:19
focused 123:6
folders 16:7
follow 111:18
following 15:12 26:1
97:18
follows 35:17 64:3
118:20
food 87:13
force 9:3 31:4 48:16
82:15 119:14 145:12
171:20 172:2
forceable 171:21
forced 97:3 172:4
forcing 96:21
Ford 37:5 89:4 136:19
foreclosure 33:12
34:12 67:20 142:9,12
142:14 143:7,17
144:2 167:6 169:3

foregoing 176:6
forget 93:3
form 3:4 18:7 94:17
former 25:21 49:7
formerly 5:9 66:18
forth 6:8 16:3 30:21
31:15 33:6 56:7
forward 94:11 96:3
163:17 164:15 166:4
166:13
found 22:2,4,21 23:5
61:3 70:16 71:20
83:9 105:3,5 123:14
124:8,10 127:20
129:4,5 133:21 134:1
134:15 137:3,5 164:6
foundation 111:17
four 64:9 89:7 155:16
foyer 127:3
frame 76:6
franchise 10:10
fraud 31:14
fraudulent 9:1
fraudulently 90:13
frequently 50:8
friend 55:11
frivolous 23:1,6 164:6
from 2:3 3:9 4:7 5:21
7:5,11 9:14 10:12
11:15 13:10 16:20
17:18 18:21 20:3,12
21:15,18,20,21 22:10
22:20 24:8,8,9 25:2,3
25:15 26:15,18 27:11
27:11,20,21 28:2
29:20 32:2,18 35:3,6
36:12,16 37:15 39:19
39:21 40:1,2,9 43:11
43:12 45:4 47:2,17
48:14 49:3,16,16
50:21 51:1,2,11
52:12,15 53:1,17
55:4 56:3 61:2 62:1
64:8 77:17 80:15
84:11,12 85:3 87:13
88:5,20 89:9 91:17
91:19,20 92:6,6,7
93:5 96:1,17 97:12
98:18 99:2,17 102:8
104:1,3 105:15,19
106:11 107:3,5,7,9
107:15 108:10
109:10 111:20
112:11,21 113:6
115:18,19,19,20
118:12 120:6 121:11

123:1 124:6 126:19
127:10,14,15 128:1
128:16 130:11 131:5
131:7 137:8,9 138:10
139:10 141:2 144:3
144:12,20 150:1,6,14
150:18 151:6 153:6
156:2,5,19,21 158:4
158:5,18 159:11,17
161:15,16 162:13,21
164:2 166:3,14,14
167:16 169:8 170:2
170:10,16 171:10
173:11 175:7
front 28:2 170:6
fulfill 116:14
full 123:10
fully 135:14 161:1
164:17
funds 45:19 46:2 47:2
furniture 87:8
further 16:5,9 34:18
35:2 54:15 73:9
153:18 158:5
furthermore 158:9

_____ G _____
gain 88:17 89:2 105:11
159:20
gained 136:17
gather 59:8
gauge 134:8,12,12,17
gauntlet 28:1
gave 13:8 79:9 93:2
129:2 149:1 151:10
Gay 14:6,7,8,12,19
16:14 30:13,14 31:3
32:4,5 33:14 47:16
47:19 48:4 49:10
111:9 112:1 113:15
113:21 116:20 117:1
Gay's 48:13 117:6
geez 8:3
general 147:21
Generally 79:15
generates 164:18
Georgetown 55:10
gets 121:6
Gibson 2:6,7,9,13 3:13
4:5,19 5:19 6:2,8,21
7:5,8 10:2,6 11:5
13:17,20 14:3 15:15
16:10 17:4,7 18:11
18:17 19:13,18 20:11
29:18 35:11,20 39:2
39:6,9 40:4,7 51:21

54:15 56:3,6,9 57:13
57:21 58:6 63:4,20
64:4,7,14,21 65:5,12
65:20 66:3,6,16 73:9
73:15,18 74:19 76:5
78:3 80:1 81:1,10,16
82:1,8,16,20 84:13
85:2,18 91:6 101:15
102:21 103:3,13
104:11,14,19 106:14
106:17 108:3,9,17,19
110:16 111:16
112:10 115:5,10
116:3 118:10,15
120:2 122:17 130:7
136:6,9 139:15
141:18 143:18 145:5
147:10 148:5,12
150:3 151:8 152:6
153:9 162:2,4 177:5
177:8
**Gibson's** 6:5
**gist** 6:11,14
**give** 57:5 59:16 92:14
94:7,12 97:15,19
99:2 156:15
given 24:17 154:9
165:8
gives 60:12 72:10 107:4
164:11 165:9
**giving** 56:15 163:20
**Glendis** 2:6 18:10
51:21 56:3,6,9 63:3
85:18
**go** 8:3 13:4 16:4,7,8
40:6 47:14 54:1,10
54:14 63:11 66:15
67:16 68:7,12 69:3
69:14,21 72:5,6 75:4
75:15 79:16 87:2
126:5,21 135:17,18
149:19 159:21 160:1
160:4,6 163:16 164:9
166:4,12 170:12
171:2
**goes** 112:20 113:3,5
157:17
**going** 6:13 8:17,17
10:19 19:19 21:20
28:13 37:15 54:3
72:14 85:8 86:5,17
87:2,3,3,4 93:20
94:11,11 103:13
104:11 135:9 138:7
138:11 140:13
143:14 151:21

153:10 157:6 158:2
168:17 169:15
170:19 171:3 175:3
**gone** 59:20
**good** 56:8 136:1 138:12
**gotten** 101:10
**Government** 97:7
112:14 119:3,4
138:17 157:9 160:13
**graduation** 28:1,3
139:14
**grant** 166:13,13
**granted** 9:19 13:15
65:16 149:6 166:20
**granting** 11:1 65:1
**great** 15:17 73:19
**grossly** 155:11
**grounds** 103:3
**guards** 27:13
**guess** 4:18 9:20 136:1,3
174:3
**gun** 71:6,7,20 89:6,9
104:10,21,21 105:3,5
105:6 123:19,20,21
124:1,5,17 129:5,5
132:8 134:8,16,18
135:16 137:19
145:20 170:14
**guns** 26:11 55:19 71:5
73:4 74:16 83:4
87:12 104:9 124:15
124:18 130:11
156:21 171:4
**gut** 159:8
**guys** 138:13

————— **H** —————
**hae** 50:4
**half** 28:13 76:3 89:7
129:13 149:15 170:4
**hand** 54:11,12 56:20
123:21 124:1,5
130:11 176:8
**hands** 161:7,14 162:7
**hang** 156:11
**happen** 21:20 67:3
90:20
**happened** 136:12
**happy** 64:16
**harass** 28:6
**harassing** 27:19
**hard** 13:20 150:9,10,12
159:9
**harm** 44:19 56:17
62:21 70:14 121:3
128:16

**harmful** 22:14
**having** 2:19 7:9 35:16
40:2 64:2 102:2,7
104:4 118:19 148:9
160:14 166:11 172:7
**health** 174:12,18
**healthy** 174:15
**hear** 6:17 9:20 11:2
12:4 13:21 21:16
23:9 78:13
**heard** 16:13 165:17
**hearing** 1:9 6:10 16:14
16:20 32:2,7 60:7
62:1 63:2 155:19
168:21
**hearings** 49:3
**hearsay** 68:10 113:8
**heart** 86:4
**heat** 79:21
**Heidi** 48:13 151:10
**Heidi's** 151:4
**held** 1:10
**helicopters** 27:13
**help** 7:3 100:13 120:18
120:20 141:16
148:19 166:3
helpful 21:11
**Hendrickson** 6:13 7:19
8:3,10 11:13,19 12:7
13:2 18:18 20:19
21:8 23:2 32:16
51:17,18 60:12 61:5
63:5 81:12 96:5
112:21 162:10 170:1
171:15,19 175:2
**Hendrickson's** 10:11
12:10 18:8 24:14
57:16 64:8 65:14
**her** 6:7,9 9:2,5 15:2
18:11,12,12,14 21:15
22:18,19 24:4,7
25:12,21 27:19,19
28:10,15 31:5,7,9
32:14 34:21 35:2,7
38:11 44:16 48:14
49:19 51:2 56:1,6,10
59:19 61:2 62:14,15
74:2,4,8,9,10 75:3
84:8,21 104:17,17
112:14 113:7,10,13
121:4 129:13,14
138:20,21 141:21
144:13,21 145:17,18
145:19,20,21 148:3,4
148:10,17,18 152:17
153:14 155:13 156:1

156:2,9,15,17,18,20
156:21 157:1,3,10
158:4,12,14,16 159:4
159:20 160:2,4,7,10
160:11 161:6,12,13
161:14 164:21
166:20 168:8 169:3,7
171:10 173:11 174:9
**herself** 161:11 167:16
**hey** 138:11
**hidden** 123:15 135:14
**high** 28:1
**highly** 11:17 159:1
**highway** 131:7
**him** 8:8 10:18 14:16
23:4 47:17,20 50:7
51:3 68:7 93:8 97:15
97:18,19 98:1,5
106:10 107:3,12
117:1 126:18 149:2
157:10 163:11,20
165:1 166:10
**hire** 82:6 160:1
**hired** 54:11,12 56:20
**history** 7:6 33:9
**hold** 66:9
holder 45:19 46:2,5
47:6
**hole** 61:4
**home** 13:10 40:3 43:5
79:14,15 80:5 130:2
131:19
**Honda** 79:6,8
**Honor** 2:9,13 3:5 4:4
4:11,19,21 5:10 8:1
8:10 10:2,4,16 11:5
11:11,21 12:5 13:5
13:18 14:13 15:5,10
15:15 16:2,12,21
17:7 18:10,19 19:15
20:7 21:11,16 23:8
23:20 29:18 35:11
36:19 37:4,8 38:10
39:9 40:4 54:7,15
55:2 61:17,19 64:15
65:10 66:3,8,9 68:9
72:9 73:10,15,17,20
74:3,19 76:5 78:3,5
78:10 80:1 81:1,3,10
81:16,21 82:1,8,16
82:19 84:4,13,19
85:14 91:6,9 94:8
95:17 96:1,8 97:7
98:7 101:15,20
102:21 103:13,17
104:11,13,19 105:20

106:14,16 108:3,9,13
108:19 109:7 110:16
110:20 111:16,20
112:10,13 113:2
115:3,11,16 116:3,21
117:11 118:10 120:2
120:3,13 122:17,18
123:8 128:11,18
130:7,8 133:18 136:6
136:8 139:15,19
140:15 141:13,18
142:15 143:6,18
144:1 145:5,7 147:10
148:5,12,21 152:4,6
152:10,14 153:9,15
155:19 156:13
161:21 162:4,15
164:5 165:14,15,17
166:18 167:1 169:20
170:5 171:7 172:7
173:1,14
**hope** 162:17
**horse** 93:16 106:7
**horses** 40:3 91:17 92:4
92:13,15,17 93:1,4,7
93:10,12 94:2,5
105:14 114:20 141:2
160:6,8
**hospital** 110:9,15 111:1
111:5
**hour** 98:21 99:3
**hours** 55:9 97:15 98:18
99:5 100:3
**house** 54:14,15 69:4
72:1 79:13,21 83:4,7
83:12,16 84:1 86:5,6
86:17 87:16 88:6,18
89:10 98:11 102:9,10
102:15 104:3,4
105:12 123:15
127:14 130:5 134:5
135:8,9,20 136:18
137:3 140:14 155:13
157:1 159:8 170:2
172:6,8,8,10,15
**housing** 112:15
**Houston** 32:6 81:14
**Hudson** 17:14 36:4,5
40:11 42:14 43:3
102:1 121:9 141:2
**huge** 164:16
**hundred** 14:19
**hurry** 159:7
**husband** 22:19 25:12
27:19 38:11 104:10
104:21 105:2 156:20

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

Page 185

158:16 160:11
161:13

**I**

**ID** 26:8
**idea** 153:4
**identification** 89:12
**identified** 44:11 127:17
**identify** 152:13
**identity** 26:12 90:13
**II** 132:5
**III** 108:10
**illegal** 157:9 160:12,14
**illegally** 128:15 138:6
**immediately** 27:6
**impair** 139:21
**impending** 84:20
**implied** 69:19
**important** 20:4 34:5
    130:8
**improper** 157:18
**inactivity** 167:5 169:1
    169:9
**inanimate** 158:14
**inaudible** 11:18 12:2
    18:10
**Inc** 10:7 17:18 20:5
    21:3 41:2 42:1 45:16
    163:2,12
**incarcerated** 55:10
    111:13 138:12
**include** 43:8 146:14
**includes** 9:2
**including** 26:5 29:14
    159:17
**income** 6:8 9:5 31:7
    35:4 102:20 112:13
    141:20
**inconsistent** 34:3,8
**incorporated** 62:19
    161:2,4
**increases** 9:5
**incumber** 91:11
**incumbered** 62:7
**INDEX** 177:1
**indicate** 80:12 133:6
**indicated** 176:7
**indicates** 162:16
**indicating** 79:1 100:18
    101:9 142:9
**indication** 79:9 109:15
    109:20
**indigency** 27:17
**indirectly** 51:2
**individual** 3:16 139:19
**infirmed** 111:14

**information** 3:3 6:9 7:3
    7:4,9,17,18 8:3 9:19
    30:13,15,18 41:21
    42:6 46:12 48:12
    73:21 87:12 91:8
    98:16 120:11 153:5
**informed** 28:1
**inherited** 46:2 47:2
**inner-Government**
    158:18
**inner-governmental**
    158:21
**innovation** 34:6
**inside** 44:9 136:21
    137:12
**inspect** 69:12
**instill** 156:14,16
**instructed** 14:18
**insurance** 78:18 111:4
    111:5
**intend** 86:9,11,13,20
**intended** 87:6
**intent** 27:16 56:17
    81:19 111:19 112:8
    112:12,16 126:19
    128:12,12
**intention** 87:15
**intentional** 33:21
**intentionally** 123:18
**interest** 57:19 166:18
**interfere** 35:4 45:7
**interfered** 113:21
**interference** 20:3
**interfering** 33:15
**interpretation** 54:2
**invaded** 172:12
**inventoried** 131:19
    132:14
**inventory** 123:8 124:3
    124:8 125:13,16,17
    129:19,21,21 132:15
    132:16 133:3,6,16
    137:18,18
**invested** 160:5
**investors** 42:19
**involved** 139:9,19
**involvement** 3:1
**involving** 4:14
**irrelevant** 5:2
**issue** 11:14 12:21 13:12
    14:10 15:7 61:5
    84:14 110:12 111:4,5
    148:2 163:3,8 173:8
**issued** 13:3 51:10 96:5
    138:10 162:9,19
**issues** 5:13 11:10 13:16

48:18 49:6 66:21
    74:1 85:3,7 141:17
    142:1 147:9
**item** 101:7 105:9
**items** 2:19 5:1,6,6 6:3
    88:13 89:14 101:8
    117:11 123:5,10,11
    135:8 167:13

**J**

**J** 1:21 18:20 35:19 40:8
    176:4,12
**jacket** 135:15
**January** 21:9,18 22:1
    25:12 36:13 37:13,16
    37:19 38:11 42:20
    44:5 55:4,5 61:13,15
    63:3 64:11 68:19,21
    70:20 71:10 83:21
    89:3 91:17,21 114:16
    114:19 121:8 136:5
    138:4 141:1 150:4
    170:3
**job** 35:3 87:16
**John** 14:6
**joint** 101:13
**Jones** 50:5,6,6 68:6
    94:16,19,21 95:4
**judge** 6:13 7:19 8:3,10
    10:11 11:13,19 12:7
    12:10 13:2 18:8,18
    20:19 21:8 23:2
    24:14 28:21 30:2
    32:16 51:3,17,18
    57:16 60:11 61:5
    63:5 64:8 65:14
    81:11 96:4 107:19
    112:21 162:9 169:21
    171:14,19 175:1
**judge's** 29:4
**judgment** 173:3
**judicata** 167:12,18,20
    168:18,18
**judicial** 10:17 16:3
    18:19 154:6,9
**jumbled** 4:21
**June** 176:9,21
**jurisdiction** 4:14,17
    8:11,11,13 24:11
    33:2 42:9 45:6 51:6,7
    52:10,12,20,21 56:15
    57:6 85:21 91:10,10
    156:1,6,12,14,16
    157:21 159:19
**jurisdictional** 58:8
    155:17

**jurisdictionalize** 160:3
**jurisdictionally** 25:20
    62:7
**just** 5:3 10:2,8,20 12:14
    19:9 22:20 29:18
    36:21 37:10 38:2,21
    40:4,20 54:10 66:1
    68:16 73:15 76:5
    77:2 78:3 80:2 81:1
    81:16 82:8 84:13,21
    85:5,9 94:8 95:9
    101:15,19,19 102:21
    106:17 110:16,17
    112:10 118:10,14,16
    124:9 126:1,19
    129:12 136:6 137:7
    143:20 145:5 146:9
    146:11 147:11 149:4
    153:13 155:7 156:3
    159:3,7,8 164:12
    169:10 171:5
**justify** 156:15 161:11

**K**

**keep** 27:21 51:1 80:14
    135:9 146:9 169:10
    170:18
**keeping** 106:10 107:3,5
    107:7,9 156:5
**keeps** 166:14
**kept** 127:11
**key** 102:15
**keys** 26:9 88:20 136:21
**kind** 123:20 124:1,5
    125:10 128:8 141:9
    157:21 159:7,20
**knew** 31:5,5,6 83:13
    153:13 170:13
**know** 3:6 11:5 16:5,5
    19:15 29:18 31:1
    67:19 80:7 83:8 84:8
    90:7 93:10 94:20
    95:2,6 96:15 97:11
    98:15 105:13 109:13
    110:17 114:9 123:11
    124:5 128:7 131:15
    136:11 141:4 143:19
    148:7 150:10 152:10
    165:19 166:6 170:21
    173:16
**knowing** 7:12 158:19
**knowingly** 9:8 159:12
    160:16
**knowledge** 6:2 7:9 45:9
    45:14 79:4 93:6
    110:5 128:13 144:15

148:1,9,16 151:7
    169:2,2
**known** 8:6 34:1 50:6
    80:13 89:4 99:14
    112:5 171:3
**K9** 125:1

**L**

**lack** 12:16
**lacks** 23:21
**laden** 91:16 92:5,10
**lady** 152:9
**laid** 135:13
**land** 29:14 57:9 79:20
**landlord** 144:14
**Lane** 48:15
**lap** 150:14,17
**lapse** 169:16
**large** 125:7,9 130:14
**last** 3:13,17 28:5 36:10
    70:7 94:11,15 142:18
    163:6
**late** 9:15 64:11 168:2
**later** 27:8 34:7 55:9
    57:9 80:4 81:5 114:4
**Laurel** 17:14,21 36:6,8
    40:11 42:14 43:18
**law** 20:15 24:12 35:16
    53:4 56:2 58:6 64:2
    118:19 120:13
    126:17 155:5,6 162:5
**lawsuit** 33:13 174:3
**lawyers** 30:20
**leading** 128:9,11
**learn** 70:14
**lease** 6:3,5,6 7:13 73:6
**leased** 160:16,16,19,20
    161:1
**leases** 53:4
**least** 71:7 124:7
**leave** 47:18 87:10,15
    122:1
**leaves** 165:11,11
**leaving** 26:14
**led** 22:7
**left** 57:2 88:1,2 99:6
    127:4 162:11
**legal** 10:7,8 19:18
    37:11 122:20
**lengthy** 155:4
**less** 6:16
**let** 3:11 8:8 10:20 16:5
    16:5 30:2 41:16 59:8
    84:21 85:8 86:3
    87:18 92:1 96:14
    98:15 101:19 104:17

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

116:7 118:14 143:5
  164:14
lets 163:10
letter 60:1 100:10,11
letters 99:15
let's 3:18 64:11
lever 133:7,8
Lexus 154:12,17
license 26:17
licenses 26:11,11,15,16
  87:12
life 77:8 80:14 107:1
  113:7
lighting 157:20
lights 138:7
like 2:14 15:10,19
  18:19 20:7 32:4 38:5
  47:20 54:19 64:9
  84:4,13 108:20 117:1
  118:3 125:1,1,5
  152:15,17 153:20
  162:3 173:2 174:6
limit 77:9
limitations 60:20 169:5
limits 36:7
lines 130:6
liquidate 155:14
list 2:18 5:6 32:17 53:3
  60:13 61:21 67:8,21
  68:16 69:4 71:9 72:6
  72:7 80:20 95:13,16
  97:17 104:8 111:10
  111:14 168:11 175:9
listed 32:19 67:9 81:6
  86:14 110:2 163:16
listing 13:9 39:20 50:16
  53:5 69:13 80:18
  94:18,21 95:3,18
  96:3 100:17 102:9
  112:2 130:3
litigation 4:3 15:17
  80:11 147:3,5 162:13
  164:4 169:14
little 13:20 19:7 86:4
  103:21 104:2
live 53:20,21 86:10,11
  102:1 104:5 140:5
  157:18 159:16
lived 37:18
lives 156:19 165:19
livestock 40:18 58:2
  91:20 92:2,3 165:11
living 9:2,6 37:17 48:13
  53:17 91:2,4 150:9
  150:15
load 131:10,10

loaded 22:1,4,4 43:9
  44:6,8 70:16 71:7,20
  72:20 73:4 75:19
  83:4 123:7 124:7
  127:8 133:20 135:7,8
  135:14 150:8 151:14
  151:16,19,20 164:15
  165:2 170:15
lobby 14:21
locate 135:19
located 17:14 36:5,7
  40:10 42:14,21 43:4
  43:17 123:19 166:1
location 124:3,9 148:1
  158:1
locked 26:10 37:5 44:9
  89:3 136:20 160:15
locksmith 88:19
long 37:16 89:7 94:18
  119:13,16,17 124:15
  171:5,8
longer 28:20 29:1
look 17:3 19:16 38:17
  68:16 69:4 101:19
  137:12 142:16
  165:20
looked 172:9
looking 64:5 111:1
looks 164:5
loop 61:3
lose 26:21 33:11
loss 35:3,5 47:7
lost 19:7
lot 88:2
ludicrous 156:10
Luger 132:4

**M**
made 12:14 18:12
  21:19 35:8 44:12,15
  44:18 49:19,21 53:16
  69:19 76:6 75:3
  76:17 77:3,4,6,11,14
  77:16,20,21 90:14
  112:3 113:14 129:14
magazine 127:7,7
magazined 125:8
magnum 132:11
mail 36:8 101:4
mailing 36:3
main 88:8
mainly 123:5
maintained 57:3
major 87:16
make 2:15 12:14 23:19
  32:12 33:10 34:13

37:11 38:14 60:20
  62:15 65:8 67:6 75:6
  77:15 80:4,14 82:3
  99:10 101:14 104:17
  109:11 125:12,14
  127:16,18 128:13
  149:2,10 162:3 167:8
  169:6 173:2 175:1
makes 56:12 58:2
  74:18 75:14 90:12
  166:16
making 23:4 25:9 48:1
  61:2 80:13 111:20
malicious 23:1
manner 138:20 167:9
  169:4
many 69:19 79:4 83:8
  83:13,16 97:8,8
  121:18 124:2 130:6
  166:6
March 1:10 16:20
  24:14 32:8 42:5 49:3
  61:21 62:1 102:17
  105:5 110:8,15
  111:15 147:16
marital 40:10,12
market 171:17
marksmanship 82:15
Marlin 133:7
marriage 31:5 74:7,8,9
  76:3 83:3,20 145:16
married 66:18 73:14
  77:8 93:9,18 114:12
  148:4 149:4 153:1
Marshall 27:2,2 28:7
  55:7,9 138:18,18
  139:2,4,8 159:2
Maryland 90:19 176:1
  176:5
materials 151:6
matter 1:10 2:10,20,21
  5:9 156:12 168:8
matters 5:14 7:6,7 14:4
  15:21 17:2,11 25:19
  30:21 33:5 34:13
  42:10 51:3,8,16
  56:16 139:20
mattress 131:5
may 23:19 35:13 39:9
  54:17 66:11 71:9
  74:3 101:20 107:19
  116:16 118:11
  126:18 137:4 140:15
  140:16 152:7,14
maybe 6:21 12:19
  83:18 84:7

ma'am 68:18 70:1 77:1
  86:5 92:1 93:6 97:11
  111:1 116:8
mean 45:4 80:5 86:10
  143:19 148:19
meaning 126:18 171:21
meaningfully 80:9
meaningless 164:7
means 45:3
mediation 34:14
medical 110:12 112:15
Memorial 110:9
mental 125:14 174:11
mentally 174:15,18
mention 109:11
mentioned 45:1
merely 13:1
messages 99:6
Miami 154:11,16
might 10:2,3 40:4 86:4
  121:5 170:17
miles 104:5 156:19,21
military 119:5,6,7,13
  120:5 135:15 145:4
  145:13
millimeter 130:17
  132:5
mind 38:19 102:3
  113:9 156:18,21
  167:2
mine 24:20 159:17
minute 101:20 104:16
miscellaneous 123:5
misconduct 31:15 33:5
  33:7
miserable 80:14
misrepresentations
  48:5 61:4
mistake 3:7
mistaken 84:7
model 125:13 132:5
moment 12:17 13:14
  84:21
money 26:9 78:10
  92:19 142:3 148:2,10
  148:14
month 27:8 170:4
months 133:1
more 6:17 7:1 80:9
  83:11 86:4 94:8
  116:20 118:13
  124:16 152:15
  153:17 163:14
morning 2:2 153:11
mortgage 33:18 72:16
  76:20 77:5 116:14

141:17 142:1,3 169:2
mortgages 34:11 76:18
  77:7,16 78:11 112:17
  114:13 115:7 142:6,8
most 17:12 34:7 61:14
  88:8 169:7 171:16
mother 31:7,9
motion 2:15 5:19 9:18
  10:21 11:1 13:15
  14:5 15:4,11 20:14
  21:12 48:1 51:15
  52:1,4 61:9 63:7,7,10
  63:11 64:10,20 65:1
  65:14,15 81:5 85:13
  111:9 144:2 169:7
  173:2
motions 52:2
move 15:2 112:3 114:7
  140:17 145:1 164:14
moved 88:5
much 92:19 133:17
multiple 22:15,15,15
  107:2
multi-round 125:7,9
must 58:5,10 60:7
  74:10 117:13 162:5
myself 2:16 3:14 25:21
  26:15 55:14 60:14
  93:14 124:11
M16 125:1

**N**
name 19:21 21:3 35:18
  50:10 67:14 92:12,14
  93:3 105:17,21
  121:15 129:13 141:6
  149:18 151:4
names 150:21
Nanico 110:19
narcissistic 109:12
narrow 53:7,11
nature 54:21 162:2
near 58:1 111:8
nearly 9:5 26:3 49:10
  50:7
necessarily 17:2 80:5
necessary 20:16 56:20
  57:16 146:9
need 16:4,8 17:3 30:3
  38:16 55:1 66:1
  67:12 87:1 104:7
  105:17
needed 99:2 101:10
  122:4 123:7 138:21
neighboring 36:16,18
  37:1

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

| | | | | |
|---|---|---|---|---|
| neighbor's 27:12 | 78:3 81:1,17 82:8,16 | okay 5:5 8:20 10:5 | 40:17 41:17 42:1,3 | 167:12 171:9 173:20 |
| never 6:16 7:20 8:7 | 84:14 103:1,14 | 14:16 15:13 17:1 | 43:10,11 44:20 48:18 | 174:14 |
| 20:2 76:4,10 83:13 | 104:12 110:17 | 23:18 31:16 41:20 | 48:20 49:2,5,9,11,12 | others 26:5 63:16 |
| 153:11 | 111:16 112:10 136:6 | 57:20 58:21 59:7 | 49:13 50:10 51:10 | out 19:17 21:10 59:16 |
| new 22:19 | 141:18 148:5,12 | 63:18 70:2 72:14 | 52:5,7,21 53:10,12 | 69:7,10 70:3 73:2,20 |
| next 63:19 70:19 75:20 | objection 11:11 18:9 | 75:3 87:9 103:10 | 53:14 54:2 55:6,7,12 | 79:10,12,16,18 80:4 |
| 76:13 78:7 | 68:9,11 70:11 72:9 | 108:8 117:21 118:9 | 55:21 56:3,11 57:16 | 85:15 86:14 87:16,19 |
| nomenclature 132:18 | 72:11 74:11,14,19 | 118:15 137:1,7 154:8 | 58:3,8,11,13 59:13 | 88:4,10 90:14 97:16 |
| non 8:17 | 76:8,9 78:7 80:1 | 161:20 | 59:15,16,17 60:6,11 | 98:10 100:18 101:11 |
| none 77:13 137:6 | 81:12 82:5,21 91:14 | old 84:6 | 60:13 61:2,6,7,13,15 | 113:10 132:21 |
| 151:21 | 94:6 101:16 103:7,15 | Once 136:18 | 61:20,21 62:2,5,7,8 | 134:21 138:8,9 140:7 |
| non-claim 168:5 | 104:18 105:4 110:21 | one 3:18 10:6 16:19,20 | 62:17 63:13 64:7,9,9 | 140:14 157:1 162:5 |
| non-claiming 168:21 | 112:18 114:6 121:7 | 17:13,15 30:4 34:2 | 65:1,4,14,15 66:20 | 170:1 171:8 |
| non-final 30:9 | 122:17,19 130:10 | 39:17 40:5 49:8,9 | 67:4,13 69:3,4 70:4,4 | outside 33:18 36:7 |
| non-jurisdictional 27:5 | 139:15 143:18 145:1 | 67:20 68:15 71:7 | 71:9 72:4,7 76:20 | 42:19 79:17 89:3 |
| 27:20 51:1 91:11 | 145:5,10 147:10 | 97:13 124:16 125:2 | 79:16 80:16 81:7 | 91:10 136:20 |
| 139:20 140:2,3 | 151:8 | 129:3 131:3 132:6 | 84:10 86:1 91:19 | outstanding 27:3 |
| non-known 160:7 | objections 18:15 | 134:16 142:18 | 95:16 96:5,9,9,17,19 | 138:11 |
| non-privileged 30:17 | objects 158:14 | 152:15 167:4 173:9 | 97:1,6,12,14,16,18 | over 8:13 10:14,14,14 |
| 30:20 | obligated 33:17 74:4 | ongoing 41:10 58:2 | 97:20,21 98:4,18,20 | 12:6 33:8 41:18 42:9 |
| non-secured 9:16 | obligation 77:17 | only 4:20 7:17 8:6 12:2 | 99:1 101:19 102:3,4 | 51:4,6,7 56:15 77:8 |
| non-viable 24:9 32:21 | 115:21 116:5,12,14 | 13:13 16:4 24:12 | 102:17 104:7 111:5 | 90:14 94:14 117:3 |
| 61:20 | 144:13 | 25:19 33:1 56:14 | 115:6,18 116:8 | 118:17 131:8 132:7 |
| nose 131:4,19 | obligations 72:16 74:9 | 83:17 84:8 85:21 | 122:15 129:18 144:9 | 135:16 159:8 170:14 |
| notarial 176:8 | obsessed 164:12 | 116:1 129:3 131:3 | 144:19 147:9,15 | 171:5 175:8 |
| Notary 176:4 | obsession 80:7,12 | open 15:6 66:9 68:17 | 149:9,11,18 151:5 | overruled 68:11 76:8,9 |
| note 20:4 31:20 84:5 | obsessions 80:8 | 137:5,11 152:11 | 153:7,21 155:3 156:8 | 82:21 110:21 |
| 125:14 | obtained 48:14 50:21 | 156:5 171:17 | 159:11 163:10,19 | overturned 12:18 33:6 |
| noted 38:10 | obvious 88:10 | opening 13:16,17 15:14 | 166:13 167:15,16 | overwhelmingly |
| notes 55:1 | obviously 59:20 113:11 | 18:10,14 20:9 34:16 | 168:8,10,12,15,17 | 165:17 |
| nothing 46:3,14,16 | occupant 8:18 | 65:2 | 170:3,6,11,12,13 | own 104:10 163:17 |
| 73:21 85:6 86:18 | occupy 13:6 | operate 60:5 | 173:8 | owned 17:13 89:4 |
| 92:21 105:2 113:12 | occurring 146:5 | operates 17:18 | ordered 6:12 7:20 9:12 | owner 42:16,18 57:9 |
| 152:1 174:8 | October 20:19 28:17 | operating 10:8 41:5,15 | 9:13 28:10,15 32:4 | 60:8,9 79:20 149:12 |
| notice 10:17 16:3 18:20 | 96:12 | operation 42:12 | 40:7 103:12 163:13 | 149:15 |
| 32:20 97:16,19 98:18 | odd 127:15,16,17,20 | operations 58:2 | 166:5 168:1,4 170:1 | ownership 173:17 |
| 98:21 99:3,5 100:17 | 132:13 | operator 42:17,18 | 171:13,19 174:14 | owning 43:12 |
| 100:21 101:10,13 | off 6:13 7:20 8:7 9:6 | opinion 53:9 123:17 | ordering 19:20 80:17 | owns 104:21 159:16 |
| 154:6,9 | 20:17 44:21 146:9 | 146:1 | orders 10:11,15,17 | 166:1 175:5 |
| notified 90:10 | 150:9 | opportunity 39:13 | 15:20 16:3,7,10,17 | |
| nuclear 26:16 | offer 67:10,10 77:16,20 | Opposing 63:8 | 17:3 19:20 20:18 | __P__ |
| number 10:6 17:15 | 94:13 95:1,12 96:15 | oral 2:15 | 21:9,10,13 23:3 30:9 | page 29:9,10,17,19 |
| 18:1 41:17,18 92:14 | offered 94:16,19 | order 3:2 4:6 5:21 6:1 | 33:7 37:21 49:9 | 64:9 153:8 177:3 |
| 99:14 105:21 124:18 | offering 95:4 | 6:18 11:13 12:10,17 | 50:20,21 61:8,18 | paid 10:10 25:10 54:13 |
| 125:21 126:3 132:17 | office 14:19 25:3 58:16 | 13:3,7,9 14:13 15:8 | 73:1,5 75:10 162:9 | 60:1 78:10,15,18 |
| 154:4,10,12,15 | 66:10 90:1 96:1 | 15:21 16:13 17:8,10 | 162:13,19 163:7 | 112:13 142:3,5 |
| numbers 40:12 130:4 | 102:2,7 145:9 | 17:10 18:2,8,18,19 | 164:18 166:7,8,9,9 | 152:19 |
| numerous 90:6 100:9 | officer 94:4 124:4 | 19:2,2,3,3,6,8,10,15 | original 34:8 65:13 | paper 5:3 66:2 |
| 110:6 134:1 162:19 | 138:7 147:2 | 20:12,14,16 22:11,20 | other 4:2 5:1,5,14 | papers 107:6 |
| 164:6 | officers 27:13 121:18 | 23:13 24:9,14 25:3 | 13:16 14:3 16:20 | paranoid 113:16 |
| | 121:20 | 25:13,15 27:10,21 | 23:4 30:8 34:4 42:19 | parcel 17:20,21,21 |
| __O__ | officer's 121:15 | 29:4,13,19 30:3,7,8 | 58:7 59:4,5 88:9,13 | 40:11 43:14,17 |
| oats 59:2 | offices 42:14 74:17,20 | 31:18,19,19 32:2,10 | 106:7 115:10,12 | parcels 40:10 |
| obey 10:15 53:12,15 | offset 152:21 | 32:16,21 38:2,5,6,9 | 118:1,2 123:1 128:3 | Pardon 173:6 |
| obeying 73:1 | Oh 58:21 | 38:16,21 39:4,11,14 | 129:7 134:15 151:1 | parked 37:4 89:3 136:5 |
| object 20:9 73:15 76:6 | Ohio 154:11,12,15,16 | 39:17,17,18 40:5,15 | 152:8 155:1 159:21 | 136:20 138:6 159:5 |

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

Buchanan v. Richards Hearing - 3/13/08

| | | | | |
|---|---|---|---|---|
| part 11:12,13 21:16 22:7,8 126:10 164:5 | 89:17,18 92:15 93:2 105:18 141:6 145:8 149:3,4 160:5 164:2 167:10 170:9 172:10 173:11 | 79:11,13 87:7 96:19 119:1 157:20 164:11 164:13 173:11 | potential 50:1 68:5 70:14 | 81:4 103:12,17 114:2 114:2,3 117:2 142:4 144:18 148:11 152:2 152:12,20 153:10 154:2 155:2,16 156:13 157:16 159:10 161:8 167:18 168:13 175:11 176:7 |
| parte 166:13 | | placed 31:8 75:13 | precedes 17:8 | |
| partial 57:9 | | Plaintiff's 59:18 | preliminary 2:10 14:3 16:14 32:2 | |
| participate 174:11 | | planned 162:4 | prepare 86:6,10 | |
| particular 19:2 23:11 78:2 89:16,18 115:5 125:19,20 174:5 | personal 7:15 24:6 35:6 42:21 43:2,6,8 55:13 56:21 57:1,4 57:17 63:15 73:20 85:11 87:8 89:12 121:3 152:1 157:3,11 162:7 175:2 | planted 59:1,2,5 173:21 | prepared 2:7 | |
| | | plastic 151:14,16,19,20 | preparing 149:7 | |
| particularly 15:19 | | play 13:6 | presence 88:18 | process 3:7 4:12,13 5:18 28:8 127:1 155:5 |
| parties 15:18 16:1 17:10,12 18:3 33:7 106:7 151:1 | | pleading 94:13 161:15 | present 10:20 37:11 58:1 94:1 95:3 107:19 121:8 139:13 141:1 153:19 | |
| | | pleadings 11:14 24:5 56:3 | | produce 3:10 |
| party 8:13 29:7 34:2,4 34:10,19 42:10 45:8 62:2 72:10 139:3 140:12 151:6 155:2 159:2 | personality 107:11 | please 35:18 36:1 38:18 45:13 54:18 74:3 77:2 106:20 109:2 119:2 | presented 5:17 50:17 55:5,6 68:6 113:20 155:6 | produced 32:16 |
| | personally 46:8,10 60:10 99:8,11 | | | production 7:2 |
| | persons 174:5 | | | professional 26:15 30:21 123:17 138:20 146:1 |
| | perspective 164:21 | pled 84:18 | presume 156:19 | |
| passport 151:3 | pertain 57:10 59:10 | plethora 162:12 | prevented 28:2,4 | proffer 118:11 |
| passports 150:20 | pertaining 102:17 150:21 | plow 174:2 | preventing 43:11 102:8 | prohibiting 21:6 |
| past 7:6 163:14 173:17 | | plus 133:18 | previous 21:10 47:16 107:7 | prohibits 161:14 |
| path 85:5 | pertains 4:15 100:15 167:20 | plywood 135:13,15,15 | | proof 25:5 41:4,9 60:3 157:12 174:21 |
| patrol 131:7 | | point 4:20 10:17 12:18 20:6 76:14 80:13 97:13 112:3 162:5 | previously 45:1 | |
| Patterson 33:21 154:10 154:15,19 | pertinent 6:10 7:6 31:1 51:16 | | pre-trial 80:16 | proper 5:17 59:21 60:7 |
| Paula 1:21 176:4,12 | petition 2:3 21:15 49:16 51:14 111:14 113:6 166:20 | | price 78:2 95:7 | properly 62:19 |
| pay 34:11 49:10 56:12 76:17 77:4,7,11,15 92:19 115:7 116:2,9 116:12 | | pointed 75:21 76:4,10 | principal 42:12,13,16 42:18 | properties 6:13 18:3,7 29:1 32:7,17 33:2,11 34:14 47:18 50:11 52:18 67:7,18 72:18 73:7 76:18 77:12 78:6,11,16,19,21 80:18 81:6,15 82:7 84:11 91:21 111:10 111:15 115:8 142:9 158:19 163:4,11,16 166:17 171:11 173:13 |
| | | pointing 145:19 | | |
| | petitioned 7:10 28:18 48:10 | police 3:20 21:17 27:1 27:10,13,16 28:6 55:3 69:10,11 70:9 71:21 84:1 88:21 94:1 105:7,11 106:3 106:13 119:7 121:13 121:14,18,19 122:2 124:4 129:2,5,9,11 134:10,16 135:1 136:13,15 138:3 139:5 140:11 145:12 147:1 160:14 175:9 | prior 2:19 6:1 16:10 36:17 37:2 44:16 52:2 61:18 94:21 95:4 111:11 117:14 138:2,3 | |
| payment 110:10 | petitioner 34:21 | | | |
| payments 33:10 | petitioning 34:19 | | priority 30:6 | |
| pending 2:20 3:4 4:5 11:6 45:10,15 46:17 49:13 | PFA 84:16 103:20 105:1 107:7 108:4,7 108:13 121:4 129:15 129:18 155:19 162:16 167:14 168:21 170:8 173:8 | | private 26:9 78:1 145:3 | |
| | | | privately 89:4 | |
| | | | privilege 117:9,10 144:17 | |
| Pentagon 159:4 | | | | |
| people 28:2 79:13 152:12 170:17 175:4 | | policeman 119:8,14 120:6 159:3 | privileged 87:12 | property 4:7 5:14 6:3 7:11,20 8:8,12,16,19 9:4 10:12 13:10 16:16 17:13,13,15,17 17:17 19:1,19 20:12 20:17 21:4,18,20,21 22:3,5,10 24:6,6,7,11 24:20 25:14,17 26:1 26:3,4,10 27:7,11,12 28:16 29:12 31:9,18 31:18,19 32:1,10,13 32:19,21 33:5,11 35:6 36:11,12 37:3,7 37:12,16 39:19,20 40:1,12,13 42:3,21 43:2,4,6,8,14 44:1,2 44:3,7,8 45:1,4 49:6 49:17,20 50:2 51:8,9 51:12,12 52:13 53:1 |
| people's 159:21 | PFAs 63:1 155:15 | | probably 7:21 8:9 64:5 64:11 109:8 | |
| perception 80:7 107:2 107:4 | phone 92:14 99:6,14 100:9 105:21 145:18 160:21 | | problem 15:7 111:4 119:9 157:7,8 162:6 | |
| perceptions 80:8 | | portion 66:12 88:6 | procedure 120:1 139:7 | |
| perform 33:19 81:9,20 115:21 | physical 36:2 44:19 | position 11:18 35:9 | proceed 2:7 29:3 35:9 81:4 167:9 169:4 | |
| | physicals 26:18 | possess 36:8 | | |
| performance 33:15 112:16 | Ph.D 108:11 | possessing 43:12 | proceeded 9:1 53:2 103:20 117:2 | |
| | pick 114:20 137:8,9 | possession 7:8 18:11 35:7 44:9 84:5 89:6 89:11,12 104:4 105:8 112:1 115:18 128:20 129:1 131:18 132:1,4 132:7,10 148:3 149:9 150:17 167:6 172:8 173:18 | | |
| performed 16:16 120:7 | pictures 129:6 | | proceeding 2:17 5:7 9:21 11:3,18 20:21 21:14 24:3,18 25:8 26:2 86:2 103:19 117:15 143:17 147:19 152:11 164:9 168:11 | |
| performing 117:3 | piece 5:3 13:9 53:3 58:1 66:2 95:9 98:16 126:13,16 | | | |
| perhaps 118:11 | | | | |
| period 9:3 21:2 83:20 91:1 96:16 109:14,19 110:4 145:16 171:14 | pieces 17:13 19:1 24:17 44:21 67:3 135:13 162:21 165:21 | | | |
| permanent 173:8 | pine 47:18 | possible 9:20 11:2 101:12 135:2 | proceedings 2:1 9:5 28:12 31:2,10 46:12 51:17 57:11 63:11 | |
| permit 12:1 | place 4:8 25:4 27:16 42:12,13 43:11 44:3 53:18 64:5 69:3 | | | |
| permitted 85:18 | | | | |
| permitting 115:20 | | | | |
| person 22:13 76:15 | | possibly 71:9 | | |

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

53:3,17,17 55:12,20
56:1,5,7,11,13,14,19
56:21 57:1,4,5,6,7,10
57:15,17 58:1 60:8,9
60:11,13,15,19 62:15
62:16,17,18 63:13,16
63:16 66:21 67:3,16
68:1,14,15 69:2,2,12
70:17 71:8,14,17
72:3,5,7,15 73:2,3,3
73:4 75:11,14,15,15
75:18 76:19 77:5
79:1 81:20 82:4,12
84:2,11 85:11 86:1
86:11 87:8,14 90:2
91:17,20 92:7 93:5
94:14,17,19 95:5,10
95:15 97:16 99:5,16
99:19 101:11 102:18
104:7 105:15 106:6,6
107:2 111:11,20
112:1,17 113:1 114:1
116:6,15 117:3,14
121:3,12 122:3,5,10
122:13,16 123:1,4
126:11,13,16,20
128:16 129:13,14
130:12 139:1 144:2
144:12 145:21 146:9
146:12 147:15,19
148:2 149:6,11,12,13
149:15,19 150:1,6,21
152:1 153:21 155:12
156:2,3,4,15 157:5,8
157:11,12,19 159:13
159:14,18,21 161:5,6
162:7,11 163:1,14,18
163:20 164:2,10,13
164:16,18 165:4,7,12
165:12,21 166:10
167:13,15,16 168:11
168:20 169:6,8 170:9
170:10,17 171:21
173:15 174:7 175:3
**prosecution** 161:12
174:9
**prosecutions** 174:11
**protect** 56:20 57:16,18
111:21 146:12 157:8
158:4 161:11 167:15
**protected** 46:6
**protection** 2:3 21:15
27:20 43:11 49:16
113:6 159:10 161:16
166:3
**prove** 15:2

**provide** 32:11 46:11
64:16,17 87:11 92:12
95:19 105:19 122:1
174:21
**provided** 18:2 48:14
52:14,15 58:7 60:3
101:13 106:2 141:15
141:16,20
**providing** 18:20 23:3
50:16 154:21
**proving** 26:12 55:14
**provisions** 166:8
**psychological** 108:11
**public** 27:15 47:19
176:4
**published** 42:3
**pulled** 137:14,14
**purpose** 39:19 54:4
**purposes** 69:13 85:10
**pursuant** 22:9 67:4
72:3
**pursue** 163:11
**purview** 23:16
**put** 8:7 87:4 96:3 130:2
132:17
**putting** 56:7 95:1,4

_____
**Q**
_____

**quash** 2:15 4:14,17
9:18 10:21 11:1
13:15 14:14
**quashed** 73:20 117:6
**question** 13:2 22:12
23:10 39:4 45:13
53:8,11 75:4,5,20
76:13,21 77:2,10,19
78:4,8 81:11 83:1
86:3 95:17 102:5
103:8 106:18,20
110:14 115:13,13
116:8 121:6 146:3,15
148:6,14 149:14,17
149:17 152:15,16
**questioning** 149:1
**questions** 7:3 38:15
54:16 59:12 73:10
82:12 94:9 101:20
115:10 117:7 118:14
119:10 153:17
**quote** 167:19

_____
**R**
_____

**raise** 163:2
**ran** 134:21
**range** 22:1
**rank** 145:13,14

**reach** 59:16
**read** 40:5,20 52:21
53:15 142:11 143:9
143:11 147:15
**readdressed** 168:14
**reading** 53:19 59:15
**reads** 40:15
**ready** 2:11 66:14
170:16
**reaffirmed** 170:2
**real** 17:13 22:8 23:7
40:10 51:11 67:3
162:17 171:11
**realize** 85:14
**really** 146:11 165:14
**realtor** 164:21
**Realty** 67:9
**rear** 137:14
**reason** 15:3 107:10
143:16 166:12,17
**reasonable** 22:13 23:15
164:12,19 165:5,13
**recall** 38:4 65:17 99:1,2
100:1 109:17 110:3
133:5,17 150:19
**receipt** 87:10,11,15
101:6 105:8 122:1,2
128:13
**receive** 88:20 92:16
108:20 142:16 143:8
**received** 3:8 5:1 22:20
143:7
**recent** 61:14 169:7
**recognition** 53:3
**recognizable** 25:9
135:16
**recognize** 13:5 73:5
75:10 126:12,16
131:14
**recognized** 7:12,14
25:8 42:2 52:16
157:15 161:3
**recognizes** 144:16,18
144:20
**recompose** 94:8
**reconsider** 10:1
**record** 5:16 7:5 9:13
11:12 25:6,7 32:9
36:1 39:9 40:5 41:8
41:11 66:9 84:4
108:9 124:12 154:3
174:20
**records** 25:11 29:9
41:12 55:17 74:5
110:10 111:2 133:2
**Redirect** 115:4

**refer** 98:13 133:1
**reference** 1:9
**referred** 38:21 39:4
**referring** 29:19 48:17
49:5 51:20 98:20
**reflect** 39:10
**reflects** 25:6,7 32:9,11
124:12
**regard** 12:13 85:11
**regarding** 41:21 45:15
**regardless** 29:2 66:1
157:12
**registered** 100:10
101:4,6
**reinstatement** 61:8
**reinstating** 61:16,18
**related** 8:15
**relatively** 167:9
**relevance** 81:3 82:18
91:15 93:21 95:20,21
96:6 101:17 103:5,11
112:11 117:5,8 121:5
139:16,17,18 141:12
141:19 143:20,21
148:7
**relevancy** 73:16 78:4
81:2,17 103:4 110:17
110:19 136:7 145:6
**relevant** 3:4 5:6 30:12
30:14,17,19 36:20
73:17 74:12 78:5
82:12 97:11 102:18
103:18 104:13,14,20
105:21 106:8,16
112:19 120:3,4
122:18 136:8,10
140:21 141:11,14
145:7,11 147:11
151:9 152:1
**relied** 11:13 12:19
**relief** 96:17 166:19
**relies** 48:11
**relinquishment** 34:1
**reloading** 134:4
**remain** 14:19 35:13
**remedies** 85:11
**remedy** 155:6
**remember** 3:15
**reminded** 38:3,6
**Remmington** 132:19
**removal** 122:2 156:15
**remove** 25:17 27:3
39:19 47:17 84:11
92:6 94:4 121:2,11
122:9 123:1,9 124:14
124:17 126:19 127:2

131:4,7 136:4 137:8
137:9 149:21 150:5
150:12,14,20 151:12
158:18
**removed** 21:20,21 26:4
26:7,7,10 35:6 36:12
44:11 45:4 55:12,17
55:18,19 92:3 93:5
94:2 121:19 123:4,13
124:6,19 127:10,14
127:21 128:15
136:15 141:2 150:18
159:5,16,17 161:5
174:7
**removing** 21:17 91:17
157:11 159:12,14,21
**renders** 107:12
**renovate** 149:10
**reopen** 167:14 168:20
**reopening** 167:18
**repeat** 45:20
**repeatedly** 10:14
**rephrase** 106:18,19
148:8
**reported** 9:7 31:20
33:14 148:16
**reporting** 7:6
**represent** 2:21
**represented** 2:5
**represents** 5:8
**request** 24:2 63:3
121:13 147:20
**requested** 7:5 114:1
121:16 166:20
**requesting** 20:15 52:4
**requests** 2:18
**require** 38:1
**required** 30:15 53:12
**requires** 14:16 44:21
**requiring** 3.9 21:9
67:13 98:18
**res** 167:12,18,20
168:17,18
**rescheduled** 63:4
**rescission** 34:6
**research** 59:19
**reserve** 15:11 24:1
**resided** 99:16 158:7
**residence** 4:8 13:10
17:16,19 22:2 24:8
24:16,21 25:2 26:19
37:5,9 43:1,3,5,6,21
74:16 95:10 123:2
137:21 145:3 150:18
151:6 156:4 158:5
173:11

Buchanan v. Richards Hearing - 3/13/08

**resident** 4:7 42:13
149:4
**residential** 95:14
**resides** 68:14 158:6
**residing** 31:7 45:3
156:7
**resolution** 94:12,17
**resolve** 82:13 94:14
111:5 147:9
**resolved** 30:4
**resolving** 15:21 17:10
49:6 66:21
**resources** 148:20
**respect** 19:19 21:7
40:18 43:20 49:20
72:3 163:21 165:3
**respond** 54:20 97:6
98:8 111:13
**Respondent** 18:20 40:8
**Respondent's** 108:20
**response** 27:9 61:11
96:21
**responsible** 79:20
**responsive** 77:1 161:15
**restaurant** 47:16
**restraining** 50:21
restricting 53:16 61:2
**result** 3:2 162:8 166:10
**resulting** 18:8
**retain** 32:1 81:14
**retaliating** 161:13
**retaliatory** 85:16 121:4
161:12
**retention** 171:21
**return** 6:19,19 89:14
90:2 116:16 126:11
152:8 174:6
**returned** 6:16 60:20
61:3 89:13 101:6,8
155:3 165:4 171:12
174:7
**review** 38:17 39:14
**reviewing** 143:15
**revisit** 11:3
**revisiting** 12:20
**revolver** 131:3,5
**re-heard** 31:13
**re-instated** 21:8
**re-issued** 162:20
**ribbon** 82:15
**Richards** 1:3 2:4,5,21
3:21 4:6 5:9,17 8:21
15:1 22:18 23:21
25:12,16,16,16,20,21
31:5 38:11 44:13,16
47:15 49:16 50:18,21

55:10,11 56:16 58:6
63:20 64:1 66:18
68:19 70:2 73:10,13
73:14,18,21 74:4,9
74:15 75:6 76:12
81:8,14 82:14 83:13
83:17 85:16 86:8,13
86:19 87:1,6,20 88:2
88:5,8,11,15,17
91:13 92:3 97:14
98:2,6 99:1 100:21
101:21 104:20 105:2
106:2 111:3 112:4
114:10 115:6 116:10
116:13,18 118:4,5,6
118:8,9,18 119:1,12
121:2,2,8 122:5
124:12,13 125:21
126:4,7,9,14,17
129:3,9,17 134:1,17
134:20 135:4,6 137:2
137:13 138:19
140:15,19 141:21
143:3,14 146:10,13
146:14,20 147:19
149:20 151:11,16
153:1 163:15 164:11
164:17 165:3,19
167:5 173:10 175:6
177:7,11
**rid** 87:1
**ridiculous** 159:7 160:9
169:10,13,15,21
**rifle** 124:14,16 127:17
132:11 133:7
**rifles** 70:16
**right** 15:11 18:16 29:12
31:11 34:1 36:3
38:15 48:19 55:3
58:15 63:21 66:6
72:2 75:17,17 83:10
86:12 114:8 142:11
145:9 147:14 153:15
172:13,20
**rights** 120:21 157:8
**ripe** 62:6
**risk** 175:7
**road** 17:14,21 36:4,5
40:11 42:14 43:3,14
43:17 102:1 121:9
141:2 159:6
**Ron** 152:18,19,20
153:2
**room** 71:7 123:14
150:10,15
**round** 131:14

**rounds** 127:8 133:18
**rubbish** 88:10
**Rugger** 132:1
**rule** 5:19,20 12:8 13:1
14:16 27:9 28:19
29:5,16 30:16 31:13
31:14 48:10 51:15,15
52:3,3 74:5 84:20
117:12,13,14 120:15
148:15 158:3 167:12
167:21 173:2,3
**rules** 12:7 30:21 31:13
**ruling** 12:14 13:13
167:21
**rulings** 12:14
**run** 54:6

_____ S _____

**S** 108:10
**safe** 72:5,8,14 73:4
104:8
**safeguard** 165:13
**safeguarding** 165:4
**safes** 135:19
**safety** 27:15 74:2
138:20 166:18
saga 18:5
**sale** 6:5,6 18:4,7,12
20:1,2 49:20 50:13
50:14,15 67:14,16
68:1,8 86:7,10,15
96:3 107:1 116:14
149:8 163:17
**same** 71:17 111:9 165:8
**sanctioned** 33:7
**Sandy** 14:6
**satisfy** 76:20 96:5
167:10
**Saunders** 55:11
**saw** 79:3 127:16 142:20
143:10
**saying** 7:16 19:9,11
54:1 61:13 93:11
98:4 107:6 140:12
146:7 156:9,17
**says** 30:2,2 49:13 53:20
53:21 57:7 59:14
96:9,10 146:11 168:9
170:8,12
**scared** 75:3,7 170:19
**scheduled** 32:7 63:2
**schizophrenia** 113:17
**school** 28:1
**scope** 85:9 132:11
149:1
**seal** 176:8

**search** 84:1 120:1,8
122:12 135:8 136:1
137:2,5 151:18 157:9
160:12,14
**searched** 26:9 145:3
**searches** 120:8
**searching** 136:19
**seat** 35:14 38:18
116:17 137:15 152:8
**seated** 54:17
**seats** 137:13
**second** 3:15 17:20 66:7
71:10,14,20 94:7
129:3 134:9,15
135:12 154:11,16
156:11 165:2
**section** 22:9 27:14
164:1
**secure** 84:1
**security** 45:18 46:1,5
47:5 159:3
**see** 3:11 12:21 30:2
38:2,5 59:20 64:11
65:8 66:5 84:17
86:17 91:7 93:21
94:8 95:20 96:6
107:20 108:13 117:5
117:6 121:6 134:6
136:9 143:5,12,20
146:15 153:12
**seek** 118:12
**seeking** 155:5
**seem** 64:4
**seen** 28:5 47:19 76:14
79:12 83:3,6 84:2
142:8,10,12 146:6,19
149:17
**seizure** 120:1 157:9
160:12,15
**seizures** 120:8
**self-represented** 2:6
**sell** 32:17 50:10 53:3
60:13 61:21 67:6
72:3,15,17 73:3
76:19 95:13 111:10
111:14 164:17
168:11 171:17
**selling** 13:9 39:20
50:17 80:18
**send** 100:10 101:4
**sending** 100:11
**sent** 99:15 100:17,21
**sentence** 39:17 40:5
**separate** 96:2
**separated** 127:11
**September** 58:11

**serial** 125:21 126:3
130:4 132:17
**serve** 160:7
**served** 2:14 3:16 4:6,18
85:17 144:2,15,19
161:12 167:7
**server** 3:7 4:13
**service** 27:2,2 28:7
85:18 113:21 138:18
138:18 139:2,4
143:17 144:21
**services** 159:2
**set** 16:3 123:18
**settle** 34:13 77:20 78:2
141:16,21
**settlement** 80:15 126:9
126:10,11
**several** 50:21 52:15
157:15 163:6 167:3
**shadow** 155:2,15
**shape** 3:4 18:7
**shelf** 131:8 170:15
**Sheltery** 132:8
**short** 67:9
**shortly** 101:9
**shot** 71:9 124:17,18
129:5,5 132:8 134:8
134:16,17 135:16
**show** 23:20 25:1 27:9
27:18 31:17 34:18
39:7 63:7,7,10,11
64:20 84:20 85:16,20
97:17 109:1 111:10
117:1 171:4 173:3
174:2
**showing** 29:11 33:20
60:19 63:10,12 102:9
167:7
**shown** 39:10
**shows** 7:9 27:16 31:12
41:15 56:16 78:6
81:4,8,19 82:10,18
85:15 91:9 96:7
103:16 106:5 111:19
112:12,16 116:4,5,5
120:12 128:15 130:9
143:21 144:1,14,14
145:8 154:20,21
**sign** 19:20,21 50:10
67:13 94:21 98:13
**signed** 14:14 18:18
20:19 23:2 70:4
90:13
**significance** 17:12
**significant** 16:11
**signs** 69:1 72:21 75:13

| | | | | |
|---|---|---|---|---|
| silver 125:11 | 51:19 64:19 66:17 | statute 11:21 23:11,17 | suit 48:3 144:15 | talking 42:5 65:12 |
| simply 148:5 | 150:3,4 | 24:12 29:4 33:1 | sundry 2:19 | 173:17,17 |
| since 28:5 37:18 43:13 | sort 17:8 | 52:20 57:7 58:4 | super 137:14 | tank 123:20 124:6 |
| 43:16 70:3,4 77:12 | Southmayd 1:11 | 59:14 60:20 62:13,14 | superior 9:10 22:17,21 | tanks 123:16 |
| 78:11,16,19 84:6 | spear 26:11 89:6,9 | 62:16 169:5 170:8 | 48:4 60:17 65:10 | target 132:2 |
| 96:12 169:15 | 137:19 | stay 7:13,14 8:8 41:17 | 115:19 144:16,17,20 | tax 40:11 |
| single 127:6 | specially 46:15 | 44:21 46:6,6 61:9,9 | 155:8 160:1 | taxes 10:10 25:10 60:1 |
| sir 5:5 20:8 29:16 30:1 | specific 69:18 105:1 | 96:17 97:1 172:16 | supervised 139:14 | teach 154:19 |
| 30:12 34:16,20 37:10 | specifically 12:13 30:5 | 173:10 | supervisor 147:21 | telephone 99:4 |
| 38:13,13,18 46:19 | 115:14 149:18 | stayed 21:1 65:18,20 | supply 111:9 | tell 41:14 42:11 47:16 |
| 53:7 54:17 57:14 | specified 30:5 | 168:12 | support 5:12,13,14 9:4 | 70:13 119:1 159:4 |
| 58:14 59:11 75:4 | specify 30:6 | staying 36:3 92:13 | 31:10 51:8,9 113:5 | telling 162:20 |
| 77:10,19 78:8,12 | spend 160:6 | stays 157:16 | 114:2,12 141:16 | tenancy 52:17 |
| 80:3 84:8 85:1 91:8 | spousal 51:8 | steel 131:4 132:2 | supporting 26:14 | tenant 8:12 53:1 57:10 |
| 93:20 100:13 103:5 | spouse 25:21 138:19 | 133:10,11,12 | suppose 11:2 14:8 | 58:5,8 60:10 |
| 104:17 109:3 117:6 | 141:15 142:2 158:4 | steps 165:13 | supposed 49:12 162:12 | tend 58:1 |
| 117:18 119:11,12,17 | squarely 85:3 | still 15:6 33:17 57:4 | 165:6 | tens 160:6 |
| 122:7,8 126:7,14,18 | ss 176:2 | 87:17,21 88:7 166:1 | Supreme 19:4,5,8,10 | term 12:17 |
| 129:4,18 134:2,14,18 | stack 149:11 | 166:10 | 20:13 24:5 29:5,14 | terms 50:15,15 162:7 |
| 135:4 136:13 139:17 | stacked 127:3,5 | stipulate 107:21 | 56:4 61:9 64:6,8,21 | terroristic 47:21 |
| 140:1,17 142:6 143:3 | staff 14:18 | stipulated 16:15 32:4 | 65:11,16 170:7 | testified 35:17 64:3 |
| 145:2,14 146:6,20 | stainless 131:4 132:2 | 34:15 81:9,21 117:3 | sure 64:16 65:8 77:18 | 83:10 118:20 147:6 |
| 148:13 149:17 152:7 | 133:10,11,12 | stipulation 32:5 78:1 | 93:10 106:14 124:2 | 149:5 157:6 158:17 |
| 152:11 166:21 | stand 38:20 143:16 | stock 159:16 | 125:12 126:18 133:8 | 167:6 |
| 169:13 172:9 173:5 | standing 74:10 | stood 158:15 | 154:3 | testify 32:5 84:8 147:13 |
| situation 94:10.14 | standpoint 112:11 | stop 151:21 | surrounding 27:14 | testifying 160:13 |
| 164:1 | started 136:19 | stopped 72:17 | sustained 70:12 72:11 | testimony 15:12 |
| six 3:17 94:12,15 147:3 | state 1:1 3:20 27:1,10 | storage 87:4 88:14 | 74:11,13,14 78:7 | testing 26:16 |
| 147:5 169:11 | 27:16 28:6 35:18,21 | stored 57:3 88:14 | 81:13 82:5 85:13 | Thank 20:10 31:16 |
| small 21:16 130:14 | 52:20 57:7 58:4 | 156:21 | 91:14 94:6 103:7,15 | 35:9 39:8 47:14 |
| Smith 131:20 | 59:14 60:6,14 62:19 | street 12:6,10 138:7 | 105:4 112:18 121:7 | 63:18 73:9 75:20 |
| smoke 69:7 79:10,12 | 69:10 70:8 84:1 | 160:1 | 130:10 140:20 145:1 | 76:13 83:19 87:9 |
| 79:17 80:4 | 88:20 92:6 94:1 | stuff 87:19,21 88:2,3 | 145:10 151:9 | 88:16 97:20 101:3 |
| snug 131:4,19 | 100:12,18 105:7,11 | 123:6 175:5 | sworn 35:16 64:2 | 109:4 111:7 115:4 |
| sold 18:3 19:20 32:19 | 106:3 115:19 121:13 | subject 28:15 33:11 | 118:19 | 116:16,18 119:10 |
| 67:5 81:6 163:14 | 121:14,18,19 122:2 | 48:10 51:16 57:11 | S6 29:10 | 126:12,21 134:3 |
| 171:14 | 129:2,5,9,10 130:6 | 62:3 63:17 156:12 | | 135:18 137:17 143:4 |
| sole 8:18 | 134:10,15 135:1 | 168:11 | **T** | 146:21 152:7 162:1 |
| some 4:2,2 12:18,19 | 136:13,15 138:3 | subjects 168:10 | tab 29:9,17 39:12 | 169:12 175:10 |
| 17:1 42:1 56:15 | 139:5 140:11 149:3 | submit 102:19 | 41:14,17,18 | theft 62:18 63.17 106.5 |
| 87:19,21 121:5 123:6 | 157:1 158:10 159:15 | submitted 27:4 | take 2:10 3:18 6:14 | 106:7 |
| 123:15,15 124:15 | 160:14 166:1 168:20 | subpoena 2:14,15,16 | 10:17 16:2 18:19 | their 25:17 30:20 151:3 |
| 134:6 163:3,5 | 171:19 172:14 175:8 | 3:8,14,15 4:15,17 | 24:11 32:20 56:8 | theirs 55:11 |
| somebody 36:3 44:11 | 176:1,5 | 9:19 10:21 13:13,15 | 69:4 72:15 85:5 87:3 | themselves 172:11 |
| 86:16 93:16 120:21 | stated 63:6 74:15 | 14:14 73:19 113:15 | 87:6 92:15 123:8 | theory 121:6 |
| 160:16,19,20 174:3 | 101:21 107:8 131:13 | 114:1 116:20 117:6 | 124:3 129:12,20,21 | thing 5:5 115:15 |
| someone 70:13 | statement 5:18 18:14 | subpoenaed 7:10 14:7 | 130:11 140:13 146:8 | things 3:18 10:3 88:9 |
| something 5:4,4 11:20 | 20:9 23:19 34:17 | subpoenas 3:9,17 4:2 | 146:12 150:9,12 | 116:9,12 146:5 169:4 |
| 125:1 133:19 140:6 | 65:3,6 94:13 162:2,3 | 164:8 | 151:10 154:6 167:2 | 171:19 |
| 155:13 | statements 15:14 18:10 | subsequent 20:14 | 170:17 | think 3:3,11,17 5:19 |
| somewhere 22:1 55:8 | 48:17 169:3 | 166:7 | taken 4:19 26:15,16,17 | 17:8 22:7 30:4 36:21 |
| 64:17 86:10 104:4 | states 4:7 29:15 32:3 | subsequently 67:12 | 26:17,18 88:10 134:7 | 63:2 65:7 75:14,15 |
| 109:9 129:8 160:8 | 97:15 117:13 | substantiate 168:5 | 158:16,17 167:8 | 75:16,18 85:2,5 86:4 |
| 174:4 | stating 48:15 77:16 | successfully 28:12 | taking 4:7 24:6,6 85:2 | 118:13 153:16 |
| sorry 13:20 14:1 18:16 | 78:1 113:15 | sudden 140:11 | 111:21 160:5 | 164:11 165:7,16 |
| 18:17 39:1 45:20 | status 9:2 20:20 67:18 | suggested 65:3 | talked 50:7 100:6 | 166:12 |

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

third 8:12 15:7 42:10
  45:8 62:18 72:10
  139:3 140:12 151:6
though 9:14,15 11:1
  62:12 69:2,7 71:20
  98:7 106:9 120:19
  133:9 168:16
thought 59:9 71:6
  129:1,11,11
thousands 160:6
threat 126:19 146:11
  146:16 172:2
threaten 145:17,19
threatened 22:13 50:1
  68:7 69:15 72:19,20
threatening 23:14
  47:21
threats 21:19 44:12,15
  44:18 49:19,21 69:19
  70:6 75:7
three 20:18 64:9 83:18
  83:18 169:5,17
threshold 12:21 23:5
through 6:21 37:19
  61:4 62:8,9 67:16
  68:7 85:18,19 89:15
  89:16 90:3 101:13
  116:14 126:10
  136:14,17 169:14
  171:11
thrown 88:14
thwarted 67:10
tightly 27:1
time 3:19 6:2 7:18 21:2
  28:5 29:7 30:7 31:20
  33:14 36:10 37:15
  38:13 46:18 55:4,4
  59:3 62:4,9,11,13
  67:9,19 68:5,15 70:7
  71:14 76:6 79:17,21
  91:1 96:16 99:20
  100:2 106:1 109:19
  110:4 125:14 129:4
  129:15 134:9,15
  135:3,6,12 138:12
  142:19 143:13 147:7
  148:3 163:5 165:2
  173:2,5,7
timely 12:9 30:10 169:4
times 97:9 110:7
  171:11
Title 120:17 160:12
titled 69:2
today 2:5,8 4:1 5:3
  6:17 12:13 18:6 25:6
  38:7 41:4,9 42:5,8

46:17 48:13 49:15
  74:12 82:13 91:15
  106:8 107:17 118:2
  128:17 162:6,15
  165:18
today's 5:6 45:16,17
together 83:12,15
toilet 123:16,20 124:6
  170:14
told 70:9 71:21 114:18
  138:11
Tom 14:6 47:16
Tomorrow 138:12
top 150:7,14,17
tort 160:4
torts 139:20
towards 2:16 44:12,15
  75:7 78:10 146:16
  158:13
towed 105:14
town 36:7
tractor 114:16,19
  138:6
tractors 24:17
trailer 114:16,19 138:6
  159:5
TRANSCRIBED 1:21
transcript 29:11,20,21
  30:1 176:7
transcripts 9:13
transport 92:8,19
transportation 130:9
trash 88:10 123:7,10
treated 34:2 109:16
  110:5,7
treatment 109:20
  110:10,18
trespass 22:10 25:14
  44:10 85:17 120:12
  122:16,20 170:9
trespassed 26:3
trespasser 170:10
trespassing 23:12 69:1
  72:21 75:13,16
  159:12,20
tried 68:13 69:3 155:14
  163:15 171:8
triple 63:17
troubled 103:21
truck 37:5 79:3,6 89:4
  89:5 114:14 136:19
  150:8
true 76:10 96:4 120:19
  176:6
Trustee 60:3
truthfully 102:19

try 71:9 72:17 166:7
  167:14 171:9
trying 67:21 68:15
  72:15,15 73:20 80:13
  96:14 107:13 116:13
  144:3,5 148:21
  164:17
turn 14:10
turned 175:8
turns 161:10
twice 118:17 166:11
two 3:13,17 11:8 16:7
  16:10 17:13 19:1
  21:6 23:2 28:13 34:7
  40:9 44:21 49:9 67:3
  83:12,17 112:1 115:8
  135:13 148:2 155:15
  162:21 163:14 164:8
  165:21
Tyler 9:12 29:11 30:5,6
  144:21
type 46:11 135:15

_____

U

unable 69:12 95:15
unclean 161:7,14 162:7
under 5:19,20 24:14
  25:8 29:4 30:15
  31:12,13 32:15 45:2
  46:5,6 48:10 51:14
  54:2 56:1 62:16 63:5
  74:5 102:18 115:6
  116:8,11 117:12
  132:7 137:13,15
  143:6 148:15 156:11
  157:17 158:3,8,9
  159:9 160:10,12
  167:13,17 168:14,14
  168:21 169:8 172:13
understand 6:12,20
  12:5 71:21 77:18
  82:20 97:21 106:15
  106:17,20 113:2
  116:7 148:6,13
  149:14,16
understanding 17:9
  21:6 39:16 40:14
  49:3 59:15 67:2
  143:6
understood 39:18
  110:12 111:3 155:17
undistributed 45:19
  46:2
unemployed 109:20
  110:1
unilaterally 98:9,16

United 4:7 29:14
unless 6:17
unlikely 11:17
unload 127:5
unloaded 127:6
unlocked 136:18
unpredictable 107:12
unstable 107:12
until 14:20 17:4 24:2
  30:9
unusual 27:15 93:15,16
  159:1
unwillingness 103:17
update 74:4
updated 74:10 117:14
upstairs 131:5,8
USDA 52:16 160:18
use 38:19 75:9,18
  164:20 171:20 172:2
  173:12,15
used 79:7
using 36:3 91:12
  158:21 161:10
utilities 8:17 78:15
  115:7 160:21 161:1
Utility 8:15
U.S 9:9,10 25:9 27:1,2
  28:6 29:5 30:11 48:4
  51:3 55:7,8,15 119:3
  119:4,5,6 120:7
  155:9,9 159:2 160:12
  160:19 168:15 170:6

_____

V

VA 174:14
valuable 55:19 88:13
  126:13,16 128:14
value 32:18,20 56:13
  77:21,21 111:11
  171:10,13
various 2:18
vehicle 26:10 43:2 89:2
  136:4,19 137:4,5
  141:9
vehicles 79:1,4
vents 123:15
venue 157:18
verification 102:20
versus 2:4 3:20 33:4,21
  154:10,13,14,18
very 22:7 23:14,15,15
  74:2 105:1 107:1,12
  115:15 162:17 163:9
  164:11,18 165:8
  166:16,16 172:10
viability 41:21

viable 20:5 22:8 25:3
  41:5,10,15 53:10
  59:16,18 62:1 156:8
  163:4
victim 90:9,11,12
Victims 90:9
view 63:9 80:13
violate 23:10 97:1,6
violated 12:18 62:16,21
  85:21 161:7 167:15
violating 13:6 117:8
  120:21 168:18,21
violation 15:8 27:9
  28:19 31:17 58:3
  63:13 120:13 155:19
  157:3 167:16 168:7
violations 24:4
violence 6:20 15:9
  172:1
Virginia 31:4 140:12
  156:20 157:2 165:20
visitation 28:4
visited 78:21
voluminous 66:11
VS 1:4

_____

W

wait 17:4
walked 138:8,9
walking 27:12 40:1
  156:5,9
wall 135:19
Wallace 3:20
wallet 89:12
wallets 26:9
want 11:5,10 14:20
  17:4 65:8 69:21 78:9
  86:5 118:16 136:11
  164:9
wants 56:8
War 132:5
warned 33:9
warrant 27:3,6 55:7,9
  120:9 122:9,12
  138:10,15,16 174:8
warrants 120:8 140:10
Washington 9:8,9 28:7
  50:20 96:18 139:11
  140:4 159:3
wasn't 85:6 91:13
  105:13 110:2 133:19
  146:11,13 172:16
waste 25:18 35:5
way 3:4 7:19 12:19
  13:17 18:6 21:12
  26:14 30:4 31:15

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

| | | | | |
|---|---|---|---|---|
| 34:16 52:20 53:15 | 127:7,14 128:14 | **wrong** 8:4 64:5 145:9 | **13** 1:10 22:1 27:13 | **22** 76:3 127:15 132:1 |
| 62:8 69:16,20,21 | 131:18 132:1,4,7,10 | **wrongful** 9:7 | 29:10 43:8 70:16 | 133:3 |
| 100:18 102:1,5,6 | 135:9 136:21 139:13 | **wrongfully** 7:10 9:1 | 83:6,9 124:7 164:15 | **22s** 130:15 |
| 104:20 118:12 | 141:1,2,9 150:21 | 159:12 | **13S6** 29:17 | **23** 2:18 5:6 |
| 155:17 157:19 172:1 | 151:19,20 153:10 | **wrote** 99:15 126:2 | **13th** 42:6 | **23rd** 99:19,21 |
| 172:3,8,9 | 164:8 171:1 172:11 | _____ | **131513** 56:1 57:5 | **232190046.03** 18:1 |
| **weapon** 22:4,4 44:6,8 | 172:16 175:7 | **Y** | **14** 27:13 | **24** 97:15 98:18,20 99:3 |
| 72:1 75:21 76:4,11 | **Wesson** 131:19,20 | **yards** 14:19 173:11 | **14th** 63:4 | 99:5 100:3 |
| 76:14 83:21 84:2 | **we'll** 13:13 118:16 | **yeah** 169:17 | **15** 57:4 176:21 | **24th** 20:19 28:14,17 |
| 125:2,4,8,10,19,20 | **we're** 5:3 16:18 65:12 | **year** 9:6 21:6 58:11 | **15th** 108:17 109:11 | 63:2 |
| 126:2,15 127:7,10 | 81:10 104:21 140:13 | 169:16 173:9 | **150** 104:5 156:19,21 | **25315** 53:6 |
| 129:6 130:2 132:14 | 162:15 163:14 | **years** 8:16 11:8 26:4 | **1500** 133:18 | **26** 58:19 95:13 96:2 |
| 132:18 134:10,15 | **we've** 77:12 78:11,16 | 28:13 33:9 50:7 | **16** 84:6 | **26th** 22:3 27:8 36:13 |
| 135:3,14 165:2 | 78:19 | 52:15 76:3 80:10 | **16C** 117:13,14 148:15 | 44:5 71:11 83:21 |
| **weapons** 22:2 26:7 | **whatsoever** 116:6 | 84:6 93:19 94:12,15 | **17th** 140:9 | 91:17,21 105:5 |
| 43:9 55:19 72:1,20 | **wheat** 59:6 | 113:12 119:18,19,21 | **18** 153:8 | 114:15,20 134:9 |
| 74:20 75:2,3,6,8,19 | **while** 37:1 57:2 112:1 | 124:5 127:13 128:7 | **18th** 110:8,15 111:15 | 141:1 |
| 83:10,11,16 84:5 | 114:12 | 145:12 147:3,5 157:2 | **1979** 154:12,16 | **29** 119:18,19,21 124:4 |
| 123:6 124:8,13,19 | **white** 79:3,6,6,8 | 158:7 159:5 163:6,14 | **1990** 37:18 | 127:13 128:7 145:12 |
| 127:2,7,11,14 128:1 | **whole** 27:14 | 169:5,11,17 | **1994** 169:15 | |
| 128:3,7,8,14,17,19 | **wife** 49:7 124:11 149:6 | **yesterday** 2:14 | **19956** 17:14 36:6 | **3** |
| 129:7,12,20 130:4,5 | 149:12,14 151:1 | **young** 152:9 | _____ | **3rd** 21:9 22:1 37:13,16 |
| 131:14 132:21 | 157:10 | _____ | **2** | 37:19 42:20 55:5 |
| 133:20 135:20 137:3 | **willful** 128:12 | **Z** | **2-31-19.00-46.03** 40:13 | 61:13,15 70:20 |
| 137:4,5 164:15 | **William** 3:20 | **zip** 36:6,9 | **2-32-9.00-15.06** 40:12 | 136:14 138:5 170:3 |
| **Weatherby** 133:3 | **willing** 78:2 107:21 | _____ | 20 50:7 134:8,12,12,17 | **30** 62:5 127:15,16,17 |
| **Webster's** 165:8 | **Wilson** 63:6 107:15 | **$** | **2002** 69:20 70:1 169:18 | 127:20 132:13 133:6 |
| **week** 22:20 | 108:10 109:10 | **$1000** 95:5 | **2003** 108:17 109:11 | 133:7,9,9,15,15 |
| **well** 3:14 6:11 10:19 | 113:14 114:5 157:6 | **$20,000** 55:18 | 110:8,15 111:15 | **300** 132:10 |
| 12:20 13:12,19 14:7 | **Winchester** 132:10 | **$225,000** 95:8 | 112:6 | **3002** 61:1 167:21,21 |
| 15:16 19:16 56:9 | **windows** 69:5 | **$24,000** 9:5 | **2004** 28:14 90:21 | 168:8,14,17 |
| 68:6 74:6 75:1 83:8 | **winter** 17:19,21 | **$300** 148:16 | **2005** 143:2 | **3002C3** 28:19 29:6 |
| 114:6 126:17 127:7 | **wish** 31:21 32:1 | **$3000** 90:14 | **2006** 15:21 16:14,20 | 30:7 |
| 127:12 136:11 137:4 | **wished** 163:2 | **$31,000** 152:19 | 17:1,9 18:2 19:3 | **34806** 17:14 36:4,5 |
| 140:6 148:15 154:5 | **wishing** 29:7 | **$37,000** 49:10 | 24:15 28:17 32:3 | 40:11 42:14 43:3 |
| 157:3 172:11 173:19 | **Withdrawn** 101:18 | _____ | 42:4 48:19,20,21 | 44:8 102:1 121:9 |
| **went** 7:11 62:8 68:15 | 128:17 | **0** | 49:2,4 66:21 80:17 | 141:2 |
| 69:10 91:10 134:9 | **withheld** 6:9 | **05** 143:1,7 | 99:19 102:18 147:16 | **35** 177:5 |
| 141:4 | **witness** 14:9,12 35:10 | **06** 32:8 62:1 117:4 | 163:13 164:11 166:5 | **357** 130:16 131:2,7,15 |
| **were** 3:8 6:12 18:3 | 38:15,20 63:19 115:3 | **07** 52:2 59:13,14 96:12 | 166:8 | 131:20 133:14 |
| 19:11 20:18 22:2 | 118:12 147:13 176:8 | _____ | **2007** 16:8 18:18 19:4,6 | **362** 46:6 |
| 23:1 24:19 33:7 | **witnessed** 145:17,18,19 | **1** | 19:10,12 20:12,20 | **38** 130:21 131:15,19 |
| 36:10,14 37:1,2,11 | 145:20 146:4 | **1** 108:21 | 38:1 39:2,3,14 40:8 | |
| 37:17 42:20 52:14,16 | **witnesses** 115:12 118:2 | **1st** 58:11 | 43:13,16 44:21 51:11 | **4** |
| 63:2 66:17,18 67:9 | 152:8 177:3 | **10** 22:9 59:6 163:21 | 52:7 64:6,7 65:3,4,13 | **4** 120:15,17 160:12 |
| 68:4,7 69:1,5,12 70:8 | **words** 34:8,9 109:12 | **100** 173:10 | 65:15,16 68:20,21 | **4th** 15:21 17:9 18:2 |
| 71:4,8,16 72:1 73:14 | 128:4 165:7 166:21 | **1041E** 22:9 164:1 | 70:5 | 19:3 24:15 25:12 |
| 75:14 78:2 79:1,13 | **work** 89:21 | **11** 5:20 51:15 52:3 | **2008** 1:10 21:9 25:12 | 38:11 42:4 48:19,20 |
| 80:5 83:8,11,12,15 | **worked** 27:1 89:18 | **115** 177:8,9 | 36:13 37:13 42:6,20 | 66:21 89:3 102:18 |
| 83:16,16 89:11 90:5 | **working** 104:4 | **118** 177:12 | 44:5 55:5 64:13 | 121:9 134:11 136:5 |
| 91:1,4 93:8,13,17 | **World** 132:5 | **12** 25:8 60:2 | 121:9 138:4 150:4 | 136:16 138:4 147:16 |
| 94:1,2 97:3 99:16 | **wouldn't** 4:16 170:20 | **12B** 156:11 | 176:9 | 149:21 150:3,4 153:8 |
| 101:8 105:14,14 | **wrangling** 19:19 | **12B1** 155:20,21 158:9 | **2012** 176:21 | 154:1 |
| 110:1,7 114:12,14 | **write** 59:12 129:20 | **12B3** 157:17 158:9 | **21** 112:2 | **423** 39:12 |
| 120:10 121:8,18,19 | 132:15 | **12B6** 32:15 158:9 | **21st** 16:20 32:8 49:3 | **430** 29:9,17 |
| 121:21 123:18 124:2 | **written** 125:13,15,17 | 159:9 160:10 167:18 | 62:1 147:16 | **449** 17:21 43:14,17 |

Towson Reporting Co.
410-828-4148

GORE BROTHERS
410-837-3027

Whitman Reporting - Rockville
301-279-7599

**45** 14:16 130:19

---
**5**
---
**5** 90:21
**5th** 18:18 19:4,10
  20:11 38:1 39:2,3,14
  40:7 43:13,16 52:7
  65:4,13,15 170:1
**5490** 91:5
**5490C** 48:15
**55** 173:2

---
**6**
---
**6** 127:15,16,17,20
  132:13
**6th** 19:6,12 64:6,7 65:3
  65:16
**60B3** 31:13 48:11
**60B6** 31:14 48:11
**63** 48:10
**66** 177:8

---
**7**
---
**7th** 16:14 18:17 32:3
  44:21 51:10 59:13,14
  80:17 117:4
**70** 5:19 51:15
**70A** 52:3
**73** 177:9
**79CA3** 154:10,15

---
**8**
---
**80** 59:6

---
**9**
---
**9** 130:17 132:4
**9th** 112:6 176:9
**90** 17:20 43:14,17
  67:10 95:10,11 96:15
  114:17,20 156:7,9
**911** 8:17
**94** 169:17
**9504** 154:17

②

In The Superior Court of The State of Delaware
In and For Sussex County

David J. Buchanan                              C.A. No:
     Plaintiff


     V.


William A. Wallace
Delaware State Police
David J. Richards
Barbara H. Richards, Et al
     Respondents


## Notice of Motion


TO: Delaware Department of Justice          William A. Wallace, &
     114 W Market St.                        Delaware State Police
     Georgetown, DE 19947                    Troop #5, 9265 Public Safety
                                             Bridgeville, DE 19933

     Mr. & Mrs. David J. Richards
     9534 Wallingford Dr.
     Burke, VA 22015


Please take notice that the attached Motions for relief shall be presented
to the Court for consideration on the 30th day of July, 2008.

                                        _____ Plaintiff
                                        SCI Box 500, #231392
                                        Georgetown De 19947

In The Superior Court of The State of Delaware
In and For Sussex County

David J. Buchanan
   Plaintiff

V.

William A. Wallace
Delaware State Police
David J. Richards
Barbara H. Richards

C.A. No.

Ref: Transfer of
Chancery Court CA
No: 3544-MG, 2008

---

Petition for Writ of Ejectment, and for Damages Resulting
from, Tort, Trespass, Arrest, Seizure, and Defamation

---

Comes Now the Plaintiff, David J. Buchanan, and moves
this Honorable Court for Writ of Ejectment, and for relief
resulting from, Tort, Trespass, Wrongful Arrest, Seizure without
warrant and Defamation by State and Federal actors, and
with collusion of Barbara H. Richards, where Plaintiff has
suffered irreparable loss of liberty, property, and character
by Respondents acting under color of law, relief is available
pursuant to 42 USCS 1983, and 1985, and as stated in
Petition before Chancery Case No. 3544-MG, and in
support, state, claim, and aver as follows:

1) On or about July 16, 2008 Plaintiff filed motion to elect transfer pursuant to 10 Del c 1902, with notice being sent to both Chancery Court and Superior court. This petition goes to re-file complaint with Delaware Superior Court pursuant to Chancery order dated June 6, 2008.

2) On this petition it is requested that all contents of Chancery Court CA No: 3544-MG, docket be filed with the Superior Court for record, pursuant to 10 Del c. 1902.

3) As a result of Respondent's wanton, negligent, willful, and malicious intent, while ejecting Plaintiff from his property, and other associated acts, Plaintiff has right to relief in the form of punitive damages, and compensatory, damages in the amount of fifteen (15) million dollars from Mr & Mrs. Richards, and thirty five (35) million dollars from the remaining State actors captioned, total of $50,000,000 fifty million dollars, where plaintiff's federally protected rights have been violated. Relief is available pursuant to 42 USCS 1983, where Delaware's Tort Claims Act 10 Del c 4001-4013, does not provide a blanket of immunity for conduct that is intentional, willful, malicious, reckless, wondon, or grossly negligent.

4) Plaintiff claims that his rights pursuant to U.S. 4th and 14th Amendments have been violated by State and Federal actors, where State Police and Mr Richards exceeded their authority and jurisdiction by arresting Plaintiff then removing property from his possession, then failed to offer post-deprivation remedy, and disposed of such property with out providing receipt, payment, or replacement.

5) As stated in complaint before Chancery CA No 3544 MG, Delaware State Police, David J. Richards, William A. Wallace, and Barbara H. Richards, caused to remove property, money, guns, computer, business plans, stock, bonds, papers, and other valuables from 34806 Hudson Rd, Laurel De 19956, on January 4, 2008, after Delaware State Police and David J. Richards coordinated arrest of Plaintiff on January 3, 2008. Value of ~~documents~~ documents and property exceeding $50,000. Family Ct transcripts will follow.

6) As stated in complaint before Chancery CA No. 3544-MG, Delaware State Police, David J. Richards, William A. Wallace and Barbara H. Richards, caused to remove property, livestock, guns, artwork, and other valuables, without Court order or warrant, and then searched and seized plaintiffs property without warrant, resulting in ejectment of plaintiff and his business without due process, notice, or cause, characteristic to trespass, on January 26, 2008. Here where Plaintiff and his business have used, and had continuous possession, uninterrupted, and have established ownership recorded by deed as well as lease on record of land with USDA, of all lands and buildings, and no adverse right to others or state has occurred, then respondents have violated Plaintiff's due process rights pursuant to 14th Amendment.

7) Combined property loss due to Respondents exceeds $500,000, and loss of use of property, use and production to satisfy contracts exceeds $200,000, where grain contracts have been seized and farming activity has been impaired by State, and Richards.

③

8) As testomony by David J. Richards and Barbara H. Richard reflects, and where Counsel Glynis Gibson Esq. admits in her pleading before Delaware Supreme Court Ct 60, 2001 the Respondents have gained possession of Plantiff's property without the intent to return such, denying post-deprivation remidy by State and Federal law enforcement actors, where Counsel and Respondent-Superor Delaware Department of Justice, where Del. D.O.J. has indicted Plaintiff in response to his claims before Chancery, and Family Court. See Farvis V. Moeckel, 664 F. Sup. 831.

9) Where Respondents deprived Plaintiff of firearms on January 4, 2003, without warrant, then has used such ownership of firearms against Plaintiff in other proceedings, Respondents have violated Plaintiff's 2nd Amendment rights to own arms, where relief is available pursuant to 42 USCS 1983, 1985,

10) Where Respondents deprived Plantiff of papers, documents and privaleged material, then used such in pleadings before Delaware Supreme Court, Respondents have violated Plaintiffs 5th Amendment rights, where relief is available pursuant to 42 USCS 1983, 1985.

11) Where Respondent have failed to respond to subpoena in other Courts without cause, and where State Department of Justice has entered into a Family Court proceeding as a third party, Respondents have deprived plantiff of due process pursuant to 14th Amendment, where relief is available pursuant to

‡42 USCS 1983, 1985. Parratt V. Taylor, 451 U.S.

12) Where Respondents deprived Plaintiff of his access to
Court of Chancery by arrest and search beyond the
jurisdiction of the State of Delaware, causing his
absence from Chancery Proceeding, then Respondents
have impaired Plaintiff 6th Amendment right affording
Counsel in proceedings before Chancery, even where such
proceedings where not initiated to defend against criminal
action, plaintiff is due relief persuant to 42 uscs 1983,
1985. Police reports will follow.

13) Where Respondents deprived Plaintiff of rights enforceable
by Mortgage contract and deed, where after a long
abandonment by Barbara H. Richards from the property
at 34806 Hudson Rd Laurel, and the 90 acre at Justice
Road, exceeding 5 years, She returns to claim right
to eject Plaintiff, and ownership of all property located
at such land. Here Respondents violate 14th Amendment
by failing to claim property in a jurisdictional Court,
or provide evidance of ownership, where relief is
available pursuant to 42 uscs 1983, 1985. Here mortgages
and deeds protect property interest. Hirschiling V.
Lake Forest School dist. 687 F. Sopp 927.

14) Where State and State Police may have insurance coverage
for claims as asserted in this complaint, and before
Chancery, the existance of coverage could constitute
a waiver of sovereign immunity to suit and discovery
of such is permitted. 18 Del C. 6511.

○

15) Where State Police actions are later shown to be resultant of a combined effort to include supervisory positions, and direction from Delaware Attorney General's office, such liability to suit can be expanded to individuals of such State Police on discovery, where such acts are tortuous upon Plaintiff resultant of individual acts, are not protected by 10Del C 4001, and can be subject to suit pursuant to 42 USCS 1983, 1985, Police reports evidence conspiracy, and tort to follow.

16) Government entity is not immune from claims to property that it has seized with or without cause, and where it is undisputed that property has been taken on the presents of State Police and Richards, the State Police are not immune pursuant to Tort Claim Act. See Walls v. Rees, 569 A.2d 1161. Where there is no crime associated with property taken on January 4, 2008, then all guns and other property detained unlawfully must be returned. State v. Lloyd, 552 A2d 498.

17) Where the nature of Plaintiff's possession, his right to land tenancy by title, and agricultural lease, and that State Police have no claim to such lands, encroachment, ejectment, or request for adverse possession, is not supported by evidence, and where Richards has not paid taxes, mortgage, or any ownership duty, they do not have evidence of act of ownership required to claim adverse possession. See Doe V. Roe, 35 Del 229, 162 A 515.

18) On a showing that Richards does not have any claim to property removed from Plaintiff, and that there is cause to show Richards acted with State Police to deprive Petitioner of such property, Richards' actions resulting in tort are sueable in the Superior Court for damages regardless of Richards claims As victum to avoid liability. Any jurisdiction of Family Court has been divested for lack of jurisdiction over third parties. See Buchanan v. Richards Order of Limitations CA No C594-8107, July 16, 2008. Attachment to follow.

19) State Police as well as Richards have made no intent to hold real estate for theirselves, and lack cause to eject Plaintiff pursuant to 10 Del C 7901, See Marvel v. Bailey Mill Road Home Inc. 104 A2d 908.

20) Even if Richards obtained an order to evict/exclude Plaintiff, such order would have to be issued pursuant to Delaware Statute, and would only be enforcable if it did not violate Plaintiff constitutional rights to property held in common or as lease holder, Then such eviction order would have to be properly seaved on Plaintiff prior to any ejection. Here Respondents have violated due process and are subject to suit pursuant to 42 USCS 1983, 10 Del.C. 7901, and 7902,

21) On a showing of appearance by State actor in Chancery and upon the transfer of this action to the Superior Court of law, as noted in "Petition For Writ

②

of De Ejective Funnel and Verified Complaint for Injunctive Relief" attached hereto, the Plaintiff does not loose any relief affordable by an action of equity, and amends the Chancery complaint to conform to a Court of law. All alligations contained within such attached complaint are intended to survive within the jurisdictional Superior Court on transfer.

Wherefore, as set forth within, Plaintiff requests relief in the form of Compensatory damages, as well as punitive damages, in the amount of $50,000,000, Fifty million dollars, to be paid by State Police, William A. Wallace, and Mr. and Mrs. Richards, for their malicious prosecution, tort, false arrests, deprivation of rights, and willingness to cause severe emotional harm to Plaintiff.

Respectfully

David J. Buchanan
David J. Buchanan
SCI P.O. Box 500
Georgetown De 19947

Dated: July 30, 2008.

(8)

### Affidavit of David J. Buchanan

1) I am David J. Buchanan, Plaintiff in the foregoing Petition, and come before this court to gain relief as follows in such Petition, and do so with consideration to 10 Del C. 8303 as stated;

A) The Claims sought to be litigated have never been disposed of before another Court, and are hereby transfered from Chancery CA No: 3544 MG.

B) The facts alleged are true and correct.

C) The Affiant has made a diligent and good faith effort to determine what relevant case law controls the legal issues raised.

D) The Affiant has no reason to believe the claims are foreclosed by controlled law, and;

E) The Affiant understands that the affidavit is made under penalty of perjury.

Be it remembered that on this 30th day of July, 2008, personally appeared before me, the Subscriber, a Notary Public, for the State of Delaware, David J. Buchanan, who, being by me sworn according to law did dispose and say that the foregoing is correct to the best of his knowledge, information and belief.

_David J. Buchanan_

Sworn to and Subscribed before me this 30th day of July, 2008.

_Judith Ann Lederman_

Notary Public
JUDITH ANN LEDERMAN
NOTARY PUBLIC, STATE OF DELAWARE
My Commission Expires August 28, 2009

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| **DAVID J. BUCHANAN** | : | |
| **Plaintiff** | : | C.A. No. 3544 |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM A. WALLACE,** | : | |
| **DELAWARE STATE POLICE,** | : | |
| **DAVID J. RICHARDS** | : | |
| **Defendants** | : | |

## PETITION FOR WRIT OF *DE EJECTIONE FIRMAE* AND VERIFIED COMPLAINT

## FOR INJUNCTIVE RELIEF

NOW COMES the Plaintiff, David J. Buchanan, and moves this Honorable Court for a

writ of *De Ejectione Firmae,* to call the Defendants to answer for entering on the lands so

dismissed to the Plaintiff for a term that is not yet expired, nor notice of expiration provided by

Defendants, where Plaintiff is the Deeded land owner conducting business as Buchanan Farms,

Inc, on all land subject to this suit, where Plaintiff has suffered due to action of the Defendants,

unreasonable damages, and loss of income, records, documents, electronic stored data, contract,

and right to property, where Defendants intentionally interfered with an ongoing agricultural

business, by aggravated trespass, theft, removal of livestock, destruction of property, where

Plaintiff requests relief by Court Order in the form attached hereto granting injunctive relief

restraining Defendants, William A. Wallace, Delaware State Police, and David J. Richards from

1

interfering with Plaintiff's use of lands located at 34806 Hudson Road, Laurel Delaware, more

particularly described in attached Deed filed in book 1747, page 272 at the Delaware Recorder of

Deeds, Sussex County, and lands located Sussex County Justice Road, and more particularly

described as Tax Map #2-32-19-46.3, and any further relief as the Court see just, and in support,

state, claim, and aver as follows:

## Jurisdiction

1. The Court of Chancery has jurisdiction to enforce all property rights afforded by

Delaware Law, pursuant to 10 Del. § 341, and where such lands subject to this action are within

the State of Delaware, jurisdiction over any trespass committed by any party, remains that of this

Honorable Court.

2.  This Honorable Court has jurisdiction to enforce property rights to; contract,

agricultural lease, property, and claim, where David J. Buchanan is the established ongoing

owner of lands identified within, where David J. Buchanan enjoys title to such land, has been

wrongfully dispossessed or ousted pursuant to 25 Del. § 5313, and has suffered damages by the

hand of the Defendants, in the form of loss to property, income, contract, waist, and other

liberties afforded by law.

3.  The Court of Chancery pursuant to 10 Del. C. § 342 (2008), must afford the plaintiffs

full, fair and complete relief. Hughes Tool Co. v. Fawcett Publications, Inc., 315 A.2d 577 (Del.

1974); 350 A.2d 341 (Del. 1975). To be adequate the legal remedy must be available as a matter

of right. Family Court v. Department of Labor & Indus. Relations, 320 A.2d 777 (Del. Ch.

1974). The legal remedy must be full, fair and complete. Family Court v. Department of Labor

& Indus. Relations, 320 A.2d 777 (Del. Ch. 1974). Where injunctive relief protecting equity is

only available through the Court of Chancery, Chancery retains any jurisdiction for which may

2

be afforded concurrently to the another court where such injunctive relief is not available.

4.  Under settled principles of equity jurisprudence, once equity jurisdiction has attached, the Chancery Court can properly proceed to deal with the whole matter. Park Oil, Inc. v. Getty Ref. & Mktg. Co., 407 A.2d 533 (Del. 1979).

5.  The Chancery Court has concurrent jurisdiction to enforce all property rights afforded by Delaware Law, when infringement of property rights is incidental to court's action, and no adequate remedy by appeal, injunction, or otherwise is available, writ of prohibition in the form of ejectment or writ of De Ejectione Firmae may issue, where; 1) the plaintiff has title to the land, 2) the plaintiff has been wrongfully dispossessed or ousted, and 3) the plaintiff has suffered damages, in violation of due process of law.

6.  Chancery Court has the right to protect a defendant (Plaintiff in this action) in an ejectment action at law whose title is equitable against the plaintiff (Defendant in this action) in that action, whose claim is a legal one, if the equitable title is a meritorious defense not available as such in the action at law. Boole v. Johnson, 11 Del. Ch. 364, 102 A. 782 (1917).

7.  Chancery Court has subject matter jurisdiction where relief without delay is necessary to protect Plaintiff from further waist, irreparable harm furthering equitable loss.

8.  This Honorable Court has jurisdiction pursuant to 10 Del. § 343, to issue injunction, and temporary restraining order pursuant to Chancery Rule 65(b), where there is a showing by affidavit or verified complaint that immediate irreparable injury may result to the Plaintiff if such relief is not afforded.

### Cause

9.  The Court is given notice of BUCHANAN, Plaintiff, v. BUCHANAN, Defendant. C.A. No. 06C-06-041 ESB SUPERIOR COURT OF DELAWARE, SUSSEX, 2006 Del. Super. LEXIS

3

279, showing the history of subject matter, where David J. Richards is now the husband of Plaintiff's ex-wife, Barbara H. Buchanan (Richards).

10. On or about January 4, 2008, in the absence of David J. Buchanan, and during a time for which the Office of Buchanan Farms, Inc. was closed for business, David J. Richards of 9534 Wallingford Drive, Burke, Virginia 22015-1739, with the assistance of Delaware State Police officer William A. Wallace gained unauthorized access to the office of Buchanan Farms, Inc. located on the property owned and deeded to David J. Buchanan, at 34806 Hudson Road, Laurel Delaware, with the intent to remove property, documents, computers, electronic stored data including agricultural plans, chemical use records, and nutrient management, contracts, money, checks, and personal property including firearms, identification, passports, and license necessary to conduct an ongoing agricultural business, where the extent of resultant damages are not available at the time of this petition, due to the absence of receipt, and where continued waist is expected resultant of Defendants malicious action, combined with State Police refusing to file a criminal report, Plaintiff requests injunctive relief.

11. On or about January 4, 2008, after Defendants obtained automobile keys from the office of Buchanan Farms, Inc., entered private property known to be David J. Buchanan's locked personal vehicle with the intent of aggravated trespass, theft, and removed fishing gear, mail and other documents, cash, checks, identification, and other items to impair David J. Buchanan's absolute freedoms, showing the Defendant's intent to thwart any financial resolve available to Plaintiff, to conduct an ongoing agricultural business, to provide income to support contractual mortgage obligation "under color of state law".

12. On or about January 26, 2008, in the absence of David J. Buchanan, and during a time for which the Office of Buchanan Farms, Inc. was closed for business, David J. Richards of 9534

Wallingford Drive, Burke, Virginia 22015-1739, with the assistance of Delaware State Police

officer William A. Wallace gained unauthorized access to the office and lands of Buchanan

Farms, Inc. located on the property owned and deeded to David J. Buchanan, at 34806 Hudson

Road, Laurel Delaware, with the intent to remove property, valuable livestock, firearms, where

the resultant damages are expected to exceed $500,000, in the shadow of no receipt being

provided evidencing grand theft, and where continued waist is expected resultant of Defendants

malicious action, Plaintiff requests immediate injunctive relief.

13. David J. Richards is the spouse of David J. Buchanan's ex-wife, and has not given

cause or notice to interfere with any activity of the Plaintiff, Plaintiff's enjoyment of agricultural

land, or any right to ongoing business, pursuant to 25 Del. § 6702, and does not have claim to

property to support his trespass.

14. William A. Wallace, the State Police, and/or the State of Delaware have no right to

claim against the Plaintiff, Plaintiff's property or business, to support their trespass, theft, and

malicious tort, while acting under the color of law, and have acted in violation of 42 U.S.C.S. §

1983, and 42 U.S.C.S. § 1985.

15. David J. Richards conspired with William A. Wallace, to claim, and unlawfully

ouster Plaintiff, and Plaintiff's agricultural business from land deeded to Plaintiff, and leased to

Plaintiff's business, in violation of 25 Del. § 5313, while acting under the color of law, in

violation of 42 U.S.C.S. § 1983, and 42 U.S.C.S. § 1985.

16. As of the filing of this Petition for Writ of *De Ejectione Firmae and Verified

Complaint for Injunctive Relief,* there is no cause to support Defendant's action of Ejection filed

with the Jurisdictional Court, pursuant to 25 Del. § 6702, 25 Del. § 5707, or 25 Del. § 5704.

17. Defendants acting without cause, goes to support cause of action under 42 U.S.C.S. §

5

1983, where (1) the defendants acted under color of state law, in violation of an identified liberty or property interest protected by the due process clause; and (2) deprived plaintiffs of rights secured by the Constitution or federal statutes, "under color of state law" showing significant state involvement in the action through an officer of the State Police making such action "fairly attributable to the state," and "shocks the conscience". *See HOWARD, Plaintiffs, v. MALAC, Defendants. CIVIL ACTION NO. 02-12106-WGY U. S. DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS270 F. Supp. 2d 132; 2003 U.S. Dist. LEXIS 11200*

18. Defendants acting without cause, goes to support cause of action under 42 U.S.C.S. § 1985(3) conspiracy, where (1) Defendants acted against a farmer class person to force from his land, where invidiously discriminatory animus lay behind the conspirators' action, and (2) where the conspiracy aimed at interfering with Plaintiff's rights that are protected against private, as well as official, encroachment.

19. William A. Wallace while acting in the official capacity of the State Police exercised coercive power and/or has provided such significant encouragement, either overt or covert to cause the removal of Plaintiff from his deeded land, without consideration of documents and facts made available to him negating his authority.

## Conclusion

20. The Court of Chancery has jurisdiction to enforce all property rights afforded by Delaware Law, pursuant to 10 Del. § 341.

21. This Honorable Court has jurisdiction pursuant to 10 Del. § 343, to issue injunction, and temporary restraining order pursuant to Chancery Rule 65(b), where there is a showing by affidavit or verified complaint that immediate irreparable injury may result to the Plaintiff if such relief is not afforded.

6

22. David J. Richards, has conspired with Delaware State Police Officer William A.
Wallace, to trespass, burglarize, and to impair absolute rights afforded Plaintiff, which go to also
impair Plaintiff's agricultural business, while acting under the color of law, giving cause to
support Defendants violation of 42 U.S.C.S. § 1983, and 42 U.S.C.S. § 1985.

23. There is no cause to support Defendant's action of Ejection filed with the
Jurisdictional Court, pursuant to 25 Del. § 6702, 25 Del. § 5707, or 25 Del. § 5704, and shows
lack of due process of law by state actor.

24. Tort upon the Plaintiff affords the application of the "nexus" doctrine, under which a
private entity is deemed a state actor if the State has exercised coercive power or has provided
such significant encouragement, either overt or covert, that the challenged conduct fairly can be
attributed to the State the "nexus" doctrine is so employed.

25. Defendants conspired, to claim, and unlawfully ouster Plaintiff, and Plaintiff's agricultural
business from land deeded to Plaintiff, and leased to Plaintiff's business, in violation of 25 Del. §
5313, while acting under the color of law, conduct fairly can be attributed to the State in
violation of 42 U.S.C.S. § 1983, and 42 U.S.C.S. § 1985.

26. Finally, the Plaintiff has the right to move the Court for injunctive relief and
declaratory judgment to award damages, return of property, money, and chattels, as well as
quieting title of disputed properties, where there is a showing of Defendant's wrongful intent to
impair on the Plaintiff's right to; access leased and owned property, continue an ongoing
agricultural activity, service contracts of mortgage associated with his ownership of such land,
and to create a condition of title to land free of encumbrance, or other interference.

WHEREFORE, as set forth in the Petition for Writ of *De Ejectione Firmae*, Plaintiff has
a reasonable likelihood of ultimate success on the merits of its claim; will suffer irreparable

7

injury if the relief sought is not granted and the injury to Defendants or others, if any, will be far

less than the actions of the Defendants from which Plaintiff seeks to be protected, and prays that

this Court provide immediate injunctive relief preventing any further trespass on lands of

Plaintiff, or his agricultural business, and that the Court order all property removed from

Plaintiff's ownership, possession, and/or from the Business property of Buchanan Farms, Inc. be

returned without further delay.

Date _Feb. 15, 2008_

David J. Buchanan, ~~Debtor~~ Plaintiff
34806 Hudson Road
Laurel, DE 19956
(302) 875-1362

8

EFiled: Jun 6 2008 4:31PM EDT
Transaction ID 20144132
Case No. 3544-MG

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID J. BUCHANAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 3544-MG |
| | ) | |
| WILLIAM A. WALLACE, | ) | |
| DELAWARE STATE POLICE and | ) | |
| DAVID J. RICHARDS, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED ORDER

WHEREAS, a telephonic oral argument was held on April 7, 2008 that the Plaintiff failed to attend, and

WHEREAS, the Plaintiff filed correspondence on April 8, 2008 concerning the telephonic oral argument;

WHEREAS, a final report was issued on April 10, 2008 taking into consideration the telephonic oral argument and correspondence filed by Plaintiff; and

WHEREAS, no exceptions having been filed thereto;

NOW, THEREFORE, it appearing that there are grounds to so hold, the final report issued on April 10, 2008 is hereby approved and the findings of fact made therein are hereby adopted.

1

This matter is dismissed with leave to re-file in the Superior Court within 60 days

of the date of this Order, pursuant to 10 Del. C. § 1902.

IT IS SO ORDERED this 6th day of June , 2008.

W Chandler
_____
Chancellor

In The Superior Court of The State of Delaware
In and For Sussex County

David J. Buchanan
   Plaintiff

                                   CA. No:

V.

William A. Wallace
Delaware State Police
David J. Richards
Barbara H. Richards, Et Al
   Respondents

## Order

Whereas, Respondents, have trespassed on Plaintiff's land with intent to deprive him of property and right, causing irreparable loss of liberty, property, and character, and

Whereas, Respondents all or in part acted under color of law, without post-deprivation remedy, to eject plaintiff from deeded lands and deprive plaintiff of property rights, and

Whereas, Respondents, have admitted to such actions in other Courts of law and equity upon making further claims against Plaintiff;

Now, Therefore, it appearing that there are grounds to so hold, the Respondents shall be liable to pay Plaintiff as a result of their actions, tort, and willful acts as State and private actors, damages in the

amount as requested within the petition, to be paid
to Plaintiff in the total amount of Fifty Million dollars
($50,000,000), where the findings support such award.


IT IS SO ORDERED


_____

Justic

Certificate of Service

I, David J. Buchanan, hereby certify that on this 30th day of July, 2008, copies of Petition attached hereto, proposed order, were mailed to the Respondants as noticed on Notice of Motion, and presented to the Superior Court of the State of Delaware, in and for Sussex County for review and relief.

David J. Buchanan 231392
SCI P.O. Box 500
Georgetown, DE 19947

EFiled: Mar 28 2008 3:41PM EDT
Transaction ID 19185093
Case No. 3544-MG

**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DAVID J. BUCHANAN | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 3544-MG |
| | ) | |
| WILLIAM A. WALLACE, | ) | |
| DELAWARE STATE POLICE, | ) | |
| DAVID J. RICHARDS. | ) | |
| | ) | |
|     Defendants. | ) | |

**Affidavit of Stephani J. Ballard, Deputy Attorney General**

1.    I am a Deputy Attorney General employed by the State of Delaware Department of Justice. I serve as Counsel to the Delaware State Police (DSP).

2.    My first and only dealing with the Plaintiff, David Buchanan, prior to the instant matter was the filing of a motion to quash a subpoena issued by Plaintiff to DSP Corporal William A. Wallace to appear in the Family Court on February 14, 2008. At no time did I represent to Mr. Buchanan that I was the agent of or authorized to accept service of process on behalf of DSP or Corporal Wallace in this or any civil matter. I did not, in fact, accept service of process in the instant action.

3.    On March 27, 2008, I received a copy of a letter with attachments mailed by Plaintiff to my Wilmington office. Mr. Buchanan's letter was dated March 25, 2008. It appears this letter and attachment has been entered on this Court's docket as Document #16 (Lexis Transaction # 19132160).

4.    Mr. Buchanan's March 25, 2008 letter represents that it attaches "proof of service documents attached to corresponding subpoena served on parties of interest in [this] proceeding, pursuant to Rule 45(b)."

5.    The "Proof of Service" document pertaining to me is actually a proof of service of a Family Court subpoena which was issued in an attempt to compel my appearance at a PFA hearing between Buchanan and his ex-wife, which was scheduled to be heard in the Family Court for Sussex County on March 13, 2008. This "subpoena" was not received by me until March 13, 2008 at 12:00 noon, after the time set for the hearing. This Family Court subpoena attached another document purporting to be a subpoena issued by this Court in this action, as well as an earlier written request for documents which had been the subject of the February motion to quash.

6.    The Court's docket in this case shows that no subpoenas have been issued, and I have not been subpoenaed or served with a subpoena in this Court of Chancery matter.

7.    On March 13, 2008, David Hume, Deputy Attorney General in the Criminal Division in Georgetown called to advise me that Cpl. Wallace had been served with a Family Court subpoena for appearance in the same PFA hearing discussed above. I confirmed this with Cpl. Wallace.

8.    Upon information and belief, the "Proof of Service" document attached to Mr. Buchanan's March 25, 2008 letter to this Court, pertaining to Cpl. Wallace, is actually a proof of service of the Family Court subpoena which was issued in an attempt to compel Cpl. Wallace's appearance at the March 13, 2008 PFA hearing, the contents of which were identical to the subpoena received by me. According to this Court's docket, and upon information and belief, Cpl. William A. Wallace has not been subpoenaed nor

served with a subpoena in this Court of Chancery matter. As a party to this action, Cpl.

Wallace would not be subject to the subpoena provisions of Rule 45 in any event.


BE IT REMEMBERED that on this _28th_ day of _March_, 2008,

personally appeared before me, the Subscriber, a Notary Public for the State and County

aforesaid, **STEPHANI J. BALLARD**, who, being by me duly sworn according to law

did depose and say that the foregoing statement is correct to the best of her knowledge,

information and belief.

STEPHANI J. BALLARD

SWORN TO AND SUBSCRIBED before me on this _28_ day of _March_, 2008.

Notary Public

pursuant to 29 Del.C. 4323(a)(3)

LexisNexis File & Serve

P

EFiled: Jul 29 2008 12:50PM EDT
Transaction ID 20839108
Case No. 3544-MG

**LexisNexis· File & Serve**  **Welcome:** Simmons, Arline
DE Court of Chancery Civil Action

Resource Center | File & Serve Preferences

| Home Y **Filing & Service** Y **Alerts** Y **Search** ◣

| Case History | Cases Search | Daily Docket | Transaction Status | Advanced Search |

Home > Select Case > **Case History**

## Case History Search
Search Created:
Tuesday, May 27, 2008 13:53:51 EDT

Printable Version

| | | | |
|---|---|---|---|
| **Court:** | DE Court of Chancery Civil Action | **Judge:** | Glasscock, Sam |
| **Division:** | N/A | **Case Number:** 3544-MG | |
| **Case Type:** | Injunctive Relief | **Case Name:** | CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al |

**File & Serve Live Date:** 2/15/2008
**Document(s) Filed:** 43
**Date Range:** All

Choose an action: -- Select --   ⸱⸱ Go   Show 1000 records

1-19 of 19 transactions   ‹ ‹ › ›  Page 1 of 1 ‹ ›

| ☐ Transaction | ▼ Date/Time | Option | Case Number Case Name | Authorizer Organization | # ☐ | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|---|---|
| ☐ 19566841 | 4/25/2008 10:29 AM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | William B Chandler, DE Court of Chancery Civil Action | 25 ☐ | Order | Final Order [view] | 0.1MB |
| ☐ 19552345 | 4/24/2008 12:39 PM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 24 ☐ | Letter | Letter to Master Sam Glasscock from David J. Buchanan dated April 19, 2008 [view] | 0.2MB |
| ☐ 19552287 | 4/24/2008 12:38 PM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 23 ☐ | Letter | Letter to David J. Buchanan from Kim Roach, Judicial Secretary dated April 24, 2008 [view] | 0.1MB |
| ☐ 19358203 | 4/10/2008 3:46 PM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 22 ☐ | Masters Report | Masters Final Report issued April 10 2008 [view] | 0.1MB |
| ☐ 19339947 | 4/9/2008 4:15 PM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 21 ☐ | Letter | Letter to Plaintiff [view] | 0.1MB |
| ☐ 19339295 | 4/9/2008 4:02 PM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 20 ☐ | So Ordered | So Ordered letter to parties [view] | 0.1MB |
| | | | | | ☐ | Order | Order attachment to So Ordered letter to parties [view] | 0.1MB |
| ☐ 19328434 | 4/9/2008 8:38 AM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 19 ☐ | Response | Response to Motion to Provide Default Judgment filed by Mr. Buchanan [view] | 0.2MB |
| ☐ 19185093 | 3/28/2008 3:41 PM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Stephani J Ballard, Department of Justice-Wilmington | 18 ☐ | Response to Motion for Default Judgment | State Defendants' Response to Plaintiff's Motion for Default Judgment and State Defendants' Motion to Dismiss [view] | 0.1MB |
| | | | | | | ☐ Affidavit | Affidavit of Stephani J. Ballard Deputy Attorney General | 0.1MB |

LexisNexis File & Serve

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | ☐ Exhibits | [view]<br>Attachment to State Defendants' Response to Plaintiff's Motion for Default Judgment and State Defendants' Moiton to Dismiss - Buchanan v. Gay, Del. Super., C.A. No. 08M-02-012 (March 10, 2008)<br>[view] | 0.1MB |
| | | | | | | ☐ Certificate of Service | Certificate of Service to State Defendants' Response to Plaintiff's Motion for Default Judgment and State Defendants' Motion to Dismiss<br>[view] | 0.1MB |
| ☐ 19170387 | 3/27/2008 4:27 PM EDT | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Sam Glasscock, DE Court of Chancery Civil Action | 17 | ☐ Letter | Letter to parties confirming teleconference scheduled 040708<br>[view] | 0.1MB |
| ☐ 19132160 | 3/25/2008 3:02 PM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 16 | ☐ Letter | Letter from David Buchanan dated 3.25.08 encl proof of services<br>[view] | 0.6MB |
| ☐ 19123577 | 3/25/2008 10:35 AM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 15 | ☐ Motion | Motion to Vacate Order of February 15, 2008 and Other Relief<br>[view] | 0.1MB |
| | | | | | | ☐ Letter | Letter from Glynis Gibson dated 3.24.08 encl Motion to Vacate Order<br>[view] | 0.1MB |
| | | | | | | ☐ Exhibits | Exhibits to Motion to Vacate<br>[view] | 0.6MB |
| | | | | | | ☐ Proposed Order | Proposed Order to Motion to Vacate<br>[view] | 0.1MB |
| | | | | | | ☐ Certificate of Service | Certificate of Service to Motion to Vacate<br>[view] | 0.1MB |
| ☐ 19071928 | 3/20/2008 11:10 AM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Pro Se, Pro Se | 13 | ☐ Notice | Notice of Process Service filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | 14 | ☐ Motion for default judgment | Motion for Default Judgment Pursuant to Rule 55(b) filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | | ☐ Affidavit | Affidavit to Notice of Process Service filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | | ☐ Notice | Notice of Motion for Default Judgment filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | | ☐ Proposed Order | Order for Permanemt Injunction filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | | ☐ Certificate of Service | Certificate of Service filed by Pro Se Plt.<br>[view] | 0.1MB |
| | | | | | | ☐ Affidavit | Affidavit to Motion for Default filed by Pro Se Plt.<br>[view] | 0.1MB |
| ☐ 18981396 | 3/13/2008 1:22 PM EDT | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 12 | ☐ Letter | Letter from Mr. Buchanan to Ms. Gibson dated 3.11.08<br>[view] | 0.1MB |
| ☐ 18937319 | 3/11/2008 | File | 3544-MG | Patricia G | 11 | ☐ Other | Request For Issue Of Subpoena | 0.1MB |

LexisNexis File & Serve                                                    Page 3 of 4

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  | 11:44 AM EDT | Only | CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Randolph, DE Court of Chancery Civil Action |  |  | and Notice Of Request filed by David Buchanan. (Mr. Buchanan picked up blank subpoenas to bring back to RIC to have issue) [view] |  |
| ☐ 18886921 | 3/6/2008 4:29 PM EST | File And Serve | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 10 ☐ | Letter | Letter from Glynis Gibson, Esq. dated 3.6.08 [view] | 0.1MB |
| ☐ 18822768 | 3/3/2008 12:43 PM EST | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 9 ☐ | Sheriffs Return | Non Est David J. Richards 2.27.08. Shf. Higdon. Not Represented by this Attorneys Office per Glennis Gibson, Lawyer. [view] | 0.1MB |
| ☐ 18658772 | 2/19/2008 4:20 PM EST | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 8 ☐ | Order | Special Process Server Order- Granted [view] | 0.1MB |
| ☐ 18628590 | 2/15/2008 2:46 PM EST | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Patricia G Randolph, DE Court of Chancery Civil Action | 7 ☐ | Summons | Praecipe; Issued Summons To Sussex County Sheriff (1 copy) on 2.15.08 [view] | 0.1MB |
| ☐ 18621190 | 2/15/2008 11:34 AM EST | File Only | 3544-MG CLOSED 4/24/2008 Buchanan, David J vs William A Wallace et al | Pro Se, Pro Se | 1 ☐ | Complaint with 3 or More Defendants | Petition for Writ of De Ejectione Firmae and Verified Complaint for Injunctive Relief [view] | 0.2MB |
|  |  |  |  |  | 2 ☐ | Supplemental Information Sheet | Plaintiff's Supplemental Information Sheet [view] | 0.1MB |
|  |  |  |  |  | 3 ☐ | Order | Application and Affidavit to Proceed In Forma Pauperis; Signed 2.13.08 by Master Glasscock: costs deferred [view] | 0.2MB |
|  |  |  |  |  | 4 ☐ | Motion | Notice and Motion for Preliminary Injunction [view] | 0.1MB |
|  |  |  |  |  | 5 ☐ | Motion to Expedite | Motion for Expedited Proceedings [view] | 0.1MB |
|  |  |  |  |  | 6 ☐ | Motion | Motion for Temporary Restraining Order [view] | 0.1MB |
|  |  |  |  |  | ☐ | Exhibits | Exhibits to Petition for Writ of De Ejectione Firmae and Verified Complaint for Injunctive Relief [view] | 1.1MB |
|  |  |  |  |  | ☐ | Exhibits | Exhibits to Application and Affidavit to Proceed In Forma Pauperis [view] | 0.2MB |
|  |  |  |  |  | ☐ | Proposed Order | Proposed Preliminary Injunction Order [view] | 0.1MB |
|  |  |  |  |  | ☐ | Proposed Order | Proposed Order for Expedited Proceedings [view] | 0.1MB |
|  |  |  |  |  | ☐ | Proposed Order | Proposed Temporary Restraining Order [view] | 0.1MB |

1-19 of 19 transactions    Prev Page 1 of 1 Next



**DEPARTMENT OF JUSTICE**
SUSSEX COUNTY
114 EAST MARKET STREET
GEORGETOWN, DELAWARE 19947

PHONE (302) 856-5353
FAX (302) 856-5368
TTY (302) 856-2500

**JOSEPH R. BIDEN, III**
ATTORNEY GENERAL

February 11, 2008

**Via Hand Delivery**
The Honorable John E. Henriksen            The Honorable Sonya Truitt Wilson
Family Court of Delaware                   Family Court of Delaware
22 The Circle                              22 The Circle
Georgetown, DE  19947                      Georgetown, DE  19947

     *RE:*   *Buchanan v. Richards, Petition No: CS94-3107*

Dear Judge Henriksen and Commissioner Wilson:

     Enclosed please find a courtesy copy of a Motion to Quash which is being filed on behalf of Delaware State Police Corporal William A. Wallace, who has been subpoenaed by Petitioner, David Buchanan, for a PFA hearing scheduled for February 14, 2008. I apologize for the late filing, but the subpoena was not delivered to Corporal Wallace until Wednesday February 6, 2008 and did not come to my attention for a response until Friday February 8, 2008.

     In light of the Movant's objections to the subpoena and pending Motion to Quash, I would respectfully request that the Court advise, prior to February 14, 2008, if Corporal Wallace's appearance will be necessary at the hearing.

     If the Court has any questions or if I can provide any additional information, please do not hesitate to contact me at (302) 577-8400 or via State email.

                Respectfully submitted,

                /s/ Stephani J. Ballard
                Stephani J. Ballard
                Deputy Attorney General
                Counsel to Delaware State Police

cc:    David J. Buchanan (via US mail)
       Corporal William A. Wallace (via email)
       Captain Gregory Nolt, (via email)

## IN THE FAMILY COURT OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

DAVID J. BUCHANAN    )
  Petitioner,     )
           )
  v.         )  **Matter No: 08-01022**
           )  **Petition No: CS94-3107**
BARBARA H. RICHARDS   )
  Respondent.    )

### NOTICE OF MOTION

TO: David J. Buchanan
   84806 Hudson Road
   Laurel, DE 19956

**PLEASE TAKE NOTICE** that attached Motion to Quash Subpoena* is herewith presented

to the Family Court of the State of Delaware for the Court's consideration. If you are opposed to this

motion you must file a written response with the Court within ten (10) days of service of this motion.

If no response is timely filed, the motion may be decided without further opportunity for you to be

heard in this matter. Family Court Civil Rule 7(b)(2).

  *Re: Subpoena for matter scheduled to be heard Thursday, February 14, 2008 before*
  *Commissioner Sonya Wilson.*

          STATE OF DELWARE
          DEPARTMENT OF JUSTICE
              for Stephani Ballard
          STEPHANI J. BALLARD #3481
          Deputy Attorney General
          Department of Justice
          Carvel State Office Building
          820 N. French Street
          Wilmington, DE. 19801
          (302) 577-8400
          Attorney for Delaware State Police
          and Corporal William A. Wallace

DATED:

## IN THE FAMILY COURT OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| DAVID J. BUCHANAN<br>   Petitioner, | )<br>)<br>) |
| v. | )<br>) |
| BARBARA H. RICHARDS<br>   Respondent. | )<br>) |

Matter No:    08-01022
Petition No:  CS94-3107

### MOTION TO QUASH SUBPOENA

Corporal William A. Wallace, Delaware State Police (DSP), by and through the undersigned Deputy Attorney General, hereby moves the Court, pursuant to Family Court Civil Rule 45, to quash a subpoena served on Corporal Wallace in the above captioned matter, for appearance and production of documents at a PFA hearing, for the following reasons:

1. *Pro Se* Petitioner, David Buchanan, issued a subpoena for the personal appearance of, and production of documentary evidence by, DSP Corporal William A. Wallace, at a PFA hearing scheduled to be heard by this Court on Thursday, February 14, 2008, at 9:00 a.m. This subpoena was dropped off by an unknown person at DSP Troop 5, Bridgeville, Delaware on Wednesday, February 6, 2008. Corporal Wallace was not personally served. No service of the subpoena has been made pursuant to Rule 45. *See* Subpoena attached as Exhibit A.

2. Petitioner's subpoena contains a three-page, itemized list of requested documents, things, as well as interrogatory-style questions directed to Corporal Wallace and/or Delaware State Police. The requests pertain specifically to the criminal arrests of Petitioner on January 3, 2008 and January 26, 2008. This list is titled "Attachment to Subpoena Requesting Discovery."

3. On January 3, 2008, Petitioner was arrested by DSP on a charge of being a fugitive from another state, pursuant to 11 Del.C. §2513. On January 26, 2008, Petitioner was arrested by DSP and charged with: Burglary Second Degree; Criminal Mischief under $1000; Resisting Arrest, and Criminal Contempt, in violation of 11 Del.C. §§825, 811, 1257, and 1271. These charges are currently pending before the Superior Court of the State of Delaware.

4. Corporal Wallace's sole involvement in this matter is that, in the course and scope of his job duties, he participated with other units in the investigation and arrest of Petitioner on the January 3, 2008 and January 26, 2008 pending criminal charges. It is expected that he would be a witness in the criminal case(s). Corporal Wallace has no independent personal knowledge pertinent to a PFA proceeding between the parties. Accordingly, any information to which Corporal Wallace could testify is protected by the common law, law enforcement/investigative privilege, and the subpoena must therefore be quashed pursuant to Family Court Civil Rule 45(h)(3)(A)(ii), as it requires the disclosure of privileged or other protected matter and no exception or waiver applies.

5. It is well settled that law enforcement officials must work unfettered from threats of litigation or intrusion upon the mental impressions, conclusions and evaluations of evidence which go into a determination of whether or not to prosecute a particular matter. In Beckett v. Trice, 1994 WL 319171 (Del. Super. 1994), aff'd 660 A.2d 393 (Del. 1995), the Superior Court quashed a subpoena seeking to depose a Deputy Attorney General (DAG) in a civil action where the plaintiff had been a criminal defendant in a matter the DAG declined to prosecute. The court held that the DAG's testimony was privileged. See also D.R.E. 508(b); Imbler v. Pachtman, 424 U.S. 409 (1976). The mental impressions of an arresting officer pertaining to arrests that are still pending criminal prosecution are subject to the same law enforcement/prosecutorial privilege from discovery in a civil matter.

6.      As to the "Attachment to Subpoena Requesting Discovery," issued by Plaintiff, it is, as the title suggests, plainly an attempt to obtain "discovery" for Petitioner's pending criminal felony charges in Superior Court. As such, it is issued in contravention of the requirements of Superior Court Criminal Rule 17, which requires all requests for discovery in criminal cases in that Court to be issued by the Superior Court Prothonotary, pursuant to the terms of that Rule. The State, as a party to the prosecution, also has the opportunity to be heard on the Defendant's discovery requests—a factor that would be absent here. In effect, Plaintiff's entire subpoena is a fishing expedition and an attempt to utilize the Family Court proceedings to do an "end run" around the parameters of the Superior Court's criminal discovery rules.

Finally, Corporal Wallace is not the custodian of the records and evidence requested, nor empowered to answer interrogatory questions on behalf of the DSP agency, such as "knowledge of" Delaware State Police (item #2), or an "explanation" of DSP's actions in gaining access to certain property (item #16).

7. For the foregoing reasons, the subpoena here must be quashed pursuant to Family Court Civil Rule 45.    In addition, the subpoena should be quashed for lack of proper service, undue burden and expense, and failure to allow reasonable time for compliance, pursuant to Rule 45(h)(3)(A).

**WHEREFORE**, Corporal William A. Wallace and Delaware State Police respectfully object to Petitioner's subpoena and ask that the subpoena for appearance of Corporal Wallace and production of documents at the PFA hearing set for February 14, 2008 be quashed.

STATE OF DELWARE
DEPARTMENT OF JUSTICE

STEPHANI J. BALLARD #3481
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE. 19801
(302) 577-8400
Attorney for Delaware State Police
and Corporal William A. Wallace

'03/25/2008 13:50 FAX 302 736 2240    KENT CHANCERY    → SUSSEX REGISTER    ☑020/023

_02/07/2008 16:54 FAX 3028565369    DOJ SUSSEX    ☑002

.02/07/2008 THU  8:04  FAX 302 337 1094 State Police E    ☑002/005

Form 325
(Rev. 6/03)

# The Family Court of the State of Delaware

### For ☐ New Castle ☐ Kent ☒ Sussex County

## SUBPOENA

| PETITIONER | | RESPONDENT | | PETITION NUMBER |
|---|---|---|---|---|
| David J. Buchanan 84806 Hudson Rd Laurel De 19956 | VS | Barbara A. Richards (Buchanan) | | CS94-3107 |

TO: ┌ William A. Wallace, Corp Troop #5 9265 Public Safety Way Bridgeville De 19933 ┐

| MATTER(S) |
|---|
| 08-01022 |
| PFA |

**TO ADDRESSEE:**   You are hereby commanded to appear personally at the address checked below on:

DATE: 2/14/08    TIME: 0900 A.M    BEFORE: Sonya Wilson

☒ To testify   ☐ To give deposition in the above entitled proceeding  ☒ To produce the documentary evidence specified below. You are not released from this Subpoena until excused by the Court. If you fail to appear, a capias may be issued for your arrest.

All records & documents as listed on attachment to subpoena

NAME, ADDRESS, AND TELEPHONE NO. OF REQUESTING PARTY OR ATTORNEY

David J. Buchanan
84806 Hudson Rd
Laurel De 19956
410 436 5251

**WITNESS THE JUDGES** of the Family Court of the State of Delaware,

BY: John Marino    01/24/2008    John Marino
                        DATE ISSUED                    CLERK OF COURT

## BRING THIS SUBPOENA WITH YOU

☐ 500 N. KING STREET
WILMINGTON, DE 19801
(302) 255-0300

☐ 400 COURT STREET
DOVER, DE 19901
(302) 739-5500

☒ 22 THE CIRCLE
GEORGETOWN, DE 19947
(302) 855-7400

ORIGINAL TO ADDRESSEE

03/25/2008 13:50 FAX 302 736 2240      KENT CHANCERY      → SUSSEX REGISTER      ☑021/023

02/07/2008 16:54 FAX 3028565369      DOJ SUSSEX      ☑003
02/07/2008 THU  8:04  FAX 302 337 1094 State Police 6      ☑003/005

### Attachment to Subpoena Requesting Discovery

Buchanan, David J.

Petitioner

    v.

    File CS94-3107

Buchanan, Barbara H.

    Petition 08-01022

    In compliance with the attached Subpoena, you are required to supply of the following documents:

1. Copies of all documents issued to the Delaware State Police pertaining to the arrests of David J. Buchanan on January 3, 2008, and January 26, 2008, to include complaints from Barbara H. Buchanan, Betty Saunders, William P. Saunders, David J. Richards, and Heidi N. Buchanan.

2. Copies of any document authorizing the Delaware State Police to evict, exclude, David J. Buchanan, and/or tenant Buchanan Farms, Inc. from any property subject to these proceedings, pursuant to 25 Del. § 5701, § 5702, § 5703, § 5704, § 5705, § 5706, and a copy of any process service or judgment of proceeding pursuant to 25 Del. § 5710, Del. § 5711, § 5712, § 6302, and § 6306. Provide any and all documentation that the State Police had access to or knowledge of prior to excluding, evicting, impounding property of, and/or entering and searching the property leased to Buchanan Farms, Inc. pursuant to 25 Del.§ 6702, § 6703, § 6704, § 6705, § 6708, § 6723.

3. Provide names and rank of all State Police who assisted in each arrest of David J. Buchanan on January 3, 2008, and January 26, 2008, and the name of any U.S. Marshal present or notified of the arrests.

4. Provide a copy of the documents allowing the State Police to grant access of the

1

02/07/2008 16:54 FAX 3028565369         DOJ SUSSEX                     ☑004
02/07/2008 THU 8:04 FAX 302 33' 1094 State Police 5                           ☑004/005

properties, and offices leased to Buchanan Farms, Inc. to Barbara H. Richards, David J. Richards, or any other person.

5. Provide a copy of any complaint or document that gives cause for the State Police to request no contact between David J. Buchanan and his adult daughter Heidi N. Buchanan.

6. Provide a copy of the receipt of all property taken from the properties leased to Buchanan Farms, Inc., and or of the personal property of David J. Buchanan.

7. Provide a copy of the bill of laden, for the shipping of livestock from the property of David J. Buchanan, and a copy of any court order ordering the removal of such livestock, for which the State Police where present, assisted, and observed, on or about January 26, 2008.

8. Provide a copy of all documents available to the State Police identifying the person or business who loaded and transported livestock from the lands leased to Buchanan Farms, Inc. on January 26, 2008, pursuant to 3 Del. § 7603, or any federal requirement pursuant to, 3 Del. § 7604, where the State Police where present and observed such action.

9. Provide explanation on how the State Police provided access to property belonging to Buchanan Farms, Inc., giving cause for violation of 11 Del. § 828, where State Police used keys take from David. Buchanan's person on arrest, and provided such keys to Barbara H. Richards to access property without court order

10. Provide explanation of how State Police notified Barbara H. Richards, David J. Richards, Betty Saunders, that David J. Buchanan had been arrested on January 3, 2008, allowing for their entry of, and taking of property, in violation of 11 Del. § 828(b).

11. Provide the physical address that David J. Richards and Barbara H. Richards have provided to the State Police upon complaint.

12. Provide a copy of any proof that David J. Richards and Barbara H. Richards have claim

2

to property located at 34 306 Hudson Road, Laurel Delaware, 19956.

13. Provide a copy of the court order authorizing the State Police to remove a motor vehicle from private property, and have impounded at David J. Buchanan's expense.

14. Provide an itemized invoice of all property the State Police removed, or caused to be removed from the dwellings at 34806 Hudson Road, Laurel Delaware, to include serial number of all firearms, computers and cash.

15. Explain the reason that the State Police refuse to take a crime report from David J. Buchanan pertaining to theft of property, by David J. Richards pursuant to 11 Del. § 856.

16. Explain State Police involvement in giving access to property, and livestock to Mr. and Mrs. Richards, without court order, warrant, or bill of sale, in violation of 11 Del. § 513(2).

17. Explain at what point in providing assistance to enter property belonging to David J. Buchanan by Mr. and Mrs. Richards, did the State Police provide protection of property pursuant to 11 Del. §? 302, when Mr. and Mrs. Richards removed property and livestock from such lands.

18. Give cause to remove deeded land owner from his residence, and to remove business from its office, pursuant to the laws of Delaware.

David J. Buchanan                    Date 2/6/08

3

`03/25/2008 13:48 FAX 302 736 2240      KENT CHANCERY          → SUSSEX REGISTER   ☒004/023`

SUBPŒONA

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DAVID J. BUCHANAN | Plaintiff, | Civil Action No. 3544, 2008 |
| v. | | |
| WILLIAM A. WALLACE | | SUBPOENA |
| DELAWARE STATE POLICE | | |
| DAVID J. RICHARDS | Defendant. | |

**THE STATE OF DELAWARE**
**TO**

William A. Wallace, Corp.
Place of Employ, Troop #5
9265 Public Safety Way
Bridgeville, DE 19933

**YOU ARE HEREBY COMMANDED:**   To provide the following to be copied by the Plaintiff within 48hrs of service of this subpoena, to the Family Court of Sussex County: (1) All documents, complaints, record of communication, between Barbara H. Buchanan/Richards, and the Delaware State Police, dating back to January 1 2002. (2) Provide copies all inventory, invoices, bills of laden, warrants which `:` you or the State Police have on record pertaining to the arrests of David J. Buchanan and removal of property and livestock from 34806 Hudson Road, Laurel DE, 19956. (3) Provide all contracts of sale, leases, evidence of third party use, and any listing/sale of real estate property, ejectment order for which you or the State Police have on file, pertaining to property at located at 34806 Hudson Road, Laurel DE 19956. (4) Provide a complete inventory of all property taken by State Police, Barbara H. Richards, and/or David J. Richards from the property located at 34806 Hudson Road, Laurel DE 19956. (5) Provide copies of all complaints, signed and/or filed by Barbara H. Richards, David J. Richards, Heidi N. Buchanan, Betty Saunders, and/or William P. Saunders, against David J. Buchanan. (6) Provide the address and phone number of any person requesting you or the State Police to assist in entry of lands belonging to Plaintiff, and/or Buchanan Farms, Inc. (7) Provide the name of any Attorney that you have retained, paid for services, or provided services for in the past 5 years. (8) Provide a record of any and all communication between David J. Richards, U.S. Marshals, Barbara H. Richards, Delaware Department of Justice, and the U.S. Department of Justice, pertaining to the arrests, search and seizure of property, of Plaintiff.

Dated  ..3.-11-08......................

*Patricia J. Randolph*

........................................
Register in Chancery,

ᙓⅹ𝓉 ᙓ

13:47 FAX 302 736 2240 _____ KENT CHANCERY        → SUSSEX REGISTER    ☒003/023

# PROOF OF SERVICE

File No.: _____     Petitioner: _____
Case No.: _____     Respondent: _____

I, ___Susan Baynard_____, as an employee of Galt Adjustment Services, Inc., hereby state the following as fact, and complete the following, as pursuant to Contract No. 02-271-MS (section A.9, page 21, and the Directive dated April 22, 2002, by the Family Court of the State of Delaware).

I declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

Service: I served ___William Wallace_____ with a:

_Notice_  Order  ___Summons_  Subpoena  Other _____
Date of Service: __3/12/08__   Time of Service: __1712__
At:

| TROOP 5 | 9265 Public Safety |
|---------|--------------------|
|         | Street Address |
|         | Bridgeville |
|         | City   State   Zip |

**Manner of Service:**
_____ By personally delivering copies to the person.
_____ By leaving copies at the dwelling house or usual place of abode of the respondent, with a member of the household, of suitable age and discretion, residing therein, namely _____, who has verified that the respondent does reside therein.
__X__ By delivering to ___Cpl Caldwell___, authorized to accept service on behalf of respondent.

Description of Person Served: Age: __40__ Race: __W__ Sex: __M__ Height: __6__ Weight: __200__
Hair: __Br__  Glasses: __\/__

Non-Service: After due search, careful inquiry and diligent attempts, I have been unable to effect process upon the person/entity being served, due to the following(s):

( ) Unknown at address   ( ) Evading   ( ) Moved, left no forwarding   ( ) Address does not exist

( ) Reissue to alternate, confirmed moved at primary        ( ) Service cancelled by Court

( ) Time Expired, Reissue        ( ) Other

( ) Additional remarks:
_____
_____

Service Attempts: Service was attempted on _____ at _____ ; on _____ at _____ ; and on _____ at _____ .

I declare under penalty of perjury that the information contained herein is true and correct, and this proof of service was executed on __3-13-08__.

_____Susan Baynard_____
(Name of Above Typed)
Power of Attorney for

__Susan Baynard__ .
Process Server

FORM 454                THE FAMILY COURT OF THE STATE OF DELAWARE
                              FOR SUSSEX COUNTY

                          ORDER OF PROTECTION FROM ABUSE


PETITIONER                    RESPONDENT

BARBARA H. RICHARDS           DAVID J. BUCHANAN          CASE:08-07771
** CONFIDENTIAL ADDRESS **    34806 HUDSON ROAD          FILE:CS94-3107
DOB:10/03/1960                LAUREL, DE 19956
                              DOB:12/05/1959             ORDER:0051553


PETITIONER'S ATTORNEY(S)           GLYNIS GIBSON

     After a hearing with notice to the Respondent and an opportunity to
participate, and full consideration on the merits of the Petition for Order of
Protection from Abuse, pursuant to 10 Delaware Code, Section 1041 et. seq.,
and both of the above-named parties being present,
THE COURT FINDS by a preponderance of the evidence that the Respondent has
committed an act or repeated acts of domestic violence against the Petitioner.

IT IS THEREFORE ORDERED that, for a period up to one year from the date of
this order:

**YOU ARE A PERSON PROHIBITED FROM POSSESSING AND PURCHASING DEADLY WEAPONS FOR
THE DURATION OF THIS ORDER PURSUANT TO 11 DEL. C. sec.1448(a)(6), AS YOU ARE
SUBJECT TO A PROTECTION FROM ABUSE ORDER THAT WAS ENTERED AFTER A FINDING OF
ABUSE BASED UPON 10 DEL. C. sec.1041(1)(a), (b), (c), (f) or (g).**

The Respondent shall not threaten, molest, attack, harass or commit any
other act of abuse against the Petitioner and any minor child(ren) residing
in the Petitioner's household.

The Respondent shall stay 100 yards away from Petitioner's person, residence
and workplace.

The Respondent shall not contact or attempt to contact the Petitioner in any
way, including, but not limited to, by phone, by mail or by any other means.

The Petitioner is granted the exclusive use and possession of the residence
specified herein. The Respondent may return to the residence, accompanied
by a police officer, to obtain the items and under the conditions specified
herein.
ADDRESS: 34806 HUDSON ROAD, LAUREL DE 19956
90 ACRE FARM ON ROAD 449 IN LAUREL, DELAWARE ALSO KNOWN AS PARCEL
2-32-19.00-46.03
SPECIFIC ITEMS:
CONDITIONS:

The Respondent must be evaluated by a DVCC Certified agency and follow any
and all recommendations for treatment.  Written information must be provided
within TWO WEEKS, through the Victim Advocacy Program, regarding the name
and phone number of the provider, anticipated start date and anticipated
completion date, if available. This written information must be sent within

MAR-24-2008(MON) 17:54    Gibson & Nowak              (FAX)302 698 3522        P.015/033

PAGE      2

PETITIONER(S)         BARBARA H. RICHARDS

RESPONDENT(S)         DAVID J. BUCHANAN


   two weeks to:  Victim Advocacy Program
                  P.O. Box 1036
                  Georgetown, DE 19947
                  (302) 856-5843
   Recommended Provider: Peoples Place
                        Crossroads of Georgetown

   Other: PETITIONER SHALL TURN IN ALL WEAPONS FOUND AT THE PROPERTY TO THE
   DELAWARE STATE POLICE.
   THIS ORDER AMENDS THE ORDER THAT WAS ISSUED ON 3/13/2008.

   The Respondent is PROHIBITED BY FEDERAL LAW for the duration of this Order
   from PURCHASING, RECEIVING, TRANSPORTING or POSSESSING FIREARMS or AMMUNITION.

   Mediation of matters other than support between the parties is BYPASSED.

MATTERS OF CUSTODY, VISITATION AND/OR SUPPORT ADDRESSED THROUGH THIS ORDER ARE
DONE SO ON A TEMPORARY BASIS.   SEPARATE CIVIL PETITIONS MUST BE FILED WITH THE
COURT IN ORDER TO HAVE PERMANENT ORDERS ENTERED ON THESE MATTERS.
=================================================================================
THIS ORDER COMPLIES WITH ALL REQUIREMENTS OF 18 U.S.C. SECTION 2265 AND IS
ENTITLED TO FULL FAITH AND CREDIT IN ANY STATE, TERRITORY OR INDIAN NATION.
=================================================================================
THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS AN OFFICIAL COURT ORDER.   THIS
ORDER CANNOT BE WAIVED BY EITHER OF THE PARTIES.   YOU MUST FILE A MOTION WITH
THE COURT IN ORDER TO MODIFY, EXTEND OR RESCIND THIS ORDER.

FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN:
        1. A FINDING OF CONTEMPT;
        2. CRIMINAL PROSECUTION; AND
        3. IMPRISONMENT OR FINE OR BOTH.


SO ORDERED this date,
        03/14/2008

                                    ANDREW K SOUTHMAYD
                                    Judge/Commissioner


THE PARTIES ARE ADVISED OF THEIR RIGHT TO APPEAL A COMMISSIONER'S ORDER TO A
JUDGE OF THE FAMILY COURT BY FILING AND SERVING WRITTEN OBJECTIONS TO THIS
ORDER WITHIN TEN (10) DAYS OF THE DATE OF THIS ORDER.

This Order shall expire on 03/13/2009.
This Order modifies prior Order of 03/13/2008.

Upon the expiration of the Final Order on this petition, you may seek the
return of any weapon or property seized or surrendered pursuant to the Final
Order.  Upon the expiration of the Final Order you must contact the police
agency holding the weapons or property and request its return.  Such request

PAGE      3

PETITIONER(S)         BARBARA H. RICHARDS

RESPONDENT(S)        DAVID J. BUCHANAN

must be made in writing.  The weapons or property will only be returned if you
are not otherwise prohibited from possessing the weapon or property and it
has not been otherwise forfeited.  Failure to properly request the return of
the property within 30 days of the expiration of the Final Order shall result
in the police agency deeming the weapon or property forfeited and the agency
will thereafter dispose of the property.

                                                    CFCSMES   03/14/2008

FORM 452

**EFiled: Feb 15 2008 11:34AM EST**
**Transaction ID 18621190**
THE FAMILY COURT OF THE STATE OF DELAWARE
FOR SUSSEX COUNTY   Case No. 3544-

### TEMPORARY EX PARTE ORDER OF
### PROTECTION FROM ABUSE

**PETITIONER**                    **RESPONDENT**

DAVID J. BUCHANAN          BARBARA H. BUCHANAN          CASE:08-03069
34806 HUDSON ROAD          C/O GLYNIS A GIBSON          FILE:CS94-3107
LAUREL, DE 19956           110 NORTH MAIN STREET SUITE A
DOB:12/05/1959             CAMDEN, DE 19934             ORDER:0050969
                           DOB:10/03/1960

RESPONDENT'S ATTORNEY(S)          GLYNIS GIBSON

Upon EX PARTE consideration of the Petition for Protection from Abuse
filed in this case pursuant to 10 Delaware Code, Section 1043, the COURT FINDS
by a preponderance of the evidence that the Respondent has committed an act of
domestic violence against the Petitioner, and further FINDS that there is an
immediate and present danger of additional acts of domestic violence.

### IT IS THEREFORE ORDERED That:

The Respondent shall not threaten, molest, attack, harass or commit any
other act of abuse against the Petitioner and any minor child(ren) residing
in the Petitioner's household.

The Respondent shall stay 100 yards away from Petitioner's person, residence
and workplace.

The Respondent shall not contact or attempt to contact the Petitioner in any
way, including, but not limited to, by phone, by mail or by any other means.

The Petitioner is granted the exclusive use and possession of the residence
specified herein. The Respondent may return to the residence, accompanied
by a police officer, to obtain the items and under the conditions specified
herein.
ADDRESS: 34806 Hudson Road, Laurel, DE 19956 and the property at Justice Road.
SPECIFIC ITEMS:
CONDITIONS:

Other: Respondent shall return the 3 horses through a 3rd party within 24
hours of service of the Order.

OTHER:This order is based on a finding that the property is Mr. Buchanan's
primary residence and place of employment and that Respondent does not live or
work there.

**IN THE EVENT THAT THE COURT IS CLOSED DUE TO INCLEMENT WEATHER OR OTHER**
**EMERGENCY ON January 14, 2008, THIS ORDER SHALL EXPIRE ON**
**January 22, 2008(DATE OF NEXT SCHEDULED PFA CALENDAR).**

**MATTERS OF CUSTODY, VISITATION AND/OR SUPPORT ADDRESSED THROUGH THIS ORDER ARE**
**DONE SO ON A TEMPORARY BASIS.  SEPARATE CIVIL PETITIONS MUST BE FILED WITH THE**

PAGE    2

PETITIONER(S)        DAVID J.  BUCHANAN

RESPONDENT(S)        BARBARA H.  BUCHANAN


**COURT IN ORDER TO HAVE PERMANENT ORDERS ENTERED ON THESE MATTERS.
THIS ORDER IS AN OFFICIAL COURT ORDER.   THIS ORDER CANNOT BE WAIVED BY EITHER
OF THE PARTIES.   YOU MUST FILE A MOTION WITH THE COURT IN ORDER TO MODIFY,
EXTEND OR RESCIND THIS ORDER. FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN:**

    **1. A FINDING OF CONTEMPT;**
    **2. CRIMINAL PROSECUTION; AND**
    **3. IMPRISONMENT OR FINE OR BOTH.**


A full hearing on the Petition will be held on 02/14/2008 at __9:00__ (am)/~~pm~~.
Both parties are commanded to appear in person for the hearing on that date.

    SO ORDERED this date,
       01/29/2008                        _____
                                              PAMELA HOLLOWAY
                                              ~~Judge~~/Commissioner

*This Order shall expire on 02/14/2008.*
This Order modifies prior Order of _____ .

Upon the expiration of the Final Order on this petition, you may seek the
return of any weapons or property seized or surrendered pursuant to the Final
Order.  Upon the expiration of the Final Order  you must contact the police
agency holding the weapons or property and request its return.  Such request
must be made in writing.  The weapons or property will only be returned if you
are not otherwise prohibited from possessing the weapon or property and it
has not been otherwise forfeited.  Failure to properly request the return of
the property within 30 days of the expiration of the Final Order shall result
in the police agency deeming the weapon or property forfeited and the agency
will thereafter dispose of the property.
                                            CFCMBLE   01/29/2008

FORM 452

## THE FAMILY COURT OF THE STATE OF DELAWARE
### FOR SUSSEX COUNTY

### TEMPORARY EX PARTE ORDER OF
### PROTECTION FROM ABUSE

**PETITIONER**                    **RESPONDENT**

DAVID J. BUCHANAN                BARBARA H. BUCHANAN        CASE:08-03069
34806 HUDSON ROAD                C/O GLYNIS A GIBSON        FILE:CS94-3107
LAUREL, DE 19956                 110 NORTH MAIN STREET SUITE A
DOB:12/05/1959                   CAMDEN, DE 19934           ORDER:0050978
                                 DOB:10/03/1960

RESPONDENT'S ATTORNEY(S)          GLYNIS GIBSON

Upon EX PARTE consideration of the Petition for Protection from Abuse
filed in this case pursuant to 10 Delaware Code, Section 1043, the COURT FINDS
by a preponderance of the evidence that the Respondent has committed an act of
domestic violence against the Petitioner, and further FINDS that there is an
immediate and present danger of additional acts of domestic violence.

### IT IS THEREFORE ORDERED That:

The Respondent shall not threaten, molest, attack, harass or commit any
other act of abuse against the Petitioner and any minor child(ren) residing
in the Petitioner's household.

The Respondent shall stay 100 yards away from Petitioner's person, residence
and workplace.

The Respondent shall not contact or attempt to contact the Petitioner in any
way, including, but not limited to, by phone, by mail or by any other means.

Other: Respondent shall return the 3 horses through a 3rd party within 24
hours of service of the Order.

IN THE EVENT THAT THE COURT IS CLOSED DUE TO INCLEMENT WEATHER OR OTHER
EMERGENCY ON February 14, 2008, THIS ORDER SHALL EXPIRE ON
February 22, 2008 (DATE OF NEXT SCHEDULED PFA CALENDAR).

MATTERS OF CUSTODY, VISITATION AND/OR SUPPORT ADDRESSED THROUGH THIS ORDER ARE
DONE SO ON A TEMPORARY BASIS.   SEPARATE CIVIL PETITIONS MUST BE FILED WITH THE
COURT IN ORDER TO HAVE PERMANENT ORDERS ENTERED ON THESE MATTERS.
THIS ORDER IS AN OFFICIAL COURT ORDER.   THIS ORDER CANNOT BE WAIVED BY EITHER
OF THE PARTIES.   YOU MUST FILE A MOTION WITH THE COURT IN ORDER TO MODIFY,
EXTEND OR RESCIND THIS ORDER. FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN:

    1. A FINDING OF CONTEMPT;
    2. CRIMINAL PROSECUTION; AND
    3. IMPRISONMENT OR FINE OR BOTH.

A full hearing on the Petition will be held on 02/14/2008 at 9:10   am/pm.
Both parties are commanded to appear in person for the hearing on that date.

PAGE       2

PETITIONER(S)        DAVID J. BUCHANAN

RESPONDENT(S)        BARBARA H. BUCHANAN

SO ORDERED this date,
    01/30/2008

_____
PAMELA HOLLOWAY
Judge/Commissioner

This Order shall expire on 02/14/2008.
This Order modifies prior Order of 01/29/2008.

Upon the expiration of the Final Order on this petition, you may seek the
return of any weapons or property seized or surrendered pursuant to the Final
Order.  Upon the expiration of the Final Order  you must contact the police
agency holding the weapons or property and request its return.  Such request
must be made in writing.  The weapons or property will only be returned if you
are not otherwise prohibited from possessing the weapon or property and it
has not been otherwise forfeited.  Failure to properly request the return of
the property within 30 days of the expiration of the Final Order shall result
in the police agency deeming the weapon or property forfeited and the agency
will thereafter dispose of the property.

                                        CFCMBLE   01/30/2008

# The Family Court of the State of Delaware

**In and For Sussex County**

## CIVIL DISPOSITION-COMMISSIONER

| Petitioner | Respondent | |
|---|---|---|
| DAVID BUCHANAN | BARBARA BUCHANAN | **File No(s)** CS94-3107 |
| 34806 HUDSON ROAD | C/O GLYNIS A. GIBSON | **CPI No(s)** 08-03069 |
| LAUREL, DE 19956 | 110 NORTH MAIN ST. STE A | **Nature of Proceeding** PETITION FOR |
| | CAMDEN, DE 19934 | ORDER OF |
| **Attorney** | **Attorney** GLYNIS A. GIBSON, Esq. | PROTECTION FROM |
| **SS#**           **DOB** 12/5/59 | **SS#**           **DOB** 10/3/60 | ABUSE |
| | | **Date of Hearing** 1/29/2008 |

DCSE #

RECIPROCAL #

NPA IV-D

AFDC IV-D

NON IV-D

Before **PAMELA D. HOLLOWAY**, Commissioner of the Family Court of the State of Delaware:

By Order dated January 29, 2008, the Court entered an *Exparte Order of Protection* in favor of Petitioner against Respondent, Barbara H. Buchanan. In that Order the Court awarded temporary possession to Petitioner of 2 parcels of real estate which were testified to by Petitioner as being his primary residence and the parcel from which he derived his income. By Orders dated April 4, 2006 and January 3, 2008, attached, the Honorable John E. Henrikson excluded Petitioner from possession of those two parcels. Those Orders were not available to the undersigned Commissioner at the time the *Exparte Order of Protection* was entered. Based upon the foregoing, the Order of Protection shall be amended to vacate the provision awarding possession of the 34086 Hudson Road, Laurel, Delaware property and the Justice Road property to Petitioner. In all other respects the January 29, 2008 Order shall remain in effect. The amended Order of Protection is attached hereto.

The parties are advised of their right to a Review of a Commissioner's Order, by filing and serving written objections within ten (10) days of the date the written Order is issued. This is only applicable to the party(ies) who appeared in Court.

Date Written Order Issued

Commissioner Pamela D. Holloway

Cc: Pet/Resp/File

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

SOUTHERN STATES COOPERATIVE, INC.,    *
                                      *
            Plaintiff,                * C.A. NO.:  S07M-08-009THG
                                      *            99J-04-023
      v.                              *
                                      *
DAVID BUCHANAN AND BARBARA            *
BUCHANAN                              *
                                      *
            Defendants.               *

## SATISFACTION OF JUDGMENT

**COMES NOW,** the above Plaintiff, by and through its attorneys, Liguori, Morris

& Yiengst, and hereby states that the above captioned action be, and is hereby satisfied.

**LIGUORI, MORRIS & YIENGST**


LAURA A. YIENGST, ESQ.          DATE: ___8/14/08___
46 The Green
Dover, DE  19901
(302)678-9900
Attorneys for Plaintiffs



**IT IS SO ORDERED this** _____ **day of** _____, **A.D. 2008**


                                _____
                                **JUDGE/COMMISSIONER**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

| | | | |
|---|---|---|---|
| SOUTHERN STATES COOPERATIVE, INC., | * | | |
| | * | | |
| Plaintiff, | * C.A. NO.: | S07M-08-009THG |
| | * | 99J-04-023 |
| v. | * | | |
| | * | | |
| DAVID BUCHANAN AND BARBARA | * | | |
| BUCHANAN | * | | |
| | * | | |
| Defendants. | * | | |

## CERTIFICATE OF SERVICE

LAURA A. YIENGST, ESQUIRE, does hereby certify that on this ____ day of

____, 2008, caused to be mailed to Defendant at the following address a true and

correct copy of the Satisfaction of Judgment:

David Buchanan
34806 Hudson Road
Laurel, DE 19956

David Buchanan
Delaware State – Sussex Correctional Institution
RR113
Georgetown, DE 19947

Barbara Buchanan
10400 Courthouse Road
Soptsylvania, VA 22553

**LIGUORI, MORRIS & YIENGST**

**LAURA A. YIENGST, ESQUIRE**
46 The Green
Dover, DE 19901
(302) 678-9900
Attorney for Plaintiff

# WOLOSHIN
# LYNCH
# NATALIE
## & GAGNE, P.A.
Attorneys & Counsellors at Law

**WℓNG**
*Serving Residents of Delaware Since 1965*

3200 Concord Pike
PO Box 7329
Wilmington, DE 19803
(302) 477-3200
Fax (302) 477-3210

22 West Main Street
Middletown, DE 19709
(302) 449-2606
Fax (302) 449-2608

Melvyn A. Woloshin ◊
F. Edmund Lynch †
James A. Natalie, Jr. ∘
David C. Gagne
William L. O'Day, Jr. *
Natalie Woloshin ◊
William P. Brady ▲

DE & CO Bars ◊
DE & VA Bars †
DE, CT & VA Bars ∘
DE & PA Bars *
DE, PA & NJ Bars ▲

Writer's Telephone Number:
(302) 477-3200 ext. 21
email: mwoloshin@wlnglaw.com
Reply to: Wilmington Office

August 4, 2008

Stephen P. Ellis, Esquire
Sergovic & Ellis, P.A.
9 North Front Street
P.O. Box 875
Georgetown, DE 19947-0875

Dear Mr. Ellis:

I have been asked to look into the matters of David J. Buchanan. I understand from Tommy Cooper from Cooper Realty, that the following two (2) parcels, 34806 Hudson Road, Laurel and 8.92 acres on Pepper Pond, which were the subject of Agreements of Sale with Hudson Road Property, L.L.C., and Justis Farm Road, L.L.C., being the purchasers. According to Mr. Cooper, these settlements took place several weeks ago and I would respectfully request copies of the settlement sheets for these properties and some explanation as to where the proceeds of the sale went.

Thank you for your courtesy.

Very truly yours,

Melvyn A. Woloshin

MAW/krs

cc:    David J. Buchanan

A. **Settlement Statement**

B. Type of Loan

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0265 (expires 11/30/2009)

| 1. ☐FHA | 2. ☐FmHA | 3. ☒Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐VA | 5. ☐Conv. Ins. | | 08R-0045 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 07/25/2008 at 14:47 TLW

D. NAME OF BORROWER: Justice Farm Road Property, L.L.C.
ADDRESS: 9 North Front Street, Georgetown, Delaware 19947

E. NAME OF SELLER: Barbara H. Richards
ADDRESS: 10400 Courthouse Road, Spotsyvania, VA 22553

F. NAME OF LENDER: PNC Bank, Delaware
ADDRESS: 4161 Highway One, Rehoboth Beach, DE 19971

G. PROPERTY ADDRESS: 89.2 Acres on Pepper Pond Lane, Laurel, Delaware 19956
2-32 19.00 46.03

H. SETTLEMENT AGENT: Ellis & Szabo, LLP
PLACE OF SETTLEMENT: 9 North Front Street, P.O. Box 574, Georgetown, DE 19947

I. SETTLEMENT DATE: 07/25/2008

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 225,000.00 | 401. Contract sales price | 225,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,122.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. 2008 County Taxes | 16.07 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 232,138.07 | **420. GROSS AMOUNT DUE TO SELLER** | 225,000.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 225,000.00 | 502. Settlement charges to seller (line 1400) | 21,443.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage Loan | 185,213.03 |
| | | Wilmington Trust Company | |
| 205. | | 505. | |
| 206. | | 506. 2001-2007 County Taxes | 275.76 |
| | | Treasury Division | |
| 207. | | 507. Payoff Judgment | 300.00 |
| | | Blue Hen Electric Company | |
| 208. | | 508. Payoff Judgment | 15,000.00 |
| | | Wilson, Halbrook & Bayard | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 211. County taxes 05/01/08 to 07/25/08 | 3.74 | 511. County taxes 05/01/08 to 07/25/08 | 3.74 |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 230,003.74 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 222,235.53 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 232,138.07 | 601. Gross amount due to seller (line 420) | 225,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 230,003.74 | 602. Less reduction amount due seller (line 520) | 222,235.53 |
| **303. CASH FROM BORROWER** | 2,134.33 | **603. CASH TO SELLER** | 2,764.47 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: 51-0311468) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____ / _____  SELLER(S) SIGNATURE(S): _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $225,000.00 @ 8.000 = 18,000.00 | | |
| Division of commission (line 700) as follows: | | |
| 701. $ 18,000.00 to Cooper Realty Associates | | |
| 702. $ to | | |
| 703. Commission paid at Settlement | | 18,000.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee % | | |
| 802. Loan Discount % | | |
| 803. Appraisal Fee to PNC Bank, Delaware | 850.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Application Fee | | |
| 807. Loan Processing Fee to PNC Bank, Delaware | 250.00 | |
| 808. Certificate of Good Standing to PNC Bank, Delaware | 14.00 | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From to @$ /day | | |
| 902. Mortgage Insurance Premium for to | | |
| 903. Hazard Insurance Premium for to | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | |
| 1001. Hazard Insurance mo. @ $ /mo | | |
| 1002. Mortgage Insurance mo. @ $ /mo | | |
| 1003. City Property Taxes mo. @ $ /mo | | |
| 1004. County Property Taxes mo. @ $ 1.34 /mo | | |
| 1005. Annual Assessments mo. @ $ /mo | | |
| 1009. Aggregate Analysis Adjustment | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee to Ellis & Szabo, LLP | | |
| 1102. Abstract or title search | | |
| 1103. Title examination to Ellis & Szabo, LLP | | |
| 1104. Title insurance binder | | |
| 1105. Document Preparation to Ellis & Szabo, LLP | 150.00 | |
| 1106. Notary Fees | | |
| 1107. Attorney's fees to Ellis & Szabo, LLP | 1,450.00 | |
| (includes above items No: ) | | |
| 1108. Title Insurance to First American Title Insurance Company | 850.00 | |
| (includes above items No: ) | | |
| 1109. Lender's Policy 225,000.00 - 500.00 | | |
| 1110. Owner's Policy 225,000.00 - 250.00 | | |
| 1111. Express Mail to Ellis & Szabo, LLP | 15.00 | 30.00 |
| 1112. Bankwire Fee to Ellis & Szabo, LLP | 10.00 | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees Deed $43.00 ; Mortgage $115.00 ; Release $ | 158.00 | |
| 1202. City/County tax/stamps Deed $3,375.00 ; Mortgage $ | 1,687.50 | 1,687.50 |
| 1203. State Tax/stamps Deed $3,375.00 ; Mortgage $ | 1,687.50 | 1,687.50 |
| 1204. Satisfaction Fee to Recorder of Deeds | | 22.00 |
| 1205. Terminate Financing Statement to Recorder of Deeds | | 16.00 |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | 7,122.00 | 21,443.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Justice Farm Road Property, L.L.C.

*Barbara Richards*

Barbara H. Richards

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18 U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Ellis & Szabo, LLP

By: _____ DATE

A. **Settlement Statement**

U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0265 (expires 11/30/2009)

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. ☐FHA 2. ☐FmHA 3. ☒Conv. Unins. 4. ☐VA 5. ☐Conv. Ins. | | 6. File Number<br>08R-0044 | 7. Loan Number | | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 07/25/2008 at 11:37 TLW

| D. NAME OF BORROWER: | Hudson Road Property, L.L.C. |
|---|---|
| ADDRESS: | 33718 Wescoats Road, Lewes, Delaware 19958 |
| E. NAME OF SELLER: | Barbara H. Richards |
| ADDRESS: | 10400 Courthouse Road, Spotsyvania, Virginia 22553 |
| F. NAME OF LENDER: | PNC Bank, Delaware |
| ADDRESS: | 222 Delaware Avenue, Wilmington, DE 19801 |
| G. PROPERTY ADDRESS: | 34806 Hudson Road, Laurel, Delaware 19956<br>3-32 9.00 15.06 |
| H. SETTLEMENT AGENT: | Ellis & Szabo, LLP |
| PLACE OF SETTLEMENT: | 9 North Front Street, P.O. Box 574, Georgetown, DE 19947 |
| I. SETTLEMENT DATE: | 07/25/2008 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 275,000.00 | 401. Contract sales price | 275,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 7,832.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. 2008 County Taxes | 777.57 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 283,610.07 | **420. GROSS AMOUNT DUE TO SELLER** | 275,000.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 275,000.00 | 502. Settlement charges to seller (line 1400) | 26,192.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff:8437862678 | 103,532.82 |
| | | Washington Mutual Bank, FA | |
| 205. | | 505. | |
| 206. | | 506. Payoff Judgment | 25,000.00 |
| | | Southern States Cooperative, I | |
| 207. | | 507. Payoff Judgment | 22,223.25 |
| | | Stark & Stark | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 211. County taxes 05/01/08 to 07/25/08 | 180.43 | 511. County taxes 05/01/08 to 07/25/08 | 180.43 |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 280,180.43 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 177,128.50 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 283,610.07 | 601. Gross amount due to seller (line 420) | 275,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 280,180.43 | 602. Less reduction amount due seller (line 520) | 177,128.50 |
| **303. CASH FROM BORROWER** | 3,429.64 | **603. CASH TO SELLER** | 97,871.50 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your Income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: 51-0311468) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____/_____ SELLER(S) SIGNATURE(S): _____/_____

SELLER(S) NEW MAILING ADDRESS: _____

SETTLEMENT STATEMENT    TitleExpress Settlement System Printed 07/25/2008 at 11:37 TLW

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **L. SETTLEMENT CHARGES** | | | |
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $275,000.00 @ 8.000 = 22,000.00 | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $    22,000.00   to  Cooper Realty Associates | | | |
| 702. $    to | | | |
| 703. Commission paid at Settlement | | | 22,000.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee    % | | | |
| 802. Loan Discount    % | | | |
| 803. Appraisal Fee    to  PNC Bank, Delaware | | 650.00 | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Application Fee | | | |
| 807. Loan Processing Fee    to  PNC Bank, Delaware | | 250.00 | |
| 808. Certificate of Good Standing    to  PNC Bank, Delaware | | 14.00 | |
| 809. Flood Determination    to  PNC Bank, Delaware | | 10.50 | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From    to    @$    /day | | | |
| 902. Mortgage Insurance Premium for    to | | | |
| 903. Hazard Insurance Premium for    to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance    mo. @ $    /mo | | | |
| 1002. Mortgage Insurance    mo. @ $    /mo | | | |
| 1003. City Property Taxes    mo. @ $    /mo | | | |
| 1004. County Property Taxes    mo. @ $    64.57 /mo | | | |
| 1005. Annual Assessments    mo. @ $    /mo | | | |
| 1009. Aggregate Analysis Adjustment | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee    to  Elis & Szabo, LLP | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination    to  Elis & Szabo, LLP | | | |
| 1104. Title insurance binder | | | |
| 1105. Document Preparation    to  Elis & Szabo, LLP | | 150.00 | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees    to  Elis & Szabo, LLP | | 1,450.00 | |
| (includes above items No:    ) | | | |
| 1108. Title Insurance    to  First American Title Insurance Company | | 1,000.00 | |
| (includes above items No:    ) | | | |
| 1109. Lender's Policy    275,000.00  - 600.00 | | | |
| 1110. Owner's Policy    275,000.00  - 300.00 | | | |
| 1111. Express Mail    to  Elis & Szabo, LLP | | 15.00 | 45.00 |
| 1112. Bankwire Fee    to  Elis & Szabo, LLP | | 10.00 | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees Deed $ 43.00    ; Mortgage $ 115.00    ; Release $ | | 158.00 | |
| 1202. City/County tax/stamps    Deed $4,125.00    ; Mortgage $ | | 2,062.50 | 2,062.50 |
| 1203. State Tax/stamps    Deed $4,125.00    ; Mortgage $ | | 2,062.50 | 2,062.50 |
| 1204. Satisfaction Fee    to  Recorder of Deeds | | | 22.00 |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| **1400. TOTAL SETTLEMENT CHARGES**    (enter on lines 103, Section J and 502, Section K) | | 7,832.50 | 26,192.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Hudson Road Property, L.L.C.

*Barbara Richards*
Barbara R. Richards

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18, U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Elis & Szabo, LLP

By_____    DATE

01598

**501957 ²149**

TAX MAP NO.: __2-32-19.00-46.03__

# This Deed, Made this

_14ᵗʰ_ day of JANUARY 19₉₄

BETWEEN,

LEWIS S. LOWE and BONNIE K. LOWE, his wife, of Route 2, Box 371, Laurel, Delaware, 19956, parties of the first part,

-AND-

DAVID J. BUCHANAN and BARBARA H. BUCHANAN, his wife, of Route 2, Box 361-F, Laurel, Delaware, 19956, parties of the second part,

**Witnesseth,** _That the said party_ _of the first part, for and in consideration of the sum of_

--------------ONE DOLLAR--------------- _lawful money of the United States of America,_

_the receipt whereof is hereby acknowledged, hereby grants_ _and conveys_ _unto the said_

_party of the second part,_

# ALL

that certain tract, piece or parcel of land situate, lying and being in Broad Creek Hundred, Sussex County, Delaware, being more particularly described as follows, to wit:

Beginning at a pipe located on the easterly side of Sussex County Road #449-A (50 foot right of way) at a corner for lands now or formerly of Marjorie E. and Richard Harpster; thence with the easterly side of Road #449-A, North 03 degrees 21 minutes 18 seconds East 9.90 feet to a pipe located on the easterly side of Road #449-A at a corner for lands now or formerly of Wilfred J. and Anna L. Whaley; thence with the line of lands of said Whaley the following three courses and distances: (1) South 83 degrees 18 minutes 11 seconds East 268.00 feet to a pipe; (2) North 03 degrees 41 minutes 07 seconds East 1122.32 feet to an axle; and (3) North 76 degrees 25 minutes 14 seconds West 100.77 feet to a concrete monument located in the line of lands now or formerly of Anna E. West at a corner for lands of said Whaley; thence with the line of lands of said West the following five courses and distances: (1) North 00 degrees 19 minutes 20 seconds East 345.73 feet to a point; (2) North 55 degrees 42 minutes 32 seconds East 162.23 feet to a point; (3) North 38 degrees 22 minutes 30 seconds East 318.30 feet to a point; (4) North 71 degrees 44 minutes 00 seconds East 191.50 feet to a concrete monument; and (5) North 15 degrees 55 minutes 26 seconds West 216.06 feet to a point located in the line of lands now or formerly of William C. and Janet W. Otwell at a corner for lands of said West; thence with the line of lands of said Otwell the following three courses and distances: (1) North 75 degrees 39 minutes 57 seconds East, and passing over a concrete monument, 798.02 feet to a concrete monument; (2) South 08 degrees 57 minutes 33 seconds East 145.00 feet to a concrete monument; and (3) North 75 degrees 40 minutes 27 seconds East 655.00 feet to a concrete monument located in the line of lands now or formerly of

0160 111    1/18/94    CTX-EX    SU    .00

PREPARED BY:
**FUQUA, YORI & ROGERS**
ATTORNEYS AT LAW
THE CIRCLE - P.O. BOX 250
GEORGETOWN, DELAWARE 19947

≋01957 ≋150

Marshall T. and Blanche D. Elliott at a corner for lands of said Otwell; thence with the line of lands of said Elliott the following two courses and distances: (1) South 08 degrees 59 minutes 14 seconds East 1066.59 feet to an iron stob; and (2) South 22 degrees 49 minute 52 seconds West 658.57 feet to a large field stone at a corner for lands of said Elliott and for lands now or formerly of Dale V. and Mary E. Jestice; thence with the line of lands of said Jestice, South 33 degrees 28 minutes 38 seconds West 970.16 feet to a concrete monument located in the line of lands of said Jestice at a corner for lands of the aforesaid Harpster; thence with the line of lands of said Harpster, North 83 degrees 18 minutes 11 seconds West 1513.74 feet to the point and place of beginning, containing 89.2023 acres of land, more or less, as will more fully and at large appear upon reference to a survey prepared by Miller-Lewis, Inc., dated July 7, 1993 and incorporated herein by reference. (PLOT BOOK 51-291)

Being part of the same lands conveyed to Lewis S. Lowe and Bonnie K. Lowe, husband and wife, by confirmatory deed of Rosellen H. Johnson and Maryanne Fasold, dated December 30, 1986, filed for record in the Office of the Recorder of Deeds, Georgetown, Sussex County, Delaware, in Deed Book 1468, page 186.

This conveyance is made pursuant to the terms of the Chapter 11 Plan of Reorganization of Lewis S. Lowe and Bonnie K. Lowe, Case No. 92-295 of the United States of America Bankruptcy Court, District of Delaware. A copy of said Plan is about to be recorded in the Office of the Recorder of Deeds, Georgetown, Sussex County, Delaware, MISC. BOOK 397-311.

THIS DEED is being executed in accordance with "In re CCA Partnership v. Director of Revenue, State of Delaware, 70 B.R. 696 (Bkrtcy.D.Del. 1987) as a transfer tax free conveyance.

**In Witness Whereof,** the said party of the first part has hereunto set hand and seal , the day and year aforesaid.

Signed, Sealed, Delivered and Witnessed in the Presence of

................................    *Lewis S. Lowe*                    (SEAL)
                                    LEWIS S. LOWE

................................    *Bonnie K. Lowe*                  (SEAL)
                                    BONNIE K. LOWE

................................                                     (SEAL)

................................                                     (SEAL)

PURCHASERS REPORT
MADE THIS DATE

JAN 19 1994

**State of Delaware,**        }
**County of Sussex**          } ss.

ASSESSMENT DIVISION
OF SUSSEX CTY.

**Be It Remembered,** That on
this            144            day of  JANUARY        19 94
personally came before me the Subscriber,

a Notary Public for the State and County aforesaid,

LEWIS S. LOWE and BONNIE K. LOWE, husband and wife,

part ies to this Indenture, known to me personally to be such, and
acknowledged this Indenture to be their act    they

GIVEN under my Hand and Seal of office, the day and year aforesaid.

9% JAN 18 AM 10:46                              *Paula K. Gunson*
RECORDER OF DEEDS                              PAULA K. GUNSON, Notary Public
SUSSEX COUNTY                                  MY COMMISSION EXPIRES 9-15-97

David T. Buchanan
Rts 2 Box 301 st
Laurel Del 19956
8/12/94

**20354**　　BOOK **1747** PAGE **272**

TAX MAP # *3-32-9.00-15.00*
Prepared By: Fuqua, Yori & Rogers
P. O. Box 760
Seaford, DE 19973

# This Deed, Made this

day of　　　　October　　　　19 90

BETWEEN,　　　JAMES W. WHITE and KAY M. WHITE, his wife, of
1010 Georgetown Road, Laurel, Delaware, 19956,
parties of the first part,

-AND-

DAVID J. BUCHANAN and BARBARA H. BUCHANAN, his
wife, of P. O. Box 82, Cheswold, Delaware, 19936,
parties of the second part,

**Witnesseth,** *That the said party* 　 *of the first part, for and in consideration of the sum of*

----------------ONE DOLLAR--------- 　 *lawful money of the United States of America,*

*the receipt whereof is hereby acknowledged, hereby grants* 　 *and conveys* 　 *unto the said*

*party of the second part.*

# ALL

that certain tract, piece or parcel of land situate, lying
and being in Little Creek Hundred, Sussex County, Delaware, more
particularly described as follows, to wit:

Beginning at monument set on the westerly side of Co. Rd. 458
(50 feet wide) at a corner for lands now or formerly of Phillip R.
Colson, said monument also being located 598 feet, more or less, from
Co. Rd. 464; thence with the westerly side of Co. Rd. 458 the following
three courses and distances: (1) South 15 degrees 44 minutes 00 seconds
West 57.98 feet to a point; (2) on a curve having a radius of 647.66
feet, an arc distance of 224.30 feet on a chord bearing South 09 degrees
12 minutes 00 seconds West a distance of 223.19 feet to a point; and
(3) South 00 degrees 32 minutes 23 seconds East 318.01 feet to an iron
stob found on the westerly side of Co. Rd. 458 at a corner for lands
now or formerly of Beulah Applegate; thence with the line of lands
of said Applegate the following three courses and distances: (1) South
66 degrees 54 minutes 37 seconds West 466.00 feet to an iron stob found;
(2) South 89 degrees 41 minutes 18 seconds West 42.86 feet to an iron
stob found; and (3) North 29 degrees 55 minutes 07 seconds West 40.99
feet to a monument found at a corner for lands of said Applegate and
for lands now or formerly of Nathan Hudson; thence with the line of
lands of said Hudson, South 75 degrees 07 minutes 38 seconds West 1477.61
feet to a monument found in the line of lands of said Hudson at a corner
for lands now or formerly of Phillip R. Colson; thence with the line
of lands of said Colson, North 13 degrees 25 minutes 07 seconds West
650.53 feet to an iron stob found at a corner for lands of said Colson
and for lands now or formerly of David Lietzan; thence with the line
of lands of said Lietzan the following three courses and distances:
(1) South 69 degrees 44 minutes 29 seconds East 219.06 feet to a point;
(2) North 74 degrees 27 minutes 06 seconds East 201.47 feet to an iron
stob found; and (3) North 73 degrees 35 minutes 19 seconds East 1237.35
feet to a monument found at a corner for lands of said Lietzan and

4143 333　　11/ 1/90　　TR-TX　CO　730.00

FUQUA, YORI & ROGERS
ATTORNEYS AT LAW
THE CIRCLE
GEORGETOWN, DELAWARE 19947

BOOK 1747 PAGE 273

for lands of said Colson; thence with the line of lands of said Colson,
North 73 degrees 15 minutes 20 seconds East 556.50 feet to the point
and place of beginning, containing 26.28 acres of land, more or less,
as will more fully and at large appear upon reference to a survey
prepared by Gene R. Littleton & Assoc., PLS 355, dated November 1988,
revised October 1990 and filed for record in the Office of the Recorder
of Deeds, Georgetown, Delaware, in Plot Book 45, page 136.

Being the same lands conveyed to James W. White and Kay M. White,
his wife, by deed of Phillip R. Colson and Dorotha M. Colson, his wife,
dated January 9, 1989, filed for record in the Office of the Recorder
of Deeds, Georgetown, Delaware, in Deed Book 1626, page 1.

PURCHASERS REPORT
MADE THIS DATE

NOV 02 1990

ASSESSMENT DIVISION
OF SUSSEX CTY.

**In Witness Whereof,** *the said party of the first part has hereunto set hand*
*and seal , the day and year aforesaid.*

Signed, Sealed, Delivered and Witnessed
in the Presence of

.............................................  James W. White ................... (SEAL)

.............................................  Kay M. White ................... (SEAL)

.............................................  ................................... (SEAL)

.............................................  ................................... (SEAL)

**State of Delaware,**
**County of Sussex** } ss.

**Be It Remembered,** *That on*
this 30th day of October 1990
*personally came before me ,* the Subscriber,
a Notary Public for the State and County aforesaid,

JAMES W. WHITE and KAY M. WHITE, his wife,

part ies to this Indenture, known to me personally to be such, and they
acknowledged this Indenture to be their Deed.
GIVEN under my Hand and Seal of office, the day and year aforesaid.
DOC. SURCHARGE PAID
Paula K. [signature]
90 NOV -1 PM 1: 12          PAULA K. JOHNSON Notary Public
RECORDER OF DEEDS          MY COMMISSION EXPIRES 9-17-95
SUSSEX COUNTY

m/m David J. Buchanan
P.O.B. 82
Sheawold, Del   11-16-90

⑤

THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| Barbara H. Richards<br>(f/k/a Barbara H. Buchanan), | : | File No.    CS94-3107 |
| | : | Petition No.  03-00932 |
| *Glynis Gibson, Esquire* | : | |
| | : | |
| v. | : | |
| | : | |
| David J. Buchanan | : | ORDER OF LIMITATIONS |
| | : | |
| *Pro Se.* | : | |
| | : | |

This Court entered a divorce between the above-named parties on August 06, 2003. The parties' surviving child, Heidi M. Buchanan, born March 10, 1988, is now over the age of 18.

The Court issued its final Decision and Order dividing the marital property and resolving claims as to Husband's request for alimony on April 04, 2006. The Court issued its Order on attorney's fees and costs on July 18, 2006.

Since the issuance of the aforementioned Orders, Husband has filed numerous pleadings with this Court and other courts, including appeals to the Delaware Supreme Court, all of which have been unsuccessful. Husband's pleadings have been frivolous and without merit. Husband's pleadings have been malicious with an intent simply to delay the final resolution of pending matters and to harass Wife.

Ext-A

The Courts of the State of Delaware put forth there best efforts to give the citizens of Delaware, as well as others, a forum in which to litigate their appropriate legal claims that have a jurisdictional basis within the State of Delaware. The Courts of the State of Delaware intend to give a litigant their fair day in court. The Courts of the State of Delaware are also busy in attempting to provide fair and appropriate time to serve these purposes to all who come before the Courts.

David J. Buchanan has had his day in the Family Court of the State of Delaware. Unfortunately, David J. Buchanan has abused his privileges in this Court with his numerous, frivolous, meritless, and malicious filings which have exceeded the privileges to which he is entitled. His excesses have been to the detriment of the time, emotions, and expense of his ex-wife, and also to the detriment of the attorneys who have come before this Court not only representing their clients, but as officers of the Court. He has even filed petitions against police officers for their performance of their necessary public duties. Mr. Buchanan's numerous filings in this Court continue to take up time which the Court should be spending on other deserving litigants.

Accordingly, the Court has taken the time to examine the files and pending petitions, and to issue this Order in the interest of justice to define what can and cannot come before this Court from David J. Buchanan in the future.

The Court's property division Order of April 04, 2006, was a final Order. The property division Order, however, required the additional accomplishment of the sale of two parcels of real estate: the unimproved farm land, and the

2

residential real estate. Once the real estate was sold, which the Court understands has not yet occurred, the distribution of the proceeds of settlement were defined by the property division Order. The final distribution formula set forth in the final property division Order of April 04, 2006, was also subject to the later adjustment of the Court's Order regarding attorney's fees and costs issued July 18, 2006.

The Court's property division Order also directed the parties to divide their military pensions pursuant to a Qualified Domestic Relations Order or some type of similar military required allocation order using what Delaware calls a Cooper Formula with a 50% multiplier. The Court does not know whether that has ever been accomplished, but suspects it has not.

Pursuant to the Court's property division Order of April 04, 2006, all other matters pertaining to the division of property and assignment of debts was accomplished and resolved including a denial of Husband's claim for alimony, as well as a division of other personal property belonging to the parties as listed in their 16c pre-trial asset reports and as argued at trial. This included Husband receiving the 1994 Honda Accord, the Ford F-250 Pickup, and the 1968 Chevy truck. Husband was further assigned the John Deere 4640 tractor, the John Deere 5400 tractor, the John Deere 700 corn planter, the disc, and miscellaneous tractor equipment. The Court also awarded Husband the stock ownership of Buchanan Farms, Inc. The Court also awarded Husband the irrigation system, the liquid fertilizer tank/pump, and the farm supplies and tools.

Since issuing these Orders which divided the property and award Wife attorney's fees and costs against Husband, the real estate has yet to sell, mainly because of Husband's lack of cooperation. This lack of cooperation has caused the Court to sign Orders on two different occasions permitting the Clerk of the Family Court to execute documents of sale in Husband's name.

Almost two years following the Court's property division Order of April 04, 2006, and also coming after the Supreme Court of the State of Delaware affirmed that decision, Husband filed a petition for a protection from abuse order in January of 2008 against Wife. The basis of Husband's request for a protection from abuse order against Wife resulted from Wife entering upon the former marital real estate for purposes of readying the real estate for sale, at which time Wife allegedly removed certain items of personal property allegedly belonging to Husband. Around this same time, Husband also filed a motion for rule to show cause based on many of the same allegations as he raised in his protection from abuse petition. Husband also filed a motion to clarify the property division Order issued by the Court nearly two years earlier and upheld and affirmed by the Supreme Court.   Husband included in his protection from abuse petition allegations against William A. Wallace, a member of the Delaware State Police. Along with these multiple filings, Husband issued subpoenas attempting to bring to Court various individuals, including attorneys, who have represented or assisted Wife in the past.

In an Order of February 01, 2008, the Court dismissed any and all claims Husband was bringing in the Family Court against Delaware State Police Officer

4

William A. Wallace.    The Family Court had no jurisdiction to consider these allegations.

A Commissioner of this Court, when reviewing the protection from abuse petitions filed by Husband, dismissed those petitions without prejudice. The Commissioner instructed Husband to pursue the appropriate action to possibly have Wife found in contempt of the property division Order.  As appropriately noted by the Commissioner, it would not have been in the interest of judicial economy to have the Commissioner determine whether or not certain property belonged to Husband or Wife when the issue had been previously determined through lengthy litigation before this Judge.

At this point in time, the Court does not believe Husband has followed the Commissioner's direction to pursue filing a rule to show cause petition alleging Wife's contempt of the property division Order.  Because of his failure to file along with his rule to show cause petition an affidavit the Court had required in all of Husband's filings[1], Husband's rule to show cause petition was dismissed by Order dated February 01. 2008.  Noting the numerous filings made by Husband even since January of 2008, it may be possible that Husband has filed another petition accompanied by a proper affidavit.  It appears that such a filing was likely made by Husband on March 06, 2008, in which he requests relief from the judgment entered by this Court, which the Court assumes is the property division Order of nearly two years previous.

Husband alleges in paragraph six of his motion for relief from judgment filed March 06, 2008, that Wife, with the assistance of others, including police

5

officer William A. Wallace, removed property and business records, money, checks, identification, license, physicals, and passports belonging to Husband. In paragraph seven of this filing, Husband also alleges that Wife, with the assistance of others, removed property including a 1975 Remington 1100 Mag lightweight 20 gauge shotgun, a F-250 Ford pick-up vehicle, livestock, investments, artwork, and other property including dive equipment, fishing tackle, exercise equipment, medication, law reference materials, technical reference and engineering standards, equipment calibration documents, nuclear license, and an assortment of tools necessary for the plaintiff to provide for himself. In paragraph ten of this filing, Husband alleges that he is entitled to military benefits identified as property. Indeed, the Court directed the parties in its property division Order of April 04, 2006, to divide their military pensions pursuant to the formula set forth in that Order.

In his pleading for relief from judgment filed March 06, 2008, Husband includes and seeks action against others besides his ex-wife, including Wife's present husband, David J. Richards; Wife's mother, Betty Saunders; Delaware State Police detective William A. Wallace; and attorneys Thomas E. Gay, Esquire, James B. Tyler, Esquire, Glynis Gibson, Esquire, Kristin S. Gibbons, Esquire, John Brady, Esquire, William Wilgus, Esquire, and John Sandy, Esquire.

The Court's role in a marital property division is to assign and distribute marital property and debts. Except for the F-250 Ford pick-up vehicle, most, if not all, of the other items Husband has alleged in his March 06, 2008 petition that Wife took from the former marital residence were not listed as items in

6

controversy when the matter came before the Court almost two years ago for the division of property. Furthermore, the division of personal property was accomplished at that time, wherein Husband was awarded certain specific items of personal property of which he was already in possession. There was no item of personal property identified in the pleadings or trial on the property division matter which required Wife to take action to turn over to Husband. The F-250 truck was in his possession at the time of the Court's property division Order. If Wife had been in possession of the F-250 vehicle when the marital property division Order awarded the vehicle to Husband, and if Wife failed at that time to turn the F-250 vehicle over to Husband, Wife would have been in contempt of the Order. But the presently alleged taking of the F-250 vehicle, almost two years later, is not within the jurisdiction of the Family Court to resolve. Accordingly, there is no basis for Husband at this time to seek action against Wife in the Family Court for her alleged violation of the Court's Order dividing and distributing their marital property and debts.

This Court also has no jurisdiction to pursue any actions or claims by Husband against the numerous third parties against which Husband seeks action in addition to his ex-wife. This Court will not entertain any further petitions or claims against any of these third parties against which Husband attempts to seek recovery. This Court simply does not have jurisdiction to pursue those matters, even if they had a legitimate basis. Furthermore, Husband's pleadings, wherein he attempts to subpoena and use the testimony and records of these third party individuals to produce evidence suggesting fraud against Wife are not supported

by any supportable evidence which would permit this Court to open the door for such a fishing expedition. The time has passed for Husband to be able to reopen the Court's Decision on property rendered now over two years ago.

As to the division of military benefits, the Court has already recognized the marital property interest of each of the parties in the other's military pension, and given direction for those parties to prepare those necessary allocation orders. Husband's present claims seem to go beyond simply the pension benefits, which are the only military benefits addressed in the property division proceedings.

Accordingly,

IT IS HEREBY ORDERED:

1.    The Court will no longer accept any petitions from David J. Buchanan which attempt to set aside, clarify, or reopen the property division Order of this Court dated April 04, 2006, or the Order for attorney's fees and costs of this Court dated July 18, 2006.

2.    The Court will no longer accept any petitions filed by David J. Buchanan which seek relief against any individual or agency other than his former wife, Barbara Richards, formerly known as Barbara Buchanan.

3.    The Court will no longer accept any petitions by David J. Buchanan which may relate in any way whatsoever to a claim of personal property which David Buchanan claims he owned and was taken by Barbara Richards following the date of their property division Order of April 04, 2006.

8

4.      The Court will no longer accept any applications by David Buchanan
        concerning the division of their military benefits, except as to the
        division of their respective military pensions, and only after Mr.
        Buchanan can provide satisfactory proof that he has attempted to
        prepare and submit to Barbara Richards for her approval and
        signature the necessary forms to accomplish the transfer of pension
        interests to each other according to the formula established in the
        Court's property division Order of April 04, 2006.

5.      As to the two parcels of real estate which are to be sold pursuant to
        the Court's property division Order, being the farm land and the
        adjacent residential property, the Court expects that these properties
        will move forward to final settlement, and that the proceeds from that
        sale shall be held in escrow by the settlement attorney pending an
        Order from this Court directing how those funds should be
        distributed. Following the sale and prior to distribution, the Court will
        accept from Wife or her attorney a proposed distribution schedule of
        the net proceeds from the sale of the real estate pursuant to a
        motion properly filed, to which Mr. Buchanan shall have the
        appropriate time to respond to that proposed distribution schedule.

6.      The Court will also accept at the same time as Wife or her attorney
        files a motion for distribution with the Court an application for
        additional attorney's fees and costs incurred by Wife since the award
        of attorney's fees in the Court's Order of July 18, 2006. The motion

the sale of the real estate, the Court will consider any additional attorney's fees and costs to which Wife may be entitled due to Husband's frivolous, meritless, and malicious filings and conduct.

IT IS SO ORDERED THIS 16th day of July, 2008.

JOHN E. HENRIKSEN, JUDGE

JEH:tmp

pc:    Glynis Gibson, Esquire
       David Buchanan
       File

Date Mailed:    7/16/2008

---

[1] The Court's Order of March 29, 2004, required Husband's pleadings to be accompanied by an affidavit according to DEL. CODE ANN. TIT. 10, § 8803 (e).



IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | | | |
|---|---|---|---|
| BARBARA H. BUCHANAN, | : | File No.: | CS94-3107 |
| | : | CPI No.: | 03-00932 |
| Petitioner/Movant, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| DAVID J. BUCHANAN, | : | | |
| | : | | |
| Respondent/Movee. | : | | |

**SECOND MOTION PURSUANT TO FAMILY COURT
CIVIL PROCEDURE RULE 70(a)
TO COMPEL EXECUTION OF CONTRACT OF SALE
OF REAL PROPERTY AS REQUIRED BY DECISION
AND ORDER OF PROPERTY DIVISION DATED APRIL 4, 2006**

COMES NOW, the Petitioner, BARBARA H. BUCHANAN, by and through her attorney, Glynis Gibson, Esquire, of Gibson & Nowak, and hereby moves this Honorable Court for relief pursuant to Family Court Civil Procedure Rule 70(a) as follows:

1.    The Decision and Order of Property Division dated April 4, 2006, specifically pages 21 through 22 of said Order, provides that the farm property, more specifically described as 89.2023 acres of land, Tax Parcel 46.03 on Map 19.00 in District 2-32, and the home property more specifically as described as Tax Parcel 3-32-9, Parcel No.: 15.06, (also known as 34806 Hudson Road, Laurel, DE), being 26.28 acres and improved by a home dwelling and metal barn, would be immediately listed for sale with Cooper Realty under such terms and conditions as Cooper Realty would direct for the sale of said property.

2.    Both parties were required to cooperate in executing any necessary documents for the completion of the sale, and in the event either party failed to cooperate, a Motion could be filed with the Court seeking an Order authorizing the Clerk of the Court to execute any necessary documents in completing the listing, sale, and eventual transfer of the property.

ext B

3.     The record in this matter is replete with documentation confirming Respondent's refusal to cooperate with the listing of the aforesaid property, including an Order signed by this Court dated February 5, 2007 to evict or exclude Respondent from the property, as well as a request for clarification of that Order to include the assistance of law enforcement in carrying out this Court's mandate.

4.     Attached hereto as Exhibit "A" and made a part hereof are the following:

    A.     Agreement of Sale for Delaware Residential Property for the real property known as Tax Parcel 3-32-9, Parcel No.: 15.06, also known as 34806 Hudson Road, Laurel, DE, being 26.28 acres and improved by a home dwelling and metal barn for a purchase price of $275,000.00 cash, dated March 25, 2008;

    B.     Addendum regarding Agency Relationships dated March 24, 2008;

    C.     Agreement of Sale for Delaware Residential Property for the real property known as Tax Parcel 2-32-19, Parcel No.: 46.036, being 89.2 acres on Pepper Pond Lane, Laurel, DE for a purchase price of $225,000.00 cash, dated March 25, 2008;

    D.     Addendum regarding Agency Relationships dated March 24, 2008;

    E.     Addendum to Contract of Sale Buchanan & Richards to Hudson Road Property, L.L.C.

5.     Respondent has been sent these documents for his review on May 8, 2008. Prior to the time of his recent incarceration his exact address was unknown and he has been excluded from the former marital residence since February 5, 2007, although he never provided a change of address.

6.     In fact, Respondent is currently incarcerated at Sussex Correctional Institution stemming from charges concerning his violation of this Court's Orders, among other matters.

7.      No response has been received from Respondent with respect to these offers of sale, and it has been extremely problematic getting documents to him for his review, as up until recently he was incarcerated in the State of Maryland awaiting extradition to the State of Delaware.

8.      The properties which are the subject of the real estate contracts were ordered to be listed for sale by this Court in April of 2006, in excess of two (2) years ago.

9.      The Contracts are for cash sales and the Buyers are ready, willing and able to go forward with the purchase of these properties.

10.      Pursuant to this Court's Order of April 4, 2006, significant monies are owed to Petitioner from these proceeds of sale, including child support arrears and a garnishment on her wages for a joint obligation to which Respondent has made no contribution as well as attorneys fees.

11.      Petitioner specifically requests that this Court authorize the Clerk of the Court to execute not only the Agreement of Sale for the aforesaid properties, but the Deeds conveying the property to the Buyers with requirement that the Deeds be held in escrow until payment of the purchase price by Buyers to Sellers.

12.      Petitioner further requests that any and all monies resulting from the sale of these properties be held in escrow by the settlement attorney until an Order has been signed by this Court setting forth proper disbursement to the parties.

13.      Given the clear refusal of Respondent to cooperate with executing the attached sales contract and other documents necessary to sell the property, it is necessary for the Clerk of the Court to sign same, as well as execute Deeds for the conveyance of the properties to the Buyers.

14.      Without assistance from this Court, this Court's Property Division Order, now some two (2) years in existence, will continue to be defied by Respondent.

WHEREFORE, Petitioner prays:

1.    That this Motion be GRANTED;

2.    That this Court sign an Order directing the Clerk of this Court to execute the attached Contract of Sale and other documents for sale of the properties known as Tax Parcel 3-32-9, Parcel No.: 15.06, (also known as 34806 Hudson Road, Laurel, DE), being 26.28 acres and Tax Parcel 2-32-19, Parcel No.: 46.036, being 89.2 acres on Pepper Pond Lane, Laurel, DE, together with any necessary Deeds or Transfer Affidavits.

3.    That any and all proceeds resulting from the sale of these properties be held in escrow by the settlement attorney until an Order of disbursement has been signed by this Court.

4.    That Respondent be required to contribute to attorney's fees and Court costs incurred by Petitioner for this necessary action;

5.    And for such other and further relief as this Honorable Court may seem just and proper.

Respectfully submitted:

GIBSON & NOWAK

BY: _____
GLYNIS GIBSON, ESQUIRE
110 North Main Street
Suite A, Spruce Acres
Camden, Delaware 19934
(302)698-3500
*Attorney for Petitioner*

DATED: _5/13/08_

04/04/2008 14:17   3026294520              PAGE 03/21

**REALTOR®**    **EQUAL HOUSING OPPORTUNITY**    1

## AGREEMENT OF SALE for DELAWARE RESIDENTIAL PROPERTY

*This is a legally binding agreement; if not understood, seek competent legal advice prior to signing.*

THIS FORM IS DESIGNED AND INTENDED FOR THE SALE AND PURCHASE OF RESIDENTIAL REAL ESTATE LOCATED IN THE STATE OF DELAWARE

**1. PARTIES.**
SELLER: David J Buchanan & Barbara H. Buchanan (Richards)

Address: 5490-C, Fechet Lane, Washington, D.C. 20332

BUYER: Hudson Road Property, L.L.C.

Address: 9 N. Front Street, Georgetown, DE

**2. PROPERTY.** Buyer hereby agrees to purchase from Seller and Seller agrees to convey to Buyer that Property identified as TAX PARCEL # 3-32-9 Parcel # 15, 06

being situated in Sussex County, Delaware and further identified as:
34806 Hudson Road Laurel, DE, being 26.28 Acres and improved by a Home Dwelling and a Metal Barn

**3. PAYMENT TERMS.**

A. PURCHASE PRICE    $ 275,000.00
To be paid as follows:

B. DEPOSIT UPON SIGNING THIS AGREEMENT    $ 5,000.00
In the form of ☒ Check ☐ Cash ☐ Other

C. ADDL. DEPOSIT DUE WITHIN n/A DAYS OF ACCEPTANCE    $ _____

D. BALANCE OF PURCHASE PRICE (A minus B & C)    $ 270,000.00
(Loan Balance, if any, plus remaining Down Payment)

All sums deposited by Buyer prior to the time of final settlement shall be placed in a *non-interest bearing escrow account* with Listing Broker ("Escrow Broker") unless otherwise specified in this Agreement. Any funds delivered to the Escrow Broker within 15 calendar days of settlement shall be certified funds. Funds paid by Buyer at settlement shall be in cash, certified check, cashiers check, treasurer's check, wire transfer or a Delaware attorney's escrow check. Seller's net proceeds shall be paid by check from the settling attorney's escrow account unless other arrangements are made with the attorney.

**4. INCLUSIONS/ EXCLUSIONS.** Unless specifically excluded by this Agreement the purchase price shall also include the following, as and if now installed, stored in, or located on the Property: all presently existing plumbing, heating, electrical and central air conditioning systems; and all other permanent or attached fixtures including but not limited to, all existing shutters, awnings, wall to wall carpeting, radiator covers, cabinets, shelves, mirrors fixed in place, attic/exhaust fans, lighting and plumbing fixtures, and landscaping.
Certain other now existing items which may be considered personal property, whether installed or stored upon the property, are included, as follows **[if neither column is checked, item shall be considered excluded]**:

| YES | NO | | YES | NO | | YES | NO | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | Oven or Range | ☐ | ☐ | Window A/C Units # ___ | ☐ | ☐ | Draperies/Curtains |
| ☐ | ☐ | Cooktop | ☐ | ☐ | Smoke Detectors | ☐ | ☐ | Drapery/Curtain rods |
| ☐ | ☐ | Wall Oven(s) # ___ | ☐ | ☐ | Fireplace Equipment | ☐ | ☐ | Shades/Blinds |
| ☐ | ☐ | Refrigerator(s) # ___ | ☐ | ☐ | Fireplace Screen/Doors | ☐ | ☐ | Cornices/Valances |
| ☐ | ☐ | with icemaker | ☐ | ☐ | Electronic Air Filter | ☐ | ☐ | Sheds/Outbuildings # ___ |
| ☐ | ☐ | Freezer | ☐ | ☐ | Attic fan | ☐ | ☐ | Playground Equipment |
| ☐ | ☐ | Dishwasher | ☐ | ☐ | Whole house fan | ☐ | ☐ | Wood Stove |
| ☐ | ☐ | Disposal | ☐ | ☐ | Window Fan(s) # ___ | ☐ | ☐ | Satellite Dish |
| ☐ | ☐ | Microwave | ☐ | ☐ | Ceiling Fan(s) # ___ | ☐ | ☐ | with controls & Remote(s) |
| ☐ | ☐ | Washer | ☐ | ☐ | Central Vacuum | ☐ | ☐ | Fuel Storage Tank(s) (owned) |
| ☐ | ☐ | Clothes Dryer | ☐ | ☐ | with attachments | ☐ | ☐ | Fuel Storage Tank(s) (leased) |
| ☐ | ☐ | Bathroom Vents/Fans | ☐ | ☐ | Intercoms | ☐ | ☐ | Security Systems (owned) |
| ☐ | ☐ | Trash Compactor | ☐ | ☐ | Solar Equipment | ☐ | ☐ | Security Systems (leased) |
| ☐ | ☐ | Water Conditioner (owned) | ☐ | ☐ | Attached Antenna/Rotor | ☐ | ☐ | Fire detecting equip (owned) |
| ☐ | ☐ | Water Conditioner (leased) | ☐ | ☐ | Range Hood-exhaust fan | ☐ | ☐ | Fire detecting equip (leased) |
| ☐ | ☐ | Water Filter | ☐ | ☐ | Garage Opener(s) # ___ | | | |
| ☐ | ☐ | Water Heater | ☐ | ☐ | with remote(s) # ___ | | | Other Items Included/Excluded |
| ☐ | ☐ | Sump Pump | ☐ | ☐ | Pool Equipment | | | |
| ☐ | ☐ | Storm Windows/Doors | ☐ | ☐ | Pool cover | ☐ | ☐ | _____ |
| ☐ | ☐ | Screens | ☐ | ☐ | Hot Tub, Equipment | ☐ | ☐ | _____ |
| ☐ | ☐ | Furnace Humidifier | ☐ | ☐ | with cover | ☐ | ☐ | _____ |
| ☐ | ☐ | Furnace De-Humidifier | | | | | | |

✱ being sold with all attached fixtures in house and barn on 3/22/2008 in " As Is " Condition

Seller's Initials _BR_      Buyer's Initials ___

©copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

**ADDITIONAL INCLUSIONS**
(Specify): _Any + all Attached Fixtures & Appliances As of 3/22/2008 "As Is" Condition_

**ADDITIONAL EXCLUSIONS**
(Specify): _None_

All property sold by this Agreement is called the "Property". No items shall be replaced or substituted without prior written approval of all parties.

**5. RENTAL/ LEASE.** The property ☐ is ☒ is not subject to an existing rental/leasing agreement. Seller will not alter any existing agreement nor enter into any new lease agreement without Buyer's written consent, and will assign all existing leases and transfer security deposits to Buyer at final settlement.

**6. FINANCING CONTINGENCY.**

(a)   Buyer's obligation to purchase the Property shall be contingent on Buyer's ability to obtain mortgage financing pursuant to the terms set forth below. Each of the terms below as applicable shall be deemed essential to this financing contingency and the Buyer shall not make application for any mortgage financing the terms of which would differ or deviate from the requirements set forth below that would be adverse to the Seller's interest without the Seller's express prior written consent. The interest rate shall be at the prevailing rate. Should, after Buyer makes application consistent with the terms set forth below, and has diligently and in good faith pursued that application, any commitment for mortgage financing that may be issued deviate from one or more of such terms, and the Buyer elects not to accept the financing thus offered, or the application is denied, the Buyer may, at the Buyer's sole election, void this Agreement, in which event all deposits will be returned to buyer.  The terms of mortgage financing are the following:

Type of financing: _CASh_          Loan Amount: _h/A_

Term in years: _n/A_          Maximum loan to value ratio: _n/A_

Final date for receipt of mortgage commitment (the "Commitment Date"): _n/A_

(b)   Buyer will make written application in a manner consistent with that provided for above within _____ calendar days of the effective date of this Agreement, and shall use their best efforts and diligently pursue such financing and promptly file any supplemental information, papers and/or other material that may be requested or required from time to time by the lender. If Buyer fails to make application as specified above, then Seller may declare Buyer in default of this Agreement by tendering written notice of that election to the Buyer at any time prior to the Buyer making application consistent with the terms set forth above. Should Seller elect to declare Buyer in default before such application is completed, the Seller shall have available all the remedies set forth in this Agreement.

(c)   The Buyer shall provide the Seller, or the Seller's Designated Agent, with a copy of any loan commitment or rejection within 3 calendar days of receipt. If a commitment consistent with the terms set forth above, or one that differs from those terms which is nonetheless acceptable to the Buyer is obtained, and said commitment (1) imposes financial obligations upon the Seller which the Seller has not previously agreed to pay, and does not then agree to pay, and/or (2) is contingent upon the sale of any real or personal property owned by the Buyer, then Seller may within 5 calendar days after receipt of a copy of the commitment, cancel this Agreement in writing, and all deposit money shall then be returned to Buyer in accordance with provisions of this Agreement. If such notice is not given, Seller shall be deemed to have accepted said condition(s).

(d)   If a written mortgage commitment is not obtained by the Commitment Date, Seller shall from that time forward have the right to void this Agreement by tendering written notice of that election to the Buyer or the Buyer's Designated Agent provided, however, that if written mortgage commitment is received after the Commitment Date and prior to any such written notice of termination, then this Agreement shall remain in full force and effect, and the Seller's right to void this Agreement for failure to meet the Commitment Date shall be deemed waived. If the Seller elects to terminate as set forth in this paragraph, and the Buyer is not then otherwise in default of the terms of this Agreement, all deposit money shall be returned to the Buyer in accordance with the terms of this Agreement. If Buyer at that time claims that the mortgage application resulted in a denial of that application, and has not provided a copy of that rejection in a timely fashion as set forth in paragraph (c) above, the failure to provide a copy of that letter as required herein shall be deemed a default by the Buyer.

**7. SETTLEMENT.** Unless otherwise mutually agreed, final settlement shall be held in _Sussex_ County, Delaware on _may 1, 2008 may 15, 200 8_, or before if mutually agreed upon, at which time possession shall be given and Seller shall deliver all keys in Seller's possession or under Seller's control. It is expressly agreed if a longer time is necessary to secure a survey, or to prepare the necessary legal and financial settlement documents, the date of settlement shall be extended for a reasonable time to effect these conditions.

Seller's Initials _BR_ ____    Buyer's Initials ____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

3

8.   TIME IS OF THE ESSENCE.  Other than final settlement, time is of the essence in this Agreement. Time is of the essence means that the dates and time frames agreed by the parties must be met. Failure to meet stated dates or time frames may result in waiver of contractual rights or default under the terms of this Agreement.

9.   CONVEYANCE.  The Seller acknowledges that the property is to be conveyed (check one) ☒ IN FEE SIMPLE;  ☐ COOP OWNERSHIP; or ☐ LEASEHOLD SUBJECT TO AN ANNUAL GROUND RENT, in the amount of $_____

10.   DISBURSEMENT OF DEPOSITS.  The parties to this Agreement agree that deposit monies held on account as specified herein shall only be disbursed under one of the following conditions:
    A.   Upon final settlement hereunder; OR
    B   Upon a release being signed by all parties to the transaction authorizing disposition of these funds; OR
    C.   Upon the filing of an interpleader action in the proper court, thereby causing these funds to be deposited with the court; OR
    D.   At such time as one of the parties to the transaction files suit and the court orders the disbursement of these funds.

Buyer and Seller agree that upon payment of deposit monies into court, neither Buyer nor Seller shall have any further right, claim, demand or action against Escrow Broker regarding the return or disposition of the deposit monies.

11.  TRANSFER TAXES;  PRO-RATIONS; HEATING FUEL.  Applicable transfer taxes, transfer fees, and/or motor vehicle document fees shall be paid one-half by Buyer and one-half by Seller, except that any exemptions shall benefit only the exempt party. Taxes, special assessments, ground rent, water, sewer, electric and other lienable charges imposed by the State of Delaware, any political subdivision thereof, any school district, neighborhood association and/or condominium common expenses shall be apportioned pro-rata at the time of final settlement. as shall the rents and pre-paid operating expenses if Property is sold subject to a lease, and all security deposits shall be delivered to Buyer at time of settlement. Buyer shall pay Seller at settlement for any heating fuel purchased by Seller and left on Property. Buyer is advised that some propane tanks located on residential properties are leased and ownership of the tank may not be transferred to Buyer as part of this agreement.

☐ Seller ☒ Buyer shall pay for deed preparation. Buyer shall pay all other customary settlement charges and lending costs including survey.

12.  TITLE.  Title is to be good and marketable either fee simple absolute conveyed by Deed of Special Warranty or Lease-hold Estate conveyed by assignment of the existing lease, as applicable. Insurable for both owners and lenders coverage at regular rates by a title insurer duly licensed to issue title insurance in the State of Delaware, clear of any liens and encumbrances, except restrictions of record and existing easements generally applicable to properties in the immediate neighborhood or the subdivision in which the property is located. Title shall also be delivered without encroachments or violations of restrictions, zoning or subdivision regulations unless disclosed by Seller on the Seller's Disclosure of Real Property Condition Report.  If title objections are raised, Seller shall have 30 days from the date Seller is notified to cure the same, and the settlement date shall be extended accordingly.  If objections are not satisfied by the extended settlement date, this Agreement shall terminate and all deposit monies shall be refunded to Buyer and all reasonable legal, loan, survey, and inspection fees incurred by the Buyer will be paid by the Seller, unless Buyer elects to waive the unsatisfied objections and complete the purchase.  Seller may use the purchase price payable to Seller at settlement to discharge liens and encumbrances of record in fixed and ascertainable amounts.

13.  NOTICE/DELIVERY OF DOCUMENTS.  In this paragraph, the word "Agreement" includes offers, counteroffers, addenda or any other notice or agreement between the parties.  All agreements shall be in writing.  Verbal or written communication between the parties or the parties' Designated Agents that this Agreement has been signed and ratified shall be binding on all parties and such verbal notice shall constitute delivery.  Written communication shall be effective when sent. A facsimile, electronic record with electronic signature, or photocopy of a signed agreement shall constitute an original. The Buyer or Seller. If there is more than one, expressly agree that notice to one shall be notice to all.

14.  NO RECORDING.  This agreement shall not be recorded or filed in any place of public record. If Buyer does record this Agreement, or permit this Agreement to be recorded, Seller may elect to treat such act as a default and have all the remedies provided herein.

15.  FAIR HOUSING.  All Parties agree to comply with all Fair Housing and Civil Rights laws in the purchase and sale of the property and further agree specifically not to discriminate against any person because of RACE, COLOR, NATIONAL ORIGIN, RELIGION, CREED, SEX, MARITAL STATUS, FAMILIAL STATUS, AGE, and OR HANDICAP/DISABILITY.

16.  FIRPTA. Section 1445 of the United States Internal Revenue Code of 1986 provides that a Buyer of residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if; (a) the purchase price exceeds three hundred thousand dollars ($300,000.00); and (b) the Seller is a foreign person.  Unless otherwise stated in an addendum attached hereto, if the purchase price is in excess of three hundred thousand dollars ($300,000.00), Seller represents that Seller is not a nonresident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those are defined by the Internal Revenue Code and applicable regulations) and agrees to execute an affidavit to this effect at time of settlement.

Seller's Initials  BR  ____   Buyer's Initials  _____

©Copyright 2007 by Delaware Association of REALTORS® All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission.  The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright Laws.

4

**17. HOMEOWNERS WARRANTY.** Buyer and Seller are advised that Homeowners Warranties are available. A Homeowners Warranty is only part of this Agreement if Buyer or Seller agrees to purchase a warranty. Buyer and Seller are advised to request information about what is included in the warranty and what is excluded (for example, preexisting conditions) and the amount of the deductible.

**18. RISK OF LOSS.** The risk of loss or damage to the property by fire, wind storm or other casualty until settlement shall be borne by the Seller. If any part of the property is damaged or destroyed by fire or other casualty loss, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by settlement date. If Seller is unable to do so, Buyer may terminate this Agreement and the deposit monies shall be refunded to Buyer in accordance with the terms of this Agreement.

**19. CONDITION OF PROPERTY; INSPECTIONS.** The Seller will deliver the property in substantially the same physical condition as of the date of this Agreement. Seller agrees to permit access to Property by an authorized appraiser, inspector or contractor as required by the lendar or by other terms of this Agreement. Buyer shall have the responsibility of scheduling a pre-settlement inspection of Property within 48 hours of settlement to verify that Property is in the condition required by this Agreement including conditions disclosed and accepted by the Buyer elsewhere in this Agreement or by addendum. Seller is responsible for insuring that utilities are turned on during inspections, appraisals and pre-settlement inspection. Property shall be "broom clean" and free of debris at time of final settlement or occupancy (whichever occurs first).

Unless otherwise agreed to herein, the electrical, plumbing, septic system, well, heating, air conditioning, and any other electro-mechanical systems, appliances and equipment included in this Agreement of Sale shall be in operating condition at time of final settlement.  In the event of any failures of Property between the time of final acceptance and settlement, Seller shall make necessary repairs at Seller's expense, prior to settlement.
Except as expressly contained herein, no other warranties or representations have been made by the Seller or relied upon by the Buyer and upon settlement all the Seller's obligations under this Agreement shall expire. It is understood and agreed by the parties hereto the Broker(s)/Salesperson(s) assumes no responsibility for defects concerning the physical condition of the property described herein and all improvements thereon. Unless otherwise indicated herein, Buyer represents that they have made a satisfactory inspection of the property and agrees to accept the property in its present condition unless otherwise provided herein.

**20. INCLUDED CLAUSES.** The following clauses are included in this Agreement only if marked "yes" or checked. They permit Buyer to obtain an inspection of specific aspects of the Property. The purpose of any inspection is to independently evaluate the condition of the Property and identify major defects, if any. A major defect is any deficiency in a system that causes the system to perform in an unsafe manner or that prevents the system from performing its intended function. Buyer must object to any major defect identified by an inspection report by the date the report is due to Seller as listed below, or Buyer is deemed to have accepted Property with the defect and the contingency is automatically considered to be satisfied. If this Agreement is cancelled as a result of the election of any of the options below, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement of Sale. There shall then be no further obligation or liability of either party, broker or salespeople, and all monies on deposit shall be returned to Buyer in accordance with the terms of this Agreement. Buyer and Seller agree that Broker(s)/Agent(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

<u>PROCEDURES FOR INCLUDED CLAUSES 20a THROUGH 20d</u>
The following contingencies become part of this agreement if marked yes or checked. Each included contingency is subject to the terms and remedies described herein.

**20a.** N|A  **On-Site Waste/Septic Contingency.**
Buyer may have the on-site waste/septic system inspected by a licensed plumber or septic contractor of Buyer's choice at Buyer's expense, to verify that the on-site waste/septic system is in working order. Buyer must provide Seller with a copy of the written report describing any major defect. Report of major defects, if any, is due to Seller by __h|n__
(date)

**20b.** n|A  **Well Water Contingency.**
Buyer may have the water inspected by a water testing company of Buyer's choice, at Buyer's expense, to verify that the well is in working order with no major defects, and there is an absence of total coliform bacteria, and meets EPA standards for nitrate, chloride, and lead. Buyer must provide Seller with a copy of the written report containing any major defect. Report of major defects, if any, due to Seller by _____ N|A _____ (date)

**20c.** n|A  **Radon Contingency.**
Buyer may have Property inspected by a registered radon service company of Buyer's choice, at Buyer's expense, to verify that the radon level is less than 4 picocuries/liter. Buyer must provide Seller with a copy of the written report containing any evidence of higher radon levels than herein stated.  Report of major defects, if any, due to Seller by _____ h|A _____ (date)

**20d.** h|A  **Swimming Pool Contingency.**
Buyer may have the swimming pool inspected by a pool maintenance company of the Buyer's choice, at Buyer's expense, to verify that there are no major defects in the pool and equipment. Buyer must provide Seller with a copy of the written report describing any major defect. Report of major defects, if any, is due to Seller by _____ N|A _____ (date)

Seller's Initials ___BR___    Buyer's Initials ___[signature]___

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007 . This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

5

**SELLER'S DUTIES.** If Buyer provides written notice of a major defect of the above selected systems, then Seller shall notify Buyer, within 5 calendar days of Seller's receipt of Buyer's notice, whether Seller (a): intends to correct the major defect(s) at Seller's sole cost prior to settlement, (b): refuses to correct any of the major defects, or (c); offers to negotiate with Buyer about the major defects with such negotiations to be completed within 5 additional calendar days. If the negotiations are not completed in the time specified above or Seller fails to provide written notification, then this shall mean that Seller has refused to correct the defect.

**BUYER'S DUTIES.** If Seller does not elect to correct the major defect or a negotiated agreement to correct major defects is not agreed to, then Buyer must notify Seller within 5 calendar days of receiving Seller's notice whether Buyer will (a): accept Property with the defect and no reduction of price or (b): declare the Agreement null and void with all deposit money being returned to Buyer. Buyer's failure to provide written notice shall mean Buyer has accepted Property with the major defect and with no abatement of price

**21. PROPERTY INSPECTION CONTINGENCY.**     ☐ Yes  ☒ No

Report of defects and request for repairs, if any, due to Seller by _____ (date)
Other systems or items to be inspected by the home inspection company_____
Subsequent inspections and negotiations, (if any), to be completed by_____ (date)

Buyer is not purchasing a newly constructed home and the property may have minor problems associated with a previously owned property. A major defect is any deficiency in a system that causes the system to perform in an unsafe manner or that prevents the system from performing its intended function.

If "Yes" is indicated above, this Agreement of Sale is contingent upon the Buyer obtaining a property inspection and written report (the Inspection), by a home inspection company and/or by a licensed contractor of Buyer's choice at Buyer's expense. If Buyer does not choose to obtain an Inspection, or if major defects are not reported to the Seller by date specified, then Buyer has waived the Property Inspection contingency
If the home inspection discovers major defects, Buyer shall provide Seller with a written request for repairs and a copy of the relevant portions of the inspection report. The request for repairs must be made by the deadline specified. Seller shall then, in writing:

    (a)  Agree to correct any major defects at Seller's sole cost by a licensed contractor. Such work shall be completed at least two days prior to settlement and written proof of completion shall be supplied to buyers; OR

    (b)  Refuse to correct the major defects; OR

    (c)  Enter into a mutually agreeable written agreement with Buyer providing for particular repairs to the Property and/or credit to Buyer at Settlement if this is acceptable to the mortgage lender.

If the Seller refuses to correct the major defects, fails to respond in writing to Buyer's request, or an agreement about such repairs is not negotiated, then the Buyer may notify Seller in writing, no later than one day after the date for subsequent inspections and negotiations specified herein, of Buyer's intent to purchase the property in its present condition or this contract shall be null and void and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

It is understood that general statements as to the condition of the Property contained in this Agreement, such as "electrical system shall be in working order at the time of settlement," will not obligate Seller to repair items noted in the Property Inspection Report unless Seller agrees to make repairs according to the terms of the Property Inspection paragraph.

Seller will have heating/air conditioning systems and all utilities (including fuels) operative for the Inspections. Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement. However, specific actions required by this Agreement, such as "repair defective electric outlet in the kitchen," will remain part of this agreement.

Any failures of the Property occurring between the time of final acceptance and settlement shall be repaired by Seller, at Seller's expense, prior to settlement. Any subsequent inspections necessitated by the initial inspection shall be at the direction and expense of the Buyer, performed by a licensed contractor, and completed within the time frames provided herein. The Broker(s) shall not be responsible for determining the necessity of additional inspections. Buyer and Seller agree that Broker(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

**22. WOOD DESTROYING INSECT INSPECTION REPORT.** The Buyer shall procure, at Buyer's expense (unless prohibited by the type of mortgage financing, in which case it shall be procured by the Buyer at Seller's expense), a wood destroying insect inspection report (WDI) from a company holding a Pesticide Business License or an individual licensed by the Department of Agriculture as a Commercial Pesticide Applicator (Restricted Use) Category 7B Wood Destroying Pest Control (WDI Inspector). The inspection shall include the house, attached or detached garage, and improvements attached to the house or garage, but not other detached items on the property, such as (but not limited to) sheds, fences, wood piles, mulch beds, etc., unless such items are specifically listed herein. Buyer shall deliver to Seller a copy of the WDI report no later than 15 days before settlement.

    (a)  If there is no active infestation, prior infestation, prior treatment or damage from infestation, then no further action is needed by either party.

Seller's Initials  BR    Buyer's Initials  
©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

(b)  If the report indicates that there is any active infestation, prior infestation, prior treatment or damage from infestation, then Buyer may obtain an inspection to determine if the structural integrity of the property has been impaired and provide an estimate for treatment and repairs. The party who pays for the pest inspection shall pay for the structural inspection ("the first structural report") and estimate. If the first structural report states that the structural integrity has not been impaired, no repairs by the Seller shall be required.

(c)  If the cost to treat and repair damage exceeds 10% of the Purchase Price, Buyer may declare this Agreement null and void, in which case the deposit shall be returned to the Buyer in accordance with provisions in this Agreement, and each party shall be relieved of further liability to the other.

(d)  If (c) does not apply, then the Seller shall have the option of treating the infestation and having any structural impairment corrected by licensed contractors, at Seller's expense prior to settlement. Seller shall, within 5 calendar days, notify buyer in writing whether or not Seller will exercise its option to do any required work. If Seller elects to do any required work, Seller shall deliver to Buyer a written report prepared by a WDI Inspector/Licensed contractor itemizing the treatment/repairs to be made. After the treatment/repairs have been completed, Seller shall provide Buyer with a written statement from the licensed contractor certifying that the repairs required by the first structural report have been completed and the integrity of those areas is no longer structurally impaired.  This report shall be provided by settlement.  Buyer may, at Buyer's expense, hire a representative to be at the property while the Seller's contractor makes repairs.  If Seller elects not to correct or fails to provide written notice within 5 calendar days, Buyer shall have the option of proceeding to settlement without reduction of the purchase price or declaring this agreement null and void in writing and being repaid all deposit money.  Written notice of Buyer's election to declare this agreement null and void must be delivered to Seller within 5 calendar days after receiving Seller's written notice or Seller's failure to give written notice.

(e)  If Buyer does not declare this agreement null and void, there shall be no liability of Seller for the infestation or damage, no obligation of Seller to correct, no reduction of the purchase price, no credit to Buyer at settlement for the cost of correction or re-inspection and Buyer shall be responsible for any correction or re-inspection required by Buyer's lender. If this paragraph applies, the Buyer purchases the property in "as is" condition and waives all claims under this paragraph against the Seller, the Broker(s) and Salesperson(s), for any damage to the structure by wood destroying insects.

**23. ENVIRONMENTAL CONDITIONS.** Buyer is hereby advised that environmental conditions may exist about which Seller has no knowledge including but not limited to; buried fuel tanks, asbestos, radon, lead paint, and urea-formaldehyde foam insulation. Buyer may negotiate with Seller for permission to conduct environmental testing as a term or condition of this Agreement. Any agreement relating to environmental testing must be in writing and signed by both Buyer and Seller. Further information can be obtained from the following agencies: United States Environmental Protection Agency, Washington DC; Radon Health Systems Protection, Dover DE; State of Delaware Department of Health and Social Services, Dover DE; United States Consumer Products, Safety Commission, Washington DC.

**24. BUYER'S DEFAULT.** If Buyer fails to deliver any payment or additional deposit, fails to make mortgage application as specified herein, knowingly furnishes false or incomplete information to Seller, Broker or the lending institution concerning Buyer's legal or financial status, fails to cooperate in the processing of the mortgage loan application, resulting in failure to obtain a mortgage financing commitment, or violates or fails to perform any of the terms or conditions of this Agreement, then Seller shall have the right and option to cancel this Agreement and to retain any deposit money as liquidated damages for such default by Buyer, or exercise any legal or equitable right or remedy to which Seller may be entitled and in connection therewith to apply any deposit money either on account of the Purchase Price or on account of damages, as Seller may elect.

**25. SELLER'S DEFAULT.** If Seller shall, for some reason not excused hereunder, fail or refuse to perform his obligation to Buyer, and Buyer shall not also be in default, Buyer shall either have all monies paid hereunder on account of the Purchase Price, (together with such reasonable costs incurred in preparation for settlement), refunded forthwith, whereupon all rights and obligations hereunder shall cease and terminate, or Buyer shall have the right to seek any remedy and maintain any action against Seller to which Buyer may be entitled whether at law or in equity.

**26. NO REPRESENTATION.** Buyer and Seller understand and acknowledge that Broker(s) are not at any time authorized to make any representations about this Agreement or the property other than those written in this Agreement. Broker(s), Agent(s), Subagents and employees of Broker(s) do not assume any responsibility for the condition of the property or for the performance of this Agreement by any or all parties hereto.  By signing this Agreement, Buyer and Seller acknowledges they have not relied on any representations made by Broker(s) or any Agents, Subagents or employees of Broker(s), except those representations written in this Agreement.

**27. INDEMNIFICATION.** In the event any dispute arises under this Agreement between Seller and Buyer resulting in Broker(s) or any Agents, or Subagents or employees of Broker(s) being a party to any litigation, Seller or Buyer, whichever is unsuccessful, shall indemnify and hold Broker(s), Agents, Subagents or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees, provided such litigation does not result in a judgment against Broker(s), Agent(s), Subagents or employees of Broker(s) for acting improperly under this Agreement.  Additionally, in the event a dispute arises under this Agreement between Seller and Buyer resulting in any litigation, Buyer or Seller, whichever is unsuccessful, shall also be liable for the other parties' court costs and attorney's fees.

Seller's Initials  BR ____    Buyer's Initials  ____

©Copyright 2002 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

**28. AGENCY DISCLOSURE.**
As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm that the following agency relationships exist:

I. ___Cooper Realty Associatec_____ , Listing Broker

☐ Seller's Agent          ☒ Dual Agent

II. _____ , Designated Listing Agent

☐ Seller's Designated Agent     ☐ Designated Dual Agent

III. ___Cooper Realty Associates_____ , Selling Broker

☐ Buyer's Agent or        ☒ Dual Agent          ☐ Seller's Subagent

IV. _____ , Designated Selling Agent

☐ Buyer's Designated Agent    ☐ Designated Dual Agent    ☐ Seller's Subagent

V. _____ Broker, and _____ Salesperson,
are common law agents in which case further agency disclosure is required.

**29. SUCCESSION.** This Agreement shall benefit and bind the parties hereto, their respective heirs, personal representatives, successors and assigns. ~~Buyer may not assign Buyer's interest in this Agreement without Seller's prior written consent, which consent will not be withheld unless such assignment may adversely affect Seller.~~ _Buyer shall have the right to_ _Freely assign this Agreement._

**30. BROKERAGE FEE.** Buyer and Seller agree that the Broker(s)/Agent(s) was responsible for procuring this Agreement, and agree that a brokerage fee for services rendered as specified in a separate agreement for compensation will be paid. If not previously paid, the settlement attorney is hereby irrevocably authorized and directed to collect the brokerage fee as specified in the separate agreement and pay the same to the Broker at final settlement as a convenience to the parties, and not as a limitation upon Buyer's or Seller's liability to pay the brokerage fee. _B % As per Court ordered Listing Agreemt_

**31. ADDENDUMS.**
These Addendums are only applicable if marked YES or checked. NO or a blank means you are waiving the opportunity to include the contingency or clause. If language in this Agreement of Sale and Addendum(s) are in conflict, then the addendum(s) will supersede this Agreement.

N|A  Seller's Disclosure of Real Property Condition Report, unless exempt by State Law. (Additional form required.)

N|A  Lead Based Paint Disclosure Form, unless exempt by Federal Law          (Additional form required)

N|A  Radon Disclosure Form, unless exempt by State law          (Additional form required)

N|A  Buyer's Financial Information

N|A  Mortgage Letter with Credit Check

N|A  FHA/VA Amendatory Language and _For Your Protection: Get a Home Inspection._ (Additional form required)

N|A  Homeowners Warranty paid for by _____ Warranty Company _____

✓  Additional Addenda not included above. _Agency Relationships + Tax Map Plot_

___  Buyer-Seller Dispute Resolution. NOTE: This is not a condition or contingency of this agreement and requires a separate attached signed addendum and all parties must agree.

**32. ADDITIONAL TERMS AND CONDITIONS.** _This Sale is being conducted As a "As Is" Condition Sale._
_Sale is Subject to Court Approval._

**33. MISCELLANEOUS.** Delaware law governs this Agreement. The paragraph captions are for convenient reference only and are not intended to limit or enlarge the substance of this Agreement. The term Broker(s) when used in this Agreement shall include Broker of Record, Brokerage Organization, Broker Owner, Salesperson(s) and employees involved in this Agreement.

Seller's Initials ___BR___ ____    Buyer's Initials _____ ____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 6, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

The singular forms "Buyer" and "Seller" are used in this Agreement solely as a convenience and are intended to include all parties who are Buyers or Sellers. Buyer and Seller agree that they have read and fully understand this Agreement, including the Seller's Disclosure of Real Property Condition Report (if applicable), that it contains the entire agreement between them and that they do not rely on any other written or oral representation or statement not expressly written in this Agreement, including any statement of fact or opinion contained in any advertisement, listing agreement, multiple listing description or multiple listing information sheet or made by Seller, any broker, salesperson, or any agent or employee of any of them. If settlement does not take place Buyer and Seller shall each be responsible to pay for services ordered on their behalf, unless otherwise provided for herein. The parties hereto agree to execute and deliver any other instrument(s) or document(s) that may be necessary or convenient to carry into effect the provisions of this Agreement, and the parties agree to otherwise cooperate in good faith as may be necessary to complete the settlement contemplated herein.

**34. CHANGES.** There have been changes in the form of this Agreement of Sale as copyrighted by the Delaware Association of REALTORS® other than filling in the blanks.   Yes   No. If yes, describe changes.

**35. ENTIRE CONTRACT.** This contract and any addenda hereto contain the final and entire Agreement between the parties and may not be modified or changed except by written agreement signed by all parties. The parties agree that neither they nor their Broker(s)/Agent(s) shall be bound by any term, conditions, statements, warranties or representations, oral or written, not contained herein. FAILURE TO CHECK OR MARK A BOX "YES" MEANS BUYER HAS WAIVED THE RIGHT TO INCLUDE THE CONTINGENCY OR CLAUSE AS PART OF THIS AGREEMENT.

**36. FINAL ACCEPTANCE.** This agreement is not binding until signed by and delivered to all parties.

IN WITNESS WHEREOF, the parties have signed this agreement on the date stated below, thereby showing their intent to be bound hereby.

Susan Davis           By: _____           3/25/08
WITNESS               BUYER Brian M. Ellis, General Manager      Date & Time
                      of Hudson Road Property, LLC

WITNESS               BUYER                   Date & Time

                      Barbara Richards         4/17/08      0600
WITNESS               SELLER                  Date & Time

WITNESS               SELLER                  Date & Time

SELLER HEREBY REJECTS this offer as of _____     Date & Time

WITNESS               SELLER

Cooper Realty Assoc               Seaford, De
SELLING BROKER                    BRANCH OFFICE

629-6693                          629-4520
OFFICE PHONE NUMBER               FAX NUMBER

Tommy Cooper
SALES ASSOCIATE                   PHONE NUMBER

Cooper Realty Associates
LISTING BROKER                    BRANCH OFFICE

OFFICE PHONE NUMBER               FAX NUMBER
Tommy Cooper
SALES ASSOCIATE                   PHONE NUMBER

Deposit received: $ 5,000.00 : Cash    Check # ____   Effective date of contract _____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.



04/04/2008   14:17    3026294520                                    PAGE  02/21

Sussex County Association of Realtors® Copyright 2007

                                              

### ADDENDUM REGARDING AGENCY RELATIONSHIPS

Property: _TAx MAp 3-32-9 Parcel # 15.06_   Sales Agreement Date: _3/24/2008_

Buyer(s): _HUDSON ROAD Property, L.L.C. , or assigns_

Seller(s): _DAVID J Buchman + BARBARA H. Buchman (Richards)_

The parties agree that Paragraph 25, is deleted and replaced with:

As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm that the following agency relationships exist:

I.  _Cooper Realty Associates_ , Listing Broker

☐ Seller's Agent        ☒ Dual Agent

II. _____ , Designated Listing Agent

☐ Seller's Designated Agent        ☐ Designated Dual Agent

III. _Cooper Realty Associates_ , Selling Broker

☐ Buyer's Agent or        ☒ Dual Agent        ☐ Seller's Subagent

IV. _____ , Designated Selling Agent

☐ Buyer's Designated Agent        ☐ Designated Dual Agent        ☐ Seller's Subagent

V. _____ Broker, and _____ , Salesperson,
are common law agents in which case the agency disclosure language in paragraph 25 still applies.

All other terms and conditions of the Agreement of Sale shall remain unchanged and in full force and effect. Receipt of a copy is hereby acknowledged.

_HUDSON ROAD PROPERTY, LLC_

_Susan Davis_                    _3.25.08_        By: _____        _3/25/08_
    Witness                       Date                _Brian M. Ellis, General Manager_    Date

_____        _____        _____        _____
    Witness                       Date                Buyer                        Date

_Henry J. Coleman_             _4/17/08_        _Barbara Richards_            _4/17/08_
    Witness                       Date                Seller                        Date

_____        _____        _____        _____
    Witness                       Date                Seller                        Date

03/12/2008  15:26    3026294520

04/04/2008  14:17    3026294520                                              PAGE  13/21

REALTOR®    EQUAL HOUSING OPPORTUNITY

## AGREEMENT OF SALE for DELAWARE RESIDENTIAL PROPERTY
*This is a legally binding agreement; if not understood, seek competent legal advice prior to signing.*

THIS FORM IS DESIGNED AND INTENDED FOR THE SALE AND PURCHASE OF RESIDENTIAL REAL ESTATE LOCATED IN THE STATE OF DELAWARE

**1. PARTIES.**
SELLER: David J Buchanan & Barbara H. Buchanan (Richards)
Address: 5490-c, Fechet Lane, Washington D.C.
BUYER: Justice Farm Road L.L.C.                                    20332
Address: 9 N. Front Street Georgetown, DE

**2. PROPERTY.** Buyer hereby agrees to purchase from Seller and Seller agrees to convey to Suyer that Property identified as
TAX PARCEL # 2-32-19 Parcel # 46.03
being situated in Sussex County, Delaware and further identified as:
89.3 Acres on Pepper Pond Lane, obb Justice Farm Lane, Laurel, DE, being Unimproved Farm Land.

**3. PAYMENT TERMS.**
A. PURCHASE PRICE                                               $ 225,000.00
B. DEPOSIT UPON SIGNING THIS AGREEMENT                          $ 5,000.00
In the form of ☒ Check  ☐ Cash  ☐ Other
C. ADDL. DEPOSIT DUE WITHIN n/A DAYS OF ACCEPTANCE             $
D. BALANCE OF PURCHASE PRICE (A minus B & C)
(Loan Balance, if any, plus remaining Down Payment)            $ 220,000.00

All sums deposited by Buyer prior to the time of final settlement shall be placed in a *non-interest bearing escrow account* with Listing Broker ("Escrow Broker") unless otherwise specified in this Agreement. Any funds delivered to the Escrow Broker within 15 calendar days of settlement shall be certified funds. *Funds paid by Buyer at settlement shall be in cash, certified check, cashiers check, treasurer's check, wire transfer or a Delaware attorney's escrow check.* Seller's net proceeds shall be paid by check from the settling attorney's escrow account unless other arrangements are made with the attorney.

**4. INCLUSIONS/ EXCLUSIONS.** Unless specifically excluded by this Agreement the purchase price shall also include the following, as and if now installed, stored in, or located on the Property: all presently existing plumbing, heating, electrical and central air conditioning systems; and all other permanent or attached fixtures including but not limited to, all existing shutters, awnings, wall to wall carpeting, radiator covers, cabinets, shelves, mirrors fixed in place, attic/exhaust fans, lighting and plumbing fixtures, and landscaping.
Certain other now existing items which may be considered personal property, whether installed or stored upon the property, are included, as follows (if neither column is checked, item shall be considered excluded):

| YES | NO | | YES | NO | | YES | NO | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ Oven or Range | | ☐ | ☐ Window A/C Units # | | ☐ | ☐ Draperies/Curtains | |
| ☐ | ☐ Cooktop | | ☐ | ☐ Smoke Detectors | | ☐ | ☐ Drapery/Curtain rods | |
| ☐ | ☐ Wall Oven(s) # | | ☐ | ☐ Fireplace Equipment | | ☐ | ☐ Shades/Blinds | |
| ☐ | ☐ Refrigerator(s) # | | ☐ | ☐ Fireplace Screen/Doors | | ☐ | ☐ Cornices/Valances | |
| ☐ | ☐   with icemaker | | ☐ | ☐ Electronic Air Filter | | ☐ | ☐ Sheds/Outbuildings # | |
| ☐ | ☐ Freezer | | ☐ | ☐ Attic fan | | ☐ | ☐ Playground Equipment | |
| ☐ | ☐ Dishwasher | | ☐ | ☐ Whole house fan | | ☐ | ☐ Wood Stove | |
| ☐ | ☐ Disposal | | ☐ | ☐ Window Fan(s) # | | ☐ | ☐ Satellite Dish | |
| ☐ | ☐ Microwave | | ☐ | ☐ Ceiling Fan(s) # | | ☐ | ☐   with controls & Remote(s) | |
| ☐ | ☐ Washer | | ☐ | ☐ Central Vacuum | | ☐ | ☐ Fuel Storage Tank(s) (owned) | |
| ☐ | ☐ Clothes Dryer | | ☐ | ☐   with attachments | | ☐ | ☐ Fuel Storage Tank(s) (leased) | |
| ☐ | ☐ Bathroom Vents/Fans | | ☐ | ☐ Intercoms | | ☐ | ☐ Security Systems (owned) | |
| ☐ | ☐ Trash Compactor | | ☐ | ☐ Solar Equipment | | ☐ | ☐ Security Systems (leased) | |
| ☐ | ☐ Water Conditioner (owned) | | ☐ | ☐ Attached Antenna/Rotor | | ☐ | ☐ Fire detecting equip (owned) | |
| ☐ | ☐ Water Conditioner (leased) | | ☐ | ☐ Range Hood-exhaust fan | | ☐ | ☐ Fire detecting equip (leased) | |
| ☐ | ☐ Water Filter | | ☐ | ☐ Garage Opener(s) # | | | | |
| ☐ | ☐ Water Heater | | ☐ | ☐   with remote(s) # | | | Other Items Included/Excluded | |
| ☐ | ☐ Sump Pump | | ☐ | ☐ Pool Equipment | | | | |
| ☐ | ☐ Storm Windows/Doors | | ☐ | ☐ Pool cover | | ☐ | ☐ | |
| ☐ | ☐ Screens | | ☐ | ☐ Hot Tub. Equipment | | ☐ | ☐ | |
| ☐ | ☐ Furnace Humidifier | | ☐ | ☐   with cover | | ☐ | ☐ | |
| ☐ | ☐ Furnace De-Humidifier | | | | | | | |

Seller's Initials  BR                    Buyer's Initials

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

2

ADDITIONAL INCLUSIONS
(Specify): *Irrigation Well — And Irrigation Equip — NO Warranty is given as to condition or ownership or liens.*

ADDITIONAL EXCLUSIONS
(Specify): *None*

All property sold by this Agreement is called the "Property". No items shall be replaced or substituted without prior written approval of all parties.

**5. RENTAL/ LEASE.** The property ☐ is ☒ is not subject to an existing rental/leasing agreement. Seller will not alter any existing agreement nor enter into any new lease agreement without Buyer's written consent, and will assign all existing leases and transfer security deposits to Buyer at final settlement.

**6. FINANCING CONTINGENCY.**

(a)    Buyer's obligation to purchase the Property shall be contingent on Buyer's ability to obtain mortgage financing pursuant to the terms set forth below. Each of the terms below as applicable shall be deemed essential to this financing contingency and the Buyer shall not make application for any mortgage financing the terms of which would differ or deviate from the requirements set forth below that would be adverse to the Seller's interest without the Seller's express prior written consent. The interest rate shall be at the prevailing rate. Should, after Buyer makes application consistent with the terms set forth below, and has diligently and in good faith pursued that application, any commitment for mortgage financing that may be issued deviate from one or more of such terms, and the Buyer elects not to accept the financing thus offered, or the application is denied, the Buyer may, at the Buyer's sole election, void this Agreement, in which event all deposits will be returned to buyer. The terms of mortgage financing are the following:    *This is a CASH Sale.*

Type of financing:  *n/A = CAsh Sale*    Loan Amount:  *n/A*

Term in years:  *n/A*    Maximum loan to value ratio:  *n/A*

Final date for receipt of mortgage commitment (the "Commitment Date"):  *n/A*

(b)    Buyer will make written application in a manner consistent with that provided for above within _____ calendar days of the effective date of this Agreement, and shall use their best efforts and diligently pursue such financing and promptly file any supplemental information, papers and/or other material that may be requested or required from time to time by the lender. If Buyer fails to make application as specified above, then Seller may declare Buyer in default of this Agreement by tendering written notice of that election to the Buyer at any time prior to the Buyer making application consistent with the terms set forth above. Should Seller elect to declare Buyer in default before such application is completed, the Seller shall have available all the remedies set forth in this Agreement.

(c)    The Buyer shall provide the Seller, or the Seller's Designated Agent, with a copy of any loan commitment or rejection within 3 calendar days of receipt. If a commitment consistent with the terms set forth above, or one that differs from those terms which is nonetheless acceptable to the Buyer is obtained, and said commitment (1) imposes financial obligations upon the Seller which the Seller has not previously agreed to pay, and does not then agree to pay, and/or (2) is contingent upon the sale of any real or personal property owned by the Buyer, then Seller may within 5 calendar days after receipt of a copy of the commitment, cancel this Agreement in writing, and all deposit money shall then be returned to Buyer in accordance with provisions of this Agreement. If such notice is not given, Seller shall be deemed to have accepted said condition(s).

(d)    If a written mortgage commitment is not obtained by the Commitment Date, Seller shall from that time forward have the right to void this Agreement by tendering written notice of that election to the Buyer or the Buyer's Designated Agent provided, however, that if written mortgage commitment is received after the Commitment Date and prior to any such written notice of termination, then this Agreement shall remain in full force and effect, and the Seller's right to void this Agreement for failure to meet the Commitment Date shall be deemed waived. If the Seller elects to terminate as set forth in this paragraph, and the Buyer is not then otherwise in default of the terms of this Agreement, all deposit money shall be returned to the Buyer in accordance with the terms of this Agreement. If Buyer at that time claims that the mortgage application resulted in a denial of that application, and has not provided a copy of that rejection in a timely fashion as set forth in paragraph (c) above, the failure to provide a copy of that letter as required herein shall be deemed a default by the Buyer.

**7. SETTLEMENT.** Unless otherwise mutually agreed, final settlement shall be held in  *Sussex*  County, Delaware on  *May 1 2008 May 15, 2008*  , or before if mutually agreed upon, at which time possession shall be given and Seller shall deliver all keys in Seller's possession or under Seller's control. It is expressly agreed if a longer time is necessary to secure a survey, or to prepare the necessary legal and financial settlement documents, the date of settlement shall be extended for a reasonable time to effect these conditions.

Seller's Initials  *BR* _____    Buyer's Initials  _____

©Copyright 2007 by Delaware Association of REALTORS® All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

3

**8.  TIME IS OF THE ESSENCE.** Other than final settlement, time is of the essence in this Agreement. Time is of the essence means that the dates and time frames agreed by the parties must be met. Failure to meet stated dates or time frames may result in waiver of contractual rights or default under the terms of this Agreement.

**9.  CONVEYANCE.** The Seller acknowledges that the property is to be conveyed (check one) ☒ IN FEE SIMPLE; ☐ COOP OWNERSHIP; or ☐ LEASEHOLD SUBJECT TO AN ANNUAL GROUND RENT, in the amount of $_____

**10.  DISBURSEMENT OF DEPOSITS.** The parties to this Agreement agree that deposit monies held on account as specified herein shall only be disbursed under one of the following conditions:

    A.  Upon final settlement hereunder; OR

    B.  Upon a release being signed by all parties to the transaction authorizing disposition of these funds; OR

    C.  Upon the filing of an interpleader action in the proper court, thereby causing these funds to be deposited with the court; OR

    D.  At such time as one of the parties to the transaction files suit and the court orders the disbursement of these funds.

Buyer and Seller agree that upon payment of deposit monies into court, neither Buyer nor Seller shall have any further right, claim, demand or action against Escrow Broker regarding the return or disposition of the deposit monies.

**11.  TRANSFER TAXES; PRO-RATIONS; HEATING FUEL.** Applicable transfer taxes, transfer fees, and/or motor vehicle document fees shall be paid one-half by Buyer and one-half by Seller, except that any exemptions shall benefit only the exempt party. Taxes, special assessments, ground rent, water, sewer, electric and other lienable charges imposed by the State of Delaware, any political subdivision thereof, any school district, neighborhood association and/or condominium common expenses shall be apportioned pro-rata at the time of final settlement, as shall the rents and pre-paid operating expenses if Property is sold subject to a lease, and all security deposits shall be delivered to Buyer at time of settlement. Buyer shall pay Seller at settlement for any heating fuel purchased by Seller and left on Property. Buyer is advised that some propane tanks located on residential properties are leased and ownership of the tank may not be transferred to Buyer as part of this agreement.

☐ Seller ☒ Buyer shall pay for deed preparation.  Buyer shall pay all other customary settlement charges and lending costs including survey.

**12.  TITLE.** Title is to be good and marketable either fee simple absolute conveyed by Deed of Special Warranty or Lease-hold Estate conveyed by assignment of the existing lease, as applicable, insurable for both owners and lenders coverage at regular rates by a title insurer duly licensed to issue title insurance in the State of Delaware, clear of any liens and encumbrances, except restrictions of record and existing easements generally applicable to properties in the immediate neighborhood or the subdivision in which the property is located. Title shall also be delivered without encroachments or violations of restrictions, zoning or subdivision regulations unless disclosed by Seller on the Seller's Disclosure of Real Property Condition Report.  If title objections are raised, Seller shall have 30 days from the date Seller is notified to cure the same, and the settlement date shall be extended accordingly.  If objections are not satisfied by the extended settlement date, this Agreement shall terminate and all deposit monies shall be refunded to Buyer and all reasonable legal, loan, survey, and inspection fees incurred by the Buyer will be paid by the Seller, unless Buyer elects to waive the unsatisfied objections and complete the purchase.  Seller may use the purchase price payable to Seller at settlement to discharge liens and encumbrances of record in fixed and ascertainable amounts.

**13.  NOTICE/DELIVERY OF DOCUMENTS.** In this paragraph, the word "Agreement" includes offers, counteroffers, addenda or any other notice or agreement between the parties.  All agreements shall be in writing.  Verbal or written communication between the parties or the parties' Designated Agents that this Agreement has been signed and ratified shall be binding on all parties and such verbal notice shall constitute delivery.  Written communication shall be effective when sent.  A facsimile, electronic record with electronic signature, or photocopy of a signed agreement shall constitute an original.  The Buyer or Seller, if there be more than one, expressly agree that notice to one shall be notice to all.

**14.  NO RECORDING.** This agreement shall not be recorded or filed in any place of public record.  If Buyer does record this Agreement, or permit this Agreement to be recorded, Seller may elect to treat such act as a default and have all the remedies provided herein.

**15.  FAIR HOUSING.** All Parties agree to comply with all Fair Housing and Civil Rights laws in the purchase and sale of the property and further agree specifically not to discriminate against any person because of RACE, COLOR, NATIONAL ORIGIN, RELIGION, CREED, SEX, MARITAL STATUS, FAMILIAL STATUS, AGE, and OR HANDICAP/DISABILITY.

**16.  FIRPTA.** Section 1445 of the United States Internal Revenue Code of 1986 provides that a Buyer of residential real property located in the United States must withhold federal income taxes from the payment of the purchase price if; (a) the purchase price exceeds three hundred thousand dollars ($300,000.00); and (b) the Seller is a foreign person. Unless otherwise stated in an addendum attached hereto, if the purchase price is in excess of three hundred thousand dollars ($300,000.00), Seller represents that Seller is not a nonresident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as those are defined by the Internal Revenue Code and applicable regulations) and agrees to execute an affidavit to this effect at time of settlement.

Seller's Initials  **BR** _____    Buyer's Initials _____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

**17. HOMEOWNERS WARRANTY.** Buyer and Seller are advised that Homeowners Warranties are available. A Homeowners Warranty is only part of this Agreement if Buyer or Seller agrees to purchase a warranty. Buyer and Seller are advised to request information about what is included in the warranty and what is excluded (for example, preexisting conditions) and the amount of the deductible.

**18. RISK OF LOSS.** The risk of loss or damage to the property by fire, wind storm or other casualty until settlement shall be borne by the Seller. If any part of the property is damaged or destroyed by fire or other casualty loss, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by settlement date. If Seller is unable to do so, Buyer may terminate this Agreement and the deposit monies shall be refunded to Buyer in accordance with the terms of this Agreement.

**19. CONDITION OF PROPERTY; INSPECTIONS.** The Seller will deliver the property in substantially the same physical condition as of the date of this Agreement. Seller agrees to permit access to Property by an authorized appraiser, inspector or contractor as required by the lender or by other terms of this Agreement. Buyer shall have the responsibility of scheduling a pre-settlement inspection of Property within 48 hours of settlement to verify that Property is in the condition required by this Agreement including conditions disclosed and accepted by the Buyer elsewhere in this Agreement or by addendum. Seller is responsible for insuring that utilities are turned on during inspections, appraisals and pre-settlement inspection. Property shall be "broom clean" and free of debris at time of final settlement or occupancy (whichever occurs first).

Unless otherwise agreed to herein, the electrical, plumbing, septic system, well, heating, air conditioning, and any other electro-mechanical systems, appliances and equipment included in this Agreement of Sale shall be in operating condition at time of final settlement.  In the event of any failures of Property between the time of final acceptance and settlement, Seller shall make necessary repairs at Seller's expense, prior to settlement.
Except as expressly contained herein, no other warranties or representations have been made by the Seller or relied upon by the Buyer and upon settlement all the Seller's obligations under this Agreement shall expire. It is understood and agreed by the parties hereto the Broker(s)/Salesperson(s) assumes no responsibility for defects concerning the physical condition of the property described herein and all improvements thereon. Unless otherwise indicated herein, Buyer represents that they have made a satisfactory inspection of the property and agrees to accept the property in its present condition unless otherwise provided herein.

**20. INCLUDED CLAUSES.** The following clauses are included in this Agreement only if marked "yes" or checked. They permit Buyer to obtain an inspection of specific aspects of the Property. The purpose of any inspection is to independently evaluate the condition of the Property and identify major defects, if any. A major defect is any deficiency in a system that causes the system to perform in an unsafe manner or that prevents the system from performing its intended function. Buyer must object to any major defect identified by an inspection report by the date the report is due to Seller as listed below, or Buyer is deemed to have accepted Property with the defect and the contingency is automatically considered to be satisfied. If this Agreement is cancelled as a result of the election of any of the options below, all parties agree to immediately execute the proper documentation to acknowledge termination of this Agreement of Sale. There shall then be no further obligation or liability of either party, broker or salespeople, and all monies on deposit shall be returned to Buyer in accordance with the terms of this Agreement. Buyer and Seller agree that Broker(s)/Agent(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

## PROCEDURES FOR INCLUDED CLAUSES 20a THROUGH 20d
The following contingencies become part of this agreement if marked yes or checked. Each included contingency is subject to the terms and remedies described herein.

20a. _WAIVED_ On-Site Waste/Septic Contingency.
Buyer may have the on-site waste/septic system inspected by a licensed plumber or septic contractor of Buyer's choice at Buyer's expense, to verify that the on-site waste/septic system is in working order. Buyer must provide Seller with a copy of the written report describing any major defect. Report of major defects, if any, is due to Seller by _____ (date)

20b. _WAIVED_ Well Water Contingency.
Buyer may have the water inspected by a water testing company of Buyer's choice, at Buyer's expense, to verify that the well is in working order with no major defects, and there is an absence of total coliform bacteria, and meets EPA standards for nitrate, chloride, and lead. Buyer must provide Seller with a copy of the written report containing any major defect. Report of major defects, if any, due to Seller by _____ (date)

20c _WAIVED_ Radon Contingency.
Buyer may have Property inspected by a registered radon service company of Buyer's choice, at Buyer's expense, to verify that the radon level is less than 4 picocuries/liter. Buyer must provide Seller with a copy of the written report containing any evidence of higher radon levels than herein stated.  Report of major defects, if any, due to Seller by _____ (date)

20d. _N|A_ Swimming Pool Contingency.
Buyer may have the swimming pool inspected by a pool maintenance company of the Buyer's choice, at Buyer's expense, to verify that there are no major defects in the pool and equipment. Buyer must provide Seller with a copy of the written report describing any major defect. Report of major defects, if any, is due to Seller by _____ (date)

Seller's Initials  _BR_  ____    Buyer's Initials  _____ ____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

5

**SELLER'S DUTIES.** If Buyer provides written notice of a major defect of the above selected systems, then Seller shall notify Buyer, within 5 calendar days of Seller's receipt of Buyer's notice, whether Seller (a): intends to correct the major defect(s) at Seller's sole cost prior to settlement, (b): refuses to correct any of the major defects, or (c): offers to negotiate with Buyer about the major defects with such negotiations to be completed within 5 additional calendar days. If the negotiations are not completed in the time specified above or Seller fails to provide written notification, then this shall mean that Seller has refused to correct the defect.

**BUYER'S DUTIES.** If Seller does not elect to correct the major defect or a negotiated agreement to correct major defects is not agreed to, then Buyer must notify Seller within 5 calendar days of receiving Seller's notice whether Buyer will (a): accept Property with the defect and no reduction of price or (b): declare the Agreement null and void with all deposit money being returned to Buyer. Buyer's failure to provide written notice shall mean Buyer has accepted Property with the major defect and with no abatement of price.

**21. PROPERTY INSPECTION CONTINGENCY.** ☐ Yes ☒ No

Report of defects and request for repairs, if any, due to Seller by _____ n|A _____ (date)
Other systems or items to be inspected by the home inspection company _____
Subsequent inspections and negotiations, (if any), to be completed by _____ (date)

Buyer is not purchasing a newly constructed home and the property may have minor problems associated with a previously owned property. A major defect is any deficiency in a system that causes the system to perform in an unsafe manner or that prevents the system from performing its intended function.

If "Yes" is indicated above, this Agreement of Sale is contingent upon the Buyer obtaining a property inspection and written report (the Inspection), by a home inspection company and/or by a licensed contractor of Buyer's choice at Buyer's expense. If Buyer does not choose to obtain an inspection, or if major defects are not reported to the Seller by date specified, then Buyer has waived the Property Inspection contingency.

If the home inspection discovers major defects, Buyer shall provide Seller with a written request for repairs and a copy of the relevant portions of the inspection report. The request for repairs must be made by the deadline specified. Seller shall then, in writing:

(a) Agree to correct any major defects at Seller's sole cost by a licensed contractor. Such work shall be completed at least two days prior to settlement and written proof of completion shall be supplied to buyers; OR

(b) Refuse to correct the major defects; OR

(c) Enter into a mutually agreeable written agreement with Buyer providing for particular repairs to the Property and/or credit to Buyer at Settlement if this is acceptable to the mortgage lender.

If the Seller refuses to correct the major defects, fails to respond in writing to Buyer's request, or an agreement about such repairs is not negotiated, then the Buyer may notify Seller in writing, no later than one day after the date for subsequent inspections and negotiations specified herein, of Buyer's intent to purchase the property in its present condition or this contract shall be null and void and all deposit money shall be returned to Buyer in accordance with the terms of this Agreement.

It is understood that general statements as to the condition of the Property contained in this Agreement, such as "electrical system shall be in working order at the time of settlement," will not obligate Seller to repair items noted in the Property Inspection Report unless Seller agrees to make repairs according to the terms of the Property Inspection paragraph.

Seller will have heating/air conditioning systems and all utilities (including fuels) operative for the inspections. Seller shall not be obligated to repair any defects fully disclosed in the Seller's Disclosure of Real Property Condition Report or defects otherwise accepted by Buyer in this Agreement. However, specific actions required by this Agreement, such as "repair defective electric outlet in the kitchen," will remain part of this agreement.

Any failures of the Property occurring between the time of final acceptance and settlement shall be repaired by Seller, at Seller's expense, prior to settlement. Any subsequent inspections necessitated by the initial inspection shall be at the direction and expense of the Buyer, performed by a licensed contractor, and completed within the time frames provided herein. The Broker(s) shall not be responsible for determining the necessity of additional inspections. Buyer and Seller agree that Broker(s) does not guarantee, and will not be held responsible for, any person or company performing the inspection or correction of any condition pursuant to the terms of this Agreement and will not be responsible for the selection of any person or company chosen to perform an inspection or correct any condition.

**22. WOOD DESTROYING INSECT INSPECTION REPORT.** The Buyer shall procure, at Buyer's expense (unless prohibited by the type of mortgage financing, in which case it shall be procured by the Buyer at Seller's expense), a wood destroying insect inspection report (WDI) from a company holding a Pesticide Business License or an individual licensed by the Department of Agriculture as a Commercial Pesticide Applicator (Restricted Use) Category 7B Wood Destroying Pest Control (WDI Inspector). The inspection shall include the house, attached or detached garage, and improvements attached to the house or garage, but not other detached items on the property, such as (but not limited to) sheds, fences, wood piles, mulch beds, etc., unless such items are specifically listed herein. Buyer shall deliver to Seller a copy of the WDI report no later than 15 days before settlement.

(a) If there is no active infestation, prior infestation, prior treatment or damage from infestation, then no further action is needed by either party.

Seller's Initials BR          Buyer's Initials

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Law Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

(b)  If the report indicates that there is any active infestation, prior infestation, prior treatment or damage from infestation, then Buyer may obtain an inspection to determine if the structural integrity of the property has been impaired and provide an estimate for treatment and repairs.  The party who pays for the pest inspection shall pay for the structural inspection ("the first structural report") and estimate.  If the first structural report states that the structural integrity has not been impaired, no repairs by the Seller shall be required.

(c)  If the cost to treat and repair damage exceeds 10% of the Purchase Price, Buyer may declare this Agreement null and void, in which case the deposit shall be returned to the Buyer in accordance with provisions in this Agreement, and each party shall be relieved of further liability to the other.

(d)  If (c) does not apply, then the Seller shall have the option of treating the infestation and having any structural impairment corrected by licensed contractors, at Seller's expense prior to settlement.  Seller shall, within 5 calendar days, notify buyer in writing whether or not Seller will exercise its option to do any required work.  If Seller elects to do any required work, Seller shall deliver to Buyer a written report prepared by a WDI Inspector/Licensed contractor itemizing the treatment/repairs to be made.  After the treatment/repairs have been completed, Seller shall provide Buyer with a written statement from the licensed contractor certifying that the repairs required by the first structural report have been completed and the integrity of those areas is no longer structurally impaired.  This report shall be provided by settlement.  Buyer may, at Buyer's expense, hire a representative to be at the property while the Seller's contractor makes repairs.  If Seller elects not to correct or fails to provide written notice within 5 calendar days, Buyer shall have the option of proceeding to settlement without reduction of the purchase price or declaring this agreement null and void in writing and being repaid all deposit money.  Written notice of Buyer's election to declare this agreement null and void must be delivered to Seller within 5 calendar days after receiving Seller's written notice or Seller's failure to give written notice.

(e)  If Buyer does not declare this agreement null and void, there shall be no liability of Seller for the infestation or damage, no obligation of Seller to correct, no reduction of the purchase price, no credit to Buyer at settlement for the cost of correction or re-inspection and Buyer shall be responsible for any correction or re-inspection required by Buyer's lender.  If this paragraph applies, the Buyer purchases the property in "as is" condition and waives all claims under this paragraph against the Seller, the Broker(s) and Salesperson(s), for any damage to the structure by wood destroying insects.

**23.  ENVIRONMENTAL CONDITIONS.**  Buyer is hereby advised that environmental conditions may exist about which Seller has no knowledge including but not limited to: buried fuel tanks, asbestos, radon, lead paint, and urea-formaldehyde foam insulation.  Buyer may negotiate with Seller for permission to conduct environmental testing as a term or condition of this Agreement.  Any agreement relating to environmental testing must be in writing and signed by both Buyer and Seller.  Further information can be obtained from the following agencies: United States Environmental Protection Agency, Washington DC; Radon Health Systems Protection, Dover DE; State of Delaware Department of Health and Social Services, Dover DE; United States Consumer Products, Safety Commission, Washington DC.

**24.  BUYER'S DEFAULT.**  If Buyer fails to deliver any payment or additional deposit, fails to make mortgage application as specified herein, knowingly furnishes false or incomplete information to Seller, Broker or the lending institution concerning Buyer's legal or financial status, fails to cooperate in the processing of the mortgage loan application, resulting in failure to obtain a mortgage financing commitment, or violates or fails to perform any of the terms or conditions of this Agreement, then Seller shall have the right and option to cancel this Agreement and to retain any deposit money as liquidated damages for such default by Buyer, or exercise any legal or equitable right or remedy to which Seller may be entitled and in connection therewith to apply any deposit money either on account of the Purchase Price or on account of damages, as Seller may elect.

**25.  SELLER'S DEFAULT.**  If Seller shall, for some reason not excused hereunder, fail or refuse to perform his obligation to Buyer, and Buyer shall not also be in default, Buyer shall either have all monies paid hereunder on account of the Purchase Price, (together with such reasonable costs incurred in preparation for settlement), refunded forthwith, whereupon all rights and obligations hereunder shall cease and terminate, or Buyer shall have the right to seek any remedy and maintain any action against Seller to which Buyer may be entitled whether at law or in equity.

**26.  NO REPRESENTATION.**  Buyer and Seller understand and acknowledge that Broker(s) are not at any time authorized to make any representations about this Agreement or the property other than those written in this Agreement.  Broker(s), Agent(s), Subagents and employees of Broker(s) do not assume any responsibility for the condition of the property or for the performance of this Agreement by any or all parties hereto.  By signing this Agreement, Buyer and Seller acknowledges they have not relied on any representations made by Broker(s) or any Agents, Subagents or employees of Broker(s), except those representations written in this Agreement.

**27.  INDEMNIFICATION.**  In the event any dispute arises under this Agreement between Seller and Buyer resulting in Broker(s) or any Agents, or Subagents or employees of Broker(s) being a party to any litigation, Seller or Buyer, whichever is unsuccessful, shall indemnify and hold Broker(s), Agents, Subagents or employees of Broker(s) harmless from any liability, loss, damage, cost, expense, and attorney fees, provided such litigation does not result in a judgment against Broker(s), Agent(s), Subagents or employees of Broker(s) for acting improperly under this Agreement.  Additionally, in the event a dispute arises under this Agreement between Seller and Buyer resulting in any litigation, Buyer or Seller, whichever is unsuccessful, shall also be liable for the other parties' court costs and attorney's fees.

Seller's Initials ____    ____    Buyer's Initials ____    ____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

## 28. AGENCY DISCLOSURE.

As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm that the following agency relationships exist:

I.  _Cooper Realty Associates_____, Listing Broker

☐ Seller's Agent          ☒ Dual Agent

II. _____, Designated Listing Agent

☐ Seller's Designated Agent      ☐ Designated Dual Agent

III. _Cooper Realty Associates_____, Selling Broker

☐ Buyer's Agent or        ☒ Dual Agent          ☐ Seller's Subagent

IV. _____, Designated Selling Agent

☐ Buyer's Designated Agent      ☐ Designated Dual Agent      ☐ Seller's Subagent

V.  _____ Broker, and _____ Salesperson,
are common law agents in which case further agency disclosure is required.

## 29. SUCCESSION.

This Agreement shall benefit and bind the parties hereto, their respective heirs, personal representatives, successors and assigns. ~~Buyer may not assign Buyer's interest in this Agreement without Seller's prior written consent which consent will not be withheld unless such assignment may adversely affect Seller.~~ _Buyer shall have the right to freely assign this Agreement._

## 30. BROKERAGE FEE.

Buyer and Seller agree that the Broker(s)/Agent(s) was responsible for procuring this Agreement, and agree that a brokerage fee for services rendered as specified in a separate agreement for compensation will be paid.  If not previously paid, the settlement attorney is hereby irrevocably authorized and directed to collect the brokerage fee as specified in the separate agreement and pay the same to the Broker at final settlement as a convenience to the parties,  and not as a limitation upon Buyer's or Seller's liability to pay the brokerage fee. _8% As per Court ordered Listing Agreement_

## 31. ADDENDUMS.

These Addendums are only applicable if marked YES or checked. NO or a blank means you are waiving the opportunity to include the contingency or clause.  If language in this Agreement of Sale and Addendum(s) are in conflict, then the addendum(s) will supersede this Agreement.

_n/a_  Seller's Disclosure of Real Property Condition Report, unless exempt by State Law.  (Additional form required.)

_n/a_  Lead Based Paint Disclosure Form, unless exempt by Federal Law          (Additional form required)

_n/a_  Radon Disclosure Form, unless exempt by State law                       (Additional form required)

_n/a_  Buyer's Financial Information

_n/a_  Mortgage Letter with Credit Check

_n/a_  FHA/VA Amendatory Language and For Your Protection: Get a Home Inspection. (Additional form required)

_n/a_  Homeowners Warranty paid for by _____ Warranty Company_____.

_✓_  Additional Addenda not included above._Agency Relationships & Tax Map Plot_

_____  Buyer-Seller Dispute Resolution. NOTE: This is not a condition or contingency of this agreement and requires a separate attached signed addendum and all parties must agree.

## 32. ADDITIONAL TERMS AND CONDITIONS._Subject to Court Approval_
_____
_____
_____

## 33. MISCELLANEOUS.

Delaware law governs this Agreement. The paragraph captions are for convenient reference only and are not intended to limit or enlarge the substance of this Agreement. The term Broker(s) when used in this Agreement shall include Broker of Record, Brokerage Organization, Broker Owner, Salesperson(s) and employees involved in this Agreement.

Seller's Initials  _BR_  ____      Buyer's Initials  ____  ____

©Copyright 2007 by Delaware Association of REALTORS®. All Rights Reserved. Last Modified September 4, 2007. This form has been created exclusively for the use of the association's members and those with written permission. The use of this form for any transaction that does not involve the participation of an association member is strictly prohibited and is in violation of Federal Copyright laws.

APR-22-2008 10:57 From:AF/RE          7036144026          To:3026294520          P.1/1
04/22/2008  10:28   3026294520                                                    PAGE  02/02

04/04/2008  14:17   3026294520                                                    PAGE  20/21

8

The singular forms "Buyer" and "Seller" are used in this Agreement solely as a convenience and are intended to include all parties who are Buyers or Sellers. Buyer and Seller agree that they have read and fully understand this Agreement, including the Seller's Disclosure of Real Property Condition Report (if applicable), that it contains the entire agreement between them and that they do not rely on any other written or oral representation or statement not expressly written in this Agreement, including any statement of fact or opinion contained in any advertisement, listing agreement, multiple listing description or multiple listing information sheet or made by Seller, any broker, salesperson, or any agent or employee of any of them. If settlement does not take place Buyer and Seller shall each be responsible to pay for services ordered on their behalf, unless otherwise provided for herein. The parties hereto agree to execute and deliver any other instrument(s) or document(s) that may be necessary or convenient to carry into effect the provisions of this Agreement, and the parties agree to otherwise cooperate in good faith as may be necessary to complete the settlement consummated herein.

**24. CHANGES.** There have been changes in the form of this Agreement of Sale as copyrighted by the Delaware Association of REALTORS® other than filling in the blanks.  Yes ___  No. If yes, describe changes.

**25. ENTIRE CONTRACT.** This contract and any addenda hereto contain the final and entire Agreement between the parties and may not be modified or changed except by written agreement signed by all parties. The parties agree that neither they nor their Broker(s)/Agent(s) shall be bound by any term, conditions, statements, warranties or representations, oral or written, not contained herein. FAILURE TO CHECK OR MARK A BOX "YES" MEANS BUYER HAS WAIVED THE RIGHT TO INCLUDE THE CONTINGENCY OR CLAUSE AS PART OF THIS AGREEMENT.

**36. FINAL ACCEPTANCE.** This agreement is not binding until signed by and delivered to all parties.

IN WITNESS WHEREOF, the parties have signed this agreement on the date stated below, thereby showing their intent to be bound hereby.

| _Susan Davis_ | BUYER _Brian Ellis, General Manager_ | _5/5/08_ Date & Time |
| WITNESS | | _of Justice Named Farm Road, Delaware, LLC_ |
| _Nancy Fry_ | BUYER _Barbara Richards_ | _22 Apr 08_ |
| WITNESS | SELLER | Date & Time |
| | | |
| WITNESS | SELLER | Date & Time |

| SELLER HEREBY REJECTS this offer as of _____ | Date & Time |
| WITNESS | SELLER |

| _Cooper Realty Assoc_ | _Seaford DE_ |
| SELLING BROKER | BRANCH OFFICE |
| _302-629-6693_ | _302-629-4520_ |
| OFFICE PHONE NUMBER | FAX NUMBER |
| _Tommy Cooper_ | |
| SALES ASSOCIATE | PHONE NUMBER |
| _Cooper Realty Assoc_ | _Seaford, DE_ |
| LISTING BROKER | BRANCH OFFICE |
| | |
| OFFICE PHONE NUMBER | FAX NUMBER |
| _Tommy Cooper_ | |
| SALES ASSOCIATE | PHONE NUMBER |

Deposit received $ _5,000.°°_ ☑ Cash  ☐ Check # _____  Effective date of contract _____

©Copyright 2005 by Delaware Association of REALTORS®. All Rights Reserved, and Modified September 4, 2005. This form has been created exclusively for the use of its distribution partners and those with written permission. The use of this form by any nonmember that does not involve the participation of an appropriate member is strictly prohibited and is a violation of Federal Copyright Laws.

04/04/2008  14:17   3826294520                                          PAGE   12/21

Sussex County Association of Realtors® Copyright 2007

**R**
REALTOR®

*(Property, LLC, Signs)*

ADDENDUM REGARDING AGENCY RELATIONSHIPS

Property:  TAX MAP 2-32-19 Parcel #46.03  Sales Agreement Date: 3/24/2008
Buyer(s):  JUSTICE FARM ROAD                                    *(Richards)*
Seller(s):  DAVID J. Buchanan + Barbara H. Buchanan

The parties agree that Paragraph 25, is deleted and replaced with:

As disclosed in the Consumer Information Statement of the Delaware Real Estate Commission, the parties confirm
that the following agency relationships exist:

I.   Cooper Realty Associates          , Listing Broker
     ☐ Seller's Agent          ☒ Dual Agent

II.  _____, Designated Listing Agent
     ☐ Seller's Designated Agent      ☐ Designated Dual Agent

III. Cooper Realty Associates          , Selling Broker
     ☐ Buyer's Agent or         ☒ Dual Agent          ☐ Seller's Subagent

IV.  _____, Designated Selling Agent
     ☐ Buyer's Designated Agent       ☐ Designated Dual Agent      ☐ Seller's Subagent

V.   _____ Broker, and _____, Salesperson,
     are common law agents in which case the agency disclosure language in paragraph 25 still applies.

All other terms and conditions of the Agreement of Sale shall remain unchanged and in full force and effect. Receipt of a copy is
hereby acknowledged.

JUSTICE FARM ROAD PROPERTY, LLC

_Susan Davis_          3-25-08     By: _____     3/25/08
      Witness              Date         Brian M. Ellis, General     Date
                                              Manager

_____     _____     _____     _____
      Witness              Date              Buyer              Date

_signature_          4/17/08     _Barbara Richards_     4/17/08
      Witness              Date              Seller             Date

_____     _____     _____     _____
      Witness              Date              Seller             Date



04/04/2008  14:17   3026294520

05/14/2008  15:00    3026294520

05/14/2008  14:14    3026294520                                        PAGE  02/02

## ADDENDUM TO CONTRACT OF SALE

## BUCHANAN & RICHARDS TO HUDSON ROAD PROPERTY, L.L.C.

It is hereby agreed that the Sellers shall remove all items of personal property, excluding appliances and other fixtures, from the Property prior to settlement as provided for in Section 7 hereto.  In the event that any items of personal property remain on the Property after such date, Buyer shall have the right to dispose of such property in any manner it so chooses.

*Barbara Richards* 14 May 08
**SELLER**                          **DATE**

_____
**SELLER**                          **DATE**

## N THE FAMILY COURT OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

| | | | |
|---|---|---|---|
| BARBARA H. BUCHANAN, | : | **File No.:** | **CS94-3107** |
| | : | **CPI No.:** | **03-00932** |
| Petitioner/Movant, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| DAVID J. BUCHANAN, | : | | |
| | : | | |
| Respondent/Movee. | : | | |

### AFFIDAVIT OF BARBARA H. RICHARDS
### (f/k/a BARBARA H. BUCHANAN)

| | |
|---|---|
| **STATE OF VIRGINIA** | : |
| | : SS. |
| **COUNTY OF ARLINGTON** | : |

BE IT REMEMBERED, that on this 16th day of _____ May ____, A.D., 2008, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, BARBARA H. RICHARDS, the Petitioner/Movant in the foregoing *SECOND MOTION PURSUANT TO FAMILY COURT CIVIL PROCEDURE RULE 70(a) TO COMPEL EXECUTION OF CONTRACT OF SALE OF REAL PROPERTY AS REQUIRED BY DECISION AND ORDER OF PROPERTY DIVISION DATED APRIL 4, 2006,* known to me personally to be such, who being duly sworn according to law, did depose and say that the facts contained in the Motion are true and correct to the best of her knowledge and belief and they are not made out of levity or by collusion.

*Barbara H Richards*
**BARBARA H. RICHARDS**

SWORN TO AND SUBSCRIBED before me the day and year first above-written.

**NOTARY PUBLIC**

## IN THE FAMILY COURT OF THE STATE OF DELAWARE

### IN AND FOR SUSSEX COUNTY

| | | | |
|---|---|---|---|
| **BARBARA H. BUCHANAN,** | : | **File No.:** | **CS94-3107** |
| | : | **CPI No.:** | **03-00932** |
| **Petitioner/Movant,** | : | | |
| | : | | |
| **v.** | : | | |
| | : | | |
| **DAVID J. BUCHANAN,** | : | | |
| | : | | |
| **Respondent/Movee.** | : | | |

### ORDER

UPON CONSIDERATION of the foregoing SECOND MOTION PURSUANT TO FAMILY COURT CIVIL PROCEDURE RULE 70(a) TO COMPEL EXECUTION OF CONTRACT OF SALE OF REAL PROPERTY AS REQUIRED BY DECISION AND ORDER OF PROPERTY DIVISION DATED APRIL 4, 2006, it is thereupon this _____ day of _____, A.D., 2008,

ORDERED, that this Motion be and hereby is GRANTED; and it is

FURTHER ORDERED, that this Court shall hereby sign an Order directing the Clerk of this Court to execute the attached Contract of Sale and other documents for the sale of the properties known as Tax Parcel 3-32-9, Parcel No.: 15.06, (also known as 34806 Hudson Road, Laurel, DE), being 26.28 acres and Tax Parcel 2-32-19, Parcel No.: 46.036, being 89.2 acres on Pepper Pond Lane, Laurel, DE, together with any necessary Deeds or Transfer Affidavits; and it is

FURTHER ORDERED, that any and all proceeds resulting from the sale of these properties shall be held in escrow by the settlement attorney until an Order of disbursement has been signed by this Court; and it is

FURTHER ORDERED, that Respondent is hereby ordered and directed to contribute to attorney's fees and Court costs incurred by Petitioner for the filing of this necessary action in the amount of $ _____.

IT IS SO ORDERED.

_____

**JUDGE**

## THE FAMILY COURT OF THE STATE OF DELAWARE

## IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| Barbara H. Richards | File No.     CS94-3107 |
| (f/k/a Barbara H. Buchanan), | Petition No.  03-00932 |
| Glynis Gibson, Esquire | |
| v. | |
| David J. Buchanan | ORDER – SALE OF REAL PROPERTY |
| Pro Se. | |

Upon consideration of the foregoing second motion pursuant to Family Court Civil Procedure Rule 70(a) to compel execution of contract of sale of real property as required by Decision and Order of property division dated April 4, 2006, it is thereupon this 9th day of July, 2008,

ORDERED, that this motion be and hereby is GRANTED; and it is

FURTHER ORDERED, that the Clerk of this Court is hereby authorized to execute on behalf of David J. Buchanan the originals of the contracts of sale, deed, transfer affidavits, and all other documents necessary to complete the sale of the following properties; (1) Tax Parcel 3-32-9, Parcel No.: 15 06, (also known as 34806 Hudson Road, Laurel, Delaware), being 26.28 acres, and (2) Tax Parcel 2-32-19, Parcel No.: 46.036, being 89.2 acres on Pepper Pond Lane, Laurel, Delaware.

FURTHER ORDERED, that any and all proceeds resulting from the sale of these properties shall be held in escrow by the settlement attorney until an Order of disbursement has been signed by this Court,

FURTHER ORDERED, that Respondent is hereby ordered and directed to contribute to attorney's fees incurred by Petitioner for the filing of this necessary action in an amount later to be determined.

IT IS ORDERED that a certified copy of this Order shall be filed by the settlement attorney or the petitioner in the Office of the Recorder of Deeds in and for Sussex County, Delaware just prior to recording the deeds transferring these subject properties.

IT IS SO ORDERED THIS 9th day of July, 2008.

JOHN E. HENRIKSEN, JUDGE

JEH:tmp

pc:   Glynis Gibson, Esquire
      David Buchanan
      File

Date Mailed: July 10, 2008

2

INM. _Buchanan_  28/392  BLDG. pF-3
SUSSEX CORRECTIONAL INSTITUTION
P.O. BOX 500
GEORGETOWN, DELAWARE 19947

Clerk U.S. District Court
844 N. King St. Lockbox 18
Wilmington, DE

19801-3570